# EXHIBIT A

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM
NYSCEF DOC. NO. 88
INDEX NO. 154341/2018
RECEIVED NYSCEF: 04/30/2019

FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM
NYSCEF DOC. NO. 43
INDEX NO. 154341/2018
RECEIVED NYSCEF: 07/09/2018

## LEASE BETWEEN

THE CITY OF NEW YORK
DEPARTMENT OF GENERAL SERVICES
DIVISION OF REAL PROPERTY
2 LAFAYETTE STREET
NEW YORK, NEW YORK 10007

&

East Broadway Mall, Inc.

Office: c/o Levy + Walker
1960 Broadway
New York, N.Y. 10023

---

Premises:    Unimproved Land beneath the Manhattan Bridge, bounded
by East Broadway, Market Street, Division Street, and
Forsyth Street, a/k/a  59-77 Division Street, described
as Block 282 Lot 44, Borough of Manhattan

---

*****

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM          INDEX NO. 154341/2018

NYSCEF DOC. NO. 88                                        RECEIVED NYSCEF: 04/30/2019

FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM          INDEX NO. 154341/2018

NYSCEF DOC. NO. 43                                        RECEIVED NYSCEF: 07/09/2018

## I N D E X

| ARTICLE | CAPTION | PAGE |
|---|---|---|
| 1 | Premises | 2 |
| 2 | Term | 2 |
| 3 | Base Rent | 3 |
| 4 | Percentage Rent | 3 |
|  | Definitions | 3 |
| 5 | Payment in Lieu of Taxes | 7 |
| 6 | Construction | 10 |
|  | Heating Plant | 11 |
|  | Exhaust Fans | 12 |
|  | Mechanical Equipment | 13 |
| 7 | Use | 17 |
| 8 | Alterations | 19 |
| 9 | Late Charges | 20 |
| 10 | Deposits | 20 |
| 11 | Repair and Maintenance | 22 |
| 12 | Utilities and Other Expenses | 22 |
| 13 | Landlord's Right of Entry | 23 |
| 14 | Insurance | 23 |
| 15 | Damage or Destruction | 25 |
| 16 | Compliance with Laws | 29 |
| 17 | Indemnification of Landlord | 30 |
| 18 | Condemnation | 30 |
| 19 | Default; Conditional Limitations | 33 |
| 20 | Banruptcy; Additional Default Provisions | 34 |
| 21 | Remedies of Landlord | 36 |
| 22 | Fees and Expenses | 37 |
| 23 | No Waiver | 38 |
| 24 | Landlord's Remedies Cumulative | 38 |
| 25 | Assignment & Subletting; Leasehold Mortgages | 38 |
|  | Definitions | 41 |
| 26 | End of Term | 47 |
| 27 | Waiver of Jury Trial | 47 |
| 28 | Notices | 48 |
| 29 | No Oral Agreements | 48 |
| 30 | Quiet Enjoyment | 48 |
| 31 | No Discrimination | 49 |
| 32 | Investigations | 51 |
| 33 | No Surrender Without Resolution | 54 |
| 34 | Holdover Tenancy | 55 |
| 35 | Damages for Failure to Surrender Possession | 55 |
| 36 | Miscellaneous | 56 |
| 37 | Non-Merger Agreement | 57 |

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM
NYSCEF DOC. NO. 88

FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM
NYSCEF DOC. NO. 43

INDEX NO. 154341/2018
RECEIVED NYSCEF: 04/30/2019
INDEX NO. 154341/2018
RECEIVED NYSCEF: 07/09/2018

INDEX — Contd.

| ARTICLE | CAPTION | PAGE |
|---|---|---|
| 38 | Brokerage Clause............................. | 57 |
| 39 | Force Majeure ................................ | 58 |
| 40 | Exculpation. ................................. | 58 |
| 41 | Estoppel Certificate ........................ | 60 |
| 42 | Lease to be Recorded ........................ | 60 |
| 43 | Books and Records; Audit .................... | 61 |
| 44 | Invalidity of Particular Provisions .......... | 61 |
| | Acknowledgments | |
| | Exhibit "A" — Board of Estimate Resolution | |
| | Exhibit "B" — Lease Term Commencement Date Certificate | |

*****

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM          INDEX NO. 154341/2018
NYSCEF DOC. NO. 88                                        RECEIVED NYSCEF: 04/30/2019

FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM          INDEX NO. 154341/2018
NYSCEF DOC. NO. 43                                        RECEIVED NYSCEF: 07/09/2018

THE CITY OF NEW YORK
DEPARTMENT OF GENERAL SERVICES
DIVISION OF REAL PROPERTY
2 LAFAYETTE STREET
NEW YORK, NEW YORK 10007

THIS LEASE, entered into as of 1st day of March 1985, between THE CITY
OF NEW YORK ("Landlord"), a municipal corporation of the State of New York,
acting by and through its Commissioner of General Services, Division of Real
Property, (the "Commissioner"), having an office at 2 Lafayette Street, New
York, New York 10007, and *East Broadway Mall, Inc.* (Tenant), a Corporation
organized under the Business Corporation Law of the State of New York, having
an office at *C/o LEVY + WALKER, 1960 Broadway New York, N.Y. 10024.*

W I T N E S S E T H :

WHEREAS, the Board of Estimate of the City of New York adopted a
resolution on May 24, 1984 (Calendar No. 224) authorizing, in accordance with
Section 384 of the New York City Charter, the Commissioner to grant a Lease of
the space herein demised to the highest bidder upon sealed bid auction, in
accordance with the terms and conditions set forth in the said resolution,
(the "Resolution") a copy of which is attached hereto as Exhibit A;  and

WHEREAS, pursuant to the Resolution and after due advertisement
according to law, a Lease in the form hereof was duly sold at public auction
on September 19, 1984 to Tenant, who was the highest bidder and whose bid was
duly accepted by Landlord;

WHEREAS, the terms of such Lease shall be absolutely net to the
Landlord;

NOW, THEREFORE, it is mutually agreed as follows:

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM
NYSCEF DOC. NO. 88

FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM
NYSCEF DOC. NO. 43

INDEX NO. 154341/2018
RECEIVED NYSCEF: 04/30/2019
INDEX NO. 154341/2018
RECEIVED NYSCEF: 07/09/2018

## ARTICLE 1

### PREMISES

The Landlord hereby leases to the Tenant the premises known as the unimproved land beneath the Manhattan Bridge, bounded by East Broadway, Market Street, Division Street, and Forsyth Street, a/k/a 59-77 Division Street, described as Block 282 Lot 44, Borough of Manhattan, (hereinafter the "Premises"), subject to the right of the public to use those portions of the Premises that lie in the beds of open streets.

## ARTICLE 2

### TERM

The Lease shall be for a period of fifty (50) years, beginning on the earlier of either of the following dates:

(a)  ~~September~~ October 1, 1985; or    KmL

(b)  the date on which the Board of Standards and Appeals makes a decision granting or denying Tenant's application for a variance increasing the proportionate area of the Premises upon which construction or other improvements would be permitted; or

(c)  the date all or part of the Premises is used in violation of the prohibitions set forth in Article 7(d) hereof.

This date is hereinafter referred to as the "Lease Term Commencement Date". Landlord and Tenant shall execute a Lease Term Commencement Certificate in the form attached hereto as Exhibit B, within one week of the Lease Term Commencement Date.

The Lease shall terminate on the date immediately preceding the fiftieth (50th) anniversary of the Lease Term Commencement Date (hereinafter the "Lease Term Expiration Date"). The period between the Lease Term Commencement Date and the Lease Term Expiration Date is hereinafter the "Lease Term".

~ 2 ~

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM

FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM

NYSCEF DOC. NO. 43

INDEX NO. 154341/2018

RECEIVED NYSCEF: 07/09/2018

This Lease shall be effective when fully executed and shall be
enforceable by both parties as of that date.  In no event shall any action or
inaction by the Board of Standards and Appeals with regard to Tenant's
application referred to above be deemed a ground for terminating this Lease
and in no event shall the Lease Term Commencement Date be delayed beyond
September 1, 1985.

### ARTICLE 3

### BASE RENT

Tenant shall pay rent in equal monthly installments in advance on the
Lease Term Commencement Date and on the first day of each month during the
Lease Term at the office of Landlord or such other place as Landlord may
designate without any set off and deductions whatsoever (hereinafter the "Base
Rent").  Tenant shall pay the following Base Rent:

(a)   During the first (1st) and second (2nd) year of the Lease Term
      the Base Rent shall be $50,000.00 per annum.

(b)   During the period beginning with the third (3rd) year of the
      Lease Term and terminating at the end of the tenth (10th) year of
      the Lease Term the Base Rent shall be Four Hundred Thirty-two
      Thousand Dollars ($432,000) a year.  Landlord acknowledges
      receipt of Thirty-Six Thousand Dollars ($36,000) which shall be
      applied to the rent first payable under this Article 3(b) as
      provided in Article 10, Deposit of this Lease.

(c)   During the period beginning with the first day of the eleventh
      (11th), twenty-first (21st), thirty-first (31st) and forty-first
      (41st) year of the Lease Term, and for the ensuing ten (10) year
      period after each date, the Base Rent shall increase by twenty
      percent (20%) over the Base Rent for the previous ten (10) year
      period.

      The Base Rent shall be pro-rated for any portion of a month at
      the beginning or end of each lease year (if this Lease should
      terminate on a day other than the last day of the month).

### ARTICLE 4

### PERCENTAGE RENT

Definitions:

For the purposes of this Article, the following definitions shall apply:

- 3 -

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM     INDEX NO. 154341/2018

NYSCEF DOC. NO. 88     RECEIVED NYSCEF: 04/30/2019

FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM     INDEX NO. 154341/2018

NYSCEF DOC. NO. 43     RECEIVED NYSCEF: 07/09/2018

(i)     The term "Gross Operating Revenue" shall mean the sum total of all gross revenue, income, receipts or other value received from the use, occupancy or operation of the Premises by Tenant or on behalf of Tenant or any affiliate of Tenant, directly or indirectly, including, without limitation, all rental, fees, charges and all other income from subtenants, permittees, licensees and concessionaires, parking fees, if any, fees and/or commissions from exhibits and also payment for services or valuable consideration in lieu of cash receipts including but not limited to the fair market value, as determined by Landlord, of any space in the Premises used by Tenant or a subsidiary or affiliate of Tenant; provided, however, that as long as neither Tenant nor any subsidiary or affiliate shall receive direct remuneration therefrom Tenant shall have the right to occupy up to eight hundred (800) square feet for use by it as an office for promotional, rental agency or management purposes without the fair market value of such space being included in gross operating revenue.

(ii)    The term "Fiscal Year" shall mean each annual period ending December 31;

(iii)   The term "Common Area" shall be defined to mean those areas which benefit jointly all the subtenants in the Premises, and which are not under the exclusive control of any one subtenant.

(iv)    The term "Common Area Maintenance" shall be defined to mean those actual out-of-pocket costs for the operation, repair and maintenance of the common areas only, including security, cleaning, HVAC and landscaping.

1.      a)  Tenant shall pay as percentage rent (hereinafter "Percentage Rent") for each Fiscal Year (and in proportion for a fraction of any such Fiscal Year) commencing with the third (3rd) year of the Lease Term an annual sum equal to the following percentage of the Gross Operating Revenue:

        0% of the first $500,000 of Gross Operating Revenue
        3% of the next $500,000 of Gross Operating Revenue
        6% of the next $500,000 of Gross Operating Revenue
        9% of any additional Gross Operating Revenue

        b)  Revenue received from the reimbursement for Common Area Maintenance charges shall be an allowable deduction from Gross Operating Revenue so long as the charges shall not exceed the actual out of pocket costs of Common Area Maintenance, as verified by receipted bills.  The percentage of the total Common Area Maintenance charges which shall be allowed as a deduction from the revenue derived from any subtenant shall not exceed that percentage which the square footage of that subtenant's premises bears to the total square footage of the Premises.

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM    INDEX NO. 154341/2018

FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM    RECEIVED NYSCEF: 04/30/2019
NYSCEF DOC. NO. 43                                   RECEIVED NYSCEF: 07/09/2018

2.    Percentage Rent shall be paid not later than ninety (90) days after the termination of each fiscal year and shall be accompanied by a statement of an independent certified public accountant selected by Tenant and approved by Landlord whose approval shall not be unreasonably withheld, showing the Gross Operating Revenue received during the fiscal year for which payment is being made, supported by schedules showing the manner of computation of such Gross Operating Revenue, including all payments received from subtenants, permittees, licensees, concessionaires, and others broken out by category (i.e. Base, Percentage Rent, Common Area charges, etc.). In addition, such statements shall detail actual expenses paid for Common Area Maintenance.

3.    Landlord shall, if not satisfied with any annual statement of Gross Operating Revenue thus submitted, give notice to Tenant of such dissatisfaction (Notice of Dissatisfaction), setting forth in detail its specific exceptions. Unless within thirty (30) days after Tenant's receipt of such Notice of Dissatisfaction, Tenant shall submit a statement to Landlord establishing to the satisfaction of Landlord that its specific exceptions are not warranted and that said annual statement is correct, Landlord shall have the right and privilege of having an audit made of the account books and records pertaining to Tenant's Gross Operating Revenue for the period in question. Such audit shall be made by a firm of independent certified public accountants to be selected by Tenant and approved by the Landlord. If any audit conducted by Landlord pursuant to Article 4 or Article 43 of this Lease reveals that Tenant has understated Gross Operating Revenue or provided information which has led to an underpayment of (or on account of) Percentage Rent, then any such underpayments shall accrue interest at the annual rate of

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM          INDEX NO. 154341/2018

NYSCEF DOC. NO. 88                                        RECEIVED NYSCEF: 04/30/2019

FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM         INDEX NO. 154341/2018

NYSCEF DOC. NO. 43                                        RECEIVED NYSCEF: 07/09/2018

twelve percent (12%), except that in the event of a deliberate and willful misstatement such interest shall accrue at a rate equal to the sum of the Interest Rate and eighteen percent (18%) per annum provided, however, that such rate shall not exceed the maximum annual rate of interest which then may be charged under applicable law, and shall be payable within ten (10) days of Landlord's notification of same.  The submission of any such deliberate and willful misstatement of Tenant's Gross Operating Revenue shall constitute an Event of Default under this Lease.

In the event that the audit shall reveal that there exists a differential of more than two percent (2%) from the information provided by the Tenant, then the cost of said audit shall be paid by the Tenant.  However, if the audit shall reveal there exists a differential of two percent (2%) or less from the information provided by the Tenant, then the Tenant and Landlord shall pay equally the reasonable cost of the audit fees.  Landlord shall fund its share by granting Tenant a credit to be applied against its Base Rent.

Anything contained herein to the contrary notwithstanding, the Comptroller shall have the right to audit Tenant's Gross Operating Revenue.

4.    Percentage Rent and PILOT payments hereinafter referred to in Article 5 shall be deemed to be "Additional Rent" or "rent" for all purposes including particularly Article 19 herein.

5.    Notwithstanding anything contained herein to the contrary, Tenant shall have the right to deduct from gross operating revenue payments from any subtenant(s) which are solely attributable to such subtenant(s) proportionate share of the PILOT payments that Tenant is required to make under Article 5 hereof provided that:

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM        INDEX NO. 154341/2018

NYSCEF DOC. NO. 86                                       RECEIVED NYSCEF: 04/30/2019

FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM        INDEX NO. 154341/2018

NYSCEF DOC. NO. 43                                       RECEIVED NYSCEF: 07/09/2018

(a)   such payments to Tenant from any subtenant(s) on account of PILOT are specifically identified as such in the sublease(s), are separately billed to the subtenant(s), and are separately paid by the subtenant(s); and

(b)   the subtenant(s) pays fair market value irrespective of such PILOT payments for its space under the sublease(s); and

(c)   in no event shall the amount deducted from Gross Operating Revenue in any year of the Lease Term in accordance herewith exceed the total amount of the PILOT payment required to be made by Tenant in accordance with Article 5.

6.   Notwithstanding anything contained herein to the contrary, in the event Tenant cannot have Con Edison install sub-meters to measure the amount of gas and/or electricity used by its subtenant(s) and is billed directly by Con Edison for all gas and/or electricity used at or in connection with the Premises, then and in such event Tenant shall have the right to deduct from Gross Operating Revenue payments from any subtenant(s) which are solely attributable to such subtenant(s) proportionate share of such gas and/or electricity charges provided that such payments to Tenant on account thereof are treated in exactly the same way as is hereinabove set forth in 5(a), (b), and (c) with respect to PILOT payments.

## ARTICLE 5

### PAYMENT IN LIEU OF TAXES

In addition to the Base Rent and the Percentage Rent, Tenant shall pay as Additional Rent in lieu of real property taxes in equal monthly installments an annual amount as established in this Article (hereinafter "PILOT"):

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM

INDEX NO. 154341/2018

NYSCEF DOC. NO. 86

RECEIVED NYSCEF: 04/30/2019

FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM

NYSCEF DOC. NO. 43

INDEX NO. 154341/2018

RECEIVED NYSCEF: 07/09/2018

(a)    During the period beginning with the date of full execution of this Lease and terminating at the end of the second (2nd) year of the Lease Term an annual amount equal to the product of one hundred percent (100%) of the then current assessed value of the demised land only multiplied by the prevailing real property tax rate;

(b)    During the period beginning with the third (3rd) year of the Lease Term and terminating at the end of the seventh (7th) year of the Lease Term, an annual amount equal to the product of (i) One hundred percent (100%) of the then current assessed value of the demised land plus (ii) the percentage set forth below of the then current assessed value of the improvements on the Premises multiplied by the prevailing real property tax rate. .

| Lease Year | Percentage |
|------------|------------|
| 3 | 0% |
| 4 | 20% |
| 5 | 40% |
| 6 | 60% |
| 7 | 80% |

The following formula illustrates the intentions of the parties as to the computation of the above payment:

$$A = [ L + P (I) ] R$$

where,

A    equals the annual amount to be paid
L    equals the current assessed value of the demised land
P    equals the percentage as set forth in the table above
I    equals the current assessed value of the demised improvements
R    equals the prevailing real property tax rate.

Assuming that the payment period to be calculated is the fifth (5th), year of the Lease Term, that the assessed value for the demised land is One Hundred Thousand Dollars ($100,000.00), for that tax year, that the assessed value for the demised improvements for that tax year is Eight Hundred Thousand Dollars ($800,000.00), that the prevailing tax rate for that tax year is 8.95%, then =

$$[\$100,000 + 40\% (\$800,000)] \ 8.95\%$$

and the annual payment due for the fifth (5th) year of the Lease Term would be $37,590.00.

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM    INDEX NO. 154341/2018
NYSCEF DOC. NO. 88    RECEIVED NYSCEF: 04/30/2019
FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM    INDEX NO. 154341/2018
NYSCEF DOC. NO. 43    RECEIVED NYSCEF: 07/09/2018

(c)    During the period beginning with the eighth (8th) year of the
Lease Term and terminating on the Lease Term Expiration Date, the
Tenant shall pay in lieu of real property taxes an annual amount
equal to the product of one hundred percent (100%) of the then
current total assessed value of the Premises (including the
Improvements thereon) multiplied by the prevailing real property
tax rate.

(d)    During the period beginning with the eighth (8th) year of the
Lease Term and terminating at the end of the eighteenth (18th)
year of the Lease Term Tenant shall pay in ten (10) equal annual
installments the difference between the PILOT paid under Article
5(b) hereof for the third (3rd) through the seventh (7th) year of
the Lease Term and what the PILOT would have been for those years
had the percentages of the assessed value of the Improvements
under Article 5(b) been one hundred percent (100%) for each of
those years.  Such payments shall be without interest.

PILOT payments shall include and cover any and all Real Estate Taxes,
or any successor tax in replacement thereof, assessed or levied or due during
the term hereof, which Tenant would otherwise be required to pay if it were
the owner in fee of the land together with improvements during the Term.  All
payments shall be paid monthly in advance and shall be deemed to be Additional
Rent.

This Lease shall be absolutely net to the Landlord throughout the Term
of this Lease and Tenant accordingly covenants and agrees, to pay, as they
become due and payable and before they become delinquent, all costs, expenses,
brokerage fees, liabilities, deductions or other charges whatsoever with
respect to the Property and/or the ownership, leasing, operation, maintenance,
repair, use or occupation thereof, including without limitation the costs,
charges and assessments hereinafter set forth in this Lease.  The Base Rent
and the Additional Rent shall be paid to the Landlord at the address of the
Landlord set forth above, or at such other address as the Landlord shall
designate to the Tenant in writing, in lawful money of the United States,

- 9 -

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM    INDEX NO. 154341/2018

NYSCEF DOC. NO. 43

FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM    RECEIVED NYSCEF: 04/30/2019    INDEX NO. 154341/2018

RECEIVED NYSCEF: 07/09/2018

without notice or demand and without abatement, deduction or set-off of any
amount or for any reason whatsoever.  Installments of Rent unpaid when due
shall bear interest at the legal rate from the date due to the date paid.

Tenant shall have the right to contest assessments of taxes, either by
protest or proceedings, so long as all such PILOT payments continue to be made
by Tenant.  If there should be a reduction in the assessment, Landlord shall
promptly refund to Tenant, in the form of a rent credit, the amount of taxes
reduced without any credit for interest or attorney's fees. Landlord shall
execute any legal document including applications reasonably requested by
Tenant, in connection with Tenant's right to contest assessments in any
proceedings brought in connection therewith.

### ARTICLE 6
### CONSTRUCTION

(a)    Tenant, at its sole cost and expense, shall construct on the
Premises all those improvements ("Improvements") necessary to develop and
operate the Premises as a first class retail mall in accordance with the below
described Department of Highways construction conditions and restrictions:

1.    The minimum clearance as measured from the top of roof
        surface to the underside of the bridge trusses or floorbeams
        shall not be less than 3'-6". This minimum clearance shall
        be at one point only and clearance shall then increase
        approximately at the rate of 1'-0" in height for each 32' of
        length of building as measured in the direction of the
        bridge certerline.  Roof clearance at the area directly
        above Pier F shall be a minimum of 3'-6" with exposed
        structural trusses spanning in the direction of the
        centerline of the bridge.

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM
INDEX NO. 154341/2018

FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM
RECEIVED NYSCEF: 04/30/2019
INDEX NO. 154341/2018

NYSCEF DOC. NO. 88

NYSCEF DOC. NO. 43
RECEIVED NYSCEF: 07/09/2018

2.  The Tenant is to provide openings in roof parapet walls or guard rails where they cross under bridge trusses at Division St. side of structure (where clearance beneath trusses would be reduced by parapet or fence). Such openings shall be 2'-0" on each side of truss.

3.  The building shall be structurally isolated from the steel bridge columns and cross frame. The existing bridge columns and cross frame shall be sprayed with vermiculite fireproofing and framed with metal studs and two (2) layers of 5/8" firecoded sheetrock. The columns shall bear no loads from the building.

4.  No attachments of any kind except for flashing shall be made to the stone bridge piers so that piers shall be visible at all times.

5.  Excavations at existing foundations of stone bridge piers and of steel columns shall not go below the top of lowest footing course for stone piers nor below top of footing for steel columns. New foundations shall not rest on existing footings. Lower basement walls adjacent to the two existing bridge column footings shall have two 32 linear feet of structural wall adjacent to one side of a four (4) sided footing so as to enable the escalator to function properly. The basement walls shall be designed to take all lateral loads being transferred by the column footing foundation.

6.  Entire structure is to be sprinklered with an alarm system to be tied in with the New York City Fire Department.

7.  The structure shall have a non-combustible roof assembly having a fire resistive rating of not less than two (2) hours. Roof to be made non-combustible by crushed stone or gravel surface over entire area of roof.

8.  **Heating Plant**:

    The installation of a heating plant is subject to the following conditions and requirements.

    (a)  The chimney, if employed or required, shall be located at such locations as to be least objectionable to bridge motorists and pedestrians. The direction of the prevailing winds shall be considered in the final location of the chimney.

    (b)  Heating plant chimney, if employed or required, shall be encased in masonry.

- 11 -

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM    INDEX NO. 154341/2018

NYSCEF DOC. NO. 88

FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM    RECEIVED NYSCEF: 04/30/2019
                                                    INDEX NO. 154341/2018

NYSCEF DOC. NO. 43    RECEIVED NYSCEF: 07/09/2018

(c)    The chimney shall operate on a forced air system and the flue shall be bent horizontally at its top directing the exhaust air away from the bridge.

(d)    The exhaust air shall be diluted by the forced mixing of fresh air to the system to reduce the exhaust temperature to an acceptable level.

(e)    A fire extinguishing system shall be installed in the heating plant (should one be employed) to automatically shut down the heating plant should the temperature rise above that designed for the system.

(f)    A smoke detector system shall be installed in the heating plant to detect smoke due to improper operation of the system and automatically shut down the heating system.

(g)    Subject to the approval of the Fire Department use of natural gas shall be permitted. A natural gas detection system shall be installed in the heating plant (should one be employed) to detect natural gas due to improper operation of the system and which will automatically activate a gas shut off valve to cut off gas supply to the system (leak detection device).

(h)    Subject to approval of the Fire Department Rooftop heating, ventilation and air conditioning systems are permitted to be installed on the roof in lieu of a

separate enclosed heating plant providing the equipment is listed with BSA or MEA.

9.    Exhaust Fans:

The installation of exhaust fans on the roof is permitted subject to the following conditions and requirements:

(a)    Exhaust ducts shall be completely fire-retarded and shall be equipped with fusible links at each floor and at the roof to seal off the duct in the event of fire.

(b)    Exhaust ducts shall not discharge directly under the structure. They shall have horizontal runs of duct-work and shall discharge horizontally along such locations to be least objectionable to brindge structure, motorists and pedestrians.

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM

NYSCEF DOC. NO. 66

INDEX NO. 154341/2018

RECEIVED NYSCEF: 04/30/2019

FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM

NYSCEF DOC. NO. 43

INDEX NO. 154341/2018

RECEIVED NYSCEF: 07/09/2018

    (c)   Exhaust ducts shall not penetrate the roof within five (5) feet of any bridge truss or floorbeam (measured horizontally between the edge of the duct and the edge of the truss or floorbeam).

    (d)   Horizontal runs of exhaust duct shall be a maximum of forty-eight (48) inches above the roof. Horizontal runs of exhaust may cross under trusses or floorbeams but shall not run parallel to either within five (5) feet (measured horizontally between the edge of the duct and the edge of the truss or floorbeam). Ducts shall not decrease the clearance specified in Article 6 (a)1 herein.

    (e)   All exhaust air shall be filtered if required, as not to induce objectionable odors into the atmosphere.

    (f)   Restaurant echaust shall use a washdown hood system "Gaylord" or equal.

10.   Mechanical Equipment

The installation of mechanical equipment on the roof (other than exhaust ducts) shall be "air-handlers" or cooling elements which are cooled by the use of fans and gas-fired heating units.

    (a)   Mechanical equipment shall not be located within five (5) feet of any bridge truss or floorbeam (as measured horizontally between the edge of the equipment enclosure and the edge of the truss or floorbeam).

    (b)   Mechanical equipment shall be at a reasonable height above the roof as to be safe, functional and least obstructive to the maintenance of the bridge.

           Mechanical equipment shall not decrease the clearance specified in Article 6 (a)1 herein.

11.   Tenant shall at all reasonable times give access to any representative or employee of the Department of Highways for the purpose of inspection, maintenance, painting, structural repair, etc., of the bridge structure above the roof or within the building.

12.   The Tenant shall not store gasoline or other inflammable or cumbustible material on the Premises without the written consent of the Commissioner of Highways.

- 13 -

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM    INDEX NO. 154341/2018

NYSCEF DOC. NO. 98    RECEIVED NYSCEF: 04/30/2019

FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM    INDEX NO. 154341/2018

NYSCEF DOC. NO. 43    RECEIVED NYSCEF: 07/09/2018

8.    Within six (6) months of the Lease Term Commencement Date, Tenant shall submit to the Landlord, and to the City's Department of Transportation, Bureau of Highway Operations, for review and approval, preliminary plans, and within three (3) months after such approval, final plans, architectural drawings and engineering drawings detailing the proposed construction.    Within twelve (12) months of the Lease Term Commencement Date Tenant shall secure all Building Department and other required permits for proposed construction, which construction is to begin no later than fifteen (15) months from the Lease Term Commencement Date.    Prior to commencement of construction Tenant must secure the approval of all applicable governing agencies and must thereafter comply at all times with all applicable zoning resolutions and other governmental restrictions.

The construction shall be expeditiously prosecuted with all diligence and without interruption and shall, subject to Unavoidable Delays, be completed in a good and workmanlike manner, in accordance with the approved plans, final architectural drawings and final engineering drawings not later than twenty-seven (27) months after the Lease Term Commencement Date. Upon completion of the construction Tenant shall furnish the Landlord with (i) a certificate from the architect certifying that the construction has been completed in accordance with the approved final engineering drawings and final architectural drawings, (ii) a true copy of the temporary Certificate of Occupancy for the Project issued by the City's Department of Buildings, and (iii) a complete set of drawings as presented to the Department of Buildings in connection with the application for a Certificate of Occupancy.  Within six (6) months following completion of the Construction Tenant shall proceed with

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM    INDEX NO. 154341/2018
NYSCEF DOC. NO. 43    RECEIVED NYSCEF: 04/30/2019

FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM    INDEX NO. 154341/2018
NYSCEF DOC. NO. 43    RECEIVED NYSCEF: 07/09/2018

diligence to complete the work required for, shall apply for, and shall obtain
and furnish to the Landlord, a copy of the permanent Certificate of Occupancy
for the Project duly issued by the City's Department of Buildings.

Any mechanic's lien or public improvement lien filed against the
Premises or the building for work done or claimed to be done for or materials
furnished or claimed to be furnished to Tenant shall be discharged by Tenant
at its sole cost and expense within thirty (30) days after notice thereof from
Landlord, by payment, release, filing of a bond or otherwise.

C.    Prior to beginning any construction, tenant shall furnish Landlord with
standard payment and performance bonds for the work in the amount equal to one
hundred percent (100%) of the amount of the construction contract price,
issued by a surety company authorized to do business in the State of New York
as security for the payment of persons performing labor or furnishing
materials and completion of construction.    These bonds shall be for the
benefit of the Landlord and if furnished by any contractor, shall also be for
the benefit of the Tenant.

D.    Prior to beginning any construction on the Premises, Tenant shall also
provide, or cause to be provided, and thereafter shall keep, or cause to be
kept, in full force and effect, until a permanent Certificatge of Occupancy is
issued for the construction, the following at no cost to Landlord:

(i)    Contractor's Comprehensive General Liability Insurance in an
amount not less than $3,000,000 for each occurrence involving
injury to or death of one person, not less than $5,000,000 for
each occurrence involving injury to or death of more than one

- 15 -

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM    INDEX NO. 154341/2018
NYSCEF DOC. NO. 86    RECEIVED NYSCEF: 04/30/2019

FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM    RECEIVED NYSCEF: 07/09/2018
NYSCEF DOC. NO. 43

person, and not less than $3,000,000 for each occurrence involving property damage, up to an aggregate of $10,000,000, such insurance to include operations-premises liability, contractor's protective liability on the operations of all subcontractors, completed operations, contratural liability (designating the indemnity provisions of the Construction Agreements), and automobile liability (owned and non-owned) and, if the contractor is undertaking foundation, excavation or demolition work, an endorsement that such operations are covered and that the "XCU Exclusions" have been deleted;

(ii) Worker's Compensation and Disability Benefits Insurance covering all persons employed in connection with the construction of the Improvements;

(iii) Owner's Protective Insurance written under a Comprehensive General Liability Policy form (separate from the Contractor's Comprehensive General Liability Policy required by subparagraph (i) of this Section 6D, naming Landlord, Tenant and the City as their respective interests may appear, in an amount not less than $3,000,000 for each occurrence involving injury to or death of one person, not less than $10,000,000 for each occurrence involving injury to or death of more than one person, and not less than $3,000,000 for each occurrence involving property damage up to an aggregate of $10,000,000;

(iv) Builder's Risk Insurance written on an "All Risk" and completed value (non-reporting) basis with limits as provided in Section 6D (i) hereof, naming any general Contractor engaged by Tenant, and also naming Landlord, Tenant and the City as their respective interests may appear, and naming the Mortgagee as insured under a standard mortgagee clause. In addition, such insurance (x) shall contain a waiver of subrogation against Subcontractors and an endorsement stating that "permission is granted to complete and occupy," and (y) if any offsite storage location is used, shall cover, for the full insurable value, all materials and equipment on or about any such offsite storage location intended for use with respect to the Premises.

E.    No construction shall be commenced until Tenant shall have delivered to Landlord the original policies or certified copies thereof, as required by this Article 6 which policies shall also conform to the provisions of Article 14.

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM

FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM

NYSCEF DOC. NO. 43

INDEX NO. 154341/2018

RECEIVED NYSCEF: 07/09/2018

F.    Upon completion of the Improvements, Tenant shall procure such
insurance as required by Article 14 hereof.

G.    All such improvements when made and the Heating Plant, the Exhaust Fans
and Mechanical Equipment upon installation shall be deemed incorporated into
the Premises and shall become the property of Landlord and shall remain upon
and be surrendered with the Premises upon expiration of the Term or the
earlier termination of this Lease.

### ARTICLE 7

#### USE

(a)    The Premises shall be used only for the following purposes and no
other purposes:  The development and operation of a first class retail mall
containing

(1)    retail stores;

(2)    commercial offices;

(3)    such other uses agreed to in writing by Landlord which are
(i) in accordance with applicable law and zoning, (ii) are in furtherance of
the development of a retail commercial center, (iii) do not adversely affect
the general community in relation to vehicular or pedestrian traffic,
pollution, safety, noise and cleanliness.  In the event Landlord determines
that the use requested by Tenant may adversely affect the general community as
aforesaid, Tenant shall address the problems which may result therefrom in a
manner acceptable to Landlord as a condition of Landlord giving its written
consent thereto.

- 17 -

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM    INDEX NO. 154341/2018
NYSCEF DOC. NO. 80    RECEIVED NYSCEF: 04/30/2019

FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM    INDEX NO. 154341/2018
NYSCEF DOC. NO. 43    RECEIVED NYSCEF: 07/09/2018

(b)    The following uses expressly prohibited:

- pornography, "adult", "girlee", "nudes", "massage parlors" or physical culture establishments of any kind;

- mechanical amusements or amusement areas;

- casinos or gambling of any kind;

- OTB parlos;

- arcades, or game rooms;

- slot machines or coin operated machines, other than cigarette, telephone, candy machines and the like;

- billiard halls;

- gun repair shops;

- drive-ins;

- discotheques, cabarets, or private clubs.

(c)    Tenant's use of the Premises shall be in complete conformity with the present or future Certificate of Occupancy and any other applicable laws and regulations.  Other than as expressly set out herein, neither Landlord nor any of Landlord's officials or employees have made any representations with respect to the Premises, the physical condition thereof.either on the date hereof or during the term of this Lease, the present or future suitability of the Premises for any use or any permits, rights or permissions with respect thereto.  Tenant has inspected the Premises and is thoroughly acquainted with its condition and agrees to take same "as is" on the date hereof and acknowledges that the taking of possession of the Premises shall be conclusive evidence that the Premises are in satisfactory condition.

- 18 -

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM   INDEX NO. 154341/2018

NYSCEF DOC. NO. 88   RECEIVED NYSCEF: 04/30/2019

FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM   INDEX NO. 154341/2018

NYSCEF DOC. NO. 43   RECEIVED NYSCEF: 07/09/2018

(d)   During the period from the date of full execution of this Lease through the completion of construction, the Premises shall not be used for any purposes other than those directly relating to the construction of a retail mall.  Without limiting the generality of the foregoing the temporary use of all or part of the Premises as a parking lot or flea market is prohibited.

## ARTICLE 8

### ALTERATIONS

Tenant shall not subsequent to the completion of the improvements undertaken pursuant to Article 6 herein make any non-structural alterations or improvements in excess of $250,000, or any structural alterations or improvements of any kind to the Premises withhout the prior written approval of Landlord, whose approval shall not be unreasonably withheld.

Landlord shall execute any legal document which may be required pursuant to legal requirements to effectuate such proposed alterations or improvements.

Any such improvements and alterations, when made, shall be deemed incorporated into the Premises and shall become the property of Landlord and shall remain upon and be surrendered with the Premises upon the expiration of the Term or the earlier termination of this Lease.  Nothing in this section shall be construed to prevent Tenant's removal of trade fixtures, upon such expiration or earlier termination, but upon removal Tenant shall immediately, and at its expense, repair and restore the Premises to the condition existing prior to installation and repair any damage to the Premises due to such removal, normal wear and tear excepted.  Any removable property of the Tenant or licensees, and permittees, licensees, and permitees, which shall remain in the Premises after the expiration or sooner termination of this Lease, at the

- 19 -

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM    INDEX NO. 154341/2018
NYSCEF DOC. NO. 88    RECEIVED NYSCEF: 04/30/2019
FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM
NYSCEF DOC. NO. 43    RECEIVED NYSCEF: 07/09/2018

option of the Landlord may be deemed to have been abandoned and either may be retained by Landlord as its property or may be disposed of in such manner as Landlord may seem fit.

In the event the Premises are abandoned within the final three years of the Lease, any removable property which shall remain shall, at the option of Landlord, be removed from the Premises by Landlord at Tenant's expense.

## ARTICLE 9

### LATE CHARGES

If payment of rent or any other charge payable by Tenant under this Lease shall become overdue for six (6) business days, a late charge of 1.5% per month (computed on a thirty (30) day month) on the sums so overdue shall become immediately due and payable to Landlord as liquidated damages for Tenant's failure to make prompt payment.  This shall be deemed Additional Rent and in In the event of non-payment of any late charges, Landlord shall have all the rights and remedies provided for herein and by law in the case of non-payment of rent.  No failure by Landlord to insist upon the strict performance by Tenant of its obligations to pay late charges shall constitute a waiver by Landlord of its right to enforce the provisions of this Article.

## ARTICLE 10

### DEPOSITS

Tenant has deposited with Landlord (a) the sum of Seventy-Two Thousand Dollars ($72,000) equal to two (2) months rent, through a certified or official bank check or acceptable government bonds drawn to the order of the

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM

INDEX NO. 154341/2018

FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM

RECEIVED NYSCEF: 154341/2018

NYSCEF DOC. NO. 43

RECEIVED NYSCEF: 07/09/2018

Comptroller of The City of New York, and (b) the sum of Thirty-Six Thousand Dollars ($36,000) equal to one month's rent consisting of a certified or official bank check drawn to the order of the Division of Real Property, City of New York. The former sum shall be retained by Landlord as security for the faithful performance of the Tenant's obligations under this Lease, and the latter sum shall be applied to the rent first payable during the Initial Term. No interest shall be paid to the Tenant on the Security deposited in accordance herewith. Tenant at any time during the Term of this Lease, may remit City, State or Federal Government Bonds, stripped of coupons, in the par value of Seventy-two thousand Dollars ($72,000) to be deposited with the Comptroller as security, and Landlord shall promptly return to Tenant its certified check in the amount of Seventy-two thousand Dollars ($72,000).

If Tenant defaults in respect of any of the terms, provisions, covenants and conditions of this Lease, including but not limited to payment of Rent and Additional Rent, Landlord may, but shall not be required to, use, apply or retain the whole or any part of the security for the payment of any Rent and Additional Rent in default or for any other sum, which Landlord may expend or be required to expend or may be out-of-pocket or may not receive by reason of Tenant's default, including any damages or deficiency in the reletting of the Premises, whether such damages or deficiency accrue before or after summary proceedings or other re-entry by Landlord. If Tenant shall fully and faithfully comply with all the terms, provisions, covenants and conditions of this Lease, the security, or any balance thereof, shall be returned to Tenant after the time fixed as the expiration of the herein demised term.

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM
INDEX NO. 154341/2018

NYSCEF DOC. NO. 88
RECEIVED NYSCEF: 04/30/2019

FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM
INDEX NO. 154341/2018

NYSCEF DOC. NO. 43
RECEIVED NYSCEF: 07/09/2018

## ARTICLE 11

### REPAIR AND MAINTENANCE

Tenant, at its own cost and expense, shall take good care of the Premises and sidewalks and curbs adjoining and/or appurtenant to the Premises and shall maintain them in good order and condition and make all necessary repairs, interior and exterior, structural and non-structural, ordinary and extraordinary.

Tenant further agrees to keep the Premises and the fixtures and appurtenances therein, and the sidewalks, arches and passageways adjoining and/or appurtenant to the Premises in a clean and sanitary condition and free of dirt, rubbish, snow, ice and unlawful obstruction.

Landlord, at no cost and expense to Tenant, shall be responsible for all repairs to the Manhattan Bridge over the Premises.

## ARTICLE 12

### UTILITIES AND OTHER EXPENSES

Tenant shall pay the charges for all utilities and services consumed at or with respect to the Premises, including, without limitation, all water and sewer charges and charges for gas, fuel, electricity and steam.  Tenant shall timely pay charges and fees and all other governmental or non-governmental assessments which may become due and payable with respect to the Premises or Tenant's use thereof.  Tenant shall promptly install all utility meters and have them properly registered at its own expense.

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM    INDEX NO. 154341/2018
NYSCEF DOC. NO. 88    RECEIVED NYSCEF: 04/30/2019
FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM    INDEX NO. 154341/2018
NYSCEF DOC. NO. 43    RECEIVED NYSCEF: 07/09/2018

## ARTICLE 13

### LANDLORD'S RIGHT OF ENTRY

Landlord shall have the right to enter upon the Premises upon reasonable notice at all times during the Lease Term for the purpose of inspecting the Premises and performing any governmental or proprietory functions, including repairs to the Manhattan Bridge. In exercising its right under this paragraph the Landlord shall act to minimize any interference with the occupancy and use on the Premises by the Tenant or any subtenant. The Landlord shall promptly repair any damage to the Premises caused by its exercise of its rights under this paragraph and shall at its sole cost and expense restore the Premises to the condition that existed prior to the exercise of its right.

In the event that the Landlord's exercise of its right under this paragraph shall deprive the Tenant or any subtenant of the use of any portion of the Premises for a period of more than one day, the Landlord shall abate the rent for the period of such deprivation, such abatement to be proportional to the area of the Premises from which Tenant is precluded by Landlord's entry.

During the last year of the Term, upon reasonable advance notice to Tenant, Tenant shall permit inspection of the Premises by or on behalf of prospective future Tenants or users.

## ARTICLE 14

### INSURANCE

Tenant, at its sole cost and expense, but naming Landlord as additional insured, at all times during the term of the Lease shall maintain with insurance companies qualified to do business in the State of New York and acceptable to the Commissioner, the following insurance:

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM

INDEX NO. 154341/2018

NYSCEF DOC. NO. 88

RECEIVED NYSCEF: 04/30/2019

FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM

INDEX NO. 154341/2018

NYSCEF DOC. NO. 43

RECEIVED NYSCEF: 07/09/2018

(a)    Insurance coverage for the Premises, and all the alterations and Improvements erected or installed therein, against loss or damage by fire and all other risks now or hereafter embraced by "extended coverage", in an amount not less than eighty percent (80%) of the "full replacement cost" of the alterations and Improvements made to the Premises without deduction for depreciation.  Such "full replacement cost" shall be determined from time to time, but not more frequently than once in sixty (60) calendar months at the request of the Commissioner by an appraiser, engineer, architect or contractor designated by Tenant and approved in writing by the Commissioner, and paid by Tenant.

(b)    Insurance coverage for loss or damage from leakage of sprinkler systems, if any, within the Premises in such amounts as the Commissioner may require.

(c)    Insurance coverage, in broad form, for loss or damage from explosion of high pressure steam boiler, air-conditioning equipment, pressure vessels, motors or similar equipment or apparatus, if any, within the Premises in the amount as the Commissioner may require not to exceed Five Hundred Thousand ($500,000) Dollars.

(d)    Workers' Compensation Insurance.

(e)    Public Liability Insurance as will protect Tenant and Landlord from any claims for property damage, personal injury and death, occurring on, in or about the Premises, including, without limitation, adjoining streets, sidewalks and passageways.  Such public liability insurance shall provide coverage of at least Ten Million ($10,000,000) Dollars for property damage and at least Three Million ($3,000,000) Dollars for one person injured or killed

- 24 -

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM    INDEX NO. 154341/2018
NYSCEF DOC. NO. 98    RECEIVED NYSCEF: 04/30/2019

FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM    INDEX NO. 154341/2018
NYSCEF DOC. NO. 43    RECEIVED NYSCEF: 07/09/2018

in any one occurrence and Five Million ($5,000,000) Dollars for more than one person injured or killed in any one occurrence. In addition, Tenant shall provide a blanket public liability policy in an amount of Ten Million ($10,000,000) Dollars.

(f)   Rental value insurance, naming the City as beneficiary, in an amount sufficient to cover one (1) year's Base Rent.

All insurance policies provided hereunder shall contain a provision that the policy may not be cancelled or materially changed except on thirty (30) days prior written notice to Landlord, and the leasehold mortgagee.

Evidence of insurance shall be furnished to the Commissioner prior to the execution of this Lease or, for a renewal policy, at least thirty (30) days prior to the expiration of the former insurance policy, with evidence of full payment of premiums. Thereafter, in the event Tenant fails to obtain the required insurance, Landlord may after ten (10) days' notice purchase same and charge its cost to Tenant as Additional Rent.

Tenant shall comply with the provisions of all insurance policies required hereunder and shall give both the insurer and the Landlord notice of any claim, accident and loss promptly upon its acquiring knowledge of the same.

## ARTICLE 15

### DAMAGE OR DESTRUCTION

If the Premises are damaged or destroyed, Tenant shall promptly notify Landlord of such fact.

Tenant hereby waives the provisions of Section 227 of the Real Property Law and agrees that the provisions of this Article shall govern and control in lieu thereof.

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM
NYSCEF DOC. NO. 88

FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM
NYSCEF DOC. NO. 43

INDEX NO. 154341/2018

RECEIVED NYSCEF: 04/30/2019

INDEX NO. 154341/2018

RECEIVED NYSCEF: 07/09/2018

In the event any such damage or destruction occurs and a hazardous condition results thereby, Tenant shall attempt to cure such condition within seventy-two (72) hours, if such condition can be reasonably abated within such seventy-two (72) hour period. Tenant shall begin to abate such condition with all due diligence. Immediately after the damage or destruction Tenant shall take reasonably necessary measures for the safety and preservation of the Premises. In default of Tenant taking such measures, Landlord may do so at Tenant's expense.

Should the damages to the Premises be such that the Premises can reasonably be repaired or restored within one hundred and eighty (180) days from the date of such destruction, then Tenant, at its sole cost and expense, shall proceed promptly and with due diligence to restore the Premises substantially to the same condition as prior to such damage or destruction. This one hundred and eighty (180) day period shall abate during any period when building is impossible due to strikes, work stoppages, material shortages, natural disasters or other factors beyond the control of the Tenant.

Should the Premises be damaged to such an extent that the Premises cannot be repaired within one hundred and eighty (180) days from the date of such damage or destruction, then Tenant, within sixty (60) days of such damage or destruction may, at its option, terminate this Lease upon written notice to the Landlord.

(a)(i)    If Tenant elects not to terminate this Lease as above provided, the insurance shall be paid to and deposited in a bank or trust company in the City of New York, approved by Landlord and Tenant, and hereinafter called

- 26 -

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM
INDEX NO. 154341/2018
RECEIVED NYSCEF: 04/30/2019

NYSCEF DOC. NO. 88

FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM
INDEX NO. 154341/2018
RECEIVED NYSCEF: 07/09/2018

NYSCEF DOC. NO. 43

'depository', and shall be applied toward the cost of repair, rebuilding and restoration of the damaged Building, in the manner hereinafter provided.

The fees of the depository for acting as such shall be paid by it to itself out of the insurance proceeds deposited with it as aforesaid, but such fees shall not exceed one percent (1%) of the amount deposited with the depository. The depository shall make progress payments to Lessee as the work of repair, restoration and rebuilding proceeds, upon receipt by it of properly certified vouchers of the architect in charge of the work and reasonably acceptable to Lessor. Each such requisition shall be made not more often than semi-monthly, to cover the value of the work and materials on the site during the preceding half-month or month, as the case may be, covered by such requisition, less ten percent (10%) of each requisition, which shall be retained by the depository until the completion of the repair, restoration and rebuilding, and shall thereupon be paid to Lessee.

Upon full completion of the repair, restoration and rebuilding, Tenant shall furnish such reasonable proof as the depository shall require to show that payment has been made to pay for all work, labor and materials furnished for such repair, restoration and rebuilding and that there are no liens ofrecord on account thereof.

The depository shall be released and discharged from all liability to Landlord and Tenant for any payment made by it in good faith and in accordance with the provisions herein set forth relating to such payment.

Tenant shall promptly commence the repair, restoration and rebuilding after the payment of the insurance proceeds and shall prosecute same to

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM
INDEX NO. 154341/2018
RECEIVED NYSCEF: 04/30/2019

FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM
NYSCEF DOC. NO. 43
INDEX NO. 154341/2018
RECEIVED NYSCEF: 07/09/2018

completion with due diligence.  Tenant covenants that such repairs, restoration and rebuilding shall be completed free and clear of mechanics' or other liens.  Prior to such commencement Tenant shall obtain the same approvals required by the provisions of Article 6 hereof.

(a) (ii)  If, at any time when any of the Buildings are damaged or destroyed by fire or other casualty, there is an institutional leasehold mortgage in existence covering Lessee's leasehold interest hereunder, then the proceeds of insurance shall be paid to such institutional mortgagee which shall be deemed to be and shall be the depository hereinabove referred to, to act as such without fee.  Such work shall be promptly commenced and diligently carried through to completion.

(a)(iii)  If the insurance proceeds are insufficient for the completion of the work, Tenant will pay, without reimbursement from Landlord, the difference between the insurance proceeds and the amount required to complete the work.

Landlord shall not be required to rebuild, rehabilitate or replace such destruction or damage and shall not be responsible in any manner for such reconstruction.  During the period of time of such damage or destruction and subsequent repair and reconstruction, the Base Rent and PILOT shall abate proportionately.

(b)  If the damage or destruction is such that repair or replacement cannot reasonably be concluded within the remaining Term of the Lease and Tenant terminates this Lease upon thirty (30) days notice to the Landlord; then the insurance proceeds shall be distributed in the following order of priority:

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM          INDEX NO. 154341/2018

NYSCEF DOC. NO. 86                                        RECEIVED NYSCEF: 04/30/2019

FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM

NYSCEF DOC. NO. 43                                        RECEIVED NYSCEF: 07/09/2018

7

(i)    The first Leasehold Mortgagee shall be entitled to receive such portion of the insurance proceeds as its interest shall appear;

(ii)   Tenant to the extent that proceeds are remaining shall be entitled to receive such portion of the insurance proceeds as shall represent the establishment of a reasonable reserve for demolition and removal of debris and/or damaged structures or other safety measures in such sum as may be reasonably required by Tenant subject to approval of Landlord.

(iii)  Landlord to the extent that proceeds are remaining shall be entitled to receive an amount equal to two percent (2%) of the insurance proceeds for each year which has passed since the Lease Term Commencement Date.

(iv)   Tenant shall receive the remainder of the insurance proceeds.

(c)    Any payment to be made to Tenant under the provisions of this Article are subject to the condition that Tenant shall not be in default of any obligation of this Lease.

Landlord and Tenant shall cooperate in any steps, proceedings, or action to negotiate, prosecute and adjust any claim or claims for any such insurance proceeds, but the Landlord shall have the final decision with respect to the disposition, settlement or adjustment of any claim or such insurance proceeds.

## ARTICLE 16

### COMPLIANCE WITH LAWS

Tenant, at its sole cost and expense, shall promptly comply with all present and future laws, ordinances, rules and regulations applicable to the Premises and with any direction of any public officer pursuant to law, and all orders, rules and regulations of the New York Board of Fire Underwriters or any other body exercising similar functions, which may be applicable to the

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM          INDEX NO. 154341/2018

FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM          RECEIVED NYSCEF: 04/30/2019

NYSCEF DOC. NO. 43                                        RECEIVED NYSCEF: 07/09/2018

Premises, or to the Tenant's use and occupancy thereof. Tenant shall maintain all permits, licenses and other authorizations needed for the operation of the Premises and the conduct of Tenant's business thereat.

## ARTICLE 17

### INDEMNIFICATION OF LANDLORD

Tenant shall indemnify and save harmless Landlord, its agents officials and employees from all claims, judgments, liabilities, costs, expenses and damages of every kind and nature which may be imposed upon or incurred by or asserted against Landlord, its agents, officials and employees, respectively, by reason of the acts, omissions or negligence on the part of Tenant or any of its agents, contractors, employees, sub-tenants, licensees or invitees, and arising from any accident, occurrence, injury (including death) or damage to any person or property occurring in, or about the Premises.

## ARTICLE 18

### CONDEMNATION

1.    If the entire Premises, or such portion thereof as in the opinion of the Tenant shall result in the remainder of the Premises to be economically unfeasible for restoration and use for the purposes herein let, shall be condemned, taken or acquired by a body having superior power of eminent domain other than Landlord, then this Lease shall terminate and come to an end upon the vesting of title in such condemnor.

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM          INDEX NO. 154341/2018

NYSCEF DOC. NO. 80                                         RECEIVED NYSCEF: 04/30/2019

FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM

NYSCEF DOC. NO. 43                                         RECEIVED NYSCEF: 07/09/2018

(a)    In the event of such taking and termination prior to the date of commencement of the actual construction of the Premises, Landlord shall be entitled to receive the entire award or awards with interest thereon, Tenant hereby expressly assigning to Landlord any and all such awards together with any and all rights of Tenant now or hereafter arising in and to the same or any part thereof.

(b)    In the event such taking and the termination of this Lease occurs during the period from the commencement of the actual construction of the building through Lease termination date, then (i) The first Leasehold Mortgagee shall be entitled to receive such portion of the award as its interest may appear; (ii) Landlord shall be entitled to receive such portion of the award as shall represent compensation for the value of the land considered as vacant, unimproved, unencumbered and unrestricted as of the date of taking; (iii) Landlord shall be entitled to receive an amount equal to two percent (2%) of the award for each year which has passed since the Lease Term Commencement Date. (iv) The Tenant shall receive the balance of the award.

2.    In the event of any such taking of such portion of the Premises which does not render the remaining portion of the Premises to be economically unfeasible, the term of this Lease shall not be reduced; and the award shall be distributed in the following manner:

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM    INDEX NO. 154341/2018
NYSCEF DOC. NO. 86    RECEIVED NYSCEF: 04/30/2019
FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM
NYSCEF DOC. NO. 43    RECEIVED NYSCEF: 07/09/2018

(i) The first Leasehold Mortgagee shall be entitled to receive such portion of the award as its interest shall appear;  (ii) Landlord shall be entitled to receive such portion of the award as shall represent compensation for the value of the land considered as vacant, unimproved, unencumbered and unrestricted as of the date of taking; (iii) Landlord shall be entitled to receive an amount equal to two percent (2%) of the award for each year which has passed since the Lease Term Commencement Date.

The Tenant shall, on receipt of the condemnation proceeds, proceed with reasonable diligence to repair, alter and restore the remaining part of the Premises to substantially former condition.

The Base Rent shall abate in proportion to the floor space taken by the Condmenor.

Any payments to be made to Tenant under the provisions of this Article are subject to the condition that Tenant shall not be in default of any obligation of this Lease.

Each party shall have the right, at its own expense, to appear in any condemnation proceeding and to participate in any and all hearings, trials and appeals therein.

In the event the Landlord or Tenant shall receive notice of any proposed or pending condemnation proceeding affecting the Premises, the party receiving such notice shall promptly notify the other party of the receipt and contents thereof.

If the order or decree in any condemnation proceeding shall fail to separately set the amount to be awarded to the Landlord and the amount to be

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM    INDEX NO. 154341/2018

FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM    RECEIVED NYSCEF: 04/30/2019

NYSCEF DOC. NO 43    RECEIVED NYSCEF: 07/09/2018

awarded to the Tenant, and if the Landlord and Tenant cannot agree thereon within thirty (30) days after the final award has been fixed and determined, such dispute shall be determined by arbitration in accordance with the provisions of Article 41 hereof.

## ARTICLE 19

### DEFAULT; CONDITIONAL LIMITATIONS

If Tenant defaults in fulfilling any of its obligations hereunder, including but not limited to construction of the retail mall in accordance with the time schedule herein, or if Tenant submits a deliberate and willful misstatement of Tenants Gross Operating Revenue or if the Premises become vacant or abandoned, then Landlord shall serve a written notice upon Tenant, specifying the nature of the default. If such failure or default is not cured within thirty (30) days with respect to non-monetary defaults and ten (10) days with respect to monetary defaults after Landlord's written notice to Tenant, then Landlord may serve a written three (3) day notice of cancellation of this Lease upon Tenant. Upon the date specified in said notice, this Lease shall automatically terminate as if such date were the Lease Term Expiration Date. If such default is of such a nature that it cannot, in Landlord's sole and absolute discretion, with due diligence be cured within thirty (30) days then Tenant shall immediately commence the curing of such default and proceed with due diligence shall provide Landlord with weekly written status reports indicating the progress of curing such default. Tenant's failure to provide the aforesaid weekly written status reports shall be deemed an event of default hereunder which must be cured within three (3) days after written notice to Tenant.

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM
NYSCEF DOC. NO. 88
FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM
NYSCEF DOC. NO. 43

INDEX NO. 154341/2018
RECEIVED NYSCEF: 04/30/2019
INDEX NO. 154341/2018
RECEIVED NYSCEF: 07/09/2018

## ARTICLE 20

### BANKRUPTCY; ADDITIONAL DEFAULT PROVISIONS

To the extent permitted by applicable law, this Lease and the Term and estate hereby granted are subject to the limitation that whenever Tenant shall make an assignment of the property of Tenant for the benefit of creditors or shall file a voluntary petition under any bankruptcy or insolvency law, or an involuntary petition alleging an act of bankruptcy or insolvency shall be filed against Tenant under any bankruptcy or insolvency law, or whenever a petition shall be filed against Tenant under the reorganization provisions of the United States Bankruptcy Act or under the provisions of any law of like import, or whenever a petition shall be filed by Tenant under the arrangement provisions of the United States Bankruptcy Act or under the provisions of any law of like import, or whenever a permanent receiver of Tenant or of or for the property of Tenant shall be appointed, then, such shall be considered a default under Article 19 and Landlord, (a) at any time after receipt of notice of the occurrence of any such event, or (b) if such event occurs without the acquiescence of Tenant, at any time after the event continues for one hundred twenty (120) days may give Tenant a notice of intention to end the term of this Lease at the expiration of five (5) days from the date of service of such notice of intention, and upon the expiration of said five (5) day period this Lease and the Term and estate hereby granted, whether or not the Term shall theretofore have commenced, shall terminate with the same effect as if that day were the Expiration Date, but Tenant shall remain liable for damages as provided in Article 21.

If this Lease shall be assumed or assigned by a trustee pursuant to the provisions of the Bankruptcy Reform Act of 1978 ("Bankruptcy Act"), the

– 34 –

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM

INDEX NO. 154341/2018

FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM

RECEIVED NYSCEF: 04/30/2019

NYSCEF DOC. NO. 43

RECEIVED NYSCEF: 07/09/2018

trustee shall cure any default under this Lease and shall provide such adequate assurance of future performance of this Lease as are provided in Section 365(b)(3) of the Bankruptcy Act, including without limitation, adequate assurance ("Adequate Assurances") (i) of the source of the Base Rent and Additional Rent; (ii) that there shall be no substantive breach in the provisions of this Lease; and (iii) that the use of the Premises shall in no way (a) diminish the reputation of the Building as a first class retail mall, or (b) impose any additional burden on the building systems or increase the services to be provided by Landlord.

If the trustee does not cure said defaults and provide Adequate Assurances within sixty (60) days after there has been an order for relief pursuant to the Bankruptcy Act, this Lease shall be deemed rejected and Landlord shall have no further liability hereunder to Tenant or any person claiming through or under Tenant, and if Tenant or any such person is in possession, Tenant or any such person shall forthwith quit and surrender the Premises to Landlord. If this Lease shall be so cancelled or terminated, Landlord, in addition to the other rights and remedies of Landlord under any provision of this Lease or under any statute or rule of law, may retain as liquidated damages any Security Deposit, Base Rent, Additional Rent or moneys received by Landlord from Tenant or others on behalf of Tenant.

If, at any time, (a) Tenant shall be comprised of two or more persons, or (b) Tenant's obligations under this Lease shall have been guaranteed by any person or (c) Tenant's interest in this Lease shall have been assigned, the word "Tenant" as used in this Section shall mean any one or more of the persons primarily or secondarily liable for Tenant's obligations under this Lease.

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM

NYSCEF DOC. NO. 88

FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM

NYSCEF DOC. NO. 43

INDEX NO. 154341/2018

RECEIVED NYSCEF: 04/30/2019
INDEX NO. 154341/2018

RECEIVED NYSCEF: 07/09/2018

## ARTICLE 21

### REMEDIES OF LANDLORD

In case of any default and termination of this Lease or in case of Landlord's recovery of possession of the Premises, all monies owed hereunder shall immediately become due and payable to the time of such termination, together with such expenses as Landlord may incur for legal expenses, repairs or renovations. All obligations of Tenant under this Lease shall survive such termination. Landlord shall have no obligation to re-let the Premises. However, Landlord may, at any time, and from time to time, re-let the Premises or any part thereof, and receive and collect the rents therefor, and may apply the same first to the payment of such expenses as the Landlord may have incurred in recovering possession of the Premises, including legal expenses, and for putting the same in good order or condition or preparing or altering the same for re-rental and expenses, commissions and charges paid, assumed or incurred by the Landlord in and about re-letting thereof, and then to the fulfilment of the covenants of the Tenant hereunder. Any such re-letting herein provided for may be for the remainder of the term of this Lease or for a longer or shorter period. In any such case and whether or not the Premises or any part thereof be re-let, the Tenant shall pay to the Landlord all Base Rent, Additional Rent and other sums required to be paid by the Tenant hereunder up to the time of such termination of this Lease, or of such recovery of possession of the Premises by the Landlord, as the case may be. Thereafter the Tenant shall, if required by Landlord, pay to the Landlord until the end of the term of this Lease (notwithstanding such earlier

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM
NYSCEF DOC. NO. 80

INDEX NO. 154341/2018
RECEIVED NYSCEF: 04/30/2019

FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM
NYSCEF DOC. NO. 43

RECEIVED NYSCEF: 07/09/2018

termination or recovery of possession) the equivalent of the amount of all Base Rent, Additional Rent, and all other sums required to be paid by the Tenant hereunder, less the net avails of re-letting, if any. This deficiency amount shall be due and payable on the first day of each calendar month. At its sole option Landlord shall have the election in place and instead of holding the Tenant so liable forthwith to recover against the Tenant, as damages for loss of the bargain and not as a penalty, an aggregate sum which, at the time of such termination of this Lease, or of such recovery of possession of the Premises by the Landlord, as the case may be, represents the then present worth of the excess, if any, of the aggregate of all Base Rent, Additional Rent, and other sums required to be paid by the Tenant hereunder that would have accrued for the balance of the term of the Lease over the aggregate of rental value of the Property for the balance of such term.

Landlord may offset the security deposit under Article 10 hereof against any payments due under this Article 21. Any amounts due hereunder shall be payable at the legal rate of interest.

## ARTICLE 22

### FEES AND EXPENSES

If Tenant defaults in the observance or performance of any of its terms or covenants within the time permitted, then Landlord may immediately or at any time thereafter and without notice in emergencies, and upon thirty (30) days prior written notice in other instances, perform the same for the account of Tenant. Any reasonable expenditures or obligations for the payment of money made in connection herewith shall be deemed to be Additional Rent and

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM    INDEX NO. 154341/2018

NYSCEF DOC. NO. 88    RECEIVED NYSCEF: 04/30/2019

FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM    INDEX NO. 154341/2018

NYSCEF DOC. NO. 43    RECEIVED NYSCEF: 07/09/2018

shall be paid by Tenant to Landlord within five (5) days of rendition of any
bill or statement to Tenant therefor.  Any late payment shall be payable at
the legal rate of interest in effect on the date of default.

## ARTICLE 23

### NO WAIVER

The failure of the Landlord to insist upon strict performance of any
covenant or condition of this Lease or to exercise any option herein conferred
in any one or more instance shall not be construed as a waiver or
relinquishment for the failure of any such covenants, conditions or options,
but the same shall be and remain in full force and effect.  Nor shall the
receipt by Landlord of rent with knowledge of the breach of any covenant of
this Lease be deemed a waiver of such breach.

## ARTICLE 24

### LANDLORD'S REMEDIES CUMULATIVE

It is understood and agreed that the remedies herein given to Landlord
shall be cumulative and the exercise of any one remedy by Landlord shall not
be to the exclusion of any other remedy.

## ARTICLE 25

### ASSIGNMENT AND SUBLETTING; LEASEHOLD MORTGAGES

1.    This Lease or the interest of Tenant in this Lease shall not be sold,
assigned or otherwise transferred, whether by operation of law or otherwise,
and none of the issued or outstanding capital stock of any corporation which
directly or indirectly is Tenant under this Lease or which is a general

- 38 -

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM          INDEX NO. 154341/2018

NYSCEF DOC. NO. 86
FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM          RECEIVED NYSCEF: 04/30/2019
                                                          INDEX NO. 154341/2018

NYSCEF DOC. NO. 43                                        RECEIVED NYSCEF: 07/09/2018

partner of any partnership that is Tenant under this Lease shall be sold, assigned or transferred, nor shall additional stock in any such corporation be issued, so as to result in a change of the stock ownership of such corporation as held by the shareholders thereof on the date when such corporation became Tenant under this Lease pursuant to the terms hereof, nor shall any general partner's interest in a partnership which is Tenant under this Lease be sold, assigned or transferred, nor shall Tenant sublet the Premises as an entirety or substantially as an entirety or otherwise, without the prior written consent of Landlord in each case, which consent will not be unreasonably withheld or delayed.

2.    No subletting of more than thirty percent (30%) of the Premises to any one Tenant shall have any validity except upon compliance with the provisions of this Article 25.

3.    Any consent by Landlord under Article 25 (1) above shall apply only to the specific transaction thereby authorized and shall not relieve Tenant from the requirement of obtaining the prior written consent of Landlord to any further sale or assignment of this Lease or transfer of stock or subletting of more than thirty percent (30%) of the Premises to any one Tenant.

4.    Tenant shall use its best efforts to cause any subtenants, operators, licensees, concessionaires or other occupants of the (hereinafter "Subtenants") to comply with all their obligations under subleases, occupancy, license and concession agreements (hereinafter "Subleases") and shall diligently enforce all of the rights of the Landlord.

- 39 -

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM

INDEX NO. 154341/2018
RECEIVED NYSCEF: 04/30/2019

FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM

NYSCEF DOC. NO. 43

INDEX NO. 154341/2018
RECEIVED NYSCEF: 07/09/2018

5.    The fact that a violation or breach of any of the terms, provisions or conditions of this Lease results from or is caused by an act or omission by any of the Subtenants shall not relieve Tenant of Tenant's obligation to cure the same.  Tenant shall take all necessary steps to prevent any such violation or breach.

6.    If this Lease and the Leasehold Estate of Tenant hereunder are terminated by Summary Dispossess Proceedings, or otherwise, all of the Subtenants shall attorn to Landlord and Landlord shall accept attornment by a Subtenant at any time after temporary or permanent Certificate of Occupancy has been obtained provided:

(a)    the rent provided in the Sublease was not less than the prevailing rate, including escalations for Real Estate Taxes and Operating Costs, for comparable space at the time the Sublease was entered into.  In the event Landlord determines the rent was less than the prevailing rate at the time the Lease was entered into, then the rent shall be increased to the prevailing rate.

(b)    the Sublease provides for escalation for real estate taxes or payments in lieu of taxes and operating costs (including labor), or escalation for real estate taxes or payments in lieu of taxes based on a cost of living index; and

(c)    the Sublessee is not then in default in any of the terms and conditions of the Sublease, and has not prepaid more than one (1) months's rent.

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM    INDEX NO. 154341/2018

NYSCEF DOC. NO. 88    RECEIVED NYSCEF: 04/30/2019

FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM    INDEX NO. 154341/2018

NYSCEF DOC. NO. 43    RECEIVED NYSCEF: 07/09/2018

On the first anniversary date of this Lease, Tenant promptly shall deliver to Landlord a schedule of all Subleases, which schedule shall be updated each anniversary date thereafter setting forth the names of all Subtenants, with a photostatic copy of each of the Subleases. Upon reasonable request of Landlord, Tenant shall permit Landlord and its agents and representatives to inspect all Subleases, once every year.

Definitions:

For the purpose of this Article the following definitions shall apply.

"Leasehold Mortgage" ("Mortgage") shall mean a mortgage of this Lease and the Lessee's leasehold estate created hereby and upon the interest of the Lessee, in the Improvements, including a construction or building loan leasehold mortgage, a temporary leasehold mortgage, a permanent leasehold mortgage, any combination thereof, and any replacement, renewal, modification, consolidation and extention thereof and made or held by a Leasehold Mortgagee as hereinafter defined.

"Leasehold Mortgagee" ("Mortgagee") shall mean a holder of a Leasehold Mortgage which is (i) a bank, savings bank (state or federal), trust company, savings and loan association (state or federal), foundation, endowment fund, insureance company, union, pension, retirement or welfare fund or system, an educational, scientific or religious society regularly engaged in making loans on real estate, having a net worth of Fifty Million Dollars ($50,000,000) or (ii) the United States of America or any State or any municipal subdivision thereof or any agency, instrumentality, or department thereof or any public benefit corporation.

- 41 -

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM    INDEX NO. 154341/2018

NYSCEF DOC. NO. 98    RECEIVED NYSCEF: 04/30/2019

FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM    INDEX NO. 154341/2018

NYSCEF DOC. NO. 43    RECEIVED NYSCEF: 07/09/2018

7.    Tenant shall not mortgage or encumber this Lease except in compliance with the following:

No mortgage or any extension thereof made by Tenant shall extend to or affect the estate and interest of Landlord in and to the Premises or any part thereof. No mortgage of Tenant's interest in this Lease shall be valid or of any force or effect unless and until (a) the same is a Mortgage held by a Leasehold Mortgagee, (b) a photostatic copy of the original of each instrument creating and effecting such Mortgage, certified by Tenant to be a true copy of such instrument, and written notice containing the name and post office address of the Mortgagee, shall have been delivered to Landlord, and (c) the Mortgage shall contain the substantially following provisions:

"(1) This mortgage is executed upon the condition (i) that no purchaser at any foreclosure sale shall acquire any right, title or interest in or to the lease hereby mortgaged, unless the said purchaser, or the person, firm or corporation to whom or to which such purchaser's right has been assigned, shall, in the instrument transferring to such purchaser or to such assignee the interest of tenant under said lease, assume and agree to perform all of the terms, covenants and conditions of said lease thereafter to be observed or performed on the part of such tenant, (ii) that no further or additional mortgage or assignment of said Lease shall be made except in accordance with the provisions contained in Article 25 of said lease, and (iii) that a duplicate original of said instrument containing such assumption agreement, duly executed and acknowledged by purchaser or such assignee and in recordable form, is delivered to landlord under said lease immediately after the consummation of such sale, or, in any event, prior to taking possession of the premises demised thereby.

(2)    The mortgagee waives all right and option to retain and apply the proceeds of any insurance or the proceeds of any condemnation award toward payment of the sum secured by this mortgage to the extent such proceeds are required for the demolition, repair or restoration of the mortgaged premises in accordance with the provisions of the lease hereby mortgaged.

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM    INDEX NO. 154341/2018

NYSCEF DOC. NO. 88    RECEIVED NYSCEF: 04/30/2019

FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM    INDEX NO. 154341/2018

NYSCEF DOC. NO. 43    RECEIVED NYSCEF: 07/09/2018

(3)    This mortgage and all rights of the mortgagee hereunder are, without the necessity for the execution of any further documents, subject and subordinate to the landlord's rights under the lease hereby mortgaged and, subject to the provisions of said lease.

(a)    If Tenant shall mortgage this Lease in compliance with the provisions of Article 25 hereof, then Landlord shall give to each Mortgagee, at the address of such Mortgagee set forth in the notice mentioned in Article 25 hereof, a copy of each notice of Default by Tenant at the same time as, and whenever, any such notice of Default shall thereafter be given by Landlord to Tenant, and no such notice of Default by Landlord shall be deemed to have been duly given to Tenant unless and until a copy thereof shall have been so given to each Mortgagee after failure of Tenant to cure within the time permitted, if any.  Each Mortgagee (i) shall thereupon have a period of thirty (30) days more with respect to non-monetary defaults and ten (10) days more with respect to monetary defaults, after such notice is given to it, for remedying the Default, or causing the same to be remedied, or causing action to remedy a Default.  Landlord will accept performance by a Mortgagee of any covenant, condition, or agreement on Tenant's part to be performed hereunder with the same force and effect as though performed by Tenant.

(b)    Notwithstanding the provisions of paragraph (a) hereof, no Default by Tenant shall be deemed to exist as long as a Mortgagee shall, in good faith, have commenced promptly either

(i)    to cure the Default and to prosecute the same to completion, or

(ii)    if possession of the Premises is required in order to cure the Default, to institute foreclosure proceedings and obtain possession directly or through a receiver, to prosecute such proceedings with due diligence and, upon obtaining such

- 43 -

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM

NYSCEF DOC. NO. 86

INDEX NO. 154341/2018

RECEIVED NYSCEF: 04/30/2019

FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM

NYSCEF DOC. NO. 43

RECEIVED NYSCEF: 07/09/2018

possession, commence promptly to cure the Default and to prosecute the same to completion with diligence and continuity, provided, however, that the Mortgagee shall have delivered to Landlord, in writing, its agreement to take the action described in clause (I) or (ii) herein, and that during the period in which such action is being taken (and any foreclosure proceedings are pending) all of the other obligations of Tenant under this Lease, to the extent they are susceptible of being performed by the Mortgagee, are being duly performed. However, at any time after the delivery of the aforementioned agreement, the Mortgagee may notify Landlord, in writing, that it has relinquished possession of the Premises or that it will not institute foreclosure proceedings or, if such proceedings have been commenced, that it has discontinued them, and in such event the Mortgagee shall have no further liability under such agreement from and after the date it delivers such notice to Landlord (except for any obligations accruing prior to the date it delivers such notice), and thereupon Landlord shall have the unrestricted right to terminate this Lease and to take any other action it deems appropriate by reason of any Default by Tenant, and upon any such termination the provisions of Article 25 hereof shall apply.

(c)    Landlord and Tenant agree that, from and after the date upon which Landlord receives the notice mentioned in Article 25 (7) hereof, they will not modify or amend this Lease in any respect or cancel or terminate this Lease other than as provided herein without the prior written consent of the Mortgagee who gave such notice.

(d)    Except as provided in Article 25 hereof, no Mortgagee shall become liable under the provisions of this Lease unless and until such time as it becomes, and then only for as long as it remains, the owner of the leasehold estate created hereby.

(e)    The Leasehold Mortgagee or its nominee may become the legal owner and holder of the interest of the Tenant under this Lease, including, without limitation, the interest of Tenant in all improvements erected by Tenant on the Premises, by foreclosure or other enforcement proceedings, or by obtaining an assignment of this Lease in lieu of foreclosure or through

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM
NYSCEF DOC. NO. 88

FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM
NYSCEF DOC. NO. 43

INDEX NO. 154341/2018
RECEIVED NYSCEF: 04/30/2019
INDEX NO. 154341/2018
RECEIVED NYSCEF: 07/09/2018

settlement of or arising out of any pending or threatened foreclosure proceeding without Landlord's consent, whereupon the Leasehold Mortgagee shall immediately become and remain liable under this Lease except that such liability shall be limited to the period of ownership by the Leasehold Mortgagee of this Lease provided that in case of any proposed assignment of this Lease by such Leasehold Mortgagee, the Leasehold Mortgagee shall promptly deliver to Landlord the assignee's assumption of this Lease without limitation as to the duration of liability. Upon consent of Landlord and subject to the applicable terms and provisions of this Lease and after such notice and consent and upon the delivery to Landlord of a duplicate original of an instrument of assignment containing the assignee's assumption of this Lease, such assignee of Leasehold Mortgagee shall become Tenant, and shall be substituted for the Leasehold Mortgagee as the owner and holder of this Lease for all purposes, as of the effective date of such assignment; and from and after the effective date of such assignment the Leasehold Mortgagee or its designee or nominee shall be released from all liability under this Lease thereafter arising.

(f)    i.    In the event of the termination of this Lease prior to its stated expiration date, Landlord shall notify Leasehold Mortgagee and indicate in writing to Leasehold Mortgagee all amounts then due to Landlord under this Lease (or such new lease), and Landlord may elect to enter into a new lease of the Premises with the Leasehold Mortgagee or its nominee for the remainder of the term, to commence as at the date of the termination of this Lease (or any new lease) at the same rental and upon all of the other terms, provisions, covenants and agreements as in this Lease contained, and any other rights and

- 45 -

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM    INDEX NO. 154341/2018

NYSCEF DOC. NO. 88                                   RECEIVED NYSCEF: 04/30/2019

FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM    INDEX NO. 154341/2018

NYSCEF DOC. NO. 43                                   RECEIVED NYSCEF: 07/09/2018

options then remaining, upon condition that (a) Leasehold Mortgagee shall make written request to Landlord for such new lease not later than fifteen (15) days from the date such notice by the Landlord is given Leasehold Mortgagee;

(f)    2.    Leasehold Mortgagee shall pay to Landlord at the time of the execution and delivery of said new lease all sums which would, at the time of the execution and delivery thereof, be due under this Lease but for such termination, and pay any and all expenses, including reasonable counsel fees, court costs and disbursements incurred by Landlord through the period ending on the commencement date of the new lease in connection with any such default and termination as well as in connection with the execution and delivery of such new lease but without giving effect to any provision permitting acceleration of rentals upon termination of the Lease of amounts not otherwise then due;

(f)    3.    Upon the execution and delivery of such new lease in accordance with the provisions of this subparagraph, all subleases which theretofore may have been assigned and transferred to Landlord shall thereupon be assigned and transferred without recourse by Landlord to the Leasehold Mortgagee, as new tenant, whereupon the subparagraph (a) immediately above shall apply with equal force and respect to such new lease; and

(f)    4.    Such new lease shall require the tenant thereunder to perform any obligation of Tenant under this Lease not then performed.  A tenant named in any such new lease may assign its rights thereunder without Landlord's consent, but subject to the applicable terms and provisions of this Lease, if the assignee shall deliver to Landlord an instrument in recordable form, whereunder the assignee shall assume all obligations and liabilities of tenant thereafter arising under the lease so assigned.

- 46 -

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM    INDEX NO. 154341/2018

FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM    RECEIVED NYSCEF: 04/30/2019

NYSCEF DOC. NO. 43    RECEIVED NYSCEF: 07/09/2018

(g)   Upon written request, Landlord shall enter into a non-disturbance agreement with the Leasehold Mortgagees and Subtenants, which agreement shall be in form and substance reasonably acceptable to both parties, so long as Tenant is not in default and performance bonds are in place.

8.    Anything to the contrary herein notwithstanding, the Tenant upon a bonafide assignment of this Lease may take back a purchase money mortgage on the Lease and Leasehold estate created thereby as part of the purchase price, and may cause same to be duly recorded. A true copy of said mortgage shall be delivered to the Landlord within ten (10) days after execution and delivery thereof. Said mortgage shall be subject and subordinate to this Lease and to any modifications or extensions thereof.

## ARTICLE 26

### END OF TERM

Upon the expiration or other termination of the term of this Lease, Tenant shall quit and surrender the Premises in good order and condition, ordinary wear and tear and damage by the elements, including fire or other casualty, excepted.

## ARTICLE 27

### WAIVER OF JURY TRIAL

To the extent such waiver is permitted by law, the parties hereto waive trial by jury in any action or proceeding brought in connection with this Lease or the Premises. This provision shall survive the expiration date of this Lease.

- 47 -

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM    INDEX NO. 154341/2018

NYSCEF DOC. NO. 88    RECEIVED NYSCEF: 04/30/2019

FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM    INDEX NO. 154341/2018

NYSCEF DOC. NO. 43    RECEIVED NYSCEF: 07/09/2018

## ARTICLE 28

### NOTICES

Any notice provided for in the Lease shall be in writing and shall be deemed to have been duly given only if delivered personally or sent by registered or certified mail in a postpaid envelope addressed: if to Tenant, at the above described building;  if to Landlord, at Landlord's address as set forth above;  or to either, at such other address as Tenant or Landlord, respectively, may designate in writing.  Notice shall be deemed to have been duly given, if delivered personally, on delivery thereof, and if mailed, on the third (3rd) day after the mailing thereof.

## ARTICLE 29

### NO ORAL AGREEMENTS

This Lease contains all the promises, agreements, conditions, inducements and understandings between Landlord and Tenant relative to the Premises, and there are no promises, agreements, conditions, understandings, inducements, warranties or representations, oral or written, expressed or implied, between them other than as herein.  No amendment of this Lease shall be valid or binding unless in writing and signed by both Landlord and Tenant.

## ARTICLE 30

### QUIET ENJOYMENT

Landlord covenants that if and as long as Tenant pays the rent and any additional rent and performs the terms and covenants hereof, Tenant shall peaceably and quietly enjoy the Premises for the Term hereby granted subject to the terms of this Lease.

- 48 -

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM    INDEX NO. 154341/2018
NYSCEF DOC. NO. 88                                  RECEIVED NYSCEF: 04/30/2019

FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM
NYSCEF DOC. NO. 43                                  RECEIVED NYSCEF: 07/09/2018

## ARTICLE 31

## NO DISCRIMINATION

Throughout the term of this Lease, Tenant shall not discriminate against any employee or applicant for employment because of race, color, creed, national origin, age or sex, sexual orientation or affectional preference. Tenant shall take affirmative action to ensure that employees and applicants for employment with Tenant, its sublessees, contractors and subcontractors are treated without regard to their race, color, creed, national origin, age or sex, sexual orientation or affectional preference, and shall take affirmative action to assist in providing training and job opportunities in order to ensure equal employment opportunities for members of minority groups with Tenant, its sublessees, contractors and subcontractors. As used herein, the term "treated" shall mean and include, without limitation, the following: recruited, whether by advertising or other means; compensated, whether in the form of rates of pay or other forms of compensation; selected for training, including apprenticeship; promoted; upgraded; downgraded; demoted; transferred; laid off; and terminated. Tenant will post in conspicuous places within the Premises, available to employees of Tenant and applicants for employment, notices provided by Landlord setting forth the language of this non-discrimination provision; and

(a)    Tenant, in all solicitations or advertisements for employees placed by or on behalf of Tenant, shall state that all qualified applicants will be considered for employment without regard to race, color, creed or national origin, age or sex, sexual orientation or affectional preference;

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM    INDEX NO. 154341/2018
NYSCEF DOC. NO. 86                                      RECEIVED NYSCEF: 04/30/2019

FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM
NYSCEF DOC. NO. 43                                      RECEIVED NYSCEF: 07/09/2018

(b)    Tenant shall send each labor union or other representative of workers with which it has a collective bargaining agreement or other contract or understanding relating to employment at the Premises a notice advising such labor union or worker's representative of Tenant's agreement as contained in this paragraph and a copy thereof shall be sent to the Commissioner within three (3) days after notification to such union or representative; and

(c)    Tenant shall furnish to Landlord all information required by the Landlord pursuant to this paragraph and will permit access by Landlord to its books, records and accounts for the purposes of investigation to ascertain compliance with this paragraph. To evidence compliance with this Article, Tenant shall furnish such compliance reports as may from time to time be required by Landlord, such reports to contain information as to Landlord's practices, policies, programs, employment policies and employment statistics. Such compliance reports shall, if Landlord so requests, contain the following information:

(i)    Information as to the practices, policies, programs, employment policies and employment statistics of Tenant's sublessees, contractors and subcontractors with respect to the demised Premises.

(ii)    If Tenant has a collective bargaining agreement or other contract or understanding with a labor union or an agency referring workers or providing or supervising apprenticeship or training for such workers, or with a sublessee, contractor or subcontractor, such information as to such parties' practices and policies affecting compliance as Landlord may require, provided that the extent of such information is within the exclusive possession of such party and such party shall refuse to furnish such information to Tenant, Tenant shall so certify to Landlord as part of its compliance report and shall

- 50 -

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM    INDEX NO. 154341/2018
NYSCEF DOC. NO. 88                                   RECEIVED NYSCEF: 04/30/2019

FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM
NYSCEF DOC. NO. 43                                   RECEIVED NYSCEF: 07/09/2018

set forth what efforts it has made to obtain such information.  Tenant shall
include or cause to be included the provisions of this Article in every
sublease, contract and subcontract of Tenant relating to the Premises and each
obligation of each such sublessee, contractor or subcontractor.

## ARTICLE 32

### INVESTIGATIONS

32.1    The parties to this agreement agree to cooperate fully and
faithfully with any investigation, audit or inquiry conducted by a State of
New York (State) or City of New York (City) governmental agency or authority
that is empowered directly or by designation to compel the attendance of
witnesses and to examine witnesses under oath, or conducted by the Inspector
General of a governmental agency that is a party in interest to the
transaction, submitted bid, submitted proposal, contract, lease, permit, or
license that is the subject of the investigation, audit or inquiry.

32.2(a)  If any person who has been advised that his or her statement,
and any information from such statement, will not be used against him or her
in any subsequent criminal proceeding refuses to testify before a grand jury
or other governmental agency or authority empowered directly or by designation
to compel the attendance of witnesses and to examine witnesses under oath
concerning the award of or performance under any transaction, agreement,
lease, permit, contract, or license entered into with the City, the State, or
any political subdivision or public authority thereof, or the Port Authority
of New York and New Jersey, or any local development corporation within the
City, or any public benefit corporation organized under the laws of the State
of New York, or;

- 51 -

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM
INDEX NO. 154341/2018
NYSCEF DOC. NO. 88
RECEIVED NYSCEF: 04/30/2019

FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM
NYSCEF DOC. NO. 43
RECEIVED NYSCEF: 07/09/2018

32.2(b)  If any person refuses to testify for a reason other than the assertion of his or her privilege against self incrimination in an investigation, audit or inquiry conducted by a City or State governmental agency or authority empowered directly or by designation to compel the attendance of witnesses and to take testimony under oath, or by the Inspector General of the governmental agency that is a party in interest in, and is seeking testimony concerning the award of, or performance under, any transaction, agreement, lease, permit, contract, or license entered into with the City, the State, or any political subdivision thereof or any local development corporation within the City, then;

32.3(a)  The commissioner or agency head whose agency is a party in interest to the transaction, submitted bid, submitted proposal, contract, lease, permit, or license shall convene a hearing, upon not less than five (5) days' written notice to the parties involved to determine if any penalties should attach for the failure of a person to testify.

32.3(b)  If any nongovernmental party to the hearing requests an adjournment, the commissioner or agency head who convened the hearing may, upon granting the adjournment, suspend any contract, lease, permit, or license pending the final determination pursuant to paragraph 32.5 below without the City incurring any penalty or damages for delay or otherwise.

32.4    The penalties which may attach after a final determination by the commissioner or agency head may include but shall not exceed:

> (a)  The disqualification for a period not to exceed five (5) years from the date of an adverse determination for any person, or any entity of which such person was a member at the time the testimony was sought, from submitting bids

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM    INDEX NO. 154341/2018
NYSCEF DOC. NO. 88    RECEIVED NYSCEF: 04/30/2019

FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM    INDEX NO. 154341/2018
NYSCEF DOC. NO. 43    RECEIVED NYSCEF: 07/09/2018

for, or transacting business with, or entering into or
obtaining any contract, lease, permit or license with or
from the City; and/or

(b)  The cancellation or termination of any and all such
existing City contracts, leases, permits or licenses that
the refusal to testify concerns and that have not been
assigned as permitted under this agreement, nor the
proceeds of which pledged, to an unaffiliated and
unrelated institutional lender for fair value prior to
the issuance of the notice scheduling the hearing,
without the City incurring any penalty or damages on
account of such cancellation or termination; monies
lawfully due for goods delivered, work done, rentals, or
fees accrued prior to the cancellation or termination
shall be paid by the City.

32.5    The commissioner or agency head shall consider and address in
reaching his or her determination and in assessing an appropriate penalty the
factors in paragraphs (a) and (b) below. He or she may also consider, if
relevant and appropriate, the criteria established in paragraphs (c) and (d)
below in addition to any other information which may be relevant and
appropriate:

(a)  The partys' good faith endeavors or lack thereof to cooperate
fully and faithfully with any governmental investigation or
audit, including but not limited to the discipline, discharge,
or disassociation of any person failing to testify, the
production of accurate and complete books and records, and the
forthcoming testimony of all other members, agents, assignees
or fiduciaries whose testimony is sought.

(b)  The relationship of the person who refused to testify to any
entity that is a party to the hearing, including, but not
limited to, whether the person whose testimony is sought has
an ownership interest in the entity and/or the degree of
authority and responsibility the person has within the entity.

(c)  The nexus of the testimony sought to the subject entity and
its contracts, leases, permits or licenses with the City.

(d)  The effect a penalty may have on an unaffiliated and unrelated
party or entity that has a significant interest in an entity
subject to penalties under 32.4 above, provided that the party

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM

INDEX NO. 154341/2018

NYSCEF DOC. NO. 88

RECEIVED NYSCEF: 04/30/2019

FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM

INDEX NO. 154341/2018

NYSCEF DOC. NO. 43

RECEIVED NYSCEF: 07/09/2018

or entity has given actual notice to the commissioner or agency head upon the acquisition of the interest, or at the hearing called for in 32.3(a) above gives notice and proves that such interest was previously acquired. Under either circumstance the party or entity must present evidence at the hearing demonstrating the potential adverse impact a penalty will have on such person or entity.

32.8(a)  The term "license" or "permit" as used herein shall be defined as a license, permit, franchise or concession not granted as a matter of right.

(b)  The term "person" as used herein shall be defined as any natural person doing business alone or associated with another person or entity as a partner, director, officer, principal or employee.

(c)  The term "entity" as used herein shall be defined as any firm, partnership, corporation, association, or person that receives monies, benefits, licenses, leases, or permits from or through the City or otherwise transacts business with the City.

(d)  The term "member" as used herein shall be defined as any person associated with another person or entity as a partner, director, officer, principal or employee.

## ARTICLE 33

### NO SURRENDER WITHOUT RESOLUTION

No act done by Tenant, its officers or agents, during the term of this Lease, shall be deemed a surrender of the demised Premises, and no agreement of surrender, shall be valid unless duly authorized by the Board of Estimate. In the event of duly authorized surrender all sublessees shall attorn to Landlord and Landlord shall accept such attornment if the conditions set forth in Article 25(6) are complied with.

- 54 -

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM    INDEX NO. 154341/2018
NYSCEF DOC. NO. 86    RECEIVED NYSCEF: 04/30/2019

FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM
NYSCEF DOC. NO. 43    RECEIVED NYSCEF: 07/09/2018

## ARTICLE 34

### HOLDOVER TENANCY

In the event Tenant holds over by continuing to occupy the Premises or any portion thereof after the expiration of the Term of this Lease, Tenant, at Landlord's option, shall be a month-to-month Tenant under the same provisions of this Lease except that the Base Rent shall increase by fifteen percent (15%) for the first year of the month-to-month term.  For each and every year thereafter, the Base Rent shall increase by fifteen percent (15%) of the Base Rent for the previous year.  The acceptance of any payment shall not prejudice Landlord in any action or proceeding to regain possession.

## ARTICLE 35

### DAMAGES FOR FAILURE TO SURRENDER POSSESSION

If Tenant fails to surrender possession of the Premises upon expiration of the notice of termination of this Lease Tenant shall be liable for any and all damages including consequential, incidental, special and otherwise, including reasonable attorney's fees for any proceedings resulting therefrom and Landlord shall offset the security deposit under Article 10 hereof against such damages, which damages shall in no event be limited to the security deposit.

In addition Tenant shall pay use and occupancy for the Premises during the period it remains in possession after expiration of the notice of termination at a rate which shall be the higher of either (1) the rate it would have paid had it been a month-to-month tenant under Article 34 hereof, or (2) at the rate established by the successful bid at an auction of the

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM    INDEX NO. 154341/2018
NYSCEF DOC. NO. 43                                  RECEIVED NYSCEF: 04/30/2019

FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM
NYSCEF DOC. NO. 43                                  RECEIVED NYSCEF: 07/09/2018

Premises, if there is one, held subsequent to expiration of Tenant's notice of termination.  Tenant shall pay this use and occupancy on the first day of each month during the period Tenant remains in possession after expiration of the notice of termination.  These monthly payments shall be deposited in escrow pending determination of any proceedings against Tenant brought by Landlord to regain possession of the Premises.

The provisions of this Article shall not relieve Tenant from any of its obligations or liabilities under Article 21 hereof.

## ARTICLE 36

### MISCELLANEOUS

(a) In addition to and not in substitution for any other requirement of this Lease, the Tenant agrees that it will not refuse to hire or employ, nor bar or discharge from employment, nor discriminate against any persons in compensation or in terms, conditions or privileges of employment because of age, race, creed, color, national origin, sex, marital status, handicap, sexual orientation and affectional preference.

The City recognizes that agreement by Tenant not to discriminate on the grounds of sexual orientation and affectional preference does not constitute an endorsement by the Tenant of any particular sexual orientation or affectional preference.  The City further recognizes that such agreement shall not in any way prevent the Tenant from making employment decisions bases on job related conduct.

- 56 -

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM    INDEX NO. 154341/2018
NYSCEF DOC. NO. 88    RECEIVED NYSCEF: 04/30/2019
FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM    INDEX NO. 154341/2018
NYSCEF DOC. NO. 43    RECEIVED NYSCEF: 07/09/2018

(b) If any term, covenant, condition or provision of this Lease shall be finally determined to be invalid or unenforceable by the Courts having jurisdiction, such determination shall not affect the validity and enforceability of the remaining terms, covenants, conditions and provisions of this Lease.

(c) This agreement shall be governed by and construed in accordance with the laws of the State of New York.

(d) The terms and conditions herein shall bind and inure to the benefit of Landlord and Tenant and their representatives, heirs, successors and assignees.

## ARTICLE 37

### NON-MERGER AGREEMENT

There shall be no merger of Landlord's estate in the Premises with the Tenant's estate therein by reason of the fact that the same individual, partnership, firm or corporation, or other entity, may acquire all of such estates, directly or indirectly. No such merger shall occur until all individuals, partnerships, firms, corporations or other entities having any interest in such estates, including any holder of a leasehold or fee mortgage, join in a written instrument effecting such merger.

## ARTICLE 38

### BROKERAGE CLAUSE

Tenant represents and warrants to Landlord and Landlord represents and warrants to Tenant that neither has dealt with a broker or finder in connection with this Lease and/or the Premises. Each party hereto covenants

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM          INDEX NO. 154341/2018

FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM          RECEIVED NYSCEF: 04/30/2019

NYSCEF DOC. NO. 43                                         RECEIVED NYSCEF: 07/09/2018

and agrees to indemnify and hold the other harmless from and against any and all claims for commissions and other compensation made by any Finder or Finders and/or any broker or brokers based on any dealings with the other party in connection with this Lease, together with all costs and expenses incurred by the other party in resisting such claims (including, without limitation, attorney's fees).

## ARTICLE 39

### FORCE MAJEURE

Tenant shall not be deemed in default in the performance of any obligation or undertaking provided herein in the event and/or so long as the performance of any such obligation is prevented or delayed, retarded or hindered by Act of God, fire, earthquake, floods, explosion, action of the elements, war, hostilities, invasion, insurrection, riot, mob violence, sabotage, inability to procure or general shortage of labor equipment, facilities, materials or supplies in the open market, failure of transportation, strikes, lockouts, action of labor unions, condemnation, requisition, laws, orders of government or civil or military or naval authorities, or any other cause, whether similar or dissimilar to the foregoing, not within the control of Tenant.

## ARTICLE 40

### EXCULPATION

The Tenant and any individuals or group of individuals or other entities comprising the Tenant, their heirs, successors or assigns or any disclosed principles thereof shall have no personal liability under any of the

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM    INDEX NO. 154341/2018

NYSCEF DOC. NO. 90    RECEIVED NYSCEF: 04/30/2019

FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM    INDEX NO. 154341/2018

NYSCEF DOC. NO. 43    RECEIVED NYSCEF: 07/09/2018

terms, covenants and conditions of this Lease, the Landlord herewith agreeing to look solely to the Tenant's and such other individuals or group of individuals or other entities collectively or derivatively comprising Tenant, their heirs, successors and assigns:

    (a)   interest in the Premises;

    (b)   any personal property owned by them and located on the Premises; and

    (c)   any net income derived by the Tenant from the Premises within two (2) months prior to the taking of the Premises by Landlord;

    (d)   deposits made by tenant pursuant to Article 10 of this Lease;

to satisfy each and every right or remedy of the Tenant in the event of breach by the Tenant or any individual or group of entities as above set forth as such parties' sole liability arising out of or in any way related to this Lease.

If Tenant is in default of any of the terms, covenants or conditions of this Lease it may be deemed a defaulter upon an obligation to the City under Section 345 of the New York City Charter notwithstanding the provisions of this Article 40.

For the purpose of identifying a defaulter hereunder, the interests and shares of a spouse shall be attributed to the other spouse; the interests and shares of a corporation shall be attributed to any shareholder owning tenpercent (10%) or more of its voting stock and the interests and shares of its shareholders shall be attributed to a corporation; the owners and agents; and the interests of its owners shall be attributed to a partnership, joint venture association or other entity of whatsoever kind.

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM    INDEX NO. 154341/2018
NYSCEF DOC. NO. 86                                   RECEIVED NYSCEF: 04/30/2019
FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM    RECEIVED NYSCEF: 07/09/2018
NYSCEF DOC. NO. 43

The exculpation provisions of this Article shall not be applicable in the event Tenant fails to comply with the provisions of Article 32 of this Lease.

## ARTICLE 41

### ESTOPPEL CERTIFICATE

Landlord agrees that from time to time, within ten (10) days after Tenant's written request, Landlord will execute, acknowledge and deliver to Tenant a statement certifying to such reasonable information regarding this Lease as Tenant may request, including (without limitation) the commencement and expiration dates of the Term, that this Lease is unmodified and in full force and effect (or if there have been modifications, that it is in full force and effect as modified and stating the modifications), and the dates to which Rent and all other sums due hereunder from Tenant have been paid in advance, if any, and stating whether or not to the knowledge of the signer of such certificate Tenant is in default under this Lease, and, if so, specifying each such default of which the signer has knowledge.

## ARTICLE 42

### LEASE TO BE RECORDED

Upon execution and acknowledgment of this Lease, and any amendments hereto Tenant shall record a memorandum of this Lease and any amendments hereto in the office of the City Register in New York County in accordance with Real Property Law Section 291-c.

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM          INDEX NO. 154341/2018
FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM          RECEIVED NYSCEF: 04/30/2019
NYSCEF DOC. NO. 43                                        RECEIVED NYSCEF: 07/09/2018

## ARTICLE 43

### BOOKS AND RECORDS; AUDIT

Tenant, during the term of this Lease, shall maintain adequate systems of internal control and shall keep on the Premises or elsewhere within New York City complete and accurate records, books of account and data, in accordance with generally accepted accounting procedures, which shall show in detail the total business transacted by Tenant including but not limited to the Gross Receipts, and Common Area Maintenance expenses. Such books and records maintained pursuant to this Lease shall be conveniently segregated from other business matters of Tenant.

Tenant shall use such accounting procedures and keep such additional books and records in accordance with generally accepted accounting procedures; and Landlord or the Comptroller or any other duly authorized representative shall have the right to examine the record keeping procedures of Tenant at reasonable intervals during the term of this Lease. Tenant shall maintain such records, books of account and data at the Premises or elsewhere in New York City for a minimum of six (6) years. Tenant agrees to cooperate fully and assist Landlord or the Comptroller in any examination of audit thereof.

## ARTICLE 44

### INVALIDITY OF PARTICULAR PROVISIONS

If any term or provision of this Lease, or the application thereof to any person or circumstances, to any extent, shall be legally invalid or unenforceable, the remainder of this Lease or the application of such

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM
INDEX NO. 154341/2018

FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM
RECEIVED NYSCEF: 04/30/2019

NYSCEF DOC. NO. 43
INDEX NO. 154341/2018

NYSCEF DOC. NO. 88
RECEIVED NYSCEF: 07/09/2018

term or provision to persons or circumstances other than those as to
which it is held invalid or unenforceable, shall not be affected thereby,
and each term and provision of this Lease shall be valid and enforceable
to the fullest extent permitted by law.

        IN WITNESS WHEREOF, Landlord and Tenant have executed this Lease
as of the day and year first above written.

                                THE CITY OF NEW YORK,
                                Landlord

                                By: _____
                                    Deputy Commissioner
                                    Department of General Services
                                    Division of Real Property.


                                                        Tenant
                                EAST BROADWAY MALL, INC.

                                By: _____
                                    Henry CHAO, President
                                    East Broadway Mall, Inc.


        Approved as to Form:

        _____
        Acting Corporation Counsel

                                - 62 -

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM
NYSCEF DOC. NO. 88

FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM
NYSCEF DOC. NO. 43

INDEX NO. 154341/2018

RECEIVED NYSCEF: 04/30/2019

RECEIVED NYSCEF: 07/09/2018

STATE OF NEW YORK    )
                     )    SS.:
COUNTY OF *New York* )
        On this  *18th*         day of *March*         , 1985
before me personally came   *Henry Chao*
to me known who, being by me duly sworn, did depose and say that he
resides in  *88-19, Justice Ave. Elmhurst, N.Y. 11373 -*
that he is  *President*
of     *East Broadway Mall, Inc.*
the corporation described in and which executed the foregoing instrument, that
he knows the corporate seal of said corporation and the seal affixed to said
instrument is such corporate seal, that it was affixed by order of the Board
of Directors of said corporation and that he signed his name thereto by like
order.

JOAN GHISELIN
Notary Public, State of New York
No. 31-4684443
Qualified in New York County
Commission Expires March 30, 18...

STATE OF NEW YORK    )
                     )    SS.:
COUNTY OF *New York* )
        On this  *18o.*         day of *March*         , 1985
before me personally came   *Terrence Moan*
to me known to be the Deputy Commissioner of General Services, Division of
Real Property of the City of New York, the person described in and who
executed the foregoing instrument and he acknowledged to me that he executed
the same.

JOAN GHISELIN
Notary Public, State of New York
No. 31-4684443
Qualified in New York County
Commission Expires March 30, 18...

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM

NYSCEF DOC. NO. 86

FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM

NYSCEF DOC. NO. 43

INDEX NO. 154341/2018

RECEIVED NYSCEF: 04/30/2019

RECEIVED NYSCEF: 07/09/2018

EXHIBIT A

# BOARD OF ESTIMATE
## CITY OF NEW YORK

| Lease Year | Percentage |
|---|---|
| 3 | 0% |
| 4 | 20% |
| 5 | 40% |
| 6 | 60% |
| 7 | 80% |

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM    INDEX NO. 154341/2018
NYSCEF DOC. NO. 88    RECEIVED NYSCEF: 04/30/2019

FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM    INDEX NO. 154341/2018
NYSCEF DOC. NO. 43    RECEIVED NYSCEF: 07/09/2018

Cal. No. 224—Page 2

# BOARD OF ESTIMATE
## CITY OF NEW YORK

No bidder (including principals, corporations, or subsidiaries of such) will be accepted as a tenant who is in arrears or in default upon any debt, contract, or obligation to the City of New York.

The Deputy Commissioner shall reserve the right to reject any and all bids if to do so is deemed to be in the best interest of the City of New York.

No commission whatever for brokerage or otherwise in connection with this lease shall be due or payable by the City of New York.

In the event that the City cannot give possession in a timely fashion, its sole liability will be the return of any deposits submitted by the successful bidder.

The Deputy Commissioner is hereby authorized to take the steps necessary to conduct a public auction of a lease of the premises containing such terms and conditions in the furtherance of this Resolution as he may deem advisable and approved as to form by the Corporation Counsel, and to execute such lease on behalf of the City of New York.

A true copy of resolution adopted by the Board of Estimate
May 24, 1984.

*Theodore H. Mackins*

Secretary

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM
NYSCEF DOC. NO. 86

INDEX NO. 154341/2018

RECEIVED NYSCEF: 04/30/2019

FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM
NYSCEF DOC. NO. 43

RECEIVED NYSCEF: 07/09/2018

EXHIBIT "B"

LEASE TERM COMMENCEMENT DATE CERTIFICATE

This Certificate is made with respect to the lease (the "Lease"), dated as
of    March 1,    , 1985 between THE CITY OF NEW YORK ("Landlord"), as
Landlord, and   East Broadway Mall, Inc.                 ("Tenant"),
as Tenant.  Pursuant to Article 2 of the Lease, Landlord and Tenant hereby
acknowledge that, in accordance with the terms of the Lease, on
1985 Landlord did deliver to Tenant possession of the Premises (as defined in
the Lease) and that October 1,    1985 is the Lease Term Commencement
Date under this Lease.

                                        THE CITY OF NEW YORK,
                                                        Landlord

                                        By
                                            Deputy Commissioner
                                            Department of General Services
                                            Division of Real Property

                                                        Tenant,

                                        By:

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM    INDEX NO. 154341/2018

FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM    RECEIVED NYSCEF: 04/30/2019

NYSCEF DOC. NO. 44    RECEIVED NYSCEF: 07/09/2018

THE CITY OF NEW YORK
DEPARTMENT OF GENERAL SERVICES
ONE CENTRE STREET
NEW YORK, NEW YORK 10007

FIRST AMENDMENT TO LEASE ("First Amendment") made as of the   day of November, 1995, by and between THE CITY OF NEW YORK, a municipal corporation, acting through the Department of General Services, having an office at One Centre Street, New York, New York 10007 ("Landlord"), and East Broadway Mall, Inc., a New York Corporation, having an office at 59-77 Division Street, New York, New York 10002 ("Tenant").

W I T N E S S E T H

WHEREAS, Landlord and Tenant, pursuant to a resolution adopted by the New York City Board of Estimate ("BOE") on May 24, 1984 (Cal. No. 224), entered into a lease (the "Lease") dated March 1, 1985, pursuant to which the Tenant leased the Premises known as the unimproved land beneath the Manhattan Bridge, bounded by East Broadway, Market Street, Division Street and Forsyth Street, a/k/a 59-77 Division Street (Block 282, Lot 44), New York, New York  ("Premises"); and

WHEREAS, as of November 20, 1995, Tenant owes Landlord in back rent and other charges under the Lease the amount of  $2,448,800; and

WHEREAS, on or about July 14, 1994, Landlord commenced a non-payment proceeding by service of a notice of petition and petition seeking rent arrears then outstanding in the amount of $964,502.12 and possession of the Premises ("Non-Payment Proceeding"); and

WHEREAS, on or about July 27, 1994, Tenant served upon the Landlord its answer which contained affirmative defenses and counterclaims; and

WHEREAS, Landlord and Tenant wish to resolve all disputes arising out of the Lease and asserted in the Non-Payment Proceeding, in accordance with the terms and conditions set forth in the Settlement Agreement of even date herewith, which Settlement Agreement provides, among other things, for the execution and delivery of this First Amendment by Landlord and Tenant

NOW THEREFORE, in consideration of the foregoing, the mutual promises hereinafter set forth, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Landlord and Tenant hereby agree, effective as of the date hereof, as follows:

1.    General.  The Lease, as amended by this First Amendment, shall hereinafter be collectively referred to as the "Lease".  All capitalized terms used and not otherwise defined herein shall have the respective meanings set forth in the Lease.

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM    INDEX NO. 154341/2018

NYSCEF DOC. NO. 89    RECEIVED NYSCEF: 04/30/2019

FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM    INDEX NO. 154341/2018

NYSCEF DOC. NO. 44    RECEIVED NYSCEF: 07/09/2018

2.    Counterclaims.  Tenant waives its right to assert counterclaims in any summary proceeding brought by the Landlord against Tenant, or in any action brought by Landlord to recover rent or to enforce the terms of the Lease.

3.    Base Rent.  The Base Rent, as defined in Article 3 of the Lease, for the period commencing December 1, 1995 through November 30, 1996 ("Reduction Period") shall be $360,000 ("Rent Reduction"), to be paid at the time and in the manner as set forth in the Lease in equal monthly installments.  Commencing December 1, 1996, the base rent shall be $518,400 per year as set forth in the Lease as if the parties had never entered into this Lease modification.  In the event that 40% or more of the rentable square footage of the basement space located in the Premises is subleased by East Broadway Mall during the Reduction Period, the base rent shall, from the date that the subtenant whose occupancy brings the occupancy of the basement space to 40% or more occupies the Premises or pays rent (whichever date is earlier), be $438,000 per year, or $36,500 per month for the remainder of the Reduction Period. Rentable square footage shall be defined for purposes of this paragraph as 12,000 square feet. In the event that Tenant subleases any portion of the basement space without obtaining the prior written consent of the Landlord, as required by paragraph 7 below, then the base rent will revert to $518,400 per year retroactive to the date of this Stipulation as provided for in the Lease and the difference between this amount and the Rent Reduction amount paid for any previous months of the Reduction Period shall become immediately due and owing.

4.    Percentage Rent.  Article 4 of the Lease regarding Percentage Rent is hereby modified to provide that Tenant shall not be obligated to pay any percentage rent to Landlord for the fiscal year commencing September 1, 1995 and ending August 31, 1996. Thereafter, Tenant shall continue to comply with the terms of Article 4 of the Lease regarding Percentage Rent.  In addition, Article 4, subsection (2) on page 5 of the Lease is hereby modified in its entirety to substitute the following language:

2.  Percentage Rent shall be paid not later than (90) days after termination of each fiscal year.  Tenant shall furnish to Landlord the following:
(a) as soon as practicable after the end of each fiscal year during the term and, in any event, within ninety (90) days thereafter, financial statements of the Tenant and of the operations of the Premises for the preceding fiscal year, prepared in accordance with generally accepted accounting principles, and accompanied by a report of Tenant's independent certified public accountant, which report must be based upon an audit conducted in accordance with generally accepted auditing standards.
(b) as soon as practicable after the end of each fiscal year during the Term and, in any event, within ninety (90) days thereafter, the following:

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM

NYSCEF DOC. NO. 83
FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM

NYSCEF DOC. NO. 44

INDEX NO. 154341/2018

RECEIVED NYSCEF: 04/30/2019
INDEX NO. 154341/2018

RECEIVED NYSCEF: 07/09/2018

A schedule showing, in detail, the calculation of Percentage Rent for the preceding fiscal year;

A schedule of Gross Operating Revenue received during the preceding fiscal year showing, in detail, all payments received from subtenants, licensees, concessionaires, and other broken out by category (e.g., base rent, percentage rent, common area charges, etc.);

A schedule showing, in detail, common area maintenance expenses incurred by Tenant during the preceding fiscal year; and

A reconciliation of Gross Operating Revenue and common area maintenance as shown on the aforementioned schedules to the financial statements referred to in (a) above.

The aforementioned schedules and reconciliation shall be accompanied by a report of Tenant's independent certified public accountant, which report must be based upon an audit conducted in accordance with generally accepted auditing standards and which must state whether said schedules present fairly Percentage Rent, Gross Operating Revenues, and common area maintenance expenses, respectively, for the applicable year as provided for in this Lease.

5.      Prohibited Uses. Article 7 (b) of the Lease is hereby modified to delete "OTB Parlors" from uses expressly prohibited.

6.      Assignment and Subletting. Article 25, paragraphs (1) and (2) of the Lease is hereby modified to read as follows:

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM    INDEX NO. 154341/2018

NYSCEF DOC. NO. 80

FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM    RECEIVED NYSCEF: 04/30/2019
INDEX NO. 154341/2018
NYSCEF DOC. NO. 44    RECEIVED NYSCEF: 07/09/2018

(1) Tenant, for itself, its legal representatives, successors and assigns, expressly covenants that it shall not assign, underlet, or suffer or permit the Premises, or any part thereof to be used by others without the prior written consent of the Landlord in each instance, which consent shall not unreasonably be withheld or delayed. However, in the case of as assignment of Tenant's entire interest in this Lease, so long as Tenant is not in default of any of the provisions of this Lease beyond any applicable cure period, the City will not withhold its consent for the Tenant to assign, sublet or otherwise transfer (including transfer to a limited liability entity provided such transfer is accompanied by a personal guarantee in a form and from a guarantor, both of which are reasonably acceptable to the Landlord) all or any portion of its interest in this Lease to a Permitted Transferee (as hereinafter defined). "Permitted Transferee" shall mean any person, corporation, partnership or other business entity that (i) provides to the Landlord or to its designated representative reasonable evidence that it is capable of performing its obligations under this Lease as they come due, and (ii) deposits an additional $86,000, equal to two month's base rent under the Lease, with Landlord as additional security for the full and faithful performance of Tenant's obligations under this Lease, which sum shall be held and applied, if necessary, in the same manner as provided with respect to the initial $86,000 to be deposited pursuant to Article 10 hereof and (iii) completes the form used by the City of New York, Department of General Services, Division of Real Estate Services (or its successor) known as the Landlord Disclosure Form (Form BOA-1, 9/94) or any disclosure form in use by the City of New York at the time of the transfer, provides information therein to the reasonable satisfaction of the Landlord and receives certification from the Landlord, in the exercise of Landlord's reasonable discretion, that the proposed assignment, sublease or other transfer is acceptable to the Landlord.

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM
NYSCEF DOC. NO. 83

FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM
NYSCEF DOC. NO. 44

INDEX NO. 154341/2018
RECEIVED NYSCEF: 04/30/2019

INDEX NO. 154341/2018
RECEIVED NYSCEF: 07/09/2018

(2) Tenant shall not sell, assign or transfer any of the issued or outstanding capital stock of any corporation which is directly or indirectly Tenant under this Lease or which is a general partner of any partnership that is Tenant under this Lease; nor shall it issue additional stock in any such corporation so as to result in a change of stock ownership of any such corporation as held by the shareholders thereof on the date when such Tenant became Tenant under this Lease; nor shall any general partner's interest in a partnership which is Tenant under this Lease be sold, assigned or transferred, without the prior written consent of the Landlord, which consent shall not unreasonably be withheld or delayed. If Tenant transfers any of the interests, or assigns or subleases or suffers or permits the Premises to be used by others, as described in paragraphs (1) and (2) herein, without prior written consent of Landlord, such act shall constitute a default of Tenant's obligations under this Lease entitling Landlord to all of the remedies for default provided for by law and in this Lease. "

7.   **Right To Collect Rent From Subtenants**.  Article 25, paragraph 4 of the Lease is hereby amended to add that upon the default by the tenant in the payment of rent, and upon the expiration of any applicable cure period set forth in Article 19 of the Lease, the Landlord may collect rent directly from any assignees, subtenants or occupants of the Premises, and any such sums collected shall be credited towards Tenant's obligations to the Landlord under the Lease; that such collection of rent by the City from any assignee, subtenant or occupant shall not be deemed to be the acceptance of the assignee, subtenant, or occupant as a tenant, or a release of Tenant from the further performance by Tenant of its obligations under the Lease; and that Tenant shall include a provision in all its subleases or assignments executed after the date of the First Amendment of Lease that requires the assignee or sublessee to comply with any demand

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM

INDEX NO. 154341/2018

RECEIVED NYSCEF: 04/30/2019

FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM

NYSCEF DOC. NO. 44

RECEIVED NYSCEF: 07/09/2018

for rent made by the City to the assignee or subtenant in accordance with the terms of this provision.

8.    Leasehold Mortgagee. Article 25, paragraph 6 of the Lease, under the subheading "Definitions", is hereby amended to add the following language at the end thereof: "or (iii) a Permitted Transferee as defined in Article 25 (1) of the Lease or (iv) any other person, corporation, partnership or other business entity to which Landlord consents, which consent shall not be unreasonably withheld."

9.    Article 25, paragraph 7(f)(1) of the Lease is hereby modified to read as follows:

> In the event of the termination of this Lease prior to its stated expiration date due to a default by Tenant that was incapable of being cured by the Leasehold Mortgagee (including the diligent prosecution of any legal proceedings),Landlord shall notify and indicate in writing to Leasehold Mortgagee all amounts then due to Landlord under this Lease, and, if payment is made by Leasehold Mortgagee of all sums due to Landlord under this Lease, then either Landlord or Leasehold Mortgagee may elect to enter into a new lease for the Premises with the City of New York, as landlord, and Leasehold Mortgagee, as tenant, for the remainder of the term, to commence as of the date of the termination of this Lease at the same rental and upon all of the other terms, provisions, covenants and agreements as were contained in this Lease, and any other rights and options then remaining, upon condition that the party making the election shall give the other written notice of the exercise of its right of election for such new Lease not later than fifteen days (15) from the date notice of termination of the Lease by the Landlord is given Leasehold Mortgagee.

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM    INDEX NO. 154341/2018
NYSCEF DOC. NO. 63    RECEIVED NYSCEF: 04/30/2019

FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM    INDEX NO. 154341/2018
NYSCEF DOC. NO. 44    RECEIVED NYSCEF: 07/09/2018

10.    Article 25, paragraph 7(f)(4) of the Lease is hereby modified to read as follows: Such new lease shall require the tenant thereunder to perform any obligation of Tenant under this Lease not then performed. A tenant named in any such new lease may assign its rights thereunder only pursuant to the provisions for Landlord consent set forth in Article 25, paragraphs 1 and 2, as amended.

11.    <u>Brokers</u>.    Landlord represents that it has dealt with no broker and Tenant represents that in the negotiation of this First Amendment it dealt with no broker except Cushman-Wakefield and Bill Hirschman. Tenant shall indemnify and hold Landlord harmless against any and all claims, liabilities, suits and costs and expenses, including reasonable attorneys' fees and disbursements, arising out of any broker's claim, for a commission or otherwise, based upon alleged dealings by said broker with the indemnifying party.

12.    <u>Ratification</u>. The Lease, as amended by the First Amendment, is hereby ratified and confirmed for all purposes and in all respects.

[signature page follows]

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM
NYSCEF DOC. NO. 80

FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM
NYSCEF DOC. NO. 44

INDEX NO. 154341/2018

RECEIVED NYSCEF: 04/30/2019

RECEIVED NYSCEF: 07/09/2018

. IN WITNESS WHEREOF, the parties hereto have executed this First Amendment to Lease as of the date above first written.

EAST BROADWAY MALL, INC.

By: _____

TUNG WAH NGAN
PRESIDENT

THE CITY OF NEW YORK

By: _____

Lori Fierstein, Acting Deputy Commissioner
Department of General Services
Division of Real Estate Services

APPROVED AS TO FORM:

_____
[Acting Corporation Counsel]

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM
NYSCEF DOC. NO. 80

FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM
NYSCEF DOC. NO. 44

INDEX NO. 154341/2018
RECEIVED NYSCEF: 04/30/2019
RECEIVED NYSCEF: 07/09/2018

STATE OF NEW YORK        )
                         : SS.:
COUNTY OF NEW YORK       )

On this 21st day of November 1995, before me personally came Lori Fierstein, to me known to be the Acting Deputy Commissioner of the Department of General Services, Division of Real Estate Services of the City of new York, the person described in and who executed the foregoing instrument and she acknowledged to me that she executed the same.

NOTARY PUBLIC

NOTARY PUBLIC, STATE OF NEW YORK
QUALIFIED IN NEW YORK COUNTY
COMMISSION EXPIRES SEPT. 4, 1996

FILED: NEW YORK COUNTY CLERK 04/30/2019 04:36 PM

FILED: NEW YORK COUNTY CLERK 07/09/2018 05:35 PM

NYSCEF DOC. NO. 44

INDEX NO. 154341/2018

RECEIVED NYSCEF: 04/30/2019

RECEIVED NYSCEF: 07/09/2018

STATE OF NEW YORK        )
                         : SS.:
COUNTY OF NEW YORK       )

On the 21st day of November, 1995, before me personally came Tung Wai Ngau to me known to be the individual who executed the foregoing instrument and who, being duly sworn to me did depose and say that he resides at 88 East Broadway ; that he is President of East Broadway Mall, Inc., the corporation described in and which executed the foregoing instrument, the he knows the corporate seal of said corporation and the seal affixed to said instrument is such corporate seal, that it was affixed by order of the Board of Directors of said corporation and that he signed his name thereto by like order.

NOTARY PUBLIC

KENNETH A. BLOOM
Notary Public, State of New York
No. 32BL4987164
Qualified in Nassau County
Certificate filed in New York County
Commission Expires Oct. 7, 19__

-10-