```
                                                      Page 1
 1    UNITED STATES BANKRUPTCY COURT

 2    SOUTHERN DISTRICT OF NEW YORK

 3    Case No. 19-12280-dsj

 4    - - - - - - - - - - - - - - - - - - - - - - - - - x

 5    In the Matter of:

 6

 7    EAST BROADWAY MALL, INC.,

 8

 9            Debtor.

10    - - - - - - - - - - - - - - - - - - - - - - - - - x

11                    United States Bankruptcy Court

12                    One Bowling Green

13                    New York, NY  10004

14

15                    October 4, 2022

16                    10:00 A.M.

17

18

19

20

21    B E F O R E :

22    HON DAVID S. JONES

23    U.S. BANKRUPTCY JUDGE

24

25    ECRO:  UNKNOWN
```

Page 2

1    HEARING re Status Conference

2

3    HEARING re Motion Filed by the United States Trustee to

4    Convert this Chapter 11 Case to a Chapter 7 Case

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:   Sonya Ledanski Hyde

Page 3

1  A P P E A R A N C E S :

2

3  SFERRAZZA KEENAN, PLLC

4      Attorneys for the Debtor

5      532 Broadhollow Road, Suite 111

6      Melville, NY 11747-3609

7

8  BY:  SARAH M. KEENAN

9

10  NEW YORK CITY LAW DEPT.

11      Attorneys for City of New York

12      100 Church Street

13      New York, NY 10007

14

15  BY:  ZACHARY B. KASS

16

17  WINDELS MARX LANE MITTENDORF, LLP

18      Attorneys for Bank of Hope

19      156 W. 56th Street

20      New York, NY 10019

21

22  BY:  JAMES M. SULLIVAN

23

24

25

Page 4

```
 1   UNITED STATES DEPARTMENT OF JUSTICE
 2        Attorneys for the U.S. Trustee
 3        201 Varick Street
 4        New York, NY 10014
 5
 6   BY:  MARK BRUH
 7
 8   LAW OFFICE RACHEL BLUMENFELD
 9        Attorneys for Grace Chan
10        26 Court Street, Suite 2220
11        Brooklyn, NY 11242
12
13   BY:  RACHEL BLUMENFELD
14
15   ALSO PRESENT:
16   MINDY R. KOENIG
17   ROBERT JEROME MALATAK
18
19
20
21
22
23
24
25
```

Page 5

1                    P R O C E E D I N G S

2           THE COURT:  Good morning, everyone.  It's Judge

3    Jones.  We're here for a 10:00 calendar proceeding by Zoom.

4    And it's actually not a calendar.  It's just a hearing in

5    one case, East Broadway Mall, Inc., number 19-12280.

6           I know everyone, and we have your appearances

7    through the sign-in process, so we can just get started.

8    I'll tell you that I thank the City for its preconference

9    letter of October 3rd, which was helpful, and it's -- also

10   the statement that the City filed dated September 21 of this

11   year, which I've reviewed, and so I've absorbed the

12   information that the city has determined not to go forward

13   with the transaction being proposed by the debtor and has

14   instead determined to go a different route.

15           And so I'm going to let everyone have their

16   opportunity to talk today.  I know -- I'm sure this is

17   unwelcome news for the debtor, and so my sympathies about

18   that, but let's -- I think what we need to do is determine

19   next steps, and I -- you know, this case has been pending

20   for a long time and in need of a definite direction, so

21   hopefully we can get there.

22           I'll also at the appropriate time be very

23   interested to hear from the Office of the U.S. Trustee as

24   well as others what makes sense to do with respect to their

25   long-pending motion to dismiss or convert.

Page 6

1              So let me -- I'm not sure where -- who it'd make

2      sense to start with, but I guess let me start with the

3      debtor.  Ms. Keenan, if you want to lead us off, I want to

4      give you the opportunity since other people are talking

5      about you and the fate of your client.  So is there anything

6      you want to start us off with, or how do you want to

7      approach this today?

8              MS. KEENAN:  I was going to probably respond to

9      the City, but I can put out there what my client wants the

10     Court to hear.

11              The debtor had submitted an offer of a lot more

12     money; term sheets from viable, you know, (indiscernible)

13     tenants; support letters from elected officials in the

14     community, none of which were responded to by the City, by

15     the way, even though they left numbers saying they wanted to

16     discuss it.  And the response that we got was that it was

17     not acceptable, even after we gave everything they wanted,

18     and also we got an appraisal, which is something that we

19     thought was holding the works up because they didn't think

20     the property was worth what it was.  But it's worth quite a

21     bit of money.

22              And so based upon the decision, I have asked Mr.

23     Kass to send me a written response as to what was not in my

24     client's offer that was in the land proposal.  We've never

25     seen the land proposal.  I've made this request three times

Page 7

1    in the past during this, you know, since last May and then

2    in July asking for reasons for a no.  I've never received a

3    response.

4              On Friday, I spoke to Mr. Kass, and he said,

5    "Well, I'll ask DCAS.  Maybe they can write a few things

6    down," but I don't think that they did.  But we have a lot

7    of questions, and I believe that the plan/disclosure

8    statement is flawed in that it is asking this Court to

9    approve an offer where we know nothing about the bidder.  We

10   don't know who Bill Lam's partners are.  We don't know who

11   brought this offer to the table.  We don't know what proof

12   of funds, which is very important, was given to the City.

13   It is understood by residents in the community that Mr. Lam

14   is not acting alone and that he has put together a group of

15   investors.  Who are they?

16             We want to know why when elected officials contact

17   DCAS or city hall to voice their support for the debtor,

18   they read all the proposals, they had extensive meetings

19   with them, and they just get a pat response whether it's

20   from the deputy mayor's office or from DCAS's office that,

21   "This is in litigation.  We can't talk to you."

22             THE COURT:  Ms. Keenan, can I -- let me ask you a

23   question and -- or ask you to sort of wind up.  I mean, a

24   lot of what you're going to is really directed at the City

25   and complaints about their dealings with you.  Let me just

Page 8

1    frame it in terms of the bankruptcy case and prior

2    procedure, sort of the prior history of this case.

3            I look back at an order that the Court entered --

4    I entered September 30th, 2021, so ever a year ago.  And

5    noting that a lot of water had already crossed under the

6    bridge and that the Court had previously entered an order

7    November 26th, 2019 providing that the lease was to be

8    deemed rejected as of September 21, 2020 -- excuse me --

9    September 1, 2021, over a year ago, with the City as

10   landlord entitled to immediate possession of the lease

11   premises and with debtor required to surrender.

12           And so since that time, the debtor has been

13   negotiating and making proposals to the City and, as I

14   understand it, living on kind of the consent of the City to

15   stretch it out so that the debtor could put together a

16   package which the City could consider.

17           But given that backdrop, I don't know that I have

18   -- I'm not dealing with a fresh slate right here, and I

19   think as I review the history of the case that it's unclear

20   to me what recourse the debtor has at this point.

21           It strikes me -- you did reference issues with the

22   disclosure statement and plan.  I think it makes sense to

23   have Bank of Hope, which filed a plan, file an amended plan

24   and disclosure statement, and that might go into some of the

25   issues you're saying are informationally deficient at that

Page 9

1    point, and you can raise your challenges -- meaning debtor's

2    challenges -- to the sufficiency of the disclosures and so

3    forth through that process.  I'm trying to get this onto a

4    bankruptcy resolution track, and I -- that's what I'm

5    describing.  Does that make sense to you, Ms. Keenan?

6              MS. KEENAN:  It does, but I can actually respond

7    to -- when you entered that order back in 2021, that was

8    before the City brought this proposal to the table, to

9    assign a terminated lease to a third party, and they sent it

10   to the debtor because if they are going to assign a lease,

11   that presumes that the lease is still alive, and it would

12   make it very easy for the City if the -- for the City of the

13   debtor assigned its rights in a terminated lease so that

14   they would not have to put the whole project out to bid

15   again because if the lease had terminated, they can't just

16   write up a new lease for the Lam Group.  They have to put it

17   out to bid.

18             THE COURT:  I see.

19             MS. KEENAN:  So they can't -- so that's why we're

20   doing it this way, and that's why the debtor has been so

21   involved in this now.  You know, for someone who doesn't

22   have a lease, it's important to the City that this lease not

23   be rejected because they want to assign it.  And there

24   should be value to that.  They're trying to steal from the

25   debtor, but they're not giving the debtor a release.  Bank

Page 10

1    of Hope would be getting more money from the debtor, but now

2    because they're going with the Lam Group offer where they're

3    getting less money, they're going to go after Grace Chan on

4    her guarantee for the deficiency.  And so that's another

5    ball of wax.  And the debtor will be --

6              THE COURT:  So miss -- yeah.  Ms. Keenan, what

7    would you have me do?  What do you think the appropriate

8    next steps are in this Court?

9              MS. KEENAN:  Oh, the next step in this -- in this

10   proceeding is one that the debtor is -- wants to have the

11   opportunity to put in its offer, similar to what it did in

12   the Bank of Hope plan.  And the City can then vote on it and

13   be on record for not approving an offer that was made by

14   lifelong residents of the Chinatown community with bona fide

15   financing there, with an appraisal showing that they will be

16   able to refinance this property down the road.  And they're

17   not giving them the chance because they don't like them.

18             THE COURT:  I'll -- let me just say as a general

19   matter, I react badly to characterizations of other people's

20   motivation, and I think it ends up getting us into

21   quagmires.  So as far as they don't like them, that may be

22   your opinion, but unless there's a reason for me to be

23   acting based on it, I -- and a contention you're asserting

24   based on that doesn't help.

25             MS. KEENAN:  I've never had (indiscernible) 38

```
                                                              Page 11
 1    years, Your Honor.  I've never seen a case like this.

 2              THE COURT:  Okay.  Well, look.  Let me -- I will

 3    also observe that the exclusivity period expired.  Bank of

 4    Hope filed a plan.  Are you taking about Debtor filing an

 5    alternative plan, a competing plan?

 6              MS. KEENAN:  Yes.

 7              THE COURT:  Okay.  And how would that dovetail

 8    with Bank of -- maybe I should hear from the other players

 9    first and then figure out how the two dovetail, but do you

10    have a thought how your -- how and when Debtor would be in

11    position to file a plan?

12              MS. KEENAN:  I don't think it's going to be that

13    long because it's really just going to be focused on the

14    offer, which we have.  We have all the background that we

15    could put into a disclosure statement, so I think we could

16    have it filed by -- well, I'm going -- I have to go away --

17    probably first week in November.

18              THE COURT:  Okay.  All right.  Let me hear from

19    the -- anything else you want to add sort of upfront before

20    I hear from the other players?

21              MS. KEENAN:  No, thank you.

22              THE COURT:  Okay.  Thanks, Ms. Keenan.

23              All right.  So let me -- does the City and Bank of

24    Hope have a preference who goes next?

25              Sorry, Mr. Kass.  You're on mute.  Looks like
```

Page 12

1    you're ready to start talking.

2              MR. KASS:  Good morning, Your Honor.  I apologize

3    for that.  I think it probably would make sense -- from the

4    City's point of view, we'd like to go forward with the plan.

5    Obviously the sponsor of the plan is the one who's going to

6    shepherd it through.  The City has a dual role both as the

7    major creditor, although unsecured, and it also has the --

8    its role as landlord, and without the City's consent, no

9    plan is confirmable (indiscernible).

10             The debtor has had roughly four years to propose a

11   plan.  It hasn't done so because it knows without the City's

12   consent, its plan would not be confirmable, and it would

13   just be a nullity.  So I don't think going down that road is

14   particularly fruitful.

15             I think it is appropriate, again, to try a

16   schedule for moving forward with the bank's current plan.

17   It incorporates a transaction with a new tenant who is

18   acceptable to the City, terms that are acceptable.

19             I agree with the Court that the parties should

20   perhaps amend the plan and disclosure statement and include

21   additional details about what the (indiscernible) be.  It

22   has been fully negotiated.  It's my understanding that it's

23   in the process of being documented.  None of this is a

24   mystery or hidden.  The transaction should be transparent

25   and will be under the plan.

Page 13

1           The City does appreciate that (indiscernible) was

2   able to file a bar date notice motion and that there is now

3   -- did enter a bar date.  It is a good and necessary step.

4   The debtor has been taking the position for the last three

5   years that there really are no other creditors other than

6   the secured creditor, the landlord.  There appear to be some

7   other claims filed by (indiscernible) parties.  Apparently

8   the IRS has filed a claim.  The city and the state also

9   probably have some taxes that they need to file.  But as far

10  as other creditors, we have no other information, so it

11  would be helpful once the bar date has passed to have a

12  short period of time to gauge what the universe of creditors

13  are.  At that point --

14           THE COURT:  Right.  And I'll just note that's

15  October 26th under the order I recently entered.

16           MR. KASS:  Right.

17           THE COURT:  The bar date.  Okay.

18           MR. KASS:  After that date, it would be possible

19  to then come up with a protocol or actually a timetable for

20  approving a disclosure statement, sending the disclosure

21  statement to appropriate creditors who are entitled to vote,

22  tabulating the vote, and then conducting a confirmation.

23  Again, whether it's appropriate at this point to, you know,

24  set a timetable for, say, filing an amended plan and a plan

25  supplement and then either having a joint hearing, a

Page 14

1   disclosure confirmation, you know, sometime in November or

2   early December.

3            THE COURT:  Okay.  I'm skeptical about going

4   jointly on -- doing a joint disclosure statement and

5   confirmation jointly in this case because there's a lot of

6   moving pieces.  And Ms. Keenan has just said the debtor is

7   going to raise some disclosure concerns, so I think it's

8   probably going to be best to go in a two-step process here.

9   Sounds like we're -- it doesn't sound like you've got

10  certainty of an uncontested plan.

11           Let me ask -- okay.  So that's helpful.  Is there

12  anything you wanted to say about Ms. Keenan's -- on behalf

13  of the debtor's criticism of the City's handling of the

14  debtor and the transaction?  You don't have to.  I just want

15  to make sure to give you the opportunity.

16           MR. KASS:  Well, Your Honor, I think the record

17  has been made.  The City has bent over backwards for this

18  debtor.  There have been numerous extensions of the time for

19  the debtor to get its house in order.  The current proposal

20  -- although the debtor seems to have a great deal of faith

21  in it -- it simply has too many risks in it, too many

22  uncertainties.  It -- without going into the details of the

23  negotiations and the proposals, it would place even more

24  debt, almost $8 million of new debt, on the leasehold

25  interest.  Under the Lam proposal, as is already revealed in

Page 15

1    the debtor's -- I'm sorry -- in the bank's plan, the Bank of

2    Hope's leasehold mortgage is paid off.  It then releases the

3    leasehold mortgage so that there is no burden of debt on the

4    property.  That in itself is a major concern to the City.

5           The proposed financing by the debtor was a short-

6    term loan of 18 months.  The City's belief in the debtor's

7    ability to pay off $8 million at the end of 18 months was

8    not high.

9           THE COURT:  Okay.  So let me -- yeah.  I mean,

10   look.  I can see Ms. Keenan shaking her head.  I know

11   there's going to be a lot of disagreement about this.  I

12   just wanted to give you an opportunity to say something

13   briefly.  And I think beyond that, it probably is -- can be

14   deferred for dealing for presentation during the disclosure

15   statement and/or plan.  I just sort of wanted to know what

16   the City's take was, and since your client had been

17   criticized, I wanted to give you the opportunity to say

18   something.

19          So bottom line though is, Mr. Kass, you want to --

20   you think it's appropriate -- let me see if this makes sense

21   -- for the bar date of October 26th to pass, then you had

22   mentioned possibly proceeding with a combined disclosure

23   statement and confirmation hearing, which I expressed doubt

24   about.  But one way or another probably the plan is going to

25   need to be revised once the bar date passes.  Then at that

Page 16

1   point, we can get going in your view on a sequence of the

2   typical Chapter 11 wind-up process of disclosure statement

3   to be followed by confirmation.

4           MR. KASS:  Yes, Your Honor.  That would be good.

5           THE COURT:  Okay.  So let me turn to the counsel

6   for the -- I'm sorry.  Who was that?  Sorry.  I just heard

7   some feedback.

8           Let me just ask counsel for the Bank of Hope what

9   they want to add at this point, if anything.  Sorry, Mr.

10  Sullivan.  You're muted.

11          MR. SULLIVAN:  Sorry about that, Your Honor.  I

12  think what's been described so far has been, you know,

13  pretty accurate.  I think, you know, the bar date is coming

14  up on the 26th.  It would certainly help if the debtor had

15  filed its -- I don't know if it's filed its tax returns yet,

16  but it may be difficult to liquidate the tax -- IRS's claims

17  and the taxing authorities claims unless the tax returns are

18  filed.  So you know, to the extent that Ms. Keenan's client

19  does plan on submitting some kind of competing plan, you

20  know, it seems like a condition of that should be perhaps,

21  you know, her client actually filing the tax returns to give

22  --

23          THE COURT:  Is there an IRS proof of claim filed?

24  I'm showing estimated majouns right now.  I haven't looked.

25          MR. SULLIVAN:  It showing estimated amounts based

Page 17

1    upon failure to file.

2         THE COURT:  Okay.  Okay.  All right.  So at any

3    rate, but sort of setting that issue aside and not

4    minimizing it, is Bank of Hope also wanting to proceed with

5    the sequence I just described, get past the bar date,

6    disclosure statement, amended plan, and proceed with the

7    hearing on disclosure statement to be followed by

8    confirmation if all goes well in your view?

9         MR. SULLIVAN:  Yes, Your Honor.  Now, like -- as

10   sympathetic as the bank is it to the debtor's situation, you

11   know, the bank recognizes that a deal without the bank and

12   the city onboard is going to be pretty much impossible.  And

13   you know, competing plan without having the city -- both the

14   city and the bank on board, you know, in my view is

15   probably, you know, just not confirmable.  I don't really

16   see any situation where that would be possible given the

17   extent of the debt owed to each and the status of the lease.

18        So I'm -- you know, I'll certainly reach out to

19   the debtor to see if we can work with them to try to get

20   them onboard with the bank's plan because I think things

21   would go a lot more smoothly, obviously, if everyone was

22   working together on it, but if that isn't possible,

23   obviously then, you know, we'll just have to proceed as has

24   been described.  And you know, the bank is obviously looking

25   to move this case along as quickly as we can.

Page 18

1          THE COURT:  Okay.  Is there -- is confirmation

2    possible if the IRS claim is unresolved?

3          MR. SULLIVAN:  I think so, you know, but it

4    obviously would go quicker if it were.  I mean, the debtor

5    has represented to us that there are no taxes owed to the

6    IRS, given that the debtor has been losing money for a

7    number of years.

8          You know, I suppose if needed, we could adjudicate

9    their claim in the bankruptcy and try to liquidate that out

10   through a 525 proceeding -- or 505.  I think it's 505

11   actually -- 505 proceeding or otherwise, but you know,

12   obviously, like I said, I think things go smoother if we can

13   get the debtor onboard, but -- and we will certainly reach

14   out to them to try to make that happen.  But if they won't,

15   then the Bank of Hope and the City I think are both prepared

16   to move forward to try to resolve the case as quickly as

17   possible.

18          THE COURT:  Okay.  Yeah.  From my prior

19   experience, I mean I know it can take a while to get the IRS

20   to amend even if you file returns that had previously not

21   been filed showing no income and therefore no tax due.  That

22   can just add delay, so anyway.  We'll -- I'll let you all

23   work though -- work that through.

24          All right.  So anything else you want to add, Mr.

25   Sullivan?  I feel like I've kind of gotten your concise

Page 19

1   pitch of what you think ought to happen.

2           MR. SULLIVAN:  No, I think I've pretty much

3   covered everything.  Obviously the judge -- if Your Honor

4   has any questions, I'd be happy to answer them.

5           THE COURT:  Okay.  Thanks.  I don't right now.

6           Let me ask Mr. Bruh for the Office of the U.S.

7   Trustee what -- where do you stand with respect to your

8   motion, which has been following you and us around for

9   months now?

10          MR. BRUH:  Yeah.  Thank you, Your Honor.  Mark

11  Bruh for the United States Trustee.  Yeah.  It's been

12  pending for almost nine months now.  We had brought a motion

13  to convert or the alternative to dismiss this case filed

14  under 1112(b)(4)(f), (j), and (k).

15          We would like to go forward with the motion.  I

16  can give you some background as to where we see certain

17  things.  There has been some compliance with certain of the

18  subsections, but the main issue here is 1112(b)(4)(j), and

19  there's been no plan confirmed as of the date.

20          Just turning backwards, we've -- under subsection

21  (f), we'd filed because there were delinquent operating

22  reports.  The debtor has complied and caught up to speed

23  except for last month, and so August is due and September

24  will be due in, you know, 11 days.

25          The UST fees with respect to subsection (k),

Page 20

1    there's been -- that's been satisfied, so there are no

2    outstanding fees due in this case.

3            I did review the operating reports the last two

4    months, and it does show that the debtor is losing money.

5    Two months ago from the last report, it lost $20,000, and

6    the month before it lost $12,000.

7            THE COURT:  Right.

8            MR. BRUH:  So it doesn't look like anything is

9    coming into this case.

10           THE COURT:  So yeah.  So Mr. Bruh, what about --

11   why -- it seems like potentially descriptive timing to

12   convert right now and put a -- inject a Chapter 11 -- excuse

13   me -- a Chapter 7 trustee when a secured lender wants to

14   proceed with a plan and it seems like there's at least

15   potential hope of wrapping it up.  So what's the answer to

16   that?

17           MR. BRUH:  Okay.  Well, as the debtor pointed out,

18   there are problems with the plan that's on file, and I think

19   I should just put that on the record for the Court.

20           We have the tax claim which has been addressed by

21   the parties.  We don't know how that's being paid.  There's

22   a secured claim (indiscernible) board in excess of $600,000.

23   We don't know what's going to be the disposition of that

24   claim.

25           THE COURT:  I'm sorry.  Is that a city agency, or

Page 21

1    is that non-city?

2              MR. BRUH:  City.

3              THE COURT:  Yeah.  Okay.

4              MR. BRUH:  Their administrative claims were not

5    addressed in the filing by the bank, and the distribution to

6    unsecured credits, albeit the bar date hasn't passed -- is -

7    - would be based upon the claims filed.  Then if there were

8    no objections at 4.7 percent, and cap that at just a modest

9    $200,000 for all unsecured claims in this case.

10             THE COURT:  The big issue that we see in this case

11   -- and Your Honor touched about it, talking about your

12   September 30th, 2021 order, but we see and read the June

13   22nd, 2022 so-ordered stipulation between and among the

14   parties that there is no lease anymore to be assigned.  It's

15   been terminated.  The debtor -- the bank didn't comply with

16   the deadlines.  They didn't reach a deal with the debtor.

17   They didn't bring a new tenant in.  There was no 9019-motion

18   filed.  Nothing.  And there's no disclosure in this plan.

19             So pursuant to the agreement among the parties,

20   it's terminated.  There's nothing to assign under a plan, so

21   I'm not sure how the bank gets over that hurdle.  And then

22   it in turn comes back to the issue the debtor raised about

23   the procedures that have to be done.  And I'm ignorant as to

24   those aspects, and it's illuminating what the debtor said

25   about the bidding process that would have to go forward

Page 22

1    here.

2              There's a lot of ifs.  And under 1112(b)(4)(j),

3    it's not only filing a plan.  It's confirming a plan by a

4    certain deadline.  That hasn't been done.  I really --

5              THE COURT:  Right.  Has there ever -- what's the

6    applicable deadline under 1112(b)(4)(j)?  Is it the various

7    court ordered dates?

8              MR. SULLIVAN:  Fixed by the title or the court

9    order date.  Correct, Your Honor.

10             THE COURT:  Yeah.  What -- yeah, and in this case,

11   I mean, I see the court orders.  I'm not sure there is

12   another --

13             MR. SULLIVAN:  I mean --

14             THE COURT:  Is there a statutory or rule-driven

15   date, or is it just the orders?  I just want to understand

16   what we're talking about.

17             MR. SULLIVAN:  I would say -- with respect to this

18   case, I would think it's the order.  And I think what is

19   filed by the bank is nothing more than a placeholder plan.

20   It has really nothing there to be a confirmable plan in the

21   spirit of the code section.  We believe it -- they did not -

22   - the bank did not comply with it

23             Now, I don't want to blow up everything here, but

24   I think there needs to be some firm deadlines.  There's

25   going to be some competing interests here, and we could be

Page 23

1    several months down the road at the same spot we are today.

2    If there is no lease to assign, then we would think the case

3    should be dismissed.  If there was a lease not terminated,

4    then it should be converted.  And that's where we stand

5    today, Your Honor.

6              THE COURT:  How does that play out if I grant the

7    motion and either dismiss or convert?

8              MR. BRUH:  Well, if it's dismissed pursuant to the

9    June 22nd stipulation, the debtor consented to discontinue

10   with prejudice all state court litigation, and it will not

11   seek any further relief against the City with respect to the

12   lease.  So I think then the city or the bank can proceed

13   accordingly under that circumstance.

14             THE COURT:  Which means what?  What's it means?

15   What's that mean?

16             MR. BRUH:  I would defer to the bank or the city

17   as to what they would do.  I don't know, Your Honor.  That -

18   - I'm ignorant to that process.

19             THE COURT:  Okay.  And if convert -- I guess if

20   convert, a trustees is in place and has to just deal with

21   it, right?  It seems to me you have a real mess then, and --

22             MR. BRUH:  Well, then the -- if it's converted,

23   the seven trustee steps into the shoes of the debtor.  You

24   wouldn't have that animosity between and among the debtor,

25   the city, and the bank.  And hopeful that a Chapter 7

Page 24

1    trustee can work something out with the parties or, in the

2    alternative, if there's nothing there to administer for the

3    benefit of creditors, then the trustee would file a no asset

4    report and/or abandon his or her interest in the property.

5              THE COURT:  That assumes that non-existent

6    leasehold interest, right, an extinguished leasehold

7    interest?

8              MR. BRUH:  Well, if it was converted, I would

9    think that there would be one.  If there's not one -- I

10   mean, I read the stip that there is not one, and it should

11   be dismissed.

12             THE COURT:  Right.

13             MR. BRUH:  But if Your Honor --

14             THE COURT:  Okay.

15             MR. BRUH:  -- the Court sees it otherwise, then I

16   would think that conversion would be the path to take in

17   this case.  And I think that's what we had said in our

18   papers originally.  We had filed our motion prior to these

19   so-ordered stipulations being filed.  The facts kind of

20   changed in the case.  We haven't had the chance to do a more

21   detailed supplement to our pending motion, Your Honor.

22             THE COURT:  Yeah, and nobody's responded to your

23   motion as of now because it keeps getting carried; is that

24   right?  I don't remember seeing --

25             MR. BRUH:  I believe --

Page 25

1          THE COURT:  Or is there an opposition?

2          MR. BRUH:  -- Mr. Kass on behalf of the City did

3    file a response, and the bank might've filed like a one-page

4    joinder to the City's response.

5          THE COURT:  Okay.  All right.  And --

6          MR. KASS:  Your Honor?

7          THE COURT:  Yeah.  Hang on, Mr. Kass.  I'm forming

8    another question for Mr. Bruh.  Then I'll come back to you.

9          So since I've been told that the landlord, and

10   major creditor, and the secured lender have negotiated a

11   deal that they want to pursue through a plan that's ready to

12   go, I'm reticent to just pull the rug out from under that

13   process right now.  How wrong or unlawful do you think that

14   feeling of mine is?  I mean, it -- you know, I know your

15   motion has been getting carried crazily long.

16          MR. BRUH:  Right.

17          THE COURT:  I think the facts on the ground have

18   changed out from under your motion somewhat, so I was

19   flirting with denying it without prejudice to simple

20   reinstatement by just filing a notice of reinstatement in

21   the event that things go forward in the case and prove a

22   quagmire.  But you know -- and/or carrying it.

23          MR. BRUH:  Right.

24          THE COURT:  My preference given the passage of

25   time is starting to be to deny it without prejudice but let

Page 26

1   me hear from you because I don't want to -- I mean, you've

2   been very patient with this case.  Your office has been very

3   patient in my view, so what's your repose to that?

4           MR. BRUH:  I would accept that determination by

5   Your Honor without prejudice.  Obviously if we could file

6   some sort of notice to renew the motion and supplement it

7   because, like I said, the facts have changed over the last

8   nine months.

9           There are legitimate concerns with respect to the

10  plan that was filed by the bank.  There's been no disclosure

11  statement.  There's just been kind of a broad brush.  We

12  have this agreement.  There's been no term sheet.  We don't

13  know how these payments are going to be made, and that's a

14  concern, and it looks like the debtor will object to the

15  plan.  The debtor is going to file a competing plan.  I

16  would just ask the Court phrase under 1112(b)(4)(j) if we

17  fix a deadline to confirm a plan because if the plan --

18          THE COURT:  Yeah.  I understand.

19          MR. BRUH:  And if it's not confirmed by that date,

20  then I can renew my motion, and I would have -- it would

21  have teeth, Your Honor.

22          THE COURT:  So yeah.  I understand.  Let's do some

23  math, and let's see what makes sense.  I think that -- first

24  off, let me just say I think that makes sense.  I'll

25  affirmatively say that.  I think that this -- I don't --

Page 27

1   this case has already been in at least one and maybe more

2   than one kind of intractable holding patterns or quagmires,

3   and the Court's shown a lot of patience.  So has the U.S.

4   Trustee's Office in pursuing its motion or standing down on

5   its motion.

6           So I think to my mind, the sequence that makes

7   sense is we get past the October 26th claim bar date.

8   Disclosure statement motion coupled with amended plan would

9   be due by sometime in around mid-November is what's in my

10  mind.  This is subject to input from everyone.  There would

11  be a hearing for that probably in -- I guess in December,

12  maybe mid-December.  And then if we are going to be going

13  forward with confirmation, we're talking, you know, whatever

14  the notice requirements are, but we're going to be sometime

15  mid- to late January for confirmation or so, if my thinking

16  is right, or possibly sliding into February.  And so I would

17  think a deadline for reinstating your motion if there's no

18  plan confirmed would be sometimes maybe mid-February.  I'm

19  doing all of that off the top of my head, Mr. Bruh.  How am

20  I doing?

21          MR. BRUH:  I thought it was good.  I had the

22  January 31st as a deadline to confirm a plan.  I think the

23  order needs to just have that.

24          THE COURT:  Yeah.  No, that's what I'm saying.

25          MR. BRUH:  Right.

Page 28

1            THE COURT:  Mid- to late January confirmation

2    date.

3            MR. BRUH:  I mean, if the Court thinks that it

4    would be better to February, we're acceptable with that.  I

5    do know that I will be away for the president's week, so the

6    firm deadline would be before that date.

7            THE COURT:  Okay.  Well, we can line up --

8            MR. BRUH:  (Indiscernible).

9            THE COURT:  -- yeah, everyone's personal schedule.

10   As long as they're not crazy, I am going to accommodate.

11           MR. BRUH:  Right.

12           THE COURT:  So that sounds -- okay.  If that's

13   workable for the U.S. Trustee's Office, that sounds in

14   keeping with my thinking.

15           Okay.  Let me come back.  I think it was Mr. Kass

16   wanted to speak maybe, if I'm not mistaken.  Someone wanted

17   to speak.

18           MR. KASS:  Yes, Your Honor.

19           THE COURT:  Go ahead.

20           MR. KASS:  Thank you, Your Honor.  Just two quick

21   points.  First on the point that Mr. Bruh raised, I don't

22   necessarily want to split hairs here, but there are cases

23   out there in the bankruptcy courts that say that

24   (indiscernible) --

25           THE COURT:  Sorry.  You broke up.  Mr. Kass, your

Page 29

1   connection just broke up one second, so say again.  There

2   are cases saying -- and then you broke up.

3          MR. KASS:  Yeah.  There are cases that say that

4   the rejection of a lease doesn't necessarily terminate it.

5   right.  And that makes sense in many cases because there are

6   economic consequences of the lease that the Court then

7   (indiscernible) rejection (indiscernible), and so on and so

8   forth.

9          So it occurred to us that that is the way that it

10  can be analyzed under the plan, that even if there had been

11  a rejection, there has not been necessarily a termination of

12  the lease, and what is being assigned under the plan would

13  be what remains of the debtor's interest in the lease.  And

14  that would be Court agents.  So that's sort of the analysis

15  without trying to be, you know, talking about how many

16  angels are dancing on the head of that particular pin.

17         THE COURT:  Okay.  I'm going to say some words

18  that are intended to say that I am expressing no opinion

19  whatsoever about that, but we'll -- I'll be ready to assess

20  it if I need to down the road, but I think I understand what

21  you're saying.

22         MR. KASS:  Okay.  So that is the -- and I believe

23  Ms. Keenan's point that there is some value in going down

24  this path rather than simply having the determination that

25  the lease has been terminated in order to have a situation

Page 30

1    under which there is some economic value both for the bank

2    and the city, and hopefully for the community in which there

3    is a new tenant who improves the property and hopefully can

4    perform under the terms of the (indiscernible) lease.  All

5    that is worth trying to get to in a couple of months.  I

6    understand this process has to end at least as well as

7    everybody else.

8             The other question I did want to speak to, Your

9    Honor, briefly is that there will also have in additional to

10   the Court procedure for confirming a plan, there will also

11   have to be certain approvals and authorizations obtained in

12   -- through the city processes, through city agencies, other

13   authorities, and we'd like to have that going on a parallel

14   track at the same time.  So while you're setting deadlines

15   for the confirmation, we'd like to understand that -- or

16   have the parties understand that that process to obtain

17   necessary approvals should be going forward at the same

18   time.  And City certainly committed to trying to move that

19   process as quickly as possible.

20             THE COURT:  Okay.

21             MR. KASS:  So we will --

22             THE COURT:  Let me -- I mean, I'll just encourage

23   everyone to do what they need to do to achieve whatever

24   administrative requirements the city has at the same time as

25   they're pursuing the outcome in the bankruptcy process.  I

Page 31

1  think that makes sense.  I think probably you said that as

2  much as anything to sort of let me know of that necessity

3  and also make sure that all the parties are remembering of

4  it -- remembering it.

5          Okay.  So that's fine.  Did the sequence I

6  described in talking to Mr. Bruh work for you, Mr. Kass?

7          MR. KASS:  Yes.  It seems to make sense yes.

8          THE COURT:  Okay.  And Mr. Sullivan, it works for

9  you?

10         MR. SULLIVAN:  Yes, Your Honor.

11         THE COURT:  Okay.  Ms. Keenan, so you may be

12  unhappy, but is there anything you want to raise to sort of

13  try to divert me to another path?

14         MS. KEENAN:  We have to have some sort of

15  declaratory ruling by Your Honor as to the validity of that

16  stipulation and order.  You can't pick and choose which

17  provisions of that situation and order are still operative

18  and those that are not still operative.

19         THE COURT:  Yeah.  Yeah.  I'm not going to --

20         MS. KEENAN:  I want to --

21         THE COURT:  Go ahead.  Let me just say I'm not

22  going to do it on the spot, but I -- if you want to -- if --

23  I'll have to think about it, and the parties can all address

24  it.  Obviously you've probably done everyone a service by

25  raising that, and all of the prior history and the posture

Page 32

1   that it leaves us in is certainly a critical part of the

2   backdrop.  Everyone should be aware of that and address it.

3             MS. KEENAN:  Right.

4             THE COURT:  Including you, Ms. Keenan.

5             MS. KEENAN:  And Your Honor -- just so Your Honor

6   is aware, that's -- the terms of that situation were brought

7   to my attention 15 minutes before the Court hearing where

8   you were advised of it basically saying, "We're going to

9   give you more time, Debtor, but you've got to basically give

10  us your firstborn.  You've got to give up everything you

11  have against the City."  So that is a very coerced

12  stipulation, and if they are going to say that the lease is

13  still operative despite their language that it wasn't going

14  to be operative anymore, then they can't say the debtor is

15  going to have no right to go against the city, and we will

16  fight that.

17            THE COURT:  Okay.  I mean, that's --

18            MS. KEENAN:  Can't have it all.

19            THE COURT:  Yeah.  I mean, I think this is one of

20  the many times when lawyers are almost speaking to each

21  other through me, and that's fine.  I don't think there's

22  anything for me to do at this point.

23            But let me say I urge you all to continue talking.

24  I think -- I know that I think probably the debtor is quite

25  frustrated with the process, but if there is a way to cut

Page 33

```
 1   through or achieve any even partial or marginal elimination
 2   of problems, that would be great.
 3           And I will also say just as a matter of
 4   professional courtesy, I hope that you all surface the
 5   issues and deal forthrightly with one another because
 6   there's certainly a collective community interest and
 7   bankruptcy court interest in needing to get this resolved,
 8   so it doesn't work to have everyone just hide in their
 9   bunkers.  I'm not saying that's what's been happening, but
10   let's make sure that's not happening going forward.
11           Okay.  So here's I think -- I think this is -- oh,
12   I'm sorry.  Ms. Blumenfeld who's been here quietly, and I
13   know she represents Ms. Chan, the principle in this separate
14   individual bankruptcy -- anything you want to add, Ms.
15   Blumenfeld from your point of view?
16           MS. BLUMENFELD:  Good morning, Your Honor.  Just
17   to complicate things a little bit more -- and I understand,
18   you know, Mr. Bruh doing what he has to do from his office
19   perspective -- but he did file a motion to dismiss with
20   prejudice or convert the individual case.
21           You know, we've kind of been sitting back and
22   waiting to see what's going on with this case.  You know,
23   the client is an elderly woman.  The basis for the motion is
24   the nonpayment of the quarterly fee, which actually was
25   paid, I believe, on the 28th, but I guess it takes time.
```

Page 34

1            THE COURT:  Can I ask you to be clear.  You're

2    talking about the motion in the individual case?

3            MS. BLUMENFELD:  That's correct, Your Honor.

4            THE COURT:  With Ms. Chan?

5            MS. BLUMENFELD:  That's correct, Your Honor.  And

6    it's actually a little bit of a, you know, a bad time for

7    that to be filed just because of all the holidays, and the

8    return date is on one of the holidays, but I can reach out

9    to Mr. Bruh to see if he'll give me like an extra day or so

10   to file a response, and it's just really because of the

11   quarterly fee, which was already paid, and the monthly

12   operating reports which have to be filed.

13            I'm not sure why he chose to dismiss this one, if

14   he wants to, with prejudice and not the other one.  But

15   depending on what happens with this case, it does affect the

16   other case as well, so if we get converted, kind of messes

17   up the corporate case if the corporate case is not

18   converted, so --

19            THE COURT:  Yeah.  Ms. Blumenfeld, I got it.  Let

20   me ask -- let me jump in and just ask to make sure.  I have

21   the individual case before me is an 11.  Is that right?

22            MS. BLUMENFELD:  Yes.  That's correct.

23            THE COURT:  Okay.  In case it helps, I'm going to

24   approve a reasonable extension of your response deadline as

25   needed to take care of the holidays and personal scheduling

Page 35

1    matters, and we can handle the scheduling.  I'm sure Mr.

2    Bruh would do the same.

3            MR. BRUH:  We have no objection, Your Honor.

4            THE COURT:  Yeah.  But if, you know, you need the

5    Court -- sooner or later, you'll need the Court to bless

6    something.  If you work it out, I'll be inclined to say yes.

7    If you want to --

8            MS. BLUMENFELD:  I appreciate it.

9            THE COURT:  If you want to have a talk offline and

10   push out the individual motion in light of developments

11   today, I would off the top of my head be fine with that too,

12   I think.  But I don't know.

13           Mr. Bruh, should we -- I mean, this case isn't

14   even calendared now, but what do you think, Mr. Bruh?  Do

15   you have a reaction offhand?

16           MR. BRUH:  I believe that we're okay with that.

17   We filed the motion -- the thrust of it was the operating

18   reports.  The debtor has been in bankruptcy for -- before

19   Your Honor for almost five months, and nothing's been filed.

20   they're done, and we just want the debtor to do what the

21   debtor's supposed to do.

22           THE COURT:  Okay.

23           MR. BRUH:  We could -- if Your Honor was so

24   inclined, we could put it off to a date in this order, wrap

25   it into it somehow.

Page 36

1              THE COURT:  I'd rather keep it separate.  Life's

2    hard enough.  Let's just suggest this.  Talk offline.  If

3    you reach agreement on a proposed --

4              MR. BRUH:  Perfect.

5              THE COURT:  -- order, just --

6              MR. BRUH:  I can push it out.

7              THE COURT:  Yeah.

8              MR. BRUH:  I'll talk to Ms. Blumenfeld and file a

9    notice of adjournment and extend her deadline to file a

10   response.  That is acceptable, Your Honor.

11             THE COURT:  Yeah.  That's great.  And I'm sure --

12   like if it's -- it sounds like it's curable, and Ms.

13   Blumenfeld says at least some of what needs to be done has

14   been done, and I'm -- knowing her, I'm sure that if there

15   are other steps that are necessary, just help make sure she

16   knows what's on your mind, and I'm sure she'll take steps to

17   do it.  And then that -- this part of it can likely go away,

18   and we'll focus on the business piece.

19             All right.  Let me -- so let me --

20             MS. BLUMENFELD:  Thank you so much, Your Honor.

21   Thank you.  I appreciate it.

22             THE COURT:  Yeah.  Of course.  Yeah.  Of course.

23             MS. BLUMENFELD:  And just, Your Honor, I believe

24   Your Honor is about to say the scheduling order and

25   everything else.  If I have some other competing hearings

Page 37

1    this morning that have second call --

2              THE COURT:  Oh.

3              MS. BLUMENFELD:  -- if I could be excused and just

4    catch up with Ms. Keenan or somebody else --

5              THE COURT:  That's fine.

6              MS. BLUMENFELD:  -- to acquire the dates, I would

7    greatly appreciate it.  Whoever is --

8              THE COURT:  That's fine.

9              MS. BLUMENFELD:  -- fasting, I hope everyone has

10   an easy fast.  Even if you're not religious, I wish everyone

11   a shanah tovah anyway, and thank you so much.

12             THE COURT:  Thank you.  Take care.  Good to see

13   you, Ms. Blumenfeld.

14             MS. BLUMENFELD:  Okay.  You as well.  You as well.

15   Thank you.

16             THE COURT:  Okay.  Is there anyone else who wants

17   to be heard who hasn't been heard?  I think we've covered

18   everyone.  I'm just making sure.

19             Okay.  I paused and no one said yes, so I want to

20   get this right.  Here's -- I'm going to say this as a

21   tentative ruling and outcome of today, and if people agree,

22   I'll ask someone to submit a proposed order to this effect,

23   probably orders.

24             So first I'm going to talk about the U.S.

25   Trustee's motion to convert or dismiss, which has been

Page 38

1    pending for a very long time, and with thanks to Mr. Bruh

2    for his understanding.  What I'd like to do is direct that

3    that motion be denied without prejudice to reinstatement by

4    on or before, at the trustee's total discretion, February

5    15th of 2023, and that's a Wednesday.  I just paused to make

6    sure it wasn't a weekend.

7              And it can be reinstated by a simple filing of a

8    notice of reinstatement at which point the previously filed

9    papers by the U.S. Trustee simply will be reinstated and

10   enforced, and at the U.S. Trustee's discretion, the U.S.

11   Trustee has leave to file a supplement to its prior papers

12   but is not required to do so.

13             And so my intention in doing that is allowing

14   sufficient time that if people pursue confirmation with

15   seriousness of purpose and productively, that will have

16   resolved the fundamental drivers of the U.S. Trustee's

17   motion, and it won't need to be reinstated, but if enough

18   time passes that we've reached February 15th and

19   confirmation has not yet occurred, then it'll be appropriate

20   to reinstate that motion, at which point Mr. Bruh can get a

21   hearing date.

22             And I guess I should specifically say people are

23   welcome to file responses to such a reinstated motion no

24   later than a week before whatever hearing date is picked.

25             I'm going to -- I think I should state grounds,

Page 39

1    and then we can just enter a simple order that this outcome

2    was reached for reasons stated on the record.  I think the

3    grounds -- first, I think the U.S. Trustee has stated a

4    valid grounds for either dismissal or conversion for cause

5    under Section 1112(b)(4)(j) for failure to confirm a plan

6    within time fixed by the -- by orders of the Court, really.

7    But I do also find that the requirements of 1112(b)(2) are

8    present in the current circumstances in light of progress

9    that has occurred in the case to date, specifically that --

10   it's a stretch, but I will say for purposes of discussion,

11   there's reasonable justification for the act or omission in

12   that the City as landlord has been trying very hard to work

13   with all interested parties and constituencies and devise an

14   acceptable and productive use for the property.

15            And it appears finally to be -- I shouldn't say

16   it, the City -- the case appears finally to be potentially

17   in a posture of successfully proceeding within Chapter 11 in

18   a way that could cause the property to be put to productive

19   use and benefit the community again, and again if there's at

20   least reasonable prospect of curing the deficiencies and the

21   delays in the case within a reasonable period of time, as

22   long as we achieve confirmation by February 15th.

23            And really what I want to occur is confirmation at

24   some point in January if we're going to get there.  This is

25   of course without prejudice to Debtor's rights to object and

Page 40

1   raise whatever concerns they've got, and it may be that it

2   doesn't fly.  And if we find out it doesn't fly, it may be

3   time to rip off the band-aid and go the conversion or

4   dismissal route, so we'll cross that bridge when we get to

5   it, if we do.

6            Okay.  So that concludes my oral ruling with

7   respect to the U.S. Trustee's motion to dismiss.  And Mr.

8   Bruh, I'll ask you to just submit a very simple, plain

9   vanilla order capturing as much as you want of that

10  procedurally and referencing reasons stated on the record.

11           Does that work for you, Mr. Bruh, and did I say

12  anything you can't live with?

13           MR. BRUH:  It's all acceptable, Your Honor.

14           THE COURT:  Okay.

15           MR. BRUH:  I would --

16           THE COURT:  I'm not asking for re-argument, but I

17  want to be code compliant.  I think what I charted works,

18  and -- but if I did anything that's precedentially terrible,

19  I'd want to know.

20           MR. BRUH:  No.  It's acceptable, Your Honor.  I'm

21  just looking at the drafting of the order.  I'll put in

22  without prejudice and the dates and things like that, and

23  for the reasons stated on the record.

24           THE COURT:  That's fine.  And you can state --

25           MR. BRUH:  And I'll circulate it to the parties

Page 41

1    beforehand just to make sure they're okay with it.

2              THE COURT:  Okay.  Perfect.  That's great.  Thank

3    you, and make sure you just include in there the part about

4    it can be reinstated by simple filing of a notice with or

5    without supplementation.  That's really to protect your

6    interest as much as anything.  Okay.

7              All right.  So that resolves the motion, and then

8    let's turn to the case.  I want to enter a separate case

9    scheduling order that's just going to set deadlines.  You

10   all can talk about what's acceptable, but what I want to

11   have happen is as soon as feasible after October 26th and

12   the passing of the bar date, the proponent of the plan,

13   which is the Bank of Hope, is to file a revised disclosure

14   statement and -- a proposed disclosure statement and amended

15   plan coupled with a motion to approve the disclosure

16   statement along with all other necessary procedural elements

17   of a motion to proceed and pursue discovery.

18             Mr. Sullivan, when do you think you can do that?

19   Obviously you're on a tight clock, so the sooner the better,

20   but I don't want to crush you.

21             MR. SULLIVAN:  Yeah.  We'll move as quick as

22   possible.  A lot of it's going to probably depend upon --

23   you know, I need to probably reach out to the City, and I'll

24   reach out to Ms. Keenan as well to see if there's any way to

25   loop her client into it.  You know, I obviously think it

Page 42

1  would go a lot smoother if the debtor were cooperating.

2          So I'll reach out to them, but the goal will be to

3  try to comply with your directive.  I think you had

4  previously said by mid-November, so obviously we'll try to -

5  - we'll try to do that.

6          THE COURT:  Yeah.  I would say if you could do

7  November 4th, which is greedy of me -- actually I shouldn't

8  say greedy.  It's earlier than I suggested, but that would

9  be ideal, so see if you can do it by November 4th.

10          I'm going to say talk among yourselves offline.

11  If you decide November 4th is doable, just get me a proposed

12  scheduling order that sets that date.  If that doesn't work,

13  give me the soonest date thereafter possible.  Friday

14  November 11th is Veteran's Day, and so you -- the Court

15  dates surrounding that are either Thursday the 10th or

16  Monday the 14th.  I think those are the other -- like if you

17  need those dates, I can live with them.  I will just ask you

18  to remember that on the back end, you're going to be jammed

19  because this is going to smoke out some objections, it

20  sounds like, and there's going to be some issues to sort

21  through, so you may hit a crunch.

22          Okay.  And then you can contact Ms. Calderone for

23  a hearing date on that motion, which I presume is going to

24  be conceivably very late November but likely very early in

25  December.  So whatever date she can get you that works for

Page 43

1    everybody in that range, and then let's look for a -- you

2    can just work out a sequence that's going to work in terms

3    of, you know, notice, balloting, objection deadline, and

4    confirmation.

5             And so I'm going to leave it to you to put

6    together a sequence of dates that works for notice

7    requirements, assuming, you know, keyed off of whatever

8    hearing date you get for the disclosure statement hearing.

9    And then you can simultaneously look to schedule a

10   confirmation hearing at the end of that.

11            Okay, and I want to emphasize for Ms. Keenan's and

12   the debtor's benefit, this is very much subject to Debtor's

13   rights to object and do whatever they're going to do, but it

14   just needs to be dovetailed with that timeframe because the

15   Court and the process have been playing out for too long

16   already, and it's just time to try to head to some sort of

17   resolution.

18            Okay.  I think that's all we need, so I'll ask Mr.

19   Sullivan, since he's now on behalf -- representing Bank of

20   Hope, which is kind of driving the bus scheduling wise, to

21   put together -- let me ask you to put together a scheduling

22   order that reflects the dates that all the counsel are going

23   to work out offline today.  Okay.  And then we'll get that

24   memorialized.

25            MR. BRUH:  Your Honor?

Page 44

1          THE COURT:  Yeah, Mr. Bruh.

2          MR. BRUH:  I was just going to ask -- I just

3    wondered for clarification so the parties -- I don't know

4    with me trying to send everything -- that the order will

5    have something to the effect that the plan should be

6    confirmed on or before a date prior to the date for me to

7    reinstate my motion.  So it should --

8          THE COURT:  Yeah.  I think that -- I think that

9    the order authorizing the reinstatement of your motion kind

10   of makes that clear, and the record makes that clear, and

11   I'm a little concerned about --

12         MR. BRUH:  Okay.

13         THE COURT:  -- putting a hard deadline separately

14   in the scheduling order.  I think I just want to have a

15   clean scheduling order that sets confirmation date that's

16   soon.  Yeah.  I mean, I'll just state it directly, and

17   somebody will probably -- I think someone should order the

18   transcript and probably will.  My expectation is that the

19   plan will be confirmed on or before February 15th, if at

20   all.  Otherwise, the conditions for Mr. Bruh's reinstated

21   motion will likely be met, and then we'll be back looking at

22   the case from that perspective.  Okay.

23         I think that honestly I've said -- I and my

24   predecessors on the case have set such a series of hard

25   deadlines that haven't been met, and I'm not -- I haven't

Page 45

1    thought through well enough to be sure I want to stick

2    another one in this immediate scheduling order.  Let's just

3    get it teed up as a confirmation sequence.

4              MR. BRUH:  Understood.

5              THE COURT:  All right.  Thanks.

6              Mr. Sullivan, was that clear enough for you to

7    implement?

8              MR. SULLIVAN:  I believe so, Your Honor.

9              THE COURT:  Okay.  I think that's what we need to

10   do.  Let me thank everyone for your efforts and ask everyone

11   if there's anything else we need to do today.

12             All right.  Thank you very much, and I'll keep on

13   hoping and looking for good news coming out of this.  Keep

14   working, and best of luck to everyone.  Take care.

15             MS. KEENAN:  Thank you.

16             MR. BRUH:  Thank you, Judge.

17             MR. KASS:  Take care.

18             (Whereupon these proceedings were concluded at

19   11:05 A.M.)

20

21

22

23

24

25

Page 46

1                          I N D E X

2

3                              RULINGS

4                                               Page        Line

5    Motion To Convert Or Dismiss DENIED         38          3

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 47

1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6    *Sonya M. Ledanski Hyde*

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  October 11, 2022