**HEARING DATE: January 12, 2023 at 10:00 A.M. (prevailing Eastern Time)**
**OBJECTION DEADLINE: January 6, 2023 at 5:00 P.M. (prevailing Eastern Time)**

WINDELS MARX LANE & MITTENDORF, LLP
*Attorneys for Bank of Hope*
156 West 56th Street
New York, New York 10019
Telephone (212) 237-1000
Attorney Appearing: James M. Sullivan (jsullivan@windelsmarx.com)
Robert J. Malatak (rmalatak@windelsmarx.com)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
In re:                                                    Chapter 11

EAST BROADWAY MALL,                                       Case No. 19-12280 -DSJ

Debtor.
---------------------------------------------------------X

**BANK OF HOPE'S MOTION FOR ENTRY OF AN ORDER APPROVING (I) THE**
**DISCLOSURE STATEMENT FOR PLAN OF LIQUIDATION; (II) SOLICITATION OF**
**VOTES TO ACCEPT OR REJECT PLAN OF LIQUIDATION AND NOTICE**
**PROCEDURES; (III) FORMS OF BALLOTS AND NOTICES IN CONNECTION**
**THEREWITH; AND (IV) CERTAIN DATES WITH RESPECT THERETO**

TO:    THE HONORABLE DAVID S. JONES,
       UNITED STATES BANKRUPTCY JUDGE:

Bank of Hope, f/k/a BBCN Bank ("**Bank of Hope**" or "**Bank**"), secured creditor of the
chapter 11 estate (the "**Estate**") of the above-captioned debtor, East Broadway Mall ("**Debtor**" or
"**EBM**"), by its undersigned counsel Windels Marx Lane & Mittendorf, LLP, respectfully
represents the following:

**RELIEF REQUESTED**

1.    The Bank seeks entry of an order, substantially in the form attached hereto as
**Exhibit A** (the "**Order**"), granting the following relief and such other relief as is just and proper:

a. ***Disclosure Statement.*** Approving the Disclosure Statement for the Chapter 11 Plan of Liquidation (the "**Disclosure Statement**") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code;

b. ***Solicitation and Voting Procedures.*** Approving the procedures for (i) soliciting, receiving, and tabulating votes to accept or reject the Chapter 11 Plan of Liquidation (as may be amended, supplemented, or modified from time to time, the "**Plan**"), (ii) voting to accept or reject the Plan, and (iii) filing objections to the Plan (the "**Solicitation and Voting Procedures**"), substantially in the form attached to the Order as **Exhibit 1**;

c. ***Ballots.*** Approving the Class 4A, 4B, and 4C Ballots (the "**Ballots**"), substantially in the form attached to the Order as **Exhibits 2a, 2b, and 2c** respectively;

d. ***Non-Voting Status Notices.*** Approving (i) the form of notice applicable to Holders of Allowed Claims[1] or Allowed Interests that are Unimpaired under the Plan and who are, pursuant to section 1126(f) of the Bankruptcy Code, conclusively presumed to accept the Plan; (ii) the form of notice applicable to Holders of Claims or Interests that are Impaired under the Plan and who are, pursuant to section 1126(g) of the Bankruptcy Code, conclusively deemed to reject the Plan; and (iii) the form of notice applicable to Holders of Claims that are subject to a pending objection by the Bank and who are not entitled to vote the disputed portion of such Claim (each, a "**Non-Voting Status Notice**"), substantially in the forms attached to the Order as **Exhibit 3, Exhibit 4, and Exhibit 5**, respectively;

e. ***Solicitation Packages.*** Finding that the solicitation materials and documents included in the solicitation packages (the "**Solicitation Packages**") that will be sent to, among others, Holders of Claims entitled to vote to accept or reject the Plan, comply with Bankruptcy Rules 3017(d) and 2002(b);

f. ***Cover Letter.*** Approving the form of letter (the "**Cover Letter**") that the Bank will send to Holders of Allowed Claims or Allowed Interests entitled to vote to accept or reject the Plan urging such parties to vote in favor of the Plan, substantially in the form attached to the Order as **Exhibit 6**;

g. ***Plan Confirmation Hearing Notice.*** Approving the form and manner of notice of the hearing to consider Confirmation of the Plan (the "**Plan Confirmation Hearing**," and the notice thereof, the "**Plan Confirmation Hearing Notice**"), substantially in the form attached to the Order as **Exhibit 7**;

h. ***Plan Supplement Notice.*** Approving the notice related to the filing of the Plan Supplement (the "**Plan Supplement Notice**"), substantially in the form attached to the Order as **Exhibit 8**;

---

[1] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in either the Disclosure Statement or the Plan, as applicable.

    i.   ***Assumption and Rejection Notices.*** Approving the form of notices to counterparties to Executory Contracts and Unexpired Leases that will be assumed or rejected pursuant to the Plan, (the "**Assumption Notice**" and the "**Rejection Notice**," respectively) substantially in the forms attached to the Order as **Exhibit 9 and Exhibit 10**, respectively; and

    j.   ***Confirmation Timeline.²*** Establishing the following dates and deadlines, subject to modification as necessary:

       i.   ***Voting Record Date.*** **January 6, 2023** as the date for determining (i) which Holders of Claims in the Voting Classes are entitled to vote to accept or reject the Plan and receive Solicitation Packages in connection therewith and (ii) whether Claims have been properly assigned or transferred to an assignee pursuant to Bankruptcy Rule 3001(e) such that the assignee can vote as the Holder of the respective Claim (the "**Voting Record Date**");

      ii.   ***Disclosure Statement Hearing.*** **January 12, 2023, at 10:00 a.m**. or as soon thereafter as the Bank may be heard as the date for the hearing at which the Court will consider approval of the Disclosure Statement;

     iii.   ***Disclosure Statement Objection Deadline.*** **January 6, 2023**, as the deadline by which objections to the Disclosure Statement must be filed with the Court and served so as to actually be received by the appropriate notice parties (the "**Disclosure Statement Objection Deadline**");

     iv.   ***Solicitation Launch Date.*** **January 16, 2023** as the outside date to commence distributing Solicitation Packages, including Ballots, to Holders of Claims entitled to vote to accept or reject the Plan (the "**Solicitation Launch Date**");

      v.   ***Plan Supplement Notice.*** **February 17, 2023**, the date by which the notice related to the filing of the Plan Supplement will be filed (the "**Plan Supplement Notice**");

     vi.   ***Voting Deadline.*** **February 22, 2023, at 4:00 p.m.** prevailing Eastern Time as the deadline by which all Ballots must be properly executed, completed, and delivered so that they are actually received (the "**Voting Deadline**") by counsel for the Bank (the "**Voting and Claims Agent**");

     vii.   ***Plan Objection Deadline.*** **February 22, 2023**, as the deadline by which objections to the Plan must be filed with the Court and served so as to be

---

² In accordance with the Scheduling Order dated November 18, 2022 and entered by the Court on November 21, 2022, the dates set for the Disclosure Hearing, the Disclosure Statement Objection Deadline, Plan Confirmation Hearing, and the Plan Objection Deadline have already been approved and set by the Court and are listed in an effort to list a complete timeline of dates in connection to the Disclosure Statement and Plan.

actually received by the appropriate notice parties (the "**Plan Objection Deadline**"); and

viii.   ***Deadline to File Voting Report.***   <u>**February 27, 2023, at 4:00 p.m.**</u> prevailing Eastern Time as the date by which the report tabulating the voting on the Plan (the "**Voting Report**") shall be filed with the Court;

ix.   ***Plan Confirmation Hearing Date.***   <u>**March 1, 2023, at 10:00 a.m.**</u> or as soon thereafter as the Bank may be heard as the date for the hearing at which the Court will consider Confirmation of the Plan (the "**Plan Confirmation Hearing Date**").

## JURISDICTION AND VENUE

2.      The Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334 and the Order of the United States District Court for the Southern District of New York dated May 27, 2022 [Docket No. 107], captioned *In re East Broadway Mall, Inc.*

3.      Venue of this case and this Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory bases for the relief requested herein are sections 105, 1121, 1125, 1126, 1128, and 1129 of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 3016, 3017, 3018, and 3020 of the Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**"), and Rules 3017-1, 3018-1, and 3020-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**").

## BACKGROUND

5.      On July 12, 2019 (the "**Petition Date**"), Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code [ECF Docket No. 1].  Debtor has continued in possession of its property and the management of its business affairs as a debtor-in possession pursuant to §§1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed.

6.      The U.S. Trustee was unable to appoint an Official Committee of Unsecured Creditors.

7.      Prior to the Petition Date, by lease dated as of March 1, 1985 (the "**1985 Lease**"), the City of New York (the "**City**"), through the New York City Department of General Services, now consolidated as part of the Department of Citywide Administrative Services ("**DCAS**") as Landlord, and Debtor as Tenant, entered into a 50-year lease for use of land beneath the Manhattan Bridge, originally designated as 59-77 Division Street, Manhattan, later re-designated as 88 East Broadway, and thereafter developed by Debtor, pursuant to the terms of the Lease (the "**Premises**").  The Premises is delineated on the Tax Map of the City of New York, County of New York, as Block 282, Lot 44.

8.      The 1985 Lease was subsequently amended in November 1995 by First Amendment to Lease ("**First Lease Amendment**") in connection with the settlement of a nonpayment proceeding brought against Debtor in July 1994.  The 1985 Lease and the First Lease Amendment are referred to together herein, as the "Lease".

9.      The City asserted that, as of the Petition Date, the Debtor owed a substantial amount to the City under the Lease, consisting of Base Rent, PILOT, Late Charges, plus Water Charges and Percentage Rent (the "**City Pre-petition Claim**").  The City further asserted that the Debtor has failed to make numerous payments due under the Lease during the post-petition period (the "**City Post-petition Claim**", and together with the City Pre-petition Claim, the "**City Claim**").

10.      As reflected in the "So Ordered" Stipulated Order Re: (I) Use of Cash Collateral, (II) Post-Petition Replacement Liens, and (III) Related Relief dated November 13, 2019 (the "**Cash Collateral Order**"), the Bank and Debtor agreed that BOH is the senior secured creditor of the Debtor, pursuant to certain loan documents, including a promissory note, a loan agreement

and a leasehold mortgage on the Lease, all dated December 29, 2011 (the "**Loan Documents**")
[ECF Docket No. 28, 29].

11.    As reflected in the Cash Collateral Order, the Debtor and BOH also agreed that as
of the Petition Date, pursuant to the Loan Documents, the Debtor's indebtedness to BOH under
the note was no less than $5,851,940.00, including, without limitation, $5,490.691.13 of principal,
$129,847.56 of interest, and $231,401.31 of attorneys' fees (together with continuing interests,
costs, and expenses due under the loan documents (collectively, the "**BOH Pre-Petition Claim**").

12.    The Debtor has failed to make numerous payments due under the Loan Documents
and the Cash Collateral Order during the post-petition period (the "**BOH Post petition Claim**",
and together with the BOH Pre-petition Claim, the "**BOH Claim**").

13.    As reflected in the Cash Collateral Order, the Debtor and BOH further agreed that
the BOH Claim is secured by substantially all of the Debtor's assets, including but not limited to
the Lease.  The Debtor, the City and the Bank shall be referred to collectively herein as the
"**Parties**".

14.    By letter dated April 8, 2014, the Landlords sent a Notice to Cure to the Debtor,
arising out of what the Debtor alleged was an erroneous calculation of a percentage rent due and
owing.

15.    On May 10, 2018, in response to a notice to cure served by the City, the Debtor, as
Plaintiff, e-filed a motion in the Supreme Court of the State of New York, City of New York (the
"**State Court Litigation**"), Index No. 154341/2018, for a so-called Yellowstone injunction,
seeking to toll the 10-day cure period set forth in the notice to cure.  The Debtor thereafter filed
additional pleadings, including an Amended Complaint, and the City filed pleadings in opposition,
including an answer and counter-claims.  The State Court granted the injunction but conditioned

its continuation on the Debtor's payment of certain amounts to the City. The City alleged that the Debtor did not make the requisite payments. Subsequently, the Debtor commenced this Chapter 11 case.

16.     On October 16, 2019, the Debtor filed in this Court a motion [ECF Docket No. 22] for an order pursuant to section 365(d)(4) of the Bankruptcy Code extending the time for the Debtor to assume or reject the Lease relating to 88 East Broadway by ninety (90) days. The City filed an objection to the Motion [ECF Docket No. 24].

17.     Thereafter, the City and the Debtor negotiated, and consulted BOH, as Leasehold Mortgagee. As a result of those negotiations, the City, the Debtor and the Bank all agreed to the terms of an order entered by the Court on November 26, 2019 (the "**November 26, 2019 Order**"). [ECF Docket No. 34]. The November 26, 2019 Order provided that the time within which the Debtor was permitted to assume or reject the Lease pursuant to section 365(d)(4) of the Bankruptcy Code was extended by ninety (90) days through and including February 9, 2020 (the "**February 9, 2020 Deadline**").

18.     The November 26, 2019 Order further provided that if the City did not consent in writing to a further extension before the February 9, 2020 Deadline, then the Lease would be rejected pursuant to 11 U.S.C. Section 365(d)(4), effective as of the February 9, 2020 Deadline. In addition, the November 26, 2019 Order provided that thereupon the City would be entitled to immediate possession of the leased premises, that the Debtor would immediately surrender the premises to the City as lessor.

19.     On or about January 29, 2020, the Debtor defaulted on its obligations to the Bank under the Cash Collateral Order by failing to make required adequate protection payments to the Bank. The Debtor has not made any adequate protection payments to the Bank since January 9,

2020.  As a result of the Debtor's continuing material defaults under the Cash Collateral Order,

the Bank is entitled to enforce the remedies to which it is entitled under the Cash Collateral Order.

20.    Subsequently, the United States Trustee filed a motion to convert the case to

Chapter 7 or to dismiss the case on January 14, 2022 (the "**Conversion Motion**") [ECF Docket

No. 76]. The City filed an objection to the Conversion Motion in which the Bank joined.  The

hearing on the Conversion Motion was adjourned several times.  On October 17  , 2022, the Court

entered an order denying the Conversion Motion, but permitting the United States Trustee to

reinstate the motion in the event that the Plan is not confirmed by March 1, 2023 [ECF Docket No.

130].

21.    The City and the Bank have negotiated a term sheet (the "**Term Sheet**") with a

proposed New Tenant (the "**Approved New Tenant**") setting forth the terms under which the

City, the Bank, and the Approved New Tenant would agree to the assumption and assignment of

the Lease to the Approved New Tenant, except that the terms of the Lease would be governed by

the form of new lease negotiated between the Approved New Tenant and the City, which is the

foundation of the proposed Plan.

22.    On June 22, 2022, the parties entered into a stipulation and order establishing

deadlines for certain actions by Debtor, City of New York and Bank of Hope pertaining to Debtor's

interest in lease for 88 Broadway, New York, NY ("**Stipulation**") [ECF Docket No. 110].

23.    On September 2, 2022, the Bank filed a motion for entry of an order (i) approving

the confirmation timeline, the plan and disclosure statement, (ii) scheduling a combined hearing

on the disclosure statement and plan, (iii) approving the combined hearing notice, and (iv)

establishing a procedure and deadline for filing proofs of claim and approving the form and manner

of notice thereof ("**Motion to Approve**") [ECF Docket No. 120].

19-12280-dsj    Doc 132    Filed 12/05/22    Entered 12/05/22 23:51:57    Main Document
Pg 9 of 21

24. On October 4, 2022, the Honorable David S. Jones directed the Parties to prepare a scheduling order ("**Scheduling Order**") setting forth deadlines relating to Bank of Hope's amended Chapter 11 Plan, which was entered on November 18, 2022 [ECF Docket No. 131].

## BASIS FOR RELIEF REQUESTED

### I.    The Court Should Approve the Disclosure Statement.

### A.    The Standard of Approval for a Disclosure Statement.

25. Bankruptcy Code § 1125 generally governs approval of disclosure statements, and includes a requirement that a plan proponent provide "adequate information" to holders of claims and interests prior to soliciting acceptances of a plan. *See* 11 U.S. C. § 1125.

26. Under section 1125(a) of the Bankruptcy Code, a plan proponent must provide holders of impaired claims and interests with "adequate information" regarding a proposed plan, which is defined as:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such hypothetical investor of the relevant class to make an informed judgment about the plan.

11 U.S.C. § 1125(a)(1).

27. Whether a disclosure statement contains adequate information is intended by Congress to be a flexible, fact-specific inquiry left within the discretion of the bankruptcy court:

> Precisely what constitutes adequate information in any particular instance will develop on a case-by-case basis. Courts will take a practical approach as to what is necessary under the circumstances of each case, such as the cost of preparation of the statements, the need for relative speed in solicitation and confirmation, and, of course, the need for investor protection. There will be a balancing of interests in each case. In reorganization cases, there is frequently great uncertainty. Therefore, the need for flexibility is greatest.

H.R. REP. NO.95-595, at 409 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6365. *See also Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) (observing that "adequate information will be determined by the facts and circumstances of each case"); *Tex. Extrusion Corp. v. Lockheed Corp. (In re Tex. Extrusion Corp*.), 844 F.2d 1142, 1157 (5th Cir. 1988) (opining that what constitutes adequate information is "subjective," "made on a case by case basis," and "largely in the discretion of the bankruptcy court").

28.     Thus, a disclosure statement must, as a whole, provide information that is reasonably practicable to permit an informed judgment by impaired creditors entitled to vote on the chapter 11 plan. *See Kirk v. Texaco, Inc*., 82 B.R. 678, 681 (S.D.N.Y. 1988).

29.     In making a determination as to whether a disclosure statement contains adequate information as required by section 1125 of the Bankruptcy Code, courts typically look for disclosures related to topics such as:

    a.    the events that led to the filing of a bankruptcy petition;

    b.    the relationship of the debtor with its affiliates;

    c.    a description of the available assets and their value;

    d.    the company's anticipated future;

    e.    the source of information stated in the disclosure statement;

    f.    the debtors' condition while in chapter 11;

    g.    claims asserted against the debtor;

    h.    the estimated return to creditors under a chapter 7 liquidation;

    i.    the future management of the debtor;

    j.    the chapter 11 plan or a summary thereof;

k.      financial information, valuations, and projections relevant to a creditor's decision to accept or reject the chapter 11 plan;

l.      information relevant to the risks posed to creditors under the plan;

m.      the actual or projected realizable value from recovery of preferential or otherwise avoidable transfers;

n.      litigation likely to arise in a nonbankruptcy context; and

o.      tax attributes of the debtor.

*See In re U.S. Brass Corp.*, 194 B.R. 420, 424–25 (Bankr. E.D. Tex. 1996); *see also In re Scioto Valley Mortg. Co.*, 88 B.R. 168, 170–71 (Bankr. S.D. Ohio 1988) (listing the factors courts have considered in determining the adequacy of information provided in a disclosure statement); *In re Metrocraft Pub. Serv., Inc*., 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984).

30.      In measuring the adequacy of the information contained in a disclosure statement, a bankruptcy court has broad discretion. *See Abel v. Shugrue (In re Ionosphere Clubs, Inc.)*, 179 B.R. 24, 29 (S.D.N.Y. 1995).

31.      Disclosure regarding all topics is not necessary in every case.  *See In re U.S. Brass Corp*., 194 B.R. at 424; *see also In re Phoenix Petroleum Co*., 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001) ("[C]ertain categories of information which may be necessary in one case may be omitted in another; no one list of categories will apply in every case.").

**B.      The Disclosure Statement Contains Adequate Information in Accordance with Section 1125 of the Bankruptcy Code.**

32.      The Disclosure Statement contains "adequate information" consistent with Bankruptcy Code § 1125(a) with sufficient information concerning the Plan and the Bank's intent to pay all Allowed Claims in full through the assumption and assignment of the Debtor's remaining interest in the Lease to the Approved New Tenant in accordance with the provisions of the Term

Sheet and the June 21, 2022 Stipulation and Order.  The Disclosure Statement allows Holders of

Allowed Claims in the Voting Classes to make informed decisions about whether to vote to accept

or reject the Plan. Specifically, the Disclosure Statement contains a number of categories of

information that courts consider "adequate information," including:

     (a)     ***The Debtor's Corporate History, Structure, and Business Overview.***

     (b)     ***Events Leading to the Chapter 11 Filings.***

     (c)     ***Events during the Chapter 11 Case.***

     (d)     ***The Chapter 11 Plan.***

     (e)     ***The Effect of the Plan on Claims, Interests, and Rights of Action.***

     (f)     ***The Provisions of the Plan Governing Releases and Exculpation.***

     (g)     ***Solicitation and Voting Procedures.***

     (h)     ***Confirmation of the Plan.***

33.    The Plan sets forth the Bank's strategy for distribution to creditors, and does not

present a complex case. The Bank respectfully submit that there is not any additional information

that they could provide that would provide creditors and other parties in interest with better

information than that presented in order to make a better informed decision whether to vote for or

against the Plan.

34.    Accordingly, the Bank submits that the Disclosure Statement complies with all

aspects of section 1125 of the Bankruptcy Code and addresses the information set forth above in

a manner that provides adequate information to Holders of Claims entitled to vote to accept or

reject the Plan. Accordingly, the Bank submits that the Disclosure Statement contains "adequate

information" and therefore should be approved.

**II.    The Court Should Approve the Disclosure Statement Hearing Notice.**

35.     Bankruptcy Rule 3017(a) requires that notice of the hearing to consider the proposed disclosure statement be provided to creditors and other parties in interest, and Bankruptcy Rule 2002(b) requires 28 days' notice for filing objections to the Disclosure Statement.

36.     In accordance with the Scheduling Order, the Disclosure Statement Hearing will be held on January 12, 2023 and the Disclosure Statement Objection Deadline is January 6, 2023.

37.     The Bank will serve all known creditors with notice of the Disclosure Statement Hearing (the "**Disclosure Statement Hearing Notice**"). The Disclosure Statement Hearing Notice identifies the following: (a) the date, time, and place of the Disclosure Statement Hearing; (b) the manner in which a copy of the Disclosure Statement (and exhibits thereto, including the Plan) can be obtained; (c) the Disclosure Statement Objection Deadline and procedures for filing objections to the approval of the Disclosure Statement; and (d) a copy of this motion and proposed order (excluding the exhibits). Additionally, the Bank will distribute copies of the Disclosure Statement, including exhibits, to parties on the list of all parties who have requested notice under Bankruptcy Rule 2002 (the "**2002 List**").   Accordingly, the Bank submits that the Disclosure Statement Hearing Notice should be approved as appropriate and in compliance with the requirements of the Bankruptcy Code and the Bankruptcy Rules.

**III.    The Court Should Approve the Confirmation Timeline and Related Forms.**

**A.     The Court Should Approve the Voting Record Date, Solicitation Launch Date, and Voting Deadline.**

38.     Bankruptcy Rule 3017(d) provides that, for the purposes of soliciting votes in connection with the confirmation of a plan, "creditors and equity security Holders shall include Holders of stocks, bonds, debentures, notes, and other securities of record on the date the order approving the disclosure statement is entered or another date fixed by the court, for cause, after notice and a hearing." Bankruptcy Rule 3018(a) contains a similar provision regarding

determination of the record date for voting purposes. Additionally, Bankruptcy Rule 3017(c) provides that before approving the disclosure statement, the Court must fix a time within which the holders of claims and interests may accept or reject a plan and may fix a date for the hearing on confirmation of a plan.

39.     The Bank requests that the Court exercise its authority under Bankruptcy Rules 3017(d) and 3018(a) to establish January 16, 2023 as the Solicitation Launch Date, January 6, 2023 as the Voting Record Date, and February 22, 2023 at 4:00 p.m. as the Voting Deadline. Moreover, the Bank proposes that, with respect to any transferred Claim, the transferee shall be entitled to receive a Solicitation Package and, if the Holder of such Claim is entitled to vote with respect to the Plan, cast a Ballot on account of such Claim only if: (a) all actions necessary to effectuate the transfer of the Claim pursuant to Bankruptcy Rule 3001(e) have been completed by the Voting Record Date or (b) the transferee files by the Voting Record Date (i) the documentation required by Bankruptcy Rule 3001(e) to evidence the transfer and (ii) a sworn statement of the transferor supporting the validity of the transfer. In the event a Claim is transferred after the Voting Record Date, the transferee of such Claim shall be bound by any vote on the Plan made by the Holder of such Claim as of the Voting Record Date.

40.     The Bank requests that, after the Bank distributes Solicitation Packages to Holders of Claims entitled to vote on the Plan as part of the Solicitation Launch Date, the Court require that all Holders of Claims entitled to vote on the Plan complete, execute, and return their Ballots so that they are actually received by the Voting and Claims Agent on or before the Voting Deadline.

41.     The foregoing timing and materials will afford Holders of Claims entitled to vote on the Plan at least 28 days, within which to review and analyze such materials and subsequently

make an informed decision as to whether to vote to accept or reject the Plan before the Voting

Deadline consistent with the requirements of the applicable Bankruptcy Rules.[3]  Accordingly, the

Bank requests that the Court approve the form of, and the Bank's proposed procedures for

distributing, the Solicitation Packages to the Holders of Claims in the Voting Classes.

**B.      The Court Should Approve the Forms of the Ballots.**

42.      In accordance with Bankruptcy Rule 3018(c), the Bank prepared and customized

the Ballots. Although based on Official Form No. 314, the Ballots have been modified to (a)

address the particular circumstances of the chapter 11 case and (b) include certain additional

information that are relevant and appropriate for Claims in the Voting Classes. The proposed

Ballots for the Voting Classes are annexed as **Exhibits 2a, 2b,and 2c** to the Order, respectively.

The Bank respectfully submits that the forms of the Ballots comply with Bankruptcy Rule 3018(c)

and, therefore, should be approved.

**C.      The Court Should Approve the Form and Distribution of Solicitation Packages
to Parties Entitled to Vote on the Plan.**

43.      Bankruptcy Rule 3017(d) specifies the materials to be distributed to holders of

allowed claims and/or equity interests upon approval of a disclosure statement, including the court-

approved plan and disclosure statement and notice of the time within which acceptances and

rejections of the plan may be filed. The Banks proposes to send the Solicitation Packages to

provide Holders of Claims in the Voting Classes with the information they need to be able to make

informed decisions with respect to how to vote on the Plan. Specifically, on the Solicitation Launch

Date, the Bank will cause the Solicitation Packages to be distributed through their Voting and

---

[3] *See* Fed. R. Bankr. P. 3017(d) (after approval of a disclosure statement, the debtor must transmit the plan, the approved disclosure statement, a notice of the time within which acceptances and rejections of such plan may be filed, and any other information that the court may direct to certain Holders of Claims).

Claims Agent (by first-class U.S. mail) to those Holders of Claims in each of the Voting Classes.

Each Solicitation Package will include the following materials:

a.      a copy of the Solicitation and Voting Procedures;

b.      a Ballot, together with detailed voting instructions and a pre-addressed, postage pre-paid return envelope;

c.      the Cover Letter;

d.      the Disclosure Statement (and exhibits thereto, including the Plan);

e.      the Order (without exhibits, except the Solicitation and Voting Procedures);

f.      the Plan Confirmation Hearing Notice; and

g.      such other materials as the Court may direct.

44.    The Bank requests that they be authorized to distribute the Plan, the Disclosure Statement, and the Order (without exhibits except the Solicitation and Voting Procedures) to Holders of Claims entitled to vote on the Plan in electronic format. Only the Ballot, the Cover Letter, and the Plan Confirmation Hearing Notice will be provided in paper format. Given the length of the Plan, the Disclosure Statement, and the proposed Order, distribution in this manner will translate into significant monetary savings for the Estate.

45.    Additionally, the Bank will provide complete Solicitation Packages (excluding the Ballots) to the U.S. Trustee and all parties on the 2002 List as of the Voting Record Date. Any party that receives the material in electronic format but would prefer paper format may contact the Voting and Claims Agent and request paper copies of the corresponding materials previously received in electronic format (to be provided at the Estate's expense). The Bank will not mail Solicitation Packages or other solicitation materials to Holders of Claims that have already been

paid in full during the Chapter 11 Case or that are authorized to be paid in full in the ordinary course of business pursuant to an order previously entered by this Court.

46.     The Bank respectfully requests that the Voting and Claims Agent be authorized (to the extent not authorized by another order of the Court) to assist the Bank in: (a) distributing the Solicitation Packages; (b) receiving, tabulating, and reporting on Ballots cast to accept or reject the Plan by Holders of Claims against the Bank; (c) responding to inquiries from Holders of Claims or Interests and other parties in interest relating to the Disclosure Statement, the Plan, the Ballots, the Solicitation Packages, and all other related documents and matters related thereto, including the procedures and requirements for voting to accept or reject the Plan and for objecting to the Plan; (d) soliciting votes on the Plan; and (e) if necessary, contacting creditors regarding the Plan.

47.     In addition to accepting hard copy Ballots via first class mail, overnight courier, and hand delivery, the Bank requests authorization to accept Ballots via electronic transmissions. Instructions for electronic, online transmission of Ballots are set forth on the forms of Ballots. For the avoidance of doubt, Ballots submitted via electronic means shall be deemed to contain an original signature.

**D.     The Court Should Approve the Notice of Plan Confirmation Hearing.**

48.     The Bank will serve the Plan Confirmation Hearing Notice on all known Holders of Claims or Interests and the 2002 List (regardless of whether such parties are entitled to vote on the Plan) by no later than **January 16, 2023**. The Plan Confirmation Hearing Notice will include the following: (a) instructions as to how to view or obtain copies of the Disclosure Statement (including the Plan and the other exhibits thereto), the Order, and all other materials in the Solicitation Package (excluding Ballots) from the Voting and Claims Agent and/or the Court's

{80299411:4}                                    17

website via PACER; (b) notice of the Voting Deadline; (c) notice of the Plan Objection Deadline;

and (d) notice of the Plan Confirmation Hearing Date and information related thereto.

## IV.    The Court Should Approve the Solicitation and Voting Procedures.

### A.    The Standard for Approval of Solicitation and Voting Procedures.

49.    Section 1126(c) of the Bankruptcy Code provides that:

> A class of claims has accepted a plan if such plan has been accepted
> by creditors, other than any entity designated under section (e) of
> this section, that hold at least two-thirds in amount and more than
> one-half in number of the allowed claims of such class held by
> creditors, other than any entity designed under subsection (e) of this
> section, that have accepted or rejected the plan.

50.    Additionally, Bankruptcy Rule 3018(c) provides, in part, that "[a]n acceptance or

rejection [of a plan] shall be in writing, identify the plan or plans accepted or rejected, be signed

by the creditor or equity security Holder or an authorized agent and conform to the appropriate

Official Form." Consistent with these requirements, the Bank proposes to use the Solicitation and

Voting Procedures. The Solicitation and Voting Procedures include specific voting and tabulation

requirements and procedures, as described below.

### B.    Completion of Ballots.

51.    To ease and clarify the process of tabulating all votes received, the Bank proposes

that a Ballot be counted in determining the acceptance or rejection of the Plan only if it satisfies

certain criteria. Specifically, the Solicitation and Voting Procedures provide that the Bank not

count a Ballot if it is, among other things, illegible, submitted by a Holder of a Claim or Interest

that is not entitled to vote on the Plan, unsigned, or not clearly marked. Further, the Bank, subject

to a contrary order of the Court, may waive any defects or irregularities as to any particular Ballot

at any time, either before or after the close of voting, and any such waivers shall be documented

in the Voting Report.

### C.      General Ballot Tabulation and Voting Procedures.

52.      The proposed Solicitation and Voting Procedures set forth specific criteria with respect to the general tabulation of Ballots, voting procedures applicable to Holders of Claims, and tabulation of such votes. The Bank believes that the proposed Solicitation and Voting Procedures will facilitate the Plan confirmation process. Specifically, the procedures will clarify any obligations of Holders of Claims entitled to vote to accept or reject the Plan and will create a straightforward process by which the Bank can determine whether they have satisfied the numerosity requirements of section 1126(c) of the Bankruptcy Code. Accordingly, the Bank submits that the Solicitation and Voting Procedures are in the best interests of the Estate, Holders of Claims or Interests, and other parties in interest, and that good cause supports the relief requested herein.

### V.      The Court Should Approve the Procedures for Confirming the Plan.

### 1.      The Plan Confirmation Hearing Date.

53.      Section 1128 of the Bankruptcy Code provides that a court shall hold a hearing on confirmation of a plan and provides that parties in interest can object to confirmation. Additionally, Bankruptcy Rule 3017(c) provides that, on or before approval of a disclosure statement, a court shall fix a time for the hearing on confirmation of a plan. In accordance with the Scheduling Order dated November 18, 2022, establishing deadlines relating to the Bank's Plan, the Plan Confirmation Hearing will be held on March 1, 2023 at 10:00 a.m.

### 2.      The Court Should Approve the Procedures for Filing Objections to the Plan.

54.      Bankruptcy Rules 2002(b) and (d) require no less than 28 days' notice to all Holders of Claims of the time fixed for filing objections to the hearing on confirmation of a chapter 11

plan. In accordance with the Scheduling Order dated November 18, 2022, any objections to the Plan must be filed on or before February 22, 2023 prevailing Eastern Time.

55.     The Bank also requests that the Court direct the manner in which parties in interest may object to confirmation of the Plan. Pursuant to Bankruptcy Rule 3020(b)(1), objections to confirmation of a plan must be filed and served "within a time fixed by the court." The Plan Confirmation Hearing Notice will require that objections to confirmation of the Plan or requests for modifications to the Plan, if any, must:

    a.  be in writing;

    b.  conform to the Bankruptcy Rules, the Local Rules, and any orders of the Court;

    c.  state, with particularity, the legal and factual basis for the objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve such objection; and

    d.  be filed with the Court (contemporaneously with a proof of service) upon the notice parties so as to be actually received on or before the Plan Objection Deadline.

56.     The Bank believes that the procedures for filing and service of objections (and proposed modifications, if any) will afford the Court, the Bank, and other parties in interest reasonable time to consider the objections and proposed modifications prior to the Plan Confirmation Hearing.

## **CONCLUSION**

**WHEREFORE**, the Bank respectfully requests that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein, and such other and further relief as may be just and proper.

Dated: New York, New York       Respectfully submitted,
       December 5, 2022

WINDELS MARX LANE & MITTENDORF, LLP
*Attorneys for Bank of Hope*

By:     */s/ James M. Sullivan*
        James M. Sullivan (jsullivan@windelsmarx.com)
        Robert J. Malatak (rmalatak@windelsmarx.com)
        156 West 56th Street
        New York, New York 10019
        Tel: (212) 237-1000 / Fax: (212) 262-1215