1

1

2   UNITED STATES BANKRUPTCY COURT

3   SOUTHERN DISTRICT OF NEW YORK

4   - - - - - - - - - - - - - - - - - - - -x

5   In the Matter of:

6   EAST BROADWAY MALL, INC.              Main Case No.

7                                         19-12280-dsj

8          Debtor.

9   - - - - - - - - - - - - - - - - - - - -x

10  In the Matter of:

11    GRACE CHAN,                         Main Case No.

12                                        22-10700-dsj

13         Debtor.

14  - - - - - - - - - - - - - - - - - - - -x

15              United States Bankruptcy Court

16              One Bowling Green

17              New York, New York

18

19              March 23, 2023

20              10:00 AM

21  B E F O R E:

22  HON. DAVID S. JONES

23  U.S. BANKRUPTCY JUDGE

24

25  ECRO:  ELECTRONIC RECORDING

2

22-10700-dsj

1) Motion Filed by The United States Trustee to Convert Chapter 11 Case to Chapter 7 or to Dismiss this Chapter 11 Case.

19-12280-dsj

1) Motion to Approve Entry of an Order Approving (I) The Disclosure Statement for Plan of Liquidation; (II) Solicitation of Votes to Accept or Reject Plan of Liquidation and Notice Procedures; (III) Forms of Ballots and Notices in Connection Therewith; and (IV) Certain Dates with Respect Thereto.

Objections Filed.

Transcribed by:  Kim Claeys

eScribers, LLC

7227 North 16th Street, Suite #207

Phoenix, AZ 85020

(800) 257-0885

operations@escribers.net

3

1

A P P E A R A N C E S (All present by video or telephone):

SFERRAZZA & KEENAN, PLLC

      Attorneys for Debtor East Broadway Mall

      532 Broadhollow Road

      Suite 111

      Melville, NY 11747


BY:  SARAH M. KEENAN, ESQ.



LAW OFFICE OF RACHEL S. BLUMENFELD, PLLC

      Attorneys for Debtor Grace Chan

      26 Court Street

      Suite 2220

      Brooklyn, NY 11242


BY:  RACHEL BLUMENFELD, ESQ

4

1

2   UNITED STATES DEPARTMENT OF JUSTICE

3         Attorneys for United States Trustee

4         One Bowling Green

5         Suite 534

6         New York, NY 10004

7

8   BY:   MARK BRUH, ESQ.

9

10

11   NEW YORK CITY LAW DEPARTMENT

12         Attorneys for City of New York

13         100 Church Street

14         New York, NY 10007

15

16   BY:   ZACHARY B. KASS, ESQ.

17         MINDY R. KOENIG, ESQ.

18

19

20

21

22

23

24

25

5

1

2   WINDELS MARX LANE & MITTENDORF, LLP

3         Attorneys for Bank of Hope

4         145 West 56th Street

5         New York, NY 10019

6

7   BY:   JAMES M. SULLIVAN, ESQ.

8         ROBERT JEROME MALATAK, ESQ.

**EAST BROADWAY MALL, INC.; GRACE CHAN**

6

1               P R O C E E D I N G S

2            THE COURT:  Good morning, everyone.  It's Judge Jones.

3   We're here for a hearing in a proceeding by Zoom.  I think I'm

4   going to call both cases on sort of simultaneously because it's

5   a combined discussion.  So I'm going to hear a combined hearing

6   in two cases.  One is number 22-10700, that's Grace Chan, an

7   individual Chapter 11.  The other is 19-12280, East Broadway

8   Mall, Inc., also a Chapter 11.

9            Let me just get appearances stated and say who you're

10  representing.  So I'll go around according to who I see.

11           First, I see Mr. Sullivan.

12           MR. SULLIVAN:  Yes, Your Honor.  James Sullivan,

13  Windels Marx Lane & Mittendorf.  Counsel for Bank of Hope.

14           THE COURT:  Great.  And Ms. Keenan?

15           MS. KEENAN:  Good morning, Your Honor.  Sally Kennan,

16  Sferrazza & Keenan for the debtor, East Broadway Mall.

17           THE COURT:  Great.  And Ms. -- is it [Ko-nig]?

18  [Kay-nig]?

19           MS. KOENIG:  It's a family fight all the time, but

20  it's supposed to be [Ko-nig].  So yeah, New York City Law

21  Department, representing the City of New York.

22           THE COURT:  Okay.  Nice to see you.

23           And I see we have Mr. Kass, as well, from the City?

24           MS. KOENIG:  Yeah, he --

25           MR. KASS:  Good morning, Your Honor.  Zachary Kass for

**EAST BROADWAY MALL, INC.; GRACE CHAN**

7

1  the New York City Law Department.

2          THE COURT:  Nice to see you.

3          And Mr. Bruh?

4          MR. BRUH:  Good morning, Your Honor.  Mark Bruh for

5  the United States Trustee.

6          THE COURT:  Great.

7          And Ms. Blumenfeld, nice to see you.

8          MS. BLUMENFELD:  You, as well.  Good morning, Your

9  Honor.

10          THE COURT:  I'm sorry.  That's Rachel Blumenfeld for

11  Ms. Chan, right?

12          MS. BLUMENFELD:  That's right.  Correct.  Sorry about

13  that, Your Honor.  That's correct.

14          THE COURT:  Okay.  No problem.  Anyone else appearing

15  today?  Okay.  So let me tell you, I've given -- we had the

16  Chan case called two days ago, and I had everyone come back.

17  I'm going to -- I had some further thoughts after that.  I'll

18  just say for the record, although everyone knows, Ms. Chan is

19  essentially the, I'll call her the owner of the East Broadway

20  Mall debtor.  Things are really -- have really bogged down

21  somewhat in both cases.  In the Chan case everything's on hold

22  to see what workout can or will or might be achieved in the

23  East Broadway Mall case.  Meanwhile, I have let -- the last

24  word I got is a letter docketed March 3rd from counsel for Bank

25  of Hope saying they're ententertaining offers from other potential

**EAST BROADWAY MALL, INC.; GRACE CHAN**

8

1   business partners.

2          My inclination on reflection coming in, and you all

3   can tell me if this is a bad idea, is I'm going to want to hear

4   about the possible dismissal of the Chan case that was

5   discussed or floated two days ago, but on the East Broadway

6   Mall case, it seems to me, rather than keep on extending this

7   out because we have a moving target, it might -- I think it

8   makes sense to just deny the disclosure statement as it now

9   exists, probably, and give you a deadline for the filing of a

10  new disclosure statement with a new plan.

11         The reason for that is from everything I see, it seems

12  like negotiations are really ongoing, everyone's still trying

13  to find the optimal solution for this property.  Bank of Hope

14  is the party that's been -- which is the secured lender -- is

15  the party that's been generating proposals, but I don't think

16  there's anything that's definite enough, unless you persuade me

17  otherwise, to proceed with and approve a disclosure statement

18  now and launch a confirmation process.  And I've been

19  adjourning this motion a very, very long time.  I think it

20  makes sense to just draw a line under it and tell you all you

21  need to start over and get it right and put it on a tight time

22  deadline.  And then I'm thinking imposing a deadline for the

23  filing of a proposed plan and disclosure statement motion

24  within some quite short time, like I have in mind something

25  like thirty days.

**EAST BROADWAY MALL, INC.; GRACE CHAN**

9

1          So that's -- I'm hitting you with all this upfront

2    because I don't believe in hiding the ball.  And I wanted to

3    let you know that I have been giving this a lot of thought.  So

4    let me -- I'm not sure who it makes sense to start with.

5          Let me actually start with Ms. Blumenfeld on the Chan

6    piece to ask if there's been any progress on that front.

7          MS. BLUMENFELD:  Yes.  Good morning and thank you,

8    Your Honor.   Now, of course, if there is the choice or the

9    pick your poison, the debtor would prefer to have it dismissed.

10   However, that being said, I had a conference call with Ms.

11   Keenan, the debtor, the debtor's son, and they believe from

12   their discussions on their end, that the minute her case gets

13   dismissed or something happens, they're going to go after her

14   property.  So they believe --

15         THE COURT:  Who's they?

16         MS. BLUMENFELD:  I believe, Bank of Hope, is my -- I

17   have not I have not been part of those discussions, but it's my

18   understanding it's Bank of Hope, and Ms. Keenan can probably

19   elaborate on that.  I think that puts things in a different

20   light if that's the case, because then all we'll be looking at

21   is another filing.

22         THE COURT:  Well, look.  Okay.  So that's where you're

23   at.  And so I'm going to translate that as meaning that right

24   now, you're not -- a dismissal is less onerous than conversion,

25   but you have concerns about dismissal because of that risk of

**EAST BROADWAY MALL, INC.; GRACE CHAN**

10

1  impact on Ms. Chan, right?

2        MS. BLUMENFELD:  Exactly correct, Your Honor.

3        THE COURT:  Okay.  Okay.  I mean, I will say,

4  nevertheless, it's tough to see a path forward in Chapter 11

5  for your client, and it's tough to see how things will play

6  out.  Okay.

7        So let me hear -- but let me hear from Mr. Sullivan, I

8  guess, is the Bank of Hope advocate.

9        MR. SULLIVAN:  Sorry, Your Honor, I was on mute.

10  There we go.  Sorry.  Do you want me to comment on the Chan

11  aspect of it, or do you want me to comment on --

12        THE COURT:  You can comment on whatever you want.  I

13  mean, I'm assuming that your primary purpose here -- well,

14  actually, yes.  I would like to hear from you on what Ms.

15  Blumenfeld just said on Chan.  But really, the primary thing

16  is, I want to hear you about the disclosure statement and if

17  there's any reason why what I laid out doesn't make sense at

18  this point.

19        MR. SULLIVAN:  Okay.  Your Honor, what I was going to

20  suggest to the Court, and I had kind of run it by counsel for

21  the City, although I had not seen a response from them on it,

22  but I think we've had conversations with them and I think

23  they're relatively on board.  So we have -- like I reported a

24  couple of days ago, we have received additional proposals, and

25  these were largely unsolicited.  We didn't even go out and

**EAST BROADWAY MALL, INC.; GRACE CHAN**

11

1   really solicit them.  But we currently have, aside and apart

2   from the debtor's proposal, which we understand that the City

3   rejected, we received three other proposals.

4           The original one was the one that was the -- around

5   which our plan and disclosure statement was framed.  That was

6   the plan that was based on an offer that we had received from

7   Bill Lam (ph.) or an entity formed by Bill Lam or affiliated

8   with Bill Lam.  And so since then, we've received two

9   additional offers.  As a result of these additional offers, Mr.

10  Lam has increased his offer considerably.

11          And so what I was going to suggest -- what I had

12  suggested to the City was that we give everybody who has

13  expressed an interest so far one last opportunity to submit

14  what I would consider their best and final offer, and that we

15  would use that final offer to -- as part of the framework to go

16  forward with the plan and disclosure statement.  So I think we

17  could do that actually pretty quickly.

18          So I understand what Your Honor said, but in light of

19  the fact that I agree with you, I think it has been adjourned a

20  few times and we wanted to kind of, like, move this case

21  forward as quickly as reasonably possible.  That was what I was

22  going to suggest, is that we go back to the parties who

23  submitted offers and that we give them one last opportunity to

24  submit what I would view as a best and final.  My

25  understanding, also, from --

**EAST BROADWAY MALL, INC.; GRACE CHAN**

12

1        THE COURT:  How long do you envision that process

2   taking?

3        MR. SULLIVAN:  I don't think we would need more than a

4   couple of weeks, Your Honor.

5        THE COURT:  Okay.  Okay.  Sorry, go ahead.  Anything

6   else?  You were starting to say something else.

7        MR. SULLIVAN:  No.  So we were going to communicate to

8   the parties that that we were looking for a best and final, and

9   that the -- based upon my discussions with the City, I think in

10  order for that to work, I think the City and the bank would

11  like to see a proposal that didn't have any financing

12  contingencies associated with it.  Right?  We were looking for,

13  basically, a cash proposal, not without any kind of, like,

14  mortgage financing related to it.

15       THE COURT:  Okay.

16       MR. SULLIVAN:  Just to keep it simple and move the

17  case along.

18       THE COURT:  Yeah.  And do you -- look, what's your

19  reaction to the idea of just denying the motion and just giving

20  you a new deadline to start over with a new disclosure

21  statement and plan filed within, say, thirty days, in light of

22  what you've just said?

23       MR. SULLIVAN:  Yeah, certainly, Your Honor, if that's

24  what you do, we'll certainly do it.  It wouldn't be too hard

25  for us to just make a few changes and refile it.  But given

**EAST BROADWAY MALL, INC.; GRACE CHAN**

13

 1  where we are, I think it might just be easier to give us

 2  another couple of weeks --

 3          THE COURT:  Okay.

 4          MR. SULLIVAN:  -- to revise what we have rather than

 5  restart the whole process.  But I'll defer to Your Honor and

 6  what you think is best.

 7          THE COURT:  No.  Look, I think really, it's evolved --

 8  I don't know if evolved is the word.  From where you started to

 9  where you are now, A, has shown a tremendous amount of change

10  and B, remains in flux.  And so I just don't see that -- I

11  think it just makes sense to start over, personally.

12          Okay.  The key players we haven't heard from yet are

13  the City and Ms. Keenan for the debtor.  Ms. Keenan, I haven't

14  heard from you for a while.  Do you want to add anything on

15  today?

16          MS. KEENAN:  Yes, Your Honor.  I want to make a

17  record.

18          THE COURT:  Certainly.  But let me ask if it's

19  concerning -- please be concise if it's going to be focused on

20  what you consider ill treatment by the City and/or Bank of Hope

21  and unfair negotiating.  I mean, in other words, you can do it

22  but try to be lean because I don't want to just devolve into a

23  fact-finding on that.

24          MS. KEENAN:  You got it.  All right.  The March 3rd

25  status report filed by Bank of Hope, document 147.  I had --

**EAST BROADWAY MALL, INC.; GRACE CHAN**

14

1   they asked everybody's comments on the status report, and I

2   wanted to see what was on the table.  And I received the status

3   report that indicated that Bank of Hope has not yet shared

4   these expressions of interest with the debtor or its counsel.

5   Because Bank of Hope does not feel it appropriate to do so at

6   this time, and the City agrees with this position.  Bank of

7   Hope intends to provide a further update prior to the hearing.

8           Now, we have a real conundrum here.  We have Bank of

9   Hope basically forcing Grace Chan into bankruptcy.  Her only

10  real major asset is the mall.  And the Bank of Hope is putting

11  together offers, and it's the Bank of Hope who is getting these

12  proposals now.  And according to the City, who has been

13  speaking with representatives of the debtor, it's the Bank of

14  Hope who has been adverse to the debtor's proposal.

15          Now, the City was given an appraisal of this property,

16  Your Honor, that with anchor tenants and the modification of

17  the lease as proposed, has a value of twenty million dollars.

18  And the Bank of Hope would be willing to accept 1.5 million

19  dollars from one of the offers -- and there's probably more now

20  that we're hearing about today -- and then go after Grace Chan

21  for the balance of the claim, even though that they are giving

22  away her major asset.

23          THE COURT:  Can I ask, is there an anchor tenant now?

24          MS. KEENAN:  It's not open right now, Your Honor, but

25  we have the restaurant, which is the entire second floor, who

**eScribers, LLC**

**EAST BROADWAY MALL, INC.; GRACE CHAN**

15

1   was approached by the Lam group and says he has no interest in

2   working with them.  They're going to have to go in and bring

3   another restaurant in there.  And we still have the IFresh

4   wants to come in on the first floor.  And we still have our

5   financing in order.  And ironically, they put on the record

6   today they don't want any deal that is contingent on financing.

7   But they should be aware that whoever buys this property, if

8   they're going to do anything like they did across the street,

9   they'll get in there and then they refinance it and take the

10  cash out.  And that's what they did at 75 Broadway.  So they're

11  going to do that with this one, too, is my estimate.  But going

12  back to this --

13          THE COURT:  So can I make an observation, Ms. Keenan?

14          MS. KEENAN:  Yes?

15          THE COURT:  The exclusivity is over, but there is no

16  legal impediment to debtor proposing a plan.  Is that something

17  that the debtor has been pursuing at all?

18          MS. KEENAN:  Oh, we are doing it and we are actively

19  doing it.  And we have many people on the ground.  We know --

20  Chinatown is an amazing community.  They all talk, and we all

21  know who talking to who and we know what local officials are

22  trying to back the debtor.  And there has been an indication

23  that the City is reaching out to have a meeting with the debtor

24  in DCAS.  And so there are still ongoing negotiations.  But Mr.

25  Sullivan made it a point to put on the record today that they

**EAST BROADWAY MALL, INC.; GRACE CHAN**

16

1    don't want any offer that might be contingent on financing.

2    They don't want that.  They --

3          THE COURT:  No.  I have that point, and your point

4    that if they get an all-cash person, they're just going to

5    refinance and end up being a debt-driven --

6          MS. KEENAN:  Yes.

7          THE COURT:  -- structure anyway.

8          MS. KEENAN:  It's what they did -- they've already

9    done that, Your Honor, and so at this point, for us not to be

10   involved in anything, it's always the City and the bank, the

11   City and the bank.  They don't want the debtor involved in this

12   at all.  And this is transparency 101.  They are stealing --

13   the Chans ran this place for thirty-five years.  They built it.

14   And they are not being even considered anymore.

15         And I understand the U.S. Trustee in the Chan case has

16   a pending motion to dismiss or convert.  Well, he has to be

17   aware that the reason we're in here is because Grace's main

18   asset is basically being taken from her, and that is the East

19   Broadway Mall.  So what I would ask, Your Honor, is that, we

20   are going to be making more proposals.  I think that the debtor

21   should be invited into this negotiation because you're taking

22   away their asset.  And so what's going on right now is

23   unconscionable and is now on the record.

24         And we've asked Bank of Hope to at least put in

25   writing that the reason that they would not support the

17

1    debtor's offer was because the City would never approve it, and

2    without the City's approval, we could never do a plan.  All

3    right?  But the powers that be, the people we're talking with,

4    said we need a letter so we can show it to the City, that the

5    reason the Bank of Hope wouldn't support us is because the City

6    wouldn't support us.  Because the City is telling the debtor

7    that, oh, it's not us who doesn't want to work with you, it's

8    the Bank of Hope.  And the Bank of Hope is telling us, no, it's

9    not us, it's the City.  Well, we need to know what it is, and

10   we need it in writing so that we can go to the people that want

11   to be part of this process and have no more things being

12   whispered in the background.  Let's put it all out there.

13         THE COURT:  Look, okay, so I take your point -- or

14   points, plural, I guess, Ms. Keenan.  I mean, let me just say,

15   I guess the bank -- I would encourage all parties to discuss

16   and give full and fair consideration to the proposal of any

17   person, either an existing party or an outside party, right?

18   That's -- I mean, the name of the game is value maximization

19   for the estate.

20         I will observe that this debtor ran up very

21   substantial arrearages, including in the pre-COVID time period.

22   So you can't just ignore that.  And that might be a fair

23   consideration for business partners.  And it is a reality of

24   the situation that the debtor finds itself in.  So you can't

25   ignore that.  That is a real thing, but any source of value-

**EAST BROADWAY MALL, INC.; GRACE CHAN**

18

1  maximizing solutions should be seriously considered and

2  pursued.  So I'll just sort of leave it at that.

3        Let me hear from the City.  I think that's the player

4  we haven't yet heard from.  And again, I'm going to just -- oh,

5  I'm sorry.  Let me ask Ms. Keenan before I do that.

6        Do you have any concern about my simply denying the

7  disclosure statement at this moment, which is what's before me

8  today, and then let things move forward?

9        MS. KEENAN:  Oh, I think the disclosure statement has

10  to be done.  So, yes.

11        THE COURT:  Okay.  And you have a time period in mind

12  for a deadline for the filing of a new disclosure statement and

13  plan?  I will say to continue along the road of transparency

14  about my thought process, I have in mind imposing a deadline

15  for the filing of a disclosure statement and plan, because that

16  sets up the prospect of dismissal under 1112(b)(4)(J) if that

17  deadline isn't met, because (b)(4)(J) says dismissal for cause

18  can occur if there is a failure to file a disclosure statement

19  or to file or confirm a plan within the time fixed by this

20  title or by order of the Court.  And so this has been dragging

21  on so long that I think I just need to impose some discipline

22  by teeing up a basis for dismissal under that provision, if

23  progress isn't brought to fruition quickly.

24        Does that make sense to you, Ms. Keenan?

25        MS. KEENAN:  Yes, Your Honor.  Yes.

**EAST BROADWAY MALL, INC.; GRACE CHAN**

19

1          THE COURT:  Okay.  Great.  All right.

2          Let me turn to the City and take your temperature and

3  hear what you want to say.

4          MR. KASS:  Thank you, Your Honor.  Zachary Kass from

5  the New York City Law Department Corporation Counsel's Office

6  for the City.  It's a little hard to tell where to start.  I

7  guess, specifically, with Your Honor's indication of where you

8  want to -- how to proceed at this point --

9          THE COURT:  Well, so look, I'll tell you, I am

10  focusing on I think the City's role doesn't have a direct role

11  with Ms. Chan, as far as I know.

12          MR. KASS:  Correct.

13          THE COURT:  So the City's role is really as landlord

14  on East Broadway Mall.  And the narrow question I have really

15  is, does the City have a position on what I voiced as my

16  tentative intended ruling coming in here today, which is to

17  simply deny the disclosure statement motion and couple it with

18  an order setting a deadline, which right now, I'm thinking of

19  will be thirty days from date of entry of the order for the

20  filing of a disclosure statement and new plan.

21          MR. KASS:  Your Honor, we have no -- I have no problem

22  with that in terms of procedure.  I think it would be helpful

23  to have a deadline.  I think, however, that there are three

24  serious proposals on the table now, which all of whom seem to

25  be from substantial players who are serious and have made some

**EAST BROADWAY MALL, INC.; GRACE CHAN**

20

1  effort to demonstrate their ability to carry forward on their

2  proposals and their ability to do so.  I would not like to

3  foreclose that route simply because the time hasn't previously

4  been ripe for that kind of process to happen.

5  　　　　THE COURT:  Well so that goes to the deadline -- to

6  me, that --

7  　　　　MR. KASS:  Correct.

8  　　　　THE COURT:  So that goes for how long makes sense.  I

9  mean, Mr. Sullivan's telling me he thinks he can get best and

10  finals out of people in two weeks, which suggests a disclosure

11  statement and plan could be worked up and filed within a month.

12  Does that make sense?  Do you have some other idea?

13  　　　　MR. KASS:  No, I think that works.  If the Bank of

14  Hope is able to work to that schedule.  Because, again, if we

15  don't do a confirmed plan here, we're back to the situation

16  where either the Court will dismiss the case, which would not

17  be something that the City would like to see happen, or the

18  City would have to take the position that it was simply

19  entitled to possession of the leasehold and take the property

20  and start the process for getting a new tenant in there through

21  an alternative process, which will take some time.

22  　　　　So we are all hoping that the bankruptcy process can

23  help -- can work.  So I think a combination of some discipline

24  and some flexibility, which frankly, we're very grateful that

25  Your Honor has had that combination up till now, should

1   continue to give us a path forward that'll work for everybody.

2   As far as --

3           THE COURT:  Okay.  Got it. Yeah, go ahead.

4           MR. KASS:  As far as the debtor is concerned, again,

5   as far as I understand, I don't know what conversations the

6   debtor may be having, quote, "with the City" that don't go

7   through DCAS  or through the Corporation Counsel's office, but

8   again, to my knowledge, nobody's ever foreclosed the debtor

9   from making any serious offer.  Again, if the debtor wants to

10  make a serious offer, that's fine.  They can certainly forward

11  it to us and we'll forward it to our client and it will be

12  given attention.

13          THE COURT:  Okay.  Got it.  Yeah, I will say that --

14  and I hope, Ms. Keenan, I'll just observe, that strikes me as a

15  good idea, if you want to -- the City is a many-tendrilled

16  thing, but one thing you can certainly do is convey anything

17  that you can term a settlement offer to the City's counsel in

18  this matter, which is Mr. Kass and Ms. Koenig, and they will be

19  obliged to forward it to their appropriate clients.  And that

20  is a mechanism for you to get it considered.  And you will

21  then -- maybe it'll be smiled upon, and if it isn't, you can

22  take whatever action you think appropriate, but you will have

23  taken that step, okay?  All right.

24          MS. KEENAN:  Your Honor?  Your Honor?

25          THE COURT:  Yeah.  Go ahead, Ms. Kennan.

22

 1          MS. KEENAN:  Sorry.  Sally Keenan.

 2          I'm just concerned now because we are going to be

 3   pursuing this and getting an offer in there and getting an

 4   audience with DCAS and with the bank and we would want

 5   everything transparent, as I said earlier.  I'm concerned about

 6   the two weeks now because nothing moves quickly.  They're

 7   reviewing three proposals right now, all right?  And now we

 8   have to add the debtor's proposal.  And there have been some

 9   changes in that, as well.

10          THE COURT:  Well, look --

11          MS. KEENAN:  I think two weeks is not enough.

12          THE COURT:  Are you ready to go with a proposal now

13   Ms. Keenan, on behalf of debtor?

14          MS. KEENAN:  We are ready to go on behalf of the

15   debtor, and I don't want it to be given -- I want it to be

16   given due consideration, and two week -- it's so important,

17   that I think two weeks may be too little, in light of the fact

18   that there's three other bids, which I haven't even seen, and

19   we should be given the opportunity to compete against those

20   bids and we should be given what those numbers are.

21          THE COURT:  I've --

22          MS. KEENAN:  Why is this all -- why is this all being

23   secretive?  Why haven't we been told that these increased

24   offers?  How much are they?  Who are they from?

25          THE COURT:  All right.  Look, I'm not going to dictate

**EAST BROADWAY MALL, INC.; GRACE CHAN**

23

1  any particular bidding process at this point.  I mean, all that

2  we're talking about -- remember, we're here on a motion to

3  approve a disclosure statement and -- which I contemplate

4  denying.  And then on my own accord, which I have authority to

5  do, I want to impose an appropriate deadline for the disclosure

6  statement -- the filing of a disclosure statement in connection

7  with a proposed plan.

8        I don't want to start by pushing it out farther, all

9  right?  So I guess my inclination would be I can make it, say,

10 five weeks from tomorrow.  Tomorrow's a Friday.  Five weeks

11 from tomorrow equals thirty-six days.  More than that, I've

12 been told by the proponents, the people who are in the process,

13 that they think they can be ready in thirty days.  I'll give

14 you a slight amount more cushion, more than that.  Look, I've

15 given lots of long rope to allow things to develop, and it

16 hasn't been satisfactory.  So I think deadlines are necessary.

17 So we'll just do that.  All right?

18        I haven't heard from Mr. Bruh.  Anything just focusing

19 on -- and I want to --what I'm going to do is resolve the East

20 Broadway Mall piece, which is simply a disclosure statement

21 approval motion right now, and then we'll circle back to Chan.

22        So anything you want to say about the mall case, Mr.

23 Bruh?

24        MR. BRUH:  Thank you, Your Honor.  Mark Bruh for the

25 United States Trustee.  So specifically with East Broadway

**EAST BROADWAY MALL, INC.; GRACE CHAN**

24

1  Mall, I guess our concern is we're back to square one where we

2  were five months ago.  I don't know what the new disclosure

3  statement will be and plan, but there might be competing plans

4  from what I hear right now.  We had objections.  Some of them

5  have been resolved.  I still think some of the objections have

6  not been resolved.  If it's denied, I hope they'll be addressed

7  in any subsequent plan.  To the extent the Court is going to

8  deny it, we would ask everything to be on a short leash.  I

9  know that Your Honor had to reinstate our motion by April 5th.

10  I would just add --

11         THE COURT:  I'm sorry, which motion is that?

12         MR. BRUH:  We had a motion to convert, which Your

13  Honor denied and -- without prejudice, for us to just file a

14  notice of reinstatement by April 5th.  I --

15         THE COURT:  Yep.  That's fine.  That's in the mall

16  case?

17         MR. BRUH:  Yes.

18         THE COURT:  Yeah, okay.

19         MR. BRUH:  And we might want to supplement it based

20  upon that was a motion that we filed many months ago, Your

21  Honor, and it was carried several times.

22         THE COURT:  Yeah.  Let me just say, I think --

23         MR. BRUH:  I could file a new motion.  I'm sorry, Your

24  Honor, if you would just allow us that opportunity.  So but the

25  facts have changed here, so.

**EAST BROADWAY MALL, INC.; GRACE CHAN**

25

1        THE COURT:  Yeah, let me say this.  You're right.

2   I've been -- there was that motion, and I have just been

3   carrying out your deadline to keep it in tandem so that you can

4   reinstate at any time without having to reinvent the wheel if

5   you don't want to.  But we just keep pushing that date out as

6   the outside date moves.  I would be fine again, adjourning your

7   date from -- it's currently, you just said, April 5th -- to

8   some date after the deadline for filing a disclosure statement

9   or plan.  If you want to reinstate your motion earlier, that's

10  within your rights.  If you want to sit tight for another

11  round, that's fine.

12        I completely agree with the tenor of your remarks that

13  this case has been really spinning its wheels for an

14  excessively long time, and it's time to bring it to a head.

15  What I've articulated on the disclosure statement coupled with

16  a new deadline for the filing of a new plan, and new disclosure

17  statement, is my -- what I've come up with is an attempt to get

18  things moving.

19        Does that work for you, Mr. Bruh?

20        MR. BRUH:  It does, Your Honor.  We appreciate Your

21  Honor's assistance in this matter to move it along.  We hope

22  we'll get to a conclusion here.  So yeah, we would just ask

23  then that the deadline be pushed.  We can reinstate our motion.

24  And we'd also ask that we be allowed to supplement it based --

25        THE COURT:  Yes.

**EAST BROADWAY MALL, INC.; GRACE CHAN**

26

1          MR. BRUH:  -- on any new information or just let's see

2     how the chips fall.  We don't know what's going to be there.

3          THE COURT:  Yeah, I'm having a deja vu reaction.  I

4     think we have the exact same discussion again and again, and I

5     give you the same reassurance.  Yes.  My intention is that your

6     deadline to reinstate your prior motion to convert or

7     dismiss --

8          MR. BRUH:  Right.

9          THE COURT:  -- will be pushed out an appropriate

10    length of time, and that you will be at liberty to supplement

11    your motion as you see fit.

12          Let me also say, cued by -- sparked by something Mr.

13    Bruh said -- The U.S. Trustee's office had a variety of

14    objections to the disclosure statement motion as filed.  I'm

15    going to deny because -- for failure to satisfy the core

16    requirement of Section 1125, that the disclosure statement

17    contain adequate information of a kind and in sufficient detail

18    to allow a hypothetical investor typical of the holders of

19    claims or interests in a case to make an informed judgment

20    about the plan.  Because the plan is in flex -- in flux, excuse

21    me -- it's impossible to meet that standard in the

22    circumstances present here, and I'm going to deny the motion

23    for that reason.  That is my oral ruling on the motion, in

24    fact.

25          I will say the U.S. Trustee's office raised a number

**EAST BROADWAY MALL, INC.; GRACE CHAN**

27

1   of other objections, and any proponent of a plan should review

2   those carefully and give them weight.  I'm not rejecting the

3   validity of those, nor am I specifically endorsing any of them,

4   but take them into account, consider talking to the U.S.

5   Trustee.  Come forward with something that actually is going to

6   pass muster.

7          But the basis of my ruling today is very simply that,

8   in the absence of clarity on what the plan is going to say,

9   despite repeated adjournments, the current disclosure statement

10  approval motion simply cannot satisfy the requirement of 1125

11  that it provide adequate information.  And so for that reason

12  alone, I deny as of right now, okay?  So that's where we're at

13  on the 1125.

14         I think what's going to make sense for housekeeping is

15  the following on the disclosure statement motion.  First off,

16  so let's see, I think I'll ask the Bank of Hope as the main

17  proponent of the plan, to order the transcript.  We need to

18  have a record of today's hearing and oral ruling.  I will

19  enter -- I will have the Court generate and enter a very simple

20  order denying the disclosure statement for reasons stated on

21  the record.  And that same order will require that a new

22  disclosure statement, approval motion, and proposed plan must

23  be filed no later than, and I think I'll go with the date five

24  weeks from tomorrow, okay?  And I will use that wording so that

25  anyone who wants to present a proposed plan can do so and they

**EAST BROADWAY MALL, INC.; GRACE CHAN**

28

1    are aware of the time frame, okay?

2            Then, I guess, to avoid Mr. Bruh having to write a

3    separate order and go to all that trouble, Mr. Bruh, I think

4    I'll just get --

5            MS. KEENAN:  You're frozen, Your Honor.

6            MR. BRUH:  The Court -- Yeah, I didn't know if it was

7    me or the Court is froze.

8            MR. KASS:  I think you're back, Your Honor.

9            THE COURT:  Am I back?  Can you hear me?

10           MR. BRUH:  Yes.

11           THE COURT:  Okay.  I pushed various buttons, but I

12   think I just froze.  I think it was just a transmittal issue.

13   Okay.  So let me ask again.  Sorry, I will say for the

14   transcript purposes.  Apparently, I froze for a minute.  So I

15   was talking, and I don't know what people lost.  I'll just

16   reset.

17           The Court's going to enter an order.  It's going to

18   deny the disclosure statement motion.  It's going to impose a

19   deadline of five weeks from tomorrow to file -- for any party

20   to file a proposed plan along with a disclosure statement

21   approval motion.  And that's also going to move Mr. Bruh's

22   deadline to -- or the U.S. Trustee's Office's deadline to

23   reinstate its prior motion to convert to, I will say, at some

24   point, maybe a week after the disclosure statement deadline.

25           MR. BRUH:  Thank you, Judge.

**EAST BROADWAY MALL, INC.; GRACE CHAN**

29

1          THE COURT:  Okay.  Do you need any more precise

2     wording than that or is that good enough?

3          MR. BRUH:  It's fine by me.

4          THE COURT:  Okay.  Great.  Okay.  So I'll generate an

5     order and you understand what I'm getting at.  Okay.

6          MS. KEENAN:  Your Honor?

7          THE COURT:  Yeah, Ms. Keenan?

8          MS. KEENAN:  Sorry.  Sally Keenan.

9          Five weeks from today to -- for any party to propose a

10    plan or disclosure statement.  We went through this back in

11    October or November, at which time, Mr. Kass put on the record

12    that it would be a waste of time for the debtor to put in a

13    plan because the City will never approve it.  And if you can't

14    get the City to approve it -- let me finish this -- if you

15    can't get the city to approve it, it's a waste of time and

16    court time.  We need to have some clarification as to if we put

17    a plan in, Bank of Hope, would they support it?  Because --

18         THE COURT:  No, I'm sorry, Ms. Keenan.  You can't

19    negotiate on the record.  I mean, I need to set a deadline.

20         MS. KEENAN:  I understand.

21         THE COURT:   This has been going on for months.  It's

22    a 2019 case.  Whatever your dynamic is, it is.  And it's just

23    time to get things on the road.  So I'm not going to unravel

24    the time limits.  And I also don't want to have a sort of

25    coerced back and forth on the record.

**eScribers, LLC**

**EAST BROADWAY MALL, INC.; GRACE CHAN**

30

1          Let me just say this.  I will direct that if Ms.

2     Keenan wants to speak with representatives of the City and/or

3     the bank, that that conversation occur today.  You can have an

4     off-the-record conversation, but I don't want to make that a

5     feature of an on-the-record hearing.  Okay?

6          MS. KEENAN:  Okay.

7          THE COURT:  Great.

8          MR. KASS:  Very good, Your Honor.

9          THE COURT:  Thank you.  Okay, so that, I think,

10    resolves the motion for approval of the disclosure statement,

11    which has been carried excessively long.  And let's come back

12    to the case of Ms. Chan and see, in light of today, where we're

13    going to come out.

14          Let me turn to Mr. Bruh.  Really, what we have, what's

15    calendared is the U.S. Trustee's motion to convert Ms. Chan's

16    case to Chapter 11 or dismiss it.  I think, honestly, the

17    motion makes out ample cause for that and the question -- but

18    with the thought that dismissal would be superior to

19    conversion, except that today, Ms. Blumenfeld points out,

20    there's great concern that the bank will deprive Ms. Chan of

21    other property of hers, which I think means her home.

22          And so where is the U.S. Trustee on whether it wants

23    to have that motion heard today?

24          MR. BRUH:  Thank you, Your Honor.  Mark Bruh for the

25    United States Trustee.

**EAST BROADWAY MALL, INC.; GRACE CHAN**

31

1          At the beginning, you had asked the bank its position

2     because it is either Ms. Blumenfeld or Ms. Keenan had raised

3     the guarantee that Ms. Chan has in connection with East

4     Broadway Mall, which is, I guess, the main impetus of her

5     bankruptcy.  I'm not entirely sure.  They say East Broadway

6     Mall is an asset that appears to be underwater, that there's no

7     equity in it.  So I'm not sure how it is an asset.  To the

8     extent she has a home, she has a homestead exemption, which

9     would be very beneficial these days.  I don't think her equity

10    is above her homestead exemption.  I would defer to Ms.

11    Blumenfeld on that matter.

12          She does have an interest, Ms. Chan, in another

13    entity, which appears to be an asset which manages a building.

14    I don't know if that's an asset of her personal bankruptcy

15    estate or not.  Based upon our operating report, she's not

16    drawing any income from that entity, that her only income has

17    been Social Security since you have had the case before you,

18    because we know that Chapter 13 that went to a Chapter 11 and

19    then it was transferred to Your Honor about nine months ago.

20          So if she has no assets, then it would seem to me that

21    a conversion would be the best scenario to discharge everything

22    at this time.  Then you wouldn't have to worry about the bank

23    going after her.  But maybe we need to hear from Mr. Sullivan a

24    little bit more regarding that, or the debtor, as to that claim

25    in that bankruptcy.

**EAST BROADWAY MALL, INC.; GRACE CHAN**

32

1        THE COURT:  Okay.  I'll give Mr. Sullivan a chance to

2   say anything he wants on behalf of the bank, if anything.

3        MR. SULLIVAN:  Yes, Your Honor.  So look, we had, as

4   you may recall actually, the bank did file a motion for a

5   relief from stay.  Ms. Blumenfeld responded to it.  We hadn't

6   yet filed a reply, but in order to give the debtor's proposal a

7   chance and for the parties an opportunity to discuss a global

8   settlement, we kind of put all the deadlines on that on hold.

9        We've communicated, I think, pretty clearly to the

10  chance what a global settlement might need to look like.  We

11  haven't really seen much progress on that of late.  If the case

12  does stay in Chapter 11, at some point in time, and probably

13  pretty soon, the bank will probably ask Your Honor to put that

14  back on the calendar so we can go forth and obtain a relief

15  from stay.  Ms. Chan, I don't believe, resides in any of the

16  two properties that we're really talking about.  I think she

17  has a rental property that she lives in, so that's not really a

18  concern.

19        But yeah, so look, I think we've been very clear to

20  Ms. Keenan and Ms. Blumenfeld as to exactly what the bank is

21  looking for.  We've made it clear to them that we thought that

22  the main obstacle in their proposal was the financing aspect to

23  it, and they haven't done anything to address that specific

24  concern.  I'm being very direct.  And so look, if we can't get

25  any progress in that direction, then we'll have no choice but

19-12280-dsj   Doc 150   Filed 04/03/23   Entered 04/11/23 15:21:28   Main Document
Pg 33 of 50
**EAST BROADWAY MALL, INC.; GRACE CHAN**

33

1  to go, obviously, in other directions.  And that's what we've

2  been doing.  And if the case is not converted or dismissed at

3  some point soon, we will probably send Your Honor a letter

4  requesting that the hearing on the relief stay motion be put

5  back on the calendar with an opportunity for us to file our

6  reply papers.

7          THE COURT:  Okay.  All right.  So let me turn it to

8  Ms. Blumenfeld.  You've heard that kind of sobering statement

9  from the bank and you've heard from Mr. Bruh.  What do you

10  advocate I ought to do?

11          MS. BLUMENFELD:  Again, if it's a pick poison type of

12  thing, Your Honor, for sure, its dismissal.  It would be a

13  travesty of justice for her to get a discharge for $9,000 of

14  credit card debt.  I think that -- and I also think that will

15  affect the East Broadway Mall case because we don't know what a

16  Chapter 7 Trustee will do because there are debts that are

17  cross-collateralized between her personally, as well as between

18  East Broadway Mall.

19          That being said, Mr. Sullivan pointed out about her

20  not living at the property.  During COVID, she had rented some

21  property, I think it was to stay away from people in order for

22  her not to get sick.  I have not double checked with her

23  exactly where she's living, but the Whitestone property is her

24  home.  Mr. Sullivan also alluded to something about

25  negotiations.  The last time I was involved in negotiations on

**EAST BROADWAY MALL, INC.; GRACE CHAN**

34

1  this with Ms. Chan, was close to a year ago.  I mean, it has

2  been a long time since anyone has involved me on behalf of

3  Grace Chan in any negotiations.

4       I would suggest a third option, Your Honor.  Perhaps

5  send this to mediation.  I think everything should be sent to

6  mediation, actually, to see if something can be worked out.  I

7  think that it will help.  If there's a delay, anyway, in the

8  other case of five weeks, I don't think it's going to hurt

9  anybody.  And perhaps there is a consensual resolution that can

10 be had.

11      THE COURT:  Okay.  Thanks.

12      Let me go back to Mr. Bruh, whose motion it is and I'm

13 obliged -- statutorily required to decide it if the movant --

14 unless the movement expressly consents to push it.

15      So how do you want to proceed, Mr. Bruh?  Excuse me,

16 how does the Office of the U.S. Attorney's Office -- I

17 shouldn't personalize it -- wish to proceed?

18      MR. BRUH:  Thank you, Your Honor.  Mark Bruh for the

19 United States Trustee.

20      I don't know where mediation would get us at this

21 point.  These issues have been out here for quite some time.  I

22 don't know how --

23      THE COURT:  I'll say, I think I share that reaction,

24 honestly.  I just see it as being a burner of more time and I

25 don't see a likelihood of success.

**EAST BROADWAY MALL, INC.; GRACE CHAN**

35

1        MR. BRUH:  Your Honor, yeah, at this time we would, if

2    the Court is inclined not to convert it, we would ask that then

3    the case to be dismissed and the chips fall as they may.  I'm

4    not sure on East Broadway Mall they'll ever come to addressing

5    Ms. Chan's claims or not.  I just don't know.  If it's only

6    $9,000 in debt, then I agree with Ms. Blumenfeld that it should

7    not be converted to seek a discharge of that sum of unsecured

8    debt and that the case should be dismissed.

9        THE COURT:  Okay.  And I think -- let me just make

10   sure you had earlier moved on other sub parts of 1112 before,

11   and I think then you supplemented to really bring to bear 1112

12   (b)(4)(a) which is continuing loss or diminution of the estate

13   in absence of a reasonable likelihood of rehabilitation.  Is

14   that what you're primarily relying on at this point?

15       MR. BRUH:  Yes.  As of today, when we brought the

16   motion, the debtor was behind on operating reports and fees.

17   They have since been paid as of last week, four or five

18   operating reports were filed.  But we have shown in the

19   operating reports that were filed at the time that there's very

20   little funds coming into this case to confirm a plan, Your

21   Honor, and we would --

22       THE COURT:  Right.

23       MR. BRUH:  -- (indiscernible) diminution of the

24   estate.

25       THE COURT:  Okay.  I'll say I'm ready to rule on that.

**EAST BROADWAY MALL, INC.; GRACE CHAN**

36

1   And the U.S. Trustee is certainly within its rights to ask for

2   a ruling at this point that's been carried off.  And I'm going

3   to grant the motion and -- of the U.S. Trustee to convert or

4   dismiss the case.  They had originally moved seeking conversion

5   under Section 1112 of the Code, but I am going to hold that

6   dismissal is the more appropriate measure to be taken here.

7          I will note that -- first, that under Section

8   1112(b)(3) of the Code, the Court is required to commence the

9   hearing of a motion to convert or dismiss not later than thirty

10   days after the filing of the motion and to decide it not later

11   than fifteen days after the commencement of such a hearing,

12   unless the movant expressly consents to a continuance for a

13   specific period of time or compelling circumstances prevent the

14   Court from meeting the time limits established by this

15   paragraph.

16          The U.S. Trustee has shown a lot of flexibility and

17   has repeatedly consented to a continuance of this hearing to

18   try to give people an opportunity to work something out that

19   would avoid the necessity of dismissal or conversion, but it is

20   no longer making that offer, as of today.  And I therefore, am

21   statutorily required to decide the motion.

22          Further, having carefully reviewed the record of Ms.

23   Chan's case as a whole, including having reviewed her monthly

24   operating reports which reflect very low income stream and

25   considering the status of the bankruptcy case, of an entity

**EAST BROADWAY MALL, INC.; GRACE CHAN**

37

1   that she has a substantial interest in, which is East Broadway

2   Mall, in which case, it's -- I can't be optimistic that a

3   successful resolution is likely to occur quickly and in a way

4   that's going to make a difference in Ms. Chan's individual

5   case.

6          So I therefore conclude that the requirements of

7   Section 1112(b)(4)(A) have been demonstrated here, or I should

8   say the required showing, namely that the estate of Ms. Chan is

9   engaging in a substantial or continuing loss to or diminution

10  of the estate.  She came in with a modest amount of cash and

11  her monthly operating reports reflect a continuing drain down

12  to a quite low amount on hand at this point.  Coupled with the

13  absence of reasonable likelihood of rehabilitation, I simply

14  don't see and haven't been presented any concrete basis to

15  think that rehabilitation is feasible.

16         I do have discretion whether conversion or dismissal

17  is in the best interests of creditors and the estate and which

18  is the appropriate course.  Here I conclude that dismissal is

19  more humane and more aligned with the interests of Ms. Chan

20  herself, and it's in the --

21         MS. KEENAN:  You're frozen, Your Honor.

22         THE COURT:  Okay.  Am I back now?

23         MS. BLUMENFELD:  You are.  You left off with more

24  humane, Your Honor.

25         THE COURT:  Okay.  I'll get our IT people to look at

**EAST BROADWAY MALL, INC.; GRACE CHAN**

38

1   this.  I always assume I'm doing something terrible when I

2   freeze, but it's not me this time.  Okay.  Let me -- so let

3   me -- yes.  So I was in the middle of a list of factors, but I

4   will just try to pick up where I left off.

5           I have discretion to determine -- to choose a remedy

6   between dismissal and conversion.  I believe here dismissal is

7   appropriate.  I guess I was cut off saying -- commenting that

8   dismissal is more humane for Ms. Chan herself, because her own

9   counsel has advised that that's likely the case, if forced to

10  pick a poison.  And further here, where she has a very low

11  amount of unsecured debt, there are few interested creditors

12  and I see very, very little to be gained by invoking -- by

13  bringing into play a Chapter 7 Trustee.  All I see is added

14  expense burdening the estate for little to no conceivable

15  benefit.  And for that reason, I think dismissal is the most

16  appropriate resolution of the motion.  Okay?

17          So on this one, I'm going to ask the Office of the

18  U.S. Trustee to please submit a proposed order referencing the

19  Court's oral ruling today, which states its reasons and

20  granting the motion and imposing dismissal.

21          Mr. Bruh, is that doable for you?

22          MR. BRUH:  Absolutely, Your Honor.  We'll submit an

23  order, and when we send it to chambers, I'll copy all the

24  parties here today.

25          THE COURT:  Okay.  Thank you very much.  And as I

**EAST BROADWAY MALL, INC.; GRACE CHAN**

39

1  said, we will ourselves generate an order on the East Broadway

2  Mall matter.  Does anyone have anything else to raise that we

3  can or should do today?

4       Okay.  Hearing nothing.  Thank you all for your

5  efforts.  Good luck.  Really push.  And I hope to see a well

6  thought out, properly presented, legally compliant disclosure

7  statement and plan by five weeks from tomorrow.  And we can try

8  to put this property, which I am very fond of from personal

9  exposure, back to productive use for the community and the City

10  and everyone.  And it'll hopefully become a nice little beehive

11  of economic activity again.  Okay?

12       MS. KEENAN:  Thank you, Your Honor.

13       THE COURT:  So thanks very much.  And we are

14  adjourned.  Take care.

15       MR. BRUH:  Thank you, Judge.

16       MR. KASS:  Thank you, Your Honor.

17     (Whereupon these proceedings were concluded)

18

19

20

21

22

23

24

25

40

1

2                          I N D E X

3  RULINGS:                                 PAGE    LINE

4  Motion to approve disclosure statement    28      17

5  denied

6  Motion to dismiss Chapter 11 case         36       2

7  granted

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

41

1

2                        C E R T I F I C A T I O N

3

4   I, Kim Claeys, certify that the foregoing transcript is a true

5   and accurate record of the proceedings.

6

7

8

9   _____

10  Kim Claeys

11

12  eScribers

13  7227 North 16th Street, Suite #207

14  Phoenix, AZ 85020

15

16  Date:  March 25, 2023

17

18

19

20

21

22

23

24

25

IMO: EAST BROADWAY MALL, INC. and IMO: GRACE CHAN

March 23, 2023

**$**

**$9,000 (2)**
33:13;35:6

**[**

**[Kay-nig] (1)**
6:18
**[Ko-nig] (2)**
6:17,20

**A**

**ability (2)**
20:1,2
**able (1)**
20:14
**above (1)**
31:10
**absence (3)**
27:8;35:13;37:13
**Absolutely (1)**
38:22
**accept (1)**
14:18
**accord (1)**
23:4
**according (2)**
6:10;14:12
**account (1)**
27:4
**achieved (1)**
7:22
**across (1)**
15:8
**action (1)**
21:22
**actively (1)**
15:18
**activity (1)**
39:11
**actually (6)**
9:5;10:14;11:17;
27:5;32:4;34:6
**add (3)**
13:14;22:8;24:10
**added (1)**
38:13
**additional (3)**
10:24;11:9,9
**address (1)**
32:23
**addressed (1)**
24:6
**addressing (1)**
35:4
**adequate (2)**
26:17;27:11
**adjourned (2)**
11:19;39:14
**adjourning (2)**

8:19;25:6
**adjournments (1)**
27:9
**adverse (1)**
14:14
**advised (1)**
38:9
**advocate (2)**
10:8;33:10
**affect (1)**
33:15
**affiliated (1)**
11:7
**again (11)**
18:4;20:14;21:4,8,
9;25:6;26:4,4;28:13;
33:11;39:11
**against (1)**
22:19
**ago (7)**
7:16;8:5;10:24;
24:2,20;31:19;34:1
**agree (3)**
11:19;25:12;35:6
**agrees (1)**
14:6
**ahead (3)**
12:5;21:3,25
**aligned (1)**
37:19
**all-cash (1)**
16:4
**allow (3)**
23:15;24:24;26:18
**allowed (1)**
25:24
**alluded (1)**
33:24
**alone (1)**
27:12
**along (4)**
12:17;18:13;25:21;
28:20
**alternative (1)**
20:21
**although (2)**
7:18;10:21
**always (2)**
16:10;38:1
**amazing (1)**
15:20
**amount (5)**
13:9;23:14;37:10,
12;38:11
**ample (1)**
30:17
**anchor (2)**
14:16,23
**and/or (2)**
13:20;30:2
**anymore (1)**
16:14
**apart (1)**

11:1
**Apparently (1)**
28:14
**appearances (1)**
6:9
**appearing (1)**
7:14
**appears (2)**
31:6,13
**appraisal (1)**
14:15
**appreciate (1)**
25:20
**approached (1)**
15:1
**appropriate (9)**
14:5;21:19,22;23:5;
26:9;36:6;37:18;38:7,
16
**approval (6)**
17:2;23:21;27:10,
22;28:21;30:10
**approve (6)**
8:17;17:1;23:3;
29:13,14,15
**April (3)**
24:9,14;25:7
**around (2)**
6:10;11:4
**arrearages (1)**
17:21
**articulated (1)**
25:15
**aside (1)**
11:1
**aspect (2)**
10:11;32:22
**asset (8)**
14:10,22;16:18,22;
31:6,7,13,14
**assets (1)**
31:20
**assistance (1)**
25:21
**associated (1)**
12:12
**assume (1)**
38:1
**assuming (1)**
10:13
**attempt (1)**
25:17
**attention (1)**
21:12
**Attorneys (3)**
4:3,12;5:3
**Attorney's (1)**
34:16
**audience (1)**
22:4
**authority (1)**
23:4
**avoid (2)**

28:2;36:19
**aware (3)**
15:7;16:17;28:1
**away (3)**
14:22;16:22;33:21

**B**

**b4a (1)**
35:12
**b4J (1)**
18:17
**back (7)**
7:16;11:22;15:12,
22;20:15;23:21;24:1;
28:8;9;29:10,25;
30:11;32:14;33:5;
34:12;37:22;39:9
**background (1)**
17:12
**bad (1)**
8:3
**balance (1)**
14:21
**ball (1)**
9:2
**Bank (38)**
5:3;6:13;7:24;8:13;
9:16,18;10:8;12:10;
13:20,25;14:3,5,6,8,
10,11,13,18;16:10,11,
24;17:5,8,8,15;20:13;
22:4;27:16;29:17;
30:3,20;31:1,22;32:2,
4,13,20;33:9
**bankruptcy (6)**
14:9;20:22;31:5,14,
25;36:25
**based (3)**
11:6;12:9;24:19;
25:24;31:15
**basically (3)**
12:13;14:9;16:18
**basis (3)**
18:22;27:7;37:14
**bear (1)**
35:11
**become (1)**
39:10
**beehive (1)**
39:10
**beginning (1)**
31:1
**behalf (4)**
22:13,14;32:2;34:2
**behind (1)**
35:16
**beneficial (1)**
31:9
**benefit (1)**
38:15
**best (7)**
11:14,24;12:8;13:6;

20:9;31:21;37:17
**bidding (1)**
23:1
**bids (2)**
22:18,20
**Bill (3)**
11:7,7,8
**bit (1)**
31:24
**Blumenfeld (18)**
7:7,8,10,12;9:5,7,
16;10:2,15;30:19;
31:2,11;32:5,20;33:8,
11;35:6;37:23
**board (1)**
10:23
**bogged (1)**
7:20
**both (2)**
6:4;7:21
**Bowling (1)**
4:4
**bring (3)**
15:2;25:14;35:11
**bringing (1)**
38:13
**Broadway (17)**
6:7,16;7:19,23;8:5;
15:10;16:19;19:14;
23:20,25;31:4,5;
33:15,18;35:4;37:1;
39:1
**brought (2)**
18:23;35:15
**BRUH (37)**
4:8;7:3,4,4;23:18,
23,24,24;24:12,17,19,
23;25:19,20;26:1,8,
13;28:2,3,6,10,25;
29:3;30:14,24,24;
33:9;34:12,15,18,18;
35:1,15,23;38:21,22;
39:15
**Bruh's (1)**
28:21
**building (1)**
31:13
**built (1)**
16:13
**burdening (1)**
38:14
**burner (1)**
34:24
**business (2)**
8:1;17:23
**buttons (1)**
28:11
**buys (1)**
15:7

**C**

**calendar (2)**

19-12280-dsj    Doc 150    Filed 04/03/23    Entered 04/11/23 15:21:28    Main Document
IMO: EAST BROADWAY MALL, INC. and IMO: GRACE CHAN    Pg 43 of 50

March 23, 2023

32:14;33:5
**calendared (1)**
30:15
**call (3)**
6:4;7:19;9:10
**called (1)**
7:16
**came (1)**
37:10
**can (29)**
7:22;8:3;9:18;
10:12;13:21;14:23;
15:13;17:4,10;18:18;
20:9,22,23;21:10,16,
17,21;23:9,13;25:3,
23;27:25;28:9;30:3;
32:14;34:6,9;39:3,7
**card (1)**
33:14
**care (1)**
39:14
**carefully (2)**
27:2;36:22
**carried (3)**
24:21;30:11;36:2
**carry (1)**
20:1
**carrying (1)**
25:3
**case (32)**
7:16,21,23;8:4,6;
9:12,20;11:20;12:17;
16:15;20:16;23:22;
24:16;25:13;26:19;
29:22;30:12,16;
31:17;32:11;33:2,15;
34:8;35:3,8,20;36:4,
23,25;37:2,5;38:9
**cases (3)**
6:4,6;7:21
**cash (3)**
12:13;15:10;37:10
**cause (2)**
18:17;30:17
**certainly (6)**
12:23,24;13:18;
21:10,16;36:1
**chambers (1)**
38:23
**Chan (25)**
6:6;7:11,16,18,21;
8:4;9:5;10:1,10,15;
14:9,20;16:15;19:11;
23:21;30:12,20;31:3,
12;32:15;34:1,3;37:8,
19;38:8
**chance (3)**
32:1,7,10
**change (1)**
13:9
**changed (1)**
24:25
**changes (2)**

12:25;22:9
**Chans (1)**
16:13
**Chan's (4)**
30:15;35:5;36:23;
37:4
**Chapter (9)**
6:7;8;10:4;30:16;
31:18,18;32:12;
33:16;38:13
**checked (1)**
33:22
**Chinatown (1)**
15:20
**chips (2)**
26:2;35:3
**choice (2)**
9:8;32:25
**choose (1)**
38:5
**Church (1)**
4:13
**circle (1)**
23:21
**circumstances (2)**
26:22;36:13
**CITY (38)**
4:11,12;6:20,21,23;
7:1;10:21;11:2,12;
12:9,10;13:13,20;
14:6,12,15;15:23;
16:10,11;17:1,4,5,6,9;
18:3;19:2,5,6,15;
20:17,18;21:6,15;
29:13,14,15;30:2;
39:9
**City's (4)**
17:2;19:10,13;
21:17
**claim (2)**
14:21;31:24
**claims (2)**
26:19;35:5
**clarification (1)**
29:16
**clarity (1)**
27:8
**clear (2)**
32:19,21
**clearly (1)**
32:9
**client (2)**
10:5;21:11
**clients (1)**
21:19
**close (1)**
34:1
**Code (2)**
36:5,8
**coerced (1)**
29:25
**combination (2)**
20:23,25

**combined (2)**
6:5,5
**coming (3)**
8:2;19:16;35:20
**commence (1)**
36:8
**commencement (1)**
36:11
**comment (3)**
10:10,11,12
**commenting (1)**
38:7
**comments (1)**
14:1
**communicate (1)**
12:7
**communicated (1)**
32:9
**community (2)**
15:20;39:9
**compelling (1)**
36:13
**compete (1)**
22:19
**competing (1)**
24:3
**completely (1)**
25:12
**compliant (1)**
39:6
**conceivable (1)**
38:14
**concern (5)**
18:6;24:1;30:20;
32:18,24
**concerned (3)**
21:4;22:2,5
**concerning (1)**
13:19
**concerns (1)**
9:25
**concise (1)**
13:19
**conclude (2)**
37:6,18
**concluded (1)**
39:17
**conclusion (1)**
25:22
**concrete (1)**
37:14
**conference (1)**
9:10
**confirm (2)**
18:19;35:20
**confirmation (1)**
8:18
**confirmed (1)**
20:15
**connection (2)**
23:6;31:3
**consensual (1)**
34:9

**consented (1)**
36:17
**consents (2)**
34:14;36:12
**consider (3)**
11:14;13:20;27:4
**considerably (1)**
11:10
**consideration (3)**
17:16,23;22:16
**considered (3)**
16:14;18:1;21:20
**considering (1)**
36:25
**contain (1)**
26:17
**contemplate (1)**
23:3
**contingencies (1)**
12:12
**contingent (2)**
15:6;16:1
**continuance (2)**
36:12,17
**continue (2)**
18:13;21:1
**continuing (3)**
35:12;37:9,11
**conundrum (1)**
14:8
**conversation (2)**
30:3,4
**conversations (2)**
10:22;21:5
**conversion (7)**
9:24;30:19;31:21;
36:4,19;37:16;38:6
**convert (8)**
16:16;24:12;26:6;
28:23;30:15;35:2;
36:3,9
**converted (2)**
33:2;35:7
**convey (1)**
21:16
**copy (1)**
38:23
**core (1)**
26:15
**Corporation (2)**
19:5;21:7
**Counsel (6)**
6:13;7:24;10:20;
14:4;21:17;38:9
**Counsel's (2)**
19:5;21:7
**couple (4)**
10:24;12:4;13:2;
19:17
**coupled (2)**
25:15;37:12
**course (2)**
9:8;37:18

**COURT (77)**
6:2,14,17,22;7:2,6,
10,14,9:15,22;10:3,
12,20;12:1,5,15,18;
13:3,7,18;14:23;
15:13,15;16:3,7;
17:13;18:11,20;19:1,
9,13;20:5,8,16;21:3,
13,25;22:10,12,21,25;
24:7,11,15,18,22;
25:1,25;26:3,9;27:19;
28:6,7,9,11;29:1,4,7,
16,18,21;30:7,9;32:1;
33:7;34:11,23;35:2,9,
22,25;36:8,14;37:22,
25;38:25;39:13
**Court's (2)**
28:17;38:19
**COVID (1)**
33:20
**credit (1)**
33:14
**creditors (2)**
37:17;38:11
**cross-collateralized (1)**
33:17
**cued (1)**
26:12
**current (1)**
27:9
**currently (1)**
11:1;25:7
**cushion (1)**
23:14
**cut (1)**
38:7

**D**

**date (6)**
19:19;25:5,6,7,8;
27:23
**days (11)**
7:16;8:5,25;10:24;
12:21;19:19;23:11,
13;31:9;36:10,11
**DCAS (3)**
15:24;21:7;22:4
**deadline (21)**
8:9,22,22;12:20;
18:12,14,17;19:18,23;
20:5;23:5;25:3,8,16,
23;26:6;28:19,22,22,
24;29:19
**deadlines (2)**
23:16;32:8
**deal (1)**
15:6
**debt (4)**
33:14;35:6,8;38:11
**debt-driven (1)**
16:5
**debtor (25)**

IMO: EAST BROADWAY MALL, INC. and IMO: GRACE CHAN

March 23, 2023

6:16;7:20;9:9,11;
13:13;14:4,13;15:16,
17,22,23;16:11,20;
17:6,20,24;21:4,6,8,9;
22:13,15;29:12;
31:24;35:16
**debtor's (6)**
9:11;11:2;14:14;
17:1;22:8;32:6
**debts (1)**
33:16
**decide (3)**
34:13;36:10,21
**defer (2)**
13:5;31:10
**definite (1)**
8:16
**deja (1)**
26:3
**delay (1)**
34:7
**demonstrate (1)**
20:1
**demonstrated (1)**
37:7
**denied (2)**
24:6,13
**deny (7)**
8:8;19:17;24:8;
26:15,22;27:12;28:18
**denying (4)**
12:19;18:6;23:4;
27:20
**DEPARTMENT (5)**
4:2,11;6:21;7:1;
19:5
**deprive (1)**
30:20
**despite (1)**
27:9
**detail (1)**
26:17
**determine (1)**
38:5
**develop (1)**
23:15
**devolve (1)**
13:22
**dictate (1)**
22:25
**difference (1)**
37:4
**different (1)**
9:19
**diminution (3)**
35:12,23;37:9
**direct (3)**
19:10;30:1;32:24
**direction (1)**
32:25
**directions (1)**
33:1
**discharge (3)**

31:21;33:13;35:7
**discipline (2)**
18:21;20:23
**disclosure (36)**
8:8,10,17,23;10:16;
11:5,16;12:20;18:7,9,
12,15,18;19:17,20;
20:10;23:3,5,6,20;
24:2;25:8,15,16;
26:14,16;27:9,15,20,
22;28:18,20,24;
29:10;30:10;39:6
**discretion (2)**
37:16;38:5
**discuss (2)**
17:15;32:7
**discussed (1)**
8:5
**discussion (2)**
6:5;26:4
**discussions (3)**
9:12,17;12:9
**dismiss (6)**
16:16;20:16;26:7;
30:16;36:4,9
**dismissal (17)**
8:4;9:24,25;18:16,
17,22;30:18;33:12;
36:6,19;37:16,18;
38:6,6,8,15,20
**dismissed (5)**
9:9,13;33:2;35:3,8
**doable (1)**
38:21
**docketed (1)**
7:24
**document (1)**
13:25
**dollars (2)**
14:17,19
**done (3)**
16:9;18:10;32:23
**double (1)**
33:22
**down (2)**
7:20;37:11
**dragging (1)**
18:20
**drain (1)**
37:11
**draw (1)**
8:20
**drawing (1)**
31:16
**due (1)**
22:16
**During (1)**
33:20
**dynamic (1)**
29:22

**E**

earlier (3)
22:5;25:9;35:10
**easier (1)**
13:1
**East (16)**
6:7,16;7:19,23;8:5;
16:18;19:14;23:19,
25;31:3,5;33:15,18;
35:4;37:1;39:1
**economic (1)**
39:11
**effort (1)**
20:1
**efforts (1)**
39:5
**either (1)**
17:17;20:16;31:2
**elaborate (1)**
9:19
**else (4)**
7:14;12:6,6;39:2
**encourage (1)**
17:15
**end (2)**
9:12;16:5
**endorsing (1)**
27:3
**engaging (1)**
37:9
**enough (3)**
8:16;22:11;29:2
**enter (3)**
27:19,19;28:17
**entertaining (1)**
7:25
**entire (1)**
14:25
**entirely (1)**
31:5
**entitled (1)**
20:19
**entity (4)**
11:7;31:13,16;
36:25
**entry (1)**
19:19
**envision (1)**
12:1
**equals (1)**
23:11
**equity (2)**
31:7,9
**ESQ (5)**
4:8,16,17;5:7,8
**essentially (1)**
7:19
**established (1)**
36:14
**estate (8)**
17:19;31:15;35:12,
24;37:8,10,17;38:14
**estimate (1)**
15:11

even (4)
10:25;14:21;16:14;
22:18
**everybody (2)**
11:12;21:1
**everybody's (1)**
14:1
**everyone (4)**
6:2;7:16,18;39:10
**everyone's (1)**
8:12
**everything's (1)**
7:21
**evolved (2)**
13:7,8
**exact (1)**
26:4
**Exactly (3)**
10:2;32:20;33:23
**except (1)**
30:19
**excessively (2)**
25:14;30:11
**exclusivity (1)**
15:15
**excuse (2)**
26:20;34:15
**exemption (2)**
31:8,10
**existing (1)**
17:17
**exists (1)**
8:9
**expense (1)**
38:14
**exposure (1)**
39:9
**expressed (1)**
11:13
**expressions (1)**
14:4
**expressly (2)**
34:14;36:12
**extending (1)**
8:6
**extent (2)**
24:7;31:8

**F**

fact (3)
11:19;22:17;26:24
**fact-finding (1)**
13:23
**factors (1)**
38:3
**facts (1)**
24:25
**failure (2)**
18:18;26:15
**fair (2)**
17:16,22
**fall (2)**

26:2;35:3
**family (1)**
6:19
**far (5)**
11:13;19:11;21:2,4,
5
**farther (1)**
23:8
**feasible (1)**
37:15
**feature (1)**
30:5
**feel (1)**
14:5
**fees (1)**
35:16
**few (3)**
11:20;12:25;38:11
**fifteen (1)**
36:11
**fight (1)**
6:19
**file (8)**
18:18,19;24:13,23;
28:19,20;32:4;33:5
**filed (9)**
12:21;13:25;20:11;
24:20;26:14;27:23;
32:6;35:18,19
**filing (10)**
8:9,23;9:21;18:12,
15;19:20;23:6;25:8,
16;36:10
**final (4)**
11:14,15,24;12:8
**finals (1)**
20:10
**financing (6)**
12:11,14;15:5,6;
16:1;32:22
**find (1)**
8:13
**finds (1)**
17:24
**fine (5)**
21:10;24:15;25:6,
11;29:3
**finish (1)**
29:14
**First (4)**
6:11;15:4;27:15;
36:7
**fit (1)**
26:11
**Five (9)**
23:10,10;24:2;
27:23;28:19;29:9;
34:8;35:17;39:7
**fixed (1)**
18:19
**flex (1)**
26:20
**flexibility (2)**

IMO: EAST BROADWAY MALL, INC. and IMO: GRACE CHAN

March 23, 2023

20:24;36:16
**floated (1)**
  8:5
**floor (2)**
  14:25;15:4
**flux (2)**
  13:10;26:20
**focused (1)**
  13:19
**focusing (2)**
  19:10;23:18
**following (1)**
  27:15
**fond (1)**
  39:8
**forced (1)**
  38:9
**forcing (1)**
  14:9
**foreclose (1)**
  20:3
**foreclosed (1)**
  21:8
**formed (1)**
  11:7
**forth (2)**
  29:25;32:14
**forward (10)**
  10:4;11:16,21;18:8;
  20:1;21:1,10,11,19;
  27:5
**four (1)**
  35:17
**frame (1)**
  28:1
**framed (1)**
  11:5
**framework (1)**
  11:15
**frankly (1)**
  20:24
**freeze (1)**
  38:2
**Friday (1)**
  23:10
**front (1)**
  9:6
**froze (3)**
  28:7,12,14
**frozen (2)**
  28:5;37:21
**fruition (1)**
  18:23
**full (1)**
  17:16
**funds (1)**
  35:20
**further (4)**
  7:17;14:7;36:22;
  38:10

**G**

**gained (1)**
  38:12
**game (1)**
  17:18
**generate (3)**
  27:19;29:4;39:1
**generating (1)**
  8:15
**gets (1)**
  9:12
**given (9)**
  7:15;12:25;14:15;
  21:12;22:15,16,19,20;
  23:15
**giving (3)**
  9:3;12:19;14:21
**global (2)**
  32:7,10
**goes (2)**
  20:5,8
**Good (10)**
  6:2,15,25;7:4,8;9:7;
  21:15;29:2;30:8;39:5
**Grace (8)**
  6:6;14:9,20;34:3
**Grace's (1)**
  16:17
**grant (1)**
  36:3
**granting (1)**
  38:20
**grateful (1)**
  20:24
**Great (7)**
  6:14,17;7:6;19:1;
  29:4;30:7,20
**Green (1)**
  4:4
**ground (1)**
  15:19
**group (1)**
  15:1
**guarantee (1)**
  31:3
**guess (9)**
  10:8;17:14,15;19:7;
  23:9;24:1;28:2;31:4;
  38:7

**H**

**hand (1)**
  37:12
**happen (2)**
  20:4,17
**happens (1)**
  9:13
**hard (2)**
  12:24;19:6
**head (1)**
  25:14
**hear (11)**
  6:5;8:3;10:7,7,14,

16;18:3;19:3;24:4;
28:9;31:23
**heard (7)**
  13:12,14;18:4;
  23:18;30:23;33:8,9
**hearing (11)**
  6:3,5;14:7,20;
  27:18;30:5;33:4;36:9,
  11,17;39:4
**help (2)**
  20:23;34:7
**helpful (1)**
  19:22
**herself (2)**
  37:20;38:8
**hiding (1)**
  9:2
**hitting (1)**
  9:1
**hold (3)**
  7:21;32:8;36:5
**holders (1)**
  26:18
**home (3)**
  30:21;31:8;33:24
**homestead (2)**
  31:8,10
**honestly (2)**
  30:16;34:24
**Honor (50)**
  6:12,15,25;7:4,9,
  13;9:8;10:2,9,19;
  11:18;12:4,23;13:5,
  16;14:16,24;16:9,19;
  18:25;19:4,21;20:25;
  21:24,24,23;24:24,9,
  13,21,24,25:20;28:5,
  8;29:6;30:8,24;31:19;
  32:3,13;33:3,12;34:4,
  18;35:1,21;37:21,24;
  38:22;39:12,16
**Honor's (2)**
  19:7;25:21
**Hope (28)**
  5:3;6:13;7:25;8:13;
  9:16,18;10:8;13:20,
  25;14:3,5,7,9,10,11,
  14,18;16:24;17:5,8,8;
  20:14;21:14;24:6;
  25:21;27:16;29:17;
  39:5
**hopefully (1)**
  39:10
**hoping (1)**
  20:22
**housekeeping (1)**
  27:14
**humane (3)**
  37:19,24;38:8
**hurt (1)**
  34:8
**hypothetical (1)**
  26:18

**I**

**idea (4)**
  8:3;12:19;20:12;
  21:15
**IFresh (1)**
  15:3
**ignore (1)**
  17:22,25
**ill (1)**
  13:20
**impact (1)**
  10:1
**impediment (1)**
  15:16
**impetus (1)**
  31:4
**important (1)**
  22:16
**impose (2)**
  18:21;23:5;28:18
**imposing (3)**
  8:22;18:14;38:20
**impossible (1)**
  26:21
**Inc (1)**
  6:8
**inclination (2)**
  8:2;23:9
**inclined (1)**
  35:2
**including (2)**
  17:21;36:23
**income (3)**
  31:16,16;36:24
**increased (2)**
  11:10;22:23
**indicated (1)**
  14:3
**indication (2)**
  15:22;19:7
**indiscernible (1)**
  35:23
**individual (2)**
  6:7;37:4
**information (3)**
  26:1,17;27:11
**informed (1)**
  26:19
**intended (1)**
  19:16
**intends (1)**
  14:7
**intention (1)**
  26:5
**interest (5)**
  11:13;14:4;15:1;
  31:12;37:1
**interested (1)**
  38:11
**interests (3)**
  26:19;37:17,19

**into (6)**
  13:22;14:9;16:21;
  27:4;35:20;38:13
**investor (1)**
  26:18
**invited (1)**
  16:21
**invoking (1)**
  38:12
**involved (4)**
  16:10,11;33:25;
  34:2
**ironically (1)**
  15:5
**issue (1)**
  28:12
**issues (1)**
  34:21

**J**

**JAMES (2)**
  5:7;6:12
**JEROME (1)**
  5:8
**Jones (1)**
  6:2
**Judge (3)**
  6:2;28:25;39:15
**judgment (1)**
  26:19
**JUSTICE (2)**
  4:2;33:13

**K**

**KASS (16)**
  4:16;6:23,25,25;
  19:4,4,12,21;20:7,13;
  21:4,18;28:8;29:11;
  30:8;39:16
**Keenan (41)**
  6:14,15,16;9:11,18;
  13:13,13,16,24;14:24;
  15:13,14,18;16:6,8;
  17:14;18:5,9,24,25;
  21:14,24;22:1,1,11,
  13,14,22;28:5;29:6,7,
  8,8,18,20;30:2,6;31:2;
  32:20;37:21;39:12
**keep (4)**
  8:6;12:16;25:3,5
**Kennan (2)**
  6:15;21:25
**key (1)**
  13:12
**kind (7)**
  10:20;11:20;12:13;
  20:4;26:17;32:8;33:8
**knowledge (1)**
  21:8
**knows (1)**
  7:18

19-12280-dsj    Doc 150    Filed 04/03/23    Entered 04/11/23 15:21:28    Main Document
Pg 46 of 50
IMO: EAST BROADWAY MALL, INC. and IMO: GRACE CHAN

March 23, 2023

**KOENIG (4)**
4:17;6:19,24;21:18

## L

**laid (1)**
10:17
**Lam (5)**
11:7,7,8,10;15:1
**landlord (1)**
19:13
**LANE (2)**
5:2;6:13
**largely (1)**
10:25
**last (5)**
7:23;11:13,23;
33:25;35:17
**late (1)**
32:11
**later (3)**
27:23;36:9,10
**launch (1)**
8:18
**LAW (4)**
4:11;6:20;7:1;19:5
**lean (1)**
13:22
**lease (1)**
14:17
**leasehold (1)**
20:19
**leash (1)**
24:8
**least (1)**
16:24
**leave (1)**
18:2
**left (2)**
37:23;38:4
**legal (1)**
15:16
**legally (1)**
39:6
**lender (1)**
8:14
**length (1)**
26:10
**less (1)**
9:24
**letter (3)**
7:24;17:4;33:3
**liberty (1)**
26:10
**light (5)**
9:20;11:18;12:21;
22:17;30:12
**likelihood (3)**
34:25;35:13;37:13
**likely (2)**
37:3;38:9
**limits (2)**
29:24;36:14

**line (1)**
8:20
**list (1)**
38:3
**little (7)**
19:6;22:17;31:24;
35:20;38:12,14;39:10
**lives (1)**
32:17
**living (2)**
33:20,23
**LLP (1)**
5:2
**local (1)**
15:21
**long (8)**
8:19;12:1;18:21;
20:8;23:15;25:14;
30:11;34:2
**longer (1)**
36:20
**look (13)**
9:22;12:18;13:7;
17:13;19:9;22:10,25;
23:14;32:3,10,19,24;
37:25
**looking (4)**
9:20;12:8,12;32:21
**loss (2)**
35:12;37:9
**lost (1)**
28:15
**lot (2)**
9:3;36:16
**lots (1)**
23:15
**low (3)**
36:24;37:12;38:10
**luck (1)**
39:5

## M

**main (4)**
16:17;27:16;31:4;
32:22
**major (2)**
14:10,22
**makes (6)**
8:8,20;9:4;13:11;
20:8;30:17
**making (3)**
16:20;21:9;36:20
**MALATAK (1)**
5:8
**Mall (19)**
6:8,16;7:20,23;8:6;
14:10;16:19;19:14;
23:20,22;24:1,15;
31:4,6;33:15,18;35:4;
37:2;39:2
**manages (1)**
31:13

**many (2)**
15:19;24:20
**many-tendrilled (1)**
21:15
**March (2)**
7:24;13:24
**MARK (5)**
4:8;7:4;23:24;
30:24;34:18
**MARX (2)**
5:2;6:13
**matter (4)**
21:18;25:21;31:11;
39:2
**maximization (1)**
17:18
**maximizing (1)**
18:1
**may (4)**
21:6;22:17;32:4;
35:3
**maybe (3)**
21:21;28:24;31:23
**mean (9)**
10:3,13;13:21;
17:14,18;20:9;23:1;
29:19;34:1
**meaning (1)**
9:23
**means (1)**
30:21
**Meanwhile (1)**
7:23
**measure (1)**
36:6
**mechanism (1)**
21:20
**mediation (3)**
34:5,6,20
**meet (1)**
26:21
**meeting (2)**
15:23;36:14
**met (1)**
18:17
**middle (1)**
38:3
**might (8)**
7:22;8:7;13:1;16:1;
17:22;24:3,19;32:10
**million (2)**
14:17,18
**mind (3)**
8:24;18:11,14
**MINDY (1)**
4:17
**minute (2)**
9:12;28:14
**MITTENDORF (2)**
5:2;6:13
**modest (1)**
37:10
**modification (1)**

14:16
**moment (1)**
18:7
**month (1)**
20:11
**monthly (2)**
36:23;37:11
**months (4)**
24:2,20;29:21;
31:19
**more (15)**
12:3;14:19;16:20;
17:11;23:11,14,14;
29:1;31:24;34:24;
36:6;37:19,19,23;
38:8
**morning (6)**
6:2,15,25;7:4,8;9:7
**mortgage (1)**
12:14
**most (1)**
38:15
**motion (40)**
8:19,23;12:19;
16:16;19:17;23:2,21;
24:9,11,12,20,23;
25:2,9,23;26:6,11,14,
22,23;27:10,15,22;
28:18,21,23;30:10,15,
17,23;32:4;33:4;
34:12;35:16;36:3,9,
10,21;38:16,20
**movant (2)**
34:13;36:12
**move (5)**
11:20;12:16;18:8;
25:21;28:21
**moved (2)**
35:10;36:4
**movement (1)**
34:14
**moves (2)**
22:6;25:6
**moving (2)**
8:7;25:18
**much (4)**
22:24;32:11;38:25;
39:13
**must (1)**
27:22
**muster (1)**
27:6
**mute (1)**
10:9

## N

**name (1)**
17:18
**namely (1)**
37:8
**narrow (1)**
19:14

**necessary (1)**
23:16
**necessity (1)**
36:19
**need (12)**
8:21;12:3;17:4,9,
10;18:21;27:17;29:1,
16,19;31:23;32:10
**negotiate (1)**
29:19
**negotiating (1)**
13:21
**negotiation (1)**
16:21
**negotiations (5)**
8:12;15:24;33:25,
25;34:3
**nevertheless (1)**
10:4
**New (23)**
4:6,11,12,14;5:5;
6:20,21;7:1;8:10,10;
12:20,20;18:12;19:5,
20,20;20;24:2,23;
25:16,16,16;26:1;
27:21
**Nice (1)**
6:22;7:2,7;39:10
**nine (1)**
31:19
**nobody's (1)**
21:8
**nor (1)**
27:3
**note (1)**
36:7
**notice (1)**
24:14
**November (1)**
29:11
**number (2)**
6:6;26:25
**numbers (1)**
22:20
**NY (3)**
4:6,14;5:5

## O

**objections (4)**
24:4,5;26:14;27:1
**obliged (2)**
21:19;34:13
**observation (1)**
15:13
**observe (2)**
17:20;21:14
**obstacle (1)**
32:22
**obtain (1)**
32:14
**obviously (1)**
33:1

**occur (3)**
  18:18;30:3;37:3
**October (1)**
  29:11
**off (5)**
  27:15;36:2;37:23;
  38:4,7
**offer (11)**
  11:6,10,14,15;16:1;
  17:1;21:9,10,17;22:3;
  36:20
**offers (7)**
  7:25;11:9,9,23;
  14:11,19;22:24
**Office (7)**
  19:5;21:7;26:13,25;
  34:16,16;38:17
**Office's (1)**
  28:22
**officials (1)**
  15:21
**off-the-record (1)**
  30:4
**One (11)**
  4:4;6:6;11:4,4,13,
  23;14:19;15:11;
  21:16;24:1;38:17
**onerous (1)**
  9:24
**ongoing (2)**
  8:12;15:24
**only (3)**
  14:9;31:16;35:5
**on-the-record (1)**
  30:5
**open (1)**
  14:24
**operating (6)**
  31:15;35:16,18,19;
  36:24;37:11
**opportunity (7)**
  11:13,23;22:19;
  24:24;32:7;33:5;
  36:18
**optimal (1)**
  8:13
**optimistic (1)**
  37:2
**option (1)**
  34:4
**oral (3)**
  26:23;27:18;38:19
**order (16)**
  12:10;15:5;18:20;
  19:18,19;27:17,20,21;
  28:3,17;29:5;32:6;
  33:21;38:18,23;39:1
**original (1)**
  11:4
**originally (1)**
  36:4
**otherwise (1)**
  8:17

**ought (1)**
  33:10
**ourselves (1)**
  39:1
**out (20)**
  8:7;10:6,17,25;
  15:10,23;17:12;
  20:10;23:8;25:3,5;
  26:9;30:13,17,19;
  33:19;34:6,21;36:18;
  39:6
**outside (2)**
  17:17;25:6
**over (4)**
  8:21;12:20;13:11;
  15:15
**own (2)**
  23:4;38:8
**owner (1)**
  7:19

## P

**paid (1)**
  35:17
**papers (1)**
  33:6
**paragraph (1)**
  36:15
**part (3)**
  9:17;11:15;17:11
**particular (1)**
  23:1
**parties (5)**
  11:22;12:8;17:15;
  32:7;38:24
**partners (2)**
  8:1;17:23
**parts (1)**
  35:10
**party (6)**
  8:14,15;17:17,17;
  28:19;29:9
**pass (1)**
  27:6
**path (2)**
  10:4;21:1
**pending (1)**
  16:16
**people (9)**
  15:19;17:3,10;
  20:10;23:12;28:15;
  33:21;36:18;37:25
**Perhaps (2)**
  34:4,9
**period (3)**
  17:21;18:11;36:13
**person (2)**
  16:4;17:17
**personal (2)**
  31:14;39:8
**personalize (1)**
  34:17

**personally (2)**
  13:11;33:17
**persuade (1)**
  8:16
**ph (1)**
  11:7
**pick (4)**
  9:9;33:11;38:4,10
**piece (2)**
  9:6;23:20
**place (1)**
  16:13
**plan (32)**
  8:10,23;11:5,6,16;
  12:21;15:16;17:2;
  18:13,15,19;19:20;
  20:11,15;23:7;24:3,7;
  25:9,16;26:20,20;
  27:1,8,17,22,25;
  28:20;29:10,13,17;
  35:20;39:7
**plans (1)**
  24:3
**play (2)**
  10:5;38:13
**player (1)**
  18:3
**players (2)**
  13:12;19:25
**please (2)**
  13:19;38:18
**plural (1)**
  17:14
**point (15)**
  10:18;15:25;16:3,3,
  9;17:13;19:8;23:1;
  28:24;32:12;33:3;
  34:21;35:14;36:2;
  37:12
**pointed (1)**
  33:19
**points (2)**
  17:14;30:19
**poison (3)**
  9:9;33:11;38:10
**position (4)**
  14:6;19:15;20:18;
  31:1
**possession (1)**
  20:19
**possible (2)**
  8:4;11:21
**potential (1)**
  7:25
**powers (1)**
  17:3
**precise (1)**
  29:1
**pre-COVID (1)**
  17:21
**prefer (1)**
  9:9
**prejudice (1)**

  24:13
**present (2)**
  26:22;27:25
**presented (2)**
  37:14;39:6
**pretty (3)**
  11:17;32:9,13
**prevent (1)**
  36:13
**previously (1)**
  20:3
**primarily (1)**
  35:14
**primary (2)**
  10:13,15
**prior (3)**
  14:7;26:6;28:23
**probably (6)**
  8:9;9:18;14:19;
  32:12,13;33:3
**problem (2)**
  7:14;19:21
**procedure (1)**
  19:22
**proceed (4)**
  8:17;19:8;34:15,17
**proceeding (1)**
  6:3
**proceedings (1)**
  39:17
**process (11)**
  8:18;12:1;13:5;
  17:11;18:14;20:4,20,
  21,22;23:1,12
**productive (1)**
  39:9
**progress (4)**
  9:6;18:23;32:11,25
**properly (1)**
  39:6
**properties (1)**
  32:16
**property (11)**
  8:13;9:14;14:15;
  15:7;20:19;30:21;
  32:17;33:20,21,23;
  39:8
**proponent (2)**
  27:1,17
**proponents (1)**
  23:12
**proposal (9)**
  11:2;12:11,13;
  14:14;17:16;22:8,12;
  32:6,22
**proposals (8)**
  8:15;10:24;11:3;
  14:12;16:20;19:24;
  20:2;22:7
**propose (1)**
  29:9
**proposed (7)**
  8:23;14:17;23:7;

  27:22,25;28:20;38:18
**proposing (1)**
  15:16
**prospect (1)**
  18:16
**provide (2)**
  14:7;27:11
**provision (1)**
  18:22
**purpose (1)**
  10:13
**purposes (1)**
  28:14
**pursued (1)**
  18:2
**pursuing (2)**
  15:17;22:3
**push (2)**
  34:14;39:5
**pushed (3)**
  25:23;26:9;28:11
**pushing (2)**
  23:8;25:5
**put (12)**
  8:21;15:5,25;16:24;
  17:12;29:11,12,16;
  32:8,13;33:4;39:8
**puts (1)**
  9:19
**putting (1)**
  14:10

## Q

**quickly (5)**
  11:17,21;18:23;
  22:6;37:3
**quite (3)**
  8:24;34:21;37:12
**quote (1)**
  21:6

## R

**Rachel (1)**
  7:10
**raise (1)**
  39:2
**raised (2)**
  26:25;31:2
**ran (2)**
  16:13;17:20
**rather (2)**
  8:6;13:4
**reaching (1)**
  15:23
**reaction (3)**
  12:19;26:3;34:23
**ready (3)**
  22:12,14;23:13;
  35:25
**real (3)**
  14:8,10;17:25

19-12280-dsj    Doc 150    Filed 04/03/23    Entered 04/11/23 15:21:28    Main Document
IMO: EAST BROADWAY MALL, INC. and IMO: GRACE CHAN    Pg 48 of 50

March 23, 2023

**reality (1)**
17:23
**really (15)**
7:20,20;8:12;10:15;
11:1;13:7;19:13,14;
25:13;30:14;32:11,
16,17;35:11;39:5
**reason (8)**
8:11;10:17;16:17,
25;17:5;26:23;27:11;
38:15
**reasonable (2)**
35:13;37:13
**reasonably (1)**
11:21
**reasons (2)**
27:20;38:19
**reassurance (1)**
26:5
**recall (1)**
32:4
**received (5)**
10:24;11:3,6,8;14:2
**record (11)**
7:18;13:17;15:5,25;
16:23;27:18,21;
29:11,19,25;36:22
**referencing (1)**
38:18
**refile (1)**
12:25
**refinance (2)**
15:9;16:5
**reflect (2)**
36:24;37:11
**reflection (1)**
8:2
**regarding (1)**
31:24
**rehabilitation (3)**
35:13;37:13,15
**reinstate (6)**
24:9;25:4,9,23;
26:6;28:23
**reinstatement (1)**
24:14
**reinvent (1)**
25:4
**rejected (1)**
11:3
**rejecting (1)**
27:2
**related (1)**
12:14
**relatively (1)**
10:23
**relief (3)**
32:5,14;33:4
**relying (1)**
35:14
**remains (1)**
13:10
**remarks (1)**

25:12
**remedy (1)**
38:5
**remember (1)**
23:2
**rental (1)**
32:17
**rented (1)**
33:20
**repeated (1)**
27:9
**repeatedly (1)**
36:17
**reply (2)**
32:6;33:6
**report (4)**
13:25;14:1,3;31:15
**reported (1)**
10:23
**reports (5)**
35:16,18,19;36:24;
37:11
**representatives (2)**
14:13;30:2
**representing (2)**
6:10,21
**requesting (1)**
33:4
**require (1)**
27:21
**required (4)**
34:13;36:8,21;37:8
**requirement (2)**
26:16;27:10
**requirements (1)**
37:6
**reset (1)**
28:16
**resides (1)**
32:15
**resolution (3)**
34:9;37:3;38:16
**resolve (1)**
23:19
**resolved (2)**
24:5,6
**resolves (1)**
30:10
**responded (1)**
32:5
**response (1)**
10:21
**restart (1)**
13:5
**restaurant (2)**
14:25;15:3
**result (1)**
11:9
**review (1)**
27:1
**reviewed (2)**
36:22,23
**reviewing (1)**

22:7
**revise (1)**
13:4
**right (26)**
7:11,12;8:21;9:23;
10:1;12:12;13:24;
14:24;16:22;17:3,17;
19:1,18;21:23;22:7,7,
25;23:9,17,21;24:4;
25:1;26:8;27:12;33:7;
35:22
**rights (2)**
25:10;36:1
**ripe (1)**
20:4
**risk (1)**
9:25
**road (2)**
18:13;29:23
**ROBERT (1)**
5:8
**role (3)**
19:10,10,13
**rope (1)**
23:15
**round (1)**
25:11
**route (1)**
20:3
**rule (1)**
35:25
**ruling (6)**
19:16;26:23;27:7,
18;36:2;38:19
**run (1)**
10:20

**S**

**Sally (3)**
6:15;22:1;29:8
**same (3)**
26:4,5;27:21
**satisfactory (1)**
23:16
**satisfy (2)**
26:15;27:10
**saying (2)**
7:25;38:7
**scenario (1)**
31:21
**schedule (1)**
20:14
**second (1)**
14:25
**secretive (1)**
22:23
**Section (4)**
26:16;36:5,7;37:7
**secured (1)**
8:14
**Security (1)**
31:17

**seek (1)**
35:7
**seeking (1)**
36:4
**seem (2)**
19:24;31:20
**seems (2)**
8:6,11
**send (3)**
33:3;34:5;38:23
**sense (9)**
8:8,20;9:4;10:17;
13:11;18:24;20:8,12;
27:14
**sent (1)**
34:5
**separate (1)**
28:3
**serious (4)**
19:24,25;21:9,10
**seriously (1)**
18:1
**set (1)**
29:19
**sets (1)**
18:16
**setting (1)**
19:18
**settlement (3)**
21:17;32:8,10
**several (1)**
24:21
**Sferrazza (1)**
6:16
**share (1)**
34:23
**shared (1)**
14:3
**short (2)**
8:24;24:8
**show (1)**
17:4
**showing (1)**
37:8
**shown (3)**
13:9;35:18;36:16
**sick (1)**
33:22
**simple (2)**
12:16;27:19
**simply (8)**
18:6;19:17;20:3,18;
23:20;27:7,10;37:13
**simultaneously (1)**
6:4
**sit (1)**
25:10
**situation (2)**
17:24;20:15
**slight (1)**
23:14
**smiled (1)**
21:21

**sobering (1)**
33:8
**Social (1)**
31:17
**solicit (1)**
11:1
**solution (1)**
8:13
**solutions (1)**
18:1
**somewhat (1)**
7:21
**son (1)**
9:11
**soon (2)**
32:13;33:3
**sorry (12)**
7:10,12;10:9,10;
12:5;18:5;22:1;24:11,
23;28:13;29:8,18
**sort (3)**
6:4;18:2;29:24
**source (1)**
17:25
**sparked (1)**
26:12
**speak (1)**
30:2
**speaking (1)**
14:13
**specific (2)**
32:23;36:13
**specifically (3)**
19:7;23:25;27:3
**spinning (1)**
25:13
**square (1)**
24:1
**standard (1)**
26:21
**start (8)**
8:21;9:4,5;12:20;
13:11;19:6;20:20;
23:8
**started (1)**
13:8
**starting (1)**
12:6
**stated (2)**
6:9;27:20
**statement (37)**
8:8,10,17,23;10:16;
11:5,16;12:21;18:7,9,
12,15,18;19:17,20;
20:11;23:3,6,6,20;
24:3;25:8,15,17;
26:14,16;27:9,15,20,
22;28:18,20,24;
29:10;30:10;33:8;
39:7
**STATES (1)**
4:2,3;7:5;23:25;
30:25;34:19;38:19

IMO: EAST BROADWAY MALL, INC. and IMO: GRACE CHAN

March 23, 2023

**status (4)**
13:25;14:1,2;36:25
**statutorily (2)**
34:13;36:21
**stay (5)**
32:5,12,15;33:4,21
**stealing (1)**
16:12
**step (1)**
21:23
**still (5)**
8:12;15:3,4,24;24:5
**stream (1)**
36:24
**Street (3)**
4:13;5:4;15:8
**strikes (1)**
21:14
**structure (1)**
16:7
**sub (1)**
35:10
**submit (4)**
11:13,24;38:18,22
**submitted (1)**
11:23
**subsequent (1)**
24:7
**substantial (4)**
17:21;19:25;37:1,9
**success (1)**
34:25
**successful (1)**
37:3
**sufficient (1)**
26:17
**suggest (4)**
10:20;11:11,22;
34:4
**suggested (1)**
11:12
**suggests (1)**
20:10
**Suite (1)**
4:5
**SULLIVAN (18)**
5:7;6:11,12,12;
10:7,9,19;12:3,7,16,
23;13:4;15:25;31:23;
32:1,3;33:19,24
**Sullivan's (1)**
20:9
**sum (1)**
35:7
**superior (1)**
30:18
**supplement (3)**
24:19;25:24;26:10
**supplemented (1)**
35:11
**support (4)**
16:25;17:5,6;29:17
**supposed (1)**

6:20
**sure (6)**
9:4;31:5,7;33:12;
35:4,10

**T**

**table (2)**
14:2;19:24
**talk (1)**
15:20
**talking (6)**
15:21;17:3;23:2;
27:4;28:15;32:16
**tandem (1)**
25:3
**target (1)**
8:7
**teeing (1)**
18:22
**telling (3)**
17:6,8;20:9
**temperature (1)**
19:2
**tenant (1)**
14:23;20:20
**tenants (1)**
14:16
**tenor (1)**
25:12
**tentative (1)**
19:16
**term (1)**
21:17
**terms (1)**
19:22
**terrible (1)**
38:1
**Thanks (2)**
34:11;39:13
**that'll (1)**
21:1
**therefore (2)**
36:20;37:6
**thinking (2)**
8:22;19:18
**third (1)**
34:4
**thirty (5)**
8:25;12:21;19:19;
23:13;36:9
**thirty-five (1)**
16:13
**thirty-six (1)**
23:11
**though (1)**
14:21
**thought (5)**
9:3;18:14;30:18;
32:21;39:6
**thoughts (1)**
7:17
**three (4)**

11:3;19:23;22:7,18
**tight (2)**
8:21;25:10
**till (1)**
20:25
**times (2)**
11:20;24:21
**title (1)**
18:20
**today (18)**
7:15;13:15;14:20;
15:6,25;18:8;19:16;
27:7;29:9;30:3,12,19,
23;35:15;36:20;
38:19,24;39:3
**today's (1)**
27:18
**together (1)**
14:11
**told (2)**
22:23;23:12
**tomorrow (5)**
23:10,11;27:24;
28:19;39:7
**Tomorrow's (1)**
23:10
**tough (2)**
10:4,5
**transcript (2)**
27:17;28:14
**transferred (1)**
31:19
**translate (1)**
9:23
**transmittal (1)**
28:12
**transparency (2)**
16:12;18:13
**transparent (1)**
22:5
**travesty (1)**
33:13
**treatment (1)**
13:20
**tremendous (1)**
13:9
**trouble (1)**
28:3
**Trustee (14)**
4:3;7:5;16:15;
23:25;27:5;30:22,25;
33:16;34:19;36:1,3,
16;38:13,18
**Trustee's (4)**
26:13,25;28:22;
30:15
**try (4)**
13:22;36:18;38:4;
39:7
**trying (2)**
8:12;15:22
**turn (3)**
19:2;30:14;33:7

**twenty (1)**
14:17
**two (10)**
6:6;7:16;8:5;11:8;
20:10;22:6,11,16,17;
32:16
**type (1)**
33:11
**typical (1)**
26:18

**U**

**unconscionable (1)**
16:23
**under (5)**
8:20;18:16,22;36:5,
7
**underwater (1)**
31:6
**unfair (1)**
13:21
**UNITED (6)**
4:2,3;7:5;23:25;
30:25;34:19
**unless (2)**
8:16;34:14;36:12
**unravel (1)**
29:23
**unsecured (2)**
35:7;38:11
**unsolicited (1)**
10:25
**up (8)**
16:5;17:20;18:16,
22;20:11,25;25:17;
38:4
**update (1)**
14:7
**upfront (1)**
9:1
**upon (4)**
12:9;21:21;24:20;
31:15
**use (3)**
11:15;27:24;39:9

**V**

**validity (1)**
27:3
**value (2)**
14:17;17:18
**value- (1)**
17:25
**variety (1)**
26:13
**various (1)**
28:11
**view (1)**
11:24
**voiced (1)**
19:15

**vu (1)**
26:3

**W**

**wants (6)**
15:4;21:9;27:25;
30:2,22;32:2
**waste (2)**
29:12,15
**way (1)**
37:3
**week (3)**
22:16;28:24;35:17
**weeks (13)**
12:4;13:2;20:10;
22:6,11,17;23:10,10;
27:24;28:19;29:9;
34:8;39:7
**weight (1)**
27:2
**West (1)**
5:4
**what's (6)**
12:18;16:22;18:7;
26:2;27:14;30:14
**wheel (1)**
25:4
**wheels (1)**
25:13
**Whereupon (1)**
39:17
**whispered (1)**
17:12
**Whitestone (1)**
33:23
**whole (2)**
13:5;36:23
**Who's (1)**
9:15
**whose (1)**
34:12
**willing (1)**
14:18
**WINDELS (2)**
5:2;6:13
**wish (1)**
34:17
**within (6)**
8:24;12:21;18:19;
20:11;25:10;36:1
**without (4)**
12:13;17:2;24:13;
25:4
**word (2)**
7:24;13:8
**wording (2)**
27:24;29:2
**words (1)**
13:21
**work (7)**
12:10;17:7;20:14,
23;21:1;25:19;36:18

IMO: EAST BROADWAY MALL, INC. and IMO: GRACE CHAN

**March 23, 2023**

**worked (2)**
  20:11;34:6
**working (1)**
  15:2
**workout (1)**
  7:22
**works (1)**
  20:13
**worry (1)**
  31:22
**write (1)**
  28:2
**writing (2)**
  16:25;17:10

**Y**

**year (1)**
  34:1
**years (1)**
  16:13
**Yep (1)**
  24:15
**York (9)**
  4:6,11,12,14;5:5;
  6:20,21;7:1;19:5

**Z**

**ZACHARY (3)**
  4:16;6:25;19:4
**Zoom (1)**
  6:3

**1**

**1.5 (1)**
  14:18
**100 (1)**
  4:13
**10004 (1)**
  4:6
**10007 (1)**
  4:14
**10019 (1)**
  5:5
**101 (1)**
  16:12
**11 (6)**
  6:7,8;10:4;30:16;
  31:18;32:12
**1112 (3)**
  35:10,11;36:5
**1112b3 (1)**
  36:8
**1112b4A (1)**
  37:7
**1112b4J (1)**
  18:16
**1125 (3)**
  26:16;27:10,13
**13 (1)**
  31:18

**145 (1)**
  5:4
**147 (1)**
  13:25
**19-12280 (1)**
  6:7

**2**

**2019 (1)**
  29:22
**22-10700 (1)**
  6:6

**3**

**3rd (2)**
  7:24;13:24

**5**

**534 (1)**
  4:5
**56th (1)**
  5:4
**5th (3)**
  24:9,14;25:7

**7**

**7 (2)**
  33:16;38:13
**75 (1)**
  15:10