**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------ X
In re:

                                                                                    Chapter 11

East Broadway Mall, Inc.,

                                                                                    Case No. 19-12280 (DSJ)

                                          Debtor.

------------------------------------------------------ X

## DEBTOR'S PLAN OF REORGANIZATION

East Broadway Mall, Inc., the debtor and debtor in possession ("EBM" or the "Debtor") hereby proposes the following Plan of Reorganization ("Plan"). In considering this Plan, please also refer to the Disclosure Statement, which discusses the Debtor, its history, its assets, the administration of the Debtor's case and for a summary and analysis of the Plan.

All creditors entitled to vote on the Plan should review the Disclosure Statement before voting to accept or reject the Plan.

## ARTICLE I: DEFINITIONS

**1.1.** **Administrative Bar Date** means October 26, 2022 for all Administrative Claims arising subsequent to July 12, 2019 and before September 20, 2022, and for all Administrative Claims arising on or after September 20, 2022, the Administrative Bar Date is June 30, 2023. Administrative Claims arising after June 30, 2023 and before the Confirmation Date must be filed with the Court, with copies

1

to the parties listed in Section VII of this Plan.

    **1.2.**    **Administrative Claim** means a Claim for a cost or expense of administration of the Chapter 11 Case allowable under Sections 503(b) of the Bankruptcy Code and referenced in Section 507(a)(2) of the Bankruptcy Code, including(a) the actual, necessary costs and expenses incurred after the commencement of the Chapter 11 Case of preserving the Estate and operating the business of the Debtor; (b) wages, salaries or commissions for services incurred after the Petition Date; ( c) allowances of compensation or reimbursement of expenses incurred in the Chapter 11 Case by Debtor's counsel retained by the Debtor under section 327 of the Bankruptcy Code; and (d) all fees and charges assessed against the Estate of the Debtor under Chapter 123 of title 28, United States Code.

    **1.3.**    **Administrative Tax Claim** means any tax incurred pursuant to Section 503(b)(1)(B) of the Bankruptcy Code.

    **1.4.**    **Allowed Claim** means any claim against the Debtor pursuant to Section 502 of the Code to the extent that: (a) a Proof of Claim was either timely filed or was filed late with leave of the Bankruptcy Court or without objection by the Debtor or another party in interest, and (b) as to which either (i) a party in interest, including the Debtor, does not timely file an objection, or (ii) is allowed by a Final Order.

    **1.5.**    **Ballot** means the ballot distributed to each eligible claimant by the Debtor, on which ballot such claimant may, *inter alia*, vote for or against the Plan.

**1.6.** **Bankruptcy Code** means title 11 of the United States Code, as now in effect or hereafter amended.

**1.7.** **Bankruptcy Court** means the United States Bankruptcy Court for the Southern District of New York.

**1.8.** **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure, as amended, and such local rules of the United States Bankruptcy Court for the Southern District of New York as are applicable.

**1.9.** **Bank or BOH** means Bank or Bank of Hope, a Secured Creditor of Debtor.

**1.10.** **Claim** means a claim against the Debtor, whether or not asserted, known or unknown, as such term is defined in section 101(5) of the Bankruptcy Code.

**1.11.** **Class** means a category of claims or interests which are substantially similar to the other claims or interests in such class.

**1.12.** **Confirmation** means the signing of the Confirmation Order of this Plan or any Amended Plan by the Bankruptcy Court.

**1.13.** **Confirmation Date** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket.

**1.14.** **Confirmation Hearing** means the hearing by the Court to consider confirmation of the Plan.

**1.15.** **Confirmation Order** means the Order of the Bankruptcy Court confirming the Plan pursuant to the provisions of the Bankruptcy Code, and any supplementary Orders of the Bankruptcy Court issued in furtherance of the Plan.

**1.16.** **Court** means the United States Bankruptcy Court for the Southern

District of New York.

**1.17.** **Creditor** means any person who has a Claim against the Debtor that arose on or before the Petition Date.

**1.18.** **DCAS** means The New York City Department of Citywide Administrative Services, which is an agency of the City responsible for administering real estate leases between the City and third parties.

**1.19.** **Debtor and Debtor-in-Possession** means East Broadway Mall, Inc.

**1.20.** **Disputed Claim** means Any Claim or Interest against the Debtor that the Debtor or another party in interest has in any way objected to, challenged or otherwise disputed.

**1.21.** **Effective Date** means the first business day that is fourteen (14) days after the Confirmation Date, and on which date no stay of the Confirmation Order is in effect.

**1.22.** **Estate** means the estate created in Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

**1.23.** **Filing Date** means July 12, 2019.

**1.24.** **Final Order** means an order or judgment of the Bankruptcy Court as entered on the docket that has not been reversed, stayed, modified or amended and as to which the time to appeal, petition for certiorari, or seek reargument or rehearing has expired and as to which no appeal, reargument, petition for certiorari, or rehearing is pending or as to which any right to appeal, reargue, petition for certiorari or seek rehearing has been waived in writing in a manner satisfactory to the Debtor, and if an

appeal, re-argument, petition for certiorari, or rehearing thereof has been sought, the order or judgment of the Bankruptcy Court has been affirmed by the highest court to which the order was appealed or from which the re-argument or rehearing was sought, or certiorari has been denied, and the time to take any further appeal or to seek certiorari, or further re-argument or rehearing has expired.

**1.25.** **General Unsecured Claim** means any Claim that is not an Administrative Claim, Fee Claim, Priority Non-Tax Claim, Priority Tax Claim, or Secured Claim.

**1.26.** **Grace Chan** means the President of East Broadway Mall, Inc.

**1.27.** **Insider** has the meaning ascribed to it in section 101(31).of the Bankruptcy Code.

**1.28.** **Interest** means any equity interest in the Debtor represented by any certificated or uncertificated shares or membership interest issued to any Person before the Effective Date, and any warrants, options, or rights to purchase any equity interest.

**1.29.** **Landlord** means the City of New York, for which DCAS acts as administrator, as the landlord under the Lease.

**1.30.** **Lease** means the 50-year commercial lease agreement dated March 1, 1985, between the Debtor and the City through the New York City Department of General Services as Landlord for use of the Premises, as amended in November 1995.

**1.31.** **Pre-Petition Bar Date** means October 26, 2022, the date established by order of the Bankruptcy Court dated September 20, 2022 as the last date by which proofs of claim arising prior to the Petition Date must have been filed with the Court

**1.32.**   **Premises** means the land beneath the Manhattan Bridge, originally designated as 59-77 Division Street, Manhattan, later re-designated as 88 East Broadway, and thereafter developed by the Debtor, pursuant to the terms of the Lease.

**1.33.**   **Priority Claim**  means any and all Claims, if any, entitled to priority under Section 507(a) of the Bankruptcy Code other than Administrative Claims.

**1.34.**   **Priority Tax Claim** means a Claim entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code.

**1.35.**   **Schedules** means the schedules of assets and liabilities, the list of holders of interests, and the Statements of Financial Affairs filed by the Debtor under Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules, lists, and statements have been or may be supplemented or amended from time to time.

**1.36.**   **Secured Claim** means, pursuant to section 506 of the Bankruptcy Code, that portion of a Claim that is secured by a valid, perfected and enforceable security interest, lien, mortgage or other encumbrance, that is not subject to avoidance or disallowance under applicable bankruptcy or non-bankruptcy law, in or upon any right, title or interest of the Debtor's interest in property of the Estate, to the extent of the value of the Debtor's interest in such property as of the relevant determination date.  The defined term Secured Claim includes any Claim that is:  (i) subject to an offset right and the holder of such Secured Claim under applicable law; and (ii) a secured claim against the Debtor pursuant to sections 506(a) and 553 of the Bankruptcy Code.

## ARTICLE II: TREATMENT OF UNCLASSIFIED CLAIMS

Administrative Claims, Fee Claims and Priority Tax Claims have not been classified and are excluded from the Classes set forth in Article III.

2.1 <u>Allowed Administrative Claims:</u>  All Claims for administrative expenses, as that term is defined in 11 U.S.C. 503(b) and 507(a)(1), which are approved by Debtor or allowed by the Court, including such petitions for fees as may be allowed by the Court, shall be paid in full in cash on the Effective Date or such other time as may be agreed upon by Debtor and the individual administrative Claimant.

Requests for payment of Allowed Administrative Claims must be filed by the applicable Administrative Claims Bar Date. Holders of Administrative Claims that are required to, but do not, file a request for payment of such Administrative Claims by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtor or the Estate, and such Administrative Claims shall be deemed satisfied, settled, and released as of the Effective Date.

2.2 **Statutory Fees.**  Administrative Claims of the United States Trustee for fees pursuant to 28 U.S.C. § 1930(a)(6) shall be paid in accordance with the applicable schedule for payment of such fees.

2.3 **Priority Tax Claims.**  Each holder of an Allowed Priority Tax Claim shall receive 100% of the Allowed amount of such Claim on or as soon as reasonably practicable after the Effective Date

## ARTICLE III: CLASSIFICATION  AND TREATMENT OF CLAIMS AND INTERESTS

7

Class 1 consists of the Secured Claim of BOH. BOH shall receive a lump sum payment of $2,000,000 on the Effective Date of Confirmation

Class 2 – Class 2 consists of pre-petition priority claims other than priority tax claims. The holders of Class 2 Claims will be paid 100% of their priority tax claims on the Effective Date of Confirmation.

Class 3 – Class 3 consists of general unsecured creditors (Class 3A) and the City (Class 3B). Class 3A will be paid 100% of their Allowed Claims on the Effective Date of Confirmation. It is estimated that the total amount owed to Class 3A creditors is $35,231. Class 3B will be paid a lump sum of $2,000,000 on the Effective Date of Confirmation.

Class 4 – Class 4 consists of the ownership interests in the Debtor, and they will not receive a distribution.

.

### ARTICLE IV: MEANS FOR IMPLEMENTATION OF THE PLAN

Debtor has submitted a proposal to DCAS and BOH to allow the Debtor to assume its commercial lease agreement with the City (the "Debtor's Proposal").

### THE DEBTOR'S PROPOSAL

In accordance with the terms of the Debtor's Proposal, the Debtor will assume the Lease and assign the Lease to a new entity being formed by the Debtor and its two anchor tenants as described *infra* (the "New Entity").

8

On the Effective Date of Confirmation, the Debtor will make lump sum payments to DCAS and BOH as follows:

DCAS $2,000,000
BOH  $2,000,000

TOTAL $4,000,000

All approved allowed claims of all other creditors of the Debtor will be paid in full on the Effective Date of Confirmation.

### Proposed Terms of Modification of Existing East Broadway Mall Lease

Lease Term: 30 years: 20 years initial term with 10-year renewal term

Rent Concession: No rent for first 16 months after execution of modified lease ("Rent Concession Period").

Additional Payment: Five years from the end date of the Rent Concession Period, the New Entity will pay an additional amount of $350,000 to the City. This additional consideration will be paid over 36 months in equal monthly installments of $9,722.22, concurrently with the Rent prescribed under the modified lease.

PILOT Concession: No PILOT charges during Rent Concession Period. After 16 months PILOT will start based on actual Department of Finance assessment.

Initial Annual Rent After Conclusion of Rent Concession Period: $460,000

Rent Escalation: 3% annual rent escalation commencing on the 3rd anniversary of the Effective Date until the expiration of the Lease, including the renewal term.

Rent Security: Three (3) months' rent.

Capital Improvement to the Building: $5,000,000 minimum.

Confirmed Tenants / Potential

9

    1st Floor:      iFresh Supermarket (Future Tenant)
    2nd Floor:     88 Palace Restaurant (Current tenant)
    Lower Floor:  88 East Broadway Tenants Non-Profit Organization, Inc. (*See Infra*)

### **Formation of New Entity**

Upon acceptance of the Debtor's Proposal, the principals of the Debtor and their proposed anchor tenants are going to form the New Entity to manage the Mall . The members of the New Entity are the following individuals who collectively have over 75 years of operating businesses in the Chinese community:

<u>Kwok Ming Chan & Grace Chan</u>

- Developer and Builder of East Broadway Mall. Grace and Ming created the largest Asian style shopping mall in the heart of New York City's Chinatown. They have been the operator of the Mall <u>for over 38 years</u>. They are highly respected members of the Chinatown community who have invested their life savings into building and running the Mall.

- Founder of the HSF Group Inc.
    1. HSF Dim Sum Restaurants (Chinatown)
    2. HSF Restaurant (Kips Bay)
    3. Grace & Ming HSF Restaurant (Bridgehampton)
    4. Triple Eight Palace Restaurant (Chinatown)
    5. Yummy Noodles (Chinatown)

- Kwok Ming Chan has managed the Mall for over 38 years, and he has personal relationships with every tenant who has conducted their small business in the Mall. Kwok Ming Chan will continue to do his best for the Mall tenants and for the Chinatown community. Because of this long-standing relationship, there will be no need for any landlord tenant litigation that could stall the renovation and revitalization process. Some of the existing tenants have been doing business at the Mall since it opened in 1988.

<u>Yang Gui</u>

- President of 88 Palace Restaurant since 2002, twenty-one years as the anchor tenant of East Broadway Mall. 88 Palace Restaurant occupies the entire 2nd floor and operates the largest Chinese Restaurant in New York City Chinatown.

10

- Principle Partner of Royal Queens Restaurant in the New World Mall in Flushing, New York. Largest Chinese Restaurant in Queens, New York.

- 88 Palace Restaurant will completely renovate the 2nd Floor restaurant and will reopen as soon as possible. The grand re-opening will create over 80 permanent jobs in the Chinese community.

Long Deng

- President and Founder of New York Mart Group, parent company of iFresh. For over 20 years Long Deng has operated the number one Asian/Chinese Supermarket Chain across the East Coast, from Boston to Miami

- iFresh, will completely renovate the interior of the 1st floor to create the most modern New Asian Supermarket in New York Chinatown, which will create over 100 new permanent jobs for the Chinese community.

Tenancy:

| Floor | Occupancy | Term | Tenant |
|---|---|---|---|
| 2nd Floor | Owner Occupied | 10 yrs. w/ 10 yr. opt | 88 Palace Restaurant |
| 1st Floor | Owner Occupied | 10 yrs. w/ 10 yr. opt | iFresh Modern Asian Supermarket |
| Lower Floor | Current Tenants | 5 yrs. | 88 East Broadway Tenants Non-Profit Organization, Inc. |

88 East Broadway Tenants Non-Profit Organization, Inc. represents the current long-term tenants of the Mall. The New Entity will provide a minimum 5-year lease for "88 East Broadway Tenants Non-Profit Organization, Inc.", and its members.

## ARTICLE V.   TREATMENT OF EXECUTORY CONTRACTS

Each of the executory contracts or unexpired leases to which the Debtor was a party on the Petition Date, to the extent such contracts or leases are executory contracts or unexpired leases, shall, on the Confirmation Date, be rejected unless such contract or lease is the subject of a pending motion to assume or reject or shall have expired or terminated pursuant to its own terms.

11

## **ARTICLE VI: RETENTION OF JURISDICTION**

The Court shall retain jurisdiction of this case pursuant to the provisions of Chapter 11 of the Bankruptcy Code in respect to all matters necessary to consummate the case, including, but not limited to, the following matters:

1. To enable the Debtor to consummate any and all proceedings which may be brought to set aside liens or encumbrances, to determine the validity, extent, amount and enforceability of any lien or to recover any preferential transfer, fraudulent conveyance, or claims for damages to which Debtor may be entitled under applicable provisions of the Bankruptcy Code or other federal, state or local statute or ordinance;

2. To adjudicate and decide all controversies concerning the classification, allowance or reconsideration of allowance of any claim or equity security interests including, without limitation, the liquidation of claims in connection with any proofs of claim scheduled by Debtor as disputed, contingent or un-liquidated;

3. To adjudicate all claims of security or relative to the ownership interest in any of the property of Debtor or any proceeds thereof;

4. To recover all assets and property of Debtor wherever located;

5. To obtain such other Orders as may be necessary or appropriate to implement the provisions of the Plan.

6. To enter an Order and/or Final Decree concluding this case.

7. To hear and determine any and all objections to the allowance, disallowance, determination, liquidation, classification estimation of any claims or any controversies as to the priority and classification of any claims;

8. To hear and determine any and all applications by professionals for compensation and reimbursement of expenses, authorized pursuant to the Plan or Bankruptcy Code;

9. To hear and determine any and all applications related to the rejection or assumption of executory contracts and unexpired leases to which the Debtor is a party, and to hear, determine, and allow any claims resulting therefrom;

10. To enforce and adjudicate the provisions of the Plan subject to the terms of the Plan; to correct any defect, cure any omission, or reconcile any inconsistency in the Plan, the Plan documents or in the Confirmation Order as may be necessary to carry out the purpose and the intent of the Plan;

11. To determine any claim or liability to any governmental unit which may be asserted as a result of the transactions contemplated in the Plan;

12. To hear and determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code;

13. To determine such other matters as may be necessary if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

14. To resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation, enforcement or vacatur of the Plan or any person's obligations incurred in connection with the Plan;

15. To issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any person with consummation or enforcement of the Plan, except as otherwise provided herein;

13

16. To determine any other matters that may arise in connection with the Plan, the Disclosure Statement, the Confirmation Order, the plan documents or any other contract, instrument, release, indenture or other agreement or document created in connection with the foregoing.

### ARTICLE VII: MISCELLANEOUS PROVISIONS

1. This Plan may be altered, amended, or modified only by Debtor before, on, or after the Confirmation Date as provided in 11 U.S.C. 1127.

2. Debtor reserves the right to revoke and withdraw the Plan prior to Confirmation Date.  If Debtor revokes or withdraws the Plan, then the Plan shall be deemed null and void and, in such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against Debtor or any other person or to prejudice in any manner the rights of Debtor or any person in any further proceedings involving Debtor.

3. Debtor will have filed all of its required tax returns and all post-petition taxes have been paid in full.

4. Debtor will be responsible for timely payment of quarterly fees incurred pursuant to 28 U.S.C. section 1930(a)(6) until Debtor's case is closed. After confirmation, Debtor will serve the United States Trustee with a quarterly disbursement report for each quarter (or portion thereof) that the case remains open. The quarterly disbursement report shall be due fifteen (15) days after the end of the calendar quarter. The disbursement financial report shall include the following:

a. A statement of all disbursements made during the course of the quarter, by month, whether or not pursuant to the Plan;

b. A summary, by class, of amounts distributed or property transferred to each recipient under the Plan, and an explanation of the failure to make any distributions or transfers to property under the Plan, if any;

c. A description of any other factors which may materially affect Debtor's ability to complete her obligations under the Plan; and

d. An estimated date when an application for final decree will be filed with the Court (in the case of the final quarterly report, the date the decree was filed).

5. Property of the estate vests in the Debtor on the Confirmation Date of the Plan per 11 U.S.C. § 1141(b).

6. If the Debtor defaults on its obligations to make the payments due under the Plan, the Debtor shall notify the Court and the U.S. Trustee of such default/failure under the Plan by filing a written statement with the Court.

7. <u>Notices</u>. All notices or requests in connection with the Plan shall be in writing and deemed to have been given five (5) Business Days after first-class mailing, one Business Day after sending by overnight courier, or on the first Business Day after facsimile or electronic transmission, addressed to:

    Sarah M. Keenan, Esq.
    Sferrazza & Keenan L.P.
    532 Broad Hollow Road Suite 111
    Melville, New York 11747

Dated: Melville, New York
       April 28, 2023

                  EAST BROADWAY MALL, INC.

                  <u>/s/ Grace Chan</u>
                  Grace Chan , President

                  SFERRAZZA AND KEENAN, PLLC
                  Attorneys for the Debtor
                  and Debtor in Possession

                  By:  <u>/s/ Sarah M. Keenan</u>
                      Sarah M. Keenan
                      532 Broad Hollow Road, Suite 111
                      Melville, NY 11747
                      (631) 753-4400