WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE, REGION 2
U.S. Department of Justice
Office of the United States Trustee
Alexander Hamilton Custom House
One Bowling Green, Room 534
New York, NY 10004
Tel. (212) 510-0500
By:     Mark Bruh, Esq.
          Trial Attorney

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
                                                                              :
In re                                                                     :         Chapter 11
                                                                              :
EAST BROADWAY MALL, INC.,                            :
                                                                              :         Case No. 19-12280 (DSJ)
                                                                              :
                              Debtor.                               :
-------------------------------------------------------X

### OBJECTION OF THE UNITED STATES TRUSTEE TO BANK OF HOPE'S THIRD AMENDED DISCLOSURE STATEMENT AND THIRD AMENDED CHAPTER 11 PLAN

TO THE HONORABLE DAVID S. JONES,
UNITED STATES BANKRUPTCY JUDGE:

William K. Harrington, the United States Trustee for Region 2 (the "**United States Trustee**"), by and through the undersigned counsel, hereby submits this objection (the "**Objection**") to the Third Amended Disclosure Statement (the "**Disclosure Statement**") and proposed Third Amended Chapter 11 Plan of Liquidation (the "**Plan**") (the Disclosure Statement and Plan are collectively referred to as the "**Third Disclosure Statement and Plan**") filed by secured creditor, Bank of Hope ("**BOH**"), seeking certain relief under title 11 of the United States Code (the "**Bankruptcy Code**"), the Federal Rules of Bankruptcy Procedure, and the

1

Local Rules for the Southern District of New York.[1] In support of the Objection, the United States Trustee respectfully states:

## INTRODUCTION

The Plan is premised on a non-binding term sheet (the "**Term Sheet**")[2] negotiated between and among BOH, the City of New York (the "**City**"), and Broadway East Group LLC ("**BEG**") or such other Approved New Tenant as may be agreed to by BOH and the City as disclosed in the Plan Supplement before the Confirmation Hearing. BEG is the proposed assignee of the Debtor's interest in a lease (the "**Lease**") for land beneath the Manhattan Bridge, originally designated as 59-77 Division Street, Manhattan, and later re-designated as 88 East Broadway.

While the Third Disclosure Statement and Plan provides more information concerning the proposed agreement between and among BOH, the City, and BEG than the First Statement and Plan and the Second Statement and Plan, it is still unclear as to when and how administrative, priority, and general unsecured claims will be paid under the Plan. Additionally, with respect to administrative claims, the United States Trustee objects to any payments to BOH's attorneys that fail to comply with Section 503(b) of the Bankruptcy Code. And, with respect to priority tax claims, the Disclosure Statement is unclear as to how tax claims will be paid the total value of their claims within five years of the commencement of this case. Although, the United States Trustee understands the Debtor's financial condition limits its

---

[1] Capitalized terms not otherwise defined herein shall have the same meaning as set forth in the Third Disclosure Statement and Plan.

[2] A copy of the Term Sheet is annexed to the Disclosure Statement as Exhibit "B."

options, the Third Disclosure Statement and Plan should address how, if at all, the Plan complies with 11 U.S.C. § 1129(a)(4), (9)(C) and (11).

Furthermore, the United States Trustee also objects to the broad exculpation clause that (a) protects non-fiduciaries, and (b) does not contain a government carve-out.

Still further, the United States Trustee objects to the provision of the Plan that a claim filed after the Bar Date is "deemed disallowed . . . without any further notice to or action, or approval of the Bankruptcy Court"; a claim filed after the Bar Date should be deemed a "late-filed" claim.

Finally, the Third Disclosure Statement and Plan contain contradictory provisions regarding the responsible party for filing post effective date reports and payment of United States Trustee's quarterly fees.

For these reasons, as detailed more fully below, the United States Trustee respectfully requests that the Court decline to give final approval of the Disclosure Statement and deny the Plan unless modified to address these issues.

## BACKGROUND

1. On July 12, 2019 (the "**Petition Date**"), the Debtor filed for protection under Chapter 11 of the Bankruptcy Code. ECF Doc. No. 1.

2. According to the Debtor's Bankruptcy Schedules, the Debtor's primary asset is the Lease. Bankruptcy Schedule A/B, ECF No. 1. The Lease is listed with a value of $27,000,000. *Id*. The Lease is encumbered by secured claims in the aggregate amount of $5,952,617.[3] Bankruptcy Schedule D, ECF No. 1.

---

[3] On October 26, 2022, the City filed a claim against the Debtor, assigned Claim No. 7 by the Clerk of the Court, in which it alleged that it is owed an amount no less than $16,504,196.79 in connection with the Lease. Also, on October 26, 2022, BOH filed a claim against the Debtor, assigned Claim No. 8 by the Clerk of the Court, in which it alleged that it is owed an amount no less than $5,851.940 in connection with the Lease.

3

3. The Debtor's exclusive period to file a plan terminated on November 12, 2019.

4. On January 14, 2022, the United States Trustee filed a Motion to Convert this Chapter 11 Case to a Case Under Chapter 7 (the "**Conversion Motion**"). ECF No. 76.

5. On October 17, 2022, the Court entered an Order Denying the Motion to Convert Case to Chapter 7 (the "**Order**"). ECF No. 130. Pursuant to the Order, the United States Trustee is authorized to reinstate the Conversion Motion by filing a Notice of Reinstatement.[4] *Id*.

6. On November 18, 2022, the Court entered an order which provided for, among other things, a deadline of December 5, 2022 for BOH to file a motion for approval of a disclosure statement in connection with its plan. ECF No. 131.

7. On December 5, 2022, BOH filed a Motion for Entry of An Order Approving (I) The Disclosure Statement for Plan of Liquidation; (II) Solicitation of Votes to Accept or Reject Plan of Liquidation and Notice Procedures; (III) Forms of Ballots and Notices in Connection therewith; and (IV) Certain Dates with Respect Thereto (the "**First Statement and Plan**"). ECF No. 132.

8. On January 5, 2023, the United States Trustee filed an Objection to the First Statement and Plan. ECF No.133

9. On February 9, 2023, BOH filed its Second Amended Disclosure Statement for Chapter 11 Plan of Liquidation for East Broadway Mall (the "**Second Statement and Plan**"). ECF No. 139.

10. On March 23, 2023, the Court entered an Order Denying the Motion of Bank of Hope for Approval of Disclosure Statement. ECF No. 148.

11. On April 28, 2023, BOH filed its Third Disclosure Statement and Plan. ECF No.

---

[4] Pursuant to the Court's March 23, 2023 Order [ECF No. 148], the time by which the United States Trustee is authorized to reinstate the Conversion Motion was extended to May 5, 2023.

4

153.[5]

12. On May 5, 2023, the United States Trustee filed a Notice to Reinstate the Conversion Motion, together with a Supplemental Statement. ECF No. 158.

**Plan Funding and Proposed Payments Regarding Administrative and Tax Claims**

13. The funding of the Plan is entirely dependent upon an agreement with BEG or an Approved New Tenant. The Plan does not provide for an alternative in the event that the City and BOH fail to designate an Approved New Tenant in a timely fashion.

14. The proposed agreement with BEG provides for, among other things, payment by BEG to BOH in the amount of $2 million to be made upon Agreement Effective Date, and payment to the City in the amount of $2 million, to be made as agreed between the City and New Tenant. Disclosure Statement, Art. IIIA, pg. 10 of 35, ECF No. 153-2. The Agreement Effective Date is an undefined term in the Disclosure Statement. According to the Term Sheet, the Effective Date of Agreement shall be: "the date upon which said Agreement and all exhibits thereto have been fully executed by the parties or their counsel of record . . . and all approvals as required below have been obtained." Term Sheet, Exhibit B, pg. 2 of 6, ECF No. 153-3. There is no date certain by which BEG is required to remit the aforementioned payments totaling $4 million, nor a date when creditors will receive payments under the Plan.

15. Additionally, according to the Disclosure Statement:

- BOH, the City, and the Approved New Tenant [BEG] ***will equally share*** the Administrative Expenses incurred to consummate the Plan, including legal fees of BOH (emphasis added).

- BOH, the City, and the Approved New Tenant [BEG] ***will equally share*** responsibility for the payment of allowed Administrative Expenses, Allowed Priority Claims, and Allowed Priority Claims, including governmental tax claims (emphasis added).

---

[5] On the same date, the Debtor also filed a disclosure statement and plan [ECF Nos. 154 and 155], which will be the subject of a separate objection by the United States Trustee.

5

Disclosure Statement, Art. IIIA, pg. 10 of 35, ECF No. 153-2

16.       Paragraph C of the Term Sheet states the following:

> Regarding the Administrative Expenses to consummate the Plan, and allowed Administrative Expenses, Allowed Priority Claims, and Allowed Priority Unsecured Claims, Tenant [BEG] *agrees to pay or cover a one third share*. Tenant [BEG] acknowledges and agrees that this share shall include tax claims and other NYC priority clams (emphasis added).

Term Sheet, Exhibit B, pg. 5 of 6, ECF No. 153-3.

17.       There is no representation by the City in any document filed with the Court that it will share equally with respect any payments concerning administrative and tax claims. Upon information and belief, counsel for the City has previously stated that the City <u>will not</u> share in any payments with respect to administrative and tax claims.

**<u>Exculpation Provision</u>**

18.       Plan, Article VIII.B. contains the following provision concerning exculpation:

> B. *Exculpation.*
> Provided the significant contributions being made by BOH and the City under the Plan happen, including, but not limited to (i) the City's agreement to permit the Debtor's remaining interest in the Lease to be assumed and assigned to the Approved New Tenant notwithstanding that the defaults will not be cured and a waiver of its Claim against the Estate as provided herein and (ii) BOH's agreement to carve out a portion of the Distribution otherwise payable to BOH on account of its Allowed Secured Claim for the benefit of Holders of Administrative and Unsecured Claims under the Plan, neither the City, BOH, nor any of their respective officers, directors, employees, advisors, attorneys, accountants, consultants or agents who have been actually involved in the bankruptcy case and the Plan solicitation and administration process shall have or incur any liability for or to any Holder of a Claim or Equity Interest for any act or omission between the Petition Date and the Effective Date in connection with, or arising out of, the administration of the Chapter 11 Case, pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for actual fraud, willful misconduct, gross negligence, or legal malpractice, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan; provided, however, that the exculpation set forth in this

6

> section shall extend as far as, but not further than, permitted under applicable law.

Plan, Art. VIII.B., pg. 26 of 33, ECF No. 153-2.

## OBJECTION

### A. The Disclosure Statement Does Not Provide Adequate Information

Section 1125 of the Bankruptcy Code provides that a disclosure statement must contain "adequate information" describing a confirmable plan. 11 U.S.C. § 1125. The Bankruptcy Code defines "adequate information" as:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records . . . that would enable a such a hypothetical reasonable investor . . . to make an informed judgment about the plan . . . .

11 U.S.C. § 1125(a)(1); *see also Momentum Mfg. Corp. v. Employee Creditors Comm. (In re Momentum Mfg. Corp.)*, 25 F.3d 1132, 1136 (2d Cir. 1994); *In re Adelphia Commc'ns Corp.*, 352 B.R. 592, 596 (Bankr. S.D.N.Y. 2006); *Kunica v. St. Jean Fin., Inc.*, 233 B.R. 46, 54 (S.D.N.Y. 1999).

To be approved, a disclosure statement must include sufficient information to apprise creditors of the risks and financial consequences of the proposed plan. *See In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987) ("substantial financial information with respect to the ramifications of any proposed plan will have to be provided to, and digested by, the creditors and other parties in interest in order to arrive at an informed decision concerning the acceptance or rejection of a proposed plan"). Although the adequacy of the disclosure statement is determined on a case-by-case basis, the disclosure statement must "contain simple and clear language delineating the consequences of the proposed plan on [creditors'] claims and the

7

possible [Bankruptcy Code] alternatives . . . ." *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 981 (Bankr. N.D.N.Y. 1988).

Section 1125 of the Bankruptcy Code is biased towards more disclosure rather than less. *See In re Crowthers McCall Pattern, Inc.*, 120 B.R. 279, 300 (Bankr. S.D.N.Y. 1990). The "adequate information" requirement merely establishes a floor, and not a ceiling, for disclosure to voting creditors. Adelphia, 352 B.R. at 596 (citing *Century Glove, Inc. v. First American Bank of New York*, 860 F.2d 94, 100 (3d Cir. 1988)). Once the "adequate disclosure" floor is satisfied, additional information can go into a disclosure statement too, at least so long as the additional information is accurate and its inclusion is not misleading. *Adelphia*, 352 B.R. at 596. The purpose of the disclosure statement is to give creditors enough information so that they can make an informed choice of whether to approve or reject the debtor's plan. *In re Duratech Indus.*, 241 B.R. 291, 298 (Bankr. E.D.N.Y. 1999), *aff'd*, 241 B.R. 283 (E.D.N.Y. 1999). The disclosure statement must inform the average creditor what it will receive and when and what contingencies might intervene. *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991).

    B. **The Third Disclosure Statement and Plan Need to More Thoroughly Address When the Debtor Will Receive Payment from BEG and When and How Creditors Will Be Paid**

As an initial matter, the Third Disclosure Statement and Plan are unclear as to (a) when the Debtor will receive the funds from BEG, which will be in an amount no less than $4 million, (b) when payments will be made to creditors under the Plan, and (c) the date by which BEG will enter into the Lease. Additionally, the Plan does not provide an alternative in the event that BOH and the City do not agree to assign the Lease to BEG or an Approved New Tenant.

Furthermore, according to the Third Disclosure Statement and Plan, the payments in connection with administrative and tax claims will be shared equally between and among BOH, the City and BEG. *See* Statement, Art. IIIA, pg. 10 of 35, ECF No. 153-2. If, however, the City

8

is not contributing any funds with respect to payments in connection with administrative and tax claims, then BOH must pay two-thirds of the claim amounts, *i.e.*, 67%, because according to the Term Sheet, BEG will only pay "a one third share," *i.e.*, 33%. *Id.*, Exhibit B, pg. 5 of 6, ECF No. 153-3. Accordingly, BOH must adequately explain who is paying these creditors and what is the percentage that BOH, the City and BEG are required to pay under BOH's Plan.

The Disclosure Statement's failure to provide adequate information concerning the receipt of the funds in excess of $4 million and payments of administrative, priority, and general unsecured claims is fatal to its approval. Stakeholders cannot make an informed decision regarding the Plan if they are not given information, or are given incomplete, conclusory, or deficient information, about critical matters, including those described above. Accordingly, the Disclosure Statement should not be approved.

> The Plan Cannot Be Confirmed Because Any Payment to BOH's
> Attorneys Must Comply with Section 503(b) of the Bankruptcy Code

The Disclosure Statement provides for the payment of BOH's legal fees in contravention of 11 U.S.C. § 503(b). *See* Statement, Art. IIIA, pg. 10 of 35, ECF No. 153-2. Creditors seeking reimbursement for payments made to their respective professionals must move for such reimbursement under Section 503 of the Bankruptcy Code. *In re Lehman Bros. Holdings, Inc.*, 508 B.R. 283, 289 (S.D.N.Y. 2014) (Section 503(b) is the exclusive avenue for payment of administrative expenses).

In *Lehman*, the District Court, in citing and following *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065 (2012), held that the specific provisions governing creditor reimbursement provided for in Section 503(b), with a few specific exceptions, is the exclusive avenue for the payment of administrative expenses and that the federal scheme cannot remain comprehensive if interested parties are free to "tweak" the law to fit their preferences. *Id.* at 294

9

(quotation in original). Here, the Disclosure Statement's provision for the payment of BOH's fees outside the Court's purview conflicts with the statutory standards and procedures for payment of administrative expenses because it authorizes certain creditors to be paid administrative expenses without the necessity of filing an application and meeting its evidentiary burden for payment under Section 503(b). *Id.* The Disclosure Statement cannot "short circuit the process by effectively deeming an entity to have made a substantial contribution" without an application and a determination by the Court. *Id*.

In addition, the total amount of fees and expenses at issue are unknown and BOH, the City and BEG have apparently, and inappropriately, arrogated to themselves the exclusive right to review these undisclosed fees and expenses for reasonableness. In so doing, they seek to usurp the Court's authority and independent duty to review and approve the fee requests under the appropriate statutory standards. *See In re Keene Corp.*, 205 B.R. 690, 695 (Bankr. S.D.N.Y. 1997) (professionals cannot settle fee requests among themselves because it undermines the duties of the judicial and executive branches to review bankruptcy fees).

The Court has an independent duty to review fee applications and serves a vitally important gate-keeping role in (i) enforcing the Bankruptcy Code's requirements that only reasonable fees be approved and paid and (ii) maintaining public confidence in the bankruptcy system itself. *In re Temple Ret. Cmty., Inc.*, 97 B.R. 333, 337 (Bankr. W.D. Tex. 1989); *see also In re Child World, Inc.*, 185 B.R. 14, 17 (Bankr. S.D.N.Y. 1995) ("the judiciary should retain control of fees, given the sensitivities they generate and the need to promote public confidence in the system."). Lastly, other parties in interest, including the United States Trustee, have the right under the Bankruptcy Code to review and object to fee applications. *McGuirl v. White*, 86 F.3d 1232, 1246 (D.C. Cir. 1996) ("many parties, including the U.S. Trustee and creditors . . . have the right to object to fee applications."); 28 U.S.C. § 586(a)(3)(A).

Moreover, section 1129(a)(4) of the Bankruptcy Code requires that the Court exercise substantive control over fees and costs related to the Chapter 11 plan:

> Any payment made or to be made by the proponent, by the debtor, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable.

11 U.S.C. §1129(a)(4).

Section 1129(a)(4) is designed to "insure compliance with the policies of the Code that (1) the bankruptcy court should police the awarding of fees in title 11 cases and (2) holders of claims and interests should have the benefit of such information as might affect the claimants' decision to accept or reject the plan." *See In re TCI 2 Holdings, LLC*, 428 B.R. 117, 145-46 (Bankr. D.N.J. 2010) (internal quotation omitted) ("While a strong argument might be made that payments that are not made to fiduciaries and that do not deplete the bankruptcy estate need not be subject to court approval, this is simply not the decision that Congress has chosen to make.").

Accordingly, BOH's attorneys' fees and expenses cannot be approved unless and until its unretained professional files an application with the Court and demonstrates to the Court's satisfaction that it made a "substantial contribution" in the case pursuant to Section 503(b)(3)(D). *See generally, Lehman*. To the degree that a "substantial contribution" is proven, then the standards as set forth in Section 330 of the Bankruptcy Code apply in determining the extent the fees and expenses of a professional are reimbursable under Section 503(b)(4). *See, e.g., In re Wind N' Wave*, 509 F.3d 938, 944 (9th Cir. 2007); *In re Celotex Corp.*, 227 F.3d 1336, 1341 (11th Cir. 2000).

### *The Disclosure Statement Needs to More Thoroughly Address Section 1129(a)(9)(C)*

According to BOH's Plan, class 3 priority tax claims total $679,738.34. Plan,

11

Art. III.Ci(3), pgs. 11-12 of 35, ECF No. 153-1. Given the uncertainty in the Disclosure statement regarding who is responsible for the payment of tax claims, this issue cannot be overlooked when trying to evaluate the adequacy of the Disclosure Statement because priority tax claims, then, may never be paid the total value of their claims within five years of the commencement of this case. Accordingly, the Plan may not comply with section 1129(a)(9)(C), which requires, among other things, priority tax claims to be paid the total value of their claim, as of the effective date, over a period not exceeding 5 years after the commencement of the case.[6] The Disclosure Statement should be further amended to address how the Plan complies with section 1129(a)(9)(C).

### C. The Plan Cannot Be Confirmed Under Section 1129 of the Bankruptcy Code

Confirmation under section 1129(a)(11) requires that:

> Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

11 U.S.C. § 1129(a)(11).

The proponent of a proposed plan bears the burden of proving essential elements of confirmation by a preponderance of the evidence. *See In re Young Broad., Inc.*, 430 B.R. 99, 128 (Bankr. S.D.N.Y. 2010). The feasibility standard as set forth in section 1129(a)(11) requires a court to determine whether "a plan is workable and has a reasonable likelihood of success." *In re WorldCom, Inc.*, No. 02-13533, 2003 Bankr. LEXIS 1401, at *168 (Bankr. S.D.N.Y. 2003); *In re The Leslie Fay Cos.*, 207 B.R. 764, 788 (Bankr. S.D.N.Y. 1997). "The purpose of the feasibility test is to prevent confirmation of visionary schemes which promise creditors and equity holders more under a proposed plan than the debtor can possibly attain after confirmation . . . [W]here

---

[6] The Debtor commenced this case on July 12, 2019; thus, payments to class 3 priority claimants must be completed in approximately 12 months.

the financial realities do not support the proposed plan's projections or where proposed assumptions are unreasonable, confirmation of the plan should be denied." *In re Young Broad., Inc.*, 430 B.R. 99, 128-29 (Bankr. S.D.N.Y. 2010) (internal quotations omitted); *see also In re Prudential Energy Co.*, 58 B.R. 857, 862 (Bankr. S.D.N.Y. 1986) (a plan based on impractical or visionary expectations cannot be confirmed).

It is impossible to evaluate the feasibility of the Plan because the final terms on which it is premised, *i.e.*, the Lease with BEG has neither been finalized, nor has been made available for review. The only document filed with the Court is the non-binding Term Sheet. Additionally, the Plan is unclear regarding payments in connection with administrative and tax claims - - and the proposed payment to BOH's attorneys is in contravention of the Bankruptcy Code. Yet, in the face of these significant hurdles, BOH takes the position that the Plan is feasible. If BOH wants to receive the benefits of this bankruptcy proceeding, then it must abide by the same obligations and disclosure requirements for all parties in bankruptcy.

### D. Disclosure Statement Should Not Be Approved Because the Exculpation Provision Is Overly Broad

The Debtor's exculpation provision in the Plan is inappropriate because the list of exculpated parties is overly broad and it exculpates parties for actions beyond the scope of 11 U.S.C. § 1125(e).[7] Accordingly, BOH should revise its exculpation provision so that it is consistent with 11 U.S.C. § 1125(e); otherwise, the United States Trustee objects to the exculpation provision as set out below.

The list of exculpated parties include:

> . . . the City, BOH, [ ] any of their respective officers, directors, employees, advisors, attorneys, accountants, consultants or agents who

---

[7] The arguments made and positions taken by the United States Trustee in this pleading are not an indication or waiver of his positions on relevant issues in other or future cases, particularly given the pending outcome of the appeal in *In re Voyager Holdings, Inc.*, No. 23 CIV. 02171 (JHR), 2023 WL 2731737 (S.D.N.Y. Apr. 1, 2023).

> have been actually involved in the bankruptcy case and the Plan
> solicitation and administration process. . . .

Plan, Article VIII. B., pg. 26 of 35, ECF No. 153-2.

Put another way, the list of exculpated parties includes many persons who cannot be classified as fiduciaries to the estate. A proper exculpation is a protection of court-supervised fiduciaries. *In re Aegean Marine Petroleum Network, Inc*. 599 B.R. 717, 721 (Bankr. S.D.N.Y. 2019). The list of exculpated parties includes directors, officers, employees, etc., of BOH and the City, which do not appear to be fiduciaries of the estate. *Roni LLC v. Arfa*, 74 A.D.3d 442, 444 (2010), *aff'd*, 18 N.Y.3d 846 (2011) ("[A] conventional business relationship between parties dealing at arm's length does not give rise to fiduciary duties."). Moreover, the range of exculpated parties is so broad that it likely includes parties who performed no duties essential, necessary, or at all, related to the Plan.

Additionally, such exculpation not only covers specific transactions approved by the Court, but also appears to include the "administration process" of the chapter 11 case. As stated, Section 1125(e) is the only section of the Bankruptcy Code that provides for exculpation. *See* 11 U.S.C. § 1125(e) (providing for limitation of liability in connection with certain good faith solicitation and plan participation efforts). There is no Bankruptcy Code provision which supports exculpating all these parties in a manner as broadly as this exculpation provision provides.

Furthermore, in addition to excepting actual fraud, willful misconduct, or gross negligence, the exculpation provision should cite to the appropriate section of the New York Rules of Professional Conduct, *i.e.*, N.Y. Comp. Codes R. & Res. Tit. 22 § 1200.8 Rule 1.8(h)(1) regarding legal malpractice and should include criminal acts along with gross negligence, actual

fraud, and willful misconduct. Moreover, the exculpation provision does not currently provide for a government carve-out.

The United States Trustee also objects to the extent the exculpation shields exculpated parties who rely upon the advice of counsel. While such reliance may be raised as an affirmative defense, it should not serve as an absolute bar against liability. The exculpated parties should have a claim against their legal advisors for improper or mistaken advice, and the exculpation should not extend any protection for such advice.

Accordingly, the United States Trustee respectfully requests that the Court curtail the list of exculpated parties and the scope of the exculpations to the activities connected to the confirmation of a plan, as contemplated by 11 U.S.C. § 1125(e), and revise the provision as suggested above.

E. **Although Claims Filed After the Bar Date May Be Deemed Late-Filed Claims and Not Paid Under the Plan, They Should Not Be Disallowed**

Section 502(b)(9) of the Bankruptcy Code provides, in part, that a tardily filed claim *may* be disallowed, but not under all circumstances. 11 U.S.C. § 502(b)(9). The Plan, on the other hand, provides that, a claim filed after the Bar Date is "deemed disallowed . . . without any further notice to or action, or approval of the Bankruptcy Court." Plan, Art. VII.A., pg. 25 of 33, ECF No. 153-2. This provision should be either stricken or revised to provide that claims filed after the Bar Date shall be deemed late-filed claims and not entitled to payment under the Plan.

F. **The Disclosure Statement and Plan Are Unclear As To Who Is the Responsible Party Regarding Post Effective Date Reporting and Payment Of United States Trustee's Quarterly Fees**

The Disclosure Statement contains the following provisions regarding United States Trustee quarterly fees and reporting:

15

19-12280-dsj    Doc 168    Filed 06/02/23    Entered 06/02/23 15:31:04    Main Document
Pg 16 of 17

> All fees due and payable pursuant to section 1930 of Title 28 of the United States Code before the Effective Date shall be paid by the Debtor. On and after the Effective Date, to the extent applicable, the Plan Administrator shall pay any and all such fees when due and payable.

Disclosure Statement, Art. III.B.ii, pg. 10 of 35, ECF No. 153-1.

> 11. **Reporting Duties.** The Plan Administrator shall be responsible for filing informational returns on behalf of Debtor and paying any tax liability of Debtor. The Plan Administrator shall file (or cause to be filed) any other statements, returns or disclosures relating to Debtor that are required by any governmental unit or applicable law.

*Id.*, Art. III.D.iii, pg. 18 of 35.

Notwithstanding the above, the Plan muddles the issue by including the following contradictory provisions:

> *B. Statutory Fees*
> All fees due and payable pursuant to section 1930 of Title 28 of the United States Code before the Effective Date shall be paid by the Debtor. On and after the Effective Date, to the extent applicable, the Plan Administrator shall pay any and all such fees when due and payable.

Plan, Art. II., pg. 141 of 33, ECF No. 153-2.

> **Post-Effective Date Fees; Final Decree.** Notwithstanding anything to the contrary contained in the Plan, all fees payable through the Effective Date pursuant to 28 U.S.C. § 1930 shall be paid on the Effective Date, or as soon as practicable thereafter. The Debtor is responsible for paying any post-Effective Date fees under 28 U.S.C. § 1930(a)(6) and filing post-confirmation reports until the Bankruptcy Court enters a Final Decree. . . .

*Id.*, Art. XII., pg. 31 of 33.

It is incumbent upon BOH to revise the Third Disclosure Statement and Plan to clarify who is filing post effective date reports and paying United States Trustee quarterly fees.

## **RESERVATION OF RIGHTS**

The United States Trustee reserves all his rights, including his right to object to the Plan on any basis, in addition to those discussed in this Objection.

16

## **CONCLUSION**

For the reasons stated above, the United States Trustee submits that the Disclosure Statement fails to provide adequate information and that the Plan is not feasible.

WHEREFORE, the United States Trustee requests that (1) approval of the Disclosure Statement be denied; (2) approval of BOH's Plan be denied; and (3) such other and further relief as the Court deems appropriate.

Dated: New York, New York
      June 2, 2023

                                Respectfully Submitted,

                                WILLIAM K. HARRINGTON
                                UNITED STATES TRUSTEE, REGION 2

By:   /s/Mark Bruh
       Mark Bruh
       Trial Attorney
       Office of the United States Trustee
       One Bowling Green, Room 534
       New York, NY 10004
       Tel. (212) 510-0500