<u>**EXHIBIT A:**</u>

**THIRD AMENDED CHAPTER 11 PLAN OF LIQUIDATION FOR EAST BROADWAY MALL**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
In re:                                                      Chapter 11

EAST BROADWAY MALL,                         Case No. 19-12280 -DSJ

                             Debtor.
----------------------------------------------------------X


## THIRD AMENDED CHAPTER 11 PLAN OF LIQUIDATION FOR EAST BROADWAY MALL


WINDELS MARX LANE & MITTENDORF, LLP
*Attorneys for Bank of Hope*
156 West 56th Street
New York, New York 10019
Telephone (212) 237-1000
Attorney Appearing: James M. Sullivan (jsullivan@windelsmarx.com)
                          Robert J. Malatak (rmalatak@windelsmarx.com)


Dated April 28, 2023

# TABLE OF CONTENTS

**ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW**...................................................................1

    A.    Defined Terms...........................................................................1
    B.    Rules of Interpretation............................................................9
    C.    Computation of Time................................................................9
    D.    Governing Law........................................................................10

**ARTICLE II. ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS**    **10**

    A.    Administrative Claims............................................................10
    B.    Statutory Fees.........................................................................10
    C.    Treatment of Unclassified Claims...........................................10

**ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**......................................................................................**11**

    A.    Classification of Claims and Interests......................................11
    B.    Treatment of Claims and Interests..........................................12
    C.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code ................................................................14

**ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN**.......................**14**

    A.    Plan Administrator..................................................................14
    B.    Directors/Officers/Equity/Assets on the Effective Date...............15
    C.    Duties and Powers of the Plan Administrator............................16
    D.    Closing of Debtor's Chapter 11 Case.......................................18
    E.    Section 1146 Exemption.........................................................18

**ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**.....................................................................................**18**

    A.    Assumption and Rejection of Executory Contracts and Unexpired Leases.....................................................................................18

**ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS**.............................**19**

    A.    Timing and Calculation of Amounts to Be Distributed.................19
    B.    Disbursing Agent....................................................................20
    C.    Method of Distributions Under the Plan...................................20

**ARTICLE VII. PROCEDURES FOR RESOLVING DISPUTED CLAIMS**................**20**

    A.    Disallowance of Claims..........................................................20
    B.    Objections..............................................................................21
    C.    No Distributions Pending Allowance.......................................21

D.    Estimation of Claims…………………………………………………21
E.    Resolution of Disputed Claims…………………………………….22

**ARTICLE VIII. SETTLEMENT, RELEASE, AND RELATED PROVISIONS………….22**

A.    Compromise and Settlement……………………………………….22
B.    Exculpation……………………………………………………….22
C.    Mutual Releases………………………………………………….22
D.    Releases of Released Parties……………………………………23
E.    Injunction………………………………………………………23

**ARTICLE IX. CONDITIONS PRECEDENT TO EFFECTIVENESS OF THE PLAN…..24**

A.    Conditions Precedent to the Confirmation of the Plan…………………24
B.    Conditions Precedent to Effectiveness of the Plan………...……………24
C.    Waiver of Conditions…………………………………………………24
D.    Effect of Non-Occurrence of the Effective Date…………………….…25

**ARTICLE X. MODIFICATION, REVOCATION OR WITHDRAWAL OF THE
PLAN………………………………………………………………………………25**

A.    Modification and Amendments……………………………...………25
B.    Effect of Confirmation on Modifications………………………….25
C.    Revocation or Withdrawal of Plan………………………………….25

**ARTICLE XI. RETENTION OF JURISDICTION…………………………………26**

**ARTICLE XII. MISCELLANEOUS PROVISIONS………………………...………27**

## INTRODUCTION

Bank of Hope, a Secured creditor for the Chapter 11 Estate of the above-captioned debtor, East Broadway Mall, proposes this plan for liquidating and distributing the assets of East Broadway Mall, Inc. pursuant to chapter 11 of the Bankruptcy Code.

Holders of Claims and Interests should refer to the Disclosure Statement for a discussion of the Debtor's history, business, assets, and financial information as well as a summary and description of this Plan and certain related matters.

**ALL HOLDERS OF CLAIMS AND INTERESTS, TO THE EXTENT APPLICABLE, ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.**

Your rights may be affected by this Plan. You should consider discussing this document with an attorney.

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW

*A.    Defined Terms*

The following terms have the respective meanings specified below, except as expressly provided in other sections of the Plan, unless the context otherwise requires (such meanings to be equally applicable to both the singular and plural, and masculine and feminine, forms of the terms defined). Any capitalized term used in the Plan but not defined herein that is used in the Bankruptcy Code or Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or Bankruptcy Rules.

1.    **Administrative Claims Bar Dates:** Unless otherwise defined, the First Administrative Claims Bar Date together with the Second Administrative Claims Bar Date and the Final Bar Date.

2.    **Administrative Claimant**: Any person entitled to payment of an Administrative Expense.

3.    **Administrative Expense:** Any cost or expense of administration of the Chapter 11 case entitled to priority under Section 507(a)(2) of the Code and allowed under Section 503(b) of the Code, including without limitation, any actual and necessary expenses of preserving the Debtor's estate, any actual and necessary expenses incurred following the filing of the bankruptcy petition by the Debtor-in-Possession, allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, and any fees or

charges assessed against any of the Debtor's estates under Chapter 123, Title 28, United States Code.

4.      **Administrative Tax Claim**: Any tax incurred pursuant to Section 503(b)(1)(B) of the Code.

5.      **Affiliate:** The meaning set forth in section 101(2) of the Bankruptcy Code.

6.      **Allowed Claim**: Any claim against the Debtor pursuant to Section 502 of the Code to the extent that: (a) a Proof of Claim was either timely filed or was filed late with leave of the Bankruptcy Court or without objection by the Debtor or another party in interest, and (b) as to which either (i) a party in interest, including the Debtor, does not timely file an objection, or (ii) is allowed by a Final Order.

7.      **Allowed Priority Claim**: A Priority Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

8.      **Allowed Priority Tax Claim**: A Priority Tax Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

9.      **Allowed Secured Claim**: Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code.

10.      **Allowed Unsecured Claim**: An Unsecured Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

11.      **Approved New Tenant:** The Approved New Tenant is Broadway East Group, LLC, the assignee of the Debtor's interest in the Lease pursuant to this Plan, or such other new tenant as may be jointly designated by the City and BOH.

12.      **Ballot:** The ballot upon which a Holder of an Impaired Claim or Interest entitled to vote on the Plan shall, among other things, indicate its acceptance or rejection of the Plan in accordance with the procedures approved by the Bankruptcy Court.

13.      **Bankruptcy Code or Code**: The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

14.    **Bankruptcy Court**: The United States Bankruptcy Court for the Southern District of New York.

15.    **Bankruptcy Rules**: The Federal Rules of Bankruptcy Procedure.

16.    **Bank or BOH:** Bank or Bank of Hope, a Secured Creditor of Debtor.

17.    **BOH Claim**: The BOH Claim consists of the BOH Pre-Petition Claim and the BOH Post-Petition Claim.

18.    **BOH Payment:** The lump sum payment from the Approved New Tenant to BOH in the amount of $2,000,000 to be made upon the Effective Date.

19.    **BOH Pre-Petition Claim:** BOH's claim against Debtor for Debtor's indebtedness to BOH under the Loan Documents, which was no less than $5,851,940.00, including, without limitation, $5,490.691.13 of principal, $129,847.56 of interest, and $231,401.31 of attorneys' fees, together with continuing interests, costs, and expenses.

20.    **BOH Post-Petition Claim:** The BOH Claim for Debtor's failure to make numerous payments due under the Loan Documents and the Cash Collateral Order during the post-petition period, plus the Bank's super-priority administrative expense claim under Bankruptcy Code Section 507(b) and the Cash Collateral Order, or as provided in any other order that may be entered by the Bankruptcy Court.

21.    **Cash**: Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

22.    **Cash Collateral Order:** The Order dated November 13, 2019 [Dkt. No. 29], which sets forth the terms under which, among other things, the Debtor was authorized to use BOH's cash collateral, including the granting of adequate protection to BOH in connection with the BOH Pre-Petition Claim.

23.    **City:** The City of New York as Creditor of Debtor, and as Landlord under the Lease.

24.    **City Claim:** The City Claim includes both the City Pre-Petition Claim and the City Post-Petition Claim, collectively.

25.    **City Payment:** The lump sum payment from the Approved New Tenant to the City of $2,000,000, to be made as agreed between the City and Approved New Tenant.

26.    **City Pre-Petition Claim**: The City's claim against Debtor that the Debtor owed a substantial amount to the City under the Lease, consisting of Base Rent, PILOT, Late Charges, plus Water Charges and Percentage Rent.

27.    **City Post-Petition Claim**: The City's claim for post-petition amounts due under the Lease and the Cash Collateral Order.

28.    **Claimant:** A Person or entity that holds a Claim against the Debtor that arose at the time of or before the Petition Date, or that has a Claim against the Estate of a kind specified in Bankruptcy Code §§ 348(d), 502(f), 502(g), 502(h), or 502(i).

29.    **Causes of Action:** Any and all claims, causes of action, and rights of the Debtor, including those identified in the Plan Supplement.

30.    **Chapter 11 Case**: This case under chapter 11 of the Bankruptcy Code in which East Broadway Mall is the Debtor-in-Possession.

31.    **Claim**: Any "right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5).

32.    **Class**: A category of claims or interests which are substantially similar to the other claims or interests in such class.

33.    **Committee**: Any committee of creditors appointed by the United States Trustee in the Chapter 11 Case pursuant to Section 1102 of the Bankruptcy Code.

34.    **Confirmation**: The entry by the Bankruptcy Court of an order confirming this Plan.

35.    **Confirmation Date or Plan Confirmation Date:** The Date upon which the Bankruptcy Court shall enter the Confirmation Order; provided however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

36.    **Confirmation Hearing or Plan Confirmation Hearing Date**: The hearing to be held on July 25, 2023 to consider confirmation of the Plan, or such other date as may be scheduled by the Bankruptcy Court.

37.    **Confirmation Order**: An order of the Bankruptcy Court or any amendment thereto confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

38.    **Conversion Motion**: The motion filed on January 14, 2022 by the United States Trustee to convert this Chapter 11 Case to Chapter 7 or to dismiss the Chapter 11 Case [Dkt No. 76].

39.    **Creditor**: Any person who has a Claim against the Debtor that arose on or before the Petition Date.

40.    **DCAS**: The New York City Department of Citywide Administrative Services, which is an agency of the City responsible for administering real estate leases between the City and third parties.

41.    **Debtor and Debtor-in-Possession**: The Debtor in this Chapter 11 Case, East Broadway Mall.

42.    **Disbursing Agent**:  The Disbursing Agent will be identified in the Plan Supplement and, absent such identification, the Disbursing Agent shall be the Plan Administrator.  The Disbursing Agent shall make the Distributions under the Plan.

43.    **Disputed Claim**: Any Claim or Interest against the Debtor that the Debtor or another party in interest has in any way objected to, challenged or otherwise disputed.

44.    **Distributions:** The property required by the Plan to be distributed to the holders of Allowed Claims.

45.    **Effective Date**: The date on which the Plan shall become effective, after the conditions to effectiveness with respect to the Plan set forth in Article IX have been satisfied or waived. For clarity, the effective date defined in the Term Sheet is equivalent to this date.

46.    **Entity**: An entity as such term is defined in section 101(15) of the Bankruptcy Code.

47.    **Estate:** The estate of the Debtor created pursuant to section 541 of the Bankruptcy Code upon commencement of the Chapter 11 Case.

48.    **Equity Interest**: An ownership interest in the Debtor.

49.    **Executory Contracts**: All unexpired leases and executory contracts as described in Section 365 of the Bankruptcy Code.

50.     **February 9, 2020 Deadline:** A deadline set forth in the November 26, 2019 Order of the Bankruptcy Court [Dkt No. 34], which provided that the time within which the Debtor was permitted to assume or reject the Lease pursuant to section 365(d)(4) of the Bankruptcy Code was extended by ninety (90) days through and including February 9, 2020.

51.     **Final Bar Date:** Deadline of the first business day that is 15 days following the Effective Date for filing proofs of Administrative Expenses or requests for the allowance and payment of Administrative Expenses for all such Administrative Expenses incurred after entry of the order establishing the Second Administrative Claims Bar Date.

52.     **Final Decree:** An order entered by the Bankruptcy Court closing the Chapter 11 Case.

53.     **Final Order:** An order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

54.     **Final Report:** A report to be filed by the Plan Administrator with the Bankruptcy Court upon and after completion of all acts required under the Plan, which report shall include, but not be limited to, all information necessary to meet the reporting requirements of the Bankruptcy Court or the Plan.

55.     **First Administrative Claims Bar Date:** Deadline of October 26, 2022 for filing proofs of Administrative Expenses or requests for the allowance and payment of Administrative Expenses for all such Administrative Expenses incurred from the Petition Date through on or before September 20, 2022.

56.     **First Lease Amendment:** The amendment of the 1985 Lease in November of 1995 in connection with the settlement of a nonpayment proceeding brought against the Debtor in July 1994.

57.     **Grace Chan:**  Grace Chan is the President of East Broadway Mall and a Guarantor.

58.     **Guarantors:**  Grace Chan and Kwok Ming Chan are the Guarantors for the Debtor under the Loan Documents with BOH.

59.     **Holder:** A Person holding a Claim or Interest or any authorized agent who has completed, executed, and delivered a Ballot in accordance with the applicable voting instructions.

60.    **Impaired:** Impaired has the meaning ascribed to it in section 1124 of the Bankruptcy Code.

61.    **Insider:** Insider has the meaning ascribed to it in section 101(31).of the Bankruptcy Code.

62.    **Interest:** Any equity interest in Debtor represented by any certificated or uncertificated shares or membership interest issued to any Person before the Effective Date, and any warrants, options, or rights to purchase any equity interest.

63.    **Interest Holder:** The Holder of an Interest.

64.    **IRC**: IRC stands for the Internal Revenue Code.

65.    **Judgment:**  BOH's Judgment against Grace Chan in a State Court litigation.

66.    **Landlord:** The City, for which DCAS acts as administrator, as the landlord under the Lease.

67.    **Lease:** The Lease refers to the 1985 Lease and the First Lease Amendment, collectively.

68.    **Loan Documents:** The Loan Documents consist of the promissory note, a loan agreement and a leasehold mortgage on the Lease, all dated December 29, 2011, and any and all ancillary documents.

69.    **Mall:** The net lessee of land and commercial mall located at 88 East Broadway in the City, County and State of New York.

70.    **New Lease**: The lease containing new terms over the currently existing Lease, which was negotiated between the City and the Approved New Tenant.

71.    **November 26, 2019 Order:** An Order entered by the Bankruptcy Court on November 26, 2019 [Dkt No. 34], which was the byproduct of an agreement between the City and the Debtor and which provided that (i) the time within which the Debtor was permitted to assume or reject the Lease pursuant to section 365(d)(4) of the Bankruptcy Code was extended by ninety (90) days through and including February 9, 2020, (ii)  if the City did not consent in writing to a further extension before the February 9, 2020 Deadline, then the Lease would be rejected pursuant to 11 U.S.C. Section 365(d)(4), effective as of the February 9, 2020 Deadline, and (iii) thereupon the City would be entitled to immediate possession of the leased premises.

72.     **Person:** An individual, corporation, partnership, limited liability company (including its members), joint venture, trust, estate, unincorporated association, unincorporated organization, governmental entity, or political subdivision thereof, or any other entity.

73.     **Petition Date**: June 12, 2019, the date the chapter 11 petition for relief was filed by the Debtor in the Chapter 11 Case.

74.     **Plan**: This Plan, either in its present form or as it may be altered, amended, or modified from time to time.

75.     **Plan Administrator:** An individual or entity to be designated by Bank of Hope, subject to the approval of the Court, to administer the Plan.

76.     **Plan Supplement:** The supplement to the Plan to be filed by the Bank before the City's Confirmation hearing, which includes or attaches information or documents required or appropriate in the judgment of BOH to implement the Plan.

77.     **Premises:** The land beneath the Manhattan Bridge, originally designated as 59-77 Division Street, Manhattan, later re-designated as 88 East Broadway, and thereafter developed by Debtor, pursuant to the terms of the Lease.

78.     **Priority Claim**: Any Unsecured Claim entitled to priority in payment under Section 507(a) of the Bankruptcy Code.

79.     **Priority Tax Claim**: Any Unsecured Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

80.     **Released Party**: Collectively, (a) BOH, (b) the City, (c) the Approved New Tenant, and (d) any current or former agent, director, manager, officer, equity holder (regardless of whether such interests are held directly or indirectly), predecessor, participant, successor, assignee, subsidiary, affiliate, employee, attorney, financial advisor, consultant, representative, or other professional of each of the foregoing entities in clauses (a) through (c)., respectively, but only to the extent, in each case, such party served in such capacity on or after the Petition Date.

81.     **Schedules**: Schedules and Statement of Financial Affairs, as amended, filed by the Debtor with the Bankruptcy Court in the Chapter 11 Case listing Debtor's liabilities and assets as of the Petition Date.

82.     **Second Administrative Claims Bar Date.** Deadline of June 30, 2023 for filing proofs of Administrative Expenses or requests for the allowance and payment of Administrative Expenses for all such Administrative Expenses incurred on or after September 21, 2022, June 30, 2023 (pending Court approval of Debtor Motion [ECF Docket No. 151]).

83.     **Secured Creditor:** Any creditor that holds a Claim that is secured by property of the Debtor.

84.     **Term Sheet:** that certain term sheet negotiated by and among the City, BOH, and Broadway East Group, LLC, as modified by the April 11, 2023 new offer letter issued by Broadway East Group, LLC and accepted by the City and BOH (together attached as Exhibit B to the Disclosure Statement), setting forth the terms under which the City, BOH, and Broadway East Group, LLC would agree to the assumption and assignment of the Lease to Broadway East Group, LLC as the Approved New Tenant under the Plan, except that the terms of the Lease would be governed by the form of the new lease negotiated between Broadway East Group, LLC and the City, which New Lease or other definitive transaction documents with the Approved New Tenant will be filed with the Plan Supplement if not provided earlier.

85.     **Unimpaired:** With respect to a Class of Claims or Interests, such Class is not Impaired.

86.     **Unsecured Creditor or Unsecured Claim**: Any Creditor that holds a Claim in the Chapter 11 case which is not a Secured Claim, Administrative Claim, Priority Tax Claim, or other Priority Claim.

87.     **1985 Lease**: A 50-year commercial lease agreement dated March 1, 1985, between the Debtor and the City through the New York City Department of General Services as Landlord for use of the Premises.

*B.     Rules of Interpretation*

For purposes of the Plan: (i) any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented; (ii) unless otherwise specified, all references in the Plan to Sections, Articles, and exhibits are references to Sections, Articles, and exhibits of or to the Plan; and (iii) the rules of construction set forth in section 102 of the Bankruptcy Code and the Bankruptcy Rules shall apply unless superseded herein.

The words "herein," "hereof," "hereunder," and other words of similar import refer to the Plan as a whole, not to any particular Section, subsection, or clause, unless the context requires otherwise. Whenever it appears appropriate from the context, each term stated in the singular or the plural includes the singular and the plural, and each pronoun stated in the masculine, feminine, or neuter includes the masculine, feminine, and the neuter. Captions and headings to Articles and Sections of the Plan are inserted for convenience of reference only and are not intended to be a part or to affect the interpretation of the Plan.

*C.     Computation of Time*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

D.    *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); provided, however, that corporate or limited liability company governance matters relating to the Debtor, not incorporated in New York shall be governed by the laws of the state of incorporation or formulation.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS
## AND PRIORITY TAX CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III.

A.    *Administrative Claims*

Except as otherwise provided herein, requests for payment of Allowed Administrative Claims must be filed by the applicable Administrative Claims Bar Dates. Holders of Administrative Claims that are required to, but do not, file a request for payment of such Administrative Claims by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtor or the Estate, and such Administrative Claims shall be deemed satisfied, settled, and released as of the Effective Date.

B.    *Statutory Fees*

All fees due and payable pursuant to section 1930 of Title 28 of the United States Code before the Effective Date shall be paid by the Debtor. On and after the Effective Date, to the extent applicable, the Plan Administrator shall pay any and all such fees when due and payable.

C.    *Treatment of Unclassified Claims*

1.    **Administrative Expenses.** Except as may be agreed by an Administrative Claimant, the Debtor must pay all Administrative Expenses in full. If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "allow" the Administrative Expense. Any Administrative Expense

that is undisputed and is due and owing on the Confirmation Date must be paid on the Effective Date of the Plan, or upon such other terms as agreed upon by the Debtor and the Administrative Claimant. If the Administrative Expense is disputed, payment will be made after the Administrative Expense is allowed by the Bankruptcy Court.

2.    **Bar Date for Administrative Claims.** Proofs of Administrative Claims or requests for the allowance and payment of Administrative Expenses for the period from the Petition Date through the Effective Date must be filed by the applicable Administrative Claims Bar Dates. Any entity failing to file a proof of Administrative Claim or request for payment thereof on or before the applicable Administrative Claims Bar Dates shall be forever barred from asserting such Claim against the Debtor or its Estate, and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process, or act to collect, offset, or recover such Administrative Claim.

3.    **Priority Tax Claims**. Priority Tax Claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

# ARTICLE III.
## CLASSIFICATION AND TREATMENT
## OF CLAIMS AND INTERESTS

*A.    Classification of Claims and Interests*

Except for the Claims addressed in Article II of the Plan, all Claims and Interests are classified in the Classes set forth in this Article III for all purposes, including voting, Confirmation, and Distributions pursuant to the Plan and in accordance with section 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or an Interest is classified in a particular Class only to the extent that such Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of such Claim or Interest qualifies within the description of such other Classes. A Claim or an Interest also is classified in a particular Class for the purpose of receiving Distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The classification of Claims and Interests against the Debtor pursuant to the Plan is as set forth below

**Classified Claims.** All other claims and interests are separated into one of the following classes.  Classes 1 and 2 are for claims "secured" by collateral. Class 3 is for "priority" unsecured claims. Class 4 is for unsecured claims that are not "priority" unsecured claims, and Class 5 is for "interests".

1. **Class 1 –** The **Secured Claim of BOH** pursuant to the Cash Collateral Order.

2. **Class 2 – Secured Claims** consist of all other secured claims secured by Collateral, which generally are entitled to be paid in full, over time, with interest. As of now, there are no Secured Class in this Class. However, if any secured claims are filed, those Secured Claims will be in this Class.

3. **Class 3 – Priority Claims** consists of "priority" unsecured claims.  The NYS Department of Taxation and Finance alleges that a portion of its claim is a Priority Tax Claim for estimated taxes in the amount of $14,007.22; NYC Department of Finance alleges it has a Priority Tax Claim under 11 U.S.C. 507(a)(8) for unpaid taxes in the amount of $665,731.12; these alleged claims are in Class 3A.[1]  BOH is unaware of any other Priority Claims. However, if any non-tax Priority Claims are filed, those Claims will be in Class 3B.

4. **Class 4 – Non-Priority Unsecured Claims** consists of unsecured claims that are not "priority" unsecured claims, including the Super-Priority adequate protection claim of BOH (Class 4A), the Claim of the City, which will be waiving its Claim in order to allow other Unsecured Creditors to receive Distribution under the Plan, and any other any other unsecured Claims that are not "priority" unsecured claims, including the unsecured deficiency claim of BOH and any unsecured claims listed in Debtor's Petition under Schedule F and for any other filed Proofs of Claims that become allowed Claims (Class 4B).  Class 4C is a Convenience class for any Creditor in classes 2, 3, or 4 that elect to receive a 10% distribution on its Allowed Claim capped at $2,000.

5. **Class 5 - Interests:** If Debtor is an organization then "interests" means ownership interests – such as corporate stock, or a partner's interest in a partnership – and if Debtor is an individual, then Debtor is the interest holder.

*B.    Treatment of Claims and Interests*

**Classification and Treatment of Classified Claims and Interests.** Classified Claims and Interests are divided into numbered classes as follows:

Class 1 – Secured Claims (BOH Claim)

a. *Voting and Impairment:* Class 1 is Impaired under the Plan.  Holders of Claims in Class 1 are entitled to vote to accept or reject the Plan.

b. *Distributions:* BOH will receive a distribution on account of the fully secured portion of its Class 1 Claim except to the extent BOH carves out a portion of its Class 1 Claim to fund other required distributions under the Plan.  The unsecured portion of the Class 1 Claim will be treated as a Class 4B Claim.

---

[1] The IRS had previously alleged it held a Priority Tax Claim under 11 U.S.C. 507(a)(8) for estimated taxes in the amount of $283,912.00, but on April 25, 2023, it filed an amended claim, No. 1-5, stating that its claim amount now equaled $0.00 (and was no longer entitled to priority).

Class 2 – Secured Claims (other claims)

a. *Voting and Impairment:*  Class 2 is Unimpaired under the Plan.  Holders of Claims in Class 2 are not entitled to vote to accept or reject the Plan and are conclusively deemed to have accepted the Plan pursuant to section 1126(f) or (g) of the Bankruptcy Code.

b. *Distributions:*  On the Effective Date, Holders of Class 2 Claims will receive payment in full on account of fully secured portion of Class 2 claim unless otherwise agreed by Claimant. The Unsecured portion of any Class 2 Claims will be treated as a Class 4B or 4C Claim.

Class 3A – Priority Claims (Bankruptcy Code Section 507(a)(8) Tax Claims)

a. *Voting and Impairment:* Class 3A is Unimpaired under the Plan.  Holders of Claims in Class 3A are not entitled to vote to accept or reject the Plan.

b. *Distributions:*  Holders of Class 3A Claims will be paid in full over a 5-year period unless otherwise agreed by Claimant.

Class 3B – Other Priority Claims

a. *Voting and Impairment:* Class 3B is Unimpaired under the Plan.  Holders of Claims in Class 3B are not entitled to vote to accept or reject the Plan.

b. *Distributions:*  Holders of Class 3B Claims will be paid in full upon Effective Date unless otherwise agreed by Claimant.

Class 4A – BOH Super-Priority Adequate Protection Claim as per Final Cash Collateral Order

a. *Voting and Impairment:* Class 4A is Impaired under the Plan.  Holders of Claims in Class 4A are entitled to vote to accept or reject the Plan.

b. *Distributions:*  The Holders of the Class 4A Claims *w*ill receive a Distribution of Estate assets on account of its Allowed Class 4A Claim after Claims in classes 1, 2, 3B, and 4C are paid in full.

Class 4B – City Claim and other Unsecured Claims (including BOH's unsecured deficiency claim)

a. *Voting and Impairment:* Class 4B is Impaired under the Plan.  Holders of Claims in Class 4B are entitled to vote to accept or reject the Plan.

b. *Distributions:*  The City will waive its Class 4B Claim for the benefit of other Creditors except as provided in the Plan. Other Creditors will receive their pro rata distribution of Estate assets on account of Allowed Claims after claims 1, 2, 3B, 4A and 4C are paid in full.

Class 4C – Convenience

a. *Voting and Impairment:* Class 4C is Impaired under the Plan.  Holders of Claims in Class 4C are entitled to vote to accept or reject the Plan.

b. *Distributions:*  Holders of Class 4C Claims may elect to receive a distribution as part of Class 4C on the effective date equal to 10% of its allowed claim capped at $2000.  If a holder of a Class 4B makes an election to receive a Class 4C Distribution, then such Claimant shall be deemed to have waived its right to receive a Class 4B Distribution.

Class 5 – Interests

a. *Voting and Impairment:* Class 5 is Impaired under the Plan.  Holders of Interests in Class 5 are not entitled to vote to accept or reject the Plan.  Holders of Class 5 Interests are deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code.

b. *Distributions:*  Holders of Class 5 Interests will receive no Distribution.

C.    *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by at least one Impaired Class of Claims. The Bank shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Bank reserves the right to modify the Plan in accordance with Article X of the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.    *Plan Administrator.*

1.    The Plan Supplement shall name the Plan Administrator selected by BOH to implement the terms of the Plan.

2.    The Plan Administrator shall be designated by BOH.

3.    The salient terms of the Plan Administrator's employment, including the Plan Administrator's duties and compensation (which compensation shall be negotiated by Bank of Hope) shall be set forth in the Plan Supplement. The Plan Administrator shall be entitled to reasonable compensation in an amount consistent with that of similar functionaries in similar types of bankruptcy proceedings.

4.    The Plan Administrator shall serve as a fiduciary on behalf of the Creditors of the Debtor's Chapter 11 Case and shall use its own judgment and discretion in administering (or in

the case of litigation, prosecuting or settling) and liquidating Estate Property in the manner and subject to the limitations set forth in the Plan.

5.      The Plan Administrator shall have no liability to the Debtor, its Creditors, or its equity holders. The Debtor shall indemnify and hold harmless the Plan Administrator for any losses incurred in its capacity as such, except to the extent such losses were the result of such person's gross negligence or willful misconduct.

6.      In the event the Plan Administrator dies, is terminated, or resigns for any reason, BOH shall designate a successor. The Plan Administrator shall be required to disclose its connections, if any, with the Debtor, its Creditors, any other party in interest, and the U.S. Trustee.

B.      *Directors/Officers/Equity/Assets on the Effective Date.*

1.      On the Effective Date, the authority, power and incumbency of the persons then acting as directors and officers of Debtor shall be terminated and such directors and officers shall be deemed to have resigned or to have been removed without cause.

2.      On the Effective Date, the Plan Administrator shall be appointed as and become, and shall succeed to such powers as would have been applicable to, Debtor's officers and directors.

3.      Notwithstanding anything to the contrary herein, all assets of Debtor shall remain assets of Debtor until they are transferred or distributed by the Plan Administrator pursuant to the terms of this Plan or the Plan Supplement.

4.      After the Effective Date, the Plan Administrator may decide, in its sole discretion, to maintain Debtor as a corporation in good standing until such time as all aspects of the Plan pertaining to Debtor have been completed (provided, however, that Debtor shall conduct no business except as necessary or appropriate to implement the Plan) or at such time as the Plan Administrator considers appropriate and consistent with the implementation of the Plan pertaining to Debtor may dissolve Debtor and complete the winding up of Debtor in accordance with applicable law. In connection with the liquidation of Debtor, the Plan Administrator may act as liquidating agent for Debtor or transfer all assets of Debtor to a trust or other entity created to make distributions to holders of Allowed Claims against and Equity Interests in Debtor. The Plan Administrator may act as trustee of such a trust if and as permitted by law or in the capacity of management of any other entity created to make such distributions. As soon as practicable after all aspects of the Plan pertaining to Debtor have been completed, Debtor shall be dissolved and wound up in accordance with applicable law.

5.      As of the Effective Date, the certificate of incorporation and by-laws of Debtor shall be amended to the extent necessary to carry out the provisions of the Plan. The amended certificate and by-laws of Debtor (if any) shall be included in the Plan Supplement.

C.      *Duties and Powers of the Plan Administrator.*

The Plan Administrator, together with its representatives and professionals, shall administer the Plan with respect to Debtor. The duties and powers of the Plan Administrator shall include all powers necessary to implement the Plan with respect to Debtor and administrate and liquidate the assets of Debtor, including, without limitation, the duties and powers listed herein.

1.      **Authority.** The Plan Administrator may exercise all power and authority that may be or could have been exercised, commence all proceedings that may be or could have been commenced and take all actions that may be or could have been taken by an officer, director, or shareholder of Debtor with like effect as if authorized, exercised, and taken by unanimous action of such officers and directors, without shareholder approval, including, without limitation, amendment of the certificate of incorporation and by-laws of Debtor and the dissolution of Debtor.

2.      **Claims.** The Plan Administrator may object to, seek to subordinate, compromise, or settle any or all Claims against Debtor, except as may be set forth in a prior order of the Bankruptcy Court.

3.      **Liquidation of Assets**. The Plan Administrator shall, in an expeditious but orderly manner liquidate and convert to cash the assets of Debtor, make timely Distributions, and not unduly prolong the duration of Debtor. In so doing, the Plan Administrator shall exercise its reasonable business judgment in liquidating the assets of Debtor to maximize recoveries. The liquidation of such assets of Debtor may be accomplished through the sale of the assets of Debtor (in whole or in combination, and including the sale of any Causes of Action), through the prosecution, compromise and settlement, abandonment, or dismissal of any or all claims or Causes of Action, or otherwise.

4.      **Abandoning Assets.** The Plan Administrator may abandon in any commercially reasonable manner, including abandonment or donation to a charitable organization of its choice, any assets, if it concludes that they are of no benefit to Debtor's Estate.

5.      **Causes of Action**. The Plan Administrator may pursue Causes of Action of Debtor. The Plan Administrator shall have discretion to elect whether or not to pursue any and all Causes of Action of Debtor and whether and when to compromise, settle, abandon, dismiss, or otherwise dispose of any such Causes of Action, as the Plan Administrator may determine is in the best interests of the holders of Claims against and Equity Interests in Debtor, and the Plan Administrator shall have no liability to any of the Debtor, its Estates, its Creditors, its shareholders, or any other party for the outcome of its decisions in this regard.

6.      **Retention of Professionals**. The Plan Administrator may continue to employ any or all of the attorneys and financial advisors employed by the Debtor and its Creditors for any purpose, including but not limited to Bankruptcy Causes of Action. In addition, the Plan Administrator may file applications to engage other professionals to assist in the performance of its duties.

7.      **Books and Records.** The Plan Administrator shall maintain Debtor's books and records, maintain accounts, make distributions, and take other actions consistent with the Plan and the implementation hereof.

8.      **Agreements.** The Plan Administrator may enter into any agreement or execute any document required by or consistent with the Plan and perform all of Debtor's obligations thereunder.

9.      **Investment Power**. The right and power of the Plan Administrator to invest any of Debtor's Cash, including cash proceeds from the liquidation of any assets of Debtor and the realization or disposition of any Causes of Action, and any income earned by Debtor shall be limited to the right and power to invest such Cash in United States Treasury Bills, interest-bearing certificates of deposit, tax exempt securities having at the time of acquisition an investment grade credit rating as assigned by a nationally recognized credit rating service or investments permitted by section 345 of the Bankruptcy Code or otherwise authorized by the Bankruptcy Court, using prudent efforts to enhance the rates of interest earned on such Cash without inordinate credit risk or interest rate risk; provided, however, that the Plan Administrator may expend the Cash of Debtor to effectuate the provisions of the Plan.

10.     **Tax Obligations**. The Plan Administrator shall have the powers of administration regarding all of Debtor's tax obligations, including filing of returns. The Plan Administrator shall (i) endeavor to complete and file within ninety (90) days after the dissolution of Debtor's final federal, state and local tax returns, (ii) request, if necessary, an expedited determination of any unpaid tax liability of Debtor or its Estate under Bankruptcy Code section 505(b) for all taxable periods of Debtor ending after the Petition Date through the dissolution of Debtor as determined under applicable tax laws and (iii) represent the interest and account of Debtor or its Estate before any taxing authority in all matters including, without limitation, any action, suit, proceeding or audit.

11.     **Reporting Duties.** The Plan Administrator shall be responsible for filing informational returns on behalf of Debtor and paying any tax liability of Debtor. The Plan Administrator shall file (or cause to be filed) any other statements, returns or disclosures relating to Debtor that are required by any governmental unit or applicable law.

12.    **Reasonable Fees and Expenses**. The Plan Administrator may incur any reasonable and necessary expenses in connection with the performance of its duties under the Plan.

13.    **Other Actions.** The Plan Administrator may take all other actions not inconsistent with the provisions of the Plan which the Plan Administrator deems reasonably necessary or desirable with respect to administering the Plan.

D.    *Closing of Debtor's Chapter 11 Case.*

When all Disputed Claims filed against Debtor have become Allowed Claims or have been disallowed by Final Order and all remaining assets of Debtor have been liquidated and converted into Cash or abandoned and such Cash has been distributed in accordance with the Plan, the Plan Administrator shall seek authority from the Bankruptcy Court to close Debtor's Chapter 11 Case.  The Plan Administrator shall file a Final Report, the Chapter 11 Cases may be closed, and the Debtor shall be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Debtor or payments to be made in connection therewith; provided, however, that the Plan Administrator may file with the Office of the Secretary of State for the State of New York a certificate of dissolution.

E.    *Section 1146 Exemption*

To the extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to the Approved New Tenant or to any other Person) of property under the Plan or pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtor or to the Approved New Tenant; (2) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (3) the making, assignment, or recording of any lease or sublease; or (4) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(c) of the Bankruptcy Code, shall forgo the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing

instruments or other documents without the payment of any such tax or governmental assessment.

# ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS
## AND UNEXPIRED LEASES

*A.     Assumption and Rejection of Executory Contracts and Unexpired Leases.*

Except as otherwise provided herein, each Executory Contract shall be deemed rejected pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, unless any such Executory Contract: (1) was assumed or rejected previously by a Debtor; (2) expired or terminated pursuant to its own terms before the Effective Date; or (3) is the subject of a motion to reject pending on the Confirmation Date. Entry of the Confirmation Order shall constitute a Final Order approving the assumptions or rejections of such Executory Contracts as set forth in the Plan, all pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

All assumed Executory Contracts shall remain in full force and effect for the benefit of the Approved New Tenant, and be enforceable by the Approved New Tenant in accordance with its terms, notwithstanding any provision in such assumed Executory Contract that prohibits, restricts, or conditions such assumption, assignment, or transfer. Any provision in the assumed Executory Contracts that purports to declare a breach or default based in whole or in part on commencement or continuance of this Chapter 11 Case or any successor cases shall be deemed unenforceable. To the extent any provision in any Executory Contract assumed pursuant to the Plan (including, without limitation, any "change of control" provision) restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the Approved New Tenant Debtor's assumption of such Executory Contract, then such provision will be deemed unenforceable such that the transactions contemplated by the Plan will not entitle the non-debtor party thereto to terminate such Executory Contract or to exercise any other default-related rights with respect thereto. Each Executory Contract assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall vest in and be fully enforceable by the Approved New Tenant in accordance with its terms, except as such terms may have been modified by a court order or by applicable law.

The Approved New Tenant has the right to request the assumption and assignment of any Executory Contracts prior to the Effective Date.  A listing of the Executory Contracts that may be assumed and assigned to Approved New Tenant will be attached or included in the Plan Supplement.  For any Executory Contracts that will be assumed and assigned to the Approved New Tenant, any cure costs associated with such Executory Contract will be cured by the Approved New Tenant within fifteen days of the Effective Date or such other date as may be agreed to between Approved New Tenant and the other party to the Executory Contract.

# ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

A.    *Timing and Calculation of Amounts to Be Distributed*

Unless otherwise provided in the Plan, on the Effective Date (or if a Claim is not an Allowed Claim or Allowed Interest on the Effective Date, on the date that such Claim or Interest becomes an Allowed Claim or Allowed Interest, or as soon as reasonably practicable thereafter), or as soon as is reasonably practicable thereafter, each Holder of an Allowed Claim or Allowed Interests (as applicable) shall receive the full amount of the Distributions that the Plan provides for Allowed Claims or Allowed Interests (as applicable) in the applicable Class. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. If and to the extent that there are Disputed Claims or Disputed Interests, Distributions on account of any such Disputed Claims or Disputed Interests shall be made pursuant to the provisions set forth in Article VII hereof. Except as otherwise provided in the Plan, Holders of Claims or Interests shall not be entitled to interest, dividends, or accruals on the Distributions provided for in the Plan, regardless of whether such Distributions are delivered on or at any time after the Effective Date.

B.    *Disbursing Agent*

Distributions under the Plan shall be made by the Disbursing Agent, which may be the Plan Administrator. The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties.

C.    *Method of Distributions Under the Plan.*

Distributions to holders of Claims against Debtor shall be made by the Plan Administrator in accordance with the terms of the Plan.

1.    **Effective Date Payments and Transfers**. On the Effective Date, or, as soon thereafter as reasonably practical, Debtor shall remit, to each holder of an Allowed Claim (as of the Effective Date) against Debtor, the Distribution provided for such Claim under the Plan.

2.    **Retention of Cash.** In making the Distributions under the Plan, Debtor shall, at all times, retain sufficient Cash (and/or beneficial assets) as reasonably necessary for Debtor to (a) meet the reasonably necessary administrative expenses of Debtor after the Effective Date, including contingent liabilities, (b) pay reasonable administrative expenses of the Estate that have not been paid or have not been Allowed as of the Effective Date but which are subsequently Allowed, (c) pay all Disputed Claims against Debtor in the event that all such Claims were to become Allowed Claims, (d) satisfy other liabilities incurred by Debtor in accordance with the Plan, and (e) otherwise perform the functions and take the actions provided for or permitted herein or in any other agreement executed by the Plan Administrator pursuant to the Plan.

## ARTICLE VII.
## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

A.      *Disallowance of Claims.*

Any Claims or Interests held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code, or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims or Interests may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtor by that Entity have been turned over or paid to the Approved New Tenant. All Claims filed on account of an indemnification obligation to a director, officer, or employee shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such indemnification obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to or action, order, or approval of the Bankruptcy Court.

**Except as provided herein or otherwise agreed, any and all Claims (including Administrative Expense Claims) filed after any applicable bar date fixed by an order of the Bankruptcy Court shall be deemed ~~disallowed~~late-filed claims as of the Effective Date ~~without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any Distributions on account of such Claims, unless on or before the Plan Confirmation Hearing such late Claim has been deemed timely filed by a Final Order~~and not entitled to payment under the Plan.**

B.      *Objections.*

Any objections to Claims shall be served and filed on or before the later of (a) 120 days after the Effective Date and (b) such later date as may be fixed by the Bankruptcy Court.

C.      *No Distributions Pending Allowance.*

Notwithstanding any other provision hereof, if any portion of a Claim is a Disputed Claim, no payment or Distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

D.      *Estimation of Claims.*

BOH or the Plan Administrator may at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code or otherwise regardless of whether a party in interest previously objected to

such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain exclusive jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including without limitation, during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, Debtor may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently disallowed, reduced, compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

E.    *Resolution of Disputed Claims.*

Within sixty (60) days of a Disputed Claim becoming an Allowed Claim, the Plan Administrator shall remit to the holder of such Allowed Claim Cash equal to the amount such holder would have received as of that date under the Plan if the Allowed portion of the Disputed Claim had been an Allowed Claim as of the Effective Date.

## ARTICLE VIII.
## SETTLEMENT, RELEASE,
## AND RELATED PROVISIONS

A.    *Compromise and Settlement.*

Except as otherwise provided in the Plan, Confirmation of the Plan shall constitute approval by the Court of a compromise and settlement of all claims asserted by and between the Bank and the City, subject to the obtaining of any required approvals, authorizations or consents of any governmental or other entity.

B.    *Exculpation.*

Provided the significant contributions being made by BOH and the City under the Plan happen, including, but not limited to (i) the City's agreement to permit the Debtor's remaining interest in the Lease to be assumed and assigned to the Approved New Tenant notwithstanding that the defaults will not be cured and a waiver of its Claim against the Estate as provided herein and (ii) BOH's agreement to carve out a portion of the Distribution otherwise payable to BOH on account of its Allowed Secured Claim for the benefit of Holders of Administrative and Unsecured Claims under the Plan, neither the City, BOH, nor any of their respective officers, directors, employees, advisors, attorneys, accountants, consultants or agents who have been actually involved in the bankruptcy case and the Plan solicitation and administration process shall have or incur any liability for or to any Holder of a Claim or Equity Interest for any act or omission between the Petition Date and the Effective Date in connection with, or arising out of,

the administration of the Chapter 11 Case, pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for actual fraud, willful misconduct, gross negligence, or legal malpractice, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan; provided, however, that the exculpation set forth in this section shall extend as far as, but not further than, permitted under applicable law.

C.      *Mutual Releases.*

Except as otherwise provided in the Plan, upon the Effective Date the Debtor and its respective Estate, BOH and the City, and each of their respective officers, directors, employees, shareholders, members, attorneys, advisors, representatives, guarantors, affiliates, relatives and related entities, each waive and release any claims any of them may have had, now has, or may hereafter have against the other to the fullest extent permitted by law, subject to, in the City's case, the obtaining of any required approval, authorization or consent of any governmental or other entity.  For the avoidance of doubt, the releases provided herein include, but are not limited to, any actions under chapter 5 of the Bankruptcy Code and any other applicable federal, state and local statutory claims provided.

D.      *Releases of Released Parties.*

**As of the Effective Date, the Released Parties shall be released by the Debtor, the Estate, and any successors-in-interest of the Debtor or the Estate for any act taken or omission committed in their capacity as representatives of BOH, the City, and the Approved New Tenant, except for acts constituting willful misconduct or gross negligence, and in all respects such parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.  Any release previously given by the Debtor or a person which is part of or subject to a Final Order of the Bankruptcy Court remains in full force and effect and is ratified by the Plan.**

E.      *Injunction.*

1.      **Except as set permitted under the Plan, all persons or entities that have held, hold, or may hold Claims against or Equity Interests in the Debtor, along with their respective present or former employees, agents, officers, directors, or principals, are permanently enjoined, on and after the Effective Date, with respect to all Claims against the Debtor, and all Equity Interests in the Debtor, from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtor, the Released Parties, or their property, (ii) enforcing, levying, attaching (including, without limitation, any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Debtor, the Released Parties, or their property, (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtor, the**

Released Parties, or against the property or interests in property of the Debtor, (iv) asserting any right of setoff, directly or indirectly, against any obligation due the Debtor, the Released Parties, or any of their property, except as contemplated or allowed by the Plan, the Bankruptcy Code, or applicable law, (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan, (vi) commencing, continuing or asserting in any manner any action or other proceeding of any kind with respect to any Claims and Causes of Action which are extinguished or released pursuant to the Plan, and (vii) taking any actions to interfere with the implementation or consummation of the Plan.

2.      All persons are permanently enjoined, on and after the Effective Date, from asserting any Claim (x) which is released by such person under the Plan or (y) for which the party against whom the Claim is being asserted has received exculpation under the Plan, including (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) on account of such Claim, (ii) enforcing, levying, attaching (including, without limitation, any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order on account of such Claim, (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind on account of such Claim, (iv) asserting any right of setoff, directly or indirectly, against any obligation on account of such Claim, (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan, (vi) commencing, continuing or asserting in any manner any action or other proceeding of any kind with respect to any such Claim, and (vii) taking any actions to interfere with the implementation or consummation of the Plan.

## ARTICLE IX.
## CONDITIONS PRECEDENT TO
## EFFECTIVENESS OF THE PLAN

A.      *Conditions Precedent to the Confirmation of the Plan.*

A condition precedent to the confirmation of the Plan is that the Bankruptcy Court shall have entered the Confirmation Order in form and substance satisfactory to BOH and the City.

B.      *Conditions Precedent to Effectiveness of the Plan.*

The Effective Date does not occur unless and until:

1.      The Confirmation Date occurs and the Confirmation Order has become a Final Order;

2.      All instruments and agreements to be issued, entered into, delivered, or filed under the Plan are issued, entered into, delivered, or filed and are effective.

3.      Any and all required approvals, authorizations and consents of governmental or other entities are obtained.

4.      The BOH Payment has been made.

*C.      Waiver of Conditions.*

Notwithstanding the foregoing, BOH reserves its right, upon obtaining the consent of the City, to waive the occurrence of the conditions precedent to the Effective Date.  Any such waiver may be effected at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to consummate the Plan.  Any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.  If BOH, after consultation with the City, determines that one of the conditions precedent to the Effective Date cannot be satisfied and the occurrence of such condition is not waived or cannot be waived, then BOH shall file a notice of inability to satisfy such condition to the Effective Date with the Bankruptcy Court.

*D.      Effect of Non-Occurrence of the Effective Date.*

If the Effective Date does not occur, the Plan shall be null and void and nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims against the Debtor; or (b) constitute an admission, acknowledgement, offer, or undertaking by the Debtor. In the event that one or more of the conditions specified herein shall not have occurred or otherwise not have been waived, (a) the Confirmation Order shall be vacated, (b) the Debtor and all Holders of Claims and Interests shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Order were never entered, and (c) the Debtor's obligations with respect to Claims and Interests shall remain unchanged and nothing contained herein shall constitute or be deemed a waiver or release of any Claims or Interests by or against the Debtor or any other Person or prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor.

## ARTICLE X.
## MODIFICATION, REVOCATION OR
## WITHDRAWAL OF THE PLAN

*A.      Modification and Amendments.*

Except as otherwise specifically provided in the Plan, BOH reserves the right to alter, amend, or modify the Plan, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not re-solicit votes on such modified Plan. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 (as well as those restrictions on modifications set forth in the Plan), the BOH expressly reserves its respective rights to revoke or withdraw, to alter, amend or modify the Plan with respect to the Debtor, one or more times, before or after

Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend or modify the Plan, or remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

B.      *Effect of Confirmation on Modifications*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

C.      *Revocation or Withdrawal of Plan*

BOH reserves the right to revoke or withdraw the Plan before the Confirmation Date and to file subsequent plans.  If BOH revokes or withdraws the Plan, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of the Claims or Interests or Class of Claims or Interests), assumption (or assumption and assignment) or rejection of Executory Contracts effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of BOH or any other Entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by BOH or any other Entity.

**ARTICLE XI.
RETENTION OF JURISDICTION**

The Bankruptcy Court shall retain and have subject matter jurisdiction over any matter arising under the Bankruptcy Code, or arising in, out of, or related to this Chapter 11 Case and the Plan, including jurisdiction over proceedings concerning:

(i)      To consider any modifications of the Plan, to cure any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(ii)     To issue such orders in aid of execution of the Plan to the extent authorized by section 1142 of the Bankruptcy Code;

(iii)    To determine whether the time for performing any Plan obligation should be extended;

(iv)    To determine any and all adversary proceedings and contested matters pending as of the Effective Date or specifically contemplated in this Plan;

(v)     to hear and determine any actions against the Plan Administrator;

(vi)    to recover all assets of the Debtor, property of the Estate, assets of the Plan Administrator, wherever located;

(vii)   to hear and determine matters concerning state, local, and federal taxes in accordance with section 346, 505, and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code filed, or to be

filed, with respect to tax returns for any and all taxable periods ending after the Commencement Date;

(viii)   to hear all matters relating to Article XIII of the Plan, including but not limited to all matters relating to releases, exculpation, and injunction granted thereunder;

(ix)   to hear and determine any objections to Claims;

(x)   to approve compromises of controversies under Fed. R. Bankr. Pro. 9019;

(xi)   to determine compensation of professionals;

(xii)   to hear and determine any disputes regarding the interpretation and enforcement of the Plan; and

(xiii)   to enter a final decree closing the Chapter 11 Case.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

**Effecting Documents; Further Transactions; Timing.** The Debtor is authorized and directed as of the Effective Date, without further order of the Bankruptcy Court, to execute, deliver, file, or record all contracts, instruments, releases, and other agreements or documents, and to take all actions necessary or appropriate to effect and further evidence the terms of the Plan. All transactions required to occur on the Effective Date under the terms of the Plan are deemed to have occurred simultaneously. If the Debtor fails or refuses to execute, deliver, file, or record any such contracts, instruments, releases and other agreements or documents, then a representative of BOH may execute any such documents on the Debtor's behalf without further order of the Bankruptcy Court.

**Post-Effective Date Fees; Final Decree.** Notwithstanding anything to the contrary contained in the Plan, all fees payable ~~through~~up to the Effective Date pursuant to 28 U.S.C. § 1930 shall be paid ~~on~~by Debtor on or before the Effective Date~~, or as soon as practicable thereafter~~. The ~~Debtor~~Plan Administrator is responsible for paying any ~~post-~~fees payable on or after the Effective Date ~~fees~~ under 28 U.S.C. § 1930(a)(6) and filing post-confirmation reports until the Bankruptcy Court enters a Final Decree, which Debtor must seek as soon as feasible after distributions under the Plan have commenced. Notice of application for a Final Decree need be given only to those holders of Claims and Interests and other parties that, after the Effective Date, specifically request such notice.

**Final Decree.** Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Administrator, or such other party as the Bankruptcy Court shall designate in the Plan Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

**Exemption from Transfer Taxes.** Under Bankruptcy Code § 1146(a): (a) the issuance, distribution, transfer, and exchange of assets or property of the Estates; (b) the execution, assignment, modification, or recording of any lease or sublease; and (c) the execution, delivery, or recording of a deed or other instrument of transfer under, in furtherance of, or in connection with,

the Plan, the Confirmation Order, or any transaction contemplated above, or any transactions arising out of, contemplated by, or in any way related to, the foregoing are not subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, or real estate transfer tax, or other similar tax or governmental assessment and the appropriate state or local government officials or agents are directed to forego the collection of any such tax or assessment and to accept for filing or recordation any of the foregoing instruments or other documents without the payment of any such tax or assessment.

**Entire Agreement**. Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

**Conflicts.** Except as set forth in the Plan, to the extent that any provision of any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control.

**Severability.** If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**Successors and Assigns**.  All the rights, benefits, and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, and/or assigns of such person.

**Cramdown.**  Pursuant to section 1129(b) of the Bankruptcy Code, BOH reserves the right to seek Confirmation of the Plan despite the rejection of the Plan by one or more classes of creditors.

**Court of Competent Jurisdiction.**  If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan, such abstention, refusal, or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

**Notices.** After the Effective Date, any pleading, notice, or other document required by the Plan to be served on or delivered on the parties below shall be served as follows:

*If to the Debtor:*
SFERRAZZA & KEENAN PLLC
Counsel to the Debtor and Debtor In Possession
Sarah M. Keenan
532 Broadhollow Road, Suite 111
Melville, New York 11747

(631) 753-4400 ext. 23

**If to the Bank of Hope:**
WINDELS MARX LANE & MITTENDORF LLP
Counsel to the Bank of Hope
James M. Sullivan
156 West 56th Street
New York, New York 10019
(212) 237-1170

**If to the City of New York:**
SYLVIA O. HINDS-RADIX
Corporation Counsel of the City of New York
Zachary B. Kass
Senior Counsel
100 Church Street
New York, New York 10007
(212) 356-2113

**If to the U.S. Trustee:**
Office of the United States Trustee
Southern District of New York
U.S. Federal Office Building
201 Varick Street, Suite 1006
New York, NY 10014

Dated: New York, New York
      April 28, 2023

Respectfully submitted,

WINDELS MARX LANE & MITTENDORF, LLP
*Attorneys for Bank of Hope*

By:    */s/ James M. Sullivan*
      James M. Sullivan (jsullivan@windelsmarx.com)
      Robert J. Malatak (rmalatak@windelsmarx.com)
      156 West 56th Street
      New York, New York 10019
      Tel: (212) 237-1000 / Fax: (212) 262-1215

Document comparison by Workshare 10.0 on Tuesday, June 13, 2023 12:36:48 PM

| Input: | |
|---|---|
| Document 1 ID | worldox://12172426.docx/5 |
| Description | APRIL 2023 BOH's THIRD AMENDED Chapter 11 Plan of Liquidation for EBM |
| Document 2 ID | worldox://12172426.docx/6 |
| Description | APRIL 2023 BOH's THIRD AMENDED Chapter 11 Plan of Liquidation for EBM |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 11 |
| Deletions | 12 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 23 |