WINDELS MARX LANE & MITTENDORF, LLP
*Attorneys for Bank of Hope*
156 West 56th Street
New York, New York 10019
Telephone (212) 237-1000
Attorney Appearing: James M. Sullivan (jsullivan@windelsmarx.com)
Robert J. Malatak (rmalatak@windelsmarx.com)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
In re:                                                              Chapter 11

EAST BROADWAY MALL,                          Case No. 19-12280 -DSJ

                        Debtor.
-------------------------------------------------------X

**~~THIRD~~FOURTH AMENDED DISCLOSURE STATEMENT FOR ~~THIRD~~FOURTH**
**AMENDED CHAPTER 11 PLAN OF LIQUIDATION FOR EAST BROADWAY MALL**

---

**IMPORTANT INFORMATION ABOUT THIS ~~THIRD~~FOURTH AMENDED
DISCLOSURE STATEMENT**

---

**THE DEADLINE TO VOTE ON THE PLAN IS ~~JULY 18~~_____, 2023, at 4:00 p.m.
(prevailing Eastern Time)**

**THE DEADLINE TO OBJECT TO THE PLAN IS ~~JULY 18~~_____, 2023, at 4:00 p.m.
(prevailing Eastern Time)**

**FOR YOUR VOTE TO BE COUNTED, YOUR BALLOT MUST BE ACTUALLY
RECEIVED BY WINDELS LANE & MITTENDORF, LLP, ON OR BEFORE THE
VOTING DEADLINE AS DESCRIBED HEREIN.**

**THE BANK OF HOPE F/K/A BBCN BANK, SECURED CREDITOR FOR THE
CHAPTER 11 ESTATE OF DEBTOR, EAST BROADWAY MALL, ARE PROVIDING
THE INFORMATION IN THIS ~~THIRD~~FOURTH AMENDED DISCLOSURE
STATEMENT TO HOLDERS OF CLAIMS OR INTERESTS FOR PURPOSES OF
SOLICITING VOTES TO ACCEPT OR REJECT THE ~~THIRD~~FOURTH AMENDED
CHAPTER 11 PLAN ("~~THIRD~~FOURTH AMENDED PLAN" OR "PLAN") OF EAST
BROADWAY MALL. NOTHING IN THIS ~~THIRD~~FOURTH AMENDED DISCLOSURE
STATEMENT MAY BE RELIED UPON OR USED BY ANY ENTITY FOR ANY
OTHER PURPOSE. BEFORE DECIDING WHETHER TO VOTE FOR OR AGAINST
THE PLAN, EACH HOLDER ENTITLED TO VOTE SHOULD CAREFULLY
CONSIDER ALL OF THE INFORMATION IN THIS ~~THIRD~~FOURTH AMENDED
DISCLOSURE STATEMENT. IN THE EVENT OF ANY INCONSISTENCY BETWEEN
THE ~~THIRD~~FOURTH AMENDED DISCLOSURE STATEMENT AND THE PLAN, THE
RELEVANT PROVISIONS OF THE PLAN WILL GOVERN.**

**THE BANK URGES HOLDERS OF CLAIMS WHOSE VOTES ARE BEING
SOLICITED TO VOTE TO ACCEPT THE PLAN. THE BANK URGES EACH HOLDER
OF A CLAIM TO CONSULT WITH ITS OWN ADVISORS WITH RESPECT TO ANY
LEGAL, FINANCIAL, SECURITIES, TAX, OR BUSINESS ADVICE IN REVIEWING
THIS ~~THIRD~~FOURTH AMENDED DISCLOSURE STATEMENT, THE PLAN, AND
THE PROPOSED TRANSACTIONS CONTEMPLATED THEREBY. FURTHERMORE,
THE BANKRUPTCY COURT'S APPROVAL OF THE ADEQUACY OF THE
INFORMATION CONTAINED IN THIS ~~THIRD~~FOURTH AMENDED DISCLOSURE
STATEMENT DOES NOT CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL
OF THE PLAN.**

**THIS ~~THIRD~~FOURTH AMENDED DISCLOSURE STATEMENT CONTAINS,
AMONG OTHER THINGS, SUMMARIES OF THE PLAN, CERTAIN STATUTORY
PROVISIONS, CERTAIN EVENTS IN THE CHAPTER 11 CASE, AND CERTAIN**

DOCUMENTS AND/OR ARRANGEMENTS THAT WILL IMPLEMENT THE
RESTRUCTURING TRANSACTIONS DESCRIBED HEREIN. ALTHOUGH THE
BANK BELIEVES THAT THESE SUMMARIES ARE FAIR AND ACCURATE, THESE
SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY TO THE EXTENT THAT
THEY DO NOT SET FORTH THE ENTIRE TEXT OF SUCH DOCUMENTS OR
STATUTORY PROVISIONS OR EVERY DETAIL OF SUCH ANTICIPATED EVENTS.
IN THE EVENT OF ANY INCONSISTENCY OR DISCREPANCY BETWEEN A
DESCRIPTION IN THIS ~~THIRD~~FOURTH AMENDED DISCLOSURE STATEMENT
AND THE TERMS AND PROVISIONS OF THE PLAN OR ANY OTHER DOCUMENTS
INCORPORATED HEREIN BY REFERENCE, THE PLAN OR SUCH OTHER
DOCUMENTS WILL GOVERN FOR ALL PURPOSES. FACTUAL INFORMATION
CONTAINED IN THIS ~~THIRD~~FOURTH AMENDED DISCLOSURE STATEMENT HAS
BEEN PROVIDED BY THE BANK EXCEPT WHERE OTHERWISE SPECIFICALLY
NOTED. THE BANK DOES NOT REPRESENT OR WARRANT THAT THE
INFORMATION CONTAINED HEREIN OR ATTACHED HERETO IS WITHOUT
ANY MATERIAL INACCURACY OR OMISSION.

IN PREPARING THIS ~~THIRD~~FOURTH AMENDED DISCLOSURE
STATEMENT, THE BANK RELIED ON FINANCIAL DATA DERIVED FROM THE
DEBTOR'S BOOKS AND RECORDS AND ON VARIOUS ASSUMPTIONS
REGARDING THE DEBTOR'S BUSINESSES. ALTHOUGH THE BANK BELIEVES
THAT SUCH FINANCIAL INFORMATION FAIRLY REFLECTS THE FINANCIAL
CONDITION OF THE DEBTOR AS OF THE DATE HEREOF AND THAT THE
ASSUMPTIONS REGARDING FUTURE EVENTS REFLECT REASONABLE
BUSINESS JUDGMENTS, NO REPRESENTATIONS OR WARRANTIES ARE MADE
AS TO THE ACCURACY OF THE FINANCIAL INFORMATION CONTAINED
HEREIN OR ASSUMPTIONS REGARDING THE DEBTOR'S BUSINESS AND ITS
FUTURE RESULTS AND OPERATIONS. THE BANK EXPRESSLY CAUTIONS
READERS NOT TO PLACE UNDUE RELIANCE ON ANY FORWARD-LOOKING
STATEMENTS CONTAINED HEREIN.

THIS ~~THIRD~~FOURTH AMENDED DISCLOSURE STATEMENT DOES NOT
CONSTITUTE, AND MAY NOT BE CONSTRUED AS, AN ADMISSION OF FACT,
LIABILITY, STIPULATION, OR WAIVER. THE BANK OR ANY OTHER
AUTHORIZED PARTY IN INTEREST MAY SEEK TO INVESTIGATE, FILE, AND
PROSECUTE CLAIMS AND MAY OBJECT TO CLAIMS AFTER THE
CONFIRMATION OR EFFECTIVE DATE OF THE PLAN IRRESPECTIVE OF
WHETHER THIS ~~THIRD~~FOURTH AMENDED DISCLOSURE STATEMENT
IDENTIFIES ANY SUCH CLAIMS OR OBJECTIONS TO CLAIMS.

THE BANK IS MAKING THE STATEMENTS AND PROVIDING THE
FINANCIAL INFORMATION CONTAINED IN THIS ~~THIRD~~FOURTH AMENDED
DISCLOSURE STATEMENT AS OF THE DATE HEREOF, UNLESS OTHERWISE
SPECIFICALLY NOTED. ALTHOUGH THE BANK MAY SUBSEQUENTLY UPDATE

THE INFORMATION IN THIS ~~THIRD~~FOURTH AMENDED DISCLOSURE STATEMENT, THE BANK HAS NO AFFIRMATIVE DUTY TO DO SO, AND EXPRESSLY DISCLAIMS ANY DUTY TO PUBLICLY UPDATE ANY FORWARD-LOOKING STATEMENTS, WHETHER AS A RESULT OF NEW INFORMATION, FUTURE EVENTS, OR OTHERWISE. HOLDERS OF CLAIMS OR INTERESTS REVIEWING THIS ~~THIRD~~FOURTH AMENDED DISCLOSURE STATEMENT SHOULD NOT INFER THAT, AT THE TIME OF THEIR REVIEW, THE FACTS SET FORTH HEREIN HAVE NOT CHANGED SINCE THIS ~~THIRD~~FOURTH AMENDED DISCLOSURE STATEMENT WAS FILED. INFORMATION CONTAINED HEREIN IS SUBJECT TO COMPLETION, MODIFICATION, OR AMENDMENT. THE BANK RESERVES THE RIGHT TO FILE AN AMENDED OR MODIFIED PLAN AND RELATED ~~THIRD~~FOURTH AMENDED DISCLOSURE STATEMENT FROM TIME TO TIME.

THE BANK HAS NOT AUTHORIZED ANY ENTITY TO GIVE ANY INFORMATION ABOUT OR CONCERNING THE PLAN OTHER THAN THAT WHICH IS CONTAINED IN THIS ~~THIRD~~FOURTH AMENDED DISCLOSURE STATEMENT. THE BANK HAS NOT AUTHORIZED ANY REPRESENTATIONS CONCERNING THE DEBTOR OR THE VALUE OF THEIR PROPERTY OTHER THAN AS SET FORTH IN THIS ~~THIRD~~FOURTH AMENDED DISCLOSURE STATEMENT.

IF THE PLAN IS CONFIRMED BY THE BANKRUPTCY COURT AND THE EFFECTIVE DATE OCCURS, ALL HOLDERS OF CLAIMS OR INTERESTS (INCLUDING THOSE HOLDERS OF CLAIMS WHO DO NOT SUBMIT BALLOTS TO ACCEPT OR REJECT THE PLAN, WHO VOTE TO REJECT THE PLAN, OR WHO ARE NOT ENTITLED TO VOTE ON THE PLAN) WILL BE BOUND BY THE TERMS OF THE PLAN.

THE CONFIRMATION AND EFFECTIVENESS OF THE PLAN ARE SUBJECT TO CERTAIN MATERIAL CONDITIONS PRECEDENT DESCRIBED HEREIN AND SET FORTH IN ARTICLE IX OF THE PLAN. THERE IS NO ASSURANCE THAT THE PLAN WILL BE CONFIRMED, OR IF CONFIRMED, THAT THE CONDITIONS REQUIRED TO BE SATISFIED FOR THE PLAN TO GO EFFECTIVE WILL BE SATISFIED (OR WAIVED).

IF CONFIRMATION OR EFFECTIVENESS OF THE PLAN DOES NOT OCCUR, THE PLAN SHALL ACT AS A MOTION SEEKING A DISMISSAL OF THE CHAPTER 11 CASE IN ACCORDANCE WITH THE BANKRUPTCY CODE. FURTHER, THE UNITED STATES TRUSTEE WILL SEEK TO CONVERT THIS CASE TO A CHAPTER 7 CASE.

YOU ARE ENCOURAGED TO READ THE PLAN AND THIS ~~THIRD~~FOURTH AMENDED DISCLOSURE STATEMENT IN ITS ENTIRETY BEFORE SUBMITTING YOUR BALLOT TO VOTE ON THE PLAN.

THE BANKRUPTCY COURT'S APPROVAL OF THIS ~~THIRD~~FOURTH AMENDED DISCLOSURE STATEMENT DOES NOT CONSTITUTE A GUARANTEE BY THE COURT OF THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN OR AN ENDORSEMENT BY THE BANKRUPTCY COURT OF THE MERITS OF THE PLAN.

THIS ~~THIRD~~FOURTH AMENDED DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3016(B) AND IS NOT NECESSARILY PREPARED IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER SIMILAR LAWS. THIS ~~THIRD~~FOURTH AMENDED DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION (THE "SEC") OR ANY SIMILAR FEDERAL, STATE, LOCAL, OR FOREIGN REGULATORY AGENCY, NOR HAS THE SEC OR ANY OTHER AGENCY PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED IN THIS ~~THIRD~~FOURTH AMENDED DISCLOSURE STATEMENT.

THE BANK HAS SOUGHT TO ENSURE THE ACCURACY OF THE FINANCIAL INFORMATION PROVIDED IN THIS ~~THIRD~~FOURTH AMENDED DISCLOSURE STATEMENT; HOWEVER, THE FINANCIAL INFORMATION CONTAINED IN THIS ~~THIRD~~FOURTH AMENDED DISCLOSURE STATEMENT OR INCORPORATED HEREIN BY REFERENCE HAS NOT BEEN, AND WILL NOT BE, AUDITED OR REVIEWED BY INDEPENDENT AUDITORS UNLESS EXPLICITLY PROVIDED OTHERWISE.

## TABLE OF CONTENTS

I.      INTRODUCTION

II.     PRELIMINARY STATEMENT

III.    THE CHAPTER 11 PLAN

IV.     THE DEBTOR'S HISTORY, STRUCTURE, AND BUSINESS OVERVIEW

V.      EVENTS LEADING UP TO THE CHAPTER 11 CASE

VI.     EVENTS DURING THE CHAPTER 11 CASE

VII.    SOLICITATION AND VOTING PROCEDURES

VIII.   CONFIRMATION OF THE PLAN

IX.     EFFECT OF THE PLAN ON CLAIMS, INTERESTS, AND RIGHTS OF ACTION


## EXHIBITS

EXHIBIT A:  CHAPTER 11 PLAN OF LIQUIDATION FOR EAST BROADWAY MALL

EXHIBIT B:  TERM SHEET

## I.    INTRODUCTION

Bank of Hope f/k/a BBCN Bank ("Bank of Hope" or "Bank" or 'BOH'), secured creditor for the chapter 11 estate (the "Estate') of the above-captioned debtor, East Broadway Mall ("Debtor" or "EBM') submits this disclosure statement (this "~~Third~~Fourth Amended Disclosure Statement'), pursuant to section 1125 of the Bankruptcy Code, to Holders of Claims against and Interests (each as defined in the Plan) in the Debtor in connection with the solicitation of votes for acceptance of the Chapter 11 Plan of East Broadway Mall (the "Plan').[1] A copy of the Plan is attached hereto as **Exhibit A** and incorporated herein by reference. The rules of interpretation set forth in Article I.B of the Plan govern the interpretation of this ~~Third~~Fourth Amended Disclosure Statement.  Also accompanying the Plan and Statement is a creditor's voting ballot (the "Ballot") for the acceptance or rejection of the Plan, together with a copy of the Order approving the Statement and Scheduling a Hearing on Confirmation of the Plan.

**IN ADDITION TO CASTING YOUR VOTE TO ACCEPT OR REJECT THE PLAN, YOU MAY OBJECT ~~TO THE ADEQUACY OF THE DISCLOSURES MADE IN THIS DOCUMENT, OR YOU MAY OBJECT~~ TO THE TERMS OF THE PROPOSED PLAN. ~~IF YOU WISH TO OBJECT TO THE ADEQUACY OF THE DISCLOSURES, YOU MAY DO SO BY MAY 30, 2023.~~ IF YOU WISH TO OBJECT TO THE TERMS OF THE PROPOSED PLAN, YOU MUST DO SO BY ~~JULY 18~~_____, 2023.**

**YOUR BALLOT STATING HOW YOU ARE VOTING ON THE PLAN MUST BE RETURNED SO AS TO BE RECEIVED BY ~~JULY 18~~_____, 2023. THE BALLOT MUST BE SENT TO THE FOLLOWING ADDRESS:**

WINDELS MARX LANE & MITTENDORF, LLP
*Attorneys for Bank of Hope*
James M. Sullivan
Robert J. Malatak
156 West 56th Street
New York, New York 10019

**A HEARING ON THE CONFIRMATION OF THE PLAN IS SCHEDULED FOR ~~JULY 25~~_____, 2023 AT ~~10~~__:00 ~~A~~__.M. AT THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK, 1 BOWLING GREEN, NEW YORK, NY 1004.**

**THE BANK BELIEVES THAT THE COMPROMISES CONTEMPLATED IN THE PLAN ARE FAIR AND EQUITABLE, MAXIMIZE THE VALUE OF THE DEBTOR'S ESTATE, AND PROVIDE THE BEST RECOVERY TO STAKEHOLDERS UNDER THE CIRCUMSTANCES. THE BANK BELIEVES THE PLAN REPRESENTS THE**

---

[1] Capitalized terms used but not otherwise defined in this ~~Third~~Fourth Amended Disclosure Statement shall have the meaning ascribed to such terms in the Plan.

**BEST AVAILABLE OPTION FOR COMPLETING THE CHAPTER 11 CASE. THE
BANK RECOMMENDS THAT YOU VOTE TO ACCEPT THE PLAN.**

## II.    PRELIMINARY STATEMENT

Bank of Hope, a Secured Creditor, provides the following information regarding its
proposed Chapter 11 Plan of Liquidation.

The Plan is a contract between the Debtor and all of its creditor constituencies. It provides
the mechanism, timing, and details of all treatment and payment of creditor Claims. It is the
blueprint for the liquidation and distribution of the Debtor's assets for the benefit of the Debtor's
creditors. The information contained in this document is designed to provide Claimants and
Interest Holders of the Debtor with information to enable them to make an informed judgment
concerning the method by which the Plan will be carried out.  **If the Bankruptcy Court
confirms the Plan, it will be binding on the Debtor, its creditors, equity holders, and other
interested parties.**

The Plan provides for the assumption and assignment of the Debtor's remaining interest
in the Lease to the Approved New Tenant in accordance with the provisions of the Term Sheet
and the June 21~~22~~, 2022 Stipulation and Order.   In late summer 2022, the Debtor submitted a
revised proposal to the City and BOH for the Debtor to be permitted to remain as the tenant
under the Lease pursuant to certain proposed amendments.  BOH was thereafter advised that the
City determined to reject the Debtor's revised proposal, and preferred to go forward with the
assignment to Broadway East Group, LLC as the Approved New Tenant.

On December 5, 2022, BOH filed a motion seeking approval of a prior disclosure
statement and other related relief, and would later submit two additional versions of the
disclosure statement. While that motion was pending, two additional parties expressed interest in
becoming the Approved New Tenant.  With the Court's guidance, BOH and the City determined
that the best approach would be to receive best and final offers from all three parties. Because
negotiations were ongoing, the Court denied the original motion and entered an order directing
any party, including BOH, to file a motion for approval of a disclosure statement and plan by
April 28, 2023.

BOH and the City reached out to the interested parties, as well as the Debtor, and
requested their best and final offers by April 11, 2023.  Each interested party timely submitted its
best and final offer by the deadline.[2]  BOH and the City collectively determined that Broadway
East Group, LLC had submitted the highest and best offer. The City and BOH will therefore go
forward with the assignment to Broadway East Group, LLC as the Approved New Tenant. The
terms of this agreement are described in greater detail *infra* and in attached **Exhibit B**.  BOH has
therefore filed the Plan in order to effectuate the transaction with Broadway East Group, LLC as
the Approved New Tenant.

BOH reserves the right to propose additional changes to this Plan in accordance with a
Plan Supplement that will be filed on or prior to the deadline for filing the Plan Supplement and

---

[2] On April 27, 2023, Debtor also submitted a revised offer, which the City and BOH also reviewed despite its lack
of timeliness.

hearing on confirmation of the Plan. The Plan Supplement will identify the Approved New Tenant, including details of the Approved New Tenant and Term Sheet and/or New Lease.

BOH believes the Plan will provide the best possible return to Holders of Claims and Interests and is in the best interests of the Debtor, its Creditors, and Interest Holders.

## III. THE CHAPTER 11 PLAN

A. *The Chapter 11 Plan*

Upon the Effective Date, the Debtor's remaining interest in the Lease shall be assumed and assigned to the Approved New Tenant, Broadway East Group, LLC, or such other Approved New Tenant as may be agreed to by BOH and the City as disclosed in the Plan Supplement before the Confirmation Hearing, except that effective on the Effective Date the terms of the Lease shall be governed by the form of New Lease that has been substantially negotiated and agreed to by the Approved New Tenant and the City and BOH would receive a portion of the consideration in exchange for releasing its lien on the Lease. The original term sheet and the signed offer letter dated April 11, 2023 modifying those terms, which have been accepted by BOH and the City, are attached hereto as **Exhibit B**. The material terms of the New Lease include the following:

- New Lease Term: 30 years (20-year initial term plus 10-year renewal term)
- Space: East Broadway Mall, 88 East Broadway, New York, NY (the "Property")
- Rent Concession: No rent for first 16 months after lease effective date
- PILOT Concession: No Pilot during rent concession period
- PILOT: After conclusion of rent concession period, PILOT will start based on actual Department of Finance assessment
- PILOT Escalation: PILOT payments are based on actual Department of Finance assessment
- Initial Rent Amount: After conclusion of rent concession period, annual rent shall be $450,000 payable in monthly installments
- Rent Escalation: 3% annual rent escalation commencing on the 3rd anniversary of the Effective ~~date~~Date until the expiration of the lease, including the renewal term.
- Rent Security: Three (3) months' rent
- Improvement Amount: Approved New Tenant will invest a minimum of $5,000,000 self-funded to improve the building.
  - The building must be brought into compliance with all codes, laws and ordinances
- Certain agreed upon capital and aesthetic improvements to the interior and façade of the building must be completed prior to conclusion of the rent concession period, and proof of the expenditure on the required improvements in the agreed-upon amount must be demonstrated to DCAS.
- Existing subtenants: Approved New Tenant shall agree to continue to rent to the existing subtenants at their existing rental rate for a minimum of two years, with a possible third year, with the rental to increase third year in proportion to increase to annual base rent of ground lease.
- Lump Sum Payments in Aggregate of $4,000,000 by Approved New Tenant:

- o Payment to Bank of Hope: $2,000,000 to be made upon Agreement Effective Date.[3,4]
- o Payment to City: $2,000,000, to be made as agreed between the City and Approved New Tenant.[5]
- BOH agrees that its receipt of the BOH Payment from Approved New Tenant will be in partial satisfaction of the BOH Claim and all amounts due, or to become due, under the Loan Documents.
- Upon BOH's receipt of the BOH Payment from Approved New Tenant, BOH shall release all mortgage liens on the Premises, and BOH shall exchange mutual general releases, releasing the City and the Approved New Tenant.
- All future rent, including PILOT and base rent payments under the New Lease shall be made to the City as Landlord.
- Upon receipt of the City Payment from the Approved New Tenant, the City will be in full and final satisfaction of the City Claim. The City shall waive any and all rejection damages, and any other pre-petition and post-petition claims and rights to payment with respect to the rejected Lease, subject to obtaining any required approvals, authorizations and consents of governmental and other entities.
- BOH, the City, and the Approved New Tenant will share equally share(in respective 1/3 amounts) the Administrative Expenses incurred to consummate the Plan, including. For purposes of the New Lease and the Plan, the legal fees ofincurred by BOH. to consummate the plan shall be treated as such Administrative Expenses. If the parties cannot come to an agreement as to the amount of any such expenses, then the Court shall retain jurisdiction to determine and approve the amount.
- BOH, the City, and the Approved New Tenant will share equally share(in respective 1/3 amounts) responsibility for the payment of allowed Administrative Expenses, Allowed Priority Claims, and Allowed Priority Claims, including governmental tax claims. The City intends to pay its portion of such allowed claims and expenses from the funds received from the Approved New Tenant under the New Lease. To the extent arrangements have not been made between the City and the Approved New Tenant regarding the timing of receipt of such funds, the City will make other arrangements which will be disclosed in the Plan Supplement.

Community relations issues are also being worked through to finalize the New Lease. On June 20, 2023, the land use subcommittee of the community board held a meeting at which they approved the plans for the New Lease. Thereafter, on June 27, 2023, the full community board reviewed the plans for the New Lease and approved it. An additional step remains for the parties to make a presentation of the New Lease at a borough board meeting. The parties expect that

---

[3] The Term Sheet includes a definition of the Agreement's Effective Date and includes references thereto. For the sake of clarity, the Agreement Effective Date and Effective Date referenced herein and defined and referenced in the Plan are equivalent terms.

[4] In addition, in furtherance of the successful implementation of the Agreement, BOH and Approved New Tenant have entered into an escrow agreement as of June 9, 2023, a copy of which was filed on the Case Docket at ECF No. 176 (the "Escrow Agreement"). Pursuant to the Escrow Agreement, Approved New Tenant has to date transferred $1 million to the escrow account.

[5] The New Lease has been negotiated for many months and is in a substantial form of completion, but one of the last terms of the New Lease remaining to be finalized is the timing of this payment to the City. While a specific date has not yet been identified, the parties confirm that the funds will be received by the City such that the City will be able to meet its expense-sharing obligations under the New Lease as set forth herein.

such a presentation to the borough board will occur by September 2023 at the latest. The Plan proponents do not anticipate that this process will interfere with the implementation of the Plan and understands that the City will provide an update on the outcome of that meeting as soon as possible.

BOH reserves the right to propose additional changes to this Plan in accordance with a Plan Supplement. The terms are subject to modification as may be agreed by BOH and the City as disclosed in the Plan Supplement that will be filed on or prior to the deadline for filing the Plan Supplement and before the Confirmation Hearing.

B.      *Classification and Treatment of Unclassified Claims*

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expenses and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III.

### i.      Administrative Expenses

Except as otherwise provided herein, requests for payment of Allowed Administrative Expenses must be filed by the applicable Administrative Claims Bar Dates. Holders of Administrative Expenses that are required to, but do not, file a request for payment of such Administrative Expenses by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Expenses against the Debtor or the Estate, and such Administrative Expenses shall be deemed satisfied, settled, and released as of the Effective Date.

### ii.      Statutory Fees

All fees due and payable pursuant to section 1930 of Title 28 of the United States Code before the Effective Date shall be paid by the Debtor. On and after the Effective Date, to the extent applicable, the Plan Administrator shall pay any and all such fees when due and payable.

### iii.      Treatment of Unclassified Claims

(1)   **Administrative Expenses.** Except as may be agreed by an Administrative Claimant, the Debtor must pay all Administrative Expenses in full. If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "allow" the Administrative Expense. Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date must be paid on the Effective Date of the Plan, or upon such other terms as agreed upon by the Debtor and the Administrative Claimant. If the Administrative Expense is disputed, payment will be made after the Administrative Expense is allowed by the Bankruptcy Court.

(2)   **Bar Date for Administrative Expenses.** Proofs of Administrative Expenses or requests for the allowance and payment of Administrative Expenses for the period from the Petition Date through the Effective Date must be filed by the applicable Administrative Claims Bar Dates. (*See* Section IV(G) *infra* and the Plan at Article I.A for relevant discussions and

definitions of the applicable Administrative Claims Bar Dates.) ~~Any~~Except as explicitly set forth in this Plan, any entity failing to file a proof of Administrative Expenses or request for payment thereof on or before the applicable Administrative Claims Bar Dates shall be forever barred from asserting such Claim against the Debtor or its Estate, and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process, or act to collect, offset, or recover such Administrative Expenses.

(3)    **Priority Tax Claims**. Priority Tax Claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

C.    *Classification and Treatment of Classified Claims and Interests.*

i.    **Classified Claims.**

All other claims and interests are separated into one of the following classes. Classes 1 and 2 are for claims "secured" by collateral. Class 3 is for "priority" unsecured claims. Class 4 is for unsecured claims that are not "priority" unsecured claims, and Class 5 is for "interests".

(1)    **Class 1 –** The **Secured Claim of BOH** pursuant to the Cash Collateral Order.

(2)    **Class 2 – Secured Claims** consist of all other secured claims secured by Collateral, which generally are entitled to be paid in full, over time, with interest. As of now, there are no Secured Class in this Class. However, if any secured claims are filed, those Secured Claims will be in this Class.

(3)    **Class 3 – Priority Claims** consists of "priority" unsecured claims. The NYS Department of Taxation and Finance alleges that a portion of its claim is a Priority Tax Claim for estimated taxes in the amount of $14,007.22; NYC Department of Finance alleges it has a Priority Tax Claim under 11 U.S.C. 507(a)(8) for unpaid taxes in the amount of $665,731.12; these alleged claims are in Class 3A.[36]  BOH is unaware of any other Priority Claims. However, if any non-tax Priority Claims are filed, those Claims will be in Class 3B.

(4)    **Class 4 – Non-Priority Unsecured Claims** consists of unsecured claims that are not "priority" unsecured claims, including the Super-Priority adequate protection claim of BOH (Class 4A), the Claim of the City, which will be waiving its Claim in order to allow other Unsecured Creditors to receive Distribution under the Plan, and any other any other unsecured Claims that are not "priority" unsecured claims, including the unsecured deficiency claim of BOH and any unsecured claims listed in Debtor's Petition under Schedule F approximately in the amount of $35,000.00 and for any other filed Proofs of Claims that become allowed Claims

---

[36] The IRS had previously alleged it held a Priority Tax Claim under 11 U.S.C. 507(a)(8) for estimated taxes in the amount of $283,912.00, but on April 25, 2023, it filed an amended claim, No. 1-5, stating that its claim amount now equaled $0.00 (and was no longer entitled to priority).

(Class 4B).  Class 4C is a Convenience class for any Creditor in classes 2, 3, or 4 that elect to receive a 10% distribution on its Allowed Claim capped at $2,000.

(5)    **Class 5 - Interests:** If Debtor is an organization then "interests" means ownership interests – such as corporate stock, or a partner's interest in a partnership – and if Debtor is an individual, then Debtor is the interest holder.

| Class | Treatment | Entitled to Vote | Estimated Recovery |
|---|---|---|---|
| Class 1 – Secured Claims (BOH Claim) | Impaired. BOH will receive a 100% distribution on account of the secured portion of its class 1 claim except to the extent BOH carves out a portion of its class 1 claim to fund other required distributions under the Plan. | Yes | Unknown |
| Class 2 – Secured Claims (other claims) | Unimpaired. Will receive payment in full on account of fully secured portion of class 2 claim unless otherwise agreed by Claimant. Unsecured portion of Claim will be treated as a class 4B or 4C claim. | No (Deemed Accepted) | 100% |
| Class 3A – Priority Claims (Bankruptcy Code Section 507(a)(8) Tax Claims) | Unimpaired. Class 3A Claims will be paid in full over a 5-year period unless otherwise agreed by Claimant. | No | 100% |
| Class 3B – Other Priority Claims | Unimpaired. Will be paid in full upon Effective Date unless | No | 100% |

{12171648:5} {12195881:4} 13

| | | | |
|---|---|---|---|
| | otherwise agreed by Claimant. | | |
| Class 4A – BOH Super-Priority Adequate Protection Claim as per Final Cash Collateral Order | Impaired. Will receive a distribution of Estate assets on account of Allowed Claim after claims in classes 1, 2, 3B, and 4C are paid in full. | Yes | Unknown |
| Class 4B – City Claim and other Unsecured Claims (including BOH's unsecured deficiency claim) | Impaired. City will waive its Lease cure claim for the benefit of other Creditors except as provided in the Plan. Other Creditors will receive their pro rata distribution of Estate assets on account of Allowed Claims after claims 1, 2, 3B, 4A and 4C are paid in full. | Yes | Unknown |
| Class 4C – Convenience | Impaired. A Creditor may elect to receive a distribution as part of class 4C on the ~~effective date~~Effective Date equal to 10% of its allowed claim capped at $2000. | Yes | 10% |
| Class 5 - Interests | Impaired. Will receive no distribution. | No (Deemed Rejected) | 0% |

The Plan satisfies the requirements under the Bankruptcy Code, benefits all parties in interest, and is superior than any potential alternative, including a chapter 7 liquidation for the following reasons:

If the Plan is not accepted, pursuant to the Stipulation and Order, the City has the right to possession of the Mall, subject to the lien rights of BOH.  The Debtor irrevocably consented that in the event that a settlement was not reached by the parties, then the Debtor's right, title and interest in the Lease shall be assigned to the Approved New Tenant as designated by the City and the Bank, upon terms and conditions acceptable to the City and BOH.  The Debtor also irrevocably consented that, in the event that the City and the BOH did not designate the Approved New Tenant, then the Lease conclusively shall be deemed terminated, and the City shall be entitled as landlord to immediate possession of the Premises.

As of now, the reason that the Debtor's remaining interest in the Lease remains an asset of the Estate available for the benefit or Creditors is because of the proposed agreement between the City, BOH, and the Approved New Tenant as outlined in the Term Sheet whereby whatever remains of the Debtor's interest in the ground lease for the Mall will be assumed and assigned (as amended) to the Approved New Tenant, notwithstanding that the defaults under the Lease will not be cured in exchange for substantial payments by the Approved New Tenant to the BOH and the City.

The proposed agreement between the City, BOH, and the Approved New Tenant will permit Administrative Claimants and Unsecured Creditors to receive a Distribution because the City, BOH, and the Approved New Tenant will be required to pay such claims to the extent provided under the Plan out of monies that would otherwise be due to the City and BOH.

The Plan also benefits the Guarantors of BOH's debt because the Guarantors will receive a dollar for dollar credit against the judgment that BOH has obtained against the Guarantors to the extent BOH receives any Distributions under the Plan.

Therefore, if the Plan is not confirmed, the City will retake possession of the Mall, the Mall will no longer be an asset of the Estate from which Creditors can receive a recovery, the Chapter 11 Case will be converted to Chapter 7 or dismissed, BOH will enforce its rights to collect all of the Debtor's remaining assets as permitted under the Cash Collateral Order, Administrative Claimants and Unsecured Creditors will receive no Distribution from the Debtor's Estate, and the Guarantors will receive no credit for amounts paid to it in connection with the Plan.

D.    *Implementation of the Plan*

i.    **Plan Administrator.**

1.    The Plan Supplement shall name the Plan Administrator selected by BOH to implement the terms of the Plan.

2.    The Plan Administrator shall be designated by BOH.

3.      The salient terms of the Plan Administrator's employment, including the Plan Administrator's duties and compensation (which compensation shall be negotiated by Bank of Hope) shall be set forth in the Plan Supplement. The Plan Administrator shall be entitled to reasonable compensation in an amount consistent with that of similar functionaries in similar types of bankruptcy proceedings.

4.      The Plan Administrator shall serve as a fiduciary on behalf of the Creditors of the Debtor's Chapter 11 Case and shall use its own judgment and discretion in administering (or in the case of litigation, prosecuting or settling) and liquidating Estate Property in the manner and subject to the limitations set forth in the Plan.

5.      The Plan Administrator shall have no liability to the Debtor, its Creditors, or its equity holders. The Debtor shall indemnify and hold harmless the Plan Administrator for any losses incurred in its capacity as such, except to the extent such losses were the result of such person's gross negligence or willful misconduct.

6.      In the event the Plan Administrator dies, is terminated, or resigns for any reason, BOH shall designate a successor. The Plan Administrator shall be required to disclose its connections, if any, with the Debtor, its Creditors, any other party in interest, and the U.S. Trustee.

ii.      **Directors/Officers/Equity/Assets on the Effective Date.**

1.      On the Effective Date, the authority, power and incumbency of the persons then acting as directors and officers of Debtor shall be terminated and such directors and officers shall be deemed to have resigned or to have been removed without cause.

2.      On the Effective Date, the Plan Administrator shall be appointed as and become, and shall succeed to such powers as would have been applicable to, Debtor's officers and directors.

3.      Notwithstanding anything to the contrary herein, all assets of Debtor shall remain assets of Debtor until they are transferred or distributed by the Plan Administrator pursuant to the terms of this Plan or the Plan Supplement.

4.      After the Effective Date, the Plan Administrator may decide, in its sole discretion, to maintain Debtor as a corporation in good standing until such time as all aspects of the Plan pertaining to Debtor have been completed (provided, however, that Debtor shall conduct no business except as necessary or appropriate to implement the Plan) or at such time as the Plan Administrator considers appropriate and consistent with the implementation of the Plan pertaining to Debtor may dissolve Debtor and complete the winding up of Debtor in accordance with applicable law. In connection with the liquidation of Debtor, the Plan Administrator may act

as liquidating agent for Debtor or transfer all assets of Debtor to a trust or other entity created to make distributions to holders of Allowed Claims against and Equity Interests in Debtor. The Plan Administrator may act as trustee of such a trust if and as permitted by law or in the capacity of management of any other entity created to make such distributions. As soon as practicable after all aspects of the Plan pertaining to Debtor have been completed, Debtor shall be dissolved and wound up in accordance with applicable law.

5.    As of the Effective Date, the certificate of incorporation and by-laws of Debtor shall be amended to the extent necessary to carry out the provisions of the Plan. The amended certificate and by-laws of Debtor (if any) shall be included in the Plan Supplement.

iii.    **Duties and Powers of the Plan Administrator.**

The Plan Administrator, together with its representatives and professionals, shall administer the Plan with respect to Debtor. The duties and powers of the Plan Administrator shall include all powers necessary to implement the Plan with respect to Debtor and administrate and liquidate the assets of Debtor, including, without limitation, the duties and powers listed herein.

1.    **Authority.** The Plan Administrator may exercise all power and authority that may be or could have been exercised, commence all proceedings that may be or could have been commenced and take all actions that may be or could have been taken by an officer, director, or shareholder of Debtor with like effect as if authorized, exercised, and taken by unanimous action of such officers and directors, without shareholder approval, including, without limitation, amendment of the certificate of incorporation and by-laws of Debtor and the dissolution of Debtor.

2.    **Claims.** The Plan Administrator may object to, seek to subordinate, compromise, or settle any or all Claims against Debtor, except as may be set forth in a prior order of the Bankruptcy Court.

3.    **Liquidation of Assets**. The Plan Administrator shall, in an expeditious but orderly manner liquidate and convert to cash the assets of Debtor, make timely Distributions, and not unduly prolong the duration of Debtor. In so doing, the Plan Administrator shall exercise its reasonable business judgment in liquidating the assets of Debtor to maximize recoveries. The liquidation of such assets of Debtor may be accomplished through the sale of the assets of Debtor (in whole or in combination, and including the sale of any Causes of Action), through the prosecution, compromise and settlement, abandonment, or dismissal of any or all claims or Causes of Action, or otherwise.

4.    **Abandoning Assets.** The Plan Administrator may abandon in any commercially reasonable manner, including abandonment or donation to a charitable organization of its choice, any assets, if it concludes that they are of no benefit to Debtor's Estate.

5.    **Causes of Action**. The Plan Administrator may pursue Causes of Action of Debtor. The Plan Administrator shall have discretion to elect whether or not to pursue any and all Causes of Action of Debtor and whether and when to compromise, settle, abandon, dismiss, or otherwise dispose of any such Causes of Action, as the Plan Administrator may determine is in the best interests of the holders of Claims against and Equity Interests in Debtor, and the Plan Administrator shall have no liability to any of the Debtor, its Estates, its Creditors, its shareholders, or any other party for the outcome of its decisions in this regard.

6.    **Retention of Professionals**. The Plan Administrator may continue to employ any or all of the attorneys and financial advisors employed by the Debtor and its Creditors for any purpose, including but not limited to Bankruptcy Causes of Action. In addition, the Plan Administrator may file applications to engage other professionals to assist in the performance of its duties.

7.    **Books and Records.** The Plan Administrator shall maintain Debtor's books and records, maintain accounts, make distributions, and take other actions consistent with the Plan and the implementation hereof.

8.    **Agreements.** The Plan Administrator may enter into any agreement or execute any document required by or consistent with the Plan and perform all of Debtor's obligations thereunder.

9.    **Investment Power**. The right and power of the Plan Administrator to invest any of Debtor's Cash, including cash proceeds from the liquidation of any assets of Debtor and the realization or disposition of any Causes of Action, and any income earned by Debtor shall be limited to the right and power to invest such Cash in United States Treasury Bills, interest-bearing certificates of deposit, tax exempt securities having at the time of acquisition an investment grade credit rating as assigned by a nationally recognized credit rating service or investments permitted by section 345 of the Bankruptcy Code or otherwise authorized by the Bankruptcy Court, using prudent efforts to enhance the rates of interest earned on such Cash without inordinate credit risk or interest rate risk; provided, however, that the Plan Administrator may expend the Cash of Debtor to effectuate the provisions of the Plan.

10.    **Tax Obligations**. The Plan Administrator shall have the powers of administration regarding all of Debtor's tax obligations, including filing of returns. The Plan Administrator shall (i) endeavor to complete and file within ninety (90) days after the dissolution of Debtor's final federal, state and local tax returns, (ii) request, if necessary, an expedited determination of any unpaid tax liability of Debtor or its Estate under Bankruptcy Code section 505(b) for all taxable periods of Debtor ending after the Petition Date through the dissolution of Debtor as determined under applicable tax laws and (iii) represent the interest and account of Debtor or its Estate before any taxing authority in all matters including, without limitation, any action, suit, proceeding or audit.

11.    **Reporting Duties.** ~~The~~On and after the Effective Date, the Plan Administrator shall be responsible for filing informational returns on behalf of Debtor and paying any tax liability of Debtor. The Plan Administrator shall file (or cause to be filed) any other statements, returns or disclosures relating to Debtor that are required by any governmental unit or applicable law. Prior to the Effective Date, the Debtor shall be responsible for such duties.

12.    **Reasonable Fees and Expenses**. The Plan Administrator may incur any reasonable and necessary expenses in connection with the performance of its duties under the Plan.

13.    **Other Actions.** The Plan Administrator may take all other actions not inconsistent with the provisions of the Plan which the Plan Administrator deems reasonably necessary or desirable with respect to administering the Plan.

iv.    **Closing of Debtor's Chapter 11 Case.**

When all Disputed Claims filed against Debtor have become Allowed Claims or have been disallowed by Final Order and all remaining assets of Debtor have been liquidated and converted into Cash or abandoned and such Cash has been distributed in accordance with the Plan, the Plan Administrator shall seek authority from the Bankruptcy Court to close Debtor's Chapter 11 Case. The Plan Administrator shall file a Final Report, the Chapter 11 Cases may be closed, and the Debtor shall be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Debtor or payments to be made in connection therewith; provided, however, that the Plan Administrator may file with the Office of the Secretary of State for the State of New York a certificate of dissolution.

v.    **Section 1146 Exemption**

To the extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to the Approved New Tenant or to any other Person) of property under the Plan or pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtor or to the Approved New Tenant; (2) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (3) the making, assignment, or recording of any lease or sublease; or (4) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such

tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(c) of the Bankruptcy Code, shall forgo the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

E.    *Treatment of Executory Contracts and Unexpired Leases*

i.    **Assumption and Rejection of Executory Contracts and Unexpired Leases.**

Except as otherwise provided herein (including the treatment of the subtenants as described in Section III(A) *supra*), each Executory Contract shall be deemed rejected pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, unless any such Executory Contract: (1) was assumed or rejected previously by a Debtor; (2) expired or terminated pursuant to its own terms before the Effective Date; or (3) is the subject of a motion to reject pending on the Confirmation Date. Entry of the Confirmation Order shall constitute a Final Order approving the assumptions or rejections of such Executory Contracts as set forth in the Plan, all pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

All assumed Executory Contracts shall remain in full force and effect for the benefit of the Approved New Tenant, and be enforceable by the Approved New Tenant in accordance with its terms, notwithstanding any provision in such assumed Executory Contract that prohibits, restricts, or conditions such assumption, assignment, or transfer. Any provision in the assumed Executory Contracts that purports to declare a breach or default based in whole or in part on commencement or continuance of this Chapter 11 Case or any successor cases shall be deemed unenforceable. To the extent any provision in any Executory Contract assumed pursuant to the Plan (including, without limitation, any "change of control" provision) restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the Approved New Tenant Debtor's assumption of such Executory Contract, then such provision will be deemed unenforceable such that the transactions contemplated by the Plan will not entitle the non-debtor party thereto to terminate such Executory Contract or to exercise any other default-related rights with respect thereto. Each Executory Contract assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall vest in and be fully enforceable by the Approved New Tenant in accordance with its terms, except as such terms may have been modified by a court order or by applicable law.

The Approved New Tenant has the right to request the assumption and assignment of any Executory Contracts prior to the Effective Date. A listing of the Executory Contracts that may be assumed and assigned to Approved New Tenant will be attached or included in the Plan Supplement. For any Executory Contracts that will be assumed and assigned to the Approved New Tenant, any cure costs associated with such Executory Contract will be cured by the

Approved New Tenant within fifteen days of the Effective Date or such other date as may be agreed to between Approved New Tenant and the other party to the Executory Contract.

**ACCORDINGLY, BOH STRONGLY URGES YOU TO VOTE IN FAVOR OF THIS PLAN.**

## IV.    THE DEBTOR'S HISTORY, STRUCTURE, AND BUSINESS OVERVIEW

A.    *Filing of the Debtor's Chapter 11 Case.*

On July 12, 2019, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Debtor has continued in possession of its property and the management of its business affairs as a debtor-in-possession pursuant to §§1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed.

B.    *Nature of the Debtor's Business.*

Debtor was founded in 1984. The business of the Debtor is to operate the Mall by subletting portions of it to various commercial/retail subtenants.

C.    *Legal Structure and Ownership.*

Debtor is a New York State corporation and the net lessee of land and a commercial mall at 88 East Broadway in the City, County and State of New York. Grace Chan is the President of the corporation and authorized representative of the Debtor. The Debtor has operated the land and the Mall pursuant to a commercial lease agreement with the City of New York and the Department of Citywide Administrative Services, an agency of the City responsible for administering real estate leases between the City and third parties.

D.    *Debtor's Assets.*

As reflected in the Schedule A/B of the Declaration attached to the Petition filed by Debtor, Debtor's estimated assets are as follows:

| | |
|---|---|
| Cash, cash equivalents, and financial assets. | $72, 981.00 |
| Deposits and prepayments. | $80,560.00 |
| Accounts receivable. | $0 |
| Investments. | $0 |
| Inventory. | $0 |
| Farming and fishing-related assets. | $0 |
| Office furniture, fixtures, and equipment, and collectibles. | $1,550.00 |

| | |
|---|---|
| Machinery, equipment, and vehicles. | $0 |
| Real property. | $27,000,000.00 |
| Intangibles and intellectual property. | $0 |
| All other assets. | $0 |
| Total of all property on Schedule A/B. | $27,155,091.00 |

Summary:
Real Property: 27,000,000.00
Personal Property: $155,091.00
Total: $27,155,091.00

E.      *Debtor's Liabilities.*

In accordance with the Schedule D of the Declaration attached to the Petition filed by Debtor, Debtor's estimated secured claims are as follows:

A. Bank of Hope
   Lien: Nonpossessory, Non-purchase Money Security Interest
   $5,851,940.00

B. New York City Water Board
   Department of Environmental Protection
   Statutory lien
   $677,617.00

**Total Secured Claims: $6,529,557.00**

In accordance with the Schedule E/F of the Declaration attached to the Petition filed by Debtor, Debtor's estimated priority claims are as follows:

A. NYC DCAS
   City of New York
   Taxes and other government debts
   $8,794,245.00

**Total Priority Claims: $8,794,245.00**

In accordance with the Schedule E/F of the Declaration attached to the Petition filed by Debtor, Debtor's estimated non-priority unsecured claims are as follows:

A. Maximum Security NYC, Inc.
   Security
   $18,624.00

B. Miu & Co., LLP
   Accounting Services
   $16,607.00

**Total Non-Priority Unsecured Claims: $35,231.00**

**Total liabilities: $14,782,093.00**

F.    _Current and Historical Financial Conditions._

The following information regarding the gross revenue from operating the business is retrieved from Debtor's Chapter 11 Petition Declaration, specifically within the Business Income and Expenses section:

09/01/2016 to 8/31/2017: $2,275,820.00
09/01/2017 to 8/31/2018: $2,488,095.00
09/01/2018 to filing date: $2,621,419.00

Gross Business Income for Previous 12 Months: $2,304,000.00
Estimated Average Future Gross Monthly Income: $192,000.00
Estimates Future Monthly Expenses: $162,421.00
Estimated Average Net Monthly Income: $29,579.00

G.    _Proofs of Claim Filed._

The First Administrative Claims Bar Date has been set to October 26, 2022 for all Administrative Expenses incurred on or prior to September 20, 2022. ~~On April 26, 2023, Debtor filed a motion~~Pursuant to ~~set~~ the ~~last day to file administrative proofs of claim~~Court's order [ECF Docket No. ~~151~~165], ~~which seeks to set June 30, 2023 as~~ the Second Administrative Claims Bar Date has been set to June 30, 2023 for administrative claims accrued on or after September 21, 2022.[4]  The Plan contains a provision requiring Administrative Claimants with Administrative Expenses incurred after ~~the entry of the order establishing the Second Administrative Claims Bar Date~~June 30, 2023 to file a request for payment of such Administrative Expense prior to the Final Bar Date, which shall be the first business day that is 15 days following the Effective Date.

Proof of Claim Bar Date has been set to October 26, 2022 for nongovernmental entities, and November 26, 2022 for governmental entities. The following Proofs of Claim have been filed in this case:

(1)    Department of Treasury Internal Revenue Service filed a Proof of Claim in the amount of $0.00 [Claim 1-5];

(2)    Consolidated Edison Company of New York, Inc. filed a Proof of Claim in the amount of $5,708.98 for unpaid utility bills [Claim 2-1];

(3)    NYC Department of Finance Tax Audit and Enforcement Division filed a Proof of Claim in the amount of $662,939.43 for tax deficiencies but pursuant to ECF No. 30, this claim was withdrawn [Claim 3-1];

(4)    New York State Department of Taxation and Finance filed a Proof of Claim in the amount of $14,887.10 for taxes owed (Pre-Petition Proof of

---

[4] ~~Debtor's motion actually indicates that the June 30, 2023 bar date will cover claims filed on or after October 27, 2022; however, a hearing will be held on Debtor's motion on May 9, 2023, and based on the Bank's discussions with the Debtor, it is expected that the Court will modify the applicable period for the bar date as described supra._~~

Claim), but, as noted below, this claim was subsequently amended and superseded [Claim 4-1];

(5)    New York State Department of Taxation and Finance filed a Proof of Claim in the total amount of $15,882.22 estimated corporation taxes, penalties and interest owed during the periods ending in August 2016, August 2017, August 2018, and August 2019 ($14,007.22 for taxes, penalties and interest owed and labeled as Unsecured Priority Liabilities and $1,875.00 for taxes, penalties, and interest owed and labeled as General Unsecured Liabilities), which claim amends and supersedes its previously filed Claim 4-1, dated November 26, 2019 [Claim 6-1];

(6)    City of New York as Landlord filed a Proof of Claim in the amount of $16,504,196.79 for the City of New York's Claim under the Lease [Claim 7-1];

(7)    Bank of Hope filed a Proof of Claim in the amount of $5,851,940.00 for post-petition interest, costs, and expenses due under the loan documents, plus amounts due under the Cash Collateral Order [Claim 8-1]; and

(8)    NYC Department of Finance Tax Audit and Enforcement Division filed a Proof of Claim in the amount of $665,731.12 for tax deficiencies subject to priority status under Bankruptcy Code Section 507(a)(8) [Claim 11-1].

The following Administrative Expense Claims have been filed in this case:

(1)    New York State Department of Taxation and Finance filed a Proof of Claim in the amount of $2,525.22 for administrative expense tax liability, with respect to unpaid corporation taxes, penalties and interest owed during the periods ending August 2020 and August 2021 [Claim 5-1];

(2)    Terry Chan filed a Proof of Claim in the amount of $585,000 for Payroll, Building operation, Maintenance and Emergency Services [Claim 9-1];

(3)    Hersey Chan Realty, Inc. filed a Proof of Claim in the amount of $25,000.00 for payment made on behalf of East Broadway Mall to Titan Capital [Claim 10-1]; and

(4)    Upon information and belief, Consolidated Edison Company of New York, Inc. submitted to Debtor a notice of non-payment in the amount of $442,273.00 for post-petition unpaid utility bills; Debtor's counsel has advised that Debtor believes this amount is inflated and that the amount owed is much less than the amount requested. On May 23, 2023, Consolidated Edison Company of New York filed a Proof of Claim in the

amount of $114,654.49, identifying the basis of the claim as "GOODS SOLD" and attaching a statement showing charges from November 3, 2022 through May 8, 2023 [Claim No. 12-1].[7]

(5)   Bank of Hope filed an Administrative Expense Proof of Claim in the amount of not less than $188,000.00 for expenses incurred through June 30, 2023 for the preparation and pursuit of confirmation of the Plan [Claim No. 13-1].[8]

(6)   On June 16, 2023, Debtor's counsel Sferrazza & Keenan PLLC filed an application for interim professional compensation for the period from July 11, 2019 through June 14, 2023, seeking fees in the amount of $137,483.75 and expenses in the amount of $407.70 [ECF Docket No. 180].

According to income tax returns recently filed by the Debtor for tax periods through August 2019, no pre-petition income taxes are owed; in addition, BOH's review of the Debtor's monthly operating reports did not appear to suggest that any income taxes were owed to any taxing authority for the post-petition period. As reflected above, the Internal Revenue Service has revised its claim to $0.00. To the extent necessary, BOH intends to object to any tax claims seeking payment of income taxes or any other tax claim that is subject to objection. BOH is continuing to work with the City and the Debtor regarding the Debtor's tax obligations and will include additional information regarding any remaining tax claims as part of the Plan Supplement.

The Bank also intends to object to the Administrative Expense Claim filed by Terry Chan and Hershey Chan Realty, Inc. The Bank reserves the right to assert any other contemplated claims, including but not limited to claims against Grace Chan and Terry Chan for conversion and mismanagement and fraudulent transfers. The Bank has only recently learned ofWith respect to the notice submittedissued to Debtor by Consolidated Edison Company of New York, Inc. regarding post-petition unpaid utility bills and subsequent Proof of Claim filed in a lesser amount, BOH reserves all rights related thereto. Based on BOH's review of the Priority Claims and the Administrative Expense Claims, BOH believes the allowed amount of those claims should not exceed $11.2 million.

## V.   EVENTS LEADING UP TO THE CHAPTER 11 CASE

On March 1, 1985, Debtor entered into the 1985 Lease, a 50-year commercial lease, with the City through the New York City Department of General Services, now consolidated as part of DCAS, an agency of the City responsible for administering real estate leases between the City and third parties, as Landlord for use of land beneath the Manhattan Bridge, originally designated

---

[7] The statement also shows a balance as of May 8, 2023 in the amount of $455,008.42, but that is not the amount sought in the Proof of Claim.

[8] As set forth on the Proof of Claim form, Bank of Hope filed this Administrative Expense Proof of Claim "out of an abundance of caution to reserve its rights in the event that the Court requires the filing of such a claim for approval of the sharing agreement for [P]lan expenses."

as 59-77 Division Street, Manhattan, later re-designated as 88 East Broadway, and thereafter developed by Debtor, pursuant to the terms of the Lease.  The Premises is delineated on the Tax Map of the City of New York, County of New York, as Block 282, Lot 44.

Upon execution of the Lease in 1985, the Debtor claims to have expended more than one million dollars to construct a mall on the land.  In exchange for use of the land, the Lease provided for the payment by the Debtor to the City of three (3) distinct categories of payment: (a) base rent; (b) percentage rent; and (c) PILOT payments.

The 1985 Lease was subsequently amended in November 1995 by First Amendment to Lease in connection with the settlement of a nonpayment proceeding brought against Debtor in July 1994.

Beginning as early as January 2014, the Debtor defaulted on the base rent, percentage rent, and PILOT payments to the City.

By letter dated April 9, 2018, the Landlord sent a Notice to Cure to the Debtor, which notified Debtor of its default under the Lease for the period from January 2014 through March 2018 of its lease obligations to pay base rent, PILOT, and water charges, and which the Debtor has alleged that the default arose from an erroneous calculation of a percentage rent due and owing.

On May 10, 2018, in response to a notice to cure served by the City, the Debtor, as Plaintiff, e-filed a motion in the Supreme Court of the State of New York, City of New York, Index No. 154341/2018, for a so-called *Yellowstone* injunction, seeking to toll the 10-day cure period set forth in the notice to cure. The Debtor thereafter filed additional pleadings, including an Amended Complaint seeking a declaration and judgment that the City's interpretation of the Lease and calculation of percentage rent and PILOT amount were incorrect and improper, that the Debtor had overpaid the City and that the Debtor was not in default of its obligations under the Lease.  The City filed pleadings in opposition, including an answer and counter-claims.

On January 28, 2019, the State Court granted the injunction but conditioned its continuation on the Debtor's payment of certain amounts to the City. The City alleged that the Debtor did not make the requisite payments. On July 12, 2019, the Debtor commenced this Chapter 11 case.

## VI.    EVENTS DURING THE CHAPTER 11 CASE

On July 12, 2019, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. EBM has continued in possession of its property and the management of its business affairs as a debtor-in-possession pursuant to §§1107 and 1108 of the Bankruptcy Code.

The U.S. Trustee was unable to appoint an Official Committee of Unsecured Creditors.

As of the Petition Date, the City asserted that the Debtor owed a substantial amount to the City under the Lease, consisting of Base Rent, PILOT, Late Charges, plus Water Charges and

Percentage Rent. The City further asserted that the Debtor had failed to make numerous payments due under the Lease during the post-petition period.

On November 13, 2019, the Court entered the Cash Collateral Order, whereby BOH and the Debtor agreed that BOH is the senior secured creditor of the Debtor, pursuant to certain Loan Documents. As reflected in the Cash Collateral Order, the Debtor and BOH also agreed to the BOH Claim. The Cash Collateral Order also gave BOH first priority replacement liens in all of the Debtor's assets and the proceeds thereof and Super-priority Administrative Expense Claims under Bankruptcy Code 507(b) to the extent the replacement liens are insufficient to provide BOH with adequate protection of its interest in its collateral. As reflected in the Cash Collateral Order, the Debtor and BOH further agree that the BOH Claim is secured by substantially all of the Debtor's assets, including but not limited to the Lease.

On October 16, 2019, the Debtor filed in this Court a motion [ECF Docket No. 22] for an order pursuant to section 365(d)(4) of the Bankruptcy Code extending the time for the Debtor to assume or reject the Lease relating to 88 East Broadway by ninety (90) days. The City filed an objection to said motion [ECF Docket No. 24].

Thereafter, the City and the Debtor negotiated, and consulted BOH, as Leasehold Mortgagee. As a result of those negotiations, the City, the Debtor and BOH all agreed to the terms of an order entered by the Court on November 26, 2019. The November 26, 2019 Order provided that the time within which the Debtor was permitted to assume or reject the Lease pursuant to section 365(d)(4) of the Bankruptcy Code was extended by ninety (90) days through and including February 9, 2020. The November 26, 2019 Order further provided that if the City did not consent in writing to a further extension before the February 9, 2020 Deadline, then the Lease would be rejected pursuant to 11 U.S.C. Section 365(d)(4), effective as of the February 9, 2020 Deadline. In addition, the November 26, 2019 Order provided that thereupon the City would be entitled to immediate possession of the leased premises, that the Debtor would immediately surrender the premises to the City as lessor.

On or about January 29, 2020, the Debtor defaulted on its obligations to BOH under the Cash Collateral Order by failing to make required adequate protection payments to BOH. The Debtor has not made any adequate protection payments to BOH since January 9, 2020. As a result of the Debtor's continuing material defaults under the Cash Collateral Order, BOH is entitled to enforce the remedies to which it is entitled under the Cash Collateral Order. The Debtor also ceased making any rental payments to the City under the Lease.

Subsequently, the Debtor periodically requested that the City consent to further extensions. In connection with the City's agreeing to the first such further extension, the Debtor agreed that it would not seek dismissal or conversion of the Chapter 11 case. The City responded in writing to each such request. After agreeing to a number of further extensions, the City refused to consent to an extension beyond September 1, 2021.

Subsequent orders extended the deadline for the Debtor's ability to assume or reject the Lease while the parties negotiated and awaited a court order to determine whether the COVID-19 Pandemic and State eviction moratorium had any bearing on the case.

Thereafter, the United States Trustee filed a motion to convert the case to Chapter 7 or to dismiss the case on January 14, 2022. The City filed an objection to the Conversion Motion in which BOH joined. The hearing on the Conversion Motion was adjourned several times, On October 17, 2022, the Court entered an order denying the Conversion Motion, but granting the United States Trustee the right to reinstate the motion in the event that the Plan is not confirmed by March 1. 2022.

On June 22, 2022, the City, BOH, and the Debtor entered into a Stipulation and Order establishing a deadline for certain actions by Debtor, the City, and BOH pertaining to Debtor's interest in the Lease. The Parties agreed (1) to make reasonable efforts to meet and confer in good faith to reach a settlement; (2) that if a settlement was reached, the Debtor would file a Rule 9019 Motion seeking Bankruptcy Court approval; (3) that if a settlement was not reached, then the Debtor's right, title and interest in the Lease would be assigned to an Approved New Tenant; (4) that if the City and BOH did not designate an Approved New Tenant, then the Lease would be deemed terminated; and (5) that one or more of the Parties would file a proposed plan of reorganization or liquidation, or another pleading seeking disposition or resolution of the case.

The City and BOH have negotiated a Term Sheet with a proposed Approved New Tenant setting forth the terms under which the City, BOH, and the Approved New Tenant would agree to the assumption and assignment of the Lease to the Approved New Tenant, except that the terms of the Lease would be governed by the form of new lease negotiated between the Approved New Tenant and the City, and subject to approval by the Bankruptcy Court and the parties obtaining any required approval, authorization and consents of governmental and other entities.

On December 5, 2022, BOH filed a motion seeking approval of a prior disclosure statement and other related relief, and would later submit two additional versions of the disclosure statement. While that motion was pending, two additional parties expressed interest in becoming the Approved New Tenant. With the Court's guidance, BOH and the City determined that the best approach would be to receive best and final offers from all three parties. Because negotiations were ongoing, the Court denied the original motion and entered an order directing any party, including BOH, to file a motion for approval of a disclosure statement and plan by April 28, 2023.

BOH and the City reached out to the interested parties, as well as the Debtor, and requested their best and final offers by April 11, 2023. Each interested party timely submitted its best and final offer by the deadline.[59] BOH and the City collectively determined that Broadway East Group, LLC had submitted the highest and best offer. The City and BOH will therefore go forward with the assignment to Broadway East Group, LLC as the Approved New Tenant, as set forth in the Plan. BOH has filed the Plan in order to effectuate the transaction with Broadway East Group, LLC as the Approved New Tenant. On April 28, 2023, BOH filed a Motion for approval of ~~this~~its Third Amended Disclosure Statement and Third Amended Plan. Following a June 14, 2023 hearing before the Court and in further response to the objection filed by the

---

[59] On April 27, 2023, Debtor also submitted a revised offer, which the City and BOH also reviewed despite its lack of timeliness.

United States Trustee, BOH has prepared and submitted this Fourth Amended Disclosure Statement and Fourth Amended Plan.[10]

## VII.   SOLICITATION AND VOTING PROCEDURES

This ~~Third~~Fourth Amended Disclosure Statement, which is accompanied by a Ballot or Ballots to be used for voting on the Plan, is being distributed to the Holders of Claims or Interests in those Classes that are entitled to vote to accept or reject the Plan. The procedures and instructions for voting and related deadlines are set forth in the exhibits annexed to the ~~Third~~Fourth Amended Disclosure Statement Order.

*The ~~Third~~Fourth Amended Disclosure Statement Order is incorporated herein by reference and should be read in conjunction with this ~~Third~~Fourth Amended Disclosure Statement in formulating a decision to vote to accept or reject the Plan.*

---

**THE DISCUSSION OF THE SOLICITATION AND VOTING PROCESS SET FORTH IN THIS ~~THIRD~~FOURTH AMENDED DISCLOSURE STATEMENT IS ONLY A SUMMARY.**

**PLEASE REFER TO THE ~~THIRD~~FOURTH AMENDED DISCLOSURE STATEMENT ORDER ATTACHED HERETO FOR A MORE COMPREHENSIVE DESCRIPTION OF THE SOLICITATION AND VOTING PROCESS.**

---

### A.   Holders of Claims Entitled to Vote on the Plan

Under the provisions of the Bankruptcy Code, not all Holders of claims against or interests in a debtor are entitled to vote on a chapter 11 plan.  The table in Article III.B of the Plan provides a summary of the status and voting rights of each Class (and, therefore, of each Holder within such Class absent an objection to the Holder's Claim or Interest).

As shown in the table, the Bank is soliciting votes to accept or reject the Plan **only** from Holders of Claims in Class 4A, 4B, and 4C (the "Voting Classes"). The Holders of Claims in the Voting Class are Impaired under the Plan and may, in certain circumstances, receive a distribution under the Plan. Accordingly, Holders of Claims in the Voting Class have the right to vote to accept or reject the Plan.

The Bank is not soliciting votes on the Plan from Holders of Claims or Interests in the other classes.  Additionally, the ~~Third~~Fourth Amended Disclosure Statement Order provides that certain Holders of Claims in the Voting Class, such as those Holders whose Claims have been disallowed or are subject to a pending objection, are not entitled to vote to accept or reject the Plan.

---

[10]  On June 22, 2023, Debtor filed a motion [ECF Docket No. 183] under Rule 60 of the Federal Rules of Civil Procedure or Rule 3008 of the Federal Rules of Bankruptcy Procedure seeking the extraordinary relief that the Court vacate the June 22, 2022 Stipulation and Order; Debtor thereafter filed an amended version of that motion the next day [ECF Docket No. 184]. The hearing on that amended motion has not yet been scheduled.

**B.** **Voting Record Date**

The Voting Record Date is ~~May 30~~_____, 2023.  The Voting Record Date is the date on which it will be determined which Holders of Claims in the Voting Class are entitled to vote to accept or reject the Plan and whether Claims or Interests have been properly assigned or transferred under Bankruptcy Rule 3001(e) such that an assignee or transferee, as applicable, can vote to accept or reject the Plan as the Holder of a Claim or Interest.

**C.** **Voting on the Plan**

The Voting Deadline is ~~July 18~~_____, 2023 at 4:00 p.m. (prevailing Eastern Time). To be counted as votes to accept or reject the Plan, all ballots must be properly executed, completed, and delivered as directed, so that your ballot or the master ballot containing your vote is actually received by the Solicitation Agent on or before the Voting Deadline. To vote, complete, sign, and date your ballot and return it (with an original signature) promptly in the reply envelope enclosed with your ballot or to one of the below addresses.

---

If sent by hand delivery or overnight mail:

Windels Marx Lane & Mittendorf, LLP
Re: East Broadway Mall
Attn: James M. Sullivan
156 West 56th Street
New York, New York 10019

---

**OR**

**SUBMIT AN ELECTRONIC BALLOT TO THE SOLICITATION AGENT VIA ELECTRONIC MAIL TO JSULLIVAN@WINDELSMARX.COM.**

**PLEASE SELECT JUST ONE OPTION TO VOTE.**

**IF YOU HAVE ANY QUESTIONS ABOUT THE SOLICITATION OR VOTING PROCESS, PLEASE CONTACT THE SOLICITATION AGENT VIA ELECTRONIC MAIL TO JSULLIVAN@WINDELSMARX.COM.**

**D.** **Ballots Not Counted**

**No ballot will be counted toward Confirmation if, among other things:** (1) it is illegible or contains insufficient information to permit the identification of the Holder of the Claim or Interest; (2) it was transmitted by means other than as specifically set forth in the ballots; (3) it was cast by an entity that is not entitled to vote on the Plan; (4) it was cast for a Claim listed in the Debtor's schedules as contingent, unliquidated, or disputed for which the applicable Bar Date has passed and no proof of claim was timely filed; (5) it was cast for a Claim that is subject to an objection pending as of the Voting Record Date (unless temporarily allowed

in accordance with the ~~Third~~Fourth Amended Disclosure Statement Order); (6) it was sent to the Debtor, the Debtor's agents/representatives (other than the Solicitation Agent), or the Debtor's financial or legal advisors instead of the Solicitation Agent; (7) it is unsigned; or (8) it is not clearly marked to either accept or reject the Plan or it is marked both to accept and reject the Plan. **Please refer to the ~~Third~~Fourth Amended Disclosure Statement Order for additional requirements with respect to voting to accept or reject the Plan.**

**ANY BALLOT RECEIVED AFTER THE VOTING DEADLINE OR THAT IS OTHERWISE NOT IN COMPLIANCE WITH THE SECONDED AMENDED DISCLOSURE STATEMENT ORDER WILL NOT BE COUNTED.**

## VIII.   CONFIRMATION OF THE PLAN

### A.   Requirements for Confirmation of the Plan

Among the requirements for Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code are: (1) the Plan is accepted by all Impaired Classes of Claims or Interests, or if rejected by an Impaired Class, the Plan "does not discriminate unfairly" and is "fair and equitable" as to the rejecting Impaired Class; (2) the Plan is feasible; and (3) the Plan is in the "best interests" of Holders of Claims or Interests.

Pursuant to Section 1128 of the Bankruptcy Code, a Plan Confirmation Hearing will be held on ~~July 25~~_____, 2023 at ~~10~~__:00 ~~a~~__.m. ET.  At the Confirmation Hearing, the Bankruptcy Court will determine whether the Plan satisfies all of the requirements of section 1129 of the Bankruptcy Code. The Bank believes that: (1) the Plan satisfies, or will satisfy, all of the necessary statutory requirements of chapter 11 for plan confirmation; (2) the Bank has complied, or will have complied, with all of the necessary requirements of chapter 11 for plan confirmation; and (3) the Plan has been proposed in good faith.

The Bankruptcy Court may adjourn the Plan Confirmation Hearing from time to time without further notice except for the announcement of the adjournment date made at the Confirmation Hearing or at any subsequent adjourned Plan Confirmation Hearing.

Any objection to confirmation of the Plan must be made in writing and specify in detail the name and address of the objecting party, all grounds for the objection, and the amount of the Claim or Interest of the objecting party. Any objection must be filed with the Bankruptcy Court and served so that it is received by the Bankruptcy Court, the U.S. Trustee, and Counsel for the Debtor, Bank of Hope, and the City on or before ~~July 18~~_____, 2023. Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014.

Failure by a Claimant or Interest Holder to timely file an objection to the Plan or timely cast a Ballot in accordance with the Confirmation Order shall constitute an agreement by silence to accept the terms contained in this Plan. Any interested party desiring further information about the Plan should contact Counsel for Bank of Hope.

### B.   Best Interests of Creditors

Often called the "best interests" test, section 1129(a)(7) of the Bankruptcy Code requires that a bankruptcy court find, as a condition to confirmation, that a chapter 11 plan provides, with respect to each impaired class, that each holder of a claim or an equity interest in such impaired class either (1) has accepted the plan or (2) will receive or retain under the plan property of a value that is not less than the amount that the non-accepting holder would receive or retain if the debtor liquidated under chapter 7.

The Debtor does not have significant assets to cover distributions. The assumption and assignment of Debtor's remaining interest in the Lease is in the best interest of all Creditors. If the Plan is rejected, the United States Trustee will move to convert the case to a chapter 7 case. As a result, a chapter 7 proceeding will do nothing more than create additional costs associated with converting to a chapter 7 liquidation. These additional costs include a percentage fee based on disbursements, as well as additional professional fees associated with a chapter 7 trustee selecting advisors.

While information regarding the additional costs are speculative, the costs are clearly higher and more burdensome for the Debtor's Estate than the current proposed Plan (which do not have such incremental costs).

With respect to conversion from chapter 11 to chapter 7 and the related increased costs, delays, and lower recoveries, one bankruptcy judge in the Southern District of New York observed:

- "[L]eaving the case in Chapter 11 would, in fact, avoid the diminution of the estate that would actually occur in a Chapter 7 case." (*In re Hostess Brands, Inc.*, No. 12-22052 (Bankr. S.D.N.Y. Nov. 21, 2012), Hr'g Tr. at 146:21-23).

- "[G]iven the loss in value no new fiduciary could be expected to come up to speed in this case … without a destructive delay … unless he or she were to immediately hire the people that are implementing the wind down, which would be a difficult task without doing any analysis on his or her part, the resulting delay would seriously affect the sale value and greatly diminish the likelihood of there being a recovery here for at least the administrative claimants in full." (*Id.* at 148:17-149:6).

Consequently, the Bank believes that Confirmation of the Plan will provide a substantially greater return to Holders of Claims or Interests than would a liquidation under chapter 7 of the Bankruptcy Code.

**C.    Feasibility**

The Bankruptcy Code requires that a chapter 11 plan provide for payment in full of administrative and priority claims unless holders of such claim consent to other treatment. The Plan provides for the payment of priority and administrative obligations.

**D.    Acceptance by Impaired Classes**

The Bankruptcy Code requires, as a condition to confirmation, except as described in the following section, that each class of claims or equity interests impaired under a plan, accept the plan. A class that is not "impaired" under a plan is deemed to have accepted the plan and, therefore, solicitation of acceptances with respect to such a class is not required.

Section 1126(c) of the Bankruptcy Code defines acceptance of a plan by a class of impaired claims as acceptance by holders of at least two-thirds in dollar amount and more than one-half in a number of allowed claims in that class, counting only those claims that have actually voted to accept or to reject the plan. Thus, a Class of Claims will have voted to accept the Plan only if two-thirds in amount and a majority in number of the Allowed Claims in such Class that vote on the Plan actually cast their ballots in favor of acceptance.

Section 1126(d) of the Bankruptcy Code defines acceptance of a plan by a class of impaired equity interests as acceptance by holders of at least two-thirds in amount of allowed interests in that class, counting only those interests that have actually voted to accept or to reject the plan. Thus, a Class of Interests will have voted to accept the Plan only if two-thirds in amount of the Allowed Interests in such class that vote on the Plan actually cast their ballots in favor of acceptance.

## E.    Confirmation without Acceptance by All Impaired Classes

Section 1129(b) of the Bankruptcy Code allows a bankruptcy court to confirm a plan even if all impaired classes have not accepted it; provided that the plan has been accepted by at least one impaired class. Pursuant to section 1129(b) of the Bankruptcy Code, notwithstanding an impaired class's rejection or deemed rejection of the plan, the plan will be confirmed, at the plan proponent's request, in a procedure commonly known as a "cramdown" so long as the plan does not "discriminate unfairly" and is "fair and equitable" with respect to each class of claims or equity interests that is impaired under, and has not accepted, the plan.

If any Impaired Class rejects the Plan, the Bank reserves the right to seek to confirm the Plan utilizing the "cramdown" provision of section 1129(b) of the Bankruptcy Code. To the extent that any Impaired Class rejects the Plan or is deemed to have rejected the Plan, the Bank may request Confirmation of the Plan, as it may be modified from time to time, under section 1129(b) of the Bankruptcy Code. The Bank reserves the right to alter, amend, modify, revoke, or withdraw the Plan or any Plan Supplement document, including the right to amend or modify the Plan or any Plan Supplement document to satisfy the requirements of section 1129(b) of the Bankruptcy Code.

### 1.    No Unfair Discrimination

The "unfair discrimination" test applies to classes of claims or interests that are of equal priority and are receiving different treatment under a plan. The test does not require that the treatment be the same or equivalent, but that treatment be "fair." In general, bankruptcy courts consider whether a plan discriminates unfairly in its treatment of classes of claims or interests of equal rank (e.g., classes of the same legal character). Bankruptcy courts will take into account a

number of factors in determining whether a plan discriminates unfairly. A plan could treat two classes of unsecured creditors differently without unfairly discriminating against either class.

## 2. Fair and Equitable Test

The "fair and equitable" test applies to classes of different priority and status (e.g., secured versus unsecured) and includes the general requirement that no class of claims receive more than 100 percent of the amount of the allowed claims in the class. As to the dissenting class, the test sets different standards depending upon the type of claims or equity interests in the class. The Bank submits that if the Bank effectuates a "cramdown" Plan pursuant to section 1129(b) of the Bankruptcy Code, the Plan is structured so that it does not "discriminate unfairly" and satisfies the "fair and equitable" requirement. With respect to the unfair discrimination requirement, all Classes under the Plan are provided treatment that is substantially equivalent to the treatment that is provided to other Classes that have equal rank. With respect to the fair and equitable requirement, no Class under the Plan will receive more than 100 percent of the amount of Allowed Claims or Interests in that Class. The Bank believes that the Plan and the treatment of all Classes of Claims or Interests under the Plan satisfy the foregoing requirements for nonconsensual Confirmation of the Plan.

## IX.    EFFECT OF THE PLAN ON CLAIMS, INTERESTS, AND RIGHTS OF ACTION

### A.    *Binding Effect.*

If the Plan is confirmed, the provisions of the Plan will bind the Debtor and all Creditors, whether or not they accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

### B.    *Vesting of Assets.*

Except as otherwise explicitly provided in this Plan, on the Effective Date, all property comprising the Estates (including Rights of Action, but excluding property that has been abandoned pursuant to an order of the Bankruptcy Court, if any) shall vest in the Debtor free and clear of all Claims, liens, charges, interests, and encumbrances. As of and following the Effective Date, the Plan Administrator may use and dispose of property and settle and compromise Claims, Interests, or Rights of Action without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by this Plan or the Confirmation Order.

### C.    *Authority to Effectuate Plan.*

Upon the entry of the Confirmation Order by the Bankruptcy Court (but subject to the occurrence of the Effective Date), and except as may otherwise be provided herein, any treatment or actions provided for or contemplated under the Plan shall be deemed to be authorized and approved without any further order or approval of the Bankruptcy Court. The Debtor shall be authorized, without further application to or order of the Bankruptcy Court but subject to the terms of the Plan to take whatever action is necessary or proper to consummate and carry out the

Plan, to consummate any transaction provided for herein, and to effectuate the distributions provided for hereunder.

D.    *Discharge.*

The Debtor will not be discharged from any debt that arose before confirmation of this Plan as specified in Bankruptcy Code § 1141(d)(3)(A).

E.    *Material Default Defined.*

If Debtor fails to make any payment, or to perform any other obligation required under the Plan, for more than 10 days after the time specified in the Plan for such payment or other performance, any member of a class affected by the default may serve upon Debtor and Debtor's attorney (if any) a written notice of Debtor's default.  If Debtor fails within 30 days after the date of service of the notice of default either: (i) to cure the default; (ii) to obtain from the court an extension of time to cure the default; or (iii) to obtain from the court a determination that no default occurred, then Debtor is in Material Default under the Plan to all the members of the affected class.

F.    *Remedies Upon Material Default.*

Upon Material Default, any member of a class materially affected by the default: (i) may file and serve a motion to dismiss the case or to convert the case to Chapter 7; or (ii) without further order of the court has relief from stay to the extent necessary, and may pursue its lawful remedies to enforce and collect Debtor's pre-confirmation obligations.

## X.    RECOMMENDATION

In the opinion of the Bank, the Plan is preferable to all other available alternatives and provides for a larger distribution to the Debtor's creditors than would otherwise result in any other scenario. Accordingly, the Bank recommends that Holders of Claims entitled to vote on the Plan vote to accept the Plan and support Confirmation of the Plan.

Dated:  New York, New York
~~April 28~~July 5, 2023

Respectfully submitted,

WINDELS MARX LANE & MITTENDORF, LLP
*Attorneys for Bank of Hope*

By:    */s/ James M. Sullivan*
        James M. Sullivan (jsullivan@windelsmarx.com)
        Robert J. Malatak (rmalatak@windelsmarx.com)
        156 West 56th Street
        New York, New York 10019
        Tel: (212) 237-1000 / Fax: (212) 262-1215

**EXHIBIT B:**

**TERM SHEET**

Document comparison by Workshare 10.0 on Wednesday, July 5, 2023 5:32:51 PM

| Input: | |
|---|---|
| Document 1 ID | worldox://12171648.docx/5 |
| Description | EBM Third Amended Disclosure Statement (80299410-4xC1149) |
| Document 2 ID | worldox://12195881.docx/4 |
| Description | IN re EBM BOH FOURTH Amended Disclosure Statement (80299410-4xC1149) |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 108 |
| Deletions | 88 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 196 |