**HEARING DATE: SEPTEMBER 12, 2023 at 10:00 A.M. (Eastern Time)**
**Related Documents: ECF Nos. 186, 189, 195**

WINDELS MARX LANE & MITTENDORF, LLP
*Attorneys for Bank of Hope*
156 West 56th Street
New York, New York 10019
Telephone (212) 237-1000
Attorney Appearing: James M. Sullivan (jsullivan@windelsmarx.com)
                    Robert J. Malatak (rmalatak@windelsmarx.com)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
In re:                                              Chapter 11

EAST BROADWAY MALL,                                 Case No. 19-12280 -DSJ

                        Debtor.
---------------------------------------------------------X

**BANK OF HOPE'S BRIEF IN SUPPORT OF CONFIRMATION OF ITS FOURTH
AMENDED PLAN OF LIQUIDATION AND APPROVALS OF FOURTH AMENDED
DISCLOSURE STATEMENT ON A FINAL BASIS**

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                    **Page(s)**

*In re 11,111, Inc.*, 117 B.R. 471 (Bankr. D. Minn. 1990)                                           22

*In re Aegean Marine Petroleum Network, Inc.*, 599 B.R. 717 (Bankr.
    S.D.N.Y. 2019)                                                                                        25

*Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S.
    434 (1999)                                                                                            17

*In re Bergman*, 585 F.2d 1171 (2d Cir 1978)                                                         21

*In re Buttonwood Partners, Ltd.*, 111 B.R. 57 (Bankr. S.D.N.Y. 1990)                        22

*In re Drexel Burnham Lambert Group Inc.*, 138 B.R. 723 (Bankr.  S.D.N.Y.
    1992)                                                                                     13, 20, 21, 21

*In re Eddington Thread Mfg. Co.*, 181 B.R. 826 (Bankr. E.D. Pa. 1995)                       21

*In re Elsinore Shore Assocs.*, 91 B.R. 238 (Bankr. D.N.J. 1988)                                16

*In re Enron Corp.*, 326 B.R. 497 (S.D.N.Y. 2005)                                                   24

*Frito-Lay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.)*, 10 F.3d 944 (2d
    Cir. 1993)                                                                                            13

*In re Future Energy Corp.*, 83 B.R. 470 (Bankr. S.D. Ohio 1988)                               17

*In re Ionosphere Clubs, Inc.*, 98 B.R. 174 (Bankr. S.D.N.Y. 1989)                             13

*In re Johns-Manville Corp.*, 68 B.R. 618 (Bankr. S.D.N.Y. 1986)                          13, 20, 22

*In re Greene*, 57 B.R. 272 (Bankr. S.D.N.Y. 1986)                                                  21

*Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636 (2d
    Cir. 1988)                                                                               13, 16, 20, 20

*In re Leslie Fay Cos.*, 207 B.R. 764 (Bankr. S.D.N.Y. 1997)                                    20

*In re LATAM Airlines Group S.A.*, No. 20-11254 (JLG), 2022 WL 2206829
    (Bankr. S.D.N.Y. June 18, 2022)                                                                   25

*In re Murray Metallurgical Coal Holdings, LLC*, 623 B.R. 444 (Bankr. S.D.
    Ohio 2021)                                                                                            25

*In re Nickels Midway Pier, LLC*, No. 03-49462, 2010 WL 2034542 (Bankr. D.N.J. May 21, 2010) ............ 24

*In re Nite Lite Inns*, 17 B.R. 367 (Bankr. S.D. Cal. 1982) ............ 16

*Pizza of Hawaii, Inc. v. Shakey's, Inc. (In re Pizza of Hawaii, Inc.)*, 761 F.2d 1374 (9th Cir. 1985) ............ 20

*Prudential Ins. Co. of Am. v. Monnier (In re Monnier Bros.)*, 755 F.2d 1336 (8th Cir. 1985) ............ 20

*In re PWS Holding Corp.*, 228 F.3d 224 (3d Cir. 2000) ............ 23, 24

*In re Resorts Int'l, Inc.*, 145 B.R. 412 (Bankr. D.N.J. 1990) ............ 16

*In re Rochem, Ltd.*, 58 B.R. 641 (Bankr. D.N.J. 1985) ............ 22

*In re Stearns Holdings, LLC*, 607 B.R. 781 (Bankr. S.D.N.Y. 2019) ............ 25

*In re Sun Country Dev., Inc.*, 764 F.2d 406 (5th Cir. 1985) ............ 16, 16

*In re Texaco Inc.*, 84 B.R. 893 (Bankr. S.D.N.Y. 1988) ............ 15

*Traders State Bank v. Mann Farms, Inc. (In re Mann Farms, Inc.)*, 917 F.2d 1210 (9th Cir. 1989) ............ 16

*United States v. Reorganized CF&I Fabricators of Utah, Inc.*, 518 U.S. 213 (1996) ............ 18

*In re U.S. Track Co.*, 47 B.R. 932 (E.D. Mich. 1985) ............ 20

**Statutes**

11 U.S.C. § 105 ............ 2

11 U.S.C. § 365(d)(4) ............ 5, 6

11 U.S.C. § 1107 ............ 3

11 U.S.C. § 1108 ............ 3

311 U.S.C. § 1121 ............ 2

11 U.S.C. § 1122 ............ passim

11 U.S.C. § 1122(a) ............ 13, 13, 14

11 U.S.C. § 1123 ............ 2, 13, 13

11 U.S.C. § 1123(a)(1)                                          14

11 U.S.C. § 1123(a)(2)                                          14

11 U.S.C. § 1123(a)(3)                                          14

11 U.S.C. § 1123(a)(4)                                          14

11 U.S.C. § 1123)(a)(5)                                         15

11 U.S.C. § 1123(a)(6)                                          15

11 U.S.C. § 1123(a)(7)                                          15

11 U.S.C. § 1125                                             2, 15

11 U.S.C. § 1126                                         2, 12, 15

11 U.S.C. § 1126(c)                                             18

11 U.S.C. § 1126(d)                                             18

11 U.S.C. § 1128                                                 2

11 U.S.C. § 1129                                                 2

11 U.S.C. § 1129(a)                                             12

11 U.S.C. § 1129(a)(1)                                  12, 13, 13

11 U.S.C. § 1129(a)(2)                                      15, 15

11 U.S.C. § 1129(a)(3)                                         16

11 U.S.C. § 1129(a)(4)                                  16, 16, 17

11 U.S.C. § 1129(a)(5)                                         17

11 U.S.C. § 1129(a)(5)(A)                                      17

11 U.S.C. § 1129(a)(5)(B)                                      17

11 U.S.C. § 1129(a)(6)                                         17

11 U.S.C. § 1129(a)(7)                                      17, 17

11 U.S.C. § 1129(a)(8)                                      18, 19

11 U.S.C. § 1129(a)(9)                                      19, 19

11 U.S.C. § 1129(a)(10)                                              20, 20

11 U.S.C. § 1129(a)(11)                                              20, 20

11 U.S.C. § 1129(a)(12)                                              21

11 U.S.C. § 1129(a)(13)                                              21

11 U.S.C. § 1129(a)(14)                                              21

11 U.S.C. § 1129(a)(15)                                              21

11 U.S.C. § 1129(a)(16)                                              22

11 U.S.C. § 1129(b)                                                  passim

11 U.S.C. § 1129(b)(1)                                               22

28 U.S.C. § 157                                                      2

28 U.S.C. § 1334                                                     2

28 U.S.C. § 1408                                                     2

28 U.S.C. § 1409                                                     2

**Rules**

Fed R. Bankr. Proc. 2002                                             2

Fed R. Bankr. Proc. 3016                                             2

Fed R. Bankr. Proc. 3017                                             2

Fed R. Bankr. Proc. 3018                                             2

Fed R. Bankr. Proc. 3020                                             2

S.D.N.Y. L.B.R. 3017-1                                               3

S.D.N.Y. L.B.R. 3018-1                                               3

S.D.N.Y. L.B.R. 3020-1                                               3

**Other Sources**

H.R. Rep. No. 95-595 (1977)                                          13

S. Rep. No. 95-989 (1978)                                            13

TO:    THE HONORABLE DAVID S. JONES,
       UNITED STATES BANKRUPTCY JUDGE:

Bank of Hope, f/k/a BBCN Bank ("**Bank of Hope**", "**BOH**", or "**Bank**"), secured creditor of the chapter 11 estate (the "**Estate**") of the above-captioned debtor, East Broadway Mall ("**Debtor**" or "**EBM**"), by its undersigned counsel Windels Marx Lane & Mittendorf, LLP, respectfully represents the following:[1]

## **PRELIMINARY STATEMENT**

1.    Confirmation of the Plan represents the best available path to conclude the Debtor's chapter 11 case and maximize creditor recoveries.  The Plan is the Product of extensive good faith negotiations by and among principal economic interests in this Case, including BOH and the City. With the approval of the Plan and under the operation of the New Lease and oversight of the Approved New Tenant, the Property will be well-positioned for future success, not only financially but also in terms of the substantial benefits it will provide to its community. The incredible results represented by the Plan were achieved in the face of challenging and uncertain circumstances, particularly in light of ongoing unpredictability with respect to the ongoing COVID-19 pandemic.

2.    Solicitation packages and the Plan Supplement were provided to all eligible voters and all required notices were served pursuant to the Court's order approving the Disclosure Statement and applicable law.  Parties whose claims were otherwise unimpaired and who were therefore ineligible to vote were provided the opportunity to vote their claim in Class 4C.

3.    Ultimately, as described in the Certification of Ballots, ballots were submitted by parties in each of Class 1, Class 4A, and Class 4B, and every ballot received indicated acceptance of the Plan.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

4.      As all classes that voted on the Plan voted to accept it, as no creditor has opposed confirmation of the Plan, and because the Plan otherwise satisfies the legal requirements for confirmation, it should be confirmed.

5.      The Debtor's objection to the Plan is more an objection to its alleged treatment by the City than any assertion of an identifiable issue with the Plan itself or its implementation. The only other unresolved objection was asserted by the Office of the United States Trustee. The United States Trustee argues that the Plan's exculpation provision is overbroad and should not be approved. However, for the reasons discussed more fully below, these provisions are (1) a fair and necessary component of the Debtor's overall Plan structure and the resolutions reached therein, (2) supported by more than adequate consideration, and (3) in the best interests of the Debtor's estate and its creditors. Because the Plan satisfies all of the disclosure and confirmation requirements of the Bankruptcy Code, including sections 1122, 1123, 1125, 1126, and 1129, BOH respectfully submits that the Disclosure Statement should be approved on a final basis, and the Plan should be confirmed.

## JURISDICTION AND VENUE

6.      The Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334 and the Order of the United States District Court for the Southern District of New York dated May 27, 2022 [ECF Docket No. 107], captioned *In re East Broadway Mall, Inc.*

7.      Venue of this case and this Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

8.      The statutory bases for the relief requested herein are sections 105, 1121, 1125, 1126, 1128, and 1129 of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 3016, 3017, 3018, and 3020 of the Federal Rules of Bankruptcy Procedure

("**Bankruptcy Rules**"), and Rules 3017-1, 3018-1, and 3020-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**").

## BACKGROUND

9.      On July 12, 2019 (the "**Petition Date**"), Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code [ECF Docket No. 1]. Debtor has continued in possession of its property and the management of its business affairs as a debtor-in possession pursuant to §§1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed.

10.     The U.S. Trustee was unable to appoint an Official Committee of Unsecured Creditors.

11.     Prior to the Petition Date, by lease dated as of March 1, 1985 (the "**1985 Lease**"), the City of New York (the "**City**"), through the New York City Department of General Services, now consolidated as part of the Department of Citywide Administrative Services ("**DCAS**") as Landlord, and Debtor as Tenant, entered into a 50-year lease for use of land beneath the Manhattan Bridge, originally designated as 59-77 Division Street, Manhattan, later re-designated as 88 East Broadway, and thereafter developed by Debtor, pursuant to the terms of the Lease (the "**Premises**"). The Premises is delineated on the Tax Map of the City of New York, County of New York, as Block 282, Lot 44.

12.     The 1985 Lease was subsequently amended in November 1995 by First Amendment to Lease ("**First Lease Amendment**") in connection with the settlement of a nonpayment proceeding brought against Debtor in July 1994. The 1985 Lease and the First Lease Amendment are referred to together herein, as the "Lease".

13.     The City asserted that, as of the Petition Date, the Debtor owed a substantial amount to the City under the Lease, consisting of Base Rent, PILOT, Late Charges, plus Water Charges

and Percentage Rent (the "**City Pre-petition Claim**"). The City further asserted that the Debtor has failed to make numerous payments due under the Lease during the post-petition period (the "**City Post-petition Claim**", and together with the City Pre-petition Claim, the "**City Claim**").

14. As reflected in the "So Ordered" Stipulated Order Re: (I) Use of Cash Collateral, (II) Post-Petition Replacement Liens, and (III) Related Relief dated November 13, 2019 (the "**Cash Collateral Order**"), the Bank and Debtor agreed that BOH is the senior secured creditor of the Debtor, pursuant to certain loan documents, including a promissory note, a loan agreement and a leasehold mortgage on the Lease, all dated December 29, 2011 (the "**Loan Documents**") [ECF Docket No. 28, 29].

15. As reflected in the Cash Collateral Order, the Debtor and BOH also agreed that as of the Petition Date, pursuant to the Loan Documents, the Debtor's indebtedness to BOH under the note was no less than $5,851,940.00, including, without limitation, $5,490,691.13 of principal, $129,847.56 of interest, and $231,401.31 of attorneys' fees (together with continuing interests, costs, and expenses due under the loan documents (collectively, the "**BOH Pre-Petition Claim**").

16. The Debtor has failed to make numerous payments due under the Loan Documents and the Cash Collateral Order during the post-petition period (the "**BOH Post petition Claim**", and together with the BOH Pre-petition Claim, the "**BOH Claim**").

17. As reflected in the Cash Collateral Order, the Debtor and BOH further agreed that the BOH Claim is secured by substantially all of the Debtor's assets, including but not limited to the Lease. The Debtor, the City and the Bank shall be referred to collectively herein as the "**Parties**".

18.     By letter dated April 8, 2014, the Landlords sent a Notice to Cure to the Debtor, arising out of what the Debtor alleged was an erroneous calculation of a percentage rent due and owing.

19.     On May 10, 2018, in response to a notice to cure served by the City, the Debtor, as Plaintiff, e-filed a motion in the Supreme Court of the State of New York, City of New York (the "**State Court Litigation**"), Index No. 154341/2018, for a *Yellowstone* injunction, seeking to toll the 10-day cure period set forth in the notice to cure.  The Debtor thereafter filed additional pleadings, including an Amended Complaint, and the City filed pleadings in opposition, including an answer and counter-claims.   The State Court granted the injunction but conditioned its continuation on the Debtor's payment of certain amounts to the City. The City alleged that the Debtor did not make the requisite payments.  Subsequently, the Debtor commenced this Chapter 11 case.

20.     On October 16, 2019, the Debtor filed in this Court a motion [ECF Docket No. 22] for an order pursuant to section 365(d)(4) of the Bankruptcy Code extending the time for the Debtor to assume or reject the Lease relating to 88 East Broadway by ninety (90) days.  The City filed an objection to the Motion [ECF Docket No. 24].

21.     Thereafter, the City and the Debtor negotiated, and consulted BOH, as Leasehold Mortgagee.  As a result of those negotiations, the City, the Debtor and the Bank all agreed to the terms of an order entered by the Court on November 26, 2019 (the "**November 26, 2019 Order**"). [ECF Docket No. 34]. The November 26, 2019 Order provided that the time within which the Debtor was permitted to assume or reject the Lease pursuant to section 365(d)(4) of the Bankruptcy Code was extended by ninety (90) days through and including February 9, 2020 (the "**February 9, 2020 Deadline**").

22. The November 26, 2019 Order further provided that if the City did not consent in writing to a further extension before the February 9, 2020 Deadline, then the Lease would be rejected pursuant to 11 U.S.C. Section 365(d)(4), effective as of the February 9, 2020 Deadline. In addition, the November 26, 2019 Order provided that thereupon the City would be entitled to immediate possession of the leased premises, that the Debtor would immediately surrender the premises to the City as lessor.

23. On or about January 29, 2020, the Debtor defaulted on its obligations to the Bank under the Cash Collateral Order by failing to make required adequate protection payments to the Bank. The Debtor has not made any adequate protection payments to the Bank since January 9, 2020. As a result of the Debtor's continuing material defaults under the Cash Collateral Order, the Bank is entitled to enforce the remedies to which it is entitled under the Cash Collateral Order.

24. Subsequently, the United States Trustee filed a motion to convert the case to Chapter 7 or to dismiss the case on January 14, 2022 (the "**Conversion Motion**") [ECF Docket No. 76]. The City filed an objection to the Conversion Motion and the Bank filed a joinder to the City's objection. The hearing on the Conversion Motion was adjourned several times. On October 17, 2022, the Court entered an order denying the Conversion Motion, but permitting the United States Trustee to reinstate the motion in the event that the Plan was not confirmed by March 1, 2023 [ECF Docket No. 130].

25. The City and the Bank had negotiated a term sheet with a proposed new tenant, Broadway East Group, LLC (the "**Approved New Tenant**") setting forth the terms under which the City, the Bank, and the Approved New Tenant would agree to the assumption and assignment of the Lease to the Approved New Tenant, except that the terms of the Lease would be governed

by the form of new lease negotiated between the Approved New Tenant and the City, which was the foundation of the original plan.

26.     On June 22, 2022, the parties entered into a stipulation and order establishing deadlines for certain actions by Debtor, City of New York and Bank of Hope pertaining to Debtor's interest in lease for 88 Broadway, New York, NY ("**Stipulation**") [ECF Docket No. 110].

27.     On September 2, 2022, the Bank filed a motion for entry of an order (i) approving the confirmation timeline, the plan and disclosure statement, (ii) scheduling a combined hearing on the disclosure statement and plan, (iii) approving the combined hearing notice, and (iv) establishing a procedure and deadline for filing proofs of claim and approving the form and manner of notice thereof ("**Motion to Approve**") [ECF Docket No. 120].

28.     On October 4, 2022, the Honorable David S. Jones directed the Parties to prepare a scheduling order ("**Scheduling Order**") setting forth deadlines relating to Bank of Hope's amended Chapter 11 Plan, which was entered on November 18, 2022 [ECF Docket No. 131].

29.     On December 5, 2022, in accordance with the Scheduling Order, Bank of Hope filed a motion seeking entry of an order approving (i) the disclosure statement, (ii) solicitation of votes to accept or reject the plan and notice procedures, (iii) the forms of ballots and notices in connection therewith, and (iv) certain dates with respect thereto (ECF No. 132) (the "**First Motion**").

30.     On January 5, 2023 the United States Trustee filed on objection to the disclosure statement [ECF Docket No. 133].

31.     On January 6, 2023, Debtor filed an objection to the disclosure statement [ECF Docket No. 134].

32.     On January 9, 2023, Bank of Hope filed a response in further support of the First Motion and in response to the objections to the disclosure statement [ECF Docket No. 135] (the "**Response**").  Bank of Hope therein addressed the objections and agreed to certain modifications of the disclosure statement.

33.     On January 11, 2023, as noted in its Response, Bank of Hope filed an Amended Disclosure Statement addressing the objections and including other revisions [ECF Docket No. 136].

34.     On January 12, 2023, the Court held a hearing to consider the Amended Disclosure Statement.  Thereafter, the Court entered an order which, *inter alia*, continued the hearing and also required Debtor to file all outstanding tax returns on or before January 27, 2023 to facilitate the chapter 11 plan process [ECF Docket No. 137].

35.     On February 1, 2023, the Court entered another order which revised certain dates from the original Scheduling Order [ECF Docket No. 138].  The order also provided a continuation date for the hearing on the Amended Disclosure Statement of February 16, 2023.

36.     On February 9, 2023, Bank of Hope filed its Second Amended Disclosure Statement along with an amended plan and comparisons to prior filed versions thereof [ECF Docket No. 139].

37.     On February 15, 2023, Bank of Hope filed a notice of adjournment of the continued hearing on the Amended Disclosure Statement to March 2, 2023 [ECF Docket No. 140].

38.     Also on February 15, 2023, Debtor filed monthly operating reports for the months from August through December 2022 [ECF Docket Nos. 141-145].

39.     On March 1, 2023, Bank of Hope filed a notice of adjournment of the continued hearing on the Amended Disclosure Statement to March 23, 2023 [ECF Docket No. 146].

40.     In conjunction with the Court's approval of this adjournment, the Court directed the parties to file a case status update letter. On March 3, 2023, after circulating a draft to the other parties and including their revisions, Bank of Hope filed a status letter [ECF Docket No. 147]. In addition to reporting that Debtor had filed its tax returns and filed on the docket its outstanding monthly operating reports through December 2022, the letter also explained:

> Since Bank of Hope filed the original Disclosure Statement and Plan, it has been approached by additional parties that have indicated an interest in taking over the Debtor's interest in the Premises. Bank of Hope is assessing these expressions of interest and will be discussing them with the City.

(*Id.* at 1.)

41.     On March 23, 2023, the Court held the continued hearing on the Second Amended Disclosure Statement. At the hearing the Court explained its inclination to "deny the disclosure statement as it now exists" and provide for filing a new disclosure statement and plan. (ECF Docket No. 150, Mar. 23, 2023 Tr. at 8:7-10.)[2] The Court indicated that this appeared to be the best course of action because "it seems like negotiations are really ongoing, everyone's still trying to find the optimal solution for this property." (*Id.* at 8:11-13; see also *id.* at 27:7-13 ("But the basis of my ruling today is very simply that, in the absence of clarity on what the plan is going to say, despite repeated adjournments, the current disclosure statement approval motion simply cannot satisfy the requirement of [Bankruptcy Code Section] 1125 that it provide adequate information. And so for that reason alone, I deny as of right now, okay? So that's where we're at on the 1125."))

42.     Counsel for Bank of Hope also provided information regarding the additional offers received with respect to the Property. Counsel explained that, in addition to the original offer from

---

[2] To the extent one cannot obtain a copy of ECF Docket No. 150 from PACER or the Clerk of the Court, counsel for BOH can provide a copy upon request.

the Approved New Tenant that was the basis for the First Motion, Bank of Hope had received without solicitation two additional offers. (*Id.* at 10:23-11:10.) Counsel further explained that Bank of Hope and the City discussed these additional offers and considered giving interested parties one last opportunity to present their best and final offers, and that Bank of Hope would use the final offer as part of the framework for going forward with a new chapter 11 plan. (*Id.* at 11:11-18.)

43.    On March 23, 2023, the Court also entered an order denying the First Motion based on the reasons set forth at the hearing [ECF Docket No. 148]. The Court also therein set a deadline of April 28, 2023 for the filing by any party for a motion seeking approval of a disclosure statement.

44.    Bank of Hope and the City proceeded as discussed during the March 23, 2023 hearing. BOH and the City reached out to the interested parties, as well as the Debtor, and requested their best and final offers by April 11, 2023. Each interested party timely submitted its best and final offer by the deadline.[3] BOH and the City collectively determined that the improved offer from Broadway East Group, LLC was the highest and best offer.

45.    BOH and the City decided to go forward with the assignment to Broadway East Group, LLC as the Approved New Tenant. BOH thereafter filed the Plan in order to effectuate the transaction with Broadway East Group, LLC as the Approved New Tenant.

46.    On April 28, 2023, BOH filed a Motion for approval of its Third Amended Disclosure Statement and Third Amended Plan [ECF Docket No. 153] (the "**Third Motion**") On June 2, 2023, the United States Trustee filed an objection to the Third Motion. On June 9, 2023, BOH filed a reply in further support of the Third Motion. Following a June 14, 2023 hearing

---

[3] On April 27, 2023, Debtor also submitted a revised offer, which the City and BOH also reviewed despite its lack of timeliness.

before the Court and in further response to the objection filed by the United States Trustee, BOH

filed its Fourth Amended Disclosure Statement (the "**Disclosure Statement**") and Fourth

Amended Plan (the "**Plan**").

47. The Court heard the Third Motion on July 6, 2023 and also that day entered an

order approving the Disclosure Statement (ECF No. 189) (the "**Disclosure Statement Order**").

Among other things, the Disclosure Statement Order authorized solicitation and voting procedures

for the Plan and set a hearing date for consideration of Plan confirmation of September 12, 2023

at 10:00 A.M. Eastern.

48. Thereafter, BOH timely completed service of the Solicitation Packages pursuant to

the Disclosure Statement Order and applicable law.

49. On August 14, 2023, the Court entered an order approving the limited extension of

certain deadlines in the Disclosure Statement Order, including deadlines for the filing of a plan

supplement, the submission of votes, and the certification  of ballots (ECF Docket No. 194) (the

"**Supplemental Order**").

50. On August 14, 2023, BOH filed its Supplement to the Plan. Also on August 14,

2023, pursuant to the Disclosure Statement Order and Supplemental Order, BOH served the Notice

of the Supplement to the Plan on the parties eligible to vote on the Plan.

51. As of August 21, 2023, the deadline to vote on the Plan, BOH had received four

ballots in total, as discussed further below.

52. On August 25, 2023, BOH filed the Certification of Ballots. [ECF Docket No. 198.]

Pursuant to the Disclosure Statement Order and applicable law, BOH served the Certification of

Ballots on the United States Trustee and the Debtor.

## PLAN SOLICITATION AND NOTIFICATION PROCESS

53.    Pursuant to Section 1126 of the Bankruptcy Code, only holders of claims in an impaired class (i.e., Class 1 or Class 4), are entitled to vote on the Plan.  11 U.S.C. § 1126.

54.    The following table summarizes the classes of Claims and Interests under the Plan and whether such classes were entitled to vote to accept or reject the plan.

| Class | Claim/Interest | Status | Voting Rights |
|---|---|---|---|
| 1 | Secured Claim of Bank of Hope | Impaired | Entitled to Vote |
| 2 | Other Secured Claims | Impaired | Entitled to Vote |
| 3A | Priority Claims (Bankruptcy Code Section 507(a)(8) Tax Claims) | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 3B | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 4A | Bank of Hope Super-Priority Adequate Protection Claim | Impaired | Entitled to Vote |
| 4B | General Unsecured Claims | Impaired | Entitled to Vote |
| 4C | Convenience Claims | Impaired | Entitled to Vote |
| 5 | Interests | Impaired | Not Entitled to Vote (Deemed to Reject |

55.    The voting results are set forth in the Certification of Ballots and are summarized as follows

| Total Ballots Counted | | | | | | |
|---|---|---|---|---|---|---|
| Voting Class | Accepting | | Rejecting | | Class Voting Result |
| | Number | Amount | Number | Amount | |
| 1 | 1 | $2,000,000.00 | 0 | $0.00 | Accepts |
| 4A | 1 | $2,180,037.65 | 0 | $0.00 | Accepts |
| 4B | 2 | $20,356,136.79 | 0 | $0.00 | Accepts |

56.    As set forth above and in the Certification of Ballots, Class 1, Class 4A, and Class 4B were the only classes to vote on the Plan, and all four ballots submitted by holders of such claims unanimously voted to accept the Plan.

## ARGUMENT

**I.    The Plan Complies with Sections 1129(a) and (b) of the Bankruptcy Code.**

57.    Section 1129(a)(1) of the Bankruptcy Code requires that a plan must "compl[y] with the applicable provisions of [the Bankruptcy Code]." 11 U.S.C. § 1129(a)(1). The legislative

history of 11 U.S.C. § 1129(a)(1) explains that this provision encompasses the requirements of 11 U.S.C. §§ 1122 and 1123 governing classification of claims and contents of a plan, respectively. H.R. Rep. No. 95-595, at 412 (1977); S. Rep. No. 95-989, at 126 (1978); *see also In re Johns-Manville Corp.*, 68 B.R. 618, 629 (Bankr. S.D.N.Y. 1986); *Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636 (2d Cir. 1988); *In re Toy & Sports Warehouse, Inc.*, 37 B.R. 141, 149 (Bankr. S.D.N.Y. 1984).

58.     Section 1129(a)(1). The Plan complies with Section 1129(a)(1) of the Bankruptcy Code as it complies with each of the requirement set forth under the Bankruptcy Code, including without limitation, Sections 1122 and 1123 thereof.

59.     Section 1122(a). Section 1122 provides that "a plan may place a claim or interest in a particular class only if such claim or interest is substantially similar to other claims or interests of such class." 11 U.S.C. § 1122(a). The Second Circuit has recognized that plan proponents have significant flexibility under Section 1122 in classifying claims. *See Frito-Lay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.)*, 10 F.3d 944, 956-57 (2d Cir. 1993) (affirming separate classification where rational basis existed for classification scheme). Indeed, as one court in this district noted, "even in the context of reorganization, a majority of both cases and commentators have rejected the concept that all creditors of equal rank must receive equal treatment." *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 177 (Bankr. S.D.N.Y. 1989). Such that courts will generally approve placement of similar claims in different classes, provided there is a rational or reasonable basis to do so. *See also In re Drexel Burnham Lambert Grp., Inc.*, 138 B.R. 723, 757 (Bankr. S.D.N.Y. 1992) ("A plan proponent is afforded significant flexibility in classifying claims under § 1122(a) if there is a reasonable basis for the classification scheme and if all claims within a particular class are substantially similar.") (citation omitted).

60.     Here, the Plan contains five (5) separate classes of claims and interests, with each class containing substantially similar claims or interests as required by Section 1122.  Class 1: Secured Claim of Bank of Hope, Class 2: Other Secured Claims, Class 3A: Priority Tax Claims, Class 3B: Other Priority Claims; Class 4A: Bank of Hope's Super-Priority Adequate Protection Claim; Class 4B: General Unsecured Claims; Class 4C: Convenience Claims; and Class 5: Interests.

61.     Based on the Foregoing, the Debtor submits the Plan complies with the provisions of Section 1122 and should be confirmed.

62.     The Plan also satisfies the applicable provisions of Section 1123(a).

    a.    <u>Section 1123(a)(1)</u>. Article III of the Plan designates the classification of Claims and Interests as required by Section 1123(a)(1) of the Bankruptcy Code. The classification complies with Section 1122(a) of the Bankruptcy Code because each class contains only Claims or Interests that are substantially similar to each other. The classification of Claims and Interests created by the Plan is based upon the similar nature of claims or interests contained in each Class, and is based upon the legal nature of the Claims and Interests and were not proposed for an improper purpose.

    b.    <u>Section 1123(a)(2)</u>. Article III identifies whether each Class of Claims and Interests is impaired or not impaired under the Plan.

    c.    <u>Section 1123(a)(3)</u>. Article III sets forth the treatment of each Class of Claims and Interests.

    d.    <u>Section 1123(a)(4)</u>. Article III provides for the same treatment of each Claim or Interest of each particular Class.

e.  Section 1123(a)5). The Plan sets forth the means for implementation of the Plan, including specifically within Article IV.

f.  Section 1123(a)(6). As the Plan is a liquidating plan that provides for the distribution of all of the assets of the Debtor, this subsection's prohibition regarding the issuance of non-voting equity securities is inapplicable.

g.  Section 1123(a)(7). The Plan's provisions "are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the plan and any successor to such officer, director, or trustee". To the extent the portion of this subsection addressing public policy is applicable, both the Plan at Article IV and the Plan Supplement at Supplement Article III address the appointment of the plan administrator.

63.    Section 1129(a)(2). Section 1129(a)(2) requires that a plan "compl[y] with the applicable provisions" of the Bankruptcy Code, which is generally intended to ensure that a plan proponent has complied with the requirements of the Bankruptcy Code governing the solicitation of acceptances of a plan. See *In re Texaco Inc.*, 84 B.R. 893, 906-07 (Bankr. S.D.N.Y. 1988).

64.    The Plan proponent has complied with all of the applicable provisions of the Bankruptcy Code. By this Court's Order dated July 6, 2023, the Disclosure Statement and Plan solicitation documents were approved, and all documents were transmitted to creditors in the manner required thereby. The filed affidavits of service and the Certification of Ballots reflect that the Debtor has complied with Sections 1125 and 1126 of the Bankruptcy Code, and that Section 1129(a)(2) of the Bankruptcy Code is therefore satisfied.

65.    <u>Section 1129(a)(3)</u>.  Although not defined by the Bankruptcy Code, "good faith" has been described to include (i) a showing the plan was proposed with honesty and good intentions, and (ii) the existence of a reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code. *See Kane v. Johns-Manville Corp.*, 843 F.2d 636, 649 (2d Cir. 1988); *see also Traders State Bank v. Mann Farms, Inc. (In re Mann Farms, Inc.)*, 917 F.2d 1210, 1214 (9th Cir. 1989) (interpreting analogous provision under chapter 12); *see also In re Nite Lite Inns*, 17 B.R. 367, 370 (Bankr. S.D. Cal. 1982). Moreover, "[w]here the plan is proposed with the legitimate and honest purpose to reorganize and has a reasonable hope of success, the good faith requirement of section 1129(a)(3) is satisfied." *In re Sun Country Dev., Inc.*, 764 F.2d 406, 408 (5th Cir. 1985). The requirement of good faith must be viewed in light of the totality of the circumstances surrounding the establishment of a chapter 11 plan. *Id.*

66.    The Plan was negotiated and filed in good faith and not by any means prohibited by law. The Plan was filed with the legitimate and honest purpose of maximizing the value of the Debtor's estate and the recoveries to holders of allowed claims in the order of priority under the Bankruptcy Code.  Therefore, the Plan complies with this subsection.

67.    <u>Section 1129(a)(4)</u>. Section 1129(a)(4) requires that payments "for services or for costs and expenses in connection with the case, or in connection with the plan and incident to the case," be approved by the Court as reasonable. 11 U.S.C. § 1129(a)(4). In other words, Section 1129(a)(4) requires that the Court review and approve any payments on account of non-ordinary course administrative expenses. *See e.g., In re Resorts Int'l, Inc.*, 145 B.R. 412, 475-76 (Bankr. D.N.J. 1990); *In re Elsinore Shore Assocs.*, 91 B.R. 238, 268 (Bankr. D.N.J. 1988) (Bankruptcy

Code Section 1129(a)(4) satisfied where plan provides for payment of "allowed" administrative expenses); *In re Future Energy Corp.*, 83 B.R. 470, 488 (Bankr. S.D. Ohio 1988).

68.     The Plan provides for the payment of all allowed administrative expenses, and includes a third administrative expense bar date. In addition, the fees of estate professionals are subject to the approval of the Court. Accordingly, this Section is satisfied.

69.     Section 1129(a)(5). Section 1129(a)(5) requires that (i) the plan proponent disclose the identity of any individual that will serve after confirmation of the plan as a director, officer, or voting trustee of the debtor or that will be a successor to the debtor under the Plan and that the appointment of any such individual be consistent with the interests of creditors and shareholders and public policy and (ii) the plan proponent disclose the identity of any insider that will be employed by the reorganized debtor and the nature of the compensation that they will receive. 11 U.S.C. §§ 1129(a)(5)(A), (B).This section is satisfied as the Plan Supplement identifies the Plan Administrator and provides the terms of its administration.

70.     Section 1129(a)(6). This section regarding the jurisdiction of governmental regulatory commissions is inapplicable to this case.

71.     Section 1129(a)(7). Section 1129(a)(7) requires that, with respect to each class of impaired claims or interests under a plan, every holder of a claim or interest in such impaired class either (i) accept the plan, or (ii) receive or retain property of a value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the debtor were liquidated under chapter 7 of the Bankruptcy Code. 11 U.S.C. § 1129(a)(7). This is often referred to as the "best interests test." Under the best interests test, the court "must find that each [non-accepting] creditor will receive or retain value that is not less than the amount he would receive if the debtor were liquidated [under chapter 7 of the Bankruptcy Code]." *Bank of Am. Nat'l Trust &*

*Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 440 (1999); *United States v. Reorganized CF&I Fabricators of Utah, Inc.*, 518 U.S. 213, 228 (1996). The best interests test focuses on individual dissenting creditors rather than classes of claims. *See 203 N. LaSalle St. P'ship*, 526 U.S. at 440.

72.    With respect to each impaired Class of Claims or Interests, as explained in the Plan, each holder of a Claim or Interest has accepted the Plan or will receive or retain under the Plan on account of such claim or Interest property of a value that is not less than the amount such holder would receive or retain if the Debtor was liquidated under chapter 7 of the Bankruptcy Code. Creditors will receive not less than they would receive in a chapter 7 liquidation. In a chapter 7, the Lease would be rejected and creditors would receive no distribution. Further, the Plan maximizes the amounts which may be recovered for such crediors on allowed claims. In a chapter 7 liquidation, there would also be increased, fees, costs, and expenses, including commissions, arising from and in connection with services rendered by a chapter 7 trustee and their professionals. Accordingly, each non-accepting holder of a Claim or Interest under the Plan would receive on account of such Claim or Interest property with at least as much values as such holders would be entitled to receive in a hypothetical chapter 7 liquidation. Therefore, the Plan satisfies the "best interests test" set forth in section 1129(a)(7) of the Bankruptcy Code.

73.    <u>Section 1129(a)(8)</u>. Section 1129(a)(8) requires that each class of claims and interests established under a plan either accept the plan or not be impaired under the plan. 11 U.S.C. § 1129(a)(8). A class of claims accepts a plan if holders of at least two-thirds in dollar amount and more than one-half in number of claims in that class vote to accept the plan, counting only those claims whose holders actually vote. See 11 U.S.C. §§ 1126(c)-(d).

74.    As set forth in the Certification of Ballots, Classes 1, 2, 3A, 3B, 4A, and 4B have accepted the Plan or are unimpaired by the Plan and deemed to have accepted the Plan. In addition, there are no members of Class 4C because no one elected to receive Class 4C treatment.  Class 5, Interests, is deemed to have rejected the Plan as such Class is not receiving or retaining any property under the Plan. Notwithstanding the rejection by Class 5 and the provisions of Section 1129(a)(8) of the Bankruptcy Code, the Plan may nevertheless be confirmed pursuant to Section 1129(b) of the Bankruptcy Code if it satisfies the "fair and equitable" and "unfair discrimination" tests of Section 1129(b). The Plan may be confirmed over the deemed rejection because the Plan satisfies both tests. Specifically, the Plan does not discriminate unfairly in that Interests in Class 5 are dissimilar to the other Classes, and the Plan's segregation of Class 5 has a rational basis. Accordingly, the Plan does not discriminate unfairly against Class 5.

75.    Moreover, because senior Classes are not receiving more than the full value of their claims and no Interest that is junior to Class 5 will be receiving or retaining any property under the Plan, the fair and equitable standard has been satisfied. Class 5 would not receive any distribution under the Plan unless and until all superior classes of claims have been paid in full, and such an outcome is not possible. Accordingly, notwithstanding the deemed rejection by Class 5, the Plan may be confirmed.

76.    Section 1129(a)(9). The Plan provides that all holders of Allowed Priority Claims, including Priority State Tax Claims, Priority Non-Tax Claims, and Administrative Claims will be paid in accordance with Section 1129(a)(9), except to the extent that the holder of such Claims has agreed to different treatment. Therefore, the Plan satisfies Section 1129(a)(9) of the Bankruptcy Code.

77.    <u>Section 1129(a)(10)</u>. At least one impaired Class of Claims entitled to vote on the Plan has accepted the Plan.  As set forth above, impaired Classes 1, 4A, and 4B have accepted the Plan. Therefore, the Plan complies with Section 1129(a)(10) of the Bankruptcy Code.

78.    <u>Section 1129(a)(11)</u>. The Plan is a liquidating plan. BOH believes there are sufficient means to implement the Plan as set forth therein, to make the distributions to the Classes as set forth in the Plan on allowed claims in accordance with the priorities under the Bankruptcy Code. The Plan for liquidation is sustainable, provides adequate means for implementation, and is feasible. Thus, no other liquidation of the Debtor is anticipated or likely.

79.    The feasibility test set forth in Section 1129(a)(11) requires the Court to determine whether a plan has a reasonable likelihood of success, is workable, and is not likely to be followed by liquidation or another reorganization.  *See Kane v. Johns-Manville Corp.*, 843 F.2d at 649; *In re Leslie Fay Cos.*, 207 B.R. 764, 788-89 (Bankr. S.D.N.Y. 1997).  The purpose of the test is to protect against merely visionary or overly speculative plans, which promise more under a proposed plan than the debtor can possibly attain after confirmation.  *Pizza of Hawaii, Inc. v. Shakey's, Inc. (In re Pizza of Hawaii, Inc.)*, 761 F.2d 1374, 1382 (9th Cir. 1985); *In re U.S. Track Co.*, 47 B.R. 932, 944 (E.D. Mich. 1985). However, this provision requires only a probability of success, not a guarantee of success.  *Kane v. Johns-Manville Corp.*, 843 F.2d at 649; *In re Johns-Manville Corp.*, 68 B.R. 618, 635 (Bankr. S.D.N.Y. 1986) ("The plan proponent is not required to *guarantee* the ultimate success of the reorganized company.") (emphasis in original; citations omitted); *Prudential Ins. Co. of Am. v. Monnier (In re Monnier Bros.)*, 755 F.2d 1336, 1341 (8th Cir. 1985) ("Success need not be guaranteed."); *see also In re Drexel Burnham Lambert*, 138 B.R. 723, 762 (Bankr. S.D.N.Y. 1992) (holding that the mere prospect of some financial uncertainty cannot defeat confirmation on feasibility grounds since a guarantee of the future is not required).

80.    To that extent, a key element of feasibility is whether there exists the reasonable probability that the provisions of the plan can be performed. *Id.*; *In re Bergman*, 585 F.2d 1171, 1179 (2d Cir 1978) ("The test is whether the things which are to be done after confirmation can be done as a practical matter."); *In re Greene*, 57 B.R. 272, 278 (Bankr. S.D.N.Y. 1986). Plan proponents carefully negotiate and incorporate a plan structure to promote its success and feasibility.  In *re Drexel Burnham Lambert*, 138 B.R. at 763. The burden for meeting the feasibility requirement is low.  *In re Eddington Thread Mfg. Co.*, 181 B.R. 826, 833 (Bankr. E.D. Pa. 1995) ("[T]here is a relatively low threshold of proof necessary to satisfy the feasibility requirement.") (citation omitted).

81.    To this end, the Plan was extensively negotiated and discussed with various parties in interest. Moreover, the Plan is a liquidating plan and such Plan provides to pay allowed claims in order of priority under the Bankruptcy Code.  In addition, Bank of Hope, the City, and the Approved New Tenant have agreed to equally share in the payment of allowed administrative expenses, and such allowed expenses will be paid in full.

82.    Section 1129(a)(12). The Plan provides for the payment of all fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930, and the Plan therefore complies with Section 1129(a)(12) of the Bankruptcy Code.

83.    Section 1129(a)(13). This provision regarding retiree benefits is inapplicable.

84.    Section 1129(a)(14). This provision regarding payment of domestic support obligations is inapplicable.

85.    Section 1129(a)15). This provision is inapplicable as it applies to cases where the debtor is an individual.

86.    <u>Section 1129(a)(16)</u>. This section requires all transfers of property under a plan to be made in accordance with the applicable provisions of nonbankruptcy law that govern the transfer of property by a corporation or trust "that is not a moneyed, business, or commercial corporation or trust." To the extent this provision is applicable to the transfer of the Estate's interest in the Lease, the City is obtaining all required approvals under applicable nonbankruptcy law to effect the terms of the New Lease.

87.    Significantly, notwithstanding the deemed rejection of Class 5, the Court may approve the Plan in accordance with Section 1129(b) of the Bankruptcy Code.  Section 1129(b)(1) of the Bankruptcy Code does not prohibit all discrimination between classes, but only discrimination that is unfair.  See *In re 11,111, Inc.*, 117 B.R. 471, 478 (Bankr. D. Minn. 1990), *In re Rochem, Ltd.*, 58 B.R. 641, 643 (Bankr. D.N.J. 1985) (question of "unfair" treatment concerns whether there is a reasonable basis for discrimination between classes). Although Congress did not define "discriminate unfairly," courts have held that a dissenting class must "receive relative value equal to the value given to all other similarly situated classes."  *In re Johns-Manville Corp.*, 68 B.R. at 636. As long as there is a reasonable basis for disparate treatment, taking into account the particular facts and circumstances of the case, a plan does not discriminate unfairly.  *See In re Buttonwood Partners, Ltd.*, 111 B.R. 57, 63 (Bankr. S.D.N.Y. 1990); *In re Johns-Manville Corp.,* 68 B.R. at 636. Thus, this requirement prevents a plan's proponents from segregating similar claims or groups of claims into separate classes and providing disparate treatment for those classes unless they can provide a reasonable basis for doing so.  Moreover, neither Debtor, its principal, nor any other party has claimed that there is discrimination evident in the Plan.

88.    Under the Plan, Class 5 (Interests) is dissimilar to the other Classes (which are all Claims), and the Plan's segregation of those Claims has a rational basis. Class 5 consists solely of

Interests. Accordingly, the Plan does not discriminate unfairly against the rejecting class, thereby satisfying this requirement of Section 1129(b) of the Bankruptcy Code. Moreover, the Plan satisfies the additional requirement of Section 1129(b) insofar as there is no class junior to Class 5 that would receive or retain any property under the Plan. And again, no party has claimed that there is unfair discrimination in the Plan. The Plan is therefore confirmable under Section 1129(b) as to the sole rejecting class.

## II.    The United States Trustee's Objection Should be Overruled.

89.    Notwithstanding Debtor's filed objection,[4] the only party to a file a substantive objection to the Plan was the United States Trustee ("**UST**"), which had been filed in response to Bank of Hope's motion to approve the Disclosure Statement and the hearing on the UST objection was continued to the Plan confirmation hearing. At this time, the only outstanding provision of the Plan with which the UST takes issue is the exculpation provision.[5]

90.    As set forth in the Plan, the exculpation provision provides for the exculpation of specifically defined Exculpated Parties. The Exculpation Provision has a narrow and discrete purpose: to protect the Exculpated Parties, who made significant contributions to the success of the Chapter 11 Case, from lawsuits based on actions taken by the Exculpated Parties in connection with the Debtor's restructuring and related matters, without relieving any party from liability for actual fraud, gross negligence or willful misconduct.

91.    Exculpation provisions are appropriate where the exculpated parties participated in good faith and provided substantial contributions to a debtor's reorganization. *See In re PWS Holding Corp.*, 228 F.3d 224, 246-247 (3d Cir. 2000) (approving plan exculpation provision with

---

[4] Bank of Hope will file a response to Debtor's objection separately.
[5] Bank of Hope has been in contact with the UST and is hoping to resolve the UST objection in advance of the Plan confirmation hearing. Bank of Hope will apprise the Court should the parties resolve the objection before the hearing.

a willful misconduct and gross negligence exceptions). Further, unlike a release, the effect of an exculpation provision is not to eliminate a claim, but rather to set a reasonable standard of care that provides fiduciaries and, in some instances, others, with an appropriate level of protection. *See In re Nickels Midway Pier, LLC*, No. 03-49462, 2010 WL 2034542, at *14 (Bankr. D.N.J. May 21, 2010) (citing *PWS Holding Corp.*, 228 F.3d at 235). Courts have evaluated the appropriateness of exculpation provisions based on a number of factors, including whether the plan was proposed in good faith, whether liability is limited, and whether the exculpation provisions was necessary for plan negotiations. *See e.g., In re Enron Corp.*, 326 B.R. 497, 503 (S.D.N.Y. 2005) (evaluating the exculpation clause based on the manner in which the clause was made part of an agreement, the necessity of the limited liability to the plan negotiations, and that those who participated in the plan did so in good faith).

92.    Here, the Exculpated Parties have participated in good faith in formulating and negotiating the Plan as it relates to the Debtor, and they should be entitled to protection from exposure to any lawsuits filed by disgruntled third parties. The Exculpation Provision, like the Third-Party Release, was an integral part of the Plan and is a result of extensive arm's-length negotiations between the Bank and the City.

93.    The Exculpation Provision set forth in the Plan is targeted, does not amount to a third-party release and has no effect on liability that is determined to have constituted actual fraud, gross negligence or willful misconduct. Importantly, it is narrowly drafted to limit the liability of the Exculpated Parties in connection with the actions between the Petition Date and the Effective Date in connection with, or arising out of, the administration of the Chapter 11 Case, pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the

property to be distributed under the Plan. (*See* ECF Docket No. 186 at Ex. A, Plan at Article VIII.B.)

94.    The U.S. Trustee argues that exculpation should be limited to estate fiduciaries. (*See* ECF Docket No. at 14.) Courts have held that where a plan seeks to limit liability, such as through exculpation, such provisions must be assessed in light of the particular circumstances at issue. *See In re Murray Metallurgical Coal Holdings, LLC*, 623 B.R. 444, 502 (Bankr. S.D. Ohio 2021). Here, the Exculpated Parties' substantial contributions to the Plan and Debtor's chapter 11 case more than justify the exculpation provided for in the Plan. *See In re Stearns Holdings, LLC*, 607 B.R. 781, 790 (Bankr. S.D.N.Y. 2019) (approving exculpation to non-estate fiduciaries and finding that the "protection the exculpation provision affords was essential to the promotion of good-faith plan negotiations that might not otherwise have occurred had the negotiating parties faced the risk of future collateral attacks from other parties."); *In re Aegean Marine Petroleum Network, Inc.*, 599 B.R. 717, 721 (Bankr. S.D.N.Y. 2019) ("[A] proper exculpation provision is a protection not only of court-supervised fiduciaries, but also of court-supervised and court-approved transactions. If this Court has approved a transaction as being in the best interests of the estate and has authorized the transaction to proceed, then the parties to those transactions should [ ] not be subject to claims that effectively seek to undermine or second-guess this Court's determinations. In the absence of gross negligence or intentional wrongdoing, parties should not be liable for doing things that the Court authorized them to do and that the Court decided were reasonable things to do."); *In re LATAM Airlines Group S.A.*, No. 20-11254 (JLG), 2022 WL 2206829, at *50 (Bankr. S.D.N.Y. June 18, 2022) ("In the absence of gross negligence or intentional wrongdoing on their parts, the Court will extend the Exculpation clause to the Exculpated Parties who are not estate fiduciaries, to bar claims against them as set forth in the

Exculpation clause, and based on the negotiation, execution, and implementation of agreements and transactions that were approved by the Court.").

95.    Such contributions of the Exculpated Parties are extensive and are set forth throughout the Plan and Disclosure statement.  These contributions include:  their work to identify an Approved New Tenant to allow for the possibility of recovery of assets to pay the Estate's creditors before the case was converted to Chapter 7, to prepare and submit multiple iterations of the Disclosure Statement and Plan, and to implement the Court's approved procedures for solicitation and voting on the Plan, the City's waiver of the balance of its lien to allow for other creditors to receive distributions; the Bank's acceptance of millions less than the value of its claim and release of its lien so that other creditors may receive distributions; and the Bank and City's agreement with the Approved New Tenant to pay in full all allowed administrative expenses.

96.    The Exculpation Provision is the product of good-faith, arms'-length negotiations, was critical to obtaining the support of various constituencies for the Plan and has received support from the Debtor's major stakeholders. The Exculpation Provision was critical to the development of a feasible, confirmable Plan, and the Exculpated Parties participated in the Chapter 11 Case in reliance upon the protections afforded to those constituents by the Exculpation Provision. Accordingly, Bank of Hope asserts that the Exculpation Provision should be granted in its entirety without amendment.

## <u>CONCLUSION</u>

**WHEREFORE**, the Bank respectfully requests that the Court approve the Disclosure Statement and confirm the Plan, overrule remaining objections, if any, and grant the Bank such

other and further relief as may be just and proper.

Dated: New York, New York          Respectfully submitted,
       September 5, 2023

                                   WINDELS MARX LANE & MITTENDORF, LLP
                                   *Attorneys for Bank of Hope*

                                   By:     */s/ James M. Sullivan*
                                           James M. Sullivan (jsullivan@windelsmarx.com)
                                           Robert J. Malatak (rmalatak@windelsmarx.com)
                                           156 West 56th Street
                                           New York, New York 10019
                                           Tel: (212) 237-1000 / Fax: (212) 262-1215