Hearing Date: September 12, 2023 at 10:00 A.M. Eastern Time
Related Documents:  Dkt. Nos. 186, 189, 195, 197

**WINDELS MARX LANE & MITTENDORF, LLP**
*Attorneys for Bank of Hope*
156 West 56th Street
New York, New York 10019
Telephone (212) 237-1000
Attorney Appearing: Robert J. Malatak (rmalatak@windelsmarx.com)
        James M. Sullivan (jsullivan@windelsmarx.com)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
In re:                  Chapter 11
EAST BROADWAY MALL,         Case No. 19-12280 -DSJ

      Debtor.
-----------------------------------------------------------X

### BANK OF HOPE'S REPLY TO DEBTOR'S OBJECTION TO CONFIRMATION OF BANK OF HOPE'S FOURTH AMENDED PLAN

  Bank of Hope f/k/a BBCN Bank ("**Bank of Hope**"), a creditor of the above-captioned debtor, East Broadway Mall ("**Debtor**"), by and through its undersigned counsel, hereby replies to Debtor's objection (the "**Objection**)" to Confirmation of Bank of Hope's Fourth Amended Plan (the "**Plan**") and respectfully states as follows:

  1. Foremost, Debtor's Objection should be overruled because it does not set forth any grounds for why Bank of Hope's Plan should not be confirmed.  Instead, Debtor makes references to community approval procedures which are already addressed in the Plan, and then rehashes arguments regarding the alleged bad faith of the City.  Contrary to Debtor's assertions, the Plan is actually the product of extensive good faith negotiations.  Debtor then goes on to devote its Objection to revisiting its alternative offer to the City and Bank of Hope.  The City and Bank of Hope already considered the prior iteration of Debtor's offer and determined that selecting Broadway East Group, LLC as the Approved New Tenant provided the best path forward for concluding Debtor's bankruptcy case; moreover, just as with its original offer and with its failed proposed plan, the Debtor does not adequately explain how the myriad payments it includes in its proposal would be funded.

{12219587:1}

2. As more fully set forth in the Fourth Amended Disclosure Statement (ECF No. 286), in conjunction with developing its plan, Bank of Hope has worked closely with the City of New York (the "**City**") to find the best path forward for all parties through a confirmable plan.

3. This chapter 11 case has languished before this Court while the Debtor has repeatedly failed to take any meaningful steps to remediate its various defaults, satisfy the claims of the City and Bank of Hope, and submit a sustainable, approvable plan.

4. Bank of Hope stepped into the breach and has worked since last year to develop a confirmable plan.

5. In conjunction with preparing the BOH Motion, Bank of Hope provided Debtor (and all bidders) with an opportunity to make a best and final offer to take over Debtor's interest in the premises. On April 27, 2023, Debtor submitted an offer as part of this process.[1] Notwithstanding its untimeliness and Debtor's history of defaults, Bank of Hope and the City considered Debtor's offer. Ultimately, however, they determined that a bid from Broadway East Group, LLC was the highest and best.

6. Debtor attempts to impugn the conduct of Bank of Hope by alleging that it is willing to accept less money under its Plan "with a stated intention to go after [Debtor's principal] Grace Chan for the balance of its claim." [ECF No. 197 at ¶ 11.] Bank of Hope seeks, and is fully entitled under the Bankruptcy Code and applicable law, to pursue the best path possible to maximizing the recovery of its claim. If Debtor's proposal would have actually been likely to provide a greater benefit to the City or Bank of Hope, then it would have been more readily considered. Debtor has never been able to satisfactorily explain how the City and Bank of Hope would be adequately assured that Debtor would satisfy its proposed obligations to them.

7. In addition, Debtor's allegation that "[b]ecause this is a liquidation plan the proponent Bank of Hope is not concerned about future profitability" (*see id.*) is not only inaccurate but also

---

[1] Debtor's submission was more than sixteen days after the April 11, 2023 deadline imposed for submission of best and final offers.

{12219587:1}    2

irrelevant. Bank of Hope has worked closely with the City to devise a workable Plan. The Plan results in the liquidation of Debtor's Estate but the City, Bank of Hope, and the Approved New Tenant all clearly have a vested interest in the success of East Broadway Mall.

8. Debtor also concludes by alleging that it is "being tossed aside" and that Bank of Hope "could have supported the Debtor but has blamed its lack of support on DCAS' insistence that it would never agree to amending the Debtor's lease." (*Id.* at ¶ 13.) Numerous filings in this case address the history between the City and the Debtor, and for Debtor to now say it is just being "tossed aside" is frankly ludicrous. Notwithstanding the tortured pre-bankruptcy history, and then three years of stagnation in chapter 11, the City and Bank of Hope provided Debtor an opportunity to make a viable best and final offer.

9. Both the City and Bank of Hope took the Debtor's proposal seriously and put time and effort into evaluating it. Both the City and Bank of Hope had concerns with the financing contingency in Debtor's proposal. Notwithstanding these concerns, Bank of Hope, the Debtor, and their respective counsel engaged in discussions of Debtor's proposal, including to specifically to address the letter of intent describing the funding that would support it. Representatives of Bank of Hope and the Debtor and their counsel participated in one such teleconference. At this meeting, Bank of Hope pointed out to Debtor, and Debtor's representatives specifically acknowledged, that Debtor had not sufficiently progressed forward to obtain the funding necessary to support its proposal. Specifically, from the time Debtor had received the letter of intent to that meeting, Debtor had not progressed at all with respect to the loan underwriting process.[2]

10. Debtor's allegation that the City never gave a reason for reaching Debtor's proposal (*Id.* at ¶ 14) is inaccurate. Just as Bank of Hope had raised concerns about the financing contingency of Debtor's proposal, so had the City. Essentially, Debtor's offer was based on a conditional loan offer that had no certainty of final approval.

---

[2] In addition, since that meeting, Debtor has furnished no new evidence to Bank of Hope that they have made meaningful progress on such financing or actually obtained loan approval.

{12219587:1}    3

11. Ultimately, East Broadway Group, LLC's offer provided actual certainty in terms of funding and was selected. And as is made clear in the Disclosure Statement and Plan, that choice has placed this case on a path toward actual resolution. The Plan is the best way forward for Debtor's case, and the only viable alternative that has ever been presented to this Court.

12. For these reasons, the Court should overrule Debtor's Objection and confirm Bank of Hope's Plan.

**WHEREFORE**, Bank of Hope respectfully requests that Debtor's Objection be overruled in all respects, and that the Court confirm the Plan and grant to Bank of Hope such other and further relief as it determines may be just.

Dated: New York, New York
September 8, 2023

Respectfully submitted,

WINDELS MARX LANE & MITTENDORF, LLP
*Attorneys for Bank of Hope*

By:   */s/ James M. Sullivan*
        Robert J. Malatak (rmalatak@windelsmarx.com)
        James M. Sullivan (jsullivan@windelsmarx.com)
        156 West 56th Street
        New York, New York 10019
        Tel: (212) 237-1000 / Fax: (212) 262-1215

{12219587:1}                                    4