UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re:                                                                              Chapter 11
EAST BROADWAY MALL,                                          Case No. 19-12280 -DSJ

                          Debtor.
-----------------------------------------------------------X

## PROFFER OF BANK OF HOPE FOR CONFIRMATION OF BANK OF HOPE'S FOURTH AMENDED PLAN AND APPROVAL OF FOURTH AMENDED DISCLOSURE STATEMENT ON A FINAL BASIS

This offer of proof is made to demonstrate compliance with Bankruptcy Code § 1129 in support of confirmation of Bank of Hope's Fourth Amended Chapter 11 Plan for Liquidation (the "**Plan**") filed on July 5, 2023 and Bank of Hope's Fourth Amended Disclosure Statement ("**Disclosure Statement**") on a Final Basis, also filed on July 5, 2023.  (*See* ECF No. 186.)

      A.      Sources of Evidence of Compliance with 11 U.S.C. § 1129.

      1.      Judicial Notice. Bank of Hope asks the Court to take judicial notice of all documents filed in Debtor's bankruptcy case, including proofs of claim.

      2.      Proffered Testimony of Bank of Hope's authorized representative, Andrew Park. Andrew Park is in attendance by Zoom for this hearing. If called to testify, Mr. Park would testify under oath as set forth below, from his own personal knowledge and information provided to him by certain of Bank of Hope's employees and professionals, from his review of business records maintained by Bank of Hope and relating to the Debtor in the ordinary course of its regularly conducted business activities, from his knowledge concerning the relationship between Bank of Hope and the Debtor and certain relevant operations and financial affairs of the Debtor.

      3.      Mr. Park would testify to the salient elements of the Disclosure Statement and Plan. Mr. Park is Senior Vice President and Manager, Special Assets Department, for Bank of Hope.  Mr. Park is familiar with Bank of Hope's financial dealings with the Debtor. Mr. Park is

the person designated to be responsible, in consultation with legal counsel and other Court-approved professionals, for Bank of Hope's involvement in Debtor's chapter 11 case, including with respect to development of the Plan and Disclosure Statement, and the extensive work of Bank of Hope with the City toward implementation of the New Lease that is the basis for the Plan. Mr. Park has reviewed and is familiar with the terms and provisions of the Plan and Disclosure Statement. Based on his involvement in Debtor's chapter 11 case, his knowledge of relevant information, and his review of matters with Bank of Hope's outside professionals, Mr. Park is familiar with matters relating to confirmation of the Plan.

4. Mr. Park would testify with respect to Bank of Hope's history of financial dealings with the Debtor, both pre-petition and since Debtor initiated this chapter 11 case. He would testify to Bank of Hope having given the Debtor every opportunity to come up with a viable plan, which it never did.

5. Mr. Park would also testify to the process of obtaining a best and final bid from all interested parties, including the Debtor, and address the selection process for the Approved New Tenant. He would also testify regarding Bank of Hope's concerns regarding Debtor's proposal, including the lack of committed funding to support Debtor's proposal, and the teleconference between representatives of the Debtor and Bank of Hope and their counsel to address these funding concerns, Debtor's acknowledgment during that teleconference of these deficiencies in its proposal, and Debtor's failure to address these deficiencies.

6. Mr. Park would also testify that Bank of Hope worked with the City in good faith to find the best path forward for Debtor's case, and regarding the determination that Broadway East Group, LLC made a viable offer which was determined to be the best and highest offer among the four total bids received, and was the most likely to be consummated in a timely

manner, its selection as the Approved New Tenant under the New Lease, its posting of a $1 million deposit at Bank of Hope's request which is now being held in escrow and will be available to fund the Approved New Tenant's obligations under the Plan, and Bank of Hope's work with the City and the Approved New Tenant to negotiate the terms of the New Lease.

7. Mr. Park would also testify that Debtor never offered with any of its proposals to post a deposit and upon information and belief, Debtor remains incapable of doing so to date.

8. Mr. Park would also testify to development of the Disclosure Statement and Plan.

9. Mr. Park would also speak to implementation of the Plan, including that, upon his knowledge, information, and belief, and conversations with outside professionals and the representatives of the City and Broadway East Group, LLC, that each of Bank of Hope, the City, and Broadway East Group, LLC will have the ability to satisfy their obligations under the Plan. Mr. Park would further testify that, given these circumstances, there will be sufficient funding for distributions and allowed administrative expenses under the Plan.  Mr. Park would also testify that, upon his knowledge, information, and belief, and conversations with outside professionals and the representatives of the City and Broadway East Group, LLC, that the New Lease with the Approved New Tenant has been approved by unanimous votes after meetings of (i) a Community Board committee and (ii) the Full Community Board, and that a Borough Board hearing is scheduled for September 21, 2023 and a subsequent public hearing for Mayoral approval is scheduled for September 27, 2023, and that it is not necessary for confirmation of the Plan to be delayed because of any of these procedures. Mr. Park would further testify that the parties to the New Lease would work to resolve any outstanding issues by the Effective Date, and that no circumstances exist that would be a basis for delaying confirmation of the Plan.

B. <u>Compliance with 11 U.S.C. § 1129</u>.

10. <u>1129(a)(1)</u>.  A review of the Plan, together with the proffer of testimony of Andrew Park, will show that Bank of Hope has satisfied Bankruptcy Code Section 1129(a)(1), which requires that the Plan complies with the applicable provisions of the Bankruptcy Code. The Plan complies with the mandatory requirements set forth in Bankruptcy Code Sections 1122 and 1123(a), and all Plan provisions are permitted by the applicable subsections of Bankruptcy Code Section 1123.  The Plan provides for adequate means for its implementation, through among other things, the New Lease agreed upon by the City, Bank of Hope, and the Approved New Tenant, and the agreement of those parties to evenly share payment of all allowed Administrative Expenses and Priority Claims.  Valid business, legal, and factual reasons exist for the separate classification of each of the classes of claims created and their treatment under the Plan. The claims in each class are substantially similar to the other claims in the same class.

11. <u>§ 1129(a)(2)</u>.  A review of the docket and testimony proffered by Mr. Park would establish that the Plan complies with Section 1129(a)(2), which requires that the proponent of a plan complies with all applicable provisions of the Bankruptcy Code, including with respect its compliance with the requirements governing the solicitation of acceptances of the Plan.  The Plan proponent, Bank of Hope, has complied with all applicable provisions of the Bankruptcy Code.  By this Court's Order dated July 6, 2023 (ECF No. 189), the Disclosure Statement and Plan solicitation documents were approved, and all Solicitation Package Materials were thereafter transmitted to creditors and other recipients as required thereby.  Moreover, the filed affidavits of service and the Certification of Ballots reflect that Bank of Hope has complied with Sections 1125 and 1126 of the Bankruptcy Code, and this testimony will establish that Bankruptcy Code Section 1129(a)(2) is therefore satisfied.

12. <u>Section 1129(a)(3)</u>. Mr. Park would testify that the Plan complies with Section 1129(a)(3) of the Bankruptcy Code, which requires that the Plan was proposed in good faith and not by any means forbidden by law. The Plan was proposed in good faith and was filed with the legitimate and honest purpose of maximizing the value of the Debtor's estate and the recoveries to holders of allowed claims in the order of priority under the Bankruptcy Code. This testimony will therefore establish that Bankruptcy Code § 1129(a)(3) has been satisfied.

13. <u>Section 1129(a)(4)</u>. A review of the Plan shows that it provides for the payment of all allowed administrative expenses, and includes a third administrative expense bar date. In addition, the fees of estate professionals are subject to the approval of the Court. Such testimony will therefore establish that Bankruptcy Code Section 1129(a)(4) has been satisfied.

14. <u>Section 1129(a)(5)</u>. Mr. Park would testify that Bank of Hope's Plan Supplement identifies GlassRatner Advisory & Capital Group, LLC d/b/a B. Riley Advisory Services as the Plan Administrator and that both the Plan and Plan Supplement speak to the relevant terms of its administration. Mr. Park would also provide an update on the entry into an agreement between Bank of Hope and the Plan Administrator with respect to its administration. Such testimony will therefore establish that Bankruptcy Code § 1129(a)(5) has been established.

15. <u>Section 1129(a)(6)</u>. This subsection is inapplicable to the Plan and is therefore satisfied.

16. <u>Section 1129(a)(7)</u>. As set forth in the Plan, with respect to each impaired Class of Claims or Interests, each holder of a Claim or Interest has accepted the Plan or will receive or retain under the Plan on account of such claim or Interest property of a value that is not less than the amount such holder would receive or retain if the Debtor was liquidated under chapter 7 of the Bankruptcy Code. Creditors will receive not less than they would receive in a chapter 7

liquidation. In a chapter 7, the Lease would be rejected and creditors would receive no distribution. Further, the Plan maximizes the amounts which may be recovered for such creditors on allowed claims. In a chapter 7 liquidation, there would also be increased, fees, costs, and expenses, including commissions, arising from and in connection with services rendered by a chapter 7 trustee and their professionals. Accordingly, each non-accepting holder of a Claim or Interest under the Plan would receive on account of such Claim or Interest property with at least as much values as such holders would be entitled to receive in a hypothetical chapter 7 liquidation. Therefore, such testimony would establish that the Plan satisfies the "best interests test" set forth in section 1129(a)(7) of the Bankruptcy Code.

17. <u>Section 1129(a)(8)</u>. As set forth in the Certification of Ballots, Classes 1, 2, 3A, 3B, 4A, and 4B have accepted the Plan or are unimpaired by the Plan and deemed to have accepted the Plan. In addition, there are no members of Class 4C because no one elected to receive Class 4C treatment. Class 5, Interests, is deemed to have rejected the Plan as such Class is not receiving or retaining any property under the Plan. The Plan does not discriminate unfairly in that Interests in Class 5 are dissimilar to the other Classes, and the Plan's segregation of Class 5 has a rational basis. Moreover, because senior Classes are not receiving more than the full value of their claims and no Interest that is junior to Class 5 will be receiving or retaining any property under the Plan, the fair and equitable standard has been satisfied. Accordingly, notwithstanding the deemed rejection by Class 5, the Plan can still be confirmed. Therefore, such testimony would establish that the Plan does not discriminate unfairly against Class 5 and is fair and equitable and that therefore Bankruptcy Code Section 1129(b) is satisfied<u>.</u>

18. <u>Section 1129(a)(9)</u>. The Plan provides that all holders of Allowed Priority Claims, including Priority State Tax Claims, Priority Non-Tax Claims, and Administrative

Claims will be paid in accordance with Section 1129(a)(9), except to the extent that the holder of such Claims has agreed to different treatment. Therefore, the Plan satisfies Section 1129(a)(9) of the Bankruptcy Code.

19. <u>Section 1129(a)(10)</u>. At least one impaired Class of Claims entitled to vote on the Plan has accepted the Plan. As set forth above, impaired Classes 1, 4A, and 4B have accepted the Plan. Therefore, the Plan complies with Section 1129(a)(10) of the Bankruptcy Code.

20. <u>Section 1129(a)(11)</u>. The Plan is a liquidating plan. Mr. Park would testify that he believes there are sufficient means to implement the Plan as set forth therein, specifically including the funding by the Approved New Tenant, Broadway East Group, LLC, as set forth in the Plan, Plan Supplement, and terms of the New Lease, to make the distributions to the Classes as set forth in the Plan on allowed claims in accordance with the priorities under the Bankruptcy Code. The Plan for liquidation is sustainable, provides adequate means for implementation, and is feasible. Thus, no other liquidation of the Debtor is anticipated or likely. Further, the Plan was extensively negotiated and discussed with various parties in interest. Moreover, the Plan is a liquidating plan and such Plan provides for payment of allowed claims in order of priority under the Bankruptcy Code. In addition, Bank of Hope, the City, and the Approved New Tenant have agreed to equally share in the payment of allowed administrative expenses and priority claims, and such allowed expenses and priority claims will be paid in full. The evidence establishes that there is a more than reasonable probability that the provisions of the Plan can be performed, and so the Plan satisfies Bankruptcy Code Section 1129(a)(11).

21. <u>Section 1129(a)(12)</u>. The Plan provides for the payment of all fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930, and the Plan therefore complies with Section 1129(a)(12) of the Bankruptcy Code.

22.     Sections 1129(a)(13), (14) and (15). These provisions of Section 1129 are inapplicable and so are deemed satisfied.

23.     Section 1129(a)(16). Mr. Park would testify, based on his knowledge, information, and belief, and conversations with outside professionals and representatives of the City and Broadway East Group, LLC, to the extent this provision is applicable to the transfer of the Estate's interest in the Lease, that as set forth above, the City is obtaining all required approvals under applicable nonbankruptcy law to effect the terms of the New Lease.

24.     Section 1129(b). Mr. Park would testify that under the Plan, Class 5 (Interests) is dissimilar to the other Classes (which are all Claims), and the Plan's segregation of those Claims has a rational basis. Class 5 consists solely of Interests. Accordingly, the Plan does not discriminate unfairly against the rejecting class, thereby satisfying this requirement of Section 1129(b) of the Bankruptcy Code. Moreover, the Plan satisfies the additional requirement of Section 1129(b) insofar as there is no class junior to Class 5 that would receive or retain any property under the Plan. And again, no party has claimed that there is unfair discrimination in the Plan or that the Plan is not fair and equitable. Such evidence would establish that the Plan is therefore confirmable under Section 1129(b) as to the sole rejecting class

25.     Section 1129(c). Mr. Park would testify that the Plan is the sole plan currently pending before the Court, and that the Plan is the only confirmable plan that has been presented to the Court in this case, with Debtor's plan already having been rejected.

26.     Section 1129(d). Mr. Park would testify that the Plan does not have, as one of its principal purposes, the avoidance of taxes or avoidance of requirements of Section 5 of the Securities Act of 1933, nor is Bank of Hope aware of any filing by any governmental agency or other party in interest asserting such avoidance.

  C. <u>Resolution of United States Trustee's Objection to Exculpation Clause;
Remaining Issue from Objection for Court's Determination</u>.

  27. Mr. Park would testify that the Release and Exculpation Clauses in the Plan are essential to the Plan, appropriate under applicable law, and constitutes a proper exercise of Bank of Hope's business judgment. The release and exculpation provisions were proposed in good faith, were formulated following arm's length negotiations with key constituents, and are appropriately limited in scope to achieve the overall purpose of the Plan. Each Released and Exculpated Party made significant contributions to the Chapter 11 case, including with respect to the negotiation and implementation of the New Lease and other elements of the Plan. Each Released and Exculpated party participated in good faith and in compliance with applicable law with regard to the solicitation of, and distribution of consideration pursuant to, the Plan and, therefore, is not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan. The record in the chapter 11 case fully supports the exculpation provisions, which are appropriately tailored to protect the Released and Exculpated Parties from inappropriate litigation arising from their participation in the chapter 11 case and are consistent with the Bankruptcy Code and applicable law.

  28. Further, Bank of Hope and the United States Trustee have agreed to the following language to replace the existing exculpation clause in the Plan:

> To the fullest extent permitted under sections 1123 and 1125 of the Bankruptcy Code and as provided herein, neither the City, BOH, nor any of their respective officers, directors, employees and other agents, financial advisors, attorneys, and accountants, or their respective successors-in-interest, who have been actually involved in the bankruptcy case, shall have any liability to any holder of any Claim or Interest for any act or omission between the Petition Date and the Effective Date in connection with or arising out of the negotiation, preparation, and pursuit of Confirmation of the Plan, the consummation of the Plan, the administration of the Plan, Plan solicitation, or the property to be distributed

under the Plan, except for liability based upon actual fraud, willful misconduct or gross negligence as determined in a Final Order by a court of competent jurisdiction. For the avoidance of doubt, nothing in the Plan shall limit the liability of attorneys to their respective clients pursuant to Rule 1.8(h) of the New York Rules Professional Conduct (22 N.Y.C.R.R. § 1200) or affect any criminal enforcement action.

29.    The lone remaining issue with respect to the United States Trustee objection is whether Bankruptcy Code Section 503(b) is applicable to payment of Bank of Hope's professionals. Bank of Hope, as set forth in its reply to the objection (*see* ECF No. 173), believes that such payments would not be subject to Section 503(b) as the agreement between Bank of Hope, the City, and the Approved New Tenant to share responsibility for such fees and expenses means they will have no impact upon the Debtor or its estate, given that the amount of fees paid will have no impact upon the recovery to any creditor other than Bank of Hope and the City. Moreover, any recovery available to other creditors would be carved out of the recovery that would otherwise have been payable to Bank of Hope and the City. For these reasons, Bank of Hope believes this last remnant of the United States Trustee objection should be overruled. Nevertheless, Bank of Hope has filed an administrative expense claim with respect to fees and expenses of its legal professionals related to the Plan through the Second Administrative Expense Bar Date, it will file another administrative expense claim by the Third Administrative Expense Bar Date, and additionally can provide updates as necessary to the Court and United States Trustee on professional fees and expenses related toward confirmation and execution of the Plan.