1

1

2   UNITED STATES BANKRUPTCY COURT

3   SOUTHERN DISTRICT OF NEW YORK

4   - - - - - - - - - - - - - - - - - - -x

5

6   In the Matter of:

7   EAST BROADWAY MALL, INC.,              Main Case No.

8         Debtor.                         19-12280-dsj

9

10   - - - - - - - - - - - - - - - - - - -x

11                  AMENDED

12              United States Bankruptcy Court

13              One Bowling Green

14              New York, New York

15

16              September 12, 2023

17

18

19

20

21   B E F O R E:

22   HON. DAVID S. JONES

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:  ELECTRONIC RECORDING

2

1

2   1) Confirmation Hearing

3

4   2) Motion Filed by the Debtor for Reconsideration

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20   Transcribed by:  River Wolfe

21   eScribers, LLC

22   7227 North 16th Street, Suite #207

23   Phoenix, AZ 85020

24   (800) 257-0885

25   operations@escribers.net

3

1

2  A P P E A R A N C E S (All present by video or telephone):

3  SFERRAZZA & KEENAN, PLLC

4        Attorneys for Debtor

5        532 Broadhollow Road

6        Suite 111

7        Melville, NY 11747

8

9  BY:   SARAH M. KEENAN, ESQ.

10

11

12  NEW YORK CITY LAW DEPARTMENT

13        Attorneys for City of New York

14        100 Church Street

15        New York, NY 10007

16

17  BY:   ZACHARY B. KASS, ESQ.

18        MINDY R. KOENIG, ESQ.

19

20

21

22

23

24

25

4

1

2  WINDELS MARX LANE & MITTENDORF, LLP

3       Attorneys for Bank of Hope

4       156 West 56th Street

5       New York, NY 10019

6

7  BY:   JAMES M. SULLIVAN, ESQ.

8        ROBERT JEROME MALATAK, ESQ.

9

10

11  UNITED STATES DEPARTMENT OF JUSTICE

12       Attorneys for Office of the United States Trustee

13       One Bowling Green

14       Suite 534

15       New York, NY 10004

16

17  BY:   MARK BRUH, ESQ.

18

19

20  SOONG LIU, ESQS.

21       Attorneys for Proposed New Tenant

22       305 Broadway, Suite 1201

23       New York, NY 10007

24

25  BY:   ARTHUR J. SOONG, ESQ.

5

1

2  Also Present:

3        MATTHEW B. BERK, NYC DCAS

4        KELLY CHO, Bank of Hope

5        STEPHAN LEE, Bank of Hope

6        ANDREW PARK, Bank of Hope

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**EAST BROADWAY MALL, INC.**

6

1                     P R O C E E D I N G S

2          THE COURT:  Good day, everyone.  It's Judge Jones.

3   Thanks for your patience and needed a minute to pull some

4   papers together.  We're here on the East Broadway Mall case,

5   number 19-12280, with two matters on the calendar.  One is a

6   motion for reconsideration filed by the debtor, and the other

7   is request for confirmation of a plan as proposed by the plan

8   proponent Bank of Hope.

9          So nice to see everyone.  We've had a lot of

10  proceedings in the case and I know everyone and we already have

11  captured your appearances through the sign-in process.  So I

12  think what we can do is just skip appearances and get right

13  down to the agenda.

14         Further, what I was thinking is it makes sense to deal

15  with the reconsideration motion first because the status of

16  that could impact confirmation.  Certainly, if granted, it

17  would impact confirmation, possibly.

18         But let me hear from counsel for Bank of Hope, if that

19  makes sense to you.  Also, are there any further updates with

20  respect to confirmation you want to get on the record up front,

21  or anything else that you want to raise, just by way of

22  organizing today's proceeding?

23         MR. SULLIVAN:  Thank you, Your Honor.  Yeah, I think

24  it makes sense to address the reconsideration motion first --

25         THE COURT:  Oh, sorry.  Remember to say your name for

**eScribers, LLC**

## EAST BROADWAY MALL, INC.

7

1  our poor absent reporter who's piecing this together.

2           MR. SULLIVAN:  Oh, apologize, Your Honor.  James

3  Sullivan, Windels Marx Lane & Mittendorf, counsel for Bank of

4  Hope.

5           So I agree with Your Honor.  I think it makes sense to

6  address the reconsideration motion first and then move on to

7  the hearing on confirmation of Bank of Hope's fourth amended

8  plan and disclosure statement.

9           We've tried to resolve as many of the issues as we

10  can.  I think we have resolved all but one very minor issue

11  with the U.S. Trustee's office.  We resolved all the issues

12  related to the exculpation provision in the plan.  We filed a

13  proffer, which includes the revised language.  And we also

14  submitted a proposed form of order to chambers, and we

15  circulated that amongst the parties.  Hopefully everyone has

16  received and had a chance to look at that.

17           We have one minor issue with the U.S. Trustee's office

18  just related as -- as it relates to whether or not any type of

19  court review of my firm's attorney's fees is going to be

20  required.  And we still have the debtor's objection to address,

21  as well.

22           THE COURT:  Okay.  So --

23           MR. SULLIVAN:  I think that's pretty much for status.

24           THE COURT:  Okay.  Thank you for that.  Let's, then,

25  turn to the -- I'll ask everyone else to hold their piece for

8

1    the moment.  But let's turn to Ms. Keenan and the

2    reconsideration motion first, and then we'll see where that

3    leaves us.  Okay.

4            So nice to see you, Ms. Keenan.  And it sounds like

5    you've had a busy day.  And you can present your

6    reconsideration motion as you wish.

7            I will say, I'm not -- well, I don't have any very

8    specific things for you to address.  I think the opposition

9    makes a pretty strong showing, though, but I'll let you present

10   it however you want.

11           MS. KEENAN:  Okay.  Thank you.  Good morning, Your

12   Honor.

13           We made the motion because the principals of the

14   debtor were very upset about the releases that they would have

15   to give the City.

16           THE COURT:  I'm sorry.  Ms. Keenan, your audio.

17           MS. KEENAN:  But I --

18           THE COURT:  Hey, Ms. Keenan, hang on.  Your audio

19   feed's kind of a little iffy.

20           MS. KEENAN:  Okay.  This is --

21           THE COURT:  I don't know if there's --

22           MS. KEENAN:  -- a new microphone.

23           THE COURT:  So start over, and if keeps breaking up,

24   we may have you drop your video and see if that just --

25           MS. KEENAN:  All right.  Is that --

1          THE COURT:  That's better.

2          MS. KEENAN:  -- any better?

3          THE COURT:  Yeah.

4          MS. KEENAN:  Okay.  This is new for me, this

5    microphone.

6          My clients, the principals of the debtor, were upset

7    about the release language in that stipulation.  They have felt

8    that they were really put out of business by the City and that

9    is why we are where we are today.  I explained to my client

10   that -- and I read this -- really, it came out in Mr. Kass'

11   response, that basically the City is releasing the debtor, and

12   the debtor won't be able to show any damages because they're

13   basically settling their claims for less than two million

14   dollars.

15         So as far as the debtor goes, I don't think that we

16   have a motion to pursue now on that, and I'm not sure -- I

17   mean, looking at it, at that in that way, I can't show damages,

18   and so what would they pursue.  And so as a result, that is not

19   a motion that I think can be won at this juncture.  I know Your

20   Honor said that you had some feelings about it.

21         But I don't want to prolong this.  They're very,

22   obviously, devastated by this.  They would never have signed

23   off on the stipulation.

24         I stand by what I've said all along that this was a

25   nonnegotiable provision mandated by the City, not bank of Hope.

**EAST BROADWAY MALL, INC.**

10

1   I never complained about Bank of Hope on this.  It was always

2   against the City.  They would not give us the thirty days which

3   they would need in order to put together or get an appraisal

4   for the funder.

5            And so they put in everything.  And for those thirty

6   days, they were insisted on it.  And I had no choice, and I

7   really feel like I did have a gun to my head.  But it is what

8   it is, and they are getting their release and --

9            THE COURT:  They, the debtor, are?

10           MS. KEENAN:  That's for the debtor.

11           THE COURT:  The debtor is getting a release?  Yeah.

12  Okay.  Okay.  So does that translate to debtor withdrawing the

13  motion for reconsideration?

14           MS. KEENAN:  Based upon the release language, it does

15  because I do not believe I can be meritorious on it otherwise.

16           THE COURT:  Okay.  So I'm hearing that this is --

17           MS. KEENAN:  I mean, obviously, I have clients who are

18  very adamant about the fact that they would never have given up

19  their rights.  But even if that language wasn't there, they're

20  getting the release anyway.  And at the end of the day, they've

21  lost.  And it's sad.

22           THE COURT:  Right.  Okay.  So look, Ms. Keenan, I

23  understand, and we've had a -- we've gone a long road in this

24  case together and with the prior judge as well, of course.  And

25  so you've made clear your client's concerns and disappointment

1 at how the case has shaped up and the seeming outcome.  So I

2 fully understand that.

3     I just want to make sure I'm administering the case

4 correctly.  And so what I am hearing is that you said, yes,

5 based on the current circumstances and the procedural

6 developments, debtor's withdrawing the motion for

7 reconsideration; is that right?

8     MS. KEENAN:  I think, actually, based upon what you

9 said when you sat on the bench, based upon the papers that have

10 been filed and the opposition that was filed, that if we could

11 have a decision on it.  It could be a short-order decision, but

12 I think that would be better.

13     THE COURT:  Okay.  That's fine.  Is there anything you

14 want to add with respect to the contentions that you haven't

15 covered already on the reconsideration motion?

16     MS. KEENAN:  No, I think I've put it all in the

17 papers.  I've been --

18     THE COURT:  Okay.  Yeah, and I'm sure --

19     MS. KEENAN:  I've said it a hundred -- every which way

20 but loose, I've said it.

21     THE COURT:  Right.  Okay.  I've reviewed the papers of

22 all parties on the motion, of course.  So thank you.  That's

23 fine.

24     Does any other party want to be heard with respect to

25 the reconsideration motion?

**EAST BROADWAY MALL, INC.**

12

1          Okay.  I paused and heard silence.  I'm going to take

2     that that everyone is content to rest on their papers, which I

3     likewise have reviewed.  And I'm prepared to rule on the

4     motion.  So the following constitutes the oral ruling of the

5     Court, and I will ask the parties to make sure they order the

6     transcript so that the record captures the Court's oral ruling.

7          Debtor moves pursuant to Federal Rule of Civil

8     Procedure 60(b)(3) and potentially 60(b)(6), seeking to vacate

9     a stipulation and order establishing deadline for certain

10    actions by debtor, City of New York, and Bank of Hope

11    pertaining to debtor's interest in lease for 88 Broadway, which

12    should be 88 East Broadway, New York, New York, so ordered by

13    the Court and entered on June 22 of the year 2022.  I'll refer

14    to that document as the stipulation, or stipulation and order.

15    It's docketed at ECF number 110.

16          In support, debtor supports the declaration of Grace

17    Chan, which appears at ECF number 183, and an affirmation of

18    debtor's attorney Sarah Keenan, which appears at ECF number

19    183-1.  As Ms. Keenan highlighted in her remarks just now,

20    debtor takes the strong view that the City treated

21    debtor unfairly consistently throughout the case.  Essentially

22    made a predetermination that it was not going to continue doing

23    business with the debtor.

24          The debtor, by way of background, leases the premises

25    of a mall in Chinatown called the East Broadway Mall from the

**EAST BROADWAY MALL, INC.**

13

1   City, which is the landlord as well as a governing or

2   regulating body of the debtor.  And the stipulation in question

3   from which debtor seeks relief was dated, as I said, June 22nd

4   of 2022 and had quite a number of salient provisions from which

5   the debtor seeks relief.

6          Particularly troubling to the debtor is a requirement

7   that as a condition of the parties' agreement that the debtor

8   shall have further -- would have further time to try to develop

9   a confirmable plan and business partner and proceed seeking to

10  continue operating the premises in question.  The parties

11  required the debtor, as a condition of that stipulated

12  extension of time, to, among other things, agree to drop a pre-

13  bankruptcy litigation that the debtor had pending against the

14  City and as well as -- as well as affording other relief.

15         The debtor complains that the stipulation's terms

16  were, as a practical matter, coercively imposed on the debtor

17  because the negotiating other parties, the Bank of Hope, which

18  is the secured lender of the debtor, and the City, in its

19  capacity as landlord, insisted on that term at a time when the

20  debtor was going to have its rights expire unless it negotiated

21  and secured an extension of time.  The stipulation, which is

22  docketed in the case bearing signatures, including of debtor's

23  attorney Ms. Keenan, as well as counsel for Bank of Hope and

24  for the City, and it, again, was so ordered by the Court.

25         The Court is going to deny the motion because it

**EAST BROADWAY MALL, INC.**

14

1    simply fails to meet the standards required for obtaining

2    relief under Rule 60(b).  I largely agree with the legal

3    analysis set forth in the Bank of Hope's opposition.  But in

4    brief, I will just observe that the debtor's motion, while it

5    emphasizes facts that understandably are distressing to the

6    debtor, does not identify any basis for relief, specifically

7    under Rule 60(b)(3).

8           By way of background, the stipulation was entered,

9    again, in June of 2022.  There's been no showing of any fact

10   from which any even plausible inference, much less

11   preponderance-backed conclusion, could be made that any party

12   to the stipulation, whether Bank of Hope or the City, engaged

13   in any form of fraud, misrepresentation, or misconduct in the

14   inducement of the stipulation.  It simply was a negotiated

15   stipulation, providing valuable and meaningful considerations

16   or concessions to debtor in exchange for securing certain

17   considerations or concessions from the debtor for the benefit

18   of other parties.

19          The agreement arises against a long procedural

20   backdrop in this case, which was filed in July of 2019, way

21   back before anyone had heard of COVID.  The debtor had a very

22   substantial amount of time to pursue relief under the Code and

23   develop a confirmable plan, but it failed to do so, really, at

24   any time.  It's understandable that COVID severely impacted the

25   debtor, which was a retail operation located in a dense

**EAST BROADWAY MALL, INC.**

15

1    community that was severely impacted by COVID.  And it's a

2    tightly-spaced indoor facility, which is just sort of tailor-

3    made for struggling with COVID.  And the Court appreciates and

4    understands that.

5          Nevertheless, the case has seen a series of conceptual

6    extensions of time, including on consent of the City to permit

7    debtor to attempt to develop viable financing options and a

8    workable plan that was acceptable to the City.  The docket

9    sheet is peppered throughout the years 2020 and 2021 with

10   extensions and memorialization of further forbearances and

11   further agreements of time.

12         Further, well, just by way of example, there were

13   statements by the City, which are docketed on January 27th of

14   2021, again, a further extension of this on consent of the City

15   on March 15th of 2021, and a further extension May 17th of

16   2021, in all of which the City stated that it was allowing time

17   to let the debtor try to develop a workable approach by which

18   it could maintain control of the property and emerge as a

19   successfully reorganized debtor.

20         Finally, in September of 2021, the City informed the

21   Court that it wouldn't consent to more formal extensions along

22   these lines.  And yet, even so, on through December of 2021,

23   negotiations continued on an informal basis, and the Court

24   entered a scheduling order in December 2021, allowing those

25   settlement discussions to continue informally with a briefing

**EAST BROADWAY MALL, INC.**

16

1    schedule imposed if lease issues could be resolved consensually

2    by February of 2022.  That did not occur.

3         So I paused to give that recitation, just to make

4    clear that although I understand debtor's distress, the

5    requirements of the stipulation from which relief is now sought

6    did not come out of thin air, but rather were the culmination

7    of a lengthy and unsuccessful series of discussions.  And the

8    reason for the stipulation was to give the debtor one last

9    chance to try to pull together a viable pathway.  And at the

10   advanced stage of this case at which the parties reached that

11   agreement, they want to ensure that in the event debtor did not

12   succeed, various disputes would be eliminated and taken off the

13   table so that the case could finally proceed in an orderly

14   fashion and the facility could hopefully be put to productive

15   use.

16        So in preparing for the hearing, I considered a

17   Eastern District of New York decision by Judge Scarcella in In

18   re: Koper, 552 B.R. 208, 215 (Bankr. E.D.N.Y. 2016).  And I

19   view the analysis in that case as exactly on point where a

20   party is seeking relief from a stipulation under Rule 60(b)(3).

21   In that case, again, In re: Koper, after the parties agreed to

22   settle a dispute, the debtor filed a motion to vacate the order

23   approving the stipulation, again, as here, pursuant to Rules

24   60(b)(3) and (6), arguing that the debtor was induced to enter

25   the stipulation by misrepresentations and misconduct of the

1  plaintiff.

2       That contention was rejected, noting that relief from

3  judgment is generally not favored and properly granted only

4  upon a showing of exceptional circumstances.  See United States

5  v. International Brotherhood of Teamsters, 247 F.3d 370, 391

6  (2d Cir. 2001).  See also Nemaizer, that's N-E-M-A-I-Z-E-R, v.

7  Baker, 793 F.2d 58, 61 (2d Cir. 1986).

8       Further, whether a motion for relief under Rule 60(b)

9  should be granted as subject to the sound discretion of the

10 Court, see e.g. In re: Taub, 421 B.R. 37, 42 (Bankr. E.D.N.Y.

11 2009).

12      Drawing from the Nemaizer decision I already cited,

13 the Second Circuit has observed that, "When the parties submit

14 to an agreed-upon disposition instead of seeking resolution on

15 the merits ... the burden to obtain Rule 60(b) relief is

16 heavier than if one party proceeded to trial, lost, and failed

17 to appeal."  Nemaizer, 793 F.2d, 63.

18      That is to say, when a party makes a deliberate,

19 strategic choice to settle, she cannot be relieved of such a

20 choice merely because her assessment of the consequences was

21 incorrect.  United States v. Bank of New York, 14 F.3d 756, 759

22 (2d Cir. 1994).

23      There is abundant law to the same -- holding the same

24 thing.  I'm not going to elaborate on it here.  I don't think

25 that's meaningfully disputed in the briefing.

**EAST BROADWAY MALL, INC.**

18

1        To prevail under Rule 60(b)(3), then, the movant must

2    demonstrate by clear and convincing evidence that the order or

3    judgment from which relief is sought was procured by fraud,

4    misrepresentation, or other misconduct.  See Fleming v. New

5    York University, 865 F.2d 478, 484 (2d Cir. 1989).  See also In

6    re: Waugh, 367 B.R. 361, 367 (Bankr. E.D.N.Y. 2007), quoting

7    other cases.

8        Here, debtor simply identifies no fact and nothing

9    more than a conclusory allegation of fraud, if that, that was

10   material to the outcome or the Court's entry as an order of the

11   parties' stipulated agreement.  I don't think I need to

12   elaborate on that conclusion.  That is the fundamental reason

13   for the Court's ruling, and no fact has been identified, again,

14   to support the required conclusion that's needed to grant

15   relief under Rule 60(b)(3).

16       I will say that debtor points to some later

17   developments, including a potential stay violation by the City

18   in the form of what appears to be an automatically generated

19   collection notice or payment-due notice that was generated, but

20   none of that is material to the question of whether the

21   stipulation was fraudulently induced in the first place.

22       Debtor also is not entitled to relief under Rule

23   60(b)(6), which is effectively a catch-all provision that

24   allows a court to set aside a final order or judgment for any

25   other reason that justifies relief.  Plaintiff hasn't developed

1   any contentions under Rule 60(b)(6) and has, in fact, framed

2   its request for relief in terms expressly covered by Rule

3   60(b)(3).  Where a more specific provision such as 60(b)(3)

4   applies and is not satisfied, relief under Rule 60(b)(6) is

5   unavailable.

6        So for these reasons, the Court denies the motion for

7   reconsideration of debtor.  I will ask the Bank of Hope as the

8   opponent to the motion to submit a proposed order memorializing

9   that denial of the motion and referencing and incorporating the

10  Court's oral ruling as the basis for that denial.  Okay.

11       All right.  So thanks --

12       MR. SULLIVAN:  Yes, Your Honor.

13       THE COURT:  -- everybody.  And let's turn to the

14  confirmation hearing portion of the agenda.

15       So I'll turn it over to Mr. Sullivan for that.

16       MR. SULLIVAN:  Thank you, Your Honor.  As I mentioned

17  a few moments ago, we did file a -- on the docket a proffer of

18  what we hope to elicit during the confirmation hearing today.

19  I'm happy to read the proffer on the record if Your Honor

20  wants.  I don't know how much time we have, so I don't want to

21  belabor the point if --

22       THE COURT:  Yeah.  Yeah, I'll tell you, I have a hard

23  stop at 1:30.  I'd love to finish by 1, and if necessary, I

24  could resume later in the afternoon.  But I do have another

25  thing.  How long is your proffer?

**EAST BROADWAY MALL, INC.**

20

1          MR. SULLIVAN:  It's about ten pages, Your Honor.  So I

2     could try to either goes to the heart of the matter, and at

3     least what I view as the heart of the matter.  Or if Your Honor

4     wants to just take notice of the fact that it's on the docket

5     and then we could subject -- if Ms. Keenan or any other party

6     wants to engage in cross-examination, we could deal with it

7     that way.  I don't want to suggest to Your Honor what you

8     would -- how you would like the presentation to be made.

9          THE COURT:  Oh, I, in turn, don't want to short-

10    circuit the process.  I want you to make the record you want

11    and develop the evidentiary basis you want and need.  And so

12    whatever you think is going to work is fine.  And I don't know

13    if -- have you discussed this with Ms. Keenan before now?

14         MR. SULLIVAN:  I haven't.  No, Your Honor.

15         THE COURT:  Okay.  So let me just -- I think that what

16    I should do is not dictate how you make your record.  So I'm

17    going to let you present how you want.  If you want to -- I

18    guess your idea of the proffer is to provide information, and

19    you have a competent witness available to testify to the

20    event -- to the matters presented if necessary?

21         MR. SULLIVAN:  I do, Your Honor.  I have Mr. Andrew

22    Park, who is with Bank of Hope.  He's on the Zoom line today.

23    Two of his colleagues are also on, just in case.  But he would

24    be the primary witness that I would use if I needed to put him

25    on the stand, Your Honor.

**EAST BROADWAY MALL, INC.**

21

1          THE COURT:  Okay.  So I think I'm just going to do

2    what I said, which is give you free rein.  If I run out of time

3    and need to stick you with a break, I'll just have to do that,

4    which would be unfortunate, but sometimes necessary.  So we'll

5    see.

6          MR. SULLIVAN:  Okay, Your Honor.  I'll try to -- I'll

7    try to speak relatively quickly, but I think it would be

8    helpful to just kind of go through the various items in the

9    proffer, and this way, it kind of, like, creates the record, in

10   case we need to have any kind of further discussion about it.

11         THE COURT:  Okay.

12         MR. SULLIVAN:  Your Honor, so the offer of proof is

13   made to demonstrate compliance with Bankruptcy Code Section

14   1129 in support of confirmation of Bank of Hope's fourth

15   amended Chapter 11 plan for liquidation, which was filed on

16   July 5, 2023, and Bank of Hope's fourth amended disclosure

17   statement on a final basis.  Your Honor may recall that you

18   approved that on a -- you allowed a couple of objections to the

19   disclosure statement to be carried until today, but I believe

20   we've pretty much resolved those.  I guess we can check with

21   Mr. Bruh on that, but I'm not sure of --

22         THE COURT:  Those were the U.S. --

23         MR. SULLIVAN:  -- any that remain.

24         THE COURT:  Yeah.  You're referring to the U.S.

25   Trustee objections to the disclosure statement, right, which

**EAST BROADWAY MALL, INC.**

22

1  were --

2          MR. SULLIVAN:  Yes, Your Honor.  Yes, Your Honor.

3          THE COURT:  Okay.

4          MR. SULLIVAN:  So the plan and disclosure statement

5  were filed ECF docket number 186 and were also attached to a

6  copy of Your Honor's form of order approving the disclosure

7  statement, which was docket number 188.

8          Your Honor, we would ask that you take judicial notice

9  of all documents filed in the debtor's bankruptcy case,

10  including Bank of Hope's proof of claim.

11          As I mentioned a few moments ago, Mr. Andrew Park is

12  in attendance today.  If called to testify, Mr. Park would

13  testify under oath as set forth below from his own personal

14  knowledge and information provided to him by certain of Bank of

15  Hope's employees and professionals, from his review of business

16  records maintained by Bank of Hope and relating to the debtor

17  in the ordinary course of its regularly conducted business

18  activities, from his knowledge concerning the relationship

19  between the Bank of Hope and the debtor, as well as with the

20  City, and certain relevant operations and financial affairs of

21  the debtor.

22          Mr. Park would testify to the salient elements of the

23  disclosure statement and plan.  Mr. Park is a senior vice

24  president and manager special assets department for Bank of

25  Hope.  He is familiar with Bank of Hope's financial dealings

1   with the debtor.  And Mr. Park is the person designated to be

2   responsible in consultation with legal counsel and other court-

3   approved professionals for Bank of Hope's involvement in the

4   debtor's Chapter 11 case, including with respect to development

5   of the plan and disclosure statement, the extensive work of

6   Bank of Hope with the City toward implementation of the new

7   lease that is the basis for the plan.  Mr. Park has reviewed

8   and is familiar with the terms and provisions of the plan and

9   disclosure statement.

10      Based on his involvement in debtor's Chapter 11 case,

11  his knowledge of relevant information, and his review of

12  matters with Bank of Hope's outside professionals, Mr. Park is

13  familiar with matters relating to confirmation of the plan.  He

14  would testify -- with respect to Bank of Hope's history of

15  financial dealings of the debtor, both pre-petition and since

16  the debtor initiated this Chapter 11 case, he would testify to

17  Bank of Hope having given the debtor every opportunity to come

18  up with a viable plan, which it never did.

19      Mr. Park would also testify to the process obtaining a

20  best and final bid from all interested parties, including the

21  debtor, and address the selection process for the approved new

22  tenant.  He'd also testify regarding Bank of Hope's concerns

23  regarding the debtor's proposal, including the lack of

24  committed funding to support the debtor's proposal and the

25  teleconference between representatives of the debtor and the

24

1    Bank of Hope and their counsel to address these funding

2    concerns, debtor's acknowledgment during the teleconference of

3    these deficiencies in its proposal, and debtors failure to

4    address these deficiencies.  Mr. Park would also testify that

5    Bank of Hope worked with the City in good faith to find the

6    best path forward for the debtor's case.

7         And regarding the determination that Broadway Group

8    LLC made a viable offer, which was determined to be the best

9    and highest offer among the four total bids received and was

10   the most likely to be consummated in a timely manner, its

11   election as the approved new tenant under the new lease, its

12   posting of a one-million-dollar deposit at Bank of Hope's

13   request, which is now being held in escrow and will be

14   available to fund the approved new tenant's obligations under

15   the plan, and Bank of Hope's work with the City and the

16   approved new tenant to negotiate the terms of the new lease.

17        Mr. Park would also testify that debtor never offered

18   with any of its proposals to post a deposit, and upon

19   information and belief, debtor remains incapable of doing so to

20   date.

21        Mr. Park would also testify to development of the

22   disclosure statement and plan.  He would speak to

23   implementation of the plan, including that upon his knowledge,

24   information, and belief and conversations with outside

25   professionals and the representatives of the City and Broadway

**EAST BROADWAY MALL, INC.**

25

1   East Group, LLC that each of Bank of Hope, the City, and

2   Broadway East Group, LLC will have the ability to satisfy their

3   obligations under the plan.

4        Mr. Park would further testify that given these

5   circumstances, there will be sufficient funding for

6   distributions and allowed administrative expenses under the

7   plan.

8        Mr. Park would also testify that upon his knowledge,

9   information, and belief, and conversations with outside

10  professionals and the representatives of the City and Broadway

11  East Group, LLC that the lease with the new approved tenant has

12  been approved by unanimous votes after meetings of the

13  Community Board Committee and the full community board, and

14  that a borough board hearing is currently scheduled for

15  September 21, 2023, and a subsequent public hearing for mayoral

16  approval is scheduled for September 27, 2023, and upon

17  information and belief, no further hearings would be required.

18       Mr. Park would further testify that the parties to the

19  new lease would work to resolve any outstanding issues by the

20  effective date, and no circumstance exists that would be a

21  basis for delaying confirmation of the plan.

22       Your Honor, then I just -- Mr. Park would then testify

23  as to the various components of Section 1129 of the Bankruptcy

24  Code and the compliance of the plan with each of those

25  provisions.  So I'm going to go through section by section and

**EAST BROADWAY MALL, INC.**

26

1  just kind of briefly describe, by way of proffer, the facts

2  which support confirmation of the plan as it relates to each of

3  those sections.

4          With respect to Section 1129(a)(1), a review of the

5  plan, together with the proffer of testimony of Mr. Park, will

6  show that Bank of Hope has satisfied Bankruptcy Code Section

7  1129(a)(1), which requires that the plan complies with the

8  applicable provisions of the Bankruptcy Code.  The plan

9  complies with the mandatory requirements set forth in

10 Bankruptcy Code Section 1122 and 1123(a), and all plan

11 provisions are permitted by the applicable subsections of

12 Bankruptcy Code Section 1123.

13         The plan provides for adequate means for its

14 implementation through, among other things, the new lease

15 agreed upon by the City, Bank of Hope, and the approved new

16 tenant and the agreement of those parties to evenly share

17 payment of all administrative expenses and priority claims.

18 Valid business, legal, and factual reasons exist for the

19 separate classification of each of the classes of claims

20 created and the treatment under the plan.  The claims in each

21 class are substantially similar to the other claims in the same

22 class.

23         With respect to Section 1129(a)(2), a review of the

24 docket --

25         THE COURT:  I'm going to jump -- I'm sorry, Mr.

**EAST BROADWAY MALL, INC.**

27

1  Sullivan.  I want to jump in.  I'm happy --

2           MR. SULLIVAN:  Sure.

3           THE COURT:  The proffer, it's great that you're doing

4  the proffer.  I have no problem with your proceeding this way.

5           If this purports to be a summary of the testimony that

6  Mr. Park would provide, I just don't know that he's competent

7  to attest to the existence of valid business, legal, and

8  factual reasons.  I mean, I guess he can say -- I guess he is

9  probably capable to talk about valid business reasons or the

10 Bank of Hope's actual business reasons or factual reasons, but

11 I don't know that he's qualified to --

12          MR. SULLIVAN:  It's probably more of a legal issue,

13 Your Honor.

14          THE COURT:  -- testify as to the legality, the legal

15 conclusions (indiscernible) here.

16          MR. SULLIVAN:  Yeah, it's probably more of a legal

17 issue.  So to the extent that there are any factual

18 underpinnings underneath that and that Your Honor wanted to

19 address, he would certainly be available to address any of

20 those concerns.  And some of these --

21          THE COURT:  Okay.

22          MR. SULLIVAN:  Some of these, obviously, when you're

23 going through these 1129 provisions, a lot of them are either

24 legal or mixed factual and legal.  So I understand that to some

25 extent, he's relying upon what I have told him to a large

**EAST BROADWAY MALL, INC.**

28

1  extent.  And so I just ask you to kind of take it for what it's

2  worth, that he would be offering whatever business

3  justifications might exist with respect to each of these

4  sections of the Bankruptcy Code to ensure compliance with the

5  plan with each of those provisions.

6       THE COURT:  Okay.  I'm fine letting you proceed along

7  the lines you describe.  I just want to, I guess, maybe for

8  record purposes, say I will not accept Mr. Park's legal opinion

9  as certainly binding on me or necessarily established.  I think

10  the legal conclusions that are --

11       MR. SULLIVAN:  Understood, Your Honor.

12       THE COURT:  -- advanced are for me to make, not for

13  him to establish.  But you can go right ahead and frame it that

14  way.

15       MR. SULLIVAN:  Understood, Your Honor.  It really is

16  just a foundation for demonstrating a desire and an intent to

17  comply with each of the provisions.  And --

18       THE COURT:  Right.  No, it's a good --

19       MR. SULLIVAN:  I certainly believe that they

20  (indiscernible) --

21       THE COURT:  It's a good organizational device.  I'm

22  just hanging up on this one --

23       MR. SULLIVAN:  Okay.

24       THE COURT:  -- on the characterization of what exactly

25  it is that he would be testifying to.  So but go right ahead.

29

1           MR. SULLIVAN:  Understood, Your Honor.

2           THE COURT:  And certainly, the framework is helpful.

3           MR. SULLIVAN:  I appreciate you butting in and kind of

4    highlighting that, Your Honor.

5           With respect to Section 1129(a)(2), a review of the

6    docket and testimony proffered by Mr. Park would establish that

7    the plan complies with Section 1129(a)(2), which requires that

8    the proponent of a plan complies with all applicable provisions

9    of the Bankruptcy Code, including with respect to its

10   compliance with the requirements governing the solicitation of

11   acceptances of the plan.

12          The plan proponent Bank of Hope has complied with all

13   applicable provisions of the Bankruptcy Code.  By this Court's

14   order, dated July 6th, 2023, ECF docket number 189, the

15   disclosure statement and plan solicitation documents were

16   approved, and all solicitation package materials were

17   thereafter transmitted to creditors and other recipients as

18   required thereby.  And that can be reflected in docket entries

19   199, 200, 201, and 202.

20          Moreover, the filed affidavits of service and the

21   certification of ballots reflect that Bank of Hope has complied

22   with the Sections 1125 and 1126 of the Bankruptcy Code, and

23   this testimony will establish that Bankruptcy Code Section

24   1129(a)(2) is therefore satisfied.

25          And I get to it a little bit at the end, Your Honor,

1  or as appropriate, but the certification of ballots is

2  reflected on the docket as document number 198 and was filed on

3  August 25, 2023.  And it reflects the submission of four

4  ballots in connection with the plan, three of which were

5  submitted by Bank of Hope in connection with the various

6  classes of claims for which it held claims and one by the City

7  with respect to the class of -- with respect to its claim.

8        And it shows that as a result of the balloting that

9  the Class 1 secured claim of Bank of Hope, there was one vote

10  in favor of the plan, which accepted it.  There were no Class 2

11  claims.  Class 3(a) is tax claims unimpaired, therefore deemed

12  to accept.  Class 3(b), that's the adequate protection claim of

13  Bank of Hope, so one claim was voted to accept.  No rejections.

14  Class 4(b), Your Honor, there are two votes received, one by

15  Bank of Hope and one by the City of New York.  Both of those

16  claims, again, voted to accept the plan, and there were no

17  rejections.  And none of the creditors, Your Honor, elected to

18  receive Class 4(c) treatment, which was a convenience class

19  that had been created.  And then Class 5, which is the

20  interestholders, they've been deemed to reject the plan.

21        Next, Your Honor, with respect to 1129(a)(3), Mr. Park

22  would testify that the plan complies with Section 1129(a)(3) of

23  the Bankruptcy Code, which requires that the plan was proposed

24  in good faith and not by any means forbidden by law.  The plan

25  was proposed in good faith and was filed with the legitimate

1    and honest purpose of maximizing the value of the debtor's

2    estate and the recoveries to holders of allowed claims in the

3    order of priority under the Bankruptcy Code.  This testimony

4    will therefore establish that Bankruptcy Code 1129(a)(3) has

5    been satisfied.

6          With respect to Section 1129(a)(4), a review of the

7    plan shows that it provides for the payment of all allowed

8    administrative expenses and includes a third administrative

9    expense bar date.  In addition, the fees of estate

10   professionals are subject to the approval of the Court.  Such

11   testimony will therefore establish that Bankruptcy Code Section

12   1129(a)(4) has been satisfied.

13         With respect to Section 1129(a)(5), Mr. Park would

14   testify that the Bank of Hope's plan supplement, which was

15   filed at docket number 195 and the related exhibits, identifies

16   GlassRatner Advisory & Capital Group LLC doing business as B.

17   Riley Advisory Services as the plan administrator and that both

18   the plan and plan supplements speak to the relevant terms of

19   its administration.  Mr. Park would also provide an update on

20   the entry into an agreement between Bank of Hope, only in its

21   capacity as planned proponent and the proposed plan

22   administrator.  A form of agreement has been circulated to the

23   U.S. Trustee's Office, as well as -- as well as, I believe,

24   counsel for the City.  And I'm not a hundred percent sure if

25   counsel for the debtors received that yet, but I think we're

**EAST BROADWAY MALL, INC.**

32

1  still waiting for comments from the U.S. Trustee's office.  So

2  that progress has been made on the plan administrator

3  agreement, and we're hoping that we can finalize that

4  imminently.

5       With respect to Section 1129(a)(6), this subsection is

6  inapplicable to the plan.  Is therefore satisfied.

7       Section 1129(a)(7), Your Honor, as set forth in the

8  plan with respect to each impaired class of claims or interest,

9  each holder of a claim or interest has accepted the plan as

10 described a little while ago or will receive or retain under

11 the plan on account of such claim or interest property of a

12 value that is not less than the amount such holder would

13 receive or retain if the debtor was liquidated under Chapter 7

14 of the Bankruptcy Code.  Creditors will not receive less than

15 they would receive in a Chapter 7 liquidation.  In a Chapter 7,

16 the lease would be rejected and the creditors would receive no

17 distribution.

18      Further, the plan maximizes the amounts which may be

19 recovered for such creditors and allowed claims.  In a Chapter

20 7 liquidation, there would also be increased fees and costs and

21 expenses, including commissions arising from in the connection

22 with services rendered by a Chapter 7 trustee and their

23 professionals.  Accordingly, each nonaccepting holder of a

24 claim or interest under the plan would receive, on account of

25 such claim or interest, property with at least as much value as

**EAST BROADWAY MALL, INC.**

33

1   such holder would be entitled to receive in a hypothetical

2   Chapter 7 liquidation.  Therefore, such testimony would

3   establish that the plan satisfies the best interest test set

4   forth in Section 1129(a)(7) of the Bankruptcy Code.

5           With respect to Section 1129(a)(8), as described a

6   short while ago, as set forth in the certification of ballots,

7   Classes 1, 2, 3(a), 3(b), 4(a), and 4(b) have accepted the plan

8   or unimpaired by the plan and deemed to have accepted the plan.

9   In addition, there are no members of Class 4(c) because no one

10  elected to receive Class 4(c) treatment.

11          Class 5 interest is deemed to have rejected the plan,

12  as such class is not receiving or retaining any property under

13  the plan.  The plan does not discriminate unfairly and that

14  interests in Class 5 or dissimilar to other classes, and the

15  plan segregation of Class 5 has a rational basis.  Moreover,

16  because senior classes are not receiving more than the full

17  value of their claims and no interest that is junior to Class 5

18  will receive or retain any property under the plan, the fair

19  and equitable standard has been satisfied.

20          Accordingly, notwithstanding the deemed rejection by

21  Class 5, the plan can still be confirmed.  Therefore, such

22  testimony would establish that the plan does not discriminate

23  fairly against Class 5 and is fair and equitable, and therefore

24  Bankruptcy Code Section 1129(b) is satisfied.

25          With respect to Section 1129(a)(9), the plan provides

1    that all holders of allowed priority claims, including priority

2    state tax claims, party nontax claims, and administrative

3    claims will be paid in accordance with Section 1129(a)(9),

4    except to the extent that the holder of such claims has agreed

5    to different treatment.   Therefore, the plan satisfies Section

6    1129(a)(9) of the Bankruptcy Code.

7            With respect to Section 1129(a)(10), at least one

8    impaired class of claims entitled to vote in the plan has

9    accepted the plan.   As set forth above, impaired Classes 1,

10   4(a), and 4(b) have accepted the plan.   Therefore, the plan

11   complies with Section 1129(a)(10) of the Bankruptcy Code.

12           With respect to Section 1129(a)(11), the plan is a

13   liquidating plan.   Mr. Park would testify that he believes

14   there are sufficient means to implement the plan as set forth

15   therein, specifically including the funding by the approved new

16   tenant Broadway East Group as set forth in the plan, the plan

17   supplement, and the terms of the new lease to make the

18   distributions to the classes as set forth in the plan and the

19   allowed claims in accordance with the priorities under the

20   Bankruptcy Code.   The plan for liquidation is sustainable,

21   provides adequate means for implementation, and is feasible.

22   Thus, no other liquidation of the debtor is anticipated or

23   likely.

24           Further, the plan was extensively negotiated and

25   discussed with various parties and interests.   Moreover,

**EAST BROADWAY MALL, INC.**

35

1    because the plan is a liquidating plan, such plan provides for

2    payment of allowed claims in the order of -- in order of

3    priority under the Bankruptcy Code.  In addition, Bank of Hope,

4    the City, and approved new the tenant have agreed to equally

5    share in the payment of a lot of administrative expenses and

6    priority claims and such allowed expenses and priority claims

7    will be paid in full.

8            The evidence establishes that there is more than

9    reasonable probability that the provisions of the plan can be

10   performed, and so the plan satisfies the Bankruptcy Code

11   Section 1129(a)(11).

12           With respect to Section 1129(a)(12), the plan provides

13   for the payment of all fees payable to the U.S. Trustee

14   pursuant to 28 U.S.C. 1930, and the plan therefore complies

15   with Section 1129(a)(12) of the Bankruptcy Code.

16           Sections 1129(a)(13), (14), and (15), Your Honor, we

17   don't believe those provisions are applicable and so are deemed

18   satisfied.

19           With respect to Section 1129(a)(16), Mr. Park would

20   testify based on his knowledge, information, and belief, and

21   conversations with outside professionals and representatives of

22   the City and Broadway East Group, to the extent that this

23   provision is applicable to the transfer of the estate's

24   interest in the lease, which we don't actually believe it does,

25   but to the extent that it is, as set forth above, the City is

**EAST BROADWAY MALL, INC.**

36

1   attaining all required approvals under applicable nonbankruptcy

2   law to the fact the terms of the new lease.

3       With respect to Section 1129(b), Your Honor, Mr. Park

4   would testify that under the plan, Class 5 interest is

5   dissimilar to the other classes, which are all claims, and the

6   plan segregation of those claims is the rational basis.  Class

7   5 consists solely of interests.  Accordingly, the plan does not

8   discriminate unfairly against the rejecting class, thereby

9   satisfying this requirement of Section 1129(b) of the

10  Bankruptcy Code.

11      Moreover, the plan satisfies the additional

12  requirement of Section 1129(b), insofar as there is no class

13  junior to Class 5 that would receive or retain any property

14  under the plan.  And again, no party has claimed that there is

15  unfair discrimination in the plan or that the plan is not fair

16  and equitable.  Such evidence would establish that the plan is

17  therefore confirmable under Section 11920(b) (sic) as the sole

18  rejecting class.

19      With respect to Section 1129(c), Mr. Park would

20  testify that the plan is the sole currently -- is the sole plan

21  currently pending before the Court, and the plan is the only

22  confirmable plan that has been presented to the Court in this

23  case, with debtor's plan already having been rejected.

24      With respect to Section 1129(d), Mr. Park would

25  testify that the plan does not have, as one of its principal

37

1  purposes, the avoidance of taxes or avoidance of requirements

2  of Section 5 of the Securities Act of 1933, nor is Bank of Hope

3  aware of any filing by any governmental agency or any other

4  party in interest asserting such avoidance.

5         And then, Your Honor, we would testify that with

6  respect to the exculpate --

7         THE COURT:  You said "we would testify".

8         MR. SULLIVAN:  I'm sorry, Your Honor.  Mr. Park would

9  testify that the release and exculpation clauses in the plan

10 are essential to the plan, appropriate under applicable law,

11 and constitute a proper exercise of the Bank of Hope's business

12 judgment.  The release and exculpation provisions were proposed

13 in good faith, were formulated following arm's-length

14 negotiations with key constituents, and are appropriately

15 limited in scope to achieve the overall purpose of the plan.

16        Each released and exculpated party made significant

17 contributions to the Chapter 11 case, including with respect to

18 the negotiation and implementation of the new lease and other

19 elements of the plan.  Each released and exculpate party

20 participated in good faith and in compliance with applicable

21 law with regard to the solicitation of and distribution of

22 consideration pursuant to the plan and therefore is not -- on

23 account of such distribution shall not be liable at any time

24 for the violation of any applicable law, Rule, or regulation

25 governing the solicitation of acceptances or rejections of plan

1   or such distributions made pursuant to the plan.

2        Director in the Chapter 11 case fully supports the

3   exculpation provisions, which are appropriately tailored to

4   protect the released and exculpated parties from inappropriate

5   litigation arising from their participation in the Chapter 11

6   case and are consistent with the Bankruptcy Code and applicable

7   law.

8        For the Bank of Hope and the United States Trustee,

9   they agreed to the following language to replace the existing

10   exculpation clause in the plan.  The new language would state,

11        "To the fullest extent permitted under Sections 1123

12        and 1125 of the Bankruptcy Code and as provided

13        herein, neither the City, Bank of Hope, nor any of

14        their respective officers, directors, employees and

15        other agents, financial advisors, attorneys and

16        accountants, or the respective successors-in-interest,

17        who have been actively involved in the bankruptcy

18        case, shall have any liability to any holder of any

19        claim or interest for any act or omission between the

20        petition date and the effective date in connection

21        with or arising out of the negotiation, preparation,

22        and pursuit of confirmation of the plan, the

23        consummation of the plan, the administration of the

24        plan, plan solicitation for the property to be

25        distributed under the plan, except for liability based

1          upon actual fraud, willful misconduct, or gross

2          negligence, as determined in a final order by a court

3          of competent jurisdiction.  For the avoidance of

4          doubt, nothing in the plan shall limit the liability

5          of attorneys to their respective clients pursuant to

6          Rule 1.8(h) of the New York Rules of Professional

7          Conduct, 22 N.Y.C.R.R. Section 1200, or effect any

8          criminal enforcement action."

9          The lone remaining -- Mr. Park would testify that the

10    lone remaining issue with respect to the United States

11    Trustee's objection is as to whether the Bankruptcy Code

12    Section 503(b) is applicable to payment of Bank of Hope's

13    professionals.  As set forth in Bank of Hope's reply to the

14    objection, ECF docket number 173, Bank of Hope believes that

15    such payments would not be subject to Section 503(b), as the

16    agreement between Bank of Hope, the City, and the approved new

17    tenant to share responsibilities for such fees and expenses

18    means they will have no impact upon the debtor or its state,

19    given that the amount of fees paid will have no impact upon the

20    recovery to any creditor, other than Bank of Hope and the City.

21    Moreover, any recovery available to other creditors would be

22    carved out of the recovery that would otherwise have been made

23    payable to Bank of Hope and the City.

24          For these reasons, Bank of Hope believes this last

25    remnant of the United States Trustee's objections should be

**EAST BROADWAY MALL, INC.**

40

1   overruled.  Nevertheless, Bank of Hope has filed an

2   administrative expense claim with respect to the fees and

3   expenses of its legal professionals related to the plan through

4   the second administrative expense bar date, and it will file

5   another administrative expense claim by the third

6   administrative expense bar date and additionally can provide

7   updates as necessary to the Court and the United States Trustee

8   on professional fees and expenses related to towards

9   confirmation and execution of the plan.

10          And that is the conclusion of the proffer, Your Honor.

11          THE COURT:  Okay.  So I think I guess what you'd like

12   me to do is accept that as a proffer of testimony that would be

13   given by Mr. Park if he were called, right?  And just and --

14          MR. SULLIVAN:  Correct, Your Honor.

15          THE COURT:  Okay.  Does any party object to my

16   accepting the proffer as a summary of testimony that would be

17   offered by Mr. Park, were he called today?

18          And let me just note that as I foreshadowed at the one

19   point where I interrupted Mr. Sullivan's presentation on the

20   proffer that contained both factual information and then a lot

21   of legal argumentation or characterization, I would not accept

22   as factual evidence the legal conclusions embedded in that

23   discussion.  I think that what -- but it's helpful as a framing

24   mechanism, and what I would contemplate doing is accepting the

25   factual content of the proffer, with that explicit proviso.

**EAST BROADWAY MALL, INC.**

41

1          So with that observation, does anyone have any

2    objection to reliance on the proffer that's just been delivered

3    as the factual predicate for the confirmation hearing today?

4          MR. BRUH:  Your Honor, Mark Bruh for the United Staes

5    Trustee.  We appreciate the Court's proviso regarding the

6    proffer offered by Mr. Park in connection with confirmation

7    because we do have concerns in connection with 1129(a)(4) as

8    well as 1129(a)(5) because we just got the plan administrator

9    agreement this morning, and we're going through it.  And we

10   just, we believe we will reserve our rights for argument on

11   those issues.  As Your Honor said, that seemed --

12         THE COURT:  Got it.  Yeah.  Let me make clear, I'm

13   really just trying to establish the evidentiary basis for the

14   hearing, and then this is without prejudice to any parties'

15   ability to make whatever argument they want on the legal issues

16   raised.

17         So I'm hearing you say that on that understanding

18   you're okay.  Yeah.  Is that right, Mr. Bruh?

19         MR. BRUH:  Yeah.  We don't intend to cross Mr. Park.

20         THE COURT:  Okay.  That was going to -- you're

21   anticipating my next question.

22         Nobody has said they object to reliance on the proffer

23   as stated.  So let me ask now, does anyone wish to cross-

24   examine Mr. Park?

25         Okay.  I paused, and no one said yes.  So I will,

**EAST BROADWAY MALL, INC.**

42

1   again, accept the proffer as delivered as the evidentiary basis

2   for the confirmation hearing today, subject to my comment just

3   made that I don't -- that the proffer included matters, the

4   content that is more in the nature of legal argumentation.

5          And so I will accept the proffer as factual to the

6   extent that it is an evidentiarily -- relevant to the extent

7   it's not pure legal conclusion or legal argumentation.  To the

8   extent it's argumentation, I just understand it to be a

9   statement of the Bank of Hope's position and support of

10  confirmation.  But with that, the proffer is received or

11  incorporated into the record as the factual underpinnings of

12  the confirmation proceeding today.

13         And I'll turn it back to Mr. Sullivan.

14         MR. SULLIVAN:  Thank you, Your Honor.  So if Your

15  Honor had any questions on any of the legal aspects, I'd be

16  happy to address them.

17         But I guess I would just point out that I believe the

18  objections that were raised, one, by the U.S. Trustee's office,

19  which as I had mentioned earlier, we've resolved almost all of

20  it.  It's just, I believe, is the 503(b) issue with respect to

21  my firm's professional fees is the lone remaining issue.

22         And as, I guess, Mr. Bruh also kind of mentioned, we

23  are still addressing the agreement.  I think we're very close

24  to actually -- there was some back and forth earlier this

25  morning, but we're pretty close.

**EAST BROADWAY MALL, INC.**

43

1          THE COURT:  All right.

2          MR. SULLIVAN:  We should have some time --

3          THE COURT:  Restate what's the agreement, what

4   agreement you're referring to?  I just want to make sure we

5   have clarity in that.

6          MR. SULLIVAN:  Yeah, we haven't filed it on the

7   record, but as Your Honor may recall, one of the exhibits in

8   the plan supplement -- and the plan supplement, for the record,

9   is docket number 195.  So Exhibit 3 to the plan supplement

10  referenced key terms that would be included within the plan

11  administrator agreement, including the identity of the plan

12  administrator as GlassRatner Advisory & Capital Group LLC doing

13  business as B. Riley Advisory Services.  It also described what

14  they would be doing and described what their compensation would

15  be and things of that nature.

16         So what the agreement purported to do would be to just

17  kind of crystallize in a little bit more clear form exactly the

18  duties of the plan administrator and a little bit more detail

19  in terms of some of the other items, Your Honor.  So that

20  agreement was circulated to the U.S. Trustee's office, and the

21  U.S. Trustee's office had a couple of questions.

22         So my guess is we're not going to be able to resolve

23  that issue today, but certainly, prior to the effective date, I

24  believe that we'll be able to get through it.  I fair amount of

25  confidence that the plan and -- the proposed plan administrator

 1  will work with the U.S. Trustee's office and my office to

 2  resolve any concerns that the U.S. Trustee's office has with

 3  respect to the language of that agreement.

 4          THE COURT:  Is that an impediment to confirmation

 5  today?  Do I have to wait for that to be resolved?

 6          MR. SULLIVAN:  I don't think so, Your Honor.

 7  Certainly, if we have any issues, we can come back to Your

 8  Honor.  We do have -- I don't believe that the plan will go

 9  effective for a few weeks.  So we do have time to try to work

10  through those types of issues.

11          In any case, the plan supplement did identify the key

12  terms of the plan administrator -- of the plan administrator's

13  retention.  And one of the provisions of the proposed form of

14  order that we submitted to Your Honor would authorize us to

15  enter into that agreement, so long as it's consistent with

16  what's been represented to be the key terms.  And we certainly

17  wouldn't sign anything without having the U.S. Trustee's sign-

18  off on it.  And to the extent that we were not able to reach

19  some consensual agreement with the U.S. Trustee' office, then

20  we could always tee it up with Your Honor to resolve any

21  disputes.  But I'm not expecting any at this point in time,

22  Your Honor.

23          THE COURT:  I mean, I think I am not -- well, let me

24  say something specific to that, and then I'll have some other

25  questions or things I want to focus on.

**EAST BROADWAY MALL, INC.**

45

1    On that, are you envisioning sort of a further

2  condition to effectiveness of the plan is arriving at an

3  acceptable form of agreement?

4    MR. SULLIVAN:  I guess that -- I guess we could word

5  it that way, Your Honor.

6    THE COURT:  Or it could be that submission of the

7  confirmation order or potential approval of a confirmation

8  order would be deferred until that's nailed down.  I don't know

9  how long you're talking about taking on that process.  I mean,

10 that's more comfortable to me, and that also lets --

11    MR. SULLIVAN:  Okay.

12    THE COURT:  -- other parties-in-interest have a crack

13 at seeing it.  And if there's a problem with it, they can

14 comment.

15    I thank the world of the U.S. Trustee's office, but I

16 don't want to offload my judicial responsibility to decide

17 whether or not something's okay on them.  I think that would be

18 wrong.  And plus, I'm not comfortable with that.  And I think

19 it is consistent with due process to let other parties-in-

20 interest know what a constituent element of the plan is going

21 to be before they're stuck with it, as opposed to just having

22 it a blank check, I think.

23    I guess you would tell me, don't worry, Judge, because

24 it'll be consistent with the key terms here.  But if they're

25 material enough that you're arguing about it, that sort of

**EAST BROADWAY MALL, INC.**

46

1 | suggests it's material.

2 |      MR. SULLIVAN: I wouldn't say we're arguing about

3 | anything, Your Honor. We only just serve the U.S. Trustee's

4 | office with it very early this morning. So I don't necessarily

5 | think that there's going to be any issue to fight over, but I

6 | can't tell you definitively that there won't be

7 | (indiscernible) --

8 |      THE COURT: All right. Yeah. So I have a couple of

9 | other issues I'll want to get to. Here's what I suggest on

10 | this issue, and I want to hear from Mr. Bruh.

11 |      But my thought is I will let you keep working the

12 | issue. Try to arrive at a consensual resolution of that. Give

13 | notice to certainly all counsel or parties-in-interest who are

14 | attending the hearing today of where you land. And then if

15 | nobody objects, I'll consider that issue resolved for purposes

16 | of confirmation, and then we can go forward.

17 |      I think that is consistent with due process and really

18 | a properly functioning adversary process that lets parties-in-

19 | interest identify problems, if they exist, and on an outcome

20 | that as of right now doesn't exist. And then I expect there's

21 | a good shot you'll resolve your issues. And if you do, I'll

22 | probably be ready to approve a suitable plan, including that

23 | fix when it's ready.

24 |      Okay. Is that something you can live with, Mr.

25 | Sullivan?

**EAST BROADWAY MALL, INC.**

47

1          MR. SULLIVAN:  Yeah, that's fine, Your Honor.

2          THE COURT:  Okay.  So let me raise --

3          Mr. Bruh, does that work for you?

4          MR. BRUH:  Your Honor, I did look at the plan

5    administrator agreement this morning.  I haven't had a thorough

6    read of it, and I appreciate the Court's comments today.  There

7    are a couple of technical issues which I think we can get over.

8          But there is an exculpation provision that is

9    programmatic to our office, and that's the elephant in the room

10   with the agreement.  And I don't know if that's something

11   that's going to be resolved as easily as the (indiscernible).

12         THE COURT:  Okay.  So exculpation of whom?

13         MR. BRUH:  The plan administrator, and Mr. Sullivan

14   and I were pretty intently and extensively yesterday to come to

15   a consensual provision, which he read into the record today,

16   which was agreed upon between and among the parties.  And this

17   seems to expand upon it, and --

18         THE COURT:  Okay.

19         MR. BRUH:  -- we feel (indiscernible) programmatic.

20         MR. SULLIVAN:  Well, I would view that as a separate

21   issue because the exculpation provision that Mr. Bruh and I

22   were sort of negotiating dealt with the parties in connection

23   with the implementation of the plan, primarily, right, between

24   the --

25         THE COURT:  Right.

1        MR. SULLIVAN:  -- petition date and the effective date

2   of the plan.  So the plan administration agreement doesn't go

3   in effect until the effective date of the plan.  So I don't

4   think the exculpation they're looking for really fits within

5   what we've been discussing in the context of the plan.  So

6   they're just --

7        THE COURT:  Right.

8        MR. SULLIVAN:  -- looking for some other kind of -- I

9   guess it's really more akin to some type of indemnity or some

10  other kind of -- and I do think that they'd be willing to kind

11  of negotiate with the U.S. Trustee's office to try to come to a

12  mutual agreement on that.  So again, I can't predict with one

13  hundred percent certainty that it will get resolved, but I do

14  think that there seems to be an openness to discuss that and

15  try to work through those issues.

16        THE COURT:  Okay.  Look, if there's going to be a

17  principled scope of exculpation issue as to an agreement with

18  the plan administrator -- proposed agreement with the plan

19  administrator that isn't even yet a nonmoving target, I think I

20  need to probably reserve the possibility of ruling with respect

21  to that issue.

22        I know exculpation issues are a big programmatic issue

23  for the U.S. Trustee's office, which I often deal with.  I'm

24  ready to -- I was all ready to rule with respect to the

25  exculpation issues that were made known to me before this

1   moment.  And I think we can -- so I think we can get through

2   other aspects of the plan and confirmation but reserve for

3   future discussion or ruling if necessary, really, anything

4   involving that's currently unresolved regarding the plan

5   administrator agreement and retention.  Okay.

6          So that could be either the 503(b) issue you flagged

7   or the scope of exculpation or whatever or equivalent

8   protections that you're trying to get afforded to the plan

9   administrator.  I think I just need to reserve on that until

10  you've had a chance to develop the issues further, reach

11  agreement, which then I will have to substantively satisfy

12  myself with anyway.  Or if you don't have agreement, I'll have

13  to adjudicate your dispute.  Right.  That sound right?

14         I'll ask Mr. Bruh first for a change.  Mr. Bruh, does

15  that sound right to you?

16         MR. BRUH:  That's fine, Your Honor.

17         THE COURT:  And Mr. Sullivan, I don't see how I can do

18  anything more than that, but do you want to push back on that

19  (indiscernible)?

20         MR. SULLIVAN:  Understood, Your Honor.

21         THE COURT:  Okay.

22         MR. SULLIVAN:  Understood.

23         THE COURT:  So let me ask -- I will say, let me

24  memorialize that I know from the disclosure statement hearing

25  and papers filed in connection with it that the U.S. Trustee's

1   office had an objection to the plan's exculpation provision.

2          Am I right?  Has that been resolved other than with

3   respect to the plan administrator now, Mr. Bruh?  Is that U.S.

4   Trustee's office's view?

5          MR. BRUH:  Your Honor, yes.  I mean, I believed that

6   it was a hundred percent resolved, as, like, we negotiated

7   yesterday, and then I saw this agreement today, as the

8   exculpation provision Mr. Sullivan read into the record was

9   what we agreed to yesterday after a series of back and

10  forths so --

11         THE COURT:  Okay.  So let me say, this is going to be

12  a bite-sized mini -- a ruling, bite-sized mini ruling by me.

13         I reviewed the exculpation provision as it was

14  included in the plan and then in turn subject as further

15  modified as read into the record today, and I'm satisfied that

16  they're appropriate and permissible, and so I'll approve that.

17  Specifically, I have taken a broader view of what's permitted,

18  and that exculpation needn't be limited solely to estate

19  fiduciaries, citing, among other things, the Aegean Marine and

20  Latam decisions, which I believe are correctly decided.  So I'm

21  glad to see that you worked together and reached agreement, and

22  I will be comfortable with the outcome as described on the

23  record today on exculpation.

24         So let me ask, if I can, Mr. Sullivan, really, the two

25  main questions I had coming into this.  One is can you give me

**EAST BROADWAY MALL, INC.**

51

1    clarity on what is the status of debtor's lease of the premises

2    from the City now and what exactly is happening with respect to

3    that lease with the -- whatever it's called.  You're calling it

4    approved new tenant or the East Broadway Group.

5            MR. SULLIVAN:  Correct, Your Honor.  So and I'll ask

6    Mr. Kass from the City, counsel for the City, to chime in

7    afterwards if I may misstate anything because some of the

8    information I'm about to tell you I learned or received from

9    him.

10           So my understanding is that the lease has not been

11   signed yet.  The City is waiting until after these two

12   additional community board types of meetings before signing the

13   lease with the approved new tenant, the --

14           THE COURT:  Hang on.  Let me --

15           MR. SULLIVAN:  -- Broadway East Group.

16           THE COURT:  Okay.  Let me ask -- let me clarify my

17   question.  What I wanted to know is the status of debtor's

18   lease, originally signed in -- I guess it was '85 or so and

19   then revised in '95 and which was a leasehold interest that was

20   held by the debtor, certainly as of the petition date and the

21   commencement of the case.  And then there's been a long

22   history.  There was one order saying it was going to be deemed

23   rejected if the debtor didn't accomplish certain things by a

24   date certain.  Then there was a period of further extensions of

25   that deadline.  Then, from my review of the record, the status

**EAST BROADWAY MALL, INC.**

52

1  of the lease seemed to slide into a kind of a nebulous status.

2       So it's unclear to me if that earlier order saying it

3  was to be deemed rejected took effect or did not.  And so I'm

4  trying to understand the status of the lease vis-a-vis the

5  debtor.

6       MR. SULLIVAN:  Okay.  So yeah, my understanding, Your

7  Honor, is that the lease is going to be assumed and assigned to

8  the approved new tenant Broadway East Group, as modified by the

9  terms of the new lease that was attached to the plan supplement

10  so --

11       THE COURT:  Okay.  Thank you.  Yeah, I've reviewed

12  that.  I've reviewed the proposed lease document attached to

13  the plan supplement, and which is at least generally consistent

14  with the term sheet that was previously submitted in connection

15  at the time of the disclosure statement, I think.  Right.  So

16  okay.

17       So but what I really wanted to understand is so

18  mechanically, or as a matter of bankruptcy law, we have a lease

19  that, in your view, the parties' view is continues and in force

20  as between the City and the debtor and that the plan is going

21  to cause the assumption and assignment of that lease, whereupon

22  it will be modified by agreement between the City and East

23  Broadway Group?

24       MR. SULLIVAN:  Right.  I think it's -- I think it's

25  actually Broadway East Group --

**EAST BROADWAY MALL, INC.**

1          THE COURT:  Oh, sorry.

2          MR. SULLIVAN:  -- LLC.

3          THE COURT:  Yeah, the new tenant.  I'll just say the

4     new tenant.

5          MR. SULLIVAN:  Okay.

6          MR. KASS:  Yeah.   Your Honor, I don't mean to step on

7     anybody's lines, but this is Zachary Kass from the New York

8     City Law Department on behalf of the City of New York, if I may

9     be heard on this issue.

10         THE COURT:  Yes, please.  Yes.  Thanks, Mr. Kass.

11    Nice to see you.  Go ahead.

12         MR. KASS:  Thank you.  Nice to see Your Honor, as

13    well.

14         Not to split hairs on it, but I believe it's

15    appropriate to say that the Court's -- well, the stipulation

16    and the Court's prior order that said the lease would be deemed

17    rejected did go into effect.  However, I think, at least in the

18    City's view, and I believe in the other parties' view as well,

19    we were relying on those bankruptcy cases in this district and

20    elsewhere that say that the rejection of a lease or a executory

21    contract, pursuant to the Bankruptcy Code, does not

22    automatically terminate all the interests of the debtor in the

23    leased property until and unless the Court so holds.

24         And again, I think what we've been trying to do is

25    walk that tightrope and say that whatever interest of the

**EAST BROADWAY MALL, INC.**

54

1   debtor remained after the rejection of the lease, by virtue of

2   the plan provisions, will be assigned eventually to the new

3   tenant.  And there are a couple of mechanical steps which will

4   take place in order to get the new lease in place with the new

5   tenant.

6          But I think, from a bankruptcy perspective, what the

7   Court is being asked to do at this point is approve of the

8   assignment of whatever's left of the debtor's interest in the

9   leasehold, given that there has been a -- I'm sorry, given that

10  there has been a rejection of the lease to the new tenant.

11          THE COURT:  The (indiscernible) order calls it a

12  deemed rejection, right, or is it shall be deemed rejected?

13          MR. KASS:  Correct, Your Honor.

14          THE COURT:  Yeah.

15          MR. KASS:  Correct.  That's correct.

16          THE COURT:  Okay.  And so does the City view the lease

17  with Broadway East Group, LLC as a new lease or as a

18  modification of an existing lease?

19          MR. KASS:  It's a modification -- well, it's a

20  modification and restatement of the lease.

21          THE COURT:  Okay.  Okay.  So I think -- well, that's

22  helpful.  I just wanted clarity on that.

23          I will say, I gave some thought to whether a nondebtor

24  plan proponent has authority to assume an existing executory

25  contract, and I think the answer to that is yes.  I did some

1    independent research.  Actually, there are some visiting judges

2    in town, and one alerted me to a helpful case.  So I'm going to

3    cite it, okay, which is not exactly identical, but as support

4    for the proposition that a nondebtor plan proponent is

5    authorized to assume an executory contract held by the debtor

6    under the Bankruptcy Code.

7          And that case is In re: Nickels Midway Pier LLC,

8    that's N-I-C-K-E-L-S, Midway, Pier, P-I-E-R, LLC.  The citation

9    is at 452 B.R. 156, U.S. District Court of the District of New

10   Jersey 2011.  And the specific holding was that the Bankruptcy

11   Code did not limit power to assume executory contracts solely

12   to the trustee or debtor-in-possession, and therefore a Chapter

13   11 plan proposed by, in that case, a creditor would require

14   debtor to assume an executory contract.

15         And so I think that's the implicit -- I agree with the

16   analysis of that case, and I think that appears to me to be

17   analytically what's happening here.

18         Mr. Kass' helpful explanation was that whatever it is

19   that the debtor can -- whatever interest the debtor continues

20   to have in the leasehold interest or the possessory interest in

21   the premises is being assumed and assigned by operation of the

22   plan.  And ultimately, assuming the plan goes effective after

23   confirmations are received, then the lease will be assigned to

24   the new tenant as a matter of bankruptcy law, coupled with

25   whatever contractual arrangements are worked out between the

**EAST BROADWAY MALL, INC.**

56

1   City and the new tenant.

2          Let me ask if anybody thinks that is a mistaken legal

3   assessment of how this works and what's happening here.  I'll

4   invite -- does the new tenant want to be heard on that?

5          MR. SOONG:  Thank you, Judge.  This is Arthur Soong

6   for the new tenant Broadway East Group.

7          I do understand the issues that are being raised.  I

8   did want to confirm -- and I do have one of my members here.  I

9   do want to confirm that Broadway East Group remains committed

10  and fully prepared to fulfill all the financial and other

11  obligations of the term sheet, of our final -- of our best

12  final bid of April 11th, 2023, our term sheet, which has been

13  filed with the Court on May 18th, 2023, as well as the revised

14  lease, which admittedly is not yet signed but has been

15  negotiated between us and the City and also filed with the

16  court.

17         We remain fully prepared and fully able to comply with

18  all of the terms.  I do understand the issues that are -- the

19  issue being discussed as far as either rejection of the

20  existing lease or an assumption and assignment of the existing

21  lease.  And we are fine with the presentation, both of Bank of

22  Hope and by the City.  I do also have one of my clients with me

23  in the shadows here.

24         THE COURT:  Okay.  Yeah, that's fine.  I can see a

25  blurry figure over your shoulder on the Zoom screen.  That's

1   fine.  Nice to see you there.

2            MR. SOONG:  (Indiscernible).

3            THE COURT:  And so let's just -- yeah, I don't think I

4   need to hear -- I just wanted to make sure as a legal matter

5   that Broadway East Group understood and did not see a problem

6   with the legal analysis I just articulated.  That part was --

7   you may be neutral, but if you have a problem, please identify

8   it.

9            MR. SOONG:  Thank you, Judge.  We do understand, and

10  we have no problem.

11           THE COURT:  Okay.  Does anybody else want to raise any

12  concern with the analysis I just described?

13           All right.  I paused, and no one said yes.  So that's

14  fine.  So I am going to -- this may be a bit of a messy

15  transcript because that articulates my analysis of that issue,

16  and that will be a component of my ruling, ultimately, on

17  confirmation.

18           So let me ask my other question, Mr. Sullivan, which

19  really is feasibility under 1129(a)(11).  And I'm not sure that

20  this is a thing that should give me pause, but I know the

21  effectiveness of the plan is conditioned on ultimately

22  successfully navigating this various City approval

23  requirements.  And the proffer tells me those are expected to

24  occur in September, or at least the two hearings are expected

25  to occur in September, which is the current month.  So within

1  fifteen days, I think, is the second one.

2       And I know it looks like the plan is -- there's a

3  provision that the plan will become null and void in the event

4  required approvals are not achieved unless the parties agree

5  otherwise.  So my question is, is that consistent with

6  1129(a)(11) and the essentially feasibility requirements?  And

7  you might tell me not applicable.  You might tell me, yes, it's

8  perfectly consistent and here's why.  I'm just looking for

9  comfort as to why 1129(a)(11) isn't an impediment.

10       MR. SULLIVAN:  I don't believe it's an impediment,

11  Your Honor.  I mean, based on my -- based upon my understanding

12  as to how these hearings go and my understanding of how the

13  City approaches it, I've been told that these hearings are not

14  an impediment, that they hear the concerns of these parties,

15  but they don't necessarily have the ability to veto the

16  transaction.

17       It may be best if Mr. Kass sort of describes it from

18  his perspective because I think he's a little bit more familiar

19  with exactly how these matters go.  But so maybe it would be

20  advisable to let him discuss it.

21       But my general understanding, Your Honor, is that

22  everyone involved in the transaction fully expects that the

23  lease will be signed shortly after those hearings and that

24  nothing that takes place at those hearings should pose any type

25  of impediment.

1       THE COURT:  Okay.  So I'm happy to hear from Mr. Kass.

2  But first, so I'm hearing what you're saying is that I should

3  conclude that it's at least sufficiently probable that the

4  required approvals will be achieved.  You're just in the course

5  of a governmental review process, and that given that, there's

6  a sufficient likelihood that I can conclude that the plan will

7  succeed, will be successfully effectuated as designed.  Right.

8  That's basically the --

9       MR. SULLIVAN:  Correct, Your Honor.

10       THE COURT:  -- conclusion you want me to make?  Okay.

11       Mr. Kass, you here?  You're not visible to me on my

12  screen.

13       MR. KASS:  Yes.  Again, Zachary Kass, on behalf of the

14  City.  I apologize, Your Honor, again for my computer problem.

15  So in order to retain the voice portion, I did have to turn off

16  my camera.

17       THE COURT:  Okay.  That's fine.

18       MR. KASS:  So I apologize.  However, I agree with Mr.

19  Sullivan that the current approval process that the City is

20  engaged in should not be considered a process that will make

21  the plan not feasible at this point.

22       I know that -- what has happened in prior cases, as

23  they say on late-night television, doesn't necessarily ensure

24  the same results in these cases.  But there have been several

25  cases in which bankruptcy courts have allowed the parties to

60

1  confirm a plan which envisioned this dual track, in other

2  words, that bankruptcy court approval was necessary as well as

3  certain governmental approvals were necessary.

4          And the fact that the governmental approval process

5  would take somewhat longer than the bankruptcy process didn't

6  affect the feasibility of the plan, per se.  The bankruptcy

7  courts, again, at least in those cases, were able to say that

8  the provisions of the plan, the transactions envisioned by the

9  plan, were appropriate and rational and capable of fruition.

10  And so that, having an approval process that would take -- that

11  was on a longer runway was not a feasibility issue.

12          THE COURT:  Okay.  Thanks.  I'm going to ask you an

13  unfair question.  (Indiscernible) it's not unfair.  You may not

14  be -- I'm going to ask you a question you may not be able to

15  answer.  How quickly are the remaining reviewing governmental

16  entities, I think it's two stages, likely to decide?

17          MR. KASS:  Well, we are hopeful that -- the borough

18  board is scheduled for September 21st.  We're hopeful that the

19  borough board will act, either at that meeting or shortly

20  thereafter.

21          The mayoral hearing is then scheduled for -- the

22  mayoral approval hearing is then scheduled for September 27th.

23  Again, we're hopeful that the approval will be obtained, either

24  at that hearing or very shortly thereafter.  Once that approval

25  is -- the mayoral hearing approval, once that is in place, then

1  it goes to the mayor's office of contract services for the

2  mayor to sign off on, and that process can be done fairly

3  quickly.  I was told yesterday afternoon that it can be done in

4  a day or two.  But it seems to me that a time frame of another

5  week after the mayoral hearing approval -- of a week would be

6  realistic time frame.

7         So again, Your Honor pointed out that with the current

8  schedule, it's about fifteen days.  And then the mayoral

9  approval within the next -- give it a week should be

10 obtainable.  And at that point, it should be possible to have

11 the plan go effective.

12        THE COURT:  Okay.  Got it.  Okay.  I think that covers

13 my question with respect to the effect of the ongoing City

14 review process and its interaction with Section 1129(a)(11).

15        Mr. Sullivan, is there anything else you want to

16 cover, any other argument you want to present, before I open

17 the floor to others?

18        MR. SULLIVAN:  I don't think so, Your Honor.  If

19 anyone has any other concerns, I'm happy to address them at

20 that time.

21        THE COURT:  Okay.  Let me just go -- I'm going to save

22 debtor for last, because debtor is the only party who objected,

23 and so I'll give Ms. Keenan an opportunity to speak.

24        We've already heard from Broadway East Group and who

25 used the opportunity to state support for the plan and

1  continuing to stand by the transaction as negotiated some

2  months ago.  So Mr. Soong, anything else you want to add?

3          MR. SOONG:  No, Judge.  I'm good.

4          THE COURT:  Okay.  Thanks.  And let's see.

5          Mr. Bruh, anything you want to be heard on at this

6  point, with the understanding we're reserving with respect to

7  issues regarding the retention of the plan administrator,

8  which, I have on my punch list, constitutes exculpation or

9  equivalent provisions pertaining to that person, plus the

10  503(b) issues that were discussed.

11          MR. BRUH:  Right.  Okay.  So Your Honor, Mark Bruh for

12  the United States Trustee.  It's the 503(b) issue.  We have the

13  plan administrator you just mentioned.  There's some minor

14  things I'm sure I could work out with Mr. Sullivan and the plan

15  administrator.

16          I haven't thoroughly read the confirmation order, but

17  I did notice that there was -- and I thought it was resolved

18  about the treatment of late-filed claims, and I'll go over that

19  with Mr. Sullivan.  But I think there's something where they

20  would be deemed late, not disallowed, but late.  And if they

21  wanted to be timely --

22          THE COURT:  Right.

23          MR. BRUH:  -- the motion would be made.  And I just

24  want to make sure that that issue makes it into the order.

25          THE COURT:  Yeah, I want that to be conformed with the

**EAST BROADWAY MALL, INC.**

63

1    fourth amended plan as revised because that, I think, had

2    appropriate language.  That was an issue I previously ruled on.

3         MR. SULLIVAN:  Yeah, I believe we -- I believe the

4    version we submitted to Your Honor, I believe, addressed Mr.

5    Bruh's concern.  The draft that I had sent him had some unclear

6    language in it, which hopefully we've resolved.

7         MR. BRUH:  And at this time, Your Honor, that is it.

8    I'm sure if there's anything else, I have been talking to Mr.

9    Sullivan, and we could resolve anything in connection with the

10   confirmation order.  But thank you.

11        THE COURT:  Okay.  Thank you.  So does that mean -- I

12   want to just translate that to procedurally.  So it sounds like

13   the Office of the U.S. Trustee considers its prior objections

14   to the plan as voiced at the time of the disclosure statement

15   to be resolved.  And we're down to the 503(b) issues and the

16   exculpation-like treatment of the plan administrator and maybe

17   a couple of other things that are small issues that you think

18   you're going to resolve offline; is that right?

19        MR. BRUH:  That is correct, Your Honor.  Thank you.

20        THE COURT:  Okay.  So I'm hearing no need for argument

21   from you on plan issues at this time.

22        MR. BRUH:  No, Your Honor.

23        THE COURT:  Okay.  Thanks.

24        Okay.  Is there any other party besides the debtor who

25   wants to be heard on confirmation today?

1        Okay.  Let's come around to Ms. Keenan on behalf of

2    the debtor.  Ms. Keenan, I reviewed your objection, and I just

3    want to give you an opportunity to be heard however you wish.

4        MS. KEENAN:  I'm on.  Okay.  I just had a limited

5    objection, actually, and they have addressed the approval

6    process.  I had gone on the New York City website and basically

7    took what the process is as disclosed on the website.

8        A mayoral hearing is a term that wasn't used.  I'm

9    presuming it's one of the processes that are mentioned in the

10   uniform land use review procedure.  Because normally, I thought

11   that the mayor would be at the end, but the descriptions were

12   much different than what Mr. Kass has said.

13       And I just want to -- with the understanding that

14   there's going to be no signed contract or lease until this

15   process has been concluded.  I just want to confirm, is the

16   City planning commission review and the City council review is

17   part and parcel with the mayoral hearing?  I don't know the

18   answer because again, mayoral hearing was not in the City's

19   website when I was reviewing it.

20       THE COURT:  Oh, Mr. Kass, maybe you can just come back

21   and clarify, although I think you did.  But let's just make

22   sure we have it right and whether or not what was described

23   exactly aligns with the website, I don't know, is the driver

24   for confirmation.

25       But Mr. Kass, let me just recap.  I have absorbed that

1   both from the papers and your oral comments that there are two

2   remaining things that constitute hearings or that get

3   characterized as hearings.  One is September 21st.  One is

4   September 27th.  And if you secure approvals, as you hope you

5   will do, then there needs to be a final mayoral review and

6   approval, which you are hopeful but can't guarantee will happen

7   pretty soon after the second of those two events.  Do I have

8   all that right, Mr. Kass?

9        MR. KASS:  Zachary Kass on behalf of the City.  Yes,

10  Your Honor, you're exactly right.

11        If I may comment just briefly on Mr. Keenan's --

12        THE COURT:  Sure.

13        MR. KASS:  -- query, I have been in touch with the

14  City's representatives, Matthew Berk, who is be one of the

15  people most fully familiar with both the relationship with East

16  Broadway Mall and the way that property dispositions occur, is

17  on the line.  But it has been explained to me that the

18  procedures under the uniform -- well, what it referred to as

19  ULURP that Mr. Keenan just referred to, those procedures are

20  not necessary to the current transaction.  So we will not be

21  going through the ULURP procedures.  And that may be the source

22  of the confusion that the debtor is expressing.

23        And therefore, the only remaining steps that the City

24  believes are necessary are again, approval by the borough board

25  and then mayoral approval, which does require a public hearing

**EAST BROADWAY MALL, INC.**

66

1   prior to that -- well, to that procedure.

2         THE COURT:  Okay.

3         MS. KEENAN:  Okay.

4         THE COURT:  Got it.  I just want to say for the record

5   that I recall from a prior -- at a prior hearing asking if this

6   required ULURP, that's all-caps U-L-U-R-P, review and approval

7   and Mr. Kass reporting the answer was no.  So the reason I'm

8   making this observation is so that the record is clear that

9   that that information was shared at an earlier date and hasn't

10  just been sprung on anyone at this late phase of the case.

11        MS. KEENAN:  Yeah.

12        THE COURT:  Okay.  So I think that's -- I think that's

13  the procedural information that Ms. Keenan was looking for.

14  And it certainly, I think, is adequate for confirmation

15  purposes.

16        So let me turn back to Ms. Keenan and see if you had

17  any other objection or position you want to express on behalf

18  of debtor with respect to the request for confirmation of the

19  Bank of Hope plan.

20        MS. KEENAN:  No, that was my concern.  And I had

21  raised it.  And I don't recall Mr. Kass saying it wasn't a

22  ULURP program, so I stand corrected.

23        THE COURT:  Okay.  Great.  Anything else you want to

24  add?

25        MS. KEENAN:  No, not at this time.  It's good.

1            THE COURT:  Okay.  Okay.  That's great.

2            Let's see.  I think I'm going to come back to Mr.

3    Sullivan.  I think that we're at a point where it's appropriate

4    for me to rule with respect to confirmation, unless there's

5    anything else that Bank of Hope wants to raise.

6            MR. SULLIVAN:  No, Your Honor.

7            THE COURT:  Okay.  Oh, I'm going to make an oral

8    ruling, but then, I haven't had a chance to carefully review

9    the proposed order that Bank of Hope submitted very shortly

10   before this hearing commenced.

11           Do you want to walk me through it, Mr. Sullivan, in

12   case problems jump out at me?  Or do you want me just to -- it

13   seems like there's some moving parts, you're having some

14   further discussions, maybe with the U.S. Trustee, and the thing

15   to do is just wait and let me conduct my review after

16   everybody's on the same page about it.  But how do you want to

17   handle that?

18           MR. SULLIVAN:  That make senses, Your Honor.  We could

19   submit -- maybe what we could do, make sure that all the

20   comments that we hear today, we'll incorporate them into

21   another form of order.  Hopefully, there won't be too many

22   changes.  And then maybe what we could even do is attach the

23   form of plan administrator agreement that hopefully we are able

24   to come to an agreement on, and then Your Honor can approve

25   that as part of the order.  I don't know if that makes sense or

**EAST BROADWAY MALL, INC.**

68

1    not, but that may be one way to do it.

2              THE COURT:  Okay.  I think that's fine.

3              So let me turn to my oral ruling with respect to your

4    request for confirmation of the plan proposed by secured

5    creditor Bank of Hope in the bankruptcy of East Broadway Mall.

6              I'm going to confirm the plan with a few provisos or

7    things that need to be buttoned down, or maybe I'll call it

8    conditions, as follows.

9              First, as the record makes clear, the plan requires

10   appointment of a plan administrator.  The agreement by which

11   the plan administrator is to be retained has not been

12   finalized, and some concerns have been raised about it in

13   discussions between Bank of Hope and the Office of the U.S.

14   Trustee and possibly with the contemplated plan administrator,

15   him or herself.  I think it's himself.  That process is

16   ongoing, and my approval of the plan is subject to an

17   acceptable resolution of those ongoing discussions with the

18   terms of retention of the plan administrator.

19             What is to happen is the debtor and the plan

20   administrator and the U.S. Trustee's office are to continue

21   discussing the issues that have been raised in an attempt to

22   reach agreement on those.  And then if the timing works out, I

23   would suggest that the debtor do just what Mr. Sullivan said,

24   which was submit the resulting agreement along with a revised

25   version of the proposed order of confirmation.  This definitely

1   should be on notice to all parties and interest, specifically

2   including debtor, and with a redline reflecting changes to the

3   current proposed order.

4          And then I will allow parties, let's say, two business

5   days to either express consent.  I'll appreciate it if you know

6   you consent to come to me sooner, but you'll have at least two

7   business days to raise any objections.  I guess, theoretically

8   a person could ask for more time on top of that within that

9   two-day window, but I'm hopeful that won't occur.  At which

10  point, I will -- and you may as well also send me the proposed

11  revised confirmation order and agreement at that time, assuming

12  you have it, in your view, ready.  That will give me more time

13  to review it to make sure I'm satisfied because I haven't

14  closely scrutinized the actual proposed order yet.  And I will

15  be working at the same time that other parties-in-interest have

16  an opportunity to raise any concerns.

17         So that way we won't lose time.  We'll get to the

18  finish line quickly if all goes as contemplated.  And if any

19  concerns are raised, we'll figure out what to do, which may

20  take the form of a resumed hearing or something else.  Okay.

21  And if I have concerns, I'll reserve the right to just

22  unilaterally modify your agreed-upon work product or else

23  convene us to discuss.  Okay.  So that's how I'll handle that.

24         Subject to that loose end and that process, I've

25  reviewed, really, the entire docket of the case.  I've

1  considered the proffer submitted on the record today

2  representing what would have been the testimony of Andrew Park,

3  a representative or employee of Bank of Hope, if required.  I

4  accept the factual representations that have been made, again,

5  with the proviso that I'm just focusing on the factual

6  representations.  And I conclude that subject to nailing down

7  the issues I just described with regard to the plan

8  administrator, the plan, which is the fourth amended plan,

9  possibly with further forthcoming slight modifications,

10  satisfies all the requirements of the Code that are applicable

11  and should be confirmed.

12       To the extent there are any remaining objections,

13  they're overruled.  I note that no one filed any objection,

14  except that the U.S. Trustee carried over objections from the

15  disclosure statement that went to plan confirmation issues, and

16  those have been consensually resolved, subject to our

17  discussion earlier on the record regarding exculpation, but for

18  the remaining issues involving the plan administrator.

19       Further, I note Ms. Keenan, on behalf of debtor, had a

20  limited objection that I think she said on the record was

21  satisfied by the description of the workings of the remaining

22  City review process.  That's yet to come.  To the extent

23  there's any remaining objection, it likewise is overruled for

24  reasons that will be implicit in my review of the Code

25  confirmation requirements.

**EAST BROADWAY MALL, INC.**

71

1          So let me quickly just go through the governing legal

2     framework and state my own bases for concluding that the

3     applicable plan requirements have been satisfied here.

4          First, the general legal framework is that Section

5     1129 of the Bankruptcy Code governs confirmation of a proposed

6     plan of reorganization.  Pursuant to Section 1129 of the

7     Bankruptcy Code, a court "shall confirm a plan only if" -- and

8     then omitting a few words -- "one, the plan complies with the

9     applicable provisions of this title, U.S.C. Section 1129(a).

10    This provision has generally been interpreted to require that a

11    plan comply specifically with Sections 1122, governing

12    classification of claims, and 1123, regarding the contents of a

13    plan under the Bankruptcy Code."

14         I therefore, first, will turn to Section 1122, which

15    governs classification.  A plan must contain -- excuse me, a

16    class under a plan must contain claims or interests that are

17    substantially similar to each other.  First, for secured

18    claims, each holder often is in a class by itself, unless there

19    are multiple secured creditors who share in the same collateral

20    and have the same priority in that collateral.  And then for

21    unsecured creditors, they must be basically alike.  Controversy

22    can arise when unsecured claims or interests are substantially

23    similar but split into different classes or are similarly or

24    substantially different, yet are grouped together.

25         Here, we don't have any of these problems.  The plan

1   has a very simple classification system that Mr. Sullivan has

2   explained, as have his papers, and no party has raised any

3   objection to them.  And the Court is satisfied that they are

4   logical groupings of substantially similar claims that

5   correlate to the necessities of this case and the plan and the

6   treatment of claims under the plan.

7            Turning to Section 1123, that section includes both

8   mandatory and permissive contents of plans under, respectively,

9   1123(a) and 1123(b).  So first, 1123(a) requires that a plan

10   must contain certain things, and I've concluded that all of

11   these requirements are satisfied here.

12            First, plans must classify claims or interests other

13   than with certain exceptions.  Here, the plan does that.

14            Second, the plan must specify which classes are

15   impaired or unimpaired.  The plan does that.

16            Third, the plan must specify treatment of the impaired

17   classes.  The plan does that.

18            Fourth, the plan must provide for the same treatment

19   for each member of a class unless a class member agrees to less

20   favorable treatment.  That has been satisfied here.

21            I note that the plan is premised on and relies on

22   quite meaningful concessions by specifically Bank of Hope and

23   the City with respect to secured claims and administrative

24   claims respectively, and obviously those two parties are have

25   not only agreed to less favorable treatment, but they're

1   proponents of a plan that provide them less favorable

2   treatment.  So that's fine.

3          Okay.  Fifth, a plan must provide adequate means of

4   implementation, including funding of distributions to classes.

5   Again, the financial concession and the commitment of the

6   contemplated new tenant Broadway East Group, LLC are invaluable

7   and really the keys to the successful achievement of a

8   confirmable plan here because there's an infusion of new

9   capital that Bank of Hope has demonstrated provides adequate

10  means of implementation of the plan, including funding of all

11  administrative costs of the estate and then also of funding of

12  distributions under the plan.

13         The sixth requirement of 1123(a) is not applicable

14  here.  There is simply no contemplated issuance of nonvoting

15  securities and no issues raised here regarding voting power.

16         The seventh requirement of 1123(a) is that when

17  selecting officers, directors, or trustees of the successor

18  entity, the plan has to use a method that's in the interests of

19  creditors, equity holders, and the public.  That requirement is

20  met here in the form of the selection and assignment of

21  responsibilities to the plan administrator.  And there's been

22  no holding that -- or there's been no showing calling that into

23  question.

24         Let's see.  There's a requirement that where a debtor

25  is an individual, the plan has to provide for the dedication of

**EAST BROADWAY MALL, INC.**

74

1  earnings for personal services and other future income is

2  necessary to implement the plan.  That's simply not applicable

3  here.

4        Okay.  And so to recap, and if I've omitted any

5  specific sub-provisions of Section 1123, I've concluded that

6  all are satisfied, including for the reasons I just stated.

7        Turning to Section 1123(b), which sets forth

8  permissive contents of plans, things that a plan may do,

9  although they're not required, plans may, among other things,

10  impair or leave unimpaired any class, assume, reject, or assign

11  executory contracts, subject to Section 365.

12        I'm going to pause on that permissive element to note

13  that the colloquy I had with parties and my ruling stated

14  earlier is incorporated in this, that the plan calls for

15  assumption of whatever remaining leasehold or tenancy interest

16  the current debtor has in the premises at 88 East Broadway, the

17  mall premises.  And the plan contemplates the assumption and

18  assignment of those to the extent not extinguished so as to

19  permit the City and Broadway East Group LLC to enter into its

20  new leasehold agreement, which I will not characterize more

21  precisely.  Guard against inadvertent error.

22        I have specifically concluded that that's both

23  permissible under the New Jersey case that I cited earlier

24  today and an appropriate exercise of discretion and a

25  constituent component of the plan here, in fact, a necessary

**EAST BROADWAY MALL, INC.**

75

1   component of for achieving the plan that's being presented here

2   today.

3        I don't think I need to go through a punch list of

4   permissive contents of a plan.  Suffice it to say that I've

5   identified nothing impermissible or unacceptable within the

6   plan that would run afoul of or exceed the scope of that which

7   is permitted under 1123(b) or that would fail to satisfy the

8   mandatory requirements of 1123(a).

9        Then, turning to the further requirements for

10  confirmation as set forth in Section 1129 of the plan, first,

11  generally the burden is on the plan proponent here, Bank of

12  Hope, to demonstrate compliance with Section 1129 by a

13  preponderance of the evidence.  In re: Ditech Holding Corp.,

14  2019 Westlaw 4073378, *3 (Bankr. S.D.N.Y. August 28, 2019).

15       There are sixteen specific requirements to

16  confirmation set forth in Section 1129(a).  I won't list them

17  in the interest of time.  But I've reviewed the plan, and I'm

18  satisfied that all are met here.

19       First, I've already discussed at some length that the

20  requirements of Section (a)(1) are met because the plan

21  complies with applicable provisions of the Code, which courts

22  construe by focusing on Sections 1122 and 1123, as I have just

23  done.  See 7 Collier on Bankruptcy Paragraph 1129.02.  That's

24  pulled from the sixteenth edition from 2019.  See also In re:

25  EnviroSolutions of New York, LLC, 2010 Westlaw 3373937, *2-3

1  (Bankr. S.D.N.Y. July 22, 2010).

2          Section 1129(a)(2), again, requires that the proponent

3  of the plan -- proponent of the plan must comply with

4  applicable provisions of the Code.  I've already ruled that

5  that requirement has been met here.

6          1129(a)(3) says the plan must be proposed in good

7  faith and is by no means -- and is not forbidden by law.  Good

8  faith is not specifically defined in the Code, but courts

9  interpret it to mean that, among other things, there's a

10 reasonable likelihood that the plan will achieve a result

11 consistent with the objectives and purposes of the Bankruptcy

12 Code.  See In re: 20 Bayard Views, LLC, 445 B.R. 83, 95 (Bankr.

13 E.D.N.Y. 2011).

14          Here, there's been a showing that that that

15 requirement has been met, and I specifically find that that

16 requirement has been met.  Debtor at various times in the case

17 has voiced concerns or objections that the City has failed --

18 I'll just speak colloquially -- to give the -- that the City

19 has failed to give the debtor a fair shake or a fair

20 opportunity.

21          I specifically find that the record is inconsistent

22 with that contention sometimes voiced by debtor, that, as I

23 noted earlier in the record, this case has been pending since

24 2019.  There's been extended periods of time allowed for debtor

25 to seek to develop a confirmable plan, and debtor has never

**EAST BROADWAY MALL, INC.**

77

1   done so.  The City has explained on prior occasions that it had

2   concerns, including about debtor's ability to achieve reliable

3   financing that would be of sufficient duration and size to

4   allow it to successfully operate again.  And the debtor -- and

5   the City has explained that it has concluded that the best and

6   highest possibility is to work with the Broadway East Group as

7   a new tenant.  The Court concludes that that is a decision that

8   was made following ample opportunity for debtor to develop an

9   alternative and is made in good faith by both the City and Bank

10  of Hope as plan proponent.

11          Section 1129(a)(4) requires that any payment made or

12  to be made by the proponent, by the debtor, for services or

13  costs and expenses in or in connection with the case or in

14  connection with the plan and incident to the case has been

15  approved by or is subject to the approval of the Court as

16  reasonable.

17          That, I believe, has been shown to be established in

18  all respects, except that the U.S. Trustee's Office has some

19  remaining concern about that.  I think, in context with the

20  plan administrator, limited to that, and that is a subject of

21  ongoing discussion.  But for possible issues there, that

22  showing has been made.  And specifically, the plan provides for

23  payment of allowed administrative expenses.  To be an allowed

24  administrative expense requires court approval.  And as the

25  Bank of Hope notes, there have been administrative bar dates

**EAST BROADWAY MALL, INC.**

78

1   set and that there's a third one set so that later rising

2   expenses are again to be submitted and reviewed and approved by

3   the Court.  So that provision is satisfied.

4        Section 1129(a)(5) requires that a plan proponent

5   disclose the identity of any individual who will serve as

6   director, officer, or a voting trustee.  And here, the plan

7   supplement identifies the plan administrator and its terms,

8   again, subject to finalization of the terms of the actual

9   agreement and remaining open issues.

10        1129(a)(6) is inapplicable here because that concerns

11   the jurisdiction of governmental regulatory commissions, which

12   aren't implicated in this case.

13        Section 1129(a)(7) requires that with respect to each

14   class of impaired claims or interests under a plan, every

15   holder of a claim or interest either accept the plan or receive

16   or retain property of a value not less than the amount that

17   such holder would receive or retain if the debtor were

18   liquidated under Chapter 7 of the Bankruptcy Code.  As Bank of

19   Hope's brief notes, this is often called the best interests

20   test.  Here, that test is satisfied.

21        With respect to each impaired class of claims or

22   interests, each holder of a claim, other than, I guess, debtor,

23   who's deemed to reject the plan, has accepted the plan or in

24   the case of interestholders, will receive or retain under the

25   plan property of a value that is not less than the amount such

79

1   holder would receive or retain if the debtor was liquidated

2   under Chapter 7 of the Bankruptcy Code.

3          The legal vocabulary that sometimes gets applied is

4   complicated, but the bottom line is we have plan proponents who

5   have consensually advanced the plan, are funding it, and stand

6   to benefit under it.  They are all senior in line to the

7   debtor, who is an equity interest holder, essentially, in the

8   plan and -- actually, I'm not sure the organizational structure

9   of the debtor, but they are an owner -- at most, they hold an

10   ownership interest in the debtor itself.

11          And the plan calls for liquidation of debtor, but

12   there is no possibility, no realistic possibility, that a

13   Chapter 7 liquidation of the debtor would achieve any amount of

14   proceeds that would inure to the benefit of the debtor itself

15   to a greater extent than is being achieved by the plan.  So the

16   best interest test is satisfied here.  And in fact, as the Bank

17   of Hope notes, in addition to liquidation outcomes being

18   equivalent under Chapter 7, there would be additional fees,

19   costs, expenses, et cetera that would push the debtor even

20   further underwater.  I think that's a correct contention.

21          Turning to Section 1129(a)(8), that section requires

22   that each of class of claims either accept the plan or not be

23   impaired under the plan.  Here, the ballot results have been

24   reported, and I credit the reports of the balloting.  There

25   have been no ballots cast opposing the plan.  And multiple

**EAST BROADWAY MALL, INC.**

80

1   classes have voted in support of -- excuse me, multiple

2   impaired classes have voted in support of the plan, I think,

3   including 1 and 4(a) and 4(b).  Possibly I'm misspeaking

4   because I'm not looking back, but there have been -- there's

5   been a clear showing that balloting results demonstrate support

6   for the plan.

7          Yeah, specifically, and I'm referring back to the

8   proffer that was delivered earlier today, which in turn relies

9   on the certification of ballots, Classes 1, 2, 3(a), 3(b),

10  4(a), and 4(b) have accepted the plan or are unimpaired and

11  deemed to accept.  And there are simply no Class 4(c) members,

12  although the plan was drafted to include a Class 4(c), because

13  no one elected to receive Class 4(c) treatment, which that was

14  an opportunity that creditors were given to receive so-called

15  convenience treatment under the plan.

16         Class 5, which is interests as opposed to creditors,

17  is deemed to have rejected the plan because the class is not

18  receiving or retaining any property under the plan.  But the

19  plan does not discriminate unfairly against Class 5 in that the

20  interests within Class 5 are dissimilar to other classes, and

21  further, plan's segregation of Class 5 has a rational basis,

22  that it silos or groups holders of claims that fall in a

23  different place in the seniority scheme and have different

24  entitlements and lesser entitlements to distributions then

25  creditors.  Further, classes senior to Class 5 are not

1   receiving more than the full value of their claims, and

2   therefore there is no entitlement of Class 5 members to receive

3   or retain any property under the plan.

4          Therefore, the fair and equitable standard Section

5   1129(a)(8) has been satisfied.

6          Section 1129(a)(9) requires that holders of certain

7   types of allowed priority claims must be held -- must be paid

8   in conformity with the Code unless they've agreed otherwise.

9   Here, again, that requirement is satisfied by the plan.

10          Section 1129(a)(10) states that if a class of claims

11   is impaired under the plan, at least one class of claims that

12   is impaired under the plan has accepted the plan, determined

13   without including any acceptance of the plan by any insider.

14   The Bank of Hope has shown that this requirement is satisfied,

15   again, because impaired classes, including 1, 4(a), and 4(b)

16   all have accepted the plan.

17          Section 1129(a)(11) was something I focused on earlier

18   today during the hearing.  That requires that confirmation of

19   the plan not be likely to be followed by the liquidation or the

20   need for further financial reorganization of the debtor or any

21   successor to the debtor under the plan, unless such liquidation

22   or reorganization is proposed in the plan.

23          First, the Bank of Hope has made a substantial showing

24   of the financial viability of the plan, including the securing

25   of new financing and capital infusions from the new tenant and

1   mechanisms to satisfy, among other things, the payment of all

2   administrative expenses of the estate, as well as other

3   obligations, and to secure a new commitment from a robust

4   tenant who the City has concluded, as landlord, is well

5   positioned and likely to successfully operate the facility

6   moving forward.

7         The Court finds that these are reasonable

8   determinations and satisfy the financial -- make a sufficient

9   showing of the financial robustness of the proposed plan that

10  Section 1129(a)(11) is satisfied.

11        I did raise a question whether the condition on

12  effectiveness of the plan of completion of the ongoing City

13  review process was consistent with the requirement that I --

14  the required finding that I must make under Section

15  1129(a)(11).  I conclude that that standard is not terribly

16  high, for reasons set forth in the moving brief, and that there

17  is a reasonable likelihood that that process will successfully

18  culminate and result in realization and finalization of the

19  plan as contemplated.

20        Further, the plan has mechanisms for the parties to

21  negotiate and attempt to modify or reach other agreements in

22  the event those approvals don't come through as contemplated.

23  The parties didn't brief the -- didn't specifically identify

24  authority approving plans with similar post-confirmation

25  conditions to effectiveness in the form of governmental

83

1   approvals.

2         Before the hearing, I looked at the history of the

3   American Airlines bankruptcy, which was obviously a major,

4   major case that culminated with the merger of American Airlines

5   and then US Air.  That plan was confirmed, even though there

6   was a pending antitrust lawsuit and antitrust review that was

7   required before the merger could be consummated.  I think that

8   is an analogous type of post-confirmation governmental review

9   that in that case, as here, was potentially highly

10  consequential and yet was not an impediment to confirmation

11  under 1129(a)(11).

12        I'll note that the City also, through Mr. Kass today,

13  made reference to a number of other cases where courts have

14  approved and confirmed plans subject to completion of what can

15  be rather lengthy tracks of governmental review.

16        So I think I'm satisfied that 1129(a)(11) is met.

17        Turning to Section 1129(a)(12), that requirement is

18  satisfied because the plan provides for payment of all fees

19  payable to the Office of the U.S. Trustee.

20        And for various reasons set forth in the papers, I

21  won't elaborate on the requirements of Sections 1129(a)(13),

22  (14), and (15) are not applicable, and therefore -- Bank of

23  Hope puts it "are deemed satisfied".  I'm not sure if that's

24  really the right wording, but I will say they are not --

25  because they're not applicable, they are not impediments to

1  confirmation.  They are, I think, requirements that apply where

2  applicable, and they're not here.

3       Turning to Section 1129(a)(16), that subsection

4  requires that all transfers of property under the plan shall be

5  made in accordance with any applicable provisions of

6  nonbankruptcy law that govern the transfer of property by a

7  corporation or a trust that is not a moneyed business or

8  commercial corporation or trust.  To the extent applicable, the

9  plan is contingent on successful completion of the City's

10  transactional review process, and that's the only potential

11  applicable process that anyone has raised or identified.  And

12  so I conclude that section is satisfied.

13       Okay.  Turning to remaining provisions, having just

14  completed the review of the long list of requirements of

15  1129(a), Section 1129(b) is also satisfied.  That's a somewhat

16  involved provision.  There's been no contention or dispute

17  raised regarding or pertaining to 1129.

18       I'll note that debtors have shown that the

19  classifications involved are appropriate, Class 5 is dissimilar

20  to all other classes, and that there's a rational basis for the

21  grouping raised because Class 5 and only Class 5 consists of

22  interests, and it doesn't consist of any other types of

23  parties-in-interest in the case or creditors.

24       Further, the plan does not discriminate unfairly among

25  the rejecting class or against the rejecting class, and this

**EAST BROADWAY MALL, INC.**

85

1  satisfies the requirements of Section 1129(b).

2          Further, there's no class junior to Class 5 that is to

3  retain or receive any property under the plan, again,

4  demonstrating compliance with Section 1129(b), and in fact, no

5  party has claimed that there's unfair discrimination or that

6  the plan is not fair and equitable in how it treats creditors

7  and interestholders.

8          Section 1129(c) is satisfied.  That permits the Court

9  to confirm only one plan.  What's before the Court is the only

10  plan that's even been presented at this time and is subject to

11  approval.  Debtor had previously proposed a plan some time ago

12  that the Court determined was patently unconfirmable, and so

13  that proposal did not progress beyond the disclosure-statement

14  stage.

15          Mr. Park testified credibly that the plan does not

16  have, as one of its principal purposes, the avoidance of taxes

17  or avoidance of requirements of securities laws.  So the Court

18  concludes that Section 1129(d) is satisfied.

19          I think that completes Court's review and its

20  articulation of the bases for its holdings that all

21  requirements for confirmation of the plan have been satisfied

22  here, and the Court therefore will confirm the plan, subject to

23  the reserved issues described at the start of my ruling and the

24  procedures described at the start of my ruling, which are that

25  debtor is to continue talks specifically with the U.S. Trustee

86

1    and please, if anyone else has any issues they want to raise

2    with respect to your proposed order, please consider those as

3    well.  Then, the debtor is to also seek agreement with the

4    Office of the U.S. Trustee regarding the open issues involving

5    plan administrator and any other open issues to be referred to

6    as small matters, the issues he described as small.

7         Once that's done, the debtor is to submit a revised

8    proposed order confirming the plan, along with a revised

9    proposed plan administrator agreement, and then any other

10   related documentation that the Court should see.  In fact, I

11   think what you should do is docket those in redline form and

12   clean form and alert chambers that they've been submitted.

13   Then, any party-in-interest will have until the second business

14   day following the docketing of those documents to raise any

15   objection or concern.

16        If everyone happens to consent before that time, let

17   Chambers know.  I'll appreciate the courtesy, and I'll maybe be

18   able to approve it without waiting that extra day or two.  In

19   the meantime, I will use that available time to conduct my own

20   review of the revised documentation, and if I have any

21   concerns, I'll either unilaterally act or reconvene us to

22   figure out what we need to do next or raise any questions I

23   have.

24        Okay.  Let me ask Mr. Sullivan If I have either

25   misstated anything or failed to cover anything I need to do

**EAST BROADWAY MALL, INC.**

87

1   today.

2           MR. SULLIVAN:  No, Your Honor.  I appreciate all the

3   time that you've taken to go through each of the points, and I

4   think you covered everything.

5           THE COURT:  Okay.  Great.  Let me just say, by way

6   of --

7           MR. BRUH:  Your Honor, may I just speak here?  Mark

8   Bruh for the --

9           THE COURT:  Yeah.  Go ahead, Mr. Bruh.

10          MR. BRUH:  Sorry.  Mark Bruh for the United States

11  Trustee.  I apologize for interrupting.

12          It's the 503(b) issue.  I just don't know how the

13  Court wants to handle scheduling that.  Is that going to be

14  argued later or are we -- I'm fine if you just want to take it

15  on submission.  I don't know how Mr. Sullivan --

16          THE COURT:  I'm going to -- I think you're -- well,

17  tell me what makes sense.  I had envisioned -- I had understood

18  there would be discussions and possible moves to satisfy the

19  U.S. Trustee's office's concerns or a possible consensual

20  outcome, in which case I'll just look at it on submission.  If

21  not, I guess if there's a remaining disagreement that needs to

22  be argued, we could either argue it right now, or we could wait

23  and see further discussions and whether that bears fruit and

24  then reconvene later if needed.

25          What do you think makes sense, Mr. Bruh?

**EAST BROADWAY MALL, INC.**

88

1          MR. BRUH:  I think Mr. Sullivan and I have a differing

2   view on the 503(b) issue.  It's been hanging out there for

3   quite some time, and there's really been no progress on it.  So

4   we could either argue it or just --

5          THE COURT:  Okay.  Give me your --

6          MR. BRUH:  I don't know --

7          THE COURT:  -- articulation of what the 503(b) issue

8   is exactly.

9          MR. BRUH:  I think, so we did preview our argument at

10  the last hearing, and we put in our objections.  I think pretty

11  clear that we believe the proposed payment to the bank is a

12  substantial contribution claim under 503(b).  I believe that

13  it -- we believe that it needs to make a showing in order to be

14  paid, and it has to be done by notice and a hearing and with

15  approval of the Court.  And that is not done here, Your Honor.

16         Also, with respect to the cases cited by the bank, we

17  believe they're distinguishable to the facts of this case.

18  Those were findings under a global settlement or that the

19  payments weren't in violation of 1129(a)(4), which we believe

20  would not be the case here because there is a portion of the

21  payment to be made by a plan proponent.

22         THE COURT:  Wait, I'm sorry.  Your audio drifted off

23  again.  Give me that last sentence.

24         MR. BRUH:  I said that we believe that the facts of

25  this case are different than those cases cited by the bank in

1    its moving papers -- or excuse me, in its reply to our

2    objection, that in those cases there was a global settlement

3    for approval of the fees of the applicants, and the Court's

4    made a finding that those payments were not in violation of

5    1129(a)(4).  And 1129(a)(4), it states that it's a payment to

6    be made by a proponent or by the debtor, and it's subject to

7    approval of the court as reasonable.

8          I mean, I can go into how we find this case is

9    different here, but we believe that the debtor -- excuse me,

10   debtor, I keep saying debtor -- that the bank should make an

11   application and Your Honor should review the fees, just deem

12   them appropriate in the case.

13         THE COURT:  All right.  Mr. Sullivan, you want to

14   respond?

15         MR. SULLIVAN:  Yes, Your Honor.  Yes.  As we kind of

16   mentioned earlier and as pointed out in the papers, the

17   situation here is a little bit different than your usual case.

18   Right.  We have an agreement amongst the City, the bank, and

19   Broadway East Group to cover any administrative expenses and

20   priority claims that may need to get paid.  And we're going to

21   split it three ways.

22         And so the understanding is that if we can reach an

23   agreement as to the administrative expenses in order to propose

24   and consummate and implement the plan, which are primarily the

25   expenses incurred by my firm to -- for the legal expenses, then

1    we wouldn't need to bother the Court with trying to have a

2    hearing on it when there's really just an agreement amongst the

3    parties are basically resolving that and that we would only

4    need to bother Your Honor if the parties, for whatever reason,

5    could not agree.

6           THE COURT:  Oh, yeah.  No, look, particularly if -- I

7    mean, your firm has done a lot.  My reaction is that,

8    notwithstanding the funding agreement that's occurred here,

9    what's being done is payment to your counsel through the

10   auspices of the bankruptcy process and the bankruptcy case for

11   work done in connection with the case, and that does strike me

12   as falling within the terms of Section 1129(a)(4), which

13   requires that payments for services and costs in connection

14   with the case be approved by the Court is reasonable.  Right.

15          That's the concern you've got, Mr. Bruh? And then

16   you've got -- in addition, I guess we have the substantial

17   contribution issue?

18          MR. BRUH:  Correct, Your Honor.  It's both.  They're

19   related.  Yes.

20          THE COURT:  Yeah.  So I think that the treatment --

21   yeah.  I will just say that my tentative view, maybe not that

22   tentative, is that the U.S. Trustee's office is right, that

23   notwithstanding the funding arrangements, entitlement to

24   payment still needs to be established and subject to court

25   review, both with respect to just the general fee application

**EAST BROADWAY MALL, INC.**

91

1   processes and with the required showing of substantial

2   contribution because the fees were incurred by a party other

3   than the debtor or the Trustee.

4        That said, I think the Bank of Hope has a very robust

5   case for a substantial contribution finding because it came in

6   and really kind of spearheaded the achievement of a confirmable

7   plan at a time when that was looking like a real long-shot.

8        So let me first ask Mr. Bruh, that's the ruling you're

9   looking for, right?

10       MR. BRUH:  Yes, Your Honor.  I mean, I think there

11  should be (indiscernible) --

12       THE COURT:  Okay.  Yeah, you don't have to elaborate.

13       Let me just ask Mr. Sullivan, I'll give you another

14  shot to persuade me that's wrong.  I'll say nothing further.

15  I'll give you another shot to persuade me why that's wrong.

16  But I understand that you're trying to distinguish the

17  circumstances here and the money's coming from wonderful

18  settling parties and you've achieved a great result, and yet I

19  just don't see why that justifies an end run around the

20  requirements that Mr. Bruh raises and identified.

21       MR. SULLIVAN:  Right.  There's two things, I guess, I

22  would respond to that.

23       I mean, to some extent, Your Honor, when the parties

24  negotiated this deal, Bank of Hope agreed to kind of incur the

25  expenses, subject to reimbursement.  Right.  We could have

1  probably had each of the three parties sort of contribute along

2  the way, or we could have readjusted the allocation under the

3  plan, such that Bank of Hope would get a larger distribution,

4  instead of, like, let's say, two million or whatever the number

5  is.  I forget the exact numbers that are going to each party.

6  But maybe a little bit more go to the Bank of Hope, a little

7  bit less go to the City, and maybe the approved new tenant

8  kicked in a little bit more money on the purchase price.

9  Right.

10       So all of these things are sort of fungible to some

11  extent, but the way that it was negotiated, just the cleanest

12  way to make it easier, to make it seem the most fair, that each

13  of the parties were sort of bearing some of the responsibility

14  for the cost going forward, this is the way we sort of struck

15  it.  But it certainly could have been negotiated a different

16  way, given that money is fungible.

17       THE COURT:  Yeah, let me say, I'm having -- well,

18  sorry, maybe that's one of your -- I think you said you maybe

19  had a couple of points, and this was one.  I'm not --

20       MR. SULLIVAN:  Yeah, that was the first point.

21       THE COURT:  -- (indiscernible) that one because sure,

22  you could have -- I mean, any manner of structures and deals

23  could exist, but this is the deal you've got.  And it entails

24  payment of your expenses, which really seems to fall within the

25  statutory language.

**EAST BROADWAY MALL, INC.**

93

1          MR. SULLIVAN:  I understand, Your Honor.  We were just

2     trying to, like -- we were trying to simplify the process.

3     We're not necessarily --

4          THE COURT:  Okay.

5          MR. SULLIVAN:  -- like I had mentioned to Mark, we

6     were willing to let you call it and live with it.  It wasn't a

7     deal-breaker.  The --

8          THE COURT:  Okay.  Well, look, I think that's where

9     I'm at.  But I think you had one arrow in your quiver remaining

10    that you wanted to roll out --

11         MR. SULLIVAN:  Yeah, the one --

12         THE COURT:  -- so what's that?

13         MR. SULLIVAN:  The one other I just wanted to mention

14    is, is that we did submit an administrative claim through, I

15    believe, the second bar date.  Right.  So to the extent that

16    Your Honor is willing to rule on that part of it and we can get

17    approval of that aspect of it at this point, and then we can

18    always apply for additional expenses as part of the third

19    administrative bar date --

20         THE COURT:  Got it.  Let me tell you --

21         MR. SULLIVAN:  -- at a later date.

22         THE COURT:  -- I'm not going to -- I'm not going to do

23    that at the time of confirmation.  If you want to seek approval

24    on a rolling basis up through that amount, I'll get you heard

25    pretty quickly.

1      I'm not sensing from Mr. Bruh that he smells a rat or

2  thinks that your firm didn't make substantial contributions.

3  But I know this is a programmatically important thing for his

4  office.  And I think honestly, it's a programmatically

5  important thing for the Court, too.  The Court needs to

6  maintain control of expenditures and disbursements running

7  through estates on account of professional fees, and

8  particularly if it's -- and then also just to ensure that the

9  substantial contribution standard is met I think is right.

10      So basically, you can submit an application whenever

11  you want, but I'm not going to -- I don't intend to or want to

12  use confirmation as a mechanism to evade those requirements.

13  So I guess that's my ruling.  Okay.

14      MR. SULLIVAN:  All right.  Thank you.

15      THE COURT:  Yep.   Thanks.

16      MR. BRUH:  Thank you, Your Honor.

17      THE COURT:  Mr. Bruh, did I any other issues you've

18  got to raise?  I appreciate your raising that one.

19      MR. BRUH:  No, Your Honor.  We appreciate it.  And Mr.

20  Sullivan, I can tell you, gets me the application, I'll review

21  it as quickly as possible so we can get him comments --

22      THE COURT:  Yep.

23      MR. BRUH:  -- if we have any.  You got my word.

24      THE COURT:  I will say, it's been a long case.

25      MR. BRUH:  Yes, Your Honor.

1          THE COURT:  When the money finally becomes available,

2     everyone's done a lot of work, and I certainly think it'll be

3     fair.  I'm sure the -- I trust the U.S. Trustee's office will

4     apply fair and prompt review, and I'll do the same.  Okay.

5          MR. BRUH:  Yes.

6          MR. SULLIVAN:  Thank you, Your Honor.

7          MR. BRUH:  Thank you.

8          THE COURT:  I think now we're ready to be done.

9     Anyone else need to raise anything?

10          Yes, go ahead, Mr. Soong.

11          MR. SOONG:  Yes.  Thank you.  And this will be very

12     brief.  But this is an issue that's not new between us and the

13     City, and I wanted to raise it here to see if we can have some

14     assistance on it.

15          In our final bid and also in our term sheet, and

16     presumably also in the final lease, the new tenant has made a

17     commitment to relocate the existing subtenants so as not to

18     disrupt their business.  And we continue to be committed to do

19     that.  The problem is that we've not yet been given a list of

20     the current tenants that are in the premises.

21          The City has told me -- and Mr. Kass, you can correct

22     me on it, but the City has told me that it doesn't have any

23     information about the current tenants.  I have instructed my

24     clients to do what it can as far as identifying who appears to

25     be operating right now.  But in order for us to plan our

**EAST BROADWAY MALL, INC.**

96

1    substantial reconstruction and renovation of the space, we need

2    to know how we're going to reallocate or relocate or move

3    around the existing subtenants, to the extent that they are

4    existing subtenants.

5            And so I'm raising this to see if either the Court or

6    any of the other parties, perhaps the Trustee's office, perhaps

7    Ms. Keenan, can help me.  We are looking essentially for a list

8    of the current tenants so that we can confirm or verify that

9    they are indeed the tenants.

10           THE COURT:  Okay.  Let me just say, I understand your

11   need for that.  That's not really a confirmation issue.  I will

12   encourage all the parties to provide information and be

13   cooperative to accomplish this objective.  I don't want to get

14   down into the weeds on this, but Mr. Soong, I mean, I don't

15   know.  If your client physically goes there, you can stick

16   letters in every unit's door for that matter.  But I'll leave

17   that to you.

18           I think all I should say is whoever has information

19   that will help Mr. Soong do what he says he needs to do, please

20   provide it.

21           And Mr. Soong, if you need to come back to the Court

22   or your entity needs to come back to the Court, so be it.  I

23   don't think that's an issue that's raised for ruling today.

24   Okay.

25           MR. SOONG:  Thank you.  Thank you.

**EAST BROADWAY MALL, INC.**

97

1          THE COURT:  All right.  So once again, I think we're

2     done, but I'll just make sure.  Anyone else want to raise

3     anything?

4          Okay.  I paused.  No one said yes.  Thank you all for

5     your efforts.  Oh, I was just going to start to say, this has

6     been a lengthy and tiring hearing, but I do want to -- and it's

7     2 o'clock, and I haven't had lunch.  I ran through my brief,

8     teeny window to have lunch, and I'm going to go right to

9     something else now.

10          But I do want to say that I know this case didn't go

11     the way debtor wanted it to go, but I will say this is an

12     important facility to the Chinatown community and the City, and

13     I am very hopeful and glad that through bankruptcy processes

14     you seem to be on the cusp of putting a really solid operator

15     in place and putting this facility back to use where people can

16     be -- in a way that people can be employed, revenue can be

17     generated, including for the City, and the community will have

18     a nice facility as well.  Okay.

19          So thank you for your work and I want to just

20     acknowledge that happy outcome that we seem to be on the cusp

21     of.  Okay.  So thank you, and we're adjourned.

22          (Whereupon these proceedings were concluded)

23

24

25

98

1

2                                    I N D E X

3  RULINGS:                                        PAGE    LINE

4  Debtor's motion for reconsideration is          13      25

5  denied

6  Exculpation provision is approved, as           50      13

7  noted on the record

8  Court's analysis on assumption and              54      23

9  assignment of existing lease

10 Bank of Hope's plan is confirmed, with          68       6

11 conditions as noted on the record

12

13

14

15

16

17

18

19

20

21

22

23

24

25

99

1

2                    C E R T I F I C A T I O N

3

4  I, River Wolfe, certify that the foregoing transcript is a true

5  and accurate record of the proceedings.

6

7

8

9  _____

10 River Wolfe (CDLT-265)

11 TTA-Certified Digital Legal Transcriber

12

13 eScribers

14 7227 North 16th Street, Suite #207

15 Phoenix, AZ 85020

16

17 Date:  September 15, 2023

18

19

20

21

22

23

24

25

19-12280-dsj    Doc 214    Filed 09/21/23    Entered 09/22/23 10:08:14    Main Document
In the Matter of: EAST BROADWAY MALL, INC.                Pg 100 of 118

September 12, 2023

*

**\*2-3 (1)**
    75:25
**\*3 (1)**
    75:14

**A**

**a1 (1)**
    75:20
**ability (4)**
    25:2;41:15;58:15;
    77:2
**able (9)**
    9:12;43:22,24;
    44:18;56:17;60:7,14;
    67:23;86:18
**above (2)**
    34:9;35:25
**absent (1)**
    7:1
**absorbed (1)**
    64:25
**abundant (1)**
    17:23
**accept (12)**
    28:8;30:12,13,16;
    40:12,21;42:1,5;70:4;
    78:15;79:22;80:11
**acceptable (3)**
    15:8;45:3;68:17
**acceptance (1)**
    81:13
**acceptances (2)**
    29:11;37:25
**accepted (10)**
    30:10;32:9;33:7,8;
    34:9,10;78:23;80:10;
    81:12,16
**accepting (2)**
    40:16,24
**accomplish (2)**
    51:23;96:13
**accordance (3)**
    34:3,19;84:5
**Accordingly (3)**
    32:23;33:20;36:7
**account (4)**
    32:11,24;37:23;
    94:7
**accountants (1)**
    38:16
**achieve (4)**
    37:15;76:10;77:2;
    79:13
**achieved (4)**
    58:4;59:4;79:15;
    91:18
**achievement (2)**
    73:7;91:6
**achieving (1)**

75:1
**acknowledge (1)**
    97:20
**acknowledgment (1)**
    24:2
**Act (4)**
    37:2;38:19;60:19;
    86:21
**action (1)**
    39:8
**actions (1)**
    12:10
**actively (1)**
    38:17
**activities (1)**
    22:18
**actual (4)**
    27:10;39:1;69:14;
    78:8
**actually (7)**
    11:8;35:24;42:24;
    52:25;55:1;64:5;79:8
**adamant (1)**
    10:18
**add (3)**
    11:14;62:2;66:24
**addition (5)**
    31:9;33:9;35:3;
    79:17;90:16
**additional (4)**
    36:11;51:12;79:18;
    93:18
**additionally (1)**
    40:6
**address (11)**
    6:24;7:6,20;8:8;
    23:21;24:1,4;27:19,
    19;42:16;61:19
**addressed (2)**
    63:4;64:5
**addressing (1)**
    42:23
**adequate (6)**
    26:13;30:12;34:21;
    66:14;73:3,9
**adjourned (1)**
    97:21
**adjudicate (1)**
    49:13
**administering (1)**
    11:3
**administration (3)**
    31:19;38:23;48:2
**administrative (20)**
    25:6;26:17;31:8,8;
    34:2;35:5;40:2,4,5,6;
    72:23;73:11;77:23,
    24,25;82:2;89:19,23;
    93:14,19
**administrator (33)**
    31:17,22;32:2;41:8;
    43:11,12,18,25;44:12;
    47:5,13;48:18,19;

49:5,9;50:3;62:7,13,
15;63:16;67:23;
68:10,11,14,18,20;
70:8,18;73:21;77:20;
78:7;86:5,9
**administrator's (1)**
    44:12
**admittedly (1)**
    56:14
**advanced (3)**
    16:10;28:12;79:5
**adversary (1)**
    46:18
**advisable (1)**
    58:20
**advisors (1)**
    38:15
**Advisory (4)**
    31:16,17;43:12,13
**Aegean (1)**
    50:19
**affairs (1)**
    22:20
**affect (1)**
    60:6
**affidavits (1)**
    29:20
**affirmation (1)**
    12:17
**afforded (1)**
    49:8
**affording (1)**
    13:14
**afoul (1)**
    75:6
**afternoon (2)**
    19:24;61:3
**afterwards (1)**
    51:7
**again (29)**
    13:24;14:9;15:14;
    16:21,23;18:13;
    30:16;36:14;42:1;
    48:12;53:24;59:13,
    14;60:7,23;61:7;
    64:18;65:24;70:4;
    73:5;76:2;77:4;78:2,
    8;81:9,15;85:3;88:23;
    97:1
**against (8)**
    10:2;13:13;14:19;
    33:23;36:8;74:21;
    80:19;84:25
**agency (1)**
    37:3
**agenda (2)**
    6:13;19:14
**agents (1)**
    38:15
**ago (6)**
    19:17;22:11;32:10;
    33:6;62:2;85:11
**agree (7)**

7:5;13:12;14:2;
55:15;58:4;59:18;
90:5
**agreed (10)**
    16:21;26:15;34:4;
    35:4;38:9;47:16;50:9;
    72:25;81:8;91:24
**agreed-upon (2)**
    17:14;69:22
**agreement (46)**
    13:7;14:19;16:11;
    18:11;26:16;31:20,
    22;32:3;39:16;41:9;
    42:23;43:3,4,11,16,
    20;44:3,15,19;45:3;
    47:5,10;48:2,12,17,
    18;49:5,11,12;50:7,
    21;52:22;67:23,24;
    68:10,22,24;69:11;
    74:20;78:9;86:3,9;
    89:18,23;90:2,8
**agreements (2)**
    15:11;82:21
**agrees (1)**
    72:19
**ahead (5)**
    28:13,25;53:11;
    87:9;95:10
**air (2)**
    16:6;83:5
**Airlines (2)**
    83:3,4
**akin (1)**
    48:9
**alert (1)**
    86:12
**alerted (1)**
    55:2
**aligns (1)**
    64:23
**alike (1)**
    71:21
**all-caps (1)**
    66:6
**allegation (1)**
    18:9
**allocation (1)**
    92:2
**allow (2)**
    69:4;77:4
**allowed (14)**
    21:18;25:6;31:2,7;
    32:19;34:1,19;35:2,6;
    59:25;76:24;77:23,
    23;81:7
**allowing (2)**
    15:16,24
**allows (1)**
    18:24
**almost (1)**
    42:19
**along (6)**
    9:24;15:21;28:6;

7:5;13:12;14:2;
55:15;58:4;59:18;
90:5
**68:24;86:8;92:1
**alternative (1)**
    77:9
**although (4)**
    16:4;64:21;74:9;
    80:12
**always (3)**
    10:1;44:20;93:18
**amended (5)**
    7:7;21:15,16;63:1;
    70:8
**American (2)**
    83:3,4
**among (9)**
    13:12;24:9;26:14;
    47:16;50:19;74:9;
    76:9;82:1;84:24
**amongst (3)**
    7:15;89:18;90:2
**amount (8)**
    14:22;32:12;39:19;
    43:24;78:16,25;
    79:13;93:24
**amounts (1)**
    32:18
**ample (1)**
    77:8
**analogous (1)**
    83:8
**analysis (6)**
    14:3;16:19;55:16;
    57:6,12,15
**analytically (1)**
    55:17
**ANDREW (4)**
    5:6;20:21;22:11;
    70:2
**anticipated (1)**
    34:22
**anticipating (1)**
    41:21
**antitrust (2)**
    83:6,6
**apologize (4)**
    7:2;59:14,18;87:11
**appeal (1)**
    17:17
**appearances (2)**
    6:11,12
**appears (5)**
    12:17,18;18:18;
    55:16;95:24
**applicable (26)**
    26:8,11;29:8,13;
    35:17,23;36:1;37:10,
    20,24;38:6;39:12;
    58:7;70:10;71:3,9;
    73:13;74:2;75:21;
    76:4;83:22,25;84:2,5,
    8,11
**applicants (1)**
    89:3
**application (4)**

19-12280-dsj    Doc 214    Filed 09/21/23    Entered 09/22/23 10:08:14    Main Document
In the Matter of: EAST BROADWAY MALL, INC.    Pg 101 of 118

September 12, 2023

89:11;90:25;94:10,
20
**applied (1)**
79:3
**applies (1)**
19:4
**apply (3)**
84:1;93:18;95:4
**appointment (1)**
68:10
**appraisal (1)**
10:3
**appreciate (8)**
29:3;41:5;47:6;
69:5;86:17;87:2;
94:18,19
**appreciates (1)**
15:3
**approach (1)**
15:17
**approaches (1)**
58:13
**appropriate (10)**
30:1;37:10;50:16;
53:15;60:9;63:2;67:3;
74:24;84:19;89:12
**appropriately (2)**
37:14;38:3
**approval (28)**
25:16;31:10;45:7;
57:22;59:19;60:2,4,
10,22,23,24,25;61:5,
9;64:5;65:6,24,25;
66:6;68:16;77:15,24;
85:11;88:15;89:3,7;
93:17,23
**approvals (7)**
36:1;58:4;59:4;
60:3;65:4;82:22;83:1
**approve (5)**
46:22;50:16;54:7;
67:24;86:18
**approved (21)**
21:18;23:3,21;
24:11,14,16;25:11,12;
26:15;29:16;34:15;
35:4;39:16;51:4,13;
52:8;77:15;78:2;
83:14;90:14;92:7
**approving (3)**
16:23;22:6;82:24
**April (1)**
56:12
**argue (2)**
87:22;88:4
**argued (2)**
87:14,22
**arguing (3)**
16:24;45:25;46:2
**argument (5)**
41:10,15;61:16;
63:20;88:9
**argumentation (4)**

40:21;42:4,7,8
**arise (1)**
71:22
**arises (1)**
14:19
**arising (3)**
32:21;38:5,21
**arm's-length (1)**
37:13
**around (3)**
64:1;91:19;96:3
**arrangements (2)**
55:25;90:23
**arrive (1)**
46:12
**arriving (1)**
45:2
**arrow (1)**
93:9
**ARTHUR (2)**
4:25;56:5
**articulated (1)**
57:6
**articulates (1)**
57:15
**articulation (2)**
85:20;88:7
**aside (1)**
18:24
**aspect (1)**
93:17
**aspects (2)**
42:15;49:2
**asserting (1)**
37:4
**assessment (2)**
17:20;56:3
**assets (1)**
22:24
**assign (1)**
74:10
**assigned (4)**
52:7;54:2;55:21,23
**assignment (5)**
52:21;54:8;56:20;
73:20;74:18
**assistance (1)**
95:14
**assume (5)**
54:24;55:5,11,14;
74:10
**assumed (2)**
52:7;55:21
**assuming (2)**
55:22;69:11
**assumption (4)**
52:21;56:20;74:15,
17
**attach (1)**
67:22
**attached (3)**
22:5;52:9,12
**attaining (1)**

36:1
**attempt (3)**
15:7;68:21;82:21
**attendance (1)**
22:12
**attending (1)**
46:14
**attest (1)**
27:7
**attorney (2)**
12:18;13:23
**Attorneys (5)**
4:3,12,21;38:15;
39:5
**attorney's (1)**
7:19
**audio (3)**
8:16,18;88:22
**August (2)**
30:3;75:14
**auspices (1)**
90:10
**authority (2)**
54:24;82:24
**authorize (1)**
44:14
**authorized (1)**
55:5
**automatically (2)**
18:18;53:22
**available (5)**
20:19;24:14;27:19;
39:21;86:19;95:1
**avoidance (6)**
37:1,1,4;39:3;
85:16,17
**aware (1)**
37:3

## B

**back (14)**
14:21;42:13,24;
44:7;49:18;50:9;
64:20;66:16;67:2;
80:4,7;96:21,22;
97:15
**backdrop (1)**
14:20
**background (2)**
12:24;14:8
**Baker (1)**
17:7
**ballot (1)**
79:23
**balloting (3)**
30:8;79:24;80:5
**ballots (6)**
29:21;30:1,4;33:6;
79:25;80:9
**Bank (88)**
4:3;5:4,5,6;6:8,18;
7:3,7;9:25;10:1;

12:10;13:17,23;14:3,
12;17:21;19:7;20:22;
21:14,16;22:10,14,16,
19,24,25;23:3,6,12,
14,17,22;24:1,5,12,
15;25:1;26:6,15;
27:10;29:12,21;30:5,
9,13,15;31:14,20;
35:3;37:2,11;38:8,13;
39:12,13,14,16,20,23,
24;40:1;42:9;56:21;
66:19;67:5,9;68:5,13;
70:3;72:22;73:9;
75:11;77:9,25;78:18;
79:16;81:14,23;
83:22;88:11,16,25;
89:10,18;91:4,24;
92:3,6
**Bankr (6)**
16:18;17:10;18:6;
75:14;76:1,12
**bankruptcy (54)**
13:13;21:13;22:9;
25:23;26:6,8,10,12;
28:4;29:9,13,22,23;
30:23;31:3,4,11;
32:14;33:4,24;34:6,
11,20;35:3,10,15;
36:10;38:6,12,17;
39:11;52:18;53:19,
21;54:6;55:6,10,24;
59:25;60:2,5,6;68:5;
71:5,7,13;75:23;
76:11;78:18;79:2;
83:3;90:10,10;97:13
**bar (6)**
31:9;40:4,6;77:25;
93:15,19
**Based (9)**
10:14;11:5,8,9;
23:10;35:20;38:25;
58:11,11
**bases (2)**
71:2;85:20
**basically (7)**
9:11,13;59:8;64:6;
71:21;90:3;94:10
**basis (14)**
14:6;15:23;19:10;
20:11;21:17;23:7;
25:21;33:15;36:6;
41:13;42:1;80:21;
84:20;93:24
**Bayard (1)**
76:12
**bearing (2)**
13:22;92:13
**bears (1)**
87:23
**become (1)**
58:3
**becomes (1)**
95:1

**behalf (6)**
53:8;59:13;64:1;
65:9;66:17;70:19
**belabor (1)**
19:21
**belief (5)**
24:19,24;25:9,17;
35:20
**believes (4)**
34:13;39:14,24;
65:24
**below (1)**
22:13
**bench (1)**
11:9
**benefit (3)**
14:17;79:6,14
**BERK (2)**
5:3;65:14
**besides (1)**
63:24
**best (9)**
23:20;24:6,8;33:3;
56:11;58:17;77:5;
78:19;79:16
**better (3)**
9:1,2;11:12
**beyond (1)**
85:13
**bid (3)**
23:20;56:12;95:15
**bids (1)**
24:9
**big (1)**
48:22
**binding (1)**
28:9
**bit (9)**
29:25;43:17,18;
57:14;58:18;89:17;
92:6,7,8
**bite-sized (2)**
50:12,12
**blank (1)**
45:22
**blurry (1)**
56:25
**Board (7)**
25:13,13,14;51:12;
60:18,19;65:24
**body (1)**
13:2
**borough (4)**
25:14;60:17,19;
65:24
**both (12)**
23:15;30:15;31:17;
40:20;56:21;65:1,15;
72:7;74:22;77:9;
90:18,25
**bother (2)**
90:1,4
**bottom (1)**

19-12280-dsj    Doc 214    Filed 09/21/23    Entered 09/22/23 10:08:14    Main Document
In the Matter of: EAST BROADWAY MALL, INC. Pg 102 of 118

September 12, 2023

79:4
**Bowling (1)**
4:13
**BR (5)**
16:18;17:10;18:6;
55:9;76:12
**break (1)**
21:3
**breaking (1)**
8:23
**brief (6)**
14:4;78:19;82:16,
23;95:12;97:7
**briefing (2)**
15:25;17:25
**briefly (2)**
26:1;65:11
**broader (1)**
50:17
**Broadway (28)**
4:22;6:4;12:11,12,
25;24:7,25;25:2,10;
34:16;35:22;51:4,15;
52:8,23,25;54:17;
56:6,9;57:5;61:24;
65:16;68:5;73:6;
74:16,19;77:6;89:19
**Brotherhood (1)**
17:5
**BRUH (48)**
4:17;21:21;41:4,4,
18,19;42:22;46:10;
47:3,4,13,19,21;
49:14,14,16;50:3,5;
62:5,11,11,23;63:7,
19,22;87:7,8,9,10,10,
25;88:1,6,9,24;90:15,
18;91:8,10,20;94:1,
16,17,19,23,25;95:5,7
**Bruh's (1)**
63:5
**burden (2)**
17:15;75:11
**business (18)**
9:8;12:23;13:9;
22:15,17;26:18;27:7,
9,10;28:2;31:16;
37:11;43:13;69:4,7;
84:7;86:13;95:18
**busy (1)**
8:5
**butting (1)**
29:3
**buttoned (1)**
68:7

## C

**calendar (1)**
6:5
**call (2)**
68:7;93:6
**called (6)**

12:25;22:12;40:13,
17;51:3;78:19
**calling (2)**
51:3;73:22
**calls (3)**
54:11;74:14;79:11
**came (2)**
9:10;91:5
**camera (1)**
59:16
**can (48)**
6:12;7:10;8:5;9:19;
10:15;21:20;27:8;
28:13;29:18;32:3;
33:21;35:9;40:6;44:7;
45:13;46:16,24;47:7;
49:1,1,17;50:24,25;
55:19;56:24;59:6;
61:2,3;64:20;67:24;
71:22;83:14;89:8,22;
93:16,17;94:10,20,21;
95:13,21,24;96:7,8,
15;97:15,16,16
**capable (2)**
27:9;60:9
**capacity (2)**
13:19;31:21
**Capital (4)**
31:16;43:12;73:9;
81:25
**captured (1)**
6:11
**captures (1)**
12:6
**carefully (1)**
67:8
**carried (2)**
21:19;70:14
**carved (1)**
39:22
**case (58)**
6:4,10;10:24;11:1,
3;12:21;13:22;14:20;
15:5;16:10,13,19,21;
20:23;21:10;22:9;
23:4,10,16;24:6;
36:23;37:17;38:2,6,
18;44:11;51:21;55:2,
7,13,16;66:10;67:12;
69:25;72:5;74:23;
76:16,23;77:13,14;
78:12,24;83:4,9;
84:23;87:20;88:17,
20,25;89:8,12,17;
90:10,11,14;91:5;
94:24;97:10
**cases (10)**
18:7;53:19;59:22,
24,25;60:7;83:13;
88:16,25;89:2
**cast (1)**
79:25
**catch-all (1)**

18:23
**cause (1)**
52:21
**certain (10)**
12:9;14:16;22:14,
20;51:23,24;60:3;
72:10,13;81:6
**Certainly (13)**
6:16;27:19;28:9,19;
29:2;43:23;44:7,16;
46:13;51:20;66:14;
92:15;95:2
**certainty (1)**
48:13
**certification (4)**
29:21;30:1;33:6;
80:9
**cetera (1)**
79:19
**chambers (3)**
7:14;86:12,17
**Chan (1)**
12:17
**chance (4)**
7:16;16:9;49:10;
67:8
**change (1)**
49:14
**changes (2)**
67:22;69:2
**Chapter (18)**
21:15;23:4,10,16;
32:13,15,15,19,22;
33:2;37:17;38:2,5;
55:12;78:18;79:2,13,
18
**characterization (2)**
28:24;40:21
**characterize (1)**
74:20
**characterized (1)**
65:3
**check (2)**
21:20;45:22
**chime (1)**
51:6
**Chinatown (2)**
12:25;97:12
**CHO (1)**
5:4
**choice (2)**
10:6;17:19,20
**Cir (4)**
17:6,7,22;18:5
**Circuit (2)**
17:13;20:10
**circulated (3)**
7:15;31:22;43:20
**circumstance (1)**
25:20
**circumstances (4)**
11:5;17:4;25:5;
91:17

**citation (1)**
55:8
**cite (1)**
55:3
**cited (4)**
17:12;74:23;88:16,
25
**citing (1)**
50:19
**City (77)**
8:15;9:8,11,25;
10:2;12:10,20;13:1,
14,18,24;14:12;15:6,
8,13,14,16,20;18:17;
22:20;23:6;24:5,15,
25;25:1,10;26:15;
30:6,15;31:24;35:4,
22,25;38:13;39:16,20,
23;51:2,6,6,11;52:20,
22;53:8,8;54:16;56:1,
15,22;57:22;58:13;
59:14,19;61:13;64:6,
16,16;65:9,23;70:22;
72:23;74:19;76:17,
18;77:1,5,9;82:4,12;
83:12;89:18;92:7;
95:13,21,22;97:12,17
**City's (4)**
53:18;64:18;65:14;
84:9
**Civil (1)**
12:7
**claim (16)**
22:10;30:7,9,12,13;
32:9,11,24,25;38:19;
40:2,5;78:15,22;
88:12;93:14
**claimed (2)**
36:14;85:5
**claims (45)**
9:13;26:17,19,20,
21;30:6,6,11,11,16;
31:2;32:8,19;33:17;
34:1,2,2,3,4,8,19;
35:2,6,6;36:5,6;
62:18;71:12,16,18,22;
72:4,6,12,23,24;
78:14,21;79:22;
80:22;81:1,7,10,11;
89:20
**clarify (2)**
51:16;64:21
**clarity (3)**
43:5;51:1;54:22
**class (55)**
26:21,22;30:7,9,10,
11,12,14,18,18,19;
32:8;33:9,10,11,12,
14,15,17,21,23;34:8;
36:4,6,8,12,13,18;
71:16,18;72:19,19;
74:10;78:14,21;
79:22;80:11,12,13,16,

17,19,20,21,25;81:2,
10,11;84:19,21,21,25,
25;85:2,2
**classes (19)**
26:19;30:6;33:7,14,
16;34:9,18;36:5;
71:23;72:14,17;73:4;
80:1,2,9,20,25;81:15;
84:20
**classification (4)**
26:19;71:12,15;
72:1
**classifications (1)**
84:19
**classify (1)**
72:12
**clause (1)**
38:10
**clauses (1)**
37:9
**clean (1)**
86:12
**cleanest (1)**
92:11
**clear (9)**
10:25;16:4;18:2;
41:12;43:17;66:8;
68:9;80:5;88:11
**client (2)**
9:9;96:15
**clients (5)**
9:6;10:17;39:5;
56:22;95:24
**client's (1)**
10:25
**close (2)**
42:23,25
**closely (1)**
69:14
**Code (44)**
14:22;21:13;25:24;
26:6,8,10,12;28:4;
29:9,13,22,23;30:23;
31:3,4,11;32:14;33:4,
24;34:6,11,20;35:3,
10,15;36:10;38:6,12;
39:11;53:21;55:6,11;
70:10,24;71:5,7,13;
75:21;76:4,8,12;
78:18;79:2;81:8
**coercively (1)**
13:16
**collateral (2)**
71:19,20
**colleagues (1)**
20:23
**collection (1)**
18:19
**Collier (1)**
75:23
**colloquially (1)**
76:18
**colloquy (1)**

74:13

**comfort (1)**
58:9

**comfortable (3)**
45:10,18;50:22

**coming (2)**
50:25;91:17

**commenced (1)**
67:10

**commencement (1)**
51:21

**comment (3)**
42:2;45:14;65:11

**comments (5)**
32:1;47:6;65:1;
67:20;94:21

**commercial (1)**
84:4

**commission (1)**
64:16

**commissions (2)**
32:21;78:11

**commitment (3)**
73:5;82:3;95:17

**committed (3)**
23:24;56:9;95:18

**Committee (1)**
25:13

**community (6)**
15:1;25:13,13;
51:12;97:12,17

**compensation (1)**
43:14

**competent (3)**
20:19;27:6;39:3

**complained (1)**
10:1

**complains (1)**
13:15

**completed (1)**
84:14

**completes (1)**
85:19

**completion (3)**
82:12;83:14;84:9

**compliance (7)**
21:13;25:24;28:4;
29:10;37:20;75:12;
85:4

**complicated (1)**
79:4

**complied (2)**
29:12,21

**complies (9)**
26:7,9;29:7,8;
30:22;34:11;35:14;
71:8;75:21

**comply (4)**
28:17;56:17;71:11;
76:3

**component (3)**
57:16;74:25;75:1

**components (1)**

25:23

**computer (1)**
59:14

**conceptual (1)**
15:5

**concern (6)**
57:12;63:5;66:20;
77:19;86:15;90:15

**concerning (1)**
22:18

**concerns (17)**
10:25;23:22;24:2;
27:20;41:7;44:2;
58:14;61:19;68:12;
69:16,19,21;76:17;
77:2;78:10;86:21;
87:19

**concession (1)**
73:5

**concessions (3)**
14:16,17;72:22

**conclude (5)**
59:3,6;70:6;82:15;
84:12

**concluded (7)**
64:15;72:10;74:5,
22;77:5;82:4;97:22

**concludes (2)**
77:7;85:18

**concluding (1)**
71:2

**conclusion (6)**
14:11;18:12,14;
40:10;42:7;59:10

**conclusions (3)**
27:15;28:10;40:22

**conclusory (1)**
18:9

**condition (4)**
13:7,11;45:2;82:11

**conditioned (1)**
57:21

**conditions (2)**
68:8;82:25

**Conduct (3)**
39:7;67:15;86:19

**conducted (1)**
22:17

**confidence (1)**
43:25

**confirm (9)**
56:8,9;60:1;64:15;
68:6;71:7;85:9,22;
96:8

**confirmable (7)**
13:9;14:23;36:17,
22;73:8;76:25;91:6

**confirmation (46)**
6:7,16,17,20;7:7;
19:14,18;21:14;
23:13;25:21;26:2;
38:22;40:9;41:3,6;
42:2,10,12;44:4;45:7,

7;46:16;49:2;57:17;
62:16;63:10,25;
64:24;66:14,18;67:4;
68:4,25;69:11;70:15,
25;71:5;75:10,16;
81:18;83:10;84:1;
85:21;93:23;94:12;
96:11

**confirmations (1)**
55:23

**confirmed (4)**
33:21;70:11;83:5,
14

**confirming (1)**
86:8

**conformed (1)**
62:25

**conformity (1)**
81:8

**confusion (1)**
65:22

**connection (14)**
30:4,5;32:21;38:20;
41:6,7;47:22;49:25;
52:14;63:9;77:13,14;
90:11,13

**consensual (4)**
44:19;46:12;47:15;
87:19

**consensually (3)**
16:1;70:16;79:5

**consent (6)**
15:6,14,21;69:5,6;
86:16

**consequences (1)**
17:20

**consequential (1)**
83:10

**consider (2)**
46:15;86:2

**consideration (1)**
37:22

**considerations (2)**
14:15,17

**considered (3)**
16:16;59:20;70:1

**considers (1)**
63:13

**consist (1)**
84:22

**consistent (10)**
38:6;44:15;45:19,
24;46:17;52:13;58:5,
8;76:11;82:13

**consistently (1)**
12:21

**consists (2)**
36:7;84:21

**constituent (2)**
45:20;74:25

**constituents (1)**
37:14

**constitute (2)**

37:11;65:2

**constitutes (2)**
12:4;62:8

**construe (1)**
75:22

**consultation (1)**
23:2

**consummate (1)**
89:24

**consummated (2)**
24:10;83:7

**consummation (1)**
38:23

**contain (3)**
71:15,16;72:10

**contained (1)**
40:20

**contemplate (1)**
40:24

**contemplated (6)**
68:14;69:18;73:6,
14;82:19,22

**contemplates (1)**
74:17

**content (3)**
12:2;40:25;42:4

**contention (4)**
17:2;76:22;79:20;
84:16

**contentions (2)**
11:14;19:1

**contents (4)**
71:12;72:8;74:8;
75:4

**context (2)**
48:5;77:19

**contingent (1)**
84:9

**continue (6)**
12:22;13:10;15:25;
68:20;85:25;95:18

**continued (1)**
15:23

**continues (2)**
52:19;55:19

**continuing (1)**
62:1

**contract (6)**
53:21;54:25;55:5,
14;61:1;64:14

**contracts (2)**
55:11;74:11

**contractual (1)**
55:25

**contribute (1)**
92:1

**contribution (5)**
88:12;90:17;91:2,5;
94:9

**contributions (2)**
37:17;94:2

**control (2)**
15:18;94:6

**Controversy (1)**
71:21

**convene (1)**
69:23

**convenience (2)**
30:18;80:15

**conversations (3)**
24:24;25:9;35:21

**convincing (1)**
18:2

**cooperative (1)**
96:13

**copy (1)**
22:6

**Corp (1)**
75:13

**corporation (2)**
84:7,8

**corrected (1)**
66:22

**correctly (2)**
11:4;50:20

**correlate (1)**
72:5

**cost (1)**
92:14

**costs (5)**
32:20;73:11;77:13;
79:19;90:13

**council (1)**
64:16

**counsel (10)**
6:18;7:3;13:23;
23:2;24:1;31:24,25;
46:13;51:6;90:9

**couple (7)**
21:18;43:21;46:8;
47:7;54:3;63:17;
92:19

**coupled (1)**
55:24

**course (4)**
10:24;11:22;22:17;
59:4

**COURT (163)**
6:2,25;7:19,22,24;
8:16,18,21,23;9:1,3;
10:9,11,16,22;11:13,
18,21;12:5,13;13:24,
25;15:3,21,23;17:10;
18:24;19:6,13,22;
20:9,15;21:1,11,22,
24;22:3;26:25;27:3,
14,21;28:6,12,18,21,
24;29:2;31:10;36:21,
22;37:7;39:2;40:7,11,
15;41:12,20;43:1,3;
44:4,23;45:6,12;46:8;
47:2,12,18,25;48:7,
16;49:17,21,23;
50:11;51:14,16;
52:11;53:1,3,10,23;
54:7,11,14,16,21;

55:9;56:13,16,24;
57:3,11;59:1,10,17;
60:2,12;61:12,21;
62:4,22,25;63:11,20,
23;64:20;65:12;66:2,
4,12,23;67:1,7;68:2;
71:7;72:3;77:7,15,24;
78:3;82:7;85:8,9,12,
17,22;86:10;87:5,9,
13,16;88:5,7,15,22;
89:7,13;90:1,6,14,20,
24;91:12;92:17,21;
93:4,8,12,20,22;94:5,
5,15,17,22,24;95:1,8;
96:5,10,21,22;97:1
**court- (1)**
23:2
**courtesy (1)**
86:17
**courts (5)**
59:25;60:7;75:21;
76:8;83:13
**Court's (11)**
12:6;18:10,13;
19:10;29:13;41:5;
47:6;53:15,16;85:19;
89:3
**cover (3)**
61:16;86:25;89:19
**covered (3)**
11:15;19:2;87:4
**covers (1)**
61:12
**COVID (4)**
14:21,24;15:1,3
**crack (1)**
45:12
**created (2)**
26:20;30:19
**creates (1)**
21:9
**credibly (1)**
85:15
**credit (1)**
79:24
**creditor (3)**
39:20;55:13;68:5
**creditors (14)**
29:17;30:17;32:14,
16,19;39:21;71:19,
21;73:19;80:14,16,
25;84:23;85:6
**criminal (1)**
39:8
**cross (1)**
41:19
**cross- (1)**
41:23
**cross-examination (1)**
20:6
**crystallize (1)**
43:17
**culminate (1)**

82:18
**culminated (1)**
83:4
**culmination (1)**
16:6
**current (10)**
11:5;57:25;59:19;
61:7;65:20;69:3;
74:16;95:20,23;96:8
**currently (4)**
25:14;36:20,21;
49:4
**cusp (2)**
97:14,20

**D**

**damages (2)**
9:12,17
**date (17)**
24:20;25:20;31:9;
38:20,20;40:4,6;
43:23;48:1,1,3;51:20,
24;66:9;93:15,19,21
**dated (2)**
13:3;29:14
**dates (1)**
77:25
**day (6)**
6:2;8:5;10:20;61:4;
86:14,18
**days (6)**
10:2,6;58:1;61:8;
69:5,7
**DCAS (1)**
5:3
**deadline (2)**
12:9;51:25
**deal (5)**
6:14;20:6;48:23;
91:24;92:23
**deal-breaker (1)**
93:7
**dealings (2)**
22:25;23:15
**deals (1)**
92:22
**dealt (1)**
47:22
**debtor (110)**
6:6;8:14;9:6,11,12,
15;10:9,10,11,12;
12:7,10,16,20,21,23,
24;13:2,3,5,6,7,11,13,
15,16,18,20;14:6,16,
17,21,25;15:7,17,19;
16:8,11,22,24;18:8,
16,22;19:7;22:16,19,
21;23:1,15,16,17,21,
25;24:17,19;32:13;
34:22;39:18;51:20,
23;52:5,20;53:22;
54:1;55:5,14,19,19;

61:22,22;63:24;64:2;
65:22;66:18;68:19,
23;69:2;70:19;73:24;
74:16;76:16,19,22,24,
25;77:4,8,12;78:17,
22;79:1,7,9,10,11,13,
14,19;81:20,21;85:11,
25;86:3,7;89:6,9,10,
10;91:3;97:11
**debtor-in-possession (1)**
55:12
**debtors (3)**
24:3;31:25;84:18
**debtor's (20)**
7:20;11:6;12:11,18;
13:22;14:4;16:4;22:9;
23:4,10,23,24;24:2,6;
31:1;36:23;51:1,17;
54:8;77:2
**December (2)**
15:22,24
**decide (2)**
45:16;60:16
**decided (1)**
50:20
**decision (5)**
11:11,11;16:17;
17:12;77:7
**decisions (1)**
50:20
**declaration (1)**
12:16
**dedication (1)**
73:25
**deem (1)**
89:11
**deemed (16)**
30:11,20;33:8,11,
20;35:17;51:22;52:3;
53:16;54:12,12;
62:20;78:23;80:11,
17;83:23
**deferred (1)**
45:8
**deficiencies (2)**
24:3,4
**defined (1)**
76:8
**definitely (1)**
68:25
**definitively (1)**
46:6
**delaying (1)**
25:21
**deliberate (1)**
17:18
**delivered (3)**
41:2;42:1;80:8
**demonstrate (4)**
18:2;21:13;75:12;
80:5
**demonstrated (1)**
73:9

**demonstrating (2)**
28:16;85:4
**denial (2)**
19:9,10
**denies (1)**
19:6
**dense (1)**
14:25
**deny (1)**
13:25
**DEPARTMENT (3)**
4:11;22:24;53:8
**deposit (2)**
24:12,18
**describe (2)**
26:1;28:7
**described (11)**
32:10;33:5;43:13,
14;50:22;57:12;
64:22;70:7;85:23,24;
86:6
**describes (1)**
58:17
**description (1)**
70:21
**descriptions (1)**
64:11
**designated (1)**
23:1
**designed (1)**
59:7
**desire (1)**
28:16
**detail (1)**
43:18
**determination (1)**
24:7
**determinations (1)**
82:8
**determined (4)**
24:8;39:2;81:12;
85:12
**devastated (1)**
9:22
**develop (8)**
13:8;14:23;15:7,17;
20:11;49:10;76:25;
77:8
**developed (1)**
18:25
**development (2)**
23:4;24:21
**developments (2)**
11:6;18:17
**device (1)**
28:21
**dictate (1)**
20:16
**different (10)**
34:5;64:12;71:23,
24;80:23,23;88:25;
89:9,17;92:15
**differing (1)**

88:1
**Director (2)**
38:2;78:6
**directors (2)**
38:14;73:17
**disagreement (1)**
87:21
**disallowed (1)**
62:20
**disappointment (1)**
10:25
**disbursements (1)**
94:6
**disclose (1)**
78:5
**disclosed (1)**
64:7
**disclosure (15)**
7:8;21:16,19,25;
22:4,6,23;23:5,9;
24:22;29:15;49:24;
52:15;63:14;70:15
**disclosure-statement (1)**
85:13
**discretion (2)**
17:9;74:24
**discriminate (5)**
33:13,22;36:8;
80:19;84:24
**discrimination (2)**
36:15;85:5
**discuss (3)**
48:14;58:20;69:23
**discussed (5)**
20:13;34:25;56:19;
62:10;75:19
**discussing (2)**
48:5;68:21
**discussion (5)**
21:10;40:23;49:3;
70:17;77:21
**discussions (7)**
15:25;16:7;67:14;
68:13,17;87:18,23
**disposition (1)**
17:14
**dispositions (1)**
65:16
**dispute (3)**
16:22;49:13;84:16
**disputed (1)**
17:25
**disputes (2)**
16:12;44:21
**disrupt (1)**
95:18
**dissimilar (4)**
33:14;36:5;80:20;
84:19
**distinguish (1)**
91:16
**distinguishable (1)**
88:17

19-12280-dsj    Doc 214    Filed 09/21/23    Entered 09/22/23 10:08:14    Main Document
In the Matter of: EAST BROADWAY MALL, INC.                    Pg 105 of 118

September 12, 2023

**distress (1)**
16:4
**distressing (1)**
14:5
**distributed (1)**
38:25
**distribution (4)**
32:17;37:21,23;
92:3
**distributions (6)**
25:6;34:18;38:1;
73:4,12;80:24
**District (4)**
16:17;53:19;55:9,9
**Ditech (1)**
75:13
**docket (15)**
15:8;19:17;20:4;
22:5,7;26:24;29:6,14,
18;30:2;31:15;39:14;
43:9;69:25;86:11
**docketed (3)**
12:15;13:22;15:13
**docketing (1)**
86:14
**document (3)**
12:14;30:2;52:12
**documentation (2)**
86:10,20
**documents (3)**
22:9;29:15;86:14
**dollars (1)**
9:14
**done (13)**
61:2,3;75:23;77:1;
86:7;88:14,15;90:7,9,
11;95:2,8;97:2
**door (1)**
96:16
**doubt (1)**
39:4
**down (6)**
6:13;45:8;63:15;
68:7;70:6;96:14
**draft (1)**
63:5
**drafted (1)**
80:12
**Drawing (1)**
17:12
**drifted (1)**
88:22
**driver (1)**
64:23
**drop (2)**
8:24;13:12
**dual (1)**
60:1
**due (2)**
45:19;46:17
**duration (1)**
77:3
**during (3)**

19:18;24:2;81:18
**duties (1)**
43:18

**E**

**earlier (11)**
42:19,24;52:2;66:9;
70:17;74:14,23;
76:23;80:8;81:17;
89:16
**early (1)**
46:4
**earnings (1)**
74:1
**easier (1)**
92:12
**easily (1)**
47:11
**East (25)**
6:4;12:12,25;25:1,
2,11;34:16;35:22;
51:4,15;52:8,22,25;
54:17;56:6,9;57:5;
61:24;65:15;68:5;
73:6;74:16,19;77:6;
89:19
**Eastern (1)**
16:17
**ECF (6)**
12:15,17,18;22:5;
29:14;39:14
**edition (1)**
75:24
**EDNY (4)**
16:18;17:10;18:6;
76:13
**effect (5)**
39:7;48:3;52:3;
53:17;61:13
**effective (8)**
25:20;38:20;43:23;
44:9;48:1,3;55:22;
61:11
**effectively (1)**
18:23
**effectiveness (4)**
45:2;57:21;82:12,
25
**effectuated (1)**
59:7
**efforts (1)**
97:5
**eg (1)**
17:10
**either (14)**
20:2;27:23;49:6;
56:19;60:19,23;69:5;
78:15;79:22;86:21,
24;87:22;88:4;96:5
**elaborate (4)**
17:24;18:12;83:21;
91:12

**elected (3)**
30:17;33:10;80:13
**election (1)**
24:11
**element (2)**
45:20;74:12
**elements (2)**
22:22;37:19
**elephant (1)**
47:9
**elicit (1)**
19:18
**eliminated (1)**
16:12
**else (14)**
6:21;7:25;57:11;
61:15;62:2;63:8;
66:23;67:5;69:20,22;
86:1;95:9;97:2,9
**elsewhere (1)**
53:20
**embedded (1)**
40:22
**emerge (1)**
15:18
**emphasizes (1)**
14:5
**employed (1)**
97:16
**employee (1)**
70:3
**employees (2)**
22:15;38:14
**encourage (1)**
96:12
**end (5)**
10:20;29:25;64:11;
69:24;91:19
**enforcement (1)**
39:8
**engage (1)**
20:6
**engaged (2)**
14:12;59:20
**enough (1)**
45:25
**ensure (4)**
16:11;28:4;59:23;
94:8
**entails (1)**
92:23
**enter (3)**
16:24;44:15;74:19
**entered (3)**
12:13;14:8;15:24
**entire (1)**
69:25
**entities (1)**
60:16
**entitled (3)**
18:22;33:1;34:8
**entitlement (2)**
81:2;90:23

**entitlements (2)**
80:24,24
**entity (2)**
73:18;96:22
**entries (1)**
29:18
**entry (2)**
18:10;31:20
**EnviroSolutions (1)**
75:25
**envisioned (3)**
60:1,8;87:17
**envisioning (1)**
45:1
**equally (1)**
35:4
**equitable (5)**
33:19,23;36:16;
81:4;85:6
**equity (2)**
73:19;79:7
**equivalent (3)**
49:7;62:9;79:18
**error (1)**
74:21
**escrow (1)**
24:13
**ESQ (4)**
4:7,8,17,25
**ESQS (1)**
4:20
**essential (1)**
37:10
**Essentially (4)**
12:21;58:6;79:7;
96:7
**establish (9)**
28:13;29:6,23;31:4,
11;33:3,22;36:16;
41:13
**established (3)**
28:9;77:17;90:24
**establishes (1)**
35:8
**establishing (1)**
12:9
**estate (5)**
31:2,9;50:18;73:11;
82:2
**estates (1)**
94:7
**estate's (1)**
35:23
**et (1)**
79:19
**evade (1)**
94:12
**even (8)**
10:19;14:10;15:22;
48:19;67:22;79:19;
83:5;85:10
**evenly (1)**
26:16

**event (4)**
16:11;20:20;58:3;
82:22
**events (1)**
65:7
**eventually (1)**
54:2
**everybody (1)**
19:13
**everybody's (1)**
67:16
**everyone (8)**
6:2,9,10;7:15,25;
12:2;58:22;86:16
**everyone's (1)**
95:2
**evidence (5)**
18:2;35:8;36:16;
40:22;75:13
**evidentiarily (1)**
42:6
**evidentiary (3)**
20:11;41:13;42:1
**exact (1)**
92:5
**exactly (9)**
16:19;28:24;43:17;
51:2;55:3;58:19;
64:23;65:10;88:8
**examine (1)**
41:24
**example (1)**
15:12
**exceed (1)**
75:6
**except (4)**
34:4;38:25;70:14;
77:18
**exceptional (1)**
17:4
**exceptions (1)**
72:13
**exchange (1)**
14:16
**exculpate (2)**
37:6,19
**exculpated (2)**
37:16;38:4
**exculpation (20)**
7:12;37:9,12;38:3,
10;47:8,12,21;48:4,
17,22,25;49:7;50:1,8,
13,18,23;62:8;70:17
**exculpation-like (1)**
63:16
**excuse (4)**
71:15;80:1;89:1,9
**execution (1)**
40:9
**executory (6)**
53:20;54:24;55:5,
11,14;74:11
**exercise (2)**

19-12280-dsj    Doc 214    Filed 09/21/23    Entered 09/22/23 10:08:14    Main Document
In the Matter of: EAST BROADWAY MALL, INC. Pg 106 of 118

September 12, 2023

37:11;74:24

**Exhibit (1)**
43:9

**exhibits (2)**
31:15;43:7

**exist (5)**
26:18;28:3;46:19,
20;92:23

**existence (1)**
27:7

**existing (8)**
38:9;54:18,24;
56:20,20;95:17;96:3,
4

**exists (1)**
25:20

**expand (1)**
47:17

**expect (1)**
46:20

**expected (2)**
57:23,24

**expecting (1)**
44:21

**expects (1)**
58:22

**expenditures (1)**
94:6

**expense (6)**
31:9;40:2,4,5,6;
77:24

**expenses (21)**
25:6;26:17;31:8;
32:21;35:5,6;39:17;
40:3,8;77:13,23;78:2;
79:19;82:2;89:19,23,
25,25;91:25;92:24;
93:18

**expire (1)**
13:20

**explained (5)**
9:9;65:17;72:2;
77:1,5

**explanation (1)**
55:18

**explicit (1)**
40:25

**express (2)**
66:17;69:5

**expressing (1)**
65:22

**expressly (1)**
19:2

**extended (1)**
76:24

**extension (4)**
13:12,21;15:14,15

**extensions (4)**
15:6,10,21;51:24

**extensive (1)**
23:5

**extensively (2)**
34:24;47:14

**extent (20)**
27:17,25;28:1;34:4;
35:22,25;38:11;42:6,
6,8;44:18;70:12,22;
74:18;79:15;84:8;
91:23;92:11;93:15;
96:3

**extinguished (1)**
74:18

**extra (1)**
86:18

**F**

**F2d (3)**
17:7,17;18:5

**F3d (2)**
17:5,21

**facility (6)**
15:2;16:14;82:5;
97:12,15,18

**fact (12)**
10:18;14:9;18:8,13;
19:1;20:4;36:2;60:4;
74:25;79:16;85:4;
86:10

**facts (4)**
14:5;26:1;88:17,24

**factual (13)**
26:18;27:8,10,17,
24;40:20,22,25;41:3;
42:5,11;70:4,5

**fail (1)**
75:7

**failed (5)**
14:23;17:16;76:17,
19;86:25

**fails (1)**
14:1

**failure (1)**
24:3

**fair (11)**
33:18,23;36:15;
43:24;76:19,19;81:4;
85:6;92:12;95:3,4

**fairly (2)**
33:23;61:2

**faith (8)**
24:5;30:24,25;
37:13,20;76:7,8;77:9

**fall (2)**
80:22;92:24

**falling (1)**
90:12

**familiar (5)**
22:25;23:8,13;
58:18;65:15

**far (3)**
9:15;56:19;95:24

**fashion (1)**
16:14

**favor (1)**
30:10

**favorable (3)**
72:20,25;73:1

**favored (1)**
17:3

**feasibility (4)**
57:19;58:6;60:6,11

**feasible (2)**
34:21;59:21

**February (1)**
16:2

**Federal (1)**
12:7

**fee (1)**
90:25

**feed's (1)**
8:19

**feel (2)**
10:7;47:19

**feelings (1)**
9:20

**fees (15)**
7:19;31:9;32:20;
35:13;39:17,19;40:2,
8;42:21;79:18;83:18;
89:3,11;91:2;94:7

**felt (1)**
9:7

**few (5)**
19:17;22:11;44:9;
68:6;71:8

**fiduciaries (1)**
50:19

**fifteen (2)**
58:1;61:8

**Fifth (1)**
73:3

**fight (1)**
46:5

**figure (3)**
56:25;69:19;86:22

**file (2)**
19:17;40:4

**filed (19)**
6:6;7:12;11:10,10;
14:20;16:22;21:15;
22:5,9;29:20;30:2,25;
31:15;40:1;43:6;
49:25;56:13,15;70:13

**filing (1)**
37:3

**final (9)**
18:24;21:17;23:20;
39:2;56:11,12;65:5;
95:15,16

**finalization (2)**
78:8;82:18

**finalize (1)**
32:3

**finalized (1)**
68:12

**Finally (3)**
15:20;16:13;95:1

**financial (10)**

22:20,25;23:15;
38:15;56:10;73:5;
81:20,24;82:8,9

**financing (3)**
15:7;77:3;81:25

**find (4)**
24:5;76:15,21;89:8

**finding (3)**
82:14;89:4;91:5

**findings (1)**
88:18

**finds (1)**
82:7

**fine (14)**
11:13,23;20:12;
28:6;47:1;49:16;
56:21,24;57:1,14;
59:17;68:2;73:2;
87:14

**finish (2)**
19:23;69:18

**firm (3)**
89:25;90:7;94:2

**firm's (2)**
7:19;42:21

**first (18)**
6:15,24;7:6;8:2;
18:21;49:14;59:2;
68:9;71:4,14,17;72:9,
12;75:10,19;81:23;
91:8;92:20

**fits (1)**
48:4

**fix (1)**
46:23

**flagged (1)**
49:6

**Fleming (1)**
18:4

**floor (1)**
61:17

**focus (1)**
44:25

**focused (1)**
81:17

**focusing (2)**
70:5;75:22

**followed (1)**
81:19

**following (5)**
12:4;37:13;38:9;
77:8;86:14

**follows (1)**
68:8

**forbearances (1)**
15:10

**forbidden (2)**
30:24;76:7

**force (1)**
52:19

**foreshadowed (1)**
40:18

**forget (1)**

92:5

**form (15)**
7:14;14:13;18:18;
22:6;31:22;43:17;
44:13;45:3;67:21,23;
69:20;73:20;82:25;
86:11,12

**formal (1)**
15:21

**formulated (1)**
37:13

**forth (18)**
14:3;22:13;26:9;
32:7;33:4,6;34:9,14,
16,18;35:25;39:13;
42:24;74:7;75:10,16;
82:16;83:20

**forthcoming (1)**
70:9

**forths (1)**
50:10

**forward (4)**
24:6;46:16;82:6;
92:14

**foundation (1)**
28:16

**four (2)**
24:9;30:3

**fourth (6)**
7:7;21:14,16;63:1;
70:8;72:18

**frame (3)**
28:13;61:4,6

**framed (1)**
19:1

**framework (3)**
29:2;71:2,4

**framing (1)**
40:23

**fraud (4)**
14:13;18:3,9;39:1

**fraudulently (1)**
18:21

**free (1)**
21:2

**front (1)**
6:20

**fruit (1)**
87:23

**fruition (1)**
60:9

**fulfill (1)**
56:10

**full (4)**
25:13;33:16;35:7;
81:1

**fullest (1)**
38:11

**fully (7)**
11:2;38:2;56:10,17,
17;58:22;65:15

**functioning (1)**
46:18

**fund (1)**
24:14
**fundamental (1)**
18:12
**funder (1)**
10:4
**funding (10)**
23:24;24:1;25:5;
34:15;73:4,10,11;
79:5;90:8,23
**fungible (2)**
92:10,16
**Further (33)**
6:14,19;13:8,8;
15:10,11,12,14,15;
17:8;21:10;25:4,17,
18;32:18;34:24;45:1;
49:10;50:14;51:24;
67:14;70:9,19;75:9;
79:20;80:21,25;
81:20;82:20;84:24;
85:2;87:23;91:14
**future (2)**
49:3;74:1

## G

**gave (1)**
54:23
**general (3)**
58:21;71:4;90:25
**generally (4)**
17:3;52:13;71:10;
75:11
**generated (3)**
18:18,19;97:17
**gets (2)**
79:3;94:20
**given (11)**
10:18;23:17;25:4;
39:19;40:13;54:9,9;
59:5;80:14;92:16;
95:19
**glad (2)**
50:21;97:13
**GlassRatner (2)**
31:16;43:12
**global (2)**
88:18;89:2
**goes (6)**
9:15;20:2;55:22;
61:1;69:18;96:15
**Good (15)**
6:2;8:11;24:5;
28:18,21;30:24,25;
37:13,20;46:21;62:3;
66:25;76:6,7;77:9
**govern (1)**
84:6
**governing (5)**
13:1;29:10;37:25;
71:1,11
**governmental (9)**

37:3;59:5;60:3,4,
15;78:11;82:25;83:8,
15
**governs (2)**
71:5,15
**Grace (1)**
12:16
**grant (1)**
18:14
**granted (3)**
6:16;17:3,9
**great (5)**
27:3;66:23;67:1;
87:5;91:18
**greater (1)**
79:15
**Green (1)**
4:13
**gross (1)**
39:1
**Group (22)**
24:7;25:1,2,11;
31:16;34:16;35:22;
43:12;51:4,15;52:8,
23,25;54:17;56:6,9;
57:5;61:24;73:6;
74:19;77:6;89:19
**grouped (1)**
71:24
**grouping (1)**
84:21
**groupings (1)**
72:4
**groups (1)**
80:22
**guarantee (1)**
65:6
**Guard (1)**
74:21
**guess (20)**
20:18;21:20;27:8,8;
28:7;40:11;42:17,22;
43:22;45:4,4,23;48:9;
51:18;69:7;78:22;
87:21;90:16;91:21;
94:13
**gun (1)**
10:7

## H

**hairs (1)**
53:14
**handle (3)**
67:17;69:23;87:13
**hang (2)**
8:18;51:14
**hanging (2)**
28:22;88:2
**happen (2)**
65:6;68:19
**happened (1)**
59:22

**happening (3)**
51:2;55:17;56:3
**happens (1)**
86:16
**happy (6)**
19:19;27:1;42:16;
59:1;61:19;97:20
**hard (1)**
19:22
**head (1)**
10:7
**hear (6)**
6:18;46:10;57:4;
58:14;59:1;67:20
**heard (10)**
11:24;12:1;14:21;
53:9;56:4;61:24;62:5;
63:25;64:3;93:24
**hearing (34)**
7:7;10:16;11:4;
16:16;19:14,18;
25:14,15;41:3,14,17;
42:2;46:14;49:24;
59:2;60:21,22,24,25;
61:5;63:20;64:8,17,
18;65:25;66:5;67:10;
69:20;81:18;83:2;
88:10,14;90:2;97:6
**hearings (8)**
25:17;57:24;58:12,
13,23,24;65:2,3
**heart (2)**
20:2,3
**heavier (1)**
17:16
**held (5)**
24:13;30:6;51:20;
55:5;81:7
**help (2)**
96:7,19
**helpful (6)**
21:8;29:2;40:23;
54:22;55:2,18
**herein (1)**
38:13
**Here's (2)**
46:9;58:8
**herself (1)**
68:15
**Hey (1)**
8:18
**high (1)**
82:16
**highest (2)**
24:9;77:6
**highlighted (1)**
12:19
**highlighting (1)**
29:4
**highly (1)**
83:9
**himself (1)**
68:15

**history (3)**
23:14;51:22;83:2
**hold (2)**
7:25;79:9
**holder (12)**
32:9,12,23;33:1;
34:4;38:18;71:18;
78:15,17,22;79:1,7
**holders (5)**
31:2;34:1;73:19;
80:22;81:6
**holding (4)**
17:23;55:10;73:22;
75:13
**holdings (1)**
85:20
**holds (1)**
53:23
**honest (1)**
31:1
**honestly (1)**
94:4
**Honor (91)**
6:23;7:2,5;8:12;
9:20;19:12,16,19;
20:1,3,7,14,21,25;
21:6,12,17;22:2,2,8;
25:22;27:13,18;
28:11,15;29:1,4,25;
30:14,17,21;32:7;
35:16;36:3;37:5,8;
40:10,14;41:4,11;
42:14,15;43:7,19;
44:6,8,14,20,22;45:5;
46:3;47:1,4;49:16,20;
50:5;51:5;52:7;53:6,
12;54:13;58:11,21;
59:9,14;61:7,18;
62:11;63:4,7,19,22;
65:10;67:6,18,24;
87:2,7;88:15;89:11,
15;90:4,18;91:10,23;
93:1,16;94:16,19,25;
95:6
**Honor's (1)**
22:6
**Hope (64)**
4:3;5:4,5,6;6:8,18;
7:4;9:25;10:1;12:10;
13:17,23;14:12;19:7,
18;20:22;22:16,19,
25;23:6,17;24:1,5;
25:1;26:6,15;29:12,
21;30:5,9,13,15;
31:20;35:3;37:2;38:8,
13;39:14,16,20,23,24;
40:1;56:22;65:4;
66:19;67:5,9;68:5,13;
70:3;72:22;73:9;
75:12;77:10,25;
79:17;81:14,23;
83:23;91:4,24;92:3,6
**hopeful (6)**

60:17,18,23;65:6;
69:9;97:13
**Hopefully (5)**
7:15;16:14;63:6;
67:21,23
**Hope's (20)**
7:7;14:3;21:14,16;
22:10,15,25;23:3,12,
14,22;24:12,15;
27:10;31:14;37:11;
39:12,13;42:9;78:19
**hoping (1)**
32:3
**hundred (4)**
11:19;31:24;48:13;
50:6
**hypothetical (1)**
33:1

## I

**idea (1)**
20:18
**identical (1)**
55:3
**identified (4)**
18:13;75:5;84:11;
91:20
**identifies (3)**
18:8;31:15;78:7
**identify (5)**
14:6;44:11;46:19;
57:7;82:23
**identifying (1)**
95:24
**identity (2)**
43:11;78:5
**iffy (1)**
8:19
**imminently (1)**
32:4
**impact (4)**
6:16,17;39:18,19
**impacted (2)**
14:24;15:1
**impair (1)**
74:10
**impaired (12)**
32:8;34:8,9;72:15,
16;78:14,21;79:23;
80:2;81:11,12,15
**impediment (6)**
44:4;58:9,10,14,25;
83:10
**impediments (1)**
83:25
**impermissible (1)**
75:5
**implement (3)**
34:14;74:2;89:24
**implementation (8)**
23:6;24:23;26:14;
34:21;37:18;47:23;

19-12280-dsj    Doc 214    Filed 09/21/23    Entered 09/22/23 10:08:14    Main Document
Pg 108 of 118
In the Matter of: EAST BROADWAY MALL, INC.

September 12, 2023

73:4,10
**implicated (1)**
78:12
**implicit (2)**
55:15;70:24
**important (3)**
94:3,5;97:12
**imposed (2)**
13:16;16:1
**inadvertent (1)**
74:21
**inapplicable (2)**
32:6;78:10
**inappropriate (1)**
38:4
**incapable (1)**
24:19
**incident (1)**
77:14
**include (1)**
80:12
**included (3)**
42:3;43:10;50:14
**includes (3)**
7:13;31:8;72:7
**including (25)**
13:22;15:6;18:17;
22:10;23:4,20,23;
24:23;29:9;32:21;
34:1,15;37:17;43:11;
46:22;69:2;73:4,10;
74:6;77:2;80:3;81:13,
15,24;97:17
**income (1)**
74:1
**inconsistent (1)**
76:21
**incorporate (1)**
67:20
**incorporated (2)**
42:11;74:14
**incorporating (1)**
19:9
**incorrect (1)**
17:21
**increased (1)**
32:20
**incur (1)**
91:24
**incurred (2)**
89:25;91:2
**indeed (1)**
96:9
**indemnity (1)**
48:9
**independent (1)**
55:1
**indiscernible (11)**
27:15;28:20;46:7;
47:11,19;49:19;
54:11;57:2;60:13;
91:11;92:21
**individual (2)**

**indoor (1)**
15:2
**induced (2)**
16:24;18:21
**inducement (1)**
14:14
**inference (1)**
14:10
**informal (1)**
15:23
**informally (1)**
15:25
**information (15)**
20:18;22:14;23:11;
24:19,24;25:9,17;
35:20;40:20;51:8;
66:9,13;95:23;96:12,
18
**informed (1)**
15:20
**infusion (1)**
73:8
**infusions (1)**
81:25
**initiated (1)**
23:16
**insider (1)**
81:13
**insisted (2)**
10:6;13:19
**insofar (1)**
36:12
**instead (2)**
17:14;92:4
**instructed (1)**
95:23
**intend (2)**
41:19;94:11
**intent (1)**
28:16
**intently (1)**
47:14
**interaction (1)**
61:14
**interest (28)**
12:11;32:8,9,11,24,
25;33:3,11,17;35:24;
36:4;37:4;38:19;
45:20;46:19;51:19;
53:25;54:8;55:19,20,
20;69:1;74:15;75:17;
78:15;79:7,10,16
**interested (1)**
23:20
**interestholders (3)**
30:20;78:24;85:7
**interests (14)**
33:14;34:25;36:7;
53:22;71:16,22;
72:12;73:18;78:14,
19,22;80:16,20;84:22
**International (1)**

17:5
**interpret (1)**
76:9
**interpreted (1)**
71:10
**interrupted (1)**
40:19
**interrupting (1)**
87:11
**into (16)**
31:20;42:11;44:15;
47:15;50:8,15,25;
52:1;53:17;62:24;
67:20;71:23;73:22;
74:19;89:8;96:14
**inure (1)**
79:14
**invaluable (1)**
73:6
**invite (1)**
56:4
**involved (4)**
38:17;58:22;84:16,
19
**involvement (2)**
23:3,10
**involving (3)**
49:4;70:18;86:4
**issuance (1)**
73:14
**issue (31)**
7:10,17;27:12,17;
39:10;42:20,21;
43:23;46:5,10,12,15;
47:21;48:17,21,22;
49:6;53:9;56:19;
57:15;60:11;62:12,
24;63:2;87:12;88:2,7;
90:17;95:12;96:11,23
**issues (35)**
7:9,11;16:1;25:19;
41:11,15;44:7,10;
46:9,21;47:7;48:15,
22,25;49:10;56:7,18;
62:7,10;63:15,17,21;
68:21;70:7,15,18;
73:15;77:21;78:9;
85:23;86:1,4,5,6;
94:17
**items (2)**
21:8;43:19

**J**

**JAMES (2)**
4:7;7:2
**January (1)**
15:13
**JEROME (1)**
4:8
**Jersey (2)**
55:10;74:23
**Jones (1)**

6:2
**Judge (7)**
6:2;10:24;16:17;
45:23;56:5;57:9;62:3
**judges (1)**
55:1
**judgment (4)**
17:3;18:3,24;37:12
**judicial (2)**
22:8;45:16
**July (4)**
14:20;21:16;29:14;
76:1
**jump (3)**
26:25;27:1;67:12
**juncture (1)**
9:19
**June (3)**
12:13;13:3;14:9
**junior (3)**
33:17;36:13;85:2
**jurisdiction (2)**
39:3;78:11
**JUSTICE (1)**
4:11
**justifications (1)**
28:3
**justifies (2)**
18:25;91:19

**K**

**Kass (26)**
51:6;53:6,7,10,12;
54:13,15,19;58:17;
59:1,11,13,13,18;
60:17;64:12,20,25;
65:8,9,9,13;66:7,21;
83:12;95:21
**Kass' (2)**
9:10;55:18
**Keenan (36)**
8:1,4,11,16,17,18,
20,22,25;9:2,4;10:10,
14,17,22;11:8,16,19;
12:18,19;13:23;20:5,
13;61:23;64:1,2,4;
65:19;66:3,11,13,16,
20,25;70:19;96:7
**Keenan's (1)**
65:11
**keep (2)**
46:11;89:10
**keeps (1)**
8:23
**KELLY (1)**
5:4
**key (5)**
37:14;43:10;44:11,
16;45:24
**keys (1)**
73:7
**kicked (1)**

92:8
**kind (16)**
8:19;21:8,9,10;
26:1;28:1;29:3;42:22;
43:17;48:8,10,10;
52:1;89:15;91:6,24
**knowledge (6)**
22:14,18;23:11;
24:23;25:8;35:20
**known (1)**
48:25
**Koper (2)**
16:18,21

**L**

**lack (1)**
23:23
**land (2)**
46:14;64:10
**landlord (3)**
13:1,19;82:4
**LANE (2)**
4:2;7:3
**language (10)**
7:13;9:7;10:14,19;
38:9,10;44:3;63:2,6;
92:25
**large (1)**
27:25
**largely (1)**
14:2
**larger (1)**
92:3
**last (5)**
16:8;39:24;61:22;
88:10,23
**Latam (1)**
50:20
**late (3)**
62:20,20;66:10
**late-filed (1)**
62:18
**late-night (1)**
59:23
**later (6)**
18:16;19:24;78:1;
87:14,24;93:21
**law (12)**
17:23;30:24;36:2;
37:10,21,24;38:7;
52:18;53:8;55:24;
76:7;84:6
**laws (1)**
85:17
**lawsuit (1)**
83:6
**learned (1)**
51:8
**lease (41)**
12:11;16:1;23:7;
24:11,16;25:11,19;
26:14;32:16;34:17;

19-12280-dsj    Doc 214    Filed 09/21/23    Entered 09/22/23 10:08:14    Main Document
In the Matter of: EAST BROADWAY MALL, INC. Pg 109 of 118

September 12, 2023

35:24;36:2;37:18;
51:1,3,10,13,18;52:1,
4,7,9,12,18,21;53:16,
20;54:1,4,10,16,17,
18,20;55:23;56:14,20,
21;58:23;64:14;95:16
**leased (1)**
53:23
**leasehold (5)**
51:19;54:9;55:20;
74:15,20
**leases (1)**
12:24
**least (10)**
20:3;32:25;34:7;
52:13;53:17;57:24;
59:3;60:7;69:6;81:11
**leave (2)**
74:10;96:16
**leaves (1)**
8:3
**LEE (1)**
5:5
**left (1)**
54:8
**legal (26)**
14:2;23:2;26:18;
27:7,12,14,16,24,24;
28:8,10;40:3,21,22;
41:15;42:4,7,7,15;
56:2;57:4,6;71:1,4;
79:3;89:25
**legality (1)**
27:14
**legitimate (1)**
30:25
**lender (1)**
13:18
**length (1)**
75:19
**lengthy (3)**
16:7;83:15;97:6
**less (10)**
9:13;14:10;32:12,
14;72:19,25;73:1;
78:16,25;92:7
**lesser (1)**
80:24
**lets (2)**
45:10;46:18
**letters (1)**
96:16
**letting (1)**
28:6
**liability (3)**
38:18,25;39:4
**liable (1)**
37:23
**likelihood (3)**
59:6;76:10;82:17
**likely (5)**
24:10;34:23;60:16;
81:19;82:5

**likewise (2)**
12:3;70:23
**limit (2)**
39:4;55:11
**limited (5)**
37:15;50:18;64:4;
70:20;77:20
**line (5)**
20:22;65:17;69:18;
79:4,6
**lines (3)**
15:22;28:7;53:7
**liquidated (3)**
32:13;78:18;79:1
**liquidating (2)**
34:13;35:1
**liquidation (11)**
21:15;32:15,20;
33:2;34:20,22;79:11,
13,17;81:19,21
**list (5)**
62:8;75:3,16;84:14;
95:19;96:7
**litigation (2)**
13:13;38:5
**little (10)**
8:19;29:25;32:10;
43:17,18;58:18;
89:17;92:6,6,8
**LIU (1)**
4:20
**live (2)**
46:24;93:6
**LLC (14)**
24:8;25:1,2,11;
31:16;43:12;53:2;
54:17;55:7,8;73:6;
74:19;75:25;76:12
**LLP (1)**
4:2
**located (1)**
14:25
**logical (1)**
72:4
**lone (3)**
39:9,10;42:21
**long (8)**
10:23;14:19;19:25;
44:15;45:9;51:21;
84:14;94:24
**longer (2)**
60:5,11
**long-shot (1)**
91:7
**look (7)**
7:16;10:22;47:4;
48:16;87:20;90:6;
93:8
**looked (1)**
83:2
**looking (9)**
9:17;48:4,8;58:8;
66:13;80:4;91:7,9;

96:7
**looks (1)**
58:2
**loose (2)**
11:20;69:24
**lose (1)**
69:17
**lost (2)**
10:21;17:16
**lot (6)**
6:9;27:23;35:5;
40:20;90:7;95:2
**love (1)**
19:23
**lunch (2)**
97:7,8

**M**

**main (1)**
50:25
**maintain (2)**
15:18;94:6
**maintained (1)**
22:16
**major (2)**
83:3,4
**makes (11)**
6:14,19,24;7:5;8:9;
17:18;62:24;67:25;
68:9;87:17,25
**making (1)**
66:8
**MALATAK (1)**
4:8
**Mall (6)**
6:4;12:25,25;65:16;
68:5;74:17
**manager (1)**
22:24
**mandated (1)**
9:25
**mandatory (3)**
26:9;72:8;75:8
**manner (2)**
24:10;92:22
**many (2)**
7:9;67:21
**March (1)**
15:15
**Marine (1)**
50:19
**MARK (6)**
4:17;41:4;62:11;
87:7,10;93:5
**MARX (2)**
4:2;7:3
**material (4)**
18:10,20;45:25;
46:1
**materials (1)**
29:16
**matter (7)**

13:16;20:2,3;52:18;
55:24;57:4;96:16
**matters (7)**
6:5;20:20;23:12,13;
42:3;58:19;86:6
**MATTHEW (2)**
5:3;65:14
**maximizes (1)**
32:18
**maximizing (1)**
31:1
**may (22)**
8:24;15:15;21:17;
32:18;43:7;51:7;53:8;
56:13;57:7,14;58:17;
60:13,14;65:11,21;
68:1;69:10,19;74:8,9;
87:7;89:20
**maybe (14)**
28:7;58:19;63:16;
64:20;67:14,19,22;
68:7;86:17;90:21;
92:6,7,18,18
**mayor (2)**
61:2;64:11
**mayoral (5)**
25:15;60:21,22,25;
61:5,8;64:8,17,18;
65:5,25
**mayor's (1)**
61:1
**mean (16)**
9:17;10:17;27:8;
44:23;45:9;50:5;53:6;
58:11;63:11;76:9;
89:8;90:7;91:10,23;
92:22;96:14
**meaningful (2)**
14:15;72:22
**meaningfully (1)**
17:25
**means (8)**
26:13;30:24;34:14,
21;39:18;73:3,10;
76:7
**meantime (1)**
86:19
**mechanical (1)**
54:3
**mechanically (1)**
52:18
**mechanism (2)**
40:24;94:12
**mechanisms (2)**
82:1,20
**meet (1)**
14:1
**meeting (1)**
60:19
**meetings (2)**
25:12;51:12
**member (2)**
72:19,19

**members (4)**
33:9;56:8;80:11;
81:2
**memorialization (1)**
15:10
**memorialize (1)**
49:24
**memorializing (1)**
19:8
**mention (1)**
93:13
**mentioned (8)**
19:16;22:11;42:19,
22;62:13;64:9;89:16;
93:5
**merely (1)**
17:20
**merger (2)**
83:4,7
**meritorious (1)**
10:15
**merits (1)**
17:15
**messy (1)**
57:14
**met (8)**
73:20;75:18,20;
76:5,15,16;83:16;
94:9
**method (1)**
73:18
**microphone (2)**
8:22;9:5
**Midway (2)**
55:7,8
**might (3)**
28:3;58:7,7
**million (2)**
9:13;92:4
**mini (2)**
50:12,12
**minor (3)**
7:10,17;62:13
**minute (1)**
6:3
**misconduct (4)**
14:13;16:25;18:4;
39:1
**misrepresentation (2)**
14:13;18:4
**misrepresentations (1)**
16:25
**misspeaking (1)**
80:3
**misstate (1)**
51:7
**misstated (1)**
86:25
**mistaken (1)**
56:2
**MITTENDORF (2)**
4:2;7:3
**mixed (1)**

27:24
**modification (3)**
54:18,19,20
**modifications (1)**
70:9
**modified (3)**
50:15;52:8,22
**modify (2)**
69:22;82:21
**moment (2)**
8:1;49:1
**moments (2)**
19:17;22:11
**money (3)**
92:8,16;95:1
**moneyed (1)**
84:7
**money's (1)**
91:17
**month (1)**
57:25
**months (1)**
62:2
**more (20)**
15:21;18:9;19:3;
27:12,16;33:16;35:8;
42:4;43:17,18;45:10;
48:9;49:18;58:18;
69:8,12;74:20;81:1;
92:6,8
**Moreover (5)**
29:20;33:15;34:25;
36:11;39:21
**morning (5)**
8:11;41:9;42:25;
46:4;47:5
**most (4)**
24:10;65:15;79:9;
92:12
**motion (23)**
6:6,15,24;7:6;8:2,6,
13;9:16,19;10:13;
11:6,15,22,25;12:4;
13:25;14:4;16:22;
17:8;19:6,8,9;62:23
**movant (1)**
18:1
**move (2)**
7:6;96:2
**moves (2)**
12:7;87:18
**moving (4)**
67:13;82:6,16;89:1
**much (6)**
7:23;14:10;19:20;
21:20;32:25;64:12
**multiple (3)**
71:19;79:25;80:1
**must (15)**
18:1;71:15,16,21;
72:10,12,14,16,18;
73:3;76:3,6;81:7,7;
82:14

**mutual (1)**
48:12
**myself (1)**
49:12

## N

**nailed (1)**
45:8
**nailing (1)**
70:6
**name (1)**
6:25
**nature (2)**
42:4;43:15
**navigating (1)**
57:22
**nebulous (1)**
52:1
**necessarily (5)**
28:9;46:4;58:15;
59:23;93:3
**necessary (11)**
19:23;20:20;21:4;
40:7;49:3;60:2,3;
65:20,24;74:2,25
**necessities (1)**
72:5
**need (21)**
10:3;18:11;20:11;
21:3,10;48:20;49:9;
57:4;63:20;68:7;75:3;
81:20;86:22,25;
89:20;90:1,4;95:9;
96:1,11,21
**needed (4)**
6:3;18:14;20:24;
87:24
**needn't (1)**
50:18
**needs (7)**
65:5;87:21;88:13;
90:24;94:5;96:19,22
**negligence (1)**
39:2
**negotiate (3)**
24:16;48:11;82:21
**negotiated (9)**
13:20;14:14;34:24;
50:6;56:15;62:1;
91:24;92:11,15
**negotiating (2)**
13:17;47:22
**negotiation (2)**
37:18;38:21
**negotiations (2)**
15:23;37:14
**neither (1)**
38:13
**Nemaizer (3)**
17:6,12,17
**N-E-M-A-I-Z-E-R (1)**
17:6

**neutral (1)**
57:7
**Nevertheless (2)**
15:5;40:1
**New (63)**
4:5,15,21,23;8:22;
9:4;12:10,12,12;
16:17;17:21;18:4;
23:6,21;24:11,11,14,
16,16;25:11,19;26:14,
15;30:15;34:15,17;
35:4;36:2;37:18;
38:10;39:6,16;51:4,
13;52:8,9;53:3,4,7,8;
54:2,4,4,10,17;55:9,
24;56:1,4,6;64:6;
73:6,8;74:20,23;
75:25;77:7;81:25,25;
82:3;92:7;95:12,16
**Next (4)**
30:21;41:21;61:9;
86:22
**nice (6)**
6:9;8:4;53:11,12;
57:1;97:18
**Nickels (1)**
55:7
**N-I-C-K-E-L-S (1)**
55:7
**Nobody (2)**
41:22;46:15
**nonaccepting (1)**
32:23
**nonbankruptcy (2)**
36:1;84:6
**nondebtor (2)**
54:23;55:4
**none (2)**
18:20;30:17
**nonmoving (1)**
48:19
**nonnegotiable (1)**
9:25
**nontax (1)**
34:2
**nonvoting (1)**
73:14
**nor (2)**
37:2;38:13
**normally (1)**
64:10
**note (7)**
40:18;70:13,19;
72:21;74:12;83:12;
84:18
**noted (1)**
76:23
**notes (3)**
77:25;78:19;79:17
**notice (8)**
18:19,19;20:4;22:8;
46:13;62:17;69:1;
88:14

**noting (1)**
17:2
**notwithstanding (3)**
33:20;90:8,23
**null (1)**
58:3
**number (14)**
6:5;12:15,17,18;
13:4;22:5,7;29:14;
30:2;31:15;39:14;
43:9;83:13;92:4
**numbers (1)**
92:5
**NY (3)**
4:5,15,23
**NYC (1)**
5:3
**NYCRR (1)**
39:7

## O

**oath (1)**
22:13
**object (2)**
40:15;41:22
**objected (1)**
61:22
**objection (14)**
7:20;39:11,14;41:2;
50:1;64:2,5;66:17;
70:13,20,23;72:3;
86:15;89:2
**objections (10)**
21:18,25;39:25;
42:18;63:13;69:7;
70:12,14;76:17;88:10
**objective (1)**
96:13
**objectives (1)**
76:11
**objects (1)**
46:15
**obligations (4)**
24:14;25:3;56:11;
82:3
**observation (2)**
41:1;66:8
**observe (1)**
14:4
**observed (1)**
17:13
**obtain (1)**
17:15
**obtainable (1)**
61:10
**obtained (1)**
60:23
**obtaining (2)**
14:1;23:19
**obviously (5)**
9:22;10:17;27:22;
72:24;83:3

**occasions (1)**
77:1
**occur (5)**
16:2;57:24,25;
65:16;69:9
**occurred (1)**
90:8
**o'clock (1)**
97:7
**off (6)**
9:23;16:12;44:18;
59:15;61:2;88:22
**offer (3)**
21:12;24:8,9
**offered (3)**
24:17;40:17;41:6
**offering (1)**
28:2
**Office (29)**
4:12;7:11,17;31:23;
32:1;42:18;43:20,21;
44:1,1,2,19;45:15;
46:4;47:9;48:11,23;
50:1;61:1;63:13;
68:13,20;77:18;
83:19;86:4;90:22;
94:4;95:3;96:6
**officer (1)**
78:6
**officers (2)**
38:14;73:17
**office's (2)**
50:4;87:19
**offline (1)**
63:18
**offload (1)**
45:16
**often (3)**
48:23;71:18;78:19
**omission (1)**
38:19
**omitted (1)**
74:4
**omitting (1)**
71:8
**Once (4)**
60:24,25;86:7;97:1
**One (48)**
4:13;6:5;7:10,17;
16:8;17:16;28:22;
30:6,9,13,14,15;33:9;
34:7;36:25;40:18;
41:25;42:18;43:7;
44:13;48:12;50:25;
51:22;55:2;56:8,22;
57:13;58:1;64:9;65:3,
3,14;68:1;70:13;71:8;
78:1;80:13;81:11;
85:9,16;92:18,19,21;
93:9,11,13;94:18;
97:4
**one-million-dollar (1)**
24:12

ongoing (5)
61:13;68:16,17;
77:21;82:12

only (13)
17:3;31:20;36:21;
46:3;61:22;65:23;
71:7;72:25;84:10,21;
85:9;9;90:3

open (4)
61:16;78:9;86:4,5

openness (1)
48:14

operate (2)
77:4;82:5

operating (2)
13:10;95:25

operation (2)
14:25;55:21

operations (1)
22:20

operator (1)
97:14

opinion (1)
28:8

opponent (1)
19:8

opportunity (8)
23:17;61:23,25;
64:3;69:16;76:20;
77:8;80:14

opposed (2)
45:21;80:16

opposing (1)
79:25

opposition (3)
8:8;11:10;14:3

options (1)
15:7

oral (6)
12:4,6;19:10;65:1;
67:7;68:3

order (41)
7:14;10:3;12:5,9,
14;15:24;16:22;18:2,
10,24;19:8;22:6;
29:14;31:3;35:2,2;
39:2;44:14;45:7,8;
51:22;52:2;53:16;
54:4,11;59:15;62:16,
24;63:10;67:9,21,25;
68:25;69:3,11,14;
86:2,8;88:13;89:23;
95:25

ordered (2)
12:12;13:24

orderly (1)
16:13

ordinary (1)
22:17

organizational (2)
28:21;79:8

organizing (1)
6:22

originally (1)
51:18

others (1)
61:17

otherwise (4)
10:15;39:22;58:5;
81:8

out (17)
9:8,10;16:6;21:2;
38:21;39:22;42:17;
55:25;61:7;62:14;
67:12;68:22;69:19;
86:22;88:2;89:16;
93:10

outcome (6)
11:1;18:10;46:19;
50:22;87:20;97:20

outcomes (1)
79:17

outside (4)
23:12;24:24;25:9;
35:21

outstanding (1)
25:19

over (7)
8:23;19:15;46:5;
47:7;56:25;62:18;
70:14

overall (1)
37:15

overruled (3)
40:1;70:13,23

own (3)
22:13;71:2;86:19

owner (1)
79:9

ownership (1)
79:10

**P**

package (1)
29:16

page (1)
67:16

pages (1)
20:1

paid (6)
34:3;35:7;39:19;
81:7;88:14;89:20

papers (11)
6:4;11:9,17,21;
12:2;49:25;65:1;72:2;
83:20;89:1,16

Paragraph (1)
75:23

parcel (1)
64:17

PARK (37)
5:6;20:22;22:11,12,
22,23;23:1,7,12,19;
24:4,17,21;25:4,8,18,
22;26:5;27:6;29:6;

30:21;31:13,19;
34:13;35:19;36:3,19,
24;37:8;39:9;40:13,
17;41:6,19,24;70:2;
85:15

Park's (1)
28:8

part (5)
57:6;64:17;67:25;
93:16,18

participated (1)
37:20

participation (1)
38:5

Particularly (3)
13:6;90:6;94:8

parties (33)
7:15;11:22;12:5;
13:10,17;14:18;
16:10,21;17:13;
23:20;25:18;26:16;
34:25;38:4;47:16,22;
58:4,14;59:25;69:1,4;
72:24;74:13;82:20,
23;90:3,4;91:18,23;
92:1,13;96:6,12

parties' (5)
13:7;18:11;41:14;
52:19;53:18

parties-in- (2)
45:19;46:18

parties-in-interest (4)
45:12;46:13;69:15;
84:23

partner (1)
13:9

parts (1)
67:13

party (18)
11:24;14:11;16:20;
17:16,18;20:5;34:2;
36:14;37:4,16,19;
40:15;61:22;63:24;
72:2;85:5;91:2;92:5

party-in-interest (1)
86:13

patently (1)
85:12

path (1)
24:6

pathway (1)
16:9

patience (1)
6:3

pause (2)
57:20;74:12

paused (5)
12:1;16:3;41:25;
57:13;97:4

payable (3)
35:13;39:23;83:19

payment (16)
26:17;31:7;35:2,5,

13;39:12;77:11,23;
82:1;83:18;88:11,21;
89:5;90:9,24;92:24

payment-due (1)
18:19

payments (4)
39:15;88:19;89:4;
90:13

pending (4)
13:13;36:21;76:23;
83:6

people (3)
65:15;97:15,16

peppered (1)
15:9

per (1)
60:6

percent (3)
31:24;48:13;50:6

perfectly (1)
58:8

performed (1)
35:10

perhaps (2)
96:6,6

period (1)
51:24

periods (1)
76:24

permissible (2)
50:16;74:23

permissive (4)
72:8;74:8,12;75:4

permit (2)
15:6;74:19

permits (1)
85:8

permitted (4)
26:11;38:11;50:17;
75:7

person (3)
23:1;62:9;69:8

personal (2)
22:13;74:1

perspective (2)
54:6;58:18

persuade (2)
91:14,15

pertaining (3)
12:11;62:9;84:17

petition (3)
38:20;48:1;51:20

phase (1)
66:10

physically (1)
96:15

piece (1)
7:25

piecing (1)
7:1

Pier (2)
55:7,8

P-I-E-R (1)

55:8

place (7)
18:21;54:4,4;58:24;
60:25;80:23;97:15

plaintiff (2)
17:1;18:25

plan (298)
6:7,7;7:8,12;13:9;
14:23;15:8;21:15;
22:4,23;23:5,7,8,13,
18;24:15,22,23;25:3,
7,21,24;26:2,5,7,8,10,
13,20;28:5;29:7,8,11,
12,15;30:4,10,16,20,
22,23,24;31:7,14,17,
18,18,21;32:2,6,8,9,
11,18,24;33:3,7,8,8,
11,13,13,15,18,21,22,
25;34:5,8,9,10,10,12,
13,14,16,16,18,20,24;
35:1,1,1,9,10,12,14;
36:4,6,7,11,14,15,15,
16,20,20,21,22,23,25;
37:9,10,15,19,22,25;
38:1,10,22,23,24,24,
25;39:4;40:3,9;41:8;
43:8,8,9,10,11,18,25,
25;44:8,11,12,12;
45:2,20;46:22;47:4,
13,23;48:2,2,3,5,18,
18;49:2,4,8;50:3,14;
52:9,13,20;54:2,24;
55:4,13,22,22;57:21;
58:2,3;59:6,21;60:1,6,
8,9;61:11,25;62:7,13,
14;63:1,14,16,21;
66:19;67:23;68:4,6,9,
10,11,14,16,18,19;
70:7,8,8,15,18;71:3,6,
7,8,11,13,15,16,25;
72:5,6,9,13,14,15,16,
17,18,21;73:1,3,8,10,
12,18,21,25;74:2,8,
14,17,25;75:1,4,6,10,
11,17,20;76:3,3,6,10,
25;77:10,14,20,22;
78:4,6,7,14,15,23,23,
25;79:4,5,8,11,15,22,
23,25;80:2,6,10,12,
15,17,18,19;81:3,9,
11,12,12,13,16,19,21,
22,24;82:9,12,19,20;
83:5,18;84:4,9,24;
85:3,6,9,10,11,15,21,
22;86:5,8,9;88:21;
89:24;91:7;92:3;
95:25

planned (1)
31:21

planning (1)
64:16

plans (6)
72:8,12;74:8,9;

82:24;83:14

**plan's (2)**
50:1;80:21

**plausible (1)**
14:10

**please (5)**
53:10;57:7;86:1,2;
96:19

**plus (2)**
45:18;62:9

**point (13)**
16:19;19:21;40:19;
42:17;44:21;54:7;
59:21;61:10;62:6;
67:3;69:10;92:20;
93:17

**pointed (2)**
61:7;89:16

**points (3)**
18:16;87:3;92:19

**poor (1)**
7:1

**portion (3)**
19:14;59:15;88:20

**pose (1)**
58:24

**position (2)**
42:9;66:17

**positioned (1)**
82:5

**possessory (1)**
55:20

**possibility (4)**
48:20;77:6;79:12,
12

**possible (5)**
61:10;77:21;87:18,
19;94:21

**possibly (4)**
6:17;68:14;70:9;
80:3

**post (1)**
24:18

**post-confirmation (2)**
82:24;83:8

**posting (1)**
24:12

**potential (3)**
18:17;45:7;84:10

**potentially (2)**
12:8;83:9

**power (2)**
55:11;73:15

**practical (1)**
13:16

**pre- (1)**
13:12

**precisely (1)**
74:21

**predetermination (1)**
12:22

**predicate (1)**
41:3

**predict (1)**
48:12

**prejudice (1)**
41:14

**premised (1)**
72:21

**premises (7)**
12:24;13:10;51:1;
55:21;74:16,17;95:20

**preparation (1)**
38:21

**prepared (3)**
12:3;56:10,17

**preparing (1)**
16:16

**pre-petition (1)**
23:15

**preponderance (1)**
75:13

**preponderance-backed (1)**
14:11

**Present (5)**
5:2;8:5,9;20:17;
61:16

**presentation (3)**
20:8;40:19;56:21

**presented (4)**
20:20;36:22;75:1;
85:10

**president (1)**
22:24

**presumably (1)**
95:16

**presuming (1)**
64:9

**pretty (8)**
7:23;8:9;21:20;
42:25;47:14;65:7;
88:10;93:25

**prevail (1)**
18:1

**preview (1)**
88:9

**previously (3)**
52:14;63:2;85:11

**price (1)**
92:8

**primarily (2)**
47:23;89:24

**primary (1)**
20:24

**principal (2)**
36:25;85:16

**principals (2)**
8:13;9:6

**principled (1)**
48:17

**prior (9)**
10:24;43:23;53:16;
59:22;63:13;66:1,5,5;
77:1

**priorities (1)**
34:19

**priority (10)**
26:17;31:3;34:1,1;
35:3,6,6;71:20;81:7;
89:20

**probability (1)**
35:9

**probable (1)**
59:3

**probably (6)**
27:9,12,16;46:22;
48:20;92:1

**problem (7)**
27:4;45:13;57:5,7,
10;59:14;95:19

**problems (3)**
46:19;67:12;71:25

**procedural (3)**
11:5;14:19;66:13

**procedurally (1)**
63:12

**Procedure (3)**
12:8;64:10;66:1

**procedures (4)**
65:18,19,21;85:24

**proceed (3)**
13:9;16:13;28:6

**proceeded (1)**
17:16

**proceeding (3)**
6:22;27:4;42:12

**proceedings (2)**
6:10;97:22

**proceeds (1)**
79:14

**process (28)**
6:11;20:10;23:19,
21;45:9,19;46:17,18;
59:5,19,20;60:4,5,10;
61:2,14;64:6,7,15;
68:15;69:24;70:22;
82:13,17;84:10,11;
90:10;93:2

**processes (3)**
64:9;91:1;97:13

**procured (1)**
18:3

**product (1)**
69:22

**productive (1)**
16:14

**Professional (4)**
39:6;40:8;42:21;
94:7

**professionals (10)**
22:15;23:3,12;
24:25;25:10;31:10;
32:23;35:21;39:13;
40:3

**proffer (25)**
7:13;19:17,19,25;
20:18;21:9;26:1,5;
27:3,4;40:10,12,16,
20,25;41:2,6,22;42:1,

3,5,10;57:23;70:1;
80:8

**proffered (1)**
29:6

**program (1)**
66:22

**programmatic (3)**
47:9,19;48:22

**programmatically (2)**
94:3,4

**progress (3)**
32:2;85:13;88:3

**prolong (1)**
9:21

**prompt (1)**
95:4

**proof (2)**
21:12;22:10

**proper (1)**
37:11

**properly (2)**
17:3;46:18

**property (15)**
15:18;32:11,25;
33:12,18;36:13;
38:24;53:23;65:16;
78:16,25;80:18;81:3;
84:4,6;85:3

**proponent (14)**
6:8;29:8,12;31:21;
54:24;55:4;75:11;
76:2,3;77:10,12;78:4;
88:21;89:6

**proponents (2)**
73:1;79:4

**proposal (4)**
23:23,24;24:3;
85:13

**proposals (1)**
24:18

**propose (1)**
89:23

**Proposed (28)**
4:21;6:7;7:14;19:8;
30:23,25;31:21;
37:12;43:25;44:13;
48:18;52:12;55:13;
67:9;68:4,25;69:3,10,
14;71:5;76:6;81:22;
82:9;85:11;86:2,8,9;
88:11

**proposition (1)**
55:4

**protect (1)**
38:4

**protection (1)**
30:12

**protections (1)**
49:8

**provide (10)**
20:18;27:6;31:19;
40:6;72:18;73:1,3,25;
96:12,20

**provided (2)**
22:14;38:12

**provides (9)**
26:13;31:7;33:25;
34:21;35:1,12;73:9;
77:22;83:18

**providing (1)**
14:15

**provision (15)**
7:12;9:25;18:23;
19:3;35:23;47:8,15,
21;50:1,8,13;58:3;
71:10;78:3;84:16

**provisions (23)**
13:4;23:8;25:25;
26:8,11;27:23;28:5,
17;29:8,13;35:9,17;
37:12;38:3;44:13;
54:2;60:8;62:9;71:9;
75:21;76:4;84:5,13

**proviso (3)**
40:25;41:5;70:5

**provisos (1)**
68:6

**public (3)**
25:15;65:25;73:19

**pull (2)**
6:3;16:9

**pulled (1)**
75:24

**punch (2)**
62:8;75:3

**purchase (1)**
92:8

**pure (1)**
42:7

**purported (1)**
43:16

**purports (1)**
27:5

**purpose (2)**
31:1;37:15

**purposes (6)**
28:8;37:1;46:15;
66:15;76:11;85:16

**pursuant (8)**
12:7;16:23;35:14;
37:22;38:1;39:5;
53:21;71:6

**pursue (3)**
9:16,18;14:22

**pursuit (1)**
38:22

**push (2)**
49:18;79:19

**put (7)**
9:8;10:3,5;11:16;
16:14;20:24;88:10

**puts (1)**
83:23

**putting (2)**
97:14,15

## Q

**qualified (1)**
27:11
**query (1)**
65:13
**quickly (7)**
21:7;60:15;61:3;
69:18;71:1;93:25;
94:21
**quite (3)**
13:4;72:22;88:3
**quiver (1)**
93:9
**quoting (1)**
18:6

## R

**raise (14)**
6:21;47:2;57:11;
67:5;69:7,16;82:11;
86:1,14,22;94:18;
95:9,13;97:2
**raised (13)**
41:16;42:18;56:7;
66:21;68:12,21;
69:19;72:2;73:15;
84:11,17,21;96:23
**raises (1)**
91:20
**raising (2)**
94:18;96:5
**ran (1)**
97:7
**rat (1)**
94:1
**rather (2)**
16:6;83:15
**rational (5)**
33:15;36:6;60:9;
80:21;84:20
**re (4)**
16:18,21;17:10;
18:6;55:7;75:13,24;
76:12
**reach (5)**
44:18;49:10;68:22;
82:21;89:22
**reached (2)**
16:10;50:21
**reaction (1)**
90:7
**read (7)**
9:10;19:19;47:6,15;
50:8,15;62:16
**readjusted (1)**
92:2
**ready (6)**
46:22,23;48:24,24;
69:12;95:8
**real (1)**

91:7
**realistic (2)**
61:6;79:12
**realization (1)**
82:18
**reallocate (1)**
96:2
**really (22)**
9:8,10;10:7;14:23;
28:15;41:13;46:17;
48:4,9;49:3;50:24;
52:17;57:19;69:25;
73:7;83:24;88:3;90:2;
91:6;92:24;96:11;
97:14
**reason (5)**
16:8;18:12,25;66:7;
90:4
**reasonable (7)**
35:9;76:10;77:16;
82:7,17;89:7;90:14
**reasons (11)**
19:6;26:18;27:8,9,
10,10;39:24;70:24;
74:6;82:16;83:20
**recall (4)**
21:17;43:7;66:5,21
**recap (2)**
64:25;74:4
**receive (19)**
30:18;32:10,13,14,
15,16,24;33:1,10,18;
36:13;78:15,17,24;
79:1;80:13,14;81:2;
85:3
**received (7)**
7:16;24:9;30:14;
31:25;42:10;51:8;
55:23
**receiving (4)**
33:12,16;80:18;
81:1
**recipients (1)**
29:17
**recitation (1)**
16:3
**reconsideration (11)**
6:6,15,24;7:6;8:2,6;
10:13;11:7,15,25;
19:7
**reconstruction (1)**
96:1
**reconvene (2)**
86:21;87:24
**record (23)**
6:20;12:6;19:19;
20:10,16;21:9;28:8;
42:11;43:7,8;47:15;
50:8,15,23;51:25;
66:4,8;68:9;70:1,17,
20;76:21,23
**records (1)**
22:16

**recovered (1)**
32:19
**recoveries (1)**
31:2
**recovery (3)**
39:20,21,22
**redline (2)**
69:2;86:11
**refer (1)**
12:13
**reference (1)**
83:13
**referenced (1)**
43:10
**referencing (1)**
19:9
**referred (3)**
65:18,19;86:5
**referring (3)**
21:24;43:4;80:7
**reflect (1)**
29:21
**reflected (2)**
29:18;30:2
**reflecting (1)**
69:2
**reflects (1)**
30:3
**regard (2)**
37:21;70:7
**regarding (11)**
23:22,23;24:7;41:5;
49:4;62:7;70:17;
71:12;73:15;84:17;
86:4
**regularly (1)**
22:17
**regulating (1)**
13:2
**regulation (1)**
37:24
**regulatory (1)**
78:11
**reimbursement (1)**
91:25
**rein (1)**
21:2
**reject (3)**
30:20;74:10;78:23
**rejected (9)**
17:2;32:16;33:11;
36:23;51:23;52:3;
53:17;54:12;80:17
**rejecting (4)**
36:8,18;84:25,25
**rejection (6)**
33:20;53:20;54:1,
10,12;56:19
**rejections (3)**
30:13,17;37:25
**related (7)**
7:12,18;31:15;40:3,
8;86:10;90:19

**relates (2)**
7:18;26:2
**relating (2)**
22:16;23:13
**relationship (2)**
22:18;65:15
**relatively (1)**
21:7
**release (7)**
9:7;10:8,11,14,20;
37:9,12
**released (3)**
37:16,19;38:4
**releases (1)**
8:14
**releasing (1)**
9:11
**relevant (4)**
22:20;23:11;31:18;
42:6
**reliable (1)**
77:2
**reliance (2)**
41:2,22
**relief (17)**
13:3,5,14;14:2,6,
22;16:5,20;17:2,8,15;
18:3,15,22,25;19:2,4
**relies (2)**
72:21;80:8
**relieved (1)**
17:19
**relocate (2)**
95:17;96:2
**relying (2)**
27:25;53:19
**remain (2)**
21:23;56:17
**remained (1)**
54:1
**remaining (16)**
39:9,10;42:21;
60:15;65:2,23;70:12,
18,21,23;74:15;
77:19;78:9;84:13;
87:21;93:9
**remains (2)**
24:19;56:9
**remarks (1)**
12:19
**Remember (1)**
6:25
**remnant (1)**
39:25
**rendered (1)**
32:22
**renovation (1)**
96:1
**reorganization (3)**
71:6;81:20,22
**reorganized (1)**
15:19
**replace (1)**

38:9
**reply (2)**
39:13;89:1
**reported (1)**
79:24
**reporter (1)**
7:1
**reporting (1)**
66:7
**reports (1)**
79:24
**representations (2)**
70:4,6
**representative (1)**
70:3
**representatives (5)**
23:25;24:25;25:10;
35:21;65:14
**represented (1)**
44:16
**representing (1)**
70:2
**request (5)**
6:7;19:2;24:13;
66:18;68:4
**require (3)**
55:13;65:25;71:10
**required (15)**
7:20;13:11;14:1;
18:14;25:17;29:18;
36:1;58:4;59:4;66:6;
70:3;74:9;82:14;83:7;
91:1
**requirement (14)**
13:6;36:9,12;73:13,
16,19,24;76:5,15,16;
81:9,14;82:13;83:17
**requirements (22)**
16:5;26:9;29:10;
37:1;57:23;58:6;
70:10,25;71:3;72:11;
75:8,9,15,20;83:21;
84:1,14;85:1,17,21;
91:20;94:12
**requires (15)**
26:7;29:7;30:23;
68:9;72:9;76:2;77:11,
24;78:4,13;79:21;
81:6,18;84:4;90:13
**research (1)**
55:1
**reserve (5)**
41:10;48:20;49:2,9;
69:21
**reserved (1)**
85:23
**reserving (1)**
62:6
**resolution (3)**
17:14;46:12;68:17
**resolve (8)**
7:9;25:19;43:22;
44:2,20;46:21;63:9,

19-12280-dsj    Doc 214    Filed 09/21/23    Entered 09/22/23 10:08:14    Main Document
In the Matter of: EAST BROADWAY MALL, INC. Pg 114 of 118

September 12, 2023

18
**resolved (15)**
7:10,11;16:1;21:20;
42:19;44:5;46:15;
47:11;48:13;50:2,6;
62:17;63:6,15;70:16
**resolving (1)**
90:3
**respect (47)**
6:20;11:14,24;23:4,
14;26:4,23;28:3;29:5,
9;30:7,7,21;31:6,13;
32:5,8;33:5,25;34:7,
12;35:12,19;36:3,19,
24;37:6,17;39:10;
40:2;42:20;44:3;
48:20,24;50:3;51:2;
61:13;62:6;66:18;
67:4;68:3;72:23;
78:13,21;86:2;88:16;
90:25
**respective (3)**
38:14,16;39:5
**respectively (2)**
72:8,24
**respects (1)**
77:18
**respond (2)**
89:14;91:22
**response (1)**
9:11
**responsibilities (2)**
39:17;73:21
**responsibility (2)**
45:16;92:13
**responsible (1)**
23:2
**rest (1)**
12:2
**Restate (1)**
43:3
**restatement (1)**
54:20
**result (5)**
9:18;30:8;76:10;
82:18;91:18
**resulting (1)**
68:24
**results (3)**
59:24;79:23;80:5
**resume (1)**
19:24
**resumed (1)**
69:20
**retail (1)**
14:25
**retain (11)**
32:10,13;33:18;
36:13;59:15;78:16,
17,24;79:1;81:3;85:3
**retained (1)**
68:11
**retaining (2)**

33:12;80:18
**retention (4)**
44:13;49:5;62:7;
68:18
**revenue (1)**
97:16
**review (32)**
7:19;22:15;23:11;
26:4,23;29:5;31:6;
51:25;59:5;61:14;
64:10,16,16;65:5;
66:6;67:8,15;69:13;
70:22,24;82:13;83:6,
8,15;84:10,14;85:19;
86:20;89:11;90:25;
94:20;95:4
**reviewed (10)**
11:21;12:3;23:7;
50:13;52:11,12;64:2;
69:25;75:17;78:2
**reviewing (2)**
60:15;64:19
**revised (9)**
7:13;51:19;56:13;
63:1;68:24;69:11;
86:7,8,20
**right (50)**
6:12;8:25;10:22;
11:7,21;19:11;21:25;
28:13,18,25;40:13;
41:18;43:1;46:8,20;
47:23,25;48:7;49:13,
13,15;50:2;52:15,24;
54:12;57:13;59:7;
62:11,22;63:18;
64:22;65:8,10;69:21;
83:24;87:22;89:13,
18;90:14,22;91:9,21,
25;92:9;93:15;94:9,
14;95:25;97:1,8
**rights (3)**
10:19;13:20;41:10
**Riley (2)**
31:17;43:13
**rising (1)**
78:1
**road (1)**
10:23
**ROBERT (1)**
4:8
**robust (2)**
82:3;91:4
**robustness (1)**
82:9
**roll (1)**
93:10
**rolling (1)**
93:24
**room (1)**
47:9
**rule (18)**
12:3,7;14:2,7;
16:20;17:8,15;18:1,

15,22;19:1,2,4;37:24;
39:6;48:24;67:4;
93:16
**ruled (2)**
63:2;76:4
**Rules (2)**
16:23;39:6
**ruling (17)**
12:4,6;18:13;19:10;
48:20;49:3;50:12,12;
57:16;67:8;68:3;
74:13;85:23,24;91:8;
94:13;96:23
**run (3)**
21:2;75:6;91:19
**running (1)**
94:6
**runway (1)**
60:11

---

**S**

**sad (1)**
10:21
**salient (2)**
13:4;22:22
**same (10)**
17:23,23;26:21;
59:24;67:16;69:15;
71:19,20;72:18;95:4
**Sarah (1)**
12:18
**sat (1)**
11:9
**satisfied (33)**
19:4;26:6;29:24;
31:5,12;32:6;33:19,
24;35:18;50:15;
69:13;70:21;71:3;
72:3,11,20;74:6;
75:18;78:3,20;79:16;
81:5,9,14;82:10;
83:16,18,23;84:12,15;
85:8,18,21
**satisfies (6)**
33:3;34:5;35:10;
36:11;70:10;85:1
**satisfy (6)**
25:2;49:11;75:7;
82:1,8;87:18
**satisfying (1)**
36:9
**save (1)**
61:21
**saw (1)**
50:7
**saying (5)**
51:22;52:2;59:2;
66:21;89:10
**Scarcella (1)**
16:17
**schedule (2)**
16:1;61:8

**scheduled (5)**
25:14,16;60:18,21,
22
**scheduling (2)**
15:24;87:13
**scheme (1)**
80:23
**scope (4)**
37:15;48:17;49:7;
75:6
**screen (2)**
56:25;59:12
**scrutinized (1)**
69:14
**SDNY (2)**
75:14;76:1
**se (1)**
60:6
**Second (7)**
17:13;40:4;58:1;
65:7;72:14;86:13;
93:15
**Section (76)**
21:13;25:23,25,25;
26:4,6,10,12,23;29:5,
7,23;30:22;31:6,11,
13;32:5,7;33:4,5,24,
25;34:3,5,7,11,12;
35:11,12,15,19;36:3,
9,12,17,19,24;37:2;
39:7,12,15;61:14;
71:4,6,9,14;72:7,7;
74:5,7,11;75:10,12,
16,20;76:2;77:11;
78:4,13;79:21,21;
81:4,6,10,17;82:10,
14;83:17;84:3,12,15;
85:1,4,8,18;90:12
**sections (8)**
26:3;28:4;29:22;
35:16;38:11;71:11;
75:22;83:21
**secure (2)**
65:4;82:3
**secured (7)**
13:18,21;30:9;68:4;
71:17,19;72:23
**securing (2)**
14:16;81:24
**Securities (3)**
37:2;73:15;85:17
**seeing (1)**
45:13
**seek (3)**
76:25;86:3;93:23
**seeking (4)**
12:8;13:9;16:20;
17:14
**seeks (2)**
13:3,5
**seem (3)**
92:12;97:14,20
**seemed (2)**

41:11;52:1
**seeming (1)**
11:1
**seems (5)**
47:17;48:14;61:4;
67:13;92:24
**segregation (3)**
33:15;36:6;80:21
**selecting (1)**
73:17
**selection (2)**
23:21;73:20
**send (1)**
69:10
**senior (4)**
22:23;33:16;79:6;
80:25
**seniority (1)**
80:23
**sense (7)**
6:14,19,24;7:5;
67:25;87:17,25
**senses (1)**
67:18
**sensing (1)**
94:1
**sent (1)**
63:5
**sentence (1)**
88:23
**separate (2)**
26:19;47:20
**September (9)**
15:20;25:15,16;
57:24,25;60:18,22;
65:3,4
**series (3)**
15:5;16:7;50:9
**serve (2)**
46:3;78:5
**service (1)**
29:20
**Services (7)**
31:17;32:22;43:13;
61:1;74:1;77:12;
90:13
**set (19)**
14:3;18:24;22:13;
26:9;32:7;33:3,6;
34:9,14,16,18;35:25;
39:13;75:10,16;78:1,
1;82:16;83:20
**sets (1)**
74:7
**settle (2)**
16:22;17:19
**settlement (3)**
15:25;88:18;89:2
**settling (2)**
9:13;91:18
**seventh (1)**
73:16
**several (1)**

59:24
**severely (2)**
14:24;15:1
**shadows (1)**
56:23
**shake (1)**
76:19
**shall (7)**
13:8;37:23;38:18;
39:4;54:12;71:7;84:4
**shaped (1)**
11:1
**share (4)**
26:16;35:5;39:17;
71:19
**shared (1)**
66:9
**sheet (5)**
15:9;52:14;56:11,
12;95:15
**short (1)**
33:6
**short- (1)**
20:9
**shortly (4)**
58:23;60:19,24;
67:9
**short-order (1)**
11:11
**shot (3)**
46:21;91:14,15
**shoulder (1)**
56:25
**show (3)**
9:12,17;26:6
**showing (11)**
8:9;14:9;17:4;
73:22;76:14;77:22;
80:5;81:23;82:9;
88:13;91:1
**shown (3)**
77:17;81:14;84:18
**shows (2)**
30:8;31:7
**sic (1)**
36:17
**sign (2)**
44:17;61:2
**sign- (1)**
44:17
**signatures (1)**
13:22
**signed (6)**
9:22;51:11,18;
56:14;58:23;64:14
**significant (1)**
37:16
**sign-in (1)**
6:11
**signing (1)**
51:12
**silence (1)**
12:1

**silos (1)**
80:22
**similar (5)**
26:21;71:17,23;
72:4;82:24
**similarly (1)**
71:23
**simple (1)**
72:1
**simplify (1)**
93:2
**simply (6)**
14:1,14;18:8;73:14;
74:2;80:11
**situation (1)**
89:17
**sixteen (1)**
75:15
**sixteenth (1)**
75:24
**sixth (1)**
73:13
**size (1)**
77:3
**skip (1)**
6:12
**slide (1)**
52:1
**slight (1)**
70:9
**small (3)**
63:17;86:6,6
**smells (1)**
94:1
**so-called (1)**
80:14
**sole (3)**
36:17,20,20
**solely (3)**
36:7;50:18;55:11
**solicitation (6)**
29:10,15,16;37:21,
25;38:24
**solid (1)**
97:14
**something's (1)**
45:17
**sometimes (3)**
21:4;76:22;79:3
**somewhat (2)**
60:5;84:15
**soon (1)**
65:7
**sooner (1)**
69:6
**SOONG (14)**
4:20,25;56:5,5;
57:2,9;62:2,3;95:10,
11;96:14,19,21,25
**sorry (9)**
6:25;8:16;26:25;
37:8;53:1;54:9;87:10;
88:22;92:18

**sort (9)**
15:2;45:1,25;47:22;
58:17;92:1,10,13,14
**sought (2)**
16:5;18:3
**sound (3)**
17:9;49:13,15
**sounds (2)**
8:4;63:12
**source (1)**
65:21
**space (1)**
96:1
**speak (6)**
21:7;24:22;31:18;
61:23;76:18;87:7
**spearheaded (1)**
91:6
**special (1)**
22:24
**specific (6)**
8:8;19:3;44:24;
55:10;74:5;75:15
**specifically (14)**
14:6;34:15;50:17;
69:1;71:11;72:22;
74:22;76:8,15,21;
77:22;80:7;82:23;
85:25
**specify (2)**
72:14,16
**split (3)**
53:14;71:23;89:21
**sprung (1)**
66:10
**Staes (1)**
41:4
**stage (2)**
16:10;85:14
**stages (1)**
60:16
**stand (5)**
9:24;20:25;62:1;
66:22;79:5
**standard (4)**
33:19;81:4;82:15;
94:9
**standards (1)**
14:1
**start (4)**
8:23;85:23,24;97:5
**state (5)**
34:2;38:10;39:18;
61:25;71:2
**stated (4)**
15:16;41:23;74:6,
13
**statement (16)**
7:8;21:17,19,25;
22:4,7,23;23:5,9;
24:22;29:15;42:9;
49:24;52:15;63:14;
70:15

**statements (1)**
15:13
**STATES (12)**
4:11,12;17:4,21;
38:8;39:10,25;40:7;
62:12;81:10;87:10;
89:5
**status (7)**
6:15;7:23;51:1,17,
25;52:1,4
**statutory (1)**
92:25
**stay (1)**
18:17
**step (1)**
53:6
**STEPHAN (1)**
5:5
**steps (2)**
54:3;65:23
**stick (2)**
21:3;96:15
**still (7)**
7:20;32:1;33:21;
42:23;90:24
**stipulated (2)**
13:11;18:11
**stipulation (18)**
9:7,23;12:9,14,14;
13:2,21;14:8,12,14,
15;16:5,8,20,23,25;
18:21;53:15
**stipulation's (1)**
13:15
**stop (1)**
19:23
**strategic (1)**
17:19
**Street (1)**
4:4
**strike (1)**
90:11
**strong (2)**
8:9;12:20
**struck (1)**
92:14
**structure (1)**
79:8
**structures (1)**
92:22
**struggling (1)**
15:3
**stuck (1)**
45:21
**subject (20)**
17:9;20:5;31:10;
39:15;42:2;50:14;
68:16;69:24;70:6,16;
74:11;77:15,20;78:8;
83:14;85:10,22;89:6;
90:24;91:25
**submission (4)**
30:3;45:6;87:15,20

**submit (7)**
17:13;19:8;67:19;
68:24;86:7;93:14;
94:10
**submitted (9)**
7:14;30:5;44:14;
52:14;63:4;67:9;70:1;
78:2;86:12
**sub-provisions (1)**
74:5
**subsection (2)**
32:5;84:3
**subsections (1)**
26:11
**subsequent (1)**
25:15
**substantial (9)**
14:22;81:23;88:12;
90:16;91:1,5;94:2,9;
96:1
**substantially (5)**
26:21;71:17,22,24;
72:4
**substantively (1)**
49:11
**subtenants (3)**
95:17;96:3,4
**succeed (2)**
16:12;59:7
**successful (2)**
73:7;84:9
**successfully (6)**
15:19;57:22;59:7;
77:4;82:5,17
**successor (2)**
73:17;81:21
**successors-in-interest (1)**
38:16
**Suffice (1)**
75:4
**sufficient (5)**
25:5;34:14;59:6;
77:3;82:8
**sufficiently (1)**
59:3
**suggest (3)**
20:7;46:9;68:23
**suggests (1)**
46:1
**suitable (1)**
46:22
**Suite (2)**
4:14,22
**SULLIVAN (87)**
4:7;6:23;7:2,3,23;
19:12,15,16;20:1,14,
21;21:6,12,23;22:2,4;
27:1,2,12,16,22;
28:11,15,19,23;29:1,
3;37:8;40:14;42:13,
14;43:2,6;44:6;45:4,
11;46:2,25;47:1,13,
20;48:1,8;49:17,20,

19-12280-dsj    Doc 214    Filed 09/21/23    Entered 09/22/23 10:08:14    Main Document
Pg 116 of 118
In the Matter of: EAST BROADWAY MALL, INC.

September 12, 2023

22;50:8,24;51:5,15;
52:6,24;53:2,5;57:18;
58:10;59:9,19;61:15,
18;62:14,19;63:3,9;
67:3,6,11,18;68:23;
72:1;86:24;87:2,15;
88:1;89:13,15;91:13,
21;92:20;93:1,5,11,
13,21;94:14,20;95:6

**Sullivan's (1)**
40:19

**summary (2)**
27:5;40:16

**supplement (9)**
31:14;34:17;43:8,8,
9;44:11;52:9,13;78:7

**supplements (1)**
31:18

**support (11)**
12:16;18:14;21:14;
23:24;26:2;42:9;55:3;
61:25;80:1,2,5

**supports (2)**
12:16;38:2

**sure (22)**
9:16;11:3,18;12:5;
21:21;27:2;31:24;
43:4;57:4,19;62:14,
24;63:8;64:22;65:12;
67:19;69:13;79:8;
83:23;92:21;95:3;
97:2

**sustainable (1)**
34:20

**system (1)**
72:1

**T**

**table (1)**
16:13

**tailor- (1)**
15:2

**tailored (1)**
38:3

**talk (1)**
27:9

**talking (2)**
45:9;63:8

**talks (1)**
85:25

**target (1)**
48:19

**Taub (1)**
17:10

**tax (2)**
30:11;34:2

**taxes (2)**
37:1;85:16

**Teamsters (1)**
17:5

**technical (1)**
47:7

**tee (1)**
44:20

**teeny (1)**
97:8

**teleconference (2)**
23:25;24:2

**television (1)**
59:23

**tells (1)**
57:23

**ten (1)**
20:1

**tenancy (1)**
74:15

**Tenant (27)**
4:21;23:22;24:11,
16;25:11;26:16;
34:16;35:4;39:17;
51:4,13;52:8;53:3,4;
54:3,5,10;55:24;56:1,
4,6;73:6;77:7;81:25;
82:4;92:7;95:16

**tenants (4)**
95:20,23;96:8,9

**tenant's (1)**
24:14

**tentative (2)**
90:21,22

**term (6)**
13:19;52:14;56:11,
12;64:8;95:15

**terminate (1)**
53:22

**terms (18)**
13:15;19:2;23:8;
24:16;31:18;34:17;
36:2;43:10,19;44:12,
16;45:24;52:9;56:18;
68:18;78:7,8;90:12

**terribly (1)**
82:15

**test (4)**
33:3;78:20,20;
79:16

**testified (1)**
85:15

**testify (27)**
20:19;22:12,13,22;
23:14,16,19,22;24:4,
17,21;25:4,8,18,22;
27:14;30:22;31:14;
34:13;35:20;36:4,20,
25;37:5,7,9;39:9

**testifying (1)**
28:25

**testimony (11)**
26:5;27:5;29:6,23;
31:3,11;33:2,22;
40:12,16;70:2

**Thanks (7)**
6:3;19:11;53:10;
60:12;62:4;63:23;
94:15

**theoretically (1)**
69:7

**thereafter (3)**
29:17;60:20,24

**thereby (2)**
29:18;36:8

**therefore (20)**
29:24;30:11;31:4,
11;32:6;33:2,21,23;
34:5,10;35:14;36:17;
37:22;55:12;65:23;
71:14;81:2,4;83:22;
85:22

**therein (1)**
34:15

**thin (1)**
16:6

**thinking (1)**
6:14

**third (5)**
31:8;40:5;72:16;
78:1;93:18

**thirty (2)**
10:2,5

**thorough (1)**
47:5

**thoroughly (1)**
62:16

**though (2)**
8:9;83:5

**thought (4)**
46:11;54:23;62:17;
64:10

**three (3)**
30:4;89:21;92:1

**throughout (2)**
12:21;15:9

**Thus (1)**
34:22

**tightly-spaced (1)**
15:2

**tightrope (1)**
53:25

**timely (2)**
24:10;62:21

**times (1)**
76:16

**timing (1)**
68:22

**tiring (1)**
97:6

**title (1)**
71:9

**today (27)**
9:9;19:18;20:22;
21:19;22:12;40:17;
41:3;42:2,12;43:23;
44:5;46:14;47:6,15;
50:7,15,23;63:25;
67:20;70:1;74:24;
75:2;80:8;81:18;
83:12;87:1;96:23

**today's (1)**

6:22

**together (8)**
6:4;7:1;10:3,24;
16:9;26:5;50:21;
71:24

**told (5)**
27:25;58:13;61:3;
95:21,22

**took (2)**
52:3;64:7

**top (1)**
69:8

**total (1)**
24:9

**touch (1)**
65:13

**toward (1)**
23:6

**towards (1)**
40:8

**town (1)**
55:2

**track (1)**
60:1

**tracks (1)**
83:15

**transaction (4)**
58:16,22;62:1;
65:20

**transactional (1)**
84:10

**transactions (1)**
60:8

**transcript (2)**
12:6;57:15

**transfer (2)**
35:23;84:6

**transfers (1)**
84:4

**translate (2)**
10:12;63:12

**transmitted (1)**
29:17

**treated (1)**
12:20

**treatment (15)**
26:20;30:18;33:10;
34:5;62:18;63:16;
72:6,16,18,20,25;
73:2;80:13,15;90:20

**treats (1)**
85:6

**trial (1)**
17:16

**tried (1)**
7:9

**troubling (1)**
13:6

**trust (3)**
84:7,8;95:3

**Trustee (19)**
4:12;21:25;32:22;
35:13;38:8;40:7;41:5;

55:12;62:12;63:13;
67:14;68:14;70:14;
78:6;83:19;85:25;
86:4;87:11;91:3

**Trustee' (1)**
44:19

**trustees (1)**
73:17

**Trustee's (24)**
7:11,17;31:23;32:1;
39:11,25;42:18;
43:20,21;44:1,2,17;
45:15;46:3;48:11,23;
49:25;50:4;68:20;
77:18;87:19;90:22;
95:3;96:6

**try (10)**
13:8;15:17;16:9;
20:2;21:6,7;44:9;
46:12;48:11,15

**trying (8)**
41:13;49:8;52:4;
53:24;90:1;91:16;
93:2,2

**turn (12)**
7:25;8:1;19:13,15;
20:9;42:13;50:14;
59:15;66:16;68:3;
71:14;80:8

**Turning (7)**
72:7;74:7;75:9;
79:21;83:17;84:3,13

**two (17)**
6:5;9:13;20:23;
30:14;50:24;51:11;
57:24;60:16;61:4;
65:1,7;69:4,6;72:24;
86:18;91:21;92:4

**two-day (1)**
69:9

**type (4)**
7:18;48:9;58:24;
83:8

**types (4)**
44:10;51:12;81:7;
84:22

**U**

**ultimately (3)**
55:22;57:16,21

**ULURP (4)**
65:19,21;66:6,22

**U-L-U-R-P (1)**
66:6

**unacceptable (1)**
75:5

**unanimous (1)**
25:12

**unavailable (1)**
19:5

**unclear (2)**
52:2;63:5

19-12280-dsj    Doc 214    Filed 09/21/23    Entered 09/22/23 10:08:14    Main Document
In the Matter of: EAST BROADWAY MALL, INC.    Pg 117 of 118

September 12, 2023

**unconfirmable (1)**
85:12

**under (61)**
14:2,7,22;16:20;
17:8;18:1,15,22;19:1,
4;22:13;24:11,14;
25:3,6;26:20;31:3;
32:10,13,24;33:12,18;
34:19;35:3;36:1,4,14,
17;37:10;38:11,25;
55:6;57:19;65:18;
71:13,16;72:6,8;
73:12;74:23;75:7;
78:14,18,24;79:2,6,
18,23;80:15,18;81:3,
11,12,21;82:14;
83:11;84:4;85:3;
88:12,18;92:2

**underneath (1)**
27:18

**underpinnings (2)**
27:18;42:11

**understandable (1)**
14:24

**understandably (1)**
14:5

**understands (1)**
15:4

**Understood (7)**
28:11,15;29:1;
49:20,22;57:5;87:17

**underwater (1)**
79:20

**unfair (4)**
36:15;60:13,13;
85:5

**unfairly (5)**
12:21;33:13;36:8;
80:19;84:24

**unfortunate (1)**
21:4

**uniform (2)**
64:10;65:18

**unilaterally (2)**
69:22;86:21

**unimpaired (5)**
30:11;33:8;72:15;
74:10;80:10

**UNITED (11)**
4:11,12;17:4,21;
38:8;39:10,25;40:7;
41:4;62:12;87:10

**unit's (1)**
96:16

**University (1)**
18:5

**unless (8)**
13:20;53:23;58:4;
67:4;71:18;72:19;
81:8,21

**unresolved (1)**
49:4

**unsecured (2)**

71:21,22

**unsuccessful (1)**
16:7

**up (8)**
6:20;8:23;10:18;
11:1;23:18;28:22;
44:20;93:24

**update (1)**
31:19

**updates (2)**
6:19;40:7

**upon (16)**
10:14;11:8,9;17:4;
24:18,23;25:8,16;
26:15;27:25;39:1,18,
19;47:16,17;58:11

**upset (2)**
8:14;9:6

**USC (2)**
35:14;71:9

**use (7)**
16:15;20:24;64:10;
73:18;86:19;94:12;
97:15

**used (2)**
61:25;64:8

**usual (1)**
89:17

---

**V**

**vacate (2)**
12:8;16:22

**Valid (3)**
26:18;27:7,9

**valuable (1)**
14:15

**value (7)**
31:1;32:12,25;
33:17;78:16,25;81:1

**various (8)**
16:12;21:8;25:23;
30:5;34:25;57:22;
76:16;83:20

**verify (1)**
96:8

**version (2)**
63:4;68:25

**veto (1)**
58:15

**viability (1)**
81:24

**viable (4)**
15:7;16:9;23:18;
24:8

**vice (1)**
22:23

**video (1)**
8:24

**view (14)**
12:20;16:19;20:3;
47:20;50:4,17;52:19,
19;53:18,18;54:16;

69:12;88:2;90:21

**Views (1)**
76:12

**violation (4)**
18:17;37:24;88:19;
89:4

**virtue (1)**
54:1

**vis-a-vis (1)**
52:4

**visible (1)**
59:11

**visiting (1)**
55:1

**vocabulary (1)**
79:3

**voice (1)**
59:15

**voiced (1)**
63:14;76:17,22

**void (1)**
58:3

**vote (2)**
30:9;34:8

**voted (4)**
30:13,16;80:1,2

**votes (2)**
25:12;30:14

**voting (2)**
73:15;78:6

---

**W**

**wait (4)**
44:5;67:15;87:22;
88:22

**waiting (3)**
32:1;51:11;86:18

**walk (2)**
53:25;67:11

**wants (6)**
19:20;20:4,6;63:25;
67:5;87:13

**Waugh (1)**
18:6

**way (24)**
6:21;9:17;11:19;
12:24;14:8,20;15:12;
20:7;21:9;26:1;27:4;
28:14;45:5;65:16;
68:1;69:17;87:5;92:2,
11,12,14,16;97:11,16

**ways (1)**
89:21

**website (4)**
64:6,7,19,23

**weeds (1)**
96:14

**week (3)**
61:5,5,9

**weeks (1)**
44:9

**weren't (1)**

88:19

**West (1)**
4:4

**Westlaw (2)**
75:14,25

**whatever's (1)**
54:8

**what's (8)**
43:3;44:16;50:17;
55:17;56:3;85:9;90:9;
93:12

**whenever (1)**
94:10

**whereupon (2)**
52:21;97:22

**who's (2)**
7:1;78:23

**willful (1)**
39:1

**willing (3)**
48:10;93:6,16

**WINDELS (2)**
4:2;7:3

**window (1)**
69:9;97:8

**wish (3)**
8:6;41:23;64:3

**withdrawing (2)**
10:12;11:6

**within (9)**
43:10;48:4;57:25;
61:9;69:8;75:5;80:20;
90:12;92:24

**without (4)**
41:14;44:17;81:13;
86:18

**witness (2)**
20:19,24

**won (1)**
9:19

**wonderful (1)**
91:17

**word (2)**
45:4;94:23

**wording (1)**
83:24

**words (2)**
60:2;71:8

**work (14)**
20:12;23:5;24:15;
25:19;44:1,9;47:3;
48:15;62:14;69:22;
77:6;90:11;95:2;
97:19

**workable (2)**
15:8,17

**worked (3)**
24:5;50:21;55:25

**working (2)**
46:11;69:15

**workings (1)**
70:21

**works (2)**

88:19

**West (1)**
4:4

56:3;68:22

**world (1)**
45:15

**worry (1)**
45:23

**worth (1)**
28:2

**wrong (3)**
45:18;91:14,15

---

**Y**

**year (1)**
12:13

**years (1)**
15:9

**Yep (2)**
94:15,22

**yesterday (4)**
47:14;50:7,9;61:3

**York (5)**
4:5,15,23;12:10,12,
12;16:17;17:21;18:5;
30:15;39:6;53:7,8;
64:6;75:25

---

**Z**

**Zachary (3)**
53:7;59:13;65:9

**Zoom (2)**
20:22;56:25

---

**1**

**1 (7)**
19:23;30:9;33:7;
34:9;80:3,9;81:15

**1.8h (1)**
39:6

**1:30 (1)**
19:23

**10004 (1)**
4:15

**10007 (1)**
4:23

**10019 (1)**
4:5

**11 (8)**
21:15;23:4,10,16;
37:17;38:2,5;55:13

**110 (1)**
12:15

**1122 (4)**
26:10;71:11,14;
75:22

**1123 (6)**
26:12;38:11;71:12;
72:7;74:5;75:22

**1123a (6)**
26:10;72:9,9;73:13,
16;75:8

**1123b (3)**

72:9;74:7;75:7
**1125 (2)**
  29:22;38:12
**1126 (1)**
  29:22
**1129 (8)**
  21:14;25:23;27:23;
  71:5,6;75:10,12;
  84:17
**1129.02 (1)**
  75:23
**1129a (3)**
  71:9;75:16;84:15
**1129a1 (2)**
  26:4,7
**1129a10 (3)**
  34:7,11;81:10
**1129a11 (11)**
  34:12;35:11;57:19;
  58:6,9;61:14;81:17;
  82:10,15;83:11,16
**1129a12 (3)**
  35:12,15;83:17
**1129a13 (2)**
  35:16;83:21
**1129a16 (2)**
  35:19;84:3
**1129a2 (5)**
  26:23;29:5,7,24;
  76:2
**1129a3 (4)**
  30:21,22;31:4;76:6
**1129a4 (8)**
  31:6,12;41:7;77:11;
  88:19;89:5,5;90:12
**1129a5 (3)**
  31:13;41:8;78:4
**1129a6 (2)**
  32:5;78:10
**1129a7 (3)**
  32:7;33:4;78:13
**1129a8 (3)**
  33:5;79:21;81:5
**1129a9 (4)**
  33:25;34:3,6;81:6
**1129b (7)**
  33:24;36:3,9,12;
  84:15;85:1,4
**1129c (2)**
  36:19;85:8
**1129d (2)**
  36:24;85:18
**11920b (1)**
  36:17
**11th (1)**
  56:12
**1200 (1)**
  39:7
**1201 (1)**
  4:22
**14 (3)**
  17:21;35:16;83:22
**15 (2)**

72:9;74:7;75:7
**156 (2)**
  4:4;55:9
**15th (1)**
  15:15
**173 (1)**
  39:14
**17th (1)**
  15:15
**183 (1)**
  12:17
**183-1 (1)**
  12:19
**186 (1)**
  22:5
**188 (1)**
  22:7
**189 (1)**
  29:14
**18th (1)**
  56:13
**19-12280 (1)**
  6:5
**1930 (1)**
  35:14
**1933 (1)**
  37:2
**195 (2)**
  31:15;43:9
**198 (1)**
  30:2
**1986 (1)**
  17:7
**1989 (1)**
  18:5
**199 (1)**
  29:19
**1994 (1)**
  17:22

**2019 (5)**
  14:20;75:14,14,24;
  76:24
**202 (1)**
  29:19
**2020 (1)**
  15:9
**2021 (7)**
  15:9,14,15,16,20,
  22,24
**2022 (4)**
  12:13;13:4;14:9;
  16:2
**2023 (7)**
  21:16;25:15,16;
  29:14;30:3;56:12,13
**208 (1)**
  16:18
**21 (1)**
  25:15
**215 (1)**
  16:18
**21st (2)**
  60:18;65:3
**22 (3)**
  12:13;39:7;76:1
**22nd (1)**
  13:3
**247 (1)**
  17:5
**25 (1)**
  30:3
**27 (1)**
  25:16
**27th (3)**
  15:13;60:22;65:4
**28 (2)**
  35:14;75:14
**2d (4)**
  17:6,7,22;18:5

**3b (3)**
  30:12;33:7;80:9

**4**

**4073378 (1)**
  75:14
**42 (1)**
  17:10
**421 (1)**
  17:10
**445 (1)**
  76:12
**452 (1)**
  55:9
**478 (1)**
  18:5
**484 (1)**
  18:5
**4a (5)**
  33:7;34:10;80:3,10;
  81:15
**4b (6)**
  30:14;33:7;34:10;
  80:3,10;81:15
**4c (6)**
  30:18;33:9,10;
  80:11,12,13

**5**

**5 (22)**
  21:16;30:19;33:11,
  14,15,17,21,23;36:4,
  7,13;37:2;80:16,19,
  20,21,25;81:2;84:19,
  21,21;85:2
**503b (11)**
  39:12,15;42:20;
  49:6;62:10,12;63:15;
  87:12;88:2,7,12
**534 (1)**
  4:14
**552 (1)**
  16:18
**56th (1)**
  4:4
**58 (1)**
  17:7

**6**

**6 (1)**
  16:24
**60b (3)**
  14:2;17:8,15
**60b3 (8)**
  12:8;14:7;16:20,24;
  18:1,15;19:3,3
**60b6 (4)**
  12:8;18:23;19:1,4
**61 (1)**
  17:7

**63 (1)**
  17:17
**6th (1)**
  29:14

**7**

**7 (11)**
  32:13,15,15,20,22;
  33:2;75:23;78:18;
  79:2,13,18
**756 (1)**
  17:21
**759 (1)**
  17:21
**793 (2)**
  17:7,17

**8**

**83 (1)**
  76:12
**85 (1)**
  51:18
**865 (1)**
  18:5
**88 (3)**
  12:11,12;74:16

**9**

**95 (2)**
  51:19;76:12

**2**

**2 (4)**
  30:10;33:7;80:9;
  97:7
**20 (1)**
  76:12
**200 (1)**
  29:19
**2001 (1)**
  17:6
**2007 (1)**
  18:6
**2009 (1)**
  17:11
**201 (1)**
  29:19
**2010 (2)**
  75:25;76:1
**2011 (2)**
  55:10;76:13
**2016 (1)**
  16:18

**3**

**3 (1)**
  43:9
**305 (1)**
  4:22
**3373937 (1)**
  75:25
**361 (1)**
  18:6
**365 (1)**
  74:11
**367 (2)**
  18:6,6
**37 (1)**
  17:10
**370 (1)**
  17:5
**391 (1)**
  17:5
**3a (3)**
  30:11;33:7;80:9